# EXHIBIT 13

United States District Court
Southern District of New York

VIRGINIA L. GIUFFRE,

       Plaintiff,

v.

ALAN DERSHOWITZ,

       Defendant.
_____/

Case No.: _____

## AFFIDAVIT OF DAVID S. STONE

1. I am a member of the Bars of New Jersey and New York and am the Senior Managing Partner of the Stone & Magnanini Law Firm.

2. I am acquainted with Alan Dershowitz having worked with him professionally on the Claus Von Bulow matter and we have remained friendly ever since. Approximately from November 2002 to March 2009, I was a Partner at Boies Schiller Flexner LLP's New Jersey office.

3. I make this affidavit to set forth what my testimony would be if called to testify concerning my knowledge of the events described herein.

4. In or about May 2015, I received a call from Mr. Dershowitz who told me that a client of Mr. Boies' law firm was accusing Mr. Dershowitz of having had sexual relations with her when she was under the age of consent. Mr. Dershowitz said he had been trying to contact Mr. Boies with no success and he knew that Mr. Boies and I had worked together. Mr. Dershowitz told me that the accusations were absolutely false and asked me if I would contact Mr. Boies and arrange for them to meet so that he could attempt to convince Mr. Boies that the accusations were false. I agreed to do so, and in that connection attended at least three meetings that included both Mr. Boies and Mr. Dershowitz and spoke to Mr. Dershowitz separately. I believe Ms. McCawley attended at least two of the meetings.

5. I am informed that Mr. Dershowitz has asserted that at a meeting on May 19th, at which I was present Mr. Boies stated "Roberts was mistaken in naming me as someone with whom she had sex" and "that if he failed to persuade her of that fact, he would leave her representation to Edwards and Cassell and no longer represent her." Mr. Boies did not say that on May 19th or at any other time when I was present.

1

6. In fact, the purpose of the May 19th meeting with Mr. Boies was for Mr. Dershowitz to propose a method to persuade Mr. Boies that his client was mistaken about having sex with Mr. Dershowitz. Mr. Dershowitz proposed to show using his own records of travel and calendars that he could not have been present at the times alleged as he was demonstratively elsewhere. However, Mr. Dershowitz did not have the records with him at that meeting and a later meeting was scheduled for Mr. Dershowitz and his paralegal to present the records. Neither at or prior to the May 19th meeting, had Mr. Dershowitz given anything for Mr. Boies to evaluate the issue further.

7. I am informed that Mr. Dershowitz has also asserted that at a meeting on June 1, 2015, "Boies said his goal was to persuade Virginia Roberts that she was mistaken in identifying me as a person with whom she had sex." Mr. Boies never said that in my presence, and what he did say in my presence both before and after June 1, 2015 was inconsistent with what Mr. Dershowitz ascribes to Mr. Boies. Mr. Boies said he would discuss Mr. Dershowitz presentation with his client and see if it changed the client's mind regarding her recollections but he also said that the client strongly believed what she was saying.

8. At Mr. Dershowitz's request I attended a meeting on July 6, 2015, at the Boies Schiller Flexner offices in New York City with David Boies and Sigrid McCawley with Mr. Dershowitz participating by Skype. The purpose of the meeting as stated at the meeting, and as stated to me by Mr. Dershowitz prior to the meeting, was to continue his efforts to persuade Mr. Boies and Ms. McCawley that Mr. Dershowitz had not been in any of the places where the client said Mr. Dershowitz had sex with her at any relevant time. The assertion by Mr. Dershowitz that Mr. Boies had, by this time, stated that he was convinced that Mr. Dershowitz had not had sex with the client or had expressed this view in my presence, is not accurate.

   (a) Mr. Boies indicated at the July 6th meeting that while the information was "useful" he had open questions about what he was given, and that there were gaps in what he was being given. Moreover, there were locations where Mr. Dershowitz was alleged to have had sex with the client with respect to which Mr. Dershowitz had not yet produced sufficient documentation.

   (b) The meeting ended with Mr. Dershowitz promising to produce additional materials to BSF and with the parties planning to have another meeting to review those materials.

9. Throughout this process, Mr. Dershowitz appeared determined that the outcome of those meetings would vindicate him. At various points, Mr. Boies did say that if he became convinced that his client was honestly mistaken about Mr. Dershowitz that he would convey that view to his client and that if he could not convince her, his firm would consider withdrawing from her representation. However, Mr. Boies also said that while he had an open mind on this matter, in light of the steps his firm had taken to verify the client's accounts, and the other evidence of which he was aware, Mr. Dershowitz would have to produce compelling proof to convince him the client was mistaken. Following

the July 6, 2015 meeting, Mr. Dershowitz expressed to me that he believed he was making progress in convincing Mr. Boies that the client was mistaken in identifying Mr. Dershowitz as someone with whom she had sex. I told Mr. Dershowitz that I thought he was overly optimistic and reading things into what Mr. Boies was saying and hearing what he wanted to hear. I truly believe this was the case, i.e., that Mr. Boies was making careful and guarded statements consistent with statements lawyers often make in settlement discussions and that Mr. Dershowitz, who urgently wanted the case to go away, was reading things into those statements that weren't there.

10. My recollection is that, at all times, Mr. Boies remained adamant that the client's assertions about Mr. Dershowitz represented her best, honest recollection. For example, at one point, Mr. Dershowitz told Mr. Boies that Ms. Roberts could well believe that she had sex with Mr. Dershowitz because she might be confusing Mr. Dershowitz with Nathan Myhrvold who spent a lot of time with Mr. Epstein and who looked a lot like Mr. Dershowitz. Mr. Dershowitz urged Mr. Boies to convince his client that she was mistaken and that she had actually had sex with Mr. Myhrvold. Mr. Boies told Mr. Dershowitz that he obviously did not have personal knowledge as to what had or had not happened, but that he had taken steps to verify that Ms. Roberts was telling the truth as she believed it. Shortly thereafter, I came to understand that Ms. Roberts had taken, and passed, a lie detector test.

11. At no time in my presence, whether in the presence of Mr. Dershowitz or outside of it, did Mr. Boies ever say that he believed or was convinced that Ms. Roberts was mistaken or that Mr. Dershowitz did not have sex with Ms. Roberts. Ms. McCawley said very little at the meetings. Furthermore, I do not recall Ms. McCawley ever expressing any doubt that Mr. Dershowitz had sex with Ms. Roberts and I am confident that I would recall such a statement if it was made, given the circumstances. In addition, Mr. Dershowitz never suggested to me that Ms. McCawley doubted that Ms. Robert's allegations were false.

_____
David S. Stone

4/5/2019
_____
Date



KAITLIN MAY LUZZI
ID # 2448450
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires July 31, 2019

3