# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

                    Plaintiff,

      v.

ALAN DERSHOWITZ,

                    Defendant.

1:19-CV-03377

ECF CASE

---

# MEMORANDUM OF LAW
# IN SUPPORT OF ALAN DERSHOWITZ'S MOTION TO DISQUALIFY

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

    The Dershowitz Declaration ................................................................................................ 2

ARGUMENT .......................................................................................................................... 7

    I.    THE BOIES SCHILLER FIRM SHOULD BE DISQUALIFIED FOR THE REASONS STATED WITHIN THE DECLARATION OF BRUCE A. GREEN SUBMITTED IN SUPPORT OF PROF. DERSHOWITZ'S MOTION TO DISQUALIFY. ................ 7

        The Firm Should Be Disqualified to Prevent its Misuse of Prof. Dershowitz's Confidential Information. .................................................................................................................... 8

        The Firm Should Be Disqualified Under the Advocate-Witness Rule................................. 12

    II.    THIS COURT HAS BROAD AUTHORITY TO DISQUALIFY THE BOIES SCHILLER FIRM AS COUNSEL IN THIS MATTER AND SHOULD DO SO WHERE ANY DOUBT EXISTS AS TO THE FIRM AND ITS ATTORNEYS' COMPLIANCE WITH ETHICAL DUTIES.................................................................................................................... 13

    III.    THE BOIES SCHILLER FIRM MUST BE DISQUALIFIED BECAUSE OF IRRECONCILABLE CONFLICTS OF INTEREST AND THE IMPLICATION OF THE ADVOCATE-WITNESS RULE IMPUTED TO THE BOIES SCHILLER FIRM IN ITS ENTIRETY ........................................................................................................... 16

        A.    Conflicts of Interest.......................................................................................... 16

        B.    The Advocate-Witness Rule ............................................................................. 26

    CONCLUSION.................................................................................................................... 27

TABLE OF AUTHORITIES

**Cases**

*Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04-cv-3090, 2004 U.S. Dist. LEXIS 20723, 2004 WL 2346152.................................................................................................................. 8

*Allegaert v. Perot*, 565 F.2d 246, 248 n.3 (2nd Cir. 1977) ......................................... 18

*Arifi v. de Transp. du Cocher, Inc.*, 290 F.Supp.2d 344 (E.D.N.Y.2003) ...................... 15

*Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 U.S. Dist. LEXIS 17434, 2011 WL 672254 (S.D.N.Y. Feb. 22, 2011) ................................................................ 10

*Bd. of Educ. v. Nyquist*, 590 F.2d 1241 [2nd Cir. 1979] ....................................... 16, 23

*Benevida Foods, LLC v. Advance Magazine Publishers Inc.*, No. 15 CV 2729, 2016 U.S. Dist. LEXIS 81186 (S.D.N.Y. June 15, 2016).................................................................... 10, 17

*Bowers v. Ophthalmology Group*, 733 F.3d 647 (6th Cir. 2013). ................................ 20

*Cardinale v. Golinello*, 43 N.Y.2d 288 (1977) ........................................................... 22

*Chinese Auto. Distributors of Am. LLC v. Bricklin*, No. 07 CIV. 4113, 2009 WL 47337 (S.D.N.Y. 2009) ............................................................................................... 19, 22

*Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228(S.D.N.Y. 2010) ................................ 12

*Doe v. United States, Case No. 9:08-cv-80736-KAM*....................................................... 3

*Edwards v. Dershowitz*, Case no. CACE 15-000072 ...................................................... 4

*Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 563 (2nd Cir. 1973)........................... 21, 23

*Evans v. Artek Sys. Corp.*, 715 F.2d 788 (2ND Cir. 1983)..............................8, 14, 19

*Filippi v. Elmont Union Free School Dist. Bd. of Educ.*, 722 F. Supp. 2d 295 (E.D.N.Y. 2010) 15, 21

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2nd Cir. 1977)........................ 22

*Glacken v. Inc. Village of Freeport*, CIV No. 09-4832 (DRH)(AKT), 2010 WL 3943527 (E.D.N.Y. 2010) ...................................................................................................... 14

*Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2ND Cir. 1981) ................................ 14

*Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737 (2nd Cir. 1978). ............................ 15

*Harris v. Sculco*, 86 A.D.3d 481 (1st Dept. 2011) ....................................................... 14

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127 (2d Cir. 2005)............. passim

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2ND Cir. 2005).......... 13

*Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565 (S.D.N.Y. 1987) ...................... 22

*Lamborn v. Dittmer*, 873 F.2d 522 (2ⁿᵈ Cir. 1989)…………………………………………..26, 27

*Lott v. Morgan Stanley Dean Witter & Co. Long-Term Disability Plan*, No. 03 CIV.9235 HB, 2004 WL 2980193 (S.D.N.Y. 2004) ...................................................................................... 17

*Madison 92nd Street Associates LLC. v. Marriott International, Inc. et. al.*, Case No. 1:13-cv-00219, 2013 WL 5913382 (S.D.N.Y 2013)…………………………………………………18, 24

*Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Capital, Inc.*, No. 14 CIV. 10143 CM, 2015 WL 1062167 (S.D.N.Y. 2015)................................................................... 15, 18

*Matter of Abrams*, 62 N.Y.2d 183 (1984)................................................................................ 15

*Miroglio v. Morgan Fabrics Corp.*, 340 F. Supp. 2d 510 (S.D.N.Y. 2004) ................................ 15

*Mitchell v. Metropolitan Life Ins. Co.*, 01 Civ. 2112, 2002 U.S. Dist. LEXIS 4675, 2002 WL 441194 (S.D.N.Y. March 21, 2002)........................................................... 10, 18, 20, 23

*Morgan Fabrics Corp.*, 340 F.Supp.2d 510  (S.D.N.Y. 2004) ...................................................... 21

*Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173 (2d Cir. 2009)................................ 12, 14, 27

*Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080 (S.D.N.Y. 1989) ............ 18, 22

*Papyrus Tech. Corp. v. N.Y.S.E.*, 325 F.Supp.2d 270 (S.D.N.Y. 2004) ........................................ 22

*Parnes v. Parnes*, 80 A.D.3d 942 (3ʳᵈ Dept. 2011 ...................................................................... 14

*Revise Clothing v. Joe's Jeans Subsidiary, Inc.*, 687 F.Supp.2d at 394 (S.D.N.Y 2010)............. 21

*S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437 (1987)................ 14, 15

*Scantek Med., Inc. v. Sabella*, 693 F.Supp.2d 235 (S.D.N.Y. 2008). ............................................ 19

*Silver Chrysler Plymouth, Inc. v. Chrysler Mot. Corp.*, 518 F.2d 751 (2ⁿᵈ Cir. 1975)................. 18

*Sheldon Solow v. W.R. Grace* & Co., 83 N.Y.2d 303 (1994). ...................................................... 27

*Spectrum Sys. Intl. Corp. v. Chemical Bank*, 575 N.Y.S.2d 809 [1991] ...................................... 25

*T. C. Theatre Corp. v. Warner Brothers Pictures, Inc.*, 113 F. Supp. 265 (S.D.N.Y.1953)8, 18, 19

*Tekni-Plex, Inc. v. Meyner and Landis*, 651 N.Y.S.2d 954 (1996) ............................................... 25

*Ullrich v. Hearst Corp.*, 809 F.Supp. 229 [S.D.N.Y.1992])................................................. 19, 23

*United States Football League v. National Football League*, 605 F.Supp. 1448 (S.D.N.Y. 1985). ................................................................................................................................. 19, 21

*United States v. Oberoi*, 331 F.3d 44 (2ⁿᵈ Cir. 2003); ............................................................... 15

*United States v. Prevezon Holdings Ltd.*, 839 F.3d 227 (2016) ...................................................... 8

*United States v. Standard Oil Co.*, 136 F. Supp. 345 (S.D.N.Y. 1955) ........................................ 18

*World Food Sys., Inc. v. Bid Holdings,* Ltd., No. 98 CIV 8515 VM KNF, 2001 WL 246372 (S.D.N.Y. 2001) ........................................................................................................... 14

