UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VIRGINIA L. GIUFFRE,                                   1:19-CV-03377

                        Plaintiff,

                                              ECF CASE

-against-

                                              **DECLARATION OF**
                                              **BRUCE A. GREEN**

ALAN DERSHOWITZ
                       Defendant,
------------------------------------------------------------------x

I, **BRUCE A. GREEN**, declare pursuant to 28 U.S.C. 1746, as follows:

       1.       I hold the Louis Stein Chair at Fordham University School of Law, where I serve as Director of the Louis Stein Center for Law and Ethics. I am admitted to practice law in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the Supreme Court of the United States.

       2.       In connection with Prof. Dershowitz's motion to disqualify the law firm of Boies Schiller Flexner LLP (hereinafter "the Boies Schiller Firm" or "the Firm"), I have been retained to provide opinions as an expert on legal ethics (i.e., lawyers' professional conduct).

       3.       Based on the facts provided for my review, my opinion is that the Boies Schiller Firm should be disqualified for at least two independent reasons: First, the Firm briefly represented Prof. Dershowitz in 2015 on the same subject as the current lawsuit and, in the course of its confidential communications, the Firm both presumptively and in fact received confidential information from Prof. Dershowitz that is material to this lawsuit. Second, the Boies Schiller Firm's prior representation of the Plaintiff, Virginia L. Giuffre, will be a central disputed issue in this lawsuit, because the Complaint puts it in issue; consequently, various lawyers of the Firm are necessary witnesses in the case; and aspects of their testimony will almost invariably be adverse to their client.

## Qualifications

4. My qualifications to provide expert opinions on questions of lawyers' professional conduct are set forth more fully in my curriculum vitae (attached as <u>Exhibit A</u>).

5. I joined the full-time faculty of Fordham University School of Law in 1987. Immediately prior, I was an Assistant United States Attorney in the Criminal Division of the United States Attorney's Office for the Southern District of New York, where I served as Chief Appellate Attorney. Before that, I served as a law clerk, first to Judge James L. Oakes of the United States Court of Appeals for the Second Circuit, and then to U.S. Supreme Court Justice Thurgood Marshall.

6. At Fordham, I have regularly taught courses in legal ethics. I have organized or co-organized numerous conferences and other programs for legal academics and practitioners on issues of legal ethics, and I speak frequently at Continuing Legal Education programs regarding legal ethics, including on the subject of conflicts of interest.

7. I have written extensively on legal ethics, including regarding conflicts of interest in both civil and criminal litigation. I am co-author of a casebook on legal ethics – Pearce, Knake, Green, Joy, Kim, Murphy & Terry, *Professional Responsibility: A Contemporary Approach* (West Academic Publ., 3d ed. 2017).

8. I have engaged extensively in various professional work relating to legal ethics. On the national level, I currently chair the Multistate Professional Responsibility Examination drafting committee. I previously served on the ABA Standing Committee on Ethics and Professional Responsibility, chaired the ethics committees of both the ABA Litigation Section and the ABA Criminal Justice Section, served on the ABA Litigation Section's Task Force on Settlement Ethics, served as reporter to the ABA

2

Commission on Multijurisdictional Practice and to the ABA Task Force on Attorney-Client Privilege, and chaired the Section on Professional Responsibility of the Association of American Law Schools. On the state and local level, I currently chair the New York City Bar's Committee on Professional Ethics. Additionally, I serve as a member and past Chair of the New York State Bar Association's Committee on Professional Ethics and as a member of the New York State Bar Association's Committee on Standards of Attorney Conduct. I previously served on the Departmental Disciplinary Committee of the New York State Supreme Court, Appellate Division, First Department (the court-appointed body that reviews and investigates ethics complaints against lawyers in New York).

9. I occasionally testify as an expert witness, give advice, draft amicus briefs, and render other professional services on issues of lawyers' professional conduct. When serving as an expert witness, in this case and others, I render opinions in my individual capacity and do not speak on behalf of any of the entities with which I am, or have been, associated.

## Relevant Facts

10. I have no first-hand knowledge of the relevant facts. I base my opinions on the facts set forth in Prof. Dershowitz's Declaration in support of his motion and my review of the exhibits accompanying it and of the Complaint.

11. The relevant facts are, in brief, as follows.

12. According to Giuffre's earlier public accounts, which she repeats in her Complaint in this defamation action, Jeffrey Epstein "lent [her] out" to Prof. Dershowitz "for sex" during the period from 2000 to 2002, when she was Epstein's underage sex-trafficking victim. Complaint at ¶¶ 2 & 6. Prof. Dershowitz allegedly defamed her in 2014 by denying her account and accusing her of perjury. *Id.* at ¶ 14.

