# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80736-CIV-MARRA/JOHNSON

JANE DOE #1 AND JANE DOE #2,

   Plaintiffs,

vs.

UNITED STATES OF AMERICA,

   Defendant.
_____/

## MOTION FOR LIMITED INTERVENTION BY ALAN M. DERSHOWITZ

Alan M. Dershowitz (herein, "Prof. Dershowitz"), a nonparty to this litigation, is the victim of scurrilous allegations made in Jane Doe #3 and Jane Doe #4's Motion Pursuant to Rule 21 for Joinder in the Action (the "Joinder Motion"), filed as of record at DE 279. Having no remedy in this proceeding for the harm to his reputational interest, Prof. Dershowitz hereby seeks to intervene in this action, both as of right under Fed. R. Civ. P. 24(a) and permissively under Fed. R. Civ. P. 24(b), for the limited purposes of moving to strike the outrageous and impertinent allegations made against him and requesting a show cause order to the attorneys that have made them.

With respect to the legal framework for intervention, Prof. Dershowitz agrees with the general principles stated by this Court in its earlier Order on intervention dated September 26, 2011 (DE 99), including the broad discretion afforded district courts concerning intervention. However, as is summarized in the paragraphs that follow, this motion for intervention stands upon dramatically different circumstances than the prior motion, which was denied. The proposed Plaintiffs' and their counsel's defamatory falsehoods about Prof. Dershowitz are of an

entirely different order of magnitude, and they have spread around the world.

What makes them doubly troubling is their irrelevancy: although categorically false, the allegations against Prof. Dershowitz have absolutely nothing to do with whether the United States government violated its duty to confer with the Plaintiffs prior to entering into the non-prosecution agreement with Jeffrey Epstein, and, if so, what remedies might apply. Because those are the issues to be adjudicated by the Court in the underlying lawsuit, it is apparent that the broadside against Prof. Dershowitz was ginned up for reasons having nothing to do with the merits of this case. Prof. Dershowitz must be given the opportunity to defend himself through intervention in this action.

**I.      The Joinder Motion is nothing more than a vehicle to impugn the reputation of Prof. Dershowitz, filed with the certain result of stirring up media interest.**

The Joinder Motion purports to seek to add two new plaintiffs as parties to this litigation, but does not even attach a proposed amended complaint in violation of the local rules. *See* S.D. Fla. L.R. 15.1 (requiring a party who moves to amend a pleading to attach the original of the amendment to the motion). Instead, the paper simply proffers various salacious allegations as quotable tabloid fodder. Specifically naming Prof. Dershowitz, and identifying him as Mr. Epstein's counsel, Plaintiffs' counsel allege that Jane Doe #3 was "required" to have sexual relations with Prof. Dershowitz "on numerous occasions while she was a minor," and, in addition, that Prof. Dershowitz was "an eyewitness to the sexual abuse of many other minors." (DE 279 at 4.) The Motion goes on to state that Prof. Dershowitz was involved in the negotiation of the non-prosecution agreement for Jeffrey Epstein which "provided protection for [Prof. Dershowitz] against criminal prosecution in Florida for sexually abusing Jane Doe #3." (*Id.*)

2

To the great detriment of Prof. Dershowitz, and as Plaintiffs' counsel surely anticipated, the contemptible allegations against Prof. Dershowitz and others have created a media firestorm. Over the weekend of January 3 and 4, 2015, major media outlets—including the Miami Herald, the Washington Post, the Wall Street Journal, the New York Times, and the Jerusalem Post—picked up the story and highlighted the most libelous allegations against Prof. Dershowitz.

Yet, as stated above, the allegations against Prof. Dershowitz are completely irrelevant to this case. The issue to be determined on the Plaintiffs' Petition is whether, in violation of the Crime Victims' Rights Act, the United States Attorney's Office breached its obligations to meet and confer with the Plaintiffs—including proposed plaintiff Jane Doe # 3, who has made the accusations against Prof. Dershowitz—prior to entering into a non-prosecution agreement with Jeffrey Epstein on September 24, 2007. That issue turns on the government's knowledge of Jane Doe # 3's allegation at the time of the agreement, including, for example, whether she was designated as a witness by the government. What has been levelled against Prof. Dershowitz simply has nothing to do with any relevant issues in this case. In short, there was no legitimate purpose for including these extremely harmful allegations in the Joinder Motion.