*Young v. Cent. Square Cent. Sch. Dist.*, 213 F. Supp. 2d 202 (N.D.N.Y. 2002) ............................ 9

*Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426 (N.D.N.Y. 2012) ............................ 11, 17

**Statutes**

ABA Model Rules of Professional Conduct 1.10(a) ................................................................... 21

ABA Model Rules of Professional Conduct Rule 1.9 ................................................................ 20

Fed. Civ. P. Rule 21 ...................................................................................................................... 3

Fed. R. Civ. P. 12(f) ...................................................................................................................... 3

New York Rules of Professional Conduct, Rule 1.10 ....................................................... passim

New York Rules of Professional Conduct, Rule 1.18 ....................................................... passim

New York Rules of Professional Conduct, Rule 1.18(c) ..................................................... 10,17

New York Rules of Professional Conduct, Rule 1.18(d)(2) .................................................... 11

New York Rules of Professional Conduct, Rule 1.7 .......................................................... passim

New York Rules of Professional Conduct, Rules 1.6 ......................................................... passim

New York Rules of Professional Conduct, Rule 1.9 .......................................................... passim

New York Rules of Professional Conduct, Rule 1.9(a) ............................................................ 8

New York Rules of Professional Conduct, Rule 1.9(c) ............................................................ 8

New York Rules of Professional Conduct, Rule 3.7 .......................................................... passim

New York Rules of Professional Conduct, Rule 3.7(a) ...................................................... passim

New York Rules of Professional Conduct, Rule 3.7(b) ............................................................ 12

New York Rules of Professional Conduct, Rules 3.7(b)(1) ............................................. 1, 7, 27

New York Rules of Professional Conduct, Rules 3.7(b)(2) ............................................. 1, 7, 27

New York Rules of Professional Conduct, Rule 4-1.8(c) ....................................................... 24

**Other Authorities**

Deborah L. Rhode "David Boies's Egregious Involvement with Harvey Weinstein", New York Times, November 9, 2017 ................................................................................................... 25

John Carreyrou, "Theranos and David Boies Cut Legal Ties," The Wall Street Journal, November 20th, 2016) ......................................................................................................... 25

Restatement (3rd) Of Law Governing Lawyers § 124 ...................................................... 22

Restatement (3rd) of the Law Governing Lawyers § 132 ............................................. 20

Sec. 14, Restatement (3rd) Law Governing Lawyers ............................................. 17, 23

Steven Davidoff Solomon, "Boies Dual Roles at Theranos Set Up Conflict", New York Times, February 2nd, 2016 ................................................................................................... 24

## PRELIMINARY STATEMENT

Defendant, Alan Dershowitz, by and through his attorneys, hereby respectfully moves the Court for an Order disqualifying the law firm of Boies Schiller Flexner LLP (hereinafter the "Boies Schiller Firm") as counsel for the Plaintiff Virginia Giuffre (hereinafter "Plaintiff" or "Giuffre"), pursuant to, (a) Rules 3.7(b)(1) and (2) of the New York Rules of Professional Conduct, and individual attorneys within the Boies Schiller Firm pursuant to Rule 3.7(a) of the New York Rules of Professional Conduct; (b) due to inherent and nonwaivable conflicts of interest by the Boies Schiller Firm as described herein as it relates to this litigation pursuant to Rules 1.6, 1.7, 1.9, 1.10, and/or 1.18 of the New York Rules of Professional Conduct; (c) pursuant to the discretionary power of this Respected Court to order disqualification; and (d) for such other and further relief as to the Court may seem just and proper.

This Memorandum of Law is respectfully submitted in support of the instant motion of Defendant, Professor Alan Dershowitz (hereinafter "Prof. Dershowitz" or "Defendant") seeking the disqualification of the Boies Schiller Firm from representing the Plaintiff in this action. The basis for firm wide disqualification are the multiple related incidents of unethical conduct by the Boies Schiller Firm that have caused severe conflicts of interest and have implicated the advocate-witness rule, that mandate firm wide disqualification.

Incorporated by reference herein, as if fully set forth herein, are the facts, arguments, exhibits and/or opinions contained within the Declaration of Alan Dershowitz and the Declaration of Bruce A. Green that have been filed in support of this motion.

## STATEMENT OF FACTS

### The Dershowitz Declaration

In support of the instant Motion to Disqualify, Prof. Dershowitz has submitted a Declaration, along with corresponding exhibits, that details the factual history relevant to this motion. **In the interest of brevity, we respectfully direct the Court to the Declaration of Alan Dershowitz and accompanying exhibits for a full recitation of the factual background that is relevant to this motion, and the source for the following abbreviated factual synopsis.**

Prof. Dershowitz is a law professor at Harvard Law School, an author, and performs legal work on a consulting basis. Attorneys David Boies (hereinafter "Boies") and Sigrid McCawley (hereinafter "McCawley"), Carlos Sires (hereinafter "Sires") are partners of the Boies Schiller Firm. Boies is a name partner of the Boies Schiller Firm, which maintains offices in New York, Florida and other locations in the United States. McCawley and Sires are partners at the Boies Schiller Firm's Fort Lauderdale office.

The root of this litigation is the highly publicized prosecution of wealth manager Jeffrey Epstein (hereinafter "Epstein"), who in 2005 was accused of sexual crimes involving underage females. Prof. Dershowitz met Epstein in 1996 and the two maintained a professional and academic relationship until Prof. Dershowtiz was retained by Epstein to be part of his legal defense team following the aforementioned accusations. Prof. Dershowitz, along with other prominent attorneys, arranged a plea bargain under which Epstein would enter a guilty plea to a solicitation of prostitution charge, be sentenced to 18 months in prison, register as a sex offender, and settle all civil lawsuits filed against him by alleged victims. Prof. Dershowitz was not

involved in drafting a non-prosecution agreement that was executed in regard to the case, nor was Prof. Dershowitz accused of any misconduct at the time.

In 2008, several of Epstein's alleged victims brought a lawsuit against the government under Crime Victims' Rights Act ("the CVRA lawsuit"), alleging that prosecutors had failed to inform them of the Epstein plea deal (*Doe v. United States, Case No. 9:08-cv-80736-KAM*). Giuffre was not one of these alleged victims.

However, on December 30, 2014, Giuffre's attorneys Bradley Edwards and Paul Cassell filed a Motion Pursuant to Fed. Civ. P. Rule 21 for Joinder in Action through which they sought to include two alleged victims of Epstein as plaintiffs in the CVRA lawsuit. One of those individuals was Giuffre. Giuffre alleged that she had sex with several of Epstein's prominent acquaintances, including Prof. Dershowitz.

Prof. Dershowitz believes the false allegations were purposefully filed in a public document and leaked to the media, despite that other pleadings and documents in the case were filed under seal. Prof. Dershowitz believes the reason behind this action was a plan by Giuffre and her attorneys to secure a settlement from billionaire Leslie "Les" H. Wexner.[1]

As false accusations against Prof. Dershowitz were made in a publicly filed court pleading, it was not long before media outlets around the world began reporting about the inflammatory accusations. In response, Prof. Dershowitz vehemently denied the allegations,

---

[1] In fact, Giuffre's allegations against Prof. Dershowitz contained the in the Motion for Joinder and in subsequent court filings in the CVRA case were eventually stricken from the record by Honorable Kenneth A. Marra, United States District Court for the Southern District of Florida *sua sponte* as being redundant, immaterial, impertinent, or scandalous matter pursuant to Fed. R. Civ. P. 12(f). (*See* **EXHIBIT G** to Dershowitz Declaration)

defended himself in the media against Giuffre's false allegations and accused Giuffre' lawyers, Cassell and Edwards, of professional misconduct.[2]

On January 22, 2015, after Prof. Dershowitz completed an interview defending himself on the *Today Show*, Carlos Sires, a partner at the Fort Lauderdale office of the Boies Schiller Firm sent Prof. Dershowitz an unsolicited e-mail offering his legal assistance at the Boies Schiller Firm. Unbeknownst to Prof. Dershowitz, this was the very law firm secretly representing Giuffre in her claims against him. *See* **EXHIBIT H** to the Dershowitz Declaration.