13.     According to the Complaint, Prof. Dershowitz's "central assertion" was that Giuffre "*and her attorneys* hatched a scheme to falsely accuse Dershowitz of sex trafficking as part of a criminal attempt to extort a settlement from another party." Complaint at ¶ 14 (emphasis added); *see also id.* at ¶ 68.  Among those attorneys was David Boies, a name partner of the Boies Schiller Firm, and Sigrid McCawley, a partner resident in the Firm's Fort Lauderdale office.  Prof. Dershowitz has publicly asserted that Giuffre's lawyers (Boies, McCawley and others) believed, and acknowledged to him, that Giuffre was, in the very least, mistaken about having sexual relations with him, and the Complaint devotes eleven paragraphs to describing and contesting Prof. Dershowitz's assertions, alleging them to be false and defamatory. *Id.* at ¶¶ 69-79.

14.     The subject of this lawsuit is substantially related to the subject of Prof. Dershowitz's representation by, and confidential communications with, Carlos Sires, another partner in the Fort Lauderdale office of the Boies Schiller Firm.  On January 22, 2015, following Prof. Dershowitz's televised denial of Giuffre's allegations, Sires offered to assist Prof. Dershowitz, Dershowitz Decl. at ¶ 33, spoke with Prof. Dershowitz about Giuffre's allegations and his defense, *id.* at ¶ 34, and offered to review relevant documents. *Id.* at ¶ 35.  Regarding himself to be a client of the Firm, *id.* at ¶ 36, Prof. Dershowitz provided, among other things, confidential notes commenting on Giuffre's allegations and detailing a proposed strategy in defending against them. *Id.* at ¶¶ 37-39. Sires evidently reviewed the notes and responded to them. *Id.* at ¶ 40.  On January 30, 2015, eight days after Sires offered to do "anything I can for" Prof. Dershowitz, and Prof. Dershowitz accepted the offer, *id.* at ¶¶ 33-35, Sires advised Prof. Dershowitz by email that the firm had a conflict of interest that precluded it from going forward in the representation of him. *Id.* at ¶ 40.  On February 10, 2015, Nicholas Gravante, the Firm's general counsel, advised Prof. Dershowitz by letter that the conflict involved an adverse

4

representation and that it had taken steps to screen Sires and partner Stuart Singer, who had been privy to the matter. *Id.* at ¶ 42. Only later did Prof. Dershowitz learn that the adverse representation was the Firm's representation of Giuffre. *Id.* at ¶ 41.

15. In his defense, Prof. Dershowitz intends to call as trial witnesses Boies and McCawley and, depending on the course of discovery, perhaps others. Dershowitz Decl. at ¶¶ 86-87.

## Opinion

16. Under the applicable professional conduct rules and judicial decisions, given the facts provided for my review, my opinion is that the Boies Schiller Firm should be disqualified for two independent reasons. First, the Firm's disqualification is necessary to protect Prof. Dershowitz and the integrity of the proceedings against the Firm's misuse of his confidential information, a problem that is not curable simply by screening the lawyers who initially received Prof. Dershowitz's confidential information. Second, the Firm's disqualification is necessary to protect Prof. Dershowitz and the integrity of the proceedings from the distortions that are likely to result from the role of the Firm's lawyers as necessary witnesses whose prior work is a central issue in this lawsuit, a problem that is not curable simply by forbidding the lawyer-witnesses from serving as trial counsel.

*The Firm Should Be Disqualified to Prevent its Misuse of Prof. Dershowitz's Confidential Information.*

17. It is the universal understanding in the United States that a lawyer or law firm may not disclose a former client's confidential information or use it to the former client's disadvantage, without the former client's consent. *See, e.g.*, N.Y. Rules of Professional Conduct ("N.Y. Rules"), Rules 1.6 & 1.9(c).[1] Further, for more than 60

---

[1] Pursuant to local rule, attorney conduct is governed in this proceeding by the N.Y. Rules. *See* S.D.N.Y. Local Civil Rule 1.5(b)(5).