## II. The allegations made against Prof. Dershowitz are outrageously false.

Besides being wholly irrelevant, the allegations made in the Joinder Motion with respect to Prof. Dershowitz are categorically false. *See* Declaration of Alan Dershowitz, attached hereto as Exhibit A.

In fact, they are absolutely outrageous. Prof. Dershowitz is married and has three children and two grandchildren. He is the Felix Frankfurter Professor of Law, Emeritus, at Harvard Law School. Prof. Dershowitz, a graduate of Brooklyn College and Yale Law School, joined the Harvard Law School faculty at age 25 after clerking for Judge David Bazelon and Justice Arthur

Goldberg. Prof. Dershowitz is, among other things, a civil liberties attorney. During his long and distinguished career, he has published more than one thousand articles in newspapers, journals and magazines on a variety of topics. He has published fiction and non-fiction works and law review articles about criminal and constitutional law. He has received awards from many institutions and organizations for his work, including the Anti-Defamation League. In his private legal practice he represents individuals and corporations, and even provides counsel to various world leaders. Prof. Dershowitz's reputation, which is sterling, is at the core of his remarkable career.

### III.     Prof. Dershowitz should be allowed to intervene under these circumstances.

It is to protect his reputation for which Prof. Dershowitz seeks to intervene in this action. He is entitled to do so under these circumstances, both as of right and with the permission of the Court.

Intervention as of right is governed by Federal Rule of Civil Procedure 24(a)(2). Rule 24(a)(2) requires the Court to allow anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Among the interests that satisfy these criteria are injury to reputation. *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20-21 (E.D.N.Y. 1996) (citing *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 373, 392 (2d Cir. 1981)). The burden of demonstrating an interest relating to the subject of the action that cannot be adequately represented by others is minimal. *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1255 (11th Cir. 2002).

Clearly, Plaintiffs' and Plaintiffs' counsel's accusations of sex with minors and

conspiracy to violate the law are injurious to Prof. Dershowitz's reputation—indeed, they constitute libel *per se*—such that he has an interest relating to the subject matter of this action. It is far from certain, however, that the defendant in this action, United States of America, has the same interest as Prof. Dershowitz in disproving the preposterous allegations that have been made against him. For example, in defending the suit that Plaintiffs have brought, the United States of America will not necessarily need to defend against or seek to disprove the allegations that Prof. Dershowitz had sex with minors in concert with Mr. Epstein. Only Prof. Dershowitz is situated to protect his reputational interest here.

This Court's recently-published and fully-considered reasoning in *Krauser v. Evolution Holdings, Inc.*, 975 F.Supp. 2d 1247 (S.D. Fla. 2013) (finding inventor had standing to challenge a patent application which denied his contribution, based on inventor's reputational interest) supports this notion: "The common law recognized that a man's reputation was possibly his most valuable asset, that vindicating that reputation in the face of one who sought to defame it was of paramount importance, and that such vindication need not unnecessarily punish the defamer because a judgment in favor of the plaintiff that simply established the falsity of the defamation—and nothing more—was vindication enough." *Id.* at 1260. That is essentially what Prof. Dershowitz seeks here.

Furthermore, permissive intervention under Rule 24(b) is also appropriate. *See Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1984).