Prof. Dershowitz and Sires discussed Giuffre's allegations on the phone, and during the conversation Sires stated he believed the allegations to be false. Prof. Dershowitz, in response to Sires' offer to assist, asked Sires whether he and his firm would be willing to join his legal team as local counsel in Fort Lauderdale where the case had been filed. In a series of emails, Sires informed Prof. Dershowitz that they (the Boies Schiller Firm) could help. <u>At this point Prof. Dershowitz reasonably believed that a lawyer-client relationship had been formed with the Boies Schiller Firm.</u>

Based on this belief, Prof. Dershowitz had relevant documents sent to Sires, including a detailed memorandum marked "confidential l/c privilege" describing how he intended to disprove Giuffre's allegations against him and his legal strategy for the defamation lawsuit involving Cassell and Edwards. This highly confidential memorandum was intended for members of Prof. Dershowitz's legal team only. It detailed strategy regarding Prof. Dershowitz's defense to Giuffre's allegations and would be highly prejudicial to Prof. Dershowitz if his adversaries were to possess it. When Prof. Dershowitz disclosed this material to Sires he did so with the confidence that the Boies Schiller Firm was representing him. However, unbeknownst

---

[2] As a result, Prof. Dershowitz and Giuffre's attorneys filed defamation claims against each other. (See *Edwards v. Dershowitz*, Case no. CACE 15-000072). The case was ultimately settled and the Giuffre's attorneys withdrew the accusation against Prof. Dershowitz and acknowledged it was "a mistake" to have included it. (*See* **EXHIBIT F** to Dershowitz Declaration).

to Prof. Dershowitz at the time the Boies Schiller Firm was representing Giuffre in regard to her allegations against him - the same allegations at issue in the instant action. Sires received and read this confidential memorandum and commented on it and provided additional material relevant to Prof. Dershowitz's defense in an email to Prof. Dershowitz. However, a day after he received the confidential memorandum, and eight days after he first contacted Prof. Dershowitz, Sires informed Prof. Dershowitz that the Boies Schiller Firm could not represent him due to an undisclosed conflict. The Boies Schiller Firm never presented Prof. Dershowitz with a conflict waiver, nor did the Boies Schiller Firm inform Prof. Dershowitz that the conflict was due to its representation of Giuffre. In fact, Prof. Dershowitz was told a pretextual and false reason as to why the Boies Schiller Firm could not represent him.

On May 19th 2015, Prof. Dershowitz met Boies and told him his records proved that Giuffre's allegations were false. Boies expressed his disapproval that Cassell and Edwards included the allegations their federal filing and that he would have opposed it if he had been consulted. Boies further stated that he was convinced that Giuffre was mistaken in alleging that she had sex with Prof. Dershowitz, and that it was his obligation to try to persuade her to acknowledge that Prof. Dershowitz could not have been among the people with whom she had sex.

Prof. Dershowitz put together a timeline and presented documentary evidence regarding his whereabouts between September 1999 and September 2002, the time period during which Giuffre claimed to have been associated with Epstein, and presented that information to Boies and McCawley at a meetings at the Boies Schiller Firm on June 1, 2015 and July 6, 2019. At the end of the meeting, Boies stated that he found the evidence extremely compelling and that he and McCawley would meet with Giuffre in the near future and try to convince her that she had made a mistake in identifying Prof. Dershowitz as someone she had sex with.

After the meetings described above, Prof. Dershowitz spoke with Boies by telephone about this case on several occasions. Prof. Dershowitz recorded a telephone conversation with Boies in which Boies said it would have been "impossible" for Prof. Dershowitz to have been at the suspect locations and that his client is "wrong, simply wrong". However, Boies and the Boies Schiller Firm and continued to represent Giuffre, and do so in the instant action as counsel to Giuffre for claims made directly against Prof. Dershowitz. As discussed below, the Boies Schiller Frim is so entrenched in this litigation that multiple attorneys have become fact witnesses, with information and testimony relevant to this action that is adverse to their own client, mandating firm-wide disqualification.

Turning to the instant matter, the Plaintiff's Complaint alleges that Prof. Dershowitz defamed by accusing her of perjury. *See* Plaintiff's Complaint attached as **EXHIBIT A** to the Dershowitz Declaration. The Complaint states that Prof. Dershowitz's position was that Giuffre "and her attorneys hatched a scheme to falsely accuse Dershowitz of sex trafficking as part of a criminal attempt to extort a settlement from another party." Complaint at Para. 14. Her attorneys included Boies and McCawley, who Prof. Dershowitz has publicly asserted believed, and acknowledged to him, that Giuffre was wrong about having sexual relations with him. The Complaint dedicates eleven paragraphs to describing and contesting Prof. Dershowitz's assertions, alleging them to be false and defamatory. Complaint at Para. 69-79, and in turn, Prof. Dershowitz as detailed in his Declaration filed herein, states otherwise, putting the actions and allegations between himself, Giuffre and the Boies Schiller Firm at issue. In his defense, Prof. Dershowitz intends to call as trial witnesses Boies and McCawley, and likely other attorneys in the Boies Schiller Firm. He also intends to take discovery, including depositions, from Sires and other attorneys in the Boies Schiller Firm. Prof. Dershowitz intends to question attorneys in the Boies Schiller Firm as to the facts and issues related to the accusations by Giuffre, and the

involvement of the Boies Schiller Firm, as detailed in his Declaration and alleged in the Complaint. He further intends to question Boies, McCawley and Boies Schiller Firm attorneys in regard to the accusations and affidavits submitted by Sarah Ransome and Maria Farmer, and Prof. Dershowitz's belief that Boies sought out others to make accusations against Prof. Dershowitz since he did not withdraw bar complaints he made about Boies, McCawley, and Boies Schiller Firm. As detailed herein and within the accompanying Declarations of Alan Dershowitz, and of Bruce A. Green, due to the inherent conflicts of interest and the implication of the advocate-witness rule, the Boies Schiller Firm must be disqualified from representing the Plaintiff in this action.

## ARGUMENT

### I.    THE BOIES SCHILLER FIRM SHOULD BE DISQUALIFIED FOR THE REASONS STATED WITHIN THE DECLARATION OF BRUCE A. GREEN SUBMITTED IN SUPPORT OF PROF. DERSHOWITZ'S MOTION TO DISQUALIFY.

In support of his Motion to Disqualify, Prof. Dershowitz submits the expert Declaration of Bruce A. Green. Incorporated by reference herein, as if fully set forth herein, are the facts, arguments, exhibits and opinions contained within Declaration of Bruce A. Green, which is the source for the content in this section as summarized below. **We respectfully direct the Court to the Declaration of Bruce A. Green for a full recitation of his expert analysis and opinion, and discussion on the applicable law.**

Bruce A. Green (hereinafter "Prof. Green") holds the Louis Stein Chair at Fordham University School of Law, where he serves as Director of the Louis Stein Center for Law and Ethics. (For further detail on Prof. Green's qualifications to provide expert opinions on questions of lawyers' professional conduct, please see the Green Declaration and his *curriculum vitae* attached thereto.) Prof. Green reviewed material relevant to this action and bases his opinions on

the facts set forth in Prof. Dershowitz's Declaration in support of his motion and his review of the exhibits accompanying it and of the Complaint.

After his review and analysis, Prof. Green rendered the following opinion:

Under the applicable professional conduct rules and judicial decisions, given the facts provided for my review, my opinion is that the Boies Schiller Firm should be disqualified for two independent reasons. First, the Firm's disqualification is necessary to protect Prof. Dershowitz and the integrity of the proceedings against the Firm's misuse of his confidential information, a problem that is not curable simply by screening the lawyers who initially received Prof. Dershowitz's confidential information. Second, the Firm's disqualification is necessary to protect Prof. Dershowitz and the integrity of the proceedings from the distortions that are likely to result from the role of the Firm's lawyers as necessary witnesses whose prior work is a central issue in this lawsuit, a problem that is not curable simply by forbidding the lawyer-witnesses from serving as trial counsel.