years, courts in this Circuit have recognized that to prevent a lawyer or law firm from misusing a former client's confidential information, the firm must be disqualified where there is an unfair risk that the firm will use the former client's confidential information against him. The relevant standard – the "substantial relationship" standard – was developed more than 65 years ago by Judge Weinfeld in *T. C. Theatre Corp. v. Warner Brothers Pictures, Inc.*, 113 F. Supp. 265 (S.D.N.Y.1953). In *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2016), the Court of Appeals set forth the standard as follows:

> The classic test in this Circuit for whether disqualification is warranted in successive representation cases is set forth in *Evans v. Artek Sys. Corp*: disqualification is warranted where: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client." 715 F.2d 788, 791 (2d Cir. 1983); accord N.Y. Rules of Prof'l Conduct 1.9(a).
>
> "A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04-cv-3090, 2004 U.S. Dist. LEXIS 20723, 2004 WL 2346152, at *10 (S.D.N.Y. Oct. 19, 2004) (citation omitted); *see also* N.Y. Rules of Prof'l Conduct 1.9 cmt. 3 (subsequent representations are substantially related if, among other things, they "involve the same transaction").

The disqualification standard is codified in Rule 1.9(a) of the N.Y. Rules as follows: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

        18.     The Boies Schiller Firm plainly should be disqualified under a straightforward application of the substantial relationship standard. Prof. Dershowitz is a former client of the firm: Sires, a partner of the Firm, offered his legal assistance, and

Prof. Dershowitz accepted the offer and then provided confidential strategic information in reliance on his reasonable understanding that he had become a client. Dershowitz Decl. at ¶¶ 33-40. That the lawyer-client relationship was short-lived is irrelevant, because one can presume that clients repose confidences in their lawyers from the very start, as Prof. Dershowitz did here. The Firm is now adverse to him in a substantially related litigation. Indeed, the factual relationship between the two representations could scarcely be closer. The essential disputed question in both is whether Prof. Dershowitz had sexual relations with Giuffre. And, finally, the confidential information that the Firm is presumed to have received, and did in fact receive, from Prof. Dershowitz was unquestionably relevant to the current lawsuit.

19. It is no solution that the Boies Schiller Firm later said the lawyers working on behalf of Giuffre were "screened" from Sires and Singer – who may or may not have been the only lawyers of the Firm to have access to Prof. Dershowitz's confidential information. Neither the N.Y. Rules nor the decisions in this Circuit permit "screening" in these circumstances.

20. The N.Y. Rules unequivocally forbid screening. The disqualification rule applies not only to the lawyers who were repositories of the former client's confidential information but to all the lawyers of their firm. *See* N.Y. Rules, Rule 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule . . . 1.9, except as otherwise provided therein.").

21. Courts in this Circuit are more receptive to the idea of screening a disqualified lawyer, but not under the circumstances here. As the district court noted in *Young v. Cent. Square Cent. Sch. Dist.*, 213 F. Supp. 2d 202, 217 (N.D.N.Y. 2002):

> "[T]he Second Circuit has expressed consistent skepticism about screening as a remedy for conflicts of interest and declared that such

> procedures ultimately must be rejected if they are subject to doubt." . . .
> Thus, "courts have only approved screening procedures in the limited
> circumstances where a conflicted attorney possesses information unlikely
> to be material to the current action and has no contract with the
> department conducting the current litigation, which typically occurs only
> in the context of a large firm." . . . In addition, the law firm must have
> established the screening measures "from the first moment the conflicted
> attorney transferred to the firm or, at a minimum, when the firm first
> received actual notice of the conflict." . . . Finally, even if such measures
> are taken, if there is still an "appearance of impropriety," the court should
> disqualify the attorney and her firm. . . .

(Citations omitted.) Courts in this Circuit allow the possibility of screening a disqualified lawyer who represented the former client at a different law firm or, in the case of an "of counsel" lawyer, outside the firm. *See, e.g., Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("of counsel" lawyer); *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 U.S. Dist. LEXIS 17434, 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) (lawyer who switched law firms). Even in the case of a "migratory" or "lateral" lawyer, however, it is not always practical to screen the individual lawyer who was privy to the former client's confidential information before joining the firm. *See, e.g., Mitchell v. Metropolitan Life Ins. Co.*, 01 Civ. 2112, 2002 U.S. Dist. LEXIS 4675, 2002 WL 441194 at *3 (S.D.N.Y. March 21, 2002). And where lawyers previously represented a client while at their current firm, both they and that firm are forbidden from later appearing against that client in a substantially related matter; identifying and screening only the particular lawyers at the firm who may have been privy to the former client's confidences is neither fair nor practical.