IV. **These facts are distinguishable from those presented by the earlier intervenor motion filed by Bruce Reinhart.**

Prof. Dershowitz acknowledges that this Court earlier denied a motion to intervene by former Assistant United States Attorney Bruce E. Reinhart in 2011. (*See* DE 99 at 12-13.) Back

then, Plaintiffs alleged that Mr. Reinhart gave "at least the improper appearance" of having made a decision in Mr. Eptsein's favor in his own self-interest, specifically to obtain "favorable employment" from Mr. Epstein in the future as an attorney in private practice. Mr. Reinhart moved to intervene for purposes of seeking sanctions against Plaintiff for this accusation. (*See* DE 79.) This Court held that intervention for purposes of filing a motion for sanctions was denied, finding that it "cannot permit anyone slighted by allegations in court pleadings to intervene and conduct mini-trials to vindicate their reputation. Absent some other concrete interest in these proceedings, the Court **does not believe that the allegations here are sufficiently harmful** to justify permissive intervention." (DE 99 at 13 (emphasis added).)

Apparently, counsel for Plaintiffs have taken this Court's order denying intervention as to Mr. Reinhart to mean that defamatory and unsupportable allegations can be made in court papers in this action with complete impunity. Counsel for Plaintiffs have scandalously and improperly published falsehoods, abusing the litigation privilege, as well as this Court's rulings. But the docket sheets and courtrooms of the United States District Court for the Southern District of Florida should not be used as a bulletin board to which irrelevant, baseless, and ill-willed reputational attacks can be tacked up without consequence.

Moreover, contrary to what Plaintiffs and their counsel appear to think, this situation is fundamentally distinguishable from that presented by the Reinhart motion, simply by virtue of the harmfulness of the allegations made. Few accusations, if any, can launch such an immediate sensation as well as an enduring taint, notwithstanding their utter falsity and the impeccable reputation of the accused. And, in contrast to the Reinhart motion, which presented a potential intervenor who had previously had the opportunity to defend his reputation "in this docket" and before this Court, no such opportunity has yet been afforded Prof. Dershowitz.

6

Additionally, unlike Mr. Reinhart, who sought to add the fact-driven dynamics of Rule 11 to this case, Prof. Dershowitz seeks simply to end the potential license for character assassination created by the continued dwelling of those allegations in this Court's filings. If allowed to intervene, Prof. Dershowitz would seek to strike the outrageous allegations based on this Court's authority to strike material that is "scandalous, immaterial or redundant." *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 697 n.2 (8th Cir. 1978) (citing *Skolnick v. Hallett*, 350 F.2d 861 (7th Cir. 1975). In fact, the Court has the authority to strike such material on its own. Fed. R. Civ. P. 12(f)(1). Alternatively, if intervention were granted, he would request that the Court grant intervention for purposes of submitting a request for a show cause order to Plaintiffs' counsel with respect to their investigation of and justification for including the allegations against Prof. Dershowitz in the Joinder Motion. In sum, Prof. Dershowitz submits that the remedy to be afforded a leading public figure deeply maligned by the under-handed techniques employed by Plaintiffs' counsel in this case should not be limited to wounded resignation and public denials. Intervention is due here.

WHEREFORE Alan M. Dershowitz respectfully requests that the Court enter an order granting his limited motion to intervene for such purposes as may be appropriate including submitting a motion to strike the allegations made against him and requesting the issuance of a show cause order against Plaintiffs' counsel, and awarding such other relief that the Court deems just and proper under these unfortunate circumstances.

Respectfully submitted,

Thomas Scott, Fla. Bar No. 149100
thomas.scott@csklegal.com
COLE, SCOTT & KISSANE, P.A.
Dadeland Centre II
9150 South Dadeland Boulevard, Suite 1400
Miami, Florida 33156
Telephone: (305) 350-5300
Facsimile: (305) 373-2294

-and-

*/s/ Kendall Coffey*
Kendall Coffey, Fla. Bar No. 259681
kcoffey@coffeyburlington.com
Benjamin H. Brodsky, Fla. Bar No. 73748
bbrodsky@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, PH1
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

*Counsel for Prof. Alan M. Dershowitz*

## CERTIFICATE OF REASONABLE CONFERRAL
## WITH COUNSEL FOR THE PARTIES

I hereby certify that counsel for the movant has made reasonable efforts to confer with all parties who may be affected by the relief sought in the motion—including phone calls and emails on today's date. Counsel for Plaintiffs have indicated that they do not oppose movant's intervention in the case, but that their non-opposition is "limited" and "does not extend to the merits of any arguments on procedural or substantive issues in the case." Counsel for Defendant have not responded to movant's request for consent to his proposed intervention.