### The Firm Should Be Disqualified to Prevent its Misuse of Prof. Dershowitz's Confidential Information.

It is the universal understanding in the United States that a lawyer or law firm may not disclose a former client's confidential information or use it to the former client's disadvantage, without the former client's consent. *See, e.g.,* N.Y. Rules of Professional Conduct ("N.Y. Rules"), Rules 1.6 & 1.9(c). Further, for more than 60 years, courts in this Circuit have recognized that to prevent a lawyer or law firm from misusing a former client's confidential information, the firm must be disqualified where there is an unfair risk that the firm will use the former client's confidential information against him. The relevant standard – the "substantial relationship" standard – was developed more than 65 years ago by Judge Weinfeld in *T. C. Theatre Corp. v. Warner Brothers Pictures, Inc.*, 113 F. Supp. 265 (S.D.N.Y.1953). In *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2016), the Court of Appeals set forth the standard as follows:

The classic test in this Circuit for whether disqualification is warranted in successive representation cases is set forth in *Evans v. Artek Sys. Corp*: disqualification is warranted where: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client." *715 F.2d 788, 791 (2d Cir. 1983)*; accord N.Y. Rules of Prof'l Conduct 1.9(a).

"A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04-cv-3090, 2004 U.S. Dist. LEXIS 20723, 2004 WL 2346152, at *10 (S.D.N.Y. Oct. 19, 2004) (citation omitted); see also N.Y. Rules of Prof'l Conduct

1.9 cmt. 3 (subsequent representations are substantially related if, among other things, they "involve the same transaction").

The disqualification standard is codified in Rule 1.9(a) of the N.Y. Rules as follows: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

The Boies Schiller Firm plainly should be disqualified under a straightforward application of the substantial relationship standard. Prof. Dershowitz is a former client of the firm: Sires, a partner of the Firm, offered his legal assistance, and Prof. Dershowitz accepted the offer and then provided confidential strategic information in reliance on his reasonable understanding that he had become a client.   Dershowitz Decl. at ¶¶ 33-40. That the lawyer-client relationship was short-lived is irrelevant, because one can presume that clients repose confidences in their lawyers from the very start, as Prof. Dershowitz did here. The Firm is now adverse to him in a substantially related litigation. Indeed, the factual relationship between the two representations could scarcely be closer.   The essential disputed question in both is whether Prof. Dershowitz had sexual relations with Giuffre.  And, finally, the confidential information that the Firm is presumed to have received, and did in fact receive, from Prof. Dershowitz was unquestionably relevant to the current lawsuit.

It is no solution that the Boies Schiller Firm later said the lawyers working on behalf of Giuffre were "screened" from Sires and Singer – who may or may not have been the only lawyers of the Firm to have access to Prof. Dershowitz's confidential information. Neither the N.Y. Rules nor the decisions in this Circuit permit "screening" in these circumstances.

The N.Y. Rules unequivocally forbid screening. The disqualification rule applies not only to the lawyers who were repositories of the former client's confidential information but to all the lawyers of their firm.  See N.Y. Rules, Rule 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule . . . 1.9, except as otherwise provided therein.").

Courts in this Circuit are more receptive to the idea of screening a disqualified lawyer, but not under the circumstances here.  As the district court noted in *Young v. Cent. Square Cent. Sch. Dist.*, 213 F. Supp. 2d 202, 217 (N.D.N.Y. 2002):

> "[T]he Second Circuit has expressed consistent skepticism about screening as a remedy for conflicts of interest and declared that such procedures ultimately must be rejected if they are subject to doubt." . . .  Thus, "courts have only approved screening procedures in the limited circumstances where a conflicted attorney possesses information unlikely to be material to the current action and has no contract with the department conducting the current litigation, which typically occurs only in the context of a large firm." . . . In addition, the law firm must have established the screening measures "from the first moment the conflicted attorney

transferred to the firm or, at a minimum, when the firm first received actual notice of the conflict." . . . Finally, even if such measures are taken, if there is still an "appearance of impropriety," the court should disqualify the attorney and her firm. . . . (Citations omitted.)

Courts in this Circuit allow the possibility of screening a disqualified lawyer who represented the former client at a different law firm or, in the case of an "of counsel" lawyer, outside the firm. See, e.g., *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("of counsel" lawyer); *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 U.S. Dist. LEXIS 17434, 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) (lawyer who switched law firms). Even in the case of a "migratory" or "lateral" lawyer, however, it is not always practical to screen the individual lawyer who was privy to the former client's confidential information before joining the firm. *See, e.g., Mitchell v. Metropolitan Life Ins. Co.*, 01 Civ. 2112, 2002 U.S. Dist. LEXIS 4675, 2002 WL 441194 at *3 (S.D.N.Y. March 21, 2002). And where lawyers previously represented a client while at their current firm, both they and that firm are forbidden from later appearing against that client in a substantially related matter; identifying and screening only the particular lawyers at the firm who may have been privy to the former client's confidences is neither fair nor practical.

Further, if screening were ever to be permitted to avoid a law firm's disqualification under Rule 1.9(a), this case would not be a strong candidate for breaking new ground. Given the small size of the Firm's Fort Lauderdale office, and that multiple lawyers in the office were involved in Prof. Dershowitz's representation, screening probably would not be permitted in the best of circumstances, even with regard to conflicts where screening is sometimes allowed. And these are not the best of circumstances, since there is no way to know how many other lawyers and non-lawyers at the Boies Schiller Firm had access to Prof. Dershowitz's information before the screen was purportedly put in place and how effectively the screen has been implemented during the four years prior to this lawsuit. And given the Firm's failure to check conflicts either before offering its assistance to Prof. Dershowitz or before soliciting and reviewing his strategic information, there is no reason for confidence that the Firm is especially punctilious in avoiding conflicts of interest and the harms against which the rules are meant to protect.

Even assuming for the sake of argument that Prof. Dershowitz was not a client of the Boies Schiller Firm in January 2015 but only a "prospective client," the result is the same. Relevant decisions apply essentially the same "substantial relationship" standard. Prospective clients are entitled to repose confidences in lawyers, and frequently do so, subject to the protections of the attorney-client privilege and the ethical duty of confidentiality, so that they and the lawyers can make an informed decision whether to establish a lawyer-client relationship. Recognizing that less confidential information is likely to be imparted by a prospective client than an actual client, however, Rule 1.18 of the N.Y. Rules is somewhat less restrictive, but not in any way relevant here.

Under Rule 1.18, absent the former prospective client's consent, a former lawyer may not be materially adverse to a former prospective client in "a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." N.Y. Rules, Rule 1.18(c). *See, e.g., Benevida*

10

*Foods, LLC v. Advance Magazine Publishers Inc.*, No. 15 CV 2729, 2016 U.S. Dist.
LEXIS 81186, at *44-45 (S.D.N.Y. June 15, 2016) (disqualifying law firm to whom
prospective client "divulged . . ., in their preliminary discussions, sensitive information
regarding Plaintiff's assessment of its own claims, its financial situation and risk
tolerance, and its litigation and settlement strategies," which "is precisely the type of
information that, if shared, can provide an opposing party with a substantial, unfair
advantage"); *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y.
2012) (disqualifying lawyer from representing a plaintiff in litigation against a former
prospective client who had disclosed relevant settlement strategy, finding: "[T]he Court
must maintain the integrity of the adversary process.  It would be an unfair disadvantage
for Defendants to be confronted by an attorney whom they believe possesses intimate
knowledge of their views and impressions of this litigation, even though that attorney
professes that he has no knowledge nor recalls any, and, if he did, he would not need it or
use it in a way to either alarm or harm Defendants.").  Further, the disqualified lawyer's
firm must also be disqualified unless "the lawyer who received the information took
reasonable measures to avoid exposure to more disqualifying information than was
reasonably necessary to determine whether to represent the prospective client."  N.Y.
Rules, Rule 1.18(d)(2).