22. Further, if screening were ever to be permitted to avoid a law firm's disqualification under Rule 1.9(a), this case would not be a strong candidate for breaking new ground. Given the small size of the Firm's Fort Lauderdale office, and that multiple lawyers in the office were involved in Prof. Dershowitz's representation, screening

probably would not be permitted in the best of circumstances, even with regard to conflicts where screening is sometimes allowed. And these are not the best of circumstances, since there is no way to know how many other lawyers and non-lawyers at the Boies Schiller Firm had access to Prof. Dershowitz's information before the screen was purportedly put in place and how effectively the screen has been implemented during the four years prior to this lawsuit. And given the Firm's failure to check conflicts either before offering its assistance to Prof. Dershowitz or before soliciting and reviewing his strategic information, there is no reason for confidence that the Firm is especially punctilious in avoiding conflicts of interest and the harms against which the rules are meant to protect.

23. Even assuming for the sake of argument that Prof. Dershowitz was not a client of the Boies Schiller Firm in January 2015 but only a "prospective client," the result is the same. Relevant decisions apply essentially the same "substantial relationship" standard. Prospective clients are entitled to repose confidences in lawyers, and frequently do so, subject to the protections of the attorney-client privilege and the ethical duty of confidentiality, so that they and the lawyers can make an informed decision whether to establish a lawyer-client relationship. Recognizing that less confidential information is likely to be imparted by a prospective client than an actual client, however, Rule 1.18 of the N.Y. Rules is somewhat less restrictive, but not in any way relevant here.

24. Under Rule 1.18, absent the former prospective client's consent, a former lawyer may not be materially adverse to a former prospective client in "a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." N.Y. Rules, Rule 1.18(c). *See, e.g., Benevida Foods, LLC v. Advance Magazine Publishers Inc.*, No. 15 CV 2729, 2016 U.S.

Dist. LEXIS 81186, at *44-45 (S.D.N.Y. June 15, 2016) (disqualifying law firm to whom prospective client "divulged . . ., in their preliminary discussions, sensitive information regarding Plaintiff's assessment of its own claims, its financial situation and risk tolerance, and its litigation and settlement strategies," which "is precisely the type of information that, if shared, can provide an opposing party with a substantial, unfair advantage"); *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012) (disqualifying lawyer from representing a plaintiff in litigation against a former prospective client who had disclosed relevant settlement strategy, finding: "[T]he Court must maintain the integrity of the adversary process. It would be an unfair disadvantage for Defendants to be confronted by an attorney whom they believe possesses intimate knowledge of their views and impressions of this litigation, even though that attorney professes that he has no knowledge nor recalls any, and, if he did, he would not need it or use it in a way to either alarm or harm Defendants."). Further, the disqualified lawyer's firm must also be disqualified unless "the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client." N.Y. Rules, Rule 1.18(d)(2).

25.    In this case, even assuming that Prof. Dershowitz was only a prospective client of the Boies Schiller Firm, the Firm must be disqualified from litigating against him in this matter, which is substantially related to the former representation or proposed representation, because the Firm unnecessarily acquired prejudicial, disqualifying information. Sires, a partner of the Firm, received Prof. Dershowitz's confidential "notes concerning his acting in 'self-defense' to the charges leveled against him" and responded by attaching an "opinion and Restatement section [that] relate" to those notes. Dershowitz Decl. at ¶¶ 39-40. Sires had no need to learn any confidential information before conducting the conflict check that disclosed that the Firm already represented Giuffre and therefore could not represent Prof. Dershowitz. But Sires took absolutely *no*

10

measures, much less "reasonable measures," to avoid learning sensitive, confidential information.

26. Finally, given the interest in ensuring the integrity of judicial proceedings, courts are sparing in their evocation of principles such as "laches" or "equitable estoppel" in connection with disqualification motions. These principles are certainly inapplicable here. Although Giuffre would be prejudiced by losing the services of a law firm with whom she has had a professional relationship for more than four years, that is not Prof. Dershowitz's fault, and the passage of time does not excuse the Boies Schiller Firm's failure to end the representation on its own when it became aware of the conflict. Prof. Dershowitz never consented to the Firm's representation of Giuffre. On the contrary, he filed disciplinary complaints against Boies, McCawley and other lawyers of the Firm accusing them of, among other things, blatant conflicts of interest in representing Giuffre. Despite these complaints, the Boies Schiller Firm was undeterred in representing Giuffre in the current action. There was not much more that Prof. Dershowitz could do until now, because the Firm was not previously adverse to him in a lawsuit in which he could move for its disqualification. Given the opportunity, he has now moved expeditiously.