<em>/s/ Kendall Coffey</em>

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on this 5th day of January, 2015, on all counsel or parties of record on the Service List below.

/s/ Kendall Coffey

## SERVICE LIST

Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
E-mail: brad@pathtojustice.com

and

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
University of Utah
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Facsimile: 801-585-6833
E-Mail: cassellp@law.utah.edu

*Attorneys for Jane Doe #1, 2, 3, and 4*

Dexter Lee
A. Marie Villafaña
UNITED STATES ATTORNEY'S OFFICE
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Fax: (561) 820-8777
E-mail: Dexter.Lee@usdoj.gov
E-mail: ann.marie.c.villafana@usdoj.gov

*Attorneys for the Government*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA

JANE DOE #1 and JANE DOE #2,

    Petitioners,

vs.

UNITED STATES OF AMERICA,

    Respondent.

_____/

## DECLARATION OF ALAN M. DERSHOWITZ

    1.    My name is Alan M. Dershowitz. I make this declaration on personal knowledge and pursuant to the provisions of 28 U.S.C. § 1746, and in response to a pleading in which the lawyers for Jane Doe #3, without benefit of an affidavit, leveled totally false and outrageous charges against me that have been reported around the world and threaten to damage my reputation irrevocably.

    2.    Never under any circumstance have I ever had any sexual contact of any kind, which includes massages or any physical contact whatsoever, with Jane Doe #3, whose identity has been referenced by the BBC. (Her identity was disclosed because she "waived her anonymity in an interview with *The Mail* on Sunday in 2011.")

    3.    Specifically, Jane Doe #3 has alleged that she had sex with me on Mr. Epstein's Carribean island. That is a deliberate lie. I was on that island only once in my life, for approximately one day. I was with my wife and daughter during the entire day. My wife, daughter and I slept overnight in the same room. We had dinner with Mr. Epstein and a distinguished professor from the Harvard Business School, his wife, her sister, brother-in-law,

1

their kids, and an older woman. During our entire stay on the island, we never saw any young woman that fit the description of Jane Doe #3. Indeed we do not recall seeing any young women during our entire visit to the island. The older woman showed us around the island. There is no conceivable possibility that I could have had any sexual encounter with Jane Doe #3 during that period. Her lawyers could have easily learned this by simply calling and asking me for the specifics. I would have then provided them with the names of unimpeachable witnesses who would have contradicted Jane Doe #3's false account.

4. Second, Jane Doe #3 has alleged that she had sex with me in Mr. Epstein's house in New Mexico. That is a deliberate lie. I was in that house only once while it was under construction. My wife, daughter and I were driven there by a New Mexico businessman and his wife, whom we were visiting. Mr. Epstein was not there. Nor were there any young girls visible at any time. We were shown around the house for about an hour and then drove back with our friends. Jane Doe #3's lawyers could have easily learned this by simply calling and asking me for the specifics. I would have then provided them with the names of unimpeachable witnesses who would have contradicted Jane Doe #3's false account.

5. Third, Jane Doe #3 has accused me of having sex with her on Jeffrey Epstein's plane. That is a deliberate lie. I was on that plane on several occassions as the manifests will show, but never under circumstances where it would have been possible to have sex with Jane Doe #3. On a couple of occassions I was on his plane with my wife and daughter. On another occasion, I was on the plane with my nephew and several older people going to see a launch at Cape Kennedy. On several other occassions, after the alleged events at issue, I was on the plane with members of Mr. Epstein's legal team flying down to perform legal services. Had his

2

lawyers called me, I would have provided them this information and told them to check the manifests. There were never any young girls on the plane during any of my trips.

6. As to Mr. Epstein's homes in New York City and Palm Beach, I categorically state that I never had any sexual contact with Jane Doe #3.