In this case, even assuming that Prof. Dershowitz was only a prospective client of the
Boies Schiller Firm, the Firm must be disqualified from litigating against him in this
matter, which is substantially related to the former representation or proposed
representation, because the Firm unnecessarily acquired prejudicial, disqualifying
information.  Sires, a partner of the Firm, received Prof. Dershowitz's confidential "notes
concerning his acting in 'self-defense' to the charges leveled against him" and responded
by attaching an "opinion and Restatement section [that] relate" to those notes.
Dershowitz Decl. at ¶¶ 39-40.   Sires had no need to learn any confidential information
before conducting the conflict check that disclosed that the Firm already represented
Giuffre and therefore could not represent Prof. Dershowitz.  But Sires took absolutely no
measures, much less "reasonable measures," to avoid learning sensitive, confidential
information.

Finally, given the interest in ensuring the integrity of judicial proceedings, courts are
sparing in their evocation of principles such as "laches" or "equitable estoppel" in
connection with disqualification motions.  These principles are certainly inapplicable
here.  Although Giuffre would be prejudiced by losing the services of a law firm with
whom she has had a professional relationship for more than four years, that is not Prof.
Dershowitz's fault, and the passage of time does not excuse the Boies Schiller Firm's
failure to end the representation on its own when it became aware of the conflict.  Prof.
Dershowitz never consented to the Firm's representation of Giuffre.  On the contrary, he
filed disciplinary complaints against Boies, McCawley and other lawyers of the Firm
accusing them of, among other things, blatant conflicts of interest in representing Giuffre.
Despite these complaints, the Boies Schiller Firm was undeterred in representing Giuffre
in the current action.  There was not much more that Prof. Dershowitz could do until
now, because the Firm was not previously adverse to him in a lawsuit in which he could
move for its disqualification.  Given the opportunity, he has now moved expeditiously.

**The Firm Should Be Disqualified Under the Advocate-Witness Rule.**

In general, a lawyer may not serve as a trial advocate and as a witness in the same trial. Rule 3.7 of the N.Y. Rules codifies this restriction. The restriction protects against multiple harms. The Second Circuit explained in *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009):

We have identified four risks that Rule 3.7(a) is designed to alleviate: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

A lawyer's disqualification under Rule 3.7 is not necessarily imputed to the lawyer's firm. However, under Rule 3.7(b), other lawyers of the lawyer-witness's firm are forbidden from serving as advocates at trial if "it is apparent that the testimony may be prejudicial to the client." The Second Circuit has identified the test as follows: "[A] law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray v. Metropolitan Life Ins. Co.*, *supra*, 583 F.3d at 178-79. Further, "'[p]rejudice' in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" *Id.* at 178 (citation omitted).

Disqualification motions under Rule 3.7 are often considered to be premature at the outset of a lawsuit, because it is often hard to know before depositions are taken whether a lawyer will be a necessary witness. But that is not always the case. *See, e.g.*, *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2010) (denying pro hac vice motion based in part on Rule 3.7). Here, it is plain from the face of the Complaint that Boies and other lawyers who previously represented Giuffre are necessary, indeed essential, witnesses, whose credibility has been placed in issue by the Complaint. A central question raised by the Complaint is whether "Roberts and her lawyers" – including lawyers of the Boies Schiller Firm – collaborated in making false statements against Prof. Dershowitz. Complaint at ¶ 68 et seq. If anyone, in addition to Giuffre and Prof. Dershowitz, is a necessary witness regarding the lawyers' role, it is Giuffre's prior lawyers themselves.

Further, the Complaint itself makes it plain that aspects of the Boies Schiller Firm's lawyers' testimony will be prejudicial to Giuffre's claims that she in fact had sexual relations with Prof. Dershowitz at Jeffrey Epstein's behest and that her public claims to that effect were not fabricated in collaboration with her lawyers. The Complaint refers to a course of conversations and communications between Boies and Prof. Dershowitz in which Prof. Dershowitz asserted that Giuffre was mistaken in her claim. Complaint at ¶¶ 68-77. The Complaint acknowledges that, in defending himself publicly, Prof. Dershowitz later relied on Boies's statements apparently agreeing with Prof. Dershowitz.

The Complaint asserts that in doing so, Prof. Dershowitz took Boies's statements "out of context." Id. at ¶¶ 69 & 79.   Thus, the meaning and import of Boies's extrajudicial statements is a central issue in the case by virtue of the Plaintiff's pleadings.  Perhaps Boies can explain away his extrajudicial statements in a manner that is not embarrassing to him and detrimental to Giuffre.  For example, it may suffice for him to explain why, in context, his statements casting doubt on Giuffre's credibility should be understood as having been merely "hypothetical," as the Complaint alleges they were.  Id. at ¶ 69.  But that may not suffice as a strategy, since Prof. Dershowitz will surely challenge this explanation, and therefore Giuffre's trial counsel must be free to discredit Boies's prejudicial statements even at the expense of Boies's own professional reputation. Boies's partners and associates will not have the necessary independence.

Finally, the Complaint puts in issue not only the past conduct of some of the Boies Schiller Firm's individual lawyers but, at least implicitly, the ongoing conduct of the Firm, including its filing and prosecution of this lawsuit.  The Complaint disputes that Giuffre and her lawyers – including the Boies Schiller Firm – engaged in a scheme to extort money by falsely accusing Prof. Dershowitz and other men of having sexual relations with Giuffre, an alleged minor victim of sex trafficking.  If the jury is aware that the Boies Schiller Firm's lawyers are serving as trial counsel, it cannot avoid considering whether the lawsuit itself is in furtherance of, and proof of, the alleged scheme. As long as the Boies Schiller Firm remains in this case, its conduct of the litigation will be an implicit, if not explicit, subject of the lawsuit, making the Firm's trial lawyers, at the very least, unsworn witnesses.  The interest in preserving the integrity of the proceedings weighs heavily against permitting this further complexity.

The legal analysis and opinion of Prof. Green make it clear that, pursuant to the applicable ethical rules and case law within the Second Circuit, disqualification of the Boies Schiller Firm is warranted. As further discussed below, it is in this Courts discretion to order disqualification, and the compelling factual basis in this particular case make disqualification necessary in order to avoid prejudice and maintain integrity and justice in this action.

## II.     THIS COURT HAS BROAD AUTHORITY TO DISQUALIFY THE BOIES SCHILLER FIRM AS COUNSEL IN THIS MATTER AND SHOULD DO SO WHERE ANY DOUBT EXISTS AS TO THE FIRM AND ITS ATTORNEYS' COMPLIANCE WITH ETHICAL DUTIES.

The "authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.' *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2ND Cir. 2005). Thus, a court "should not hesitate" to disqualify

counsel "if there be any doubt regarding…counsel's ability to fulfill counsel's ethical obligations." *World Food Sys., Inc. v. Bid Holdings,* Ltd., No. 98 CIV 8515 VM KNF, 2001 WL 246372 (S.D.N.Y. 2001); *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2ND Cir. 1983) (*"we have not hesitated to disqualify counsel when the circumstances warranted it"*); *Glacken v. Inc. Village of Freeport*, CIV No. 09-4832 (DRH)(AKT), 2010 WL 3943527 at *2 (E.D.N.Y. 2010) holding disqualification is appropriate *"where allowing the representation to continue would pose a 'significant risk of trial taint.'"* quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2ND Cir. 1981).

In determining whether to disqualify an attorney on the ground that he or she will likely be a witness, the court is guided, but not bound by, the standards set forth in Rule 3.7, and whether to disqualify an attorney [or a law firm] rests in the sound discretion of the Court. *Harris v. Sculco*, 86 A.D.3d 481 (1st Dept. 2011), citing *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.,* 69 N.Y.2d 437 (1987) (*holding that advocate witness rule provides guidance, not binding authority.*) The policy behind the Rule is that the roles of advocate and witness are inconsistent, and it is unseemly for a lawyer to argue his own credibility as a witness during a trial. *Id.* at 444.

Disqualification of counsel in the Second Circuit is guided by the New York Rules of Professional Conduct. *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2nd Cir. 2009). In addition to the Rules of Professional Conduct, a trial court "must consider the totality of the circumstances and carefully balance the right of a party to be represented by counsel of his or her own choosing against the other party's right to be free from possible prejudice due to the questioned representation" *See Parnes v. Parnes*, 80 A.D.3d 948, 952 (3rd Dept. 2011). When deciding a motion to disqualify, a Court must consider "the need to maintain the highest

standards of the profession." *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 738 (2nd Cir. 1978).