*The Firm Should Be Disqualified Under the Advocate-Witness Rule.*

27. In general, a lawyer may not serve as a trial advocate and as a witness in the same trial. Rule 3.7 of the N.Y. Rules codifies this restriction. The restriction protects against multiple harms. The Second Circuit explained in *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009):

> We have identified four risks that Rule 3.7(a) is designed to alleviate: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

28. A lawyer's disqualification under Rule 3.7 is not necessarily imputed to the lawyer's firm. However, under Rule 3.7(b), other lawyers of the lawyer-witness's firm are forbidden from serving as advocates at trial if "it is apparent that the testimony may be prejudicial to the client." The Second Circuit has identified the test as follows: "[A] law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray v. Metropolitan Life Ins. Co., supra*, 583 F.3d at 178-79. Further, "'[p]rejudice' in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" *Id.* at 178 (citation omitted).

29. Disqualification motions under Rule 3.7 are often considered to be premature at the outset of a lawsuit, because it is often hard to know before depositions are taken whether a lawyer will be a necessary witness. But that is not always the case. *See, e.g., Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2010) (denying pro hac vice motion based in part on Rule 3.7). Here, it is plain from the face of the Complaint that Boies and other lawyers who previously represented Giuffre are necessary, indeed essential, witnesses, whose credibility has been placed in issue by the Complaint. A central question raised by the Complaint is whether "Roberts and her lawyers" – including lawyers of the Boies Schiller Firm – collaborated in making false statements against Prof. Dershowitz. Complaint at ¶ 68 et seq. If anyone, in addition to Giuffre and Prof. Dershowitz, is a necessary witness regarding the lawyers' role, it is Giuffre's prior lawyers themselves.

30. Further, the Complaint itself makes it plain that aspects of the Boies Schiller Firm's lawyers' testimony will be prejudicial to Giuffre's claims that she in fact had sexual relations with Prof. Dershowitz at Jeffrey Epstein's behest and that her public claims to that effect were not fabricated in collaboration with her lawyers. The Complaint refers to a course of conversations and communications between Boies and Prof. Dershowitz in which Prof. Dershowitz asserted that Giuffre was mistaken in her claim. Complaint at ¶¶ 68-77. The Complaint acknowledges that, in defending himself publicly, Prof. Dershowitz later relied on Boies's statements apparently agreeing with Prof. Dershowitz. The Complaint asserts that in doing so, Prof. Dershowitz took Boies's statements "out of context." *Id.* at ¶¶ 69 & 79. Thus, the meaning and import of Boies's extrajudicial statements is a central issue in the case by virtue of the Plaintiff's pleadings. Perhaps Boies can explain away his extrajudicial statements in a manner that is not embarrassing to him and detrimental to Giuffre. For example, it may suffice for him to explain why, in context, his statements casting doubt on Giuffre's credibility should be understood as having been merely "hypothetical," as the Complaint alleges they were. *Id.* at ¶ 69. But that may not suffice as a strategy, since Prof. Dershowitz will surely challenge this explanation, and therefore Giuffre's trial counsel must be free to discredit Boies's prejudicial statements even at the expense of Boies's own professional reputation. Boies's partners and associates will not have the necessary independence.

31. Finally, the Complaint puts in issue not only the past conduct of some of the Boies Schiller Firm's individual lawyers but, at least implicitly, the ongoing conduct of the Firm, including its filing and prosecution of this lawsuit. The Complaint disputes that Giuffre and her lawyers – including the Boies Schiller Firm – engaged in a scheme to extort money by falsely accusing Prof. Dershowitz and other men of having sexual relations with Giuffre, an alleged minor victim of sex trafficking. If the jury is aware that

the Boies Schiller Firm's lawyers are serving as trial counsel, it cannot avoid considering whether the lawsuit itself is in furtherance of, and proof of, the alleged scheme. As long as the Boies Schiller Firm remains in this case, its conduct of the litigation will be an implicit, if not explicit, subject of the lawsuit, making the Firm's trial lawyers, at the very least, unsworn witnesses. The interest in preserving the integrity of the proceedings weighs heavily against permitting this further complexity.

## Conclusion

32. For the two independent reasons discussed above, my opinion is that the Court should disqualify the Boies Schiller Firm.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, and that this declaration was executed in New York, NY on the 4th day of June, 2019.

_____
Bruce A. Green