7. In a statement issued to the press, Jane Doe #3's lawyers, Brad Edwards and Paul Cassell, have falsely stated that "they tried to depose Mr. Dershowitz on these subjects, although he has avoided those deposition requests." By using the term "these subjects" in a statement about the sexual abuse charges recently made against me, these lawyers have falsely implied that they sought to depose me on allegations regarding my own conduct. That is a total and categorical lie. Several years ago they wrote, asking to depose me on Jeffrey Epstein's activities and whether I ever witnessed any of his alleged crimes. I recall responding that I could not testify as to any privileged information and that I was not a witness to any alleged crimes. They did not follow up with a subpoena. Any suggestion that I refused to respond to questions about any allegations regarding my own alleged sexual conduct is totally and categorically false. The lawyers know this and yet continue to perpetuate the false impression that I was somehow given an opportunity to respond to these false and salacious charges against me and refused to do so. The written record will bear out the truth of what I am declaring and demonstrate the deliberate falsity of what they have suggested.

8. Jane Doe #3 knows that the charges she has leveled against me are totally false and she has alleged them with complete knowledge of their falsity. I believe and allege that her lawyers, Brad Edwards and Paul Cassell, also knew or could have easily learned, that I could not have done and did not do any of the heinous things they allege I did in the pleading. If they had done any reasonable investigation of their client's false allegations, they would have found

3

absolute proof that I did not. They claim in a written statement that they "investigate" before filing. But they did not specifically state that they investigated this claim against me before filing this false and scurrilous charge. They could not have, because even the most minimal of investigation would have proven conclusively that I could not have had sex with their client on Mr. Epstein's island, in New Mexico or on the airplanes; and that I did not have sex with her in his New York or Palm Beach homes. They would also have learned, if they did not already know, that Jane Doe #3 is a serial liar, whose uncorrobrated word should never be credited. She has claimed to have been with former President Clinton on Mr. Epstein's island. She has provided specific and detailed information about Mr. Clinton's activities on the island. Yet, on information and belief, I have been advised that Secret Service records would confirm that President Clinton has never set foot on that island. It has also been reported that she told her father that she met Queen Elizabeth. On information and belief, a check of the records of Buckingham Palace would disclose that Jane Doe #3 lied to her father about such a visit. On information and belief, she has also told lies about many world leaders. Finally, on information and belief, the State Attorney in Palm Beach County dropped a case that she sought to bring based on an assessment by the investigating detective regarding the "victim's lack of credibility." A copy of the letter reflecting this decision was forwarded to central records. Her lawyers knew or should have known about her history of lying and her utter lack of credibility before filing an allegedly privileged legal statement that asserts false and defamatory information about a fellow lawyer based on her word alone.

9. I believe and allege that Jane Doe #3's lawyers deliberately inserted this false and defamatory charge, which they knew or should have known to be false and defamatory, in a legal pleading that does not seek an evidentiary hearing or provide for any other opportunity for me to

4

respond to, rebut or disprove their knowingly false charge. They placed it in a legal proceeding, in a public filing, in bad faith in an effort to have the media report it, while they attempt to hide behind claims of litigation and journalistic privilege. I believe and allege that their bad faith purpose was to have this false charge made public, while attempting to deny me any legal recourse. There is no realistic possibility that this pre-New Year's filing would have been picked up by the media had they or someone on their behalf not deliberately alerted the media to its existence.

10. These lawyers have now repeatedly spoken to the media about their false allegations against me, asserting that what they alleged against me had a "factual" basis and providing the BBC with a list of questions they should ask me. I answered all of their questions. These lawyers have studiously tried to avoid repeating the specific false charges publically, in an attempt to shield themselves from a defamation claim.

11. Again, let me assert categorically, without reservation and with full awareness of the risks of perjury, that I did not ever, under any circumstances, have any sexual contact of any kind with Jane Doe #3.

12. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of January, 2015, in Miami Beach, Florida.

_____
Alan M. Dershowitz