Despite the Court's reluctance to grant disqualification motions, a "Court must resolve any doubts in favor of disqualification." *Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Capital, Inc.,* No. 14 CIV. 10143 CM, 2015 WL 1062167, at 7 (S.D.N.Y. 2015) (citing *Arifi v. de Transp. du Cocher, Inc.,* 290 F.Supp.2d 344, 349 (E.D.N.Y.2003); *Filippi v. Elmont Union Free School Dist. Bd. of Educ.,* 722 F. Supp. 2d 295, 303 (E.D.N.Y. 2010) (*"[A]ny doubt is to be resolved in favor of disqualification"* (quotations omitted)).

It is well settled that the right for a litigant to have counsel is guaranteed but whom the litigant chooses to for representation may be limited. "While the right to counsel is absolute, the right to representation by the attorney of his choice is not." *See, Matter of Abrams,* 62 N.Y.2d 183, 196 (1984). The disqualification of an attorney does not deny a litigant counsel but impacts the party's interest of representation by its counsel of choice. *See, S &S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.,* 69 N.Y.2d 437 (1987). A litigant's choice of counsel can be overridden by an opposing party's right to proceed without the apprehension of possible prejudice. *S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.,* 69 N.Y.2d 437 (1987); *Matter of Abrams [Anonymous],* 62 N.Y.2d 183 (1984).

This Court is vested with the ability to disqualify counsel in this matter because of conflicts of interest that violate the New York Rules of Professional Conduct. *See, e.g., Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2nd Cir. 2005). The Second Circuit has unequivocally held that disqualification is appropriate where there is a risk that confidential information acquired from a former client may be used to the former client's disadvantage. *See, e.g., United States v. Oberoi,* 331 F.3d 44, 51 (2nd Cir. 2003); *Miroglio v. Morgan Fabrics Corp.,* 340 F. Supp. 2d 510, 512 (S.D.N.Y. 2004) (*noting disqualification is*

*warranted in appropriate circumstances to ensure faithful adherence to the attorney's obligation to preserve client confidences, even following termination of the attorney-client relationship.* citing *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 [2nd Cir. 1979]). The ethical rules recognize that attorneys working together in the same law firm share and discuss pending lawsuits. *Hempstead Video, Inc. v. Incorporated Village of Valley Stream,* 409 F.3d 127, 133 (2nd Cir. 2005).

Due to the compelling reasons as set herein and more fully forth in the Dershowitz Declaration and the Declaration of Bruce A. Green, Prof. Dershowitz respectfully requests that this Court exercise its discretionary power and disqualify the Boies Schiller Firm from representing the Plaintiff.

### III.   THE BOIES SCHILLER FIRM MUST BE DISQUALIFIED BECAUSE OF IRRECONCILABLE CONFLICTS OF INTEREST AND THE IMPLICATION OF THE ADVOCATE-WITNESS RULE IMPUTED TO THE BOIES SCHILLER FIRM IN ITS ENTIRETY

#### A.  Conflicts of Interest

In the Second Circuit, it is well-settled that the conflict of a single attorney shall be imputed to the attorney's entire firm if the attorney formerly represented a client in a substantially related matter to a matter in which the firm represents a client whose interests are materially adverse to the former client, and the attorney acquired confidential information of the former client that would be protected by Rule 1.6, 1.7 and/or Rule 1.9 of the New York Rules of Professional Conduct. *See e.g.*, Rule 1.10. As one court has explained, the "imputation rule is based upon the belief that when attorney-client confidences are disclosed to a member of the law firm, every other attorney in the law firm has the opportunity to ascertain the information

gleaned from disclosure." *Lott v. Morgan Stanley Dean Witter & Co. Long-Term Disability Plan*, No. 03 CIV.9235 HB, 2004 WL 2980193, at 4 (S.D.N.Y. 2004).

Furthermore, an attorney's intention of establishing an attorney-client relationship is <u>not</u> determinative of the existence of the relationship. <u>Rather, what matters is whether the "putative client" reasonably relied on the lawyer for legal services.</u> *See* Sec. 14, Restatement (3rd) Law Governing Lawyers. In any event, under Rule 1.18, absent the former prospective client's consent, a former lawyer may <u>not</u> be materially adverse to a former prospective client in "a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." N.Y. Rules, Rule 1.18(c). *See, e.g., Benevida Foods, LLC v. Advance Magazine Publishers Inc.*, No. 15 CV 2729, 2016 U.S. Dist. LEXIS 81186, at 44-45 (S.D.N.Y. 2016) (*disqualifying law firm to whom prospective client "divulged..., in their preliminary discussions, sensitive information regarding Plaintiff's assessment of its own claims, its financial situation and risk tolerance, and its litigation and settlement strategies," which "is precisely the type of information that, if shared, can provide an opposing party with a substantial, unfair advantage"*); *See also, Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012) (*disqualifying lawyer from representing a plaintiff in litigation against a former prospective client who had disclosed relevant settlement strategy, finding: "[T]he Court must maintain the integrity of the adversary process. It would be an unfair disadvantage for Defendants to be confronted by an attorney whom they believe possesses intimate knowledge of their views and impressions of this litigation, even though that attorney professes that he has no knowledge nor recalls any, and, if he did, he would not need it or use it in a way to either alarm or harm Defendants."*).

Successive representation on substantially related matters is the paradigmatic case for disqualification, because "the attorney is in a position to use the confidences gained through

prior conferences with a former client." *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080 (S.D.N.Y. 1989); *Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Capital, Inc.*, No. 14 CIV. 10143 CM, 2015 WL 1062167, at 7 (S.D.N.Y. 2015); *Madison 92nd St. Assocs.*, 2013 WL 5913382, at 11 (S.D.N.Y. 2013) (*Granting Defendant Host Hotels & Resorts, Inc.'s Motion for Sanctions against Boies, Schiller & Flexner, LLP*). A lawyer is prohibited from representing a person or entity "in the same or a substantially related matter in which that person's interests are materially adverse" to the interests of a former client or from using any confidences of a former client, without the consent of the former client after full disclosure. New York Rule 1.6. *Hempstead*, 409 F.3d at 133 (*"One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client."*).

It has been long held that "[T]he relevant inquiry is not limited to whether there are common legal claims or theories . . ., but extends to whether there are common factual issues that are material to the adjudication of the prior and current representations." *Mitchell v. Metropolitan Life Insurance* Co., No. 01 Civ. 2112, 2002 WL 441194, at 8 (S.D.N.Y. 2002). *See also*, *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 269 (S.D.N.Y.) reh'g denied by 125 F. Supp. 233 (S.D.N.Y. 1952); *Allegaert v. Perot*, 565 F.2d 246, 248 n.3 (2nd Cir. 1977); *United States v. Standard Oil Co.*, 136 F. Supp. 345, 355 (S.D.N.Y. 1955); *Silver Chrysler Plymouth, Inc. v. Chrysler Mot. Corp.*, 518 F.2d 751, 754 (2nd Cir. 1975).

Specifically, the Second Circuit has held that a Court should disqualify an attorney from representing a client in a particular case when: (1) the moving party is a former client of the adverse party's counsel; (2) a substantial relationship exists between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to,

relevant privileged information in the course of his prior representation of the client. *See e.g.,*
*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2nd Cir. 1983). Where the first two elements of the
conflict of interest test are satisfied and a moving party has shown both that it was a former client
of the adverse party's counsel and that there is a substantial relationship between the subject
matter of the prior representation and the present suit, there is an "irrebuttable presumption" that
the third element -that the attorney had or likely had access to relevant privileged information- is
also satisfied. *See, Scantek Med., Inc. v. Sabella*, 693 F.Supp.2d 235, 239 (S.D.N.Y. 2008). That
presumption is based both on the "difficulty of obtaining proof of breaches" and on the need to
prevent a lawyer from making "[a]dverse use of confidential information" by means other than
disclosure to the adverse party. *Chinese Auto. Distributors of Am. LLC v. Bricklin,* No. 07 CIV.
4113, 2009 WL 47337, at 2 (S.D.N.Y. 2009) (quoting *Ullrich v. Hearst Corp.*, 809 F.Supp. 229,
235 [S.D.N.Y.1992]); *See also, T.C Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265,
268 (S.D.N.Y.1953) *("The Court will assume that during the course of the former representation*
*confidences were disclosed to the attorney bearing on the subject matter of the representation. It*
*will not inquire into their nature and extent.").*

The Southern District of New York has further articulated the "substantial relationship"
test as follows: "if the facts giving rise to an issue which is material in both the former and the
present litigations are as a practical matter the same, then there is a 'substantial relationship'
between the representations for purposes of a disqualification motion." *United States Football*
*League v. National Football League*, 605 F.Supp. 1448, 1459. (S.D.N.Y. 1985). "It is the
congruence of factual matters, rather than areas of law, that establishes a substantial relationship
between representations for disqualification purposes." *Id.* at 1460.

Therefore, in determining whether a substantial relationship exists, the court evaluates the
similarities between the factual bases of the two representations. A commonality of legal claims

or issues is not required. At a functional level, the inquiry is whether the attorneys were trying to acquire information vitally related to the subject matter of the pending litigation. To accomplish this inquiry, the court must be able to reconstruct the attorney's representation of the former client, to infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client. What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship. Consequently, the representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct. *Bowers v. Ophthalmology Group*, 733 F.3d 647, 652 (6th Cir. 2013).

Furthermore, in establishing that two matters are substantially related, a "former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." ABA Model Rules of Professional Conduct Rule 1.9 cmt. *3.; see* Restatement (3rd) of the Law Governing Lawyers § 132 cmt. d(iii) (*"A concern to protect a former client's confidential information would be self-defeating if, in order to obtain its protection, the former client were required to reveal in a public proceeding the particular communication or other confidential information that could be used in the subsequent representation."*).

Therefore movant's counsel does not have to articulate the confidential information that its prior, adverse counsel possess because "to require such proof [that confidential information was disclosed to the former attorney] would 'put the former client to the Hobson's choice of either having to disclose his privileged information...or having to refrain from the disqualification motion altogether." *Mitchell v. Met. Life Ins. Co., Inc.,* No. 01 CIV 2112 (WHP), 2002 WL 441194 at 5 (S.D.N.Y. 2002). Thus, the Court " 'need not, indeed cannot, inquire

whether the lawyer did, in fact, receive confidential information during his previous employment, [but] where it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation, it is the court's duty to order the attorney disqualified.' " *Filippi*, 722 F.Supp.2d at 306-07 (quoting *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 563, 571 (2nd Cir. 1973)) (emphasis added); *Revise Clothing v. Joe's Jeans Subsidiary, Inc.*, 687 F.Supp.2d at 394-95 (S.D.N.Y 2010) *("The presumption is a substitute for proof: it 'arises in order to forestall a direct inquiry into whether confidential information was in fact transmitted by the client.' ")* (quoting *United States Football League v. National Football League*, 605 F.Supp. 1448, 1461 [S.D.N.Y. 1985]).

Furthermore, generally, an individual lawyer's conflict is imputed to his firm based on the presumption that "associated attorneys share client confidences." *Hempstead Video, Inc.*, 409 F.3d 127 at 133; *See also*, New York Rule 1.6. Where one member of a law firm is required to decline employment or to withdraw from employment for ethical reasons, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment. *See, ABA Model Rules of Professional Conduct 1.10(a)* *("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by ... Rule 1.9."* Rule 1.9)

Although the "presumption of confidence sharing within a firm" may be "rebutted" in very limited circumstances, (*Hempstead Video*, 409 F.3d at 133) the Boies Schiller Firm cannot establish this burden here. First and foremost, McCawley has already performed work in this proceeding *and* the underlying action(s). *See Morgan Fabrics Corp.*, 340 F.Supp.2d 510, 514 (S.D.N.Y. 2004) *(refusing to depart from the principle of imputation where the individual conflicted lawyer "has had direct personal involvement in the present and former*

*representation.*"). In fact, McCawley, is one of the Boies Schiller Firm attorneys who signed the Complaint in this action. *Cardinale v. Golinello*, 43 N.Y.2d 288, 293 (1977) (*imputing attorney's conflict to firm where conflicted lawyer "appears to have participated in the preparation of the summons and complaint in the present action").*

Furthermore, the Restatement has recognized, an "ethical wall" is insufficient where the individual disqualified lawyer was involved in the former representation giving rise to the conflict. *Papyrus Tech. Corp. v. N.Y.S.E.*, 325 F.Supp.2d 270, 278-79 (S.D.N.Y. 2004) (*"The touchstones of the imputation inquiry are the significance of the prohibited lawyer's involvement in and knowledge of the former client's confidences or secrets."*); Restatement (3rd) Of Law Governing Lawyers § 124 cmt. d(i) (2000) (*in certain circumstances "the lawyer's involvement and the nature and relevance of confidential information in the lawyer's possession might be such that screening will not remove imputation...").*

No attorney at the Boies Schiller Firm can avoid being disqualified by asserting that work for Prof. Dershowitz was minimal and did not involve the disclosure of confidential information. As multiple cases have recognized, the "<u>sworn word of an infected attorney or his or her allegedly uninfected colleague that there was no cross-pollination between them is not a satisfactory rebuttal</u>" to the presumption of shared confidences. *Papanicolaou*, 720 F.Supp. at 1086; *see also Chinese Automobile*, 2009 WL 47337 at 4 n.1 (*rejecting declarations from the challenged law firm stating that the individual conflicted lawyer had not discussed his prior representation with other lawyers at the firm*); *Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 576 (S.D.N.Y. 1987) ("*naked denial is insufficient to rebut the presumption that [the attorney] shared in such information.*"). Such declarations are particularly insufficient where the conflicted attorneys have already completed work that is directly adverse to his former clients. *See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 236 (2nd Cir.

1977) ("*Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it to telling advantage in the subsequent litigation...*")

Here, there is an actual and substantial risk that Prof. Dershowitz's information has already been disclosed. *See Mitchell*, 2002 WL 441194 at 4 ("*The rule against successive representations 'concerns itself with the unfair advantage that a lawyer can take of his former client in using...information communicated in confidence...such as knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses.'* ") (quoting *Ullrich v. Hearst Corp.*, 809 F.Supp. 229, 236 (S.D.N.Y. 1992)).

These ethical rules were designed, *inter alia*, to give the court confidence that a lawyer will not unfairly use the secrets gained in the confidence of a client. *See Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2nd Cir. 1979). It is imperative that Courts enforce these rules, because "[w]ithout strict enforcement of such high ethical standards, a client would hardly be inclined to discuss his problems freely and in depth with his lawyer, for he would justifiably fear that information he reveals to his lawyer on one day may be used against him on the next." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570-71 (2d Cir. 1973).

Although the Boies Schiller Firm would likely want Prof. Dershowitz to trust that they have not used the confidential information to his detriment nor committed other violations of ethical rules, he does not have faith in such due to prior incidents involving the firm. Verily this is not the first time the Boies Schiller Firm has found itself facing allegations of conflicts of interest and ethical misconduct.

For example, Prof. Dershowitz is aware of the following instances of questionable ethical conduct by the Boies Schiller Firm:

- In 2012, the Boies Schiller Firm was cited for a blatant conflict of interest in *Madison 92nd Street Associates LLC. v. Marriott International, Inc. et. al.*, Case No. 1:13-cv-00219, 2013 WL 5913382 (S.D.N.Y 2013). Judge Colleen McMahon of the United States District Court for the Southern District of New York wrote: *"A clearer conflict of interest cannot be imagined. A first year law student on day one of an ethics course should be able to spot it. BSF [Boies Schiller Flexner], which holds itself out as one of the country's preeminent law firms, did not. Not when it undertook a representation that would inevitably attack its own work for Host. Not when its former client raised the issue – which occurred as soon as Host learned that Plaintiff had retained BSF and read a copy of the draft complaint that its former lawyers had prepared. Not when Host's counsel in this lawsuit, the Proskauer Rose firm, formally notified BSF in writing that its prior representation of Host created a conflict. Not when the firm, after being warned about the conflict, filed a lawsuit containing allegations as to which its own attorneys (including quite possibly name partner David Boies, who billed time to both representations) were important – indeed virtually necessary – rebuttal witnesses."*

- In 2003, Boies' co-counsel in a case was disciplined by the Florida Bar for misconduct he committed jointly with Boies while representing Bruce Winston. Boies was not admitted in Florida therefore not subject to discipline by the Florida Bar, his co-counsel however was.

- In 2003, Boies was the subject of an ethics complaint based on his financial support of a lawsuit involving a lawn care company owned by a Boies Schiller Firm's financial officer, Amy Habie. The trial judge in the case was disturbed by Boies having provided $4.5 million in free legal services to Habie's lawn care company that he filed a complaint with the Florida Bar alleging a violation of Rule 4-1.8(c), which prohibits certain financial assistance by lawyers to clients.

- In 2005, in a conflict of interest matter dealing with Adelphia, Tyco International, and Qwest Communications, it was revealed in the course of a bankruptcy proceeding that Boies had failed to disclose a direct conflict of interest to clients when he recommended that they engage the services of three data and document management services owned in part by his children. One client, Adelphia Cable, objected to being billed $7 million by companies owned by the Boies children without being informed of the children's ownership interests. As a consequence of Boies' non-disclosure, he was required to step down from his position as Adelphia's special counsel.

- Boies and his firm have long-standing ties with Theranos, a blood testing start-up. In early 2016, questions were raised in the media and by federal regulators about Theranos' technology that have caused its value to plummet. In the wake of these allegations, Boies joined Theranos as a director while at the same time acting as its lawyer in fighting these recent allegations about its technology, raising serious conflict of interest concerns. (*See* Steven Davidoff Solomon, "Boies Dual Roles at Theranos Set Up Conflict", New York

Times, February 2nd, 2016) Boies and his firm eventually severed all ties with Theranos, reportedly over disagreements about legal strategies regarding its technology (*See* John Carreyrou, "Theranos and David Boies Cut Legal Ties," The Wall Street Journal, November 20th, 2016)

- Boies was also criticized for conflicts of interest relating to his representation of Harvey Weinstein and the New York Times simultaneously. *See,* Deborah L. Rhode "David Boies's Egregious Involvement with Harvey Weinstein", New York Times, November 9, 2017, stating: "*It is also that Mr. Boies's representation posed a conflict of interest, because his firm, Boies Schiller Flexner, was representing The New York Times, the "leading NY Newspaper," in libel litigation at the same time [as representing Harvey Weinstein].*"

Disqualification is the only remedy to avoid this taint, dispel prejudice, and safeguard Prof. Dershowitz's confidential information, if even possible at this point. *Tekni-Plex, Inc. v. Meyner and Landis*, 651 N.Y.S.2d 954, 958 (1996) ("*This rule of disqualification fully protects a client's secrets and confidences by preventing even the possibility that they will subsequently be used against the client in related litigation. This prophylactic measure...'fosters the open dialogue between lawyer and client that is deemed essential to effective representation.'* ") (quoting *Spectrum Sys. Intl. Corp. v. Chemical Bank*, 575 N.Y.S.2d 809 [1991]); *Hempstead*, 409 F.3d at 133 ("*One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client.*"). Accordingly, Sires, Boies, McCawley and other Boies Schiller Firm's conflicts of interest are imputed upon the firm in its entirety. Furthermore, Prof. Dershowitz has a good faith basis to believe that the Boies Schiller Firm has a contingency fee arrangement with the Plaintiff Giuffre. The financial interest in the outcome of this litigation that the Boies Schiller Firm has and the fact that firm attorneys are necessary, material, and relevant fact witnesses who will offer testimony prejudicial to their client is problematic on multiple ethical levels. Therefore, the firm in its entirety must be disqualified from representing the Plaintiff. For the pervasive and compelling reasons as set forth more fully in the Dershowitz Declaration and the Green Declaration, the factual circumstances,

as applied to the applicable law, mandate the disqualification of the Boies Schiller Firm, in order to prevent prejudice and in the interests of justice.

**B.  The Advocate-Witness Rule**

Rule 3.7 of the New York Rules of Professional Conduct provides that where an attorney will likely be a witness on significant issues of fact the lawyer "shall not act as advocate before a tribunal" and reads in full as follows:

> Rule 3.7: Lawyer as Witness
> (a) A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
> (1) the testimony relates solely to an uncontested issue;
> (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
> (3) disqualification of the lawyer would work substantial hardship on the client;
> (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
> (5) the testimony is authorized by the tribunal.

However, not only can the witness lawyer be disqualified, the disqualification can be imputed to the entire firm. Rule 3.7(b) of the Rules for Professional Conduct provides that: "A lawyer may not act as an advocate before a tribunal in a matter if... another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client or that the lawyer is precluded from doing so by Rule 1.7 or Rule 1.9. Rule 3.7(b) reads in full as follows:

> Rule 3.7: Lawyer as Witness
> (b) A lawyer may not act as advocate before a tribunal in a matter if:
> (1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client; or
> (2) the lawyer is precluded from doing so by Rule 1.7 or Rule 1.9.
> In the Second Circuit, the movant "'bears the burden of demonstrating specifically how

and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring to the witness-advocate's client is substantial." *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2nd Cir. 1989). Prejudicial testimony refers to testimony "that is 'sufficiently adverse to the

26

factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.' " *Lamborn*, 873 F.2d at 531.

Prof. Dershowitz expects to call Boies, McCawley (who signed and inferably drafted the Complaint in this action) and likely other Boies Schiller Firm attorneys identified during the course of discovery, to impeach their own client's testimony, which is so prejudicial to the Giuffre that the Boies Schiller firm must be disqualified. "A lawyer may not both appear for and oppose a client on substantially related matters when the client's interests are averse" *Sheldon Solow v. W.R. Grace* & Co., 83 N.Y.2d 303 (1994). Here, as stated more fully in the Dershowitz Declaration, and as analyzed in the Green Declaration, Prof. Dershowitz intends to call, at the very least, Boies and McCawley at witnesses at trial in this matter, and likely other Boies Schiller Firm attorneys. It is expected, that if testifying truthfully, these witnesses will offer testimony adverse and prejudicial to their own client, Giuffre. As stated more fully in the discussion of the advocate-witness rule in the Green Declaration, discussed *supra*, the very allegations in the Complaint implicate the need for disqualification of the Boies Schiller Firm. In such cases, "a law firm can be disqualified by imputation… when the clear convincing evidence shows; "[A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray v. Metro Life*, 583 F.3d at 178-79.


## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Prof. Dershowitz respectfully requests that the Court grant his Motion to Disqualify in its entirety and enter an Order disqualifying the law firm of Boies Schiller Flexner LLP as counsel for the Plaintiff Virginia Giuffre, pursuant to, (a) Rules 3.7(b)(1) and (2) of the New York Rules of Professional Conduct, and individual attorneys

within the Boies Schiller Firm pursuant to Rule 3.7(a) of the New York Rules of Professional

Conduct; (b) due to inherent and nonwaivable conflicts of interest by the Boies Schiller Firm as

described herein as it relates to this litigation pursuant to Rules 1.6, 1.7, 1.9, 1.10 and/or 1.18 of

the New York Rules of Professional Conduct; (c) pursuant to the discretionary power of this

Respected Court to order disqualification; and (d) for such other and further relief as to the Court

may seem just and proper.


Dated: New York, New York
       June 6, 2019


                                        Respectfully submitted,

                                        **AIDALA, BERTUNA & KAMINS, P.C.**
                                        *Attorneys for Alan Dershowitz*
                                        546 Fifth Avenue
                                        New York, NY 10036
                                        (212) 486-0011


                        By:     _____
                                Imran H. Ansari, Esq.

                                _____
                                Arthur L. Aidala, Esq.