**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VIRGINIA L. GIUFFRE,

                Plaintiff,                    Case No.: 19 Civ. 3377 (LAP)

v.

ALAN DERSHOWITZ,

                Defendant.

_____/


**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**TO DISQUALIFY BOIES SCHILLER FLEXNER LLP**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 4

I.     BSF BEGINS ITS REPRESENTATION OF MS. GIUFFRE ............................ 4

II.    GIUFFRE PARTICIPATES IN LITIGATION FILED AGAINST EPSTEIN ................. 5

III.   DERSHOWITZ'S CONTACTS WITH BSF ..................................................... 7

IV.   DERSHOWITZ'S CONTACTS WITH DAVID BOIES ................................... 9

ARGUMENT ............................................................................................................... 10

I.     DERSHOWITZ WAS NEVER A BSF CLIENT ............................................ 11

      A.    The Florida Bar Has Already Found That Dershowitz Was
            Never A BSF Client ............................................................... 12

      B.    No Attorney Client Relationship Was Ever Formed Between
            BSF and Dershowitz ............................................................. 12

II.    BSF'S SCREENING PROCEDURES PREVENTED ANY TAINT FROM
       DERSHOWITZ'S COMMUNICATIONS WITH MR. SIRES ...................... 17

III.   DERSHOWITZ'S WITNESS-ADVOCATE ARGUMENT IS A MANUFACTURED
       ATTEMPT TO SUPPORT HIS BASELESS DISQUALIFICATION MOTION ........... 19

IV.   DERSHOWITZ WAIVED ANY RIGHT HE EVER HAD TO BRING A MOTION TO
       DISQUALIFY ................................................................................ 23

CONCLUSION ............................................................................................................ 26

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*A to Z Associates v. Cooper*,
  215 A.D.2d 161 (N.Y. App. Div. 1995) ................................................................. 12

*Am. Intl. Group, Inc. v. Bank of Am. Corp.*,
  827 F. Supp. 2d 341 (S.D.N.Y. 2011)................................................................. 17

*Arifi v. de Transp. du Cocher, Inc.*,
  290 F. Supp. 2d 344 (E.D.N.Y. 2003) ........................................................... 20, 21

*Baltimore County v. Barnhart*,
  201 Md. App. 682 (Md. Ct. Spec. App. 2011) ....................................................... 24

*Board of Ed. of City of New York v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979)........................................................................ 21

*Bobal v. Rensselaer Polytechnic Institute*,
  916 F.2d 759 (2d Cir. 1990)......................................................................... 14

*Bohack Corp. v. Gulf & Western Indus., Inc.*,
  607 F.2d 258 (2d Cir. 1979)..................................................................... 10, 23

*Brooks v. Caswell*,
  F. Supp. 3d 2015 WL 1137416 (D. Or. 2015) .................................................... 22

*Brown & Williamson Tobacco Corp. v. Pataki*,
  152 F. Supp. 2d 276 (S.D.N.Y. 2001)..................................................... 4, 19, 21, 24

*Calamar Enterprises, Inc. v. Blue Forest Land Group*, LLC,
  222 F. Supp. 3d 257 (W.D.N.Y. 2016) ............................................................ 14

*Cannon Airways, Inc. v. Franklin Holdings Corp.*,
  669 F. Supp. 96 (D. Del. 1987)..................................................................... 23

*Chemical Bank v. Affiliated FM Ins. Co.*,
  1994 WL 141951 (S.D.N.Y. Apr. 20, 1994)........................................................ 19

*Cohen v. Cohen*,
  2015 WL 745712 (S.D.N.Y. Jan. 30, 2015) ................................................... 14, 16

*Filippi v. Elmont Union Free School Dist. Bd. of Educ.,*
    722 F. Supp. 2d 295 (E.D.N.Y. 2010) ............................................................... 20, 21

*Finkel v. Frattarelli Bros.,*
    740 F. Supp. 2d 368 (E.D.N.Y. 2010) ............................................................... 20, 22

*First Hawaiian Bank v. Russell & Volkening, Inc.,*
    861 F. Supp. 233 (S.D.N.Y. 1994) .................................................................... 13

*Freeman v. Chicago Musical Instrument Co.,*
    689 F.2d 715 (7th Cir. 1982) ............................................................................ 11

*Georgia Baptist Health Care System, Inc. v. Hanafi,*
    253 Ga. App. 540 (Ga. 2002) ........................................................................... 25

*Gormin v. Hubregsen,*
    2009 WL 508269 (S.D.N.Y. Feb. 27, 2009) ..................................................... 20

*Gurniak v. Emilsen,*
    995 F. Supp. 2d 262 (S.D.N.Y. 2014) ............................................................... 21

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream,*
    409 F.3d 127 (2d Cir. 2005) .............................................................................. 17

*In re Brauer,*
    452 Mass. 56 (Mass. 2008) ............................................................................... 12

*In re County of Los Angeles,*
    223 F.3d 990 (9th Cir. 2000) ............................................................................ 11

*In re Del-Val Financial Corp. Securities Litigation,*
    158 F.R.D. 270 (S.D.N.Y. 1994) ...................................................................... 21

*Intelli–Check, Inc. v. Tricom Card Technologies, Inc.,*
    2008 WL 4682433 (E.D.N.Y. Oct. 21, 2008) ................................................... 18

*Interpharm, Inc. v. Wells Fargo,*
    2010 WL 1141201 (S.D.N.Y. Mar. 25, 2010) ...................................................21

*Kentucky Bar Ass'n v. Fernandez,*
    397 S.W.3d 383 (Ky. 2013) .............................................................................. 12

*Knigge ex rel. Corvese v. Corvese,*
    2001 WL 830669 (S.D.N.Y. 2001) ........................................................ 12, 13, 14

*M.J. Woods, Inc. v. Conopco, Inc.,*
    271 F. Supp. 2d 576 (S.D.N.Y. 2003) ............................................................... 13

*Manning v. Waring, Cox, James, Sklar & Allen*,
   849 F.2d 222 (6th Cir. 1988) ................................................................... 11

*Maricultura Del Norte v. Worldbusiness Capital, Inc.*,
   2015 WL 1062167 (S.D.N.Y. Mar. 9, 2015) ..................................... 17, 18

*Mayers v. Stone Castle Partners, LLC*,
   126 A.D.3d 1 (N.Y. App. Div. 2015) ................................................... 3, 8

*Morogolio v. Morgan Fabrics Corp.*,
   340 F. Supp. 2d 510 (S.D.N.Y. 2004) .....................................................19

*Murray v. Metropolitan Life Ins. Co.*,
   583 F.3d 173 (2d Cir. 2009) ...................................................... 4, 19, 20

*Pierce v. F.R. Tripler & Co.*,
   955 F.2d 820 (2d Cir. 1992) ................................................................... 22

*Plumbing Supply, LLC v. ExxonMobil Oil Corp.*,
   2014 WL 6644221 (S.D.N.Y. Oct. 23, 2014) ....................................... 18

*Rossi v. Blue Cross and Blue Shield of Greater New York*,
   73 N.Y.2d 588 (N.Y. 1989) ................................................................... 15

*S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*,
   69 N.Y.2d 437 (N.Y. 1987) ........................................... 11, 19, 22, 23

*Shaffer v. Farm Fresh, Inc.*,
   966 F.2d 142 (4th Cir. 1992) ................................................................. 11

*Spears v. Fourth Court of Appeals*,
   797 S.W.2d 654 (Tx. 1990) ............................................................. 22, 23

*United States v. Miller*,
   624 F.2d 1198 (3d Cir. 1980) ................................................................ 11

*United States v. Philip Morris Inc.*,
   312 F. Supp. 2d 27 (D.C. Cir. 2004) .................................................... 11

*Universal City Studios, Inc. v. Reimerdes*,
   98 F. Supp. 2d 449 (S.D.N.Y. 2000) .................................................... 24

*Woods v. Covington County Bank*,
   537 F.2d 804 (5th Cir. 1976) ................................................................. 11

*World Hill Ltd. v. Sternberg*,
   25 Misc. 3d 1224(A) (Sup. Ct., N.Y. County 2009) .............................. 16

*Wrubel v. John Hancock Life Ins. Co.*,
   2012 WL 2251116 (E.D.N.Y. June 15, 2012) .......................................................................... 18

*Yasuda Trust & Banking Co. v. 250 Church Associates*,
   206 A.D.2d 259 (N.Y. App. Div. 1994) ................................................................................ 24

*Young v. Cent. Square Cent. Sch. Dist.*,
   213 F. Supp. 2d 202 (N.D.N.Y. 2002) ................................................................................... 18

**Rules**

Federal Rule of Evidence 408 ...................................................................................................... 22

**Other Authorities**

*Jane Doe 102 v. Epstein*, Case No. 09-CV-80656-KAM (S.D. Fla.) .......................................... 2,6

J. Brown, *How a future Trump Cabinet member gave a serial sex abuser* the *deal of a lifetime*,
   The Miami Herald, (Nov. 28, 2018) ..................................................................................... 3

Transcript of Dershowitz's CNN interview with Don Lemon on January 5, 2015 a*vailable at*
   http://www.cnn.com/ TRANSCRIPTS/1501/05/cnnt.02.html (last accessed: Mar. 4, 2018) .. 7

"Vanity Fair Reminds US When Jeffrey Epstein Wasn't a Creep"
   *The Atlantic Wire.*, June 21, 2011 ........................................................................................ 5

Plaintiff Virginia Giuffre responds to the Motion to Disqualify the Law Firm of Boies Schiller Flexner LLP ("BSF") [DE 8] filed by Defendant Alan Dershowitz ("Dershowitz").

## INTRODUCTION

This is not the first time Dershowitz has accused BSF of acting unethically in connection with its longstanding representation of Ms. Giuffre. It is not even the second. It is the fifth. Over the last four years, Dershowitz filed four separate bar complaints in three different jurisdictions against BSF lawyers based on the same allegations he makes here. He lost every time, including in proceedings before The Florida Bar, which found on these same facts that Dershowitz was *never* a client of BSF. (Simon Decl. at ¶¶ 4-5; 44-46.) He also lost in New York, where the Grievance Committee for the Ninth Judicial District informed BSF after thorough investigation: "After deliberation, the Committee determined that there was no breach of the Rules of Professional Conduct on your part. Accordingly, the complaint [of Mr. Dershowitz] was dismissed." (*Id*. at ¶ 53.) During that same period, Dershowitz threatened repeatedly to seek to disqualify BSF in multiple proceedings. (*Id.* at ¶¶ 80-86.) He never did. Instead, desperate to avoid having to face the mountain of evidence that will put the lie to his false statements about Ms. Giuffre, Dershowitz brings this frivolous motion to deprive her of her chosen counsel.

BSF has represented Ms. Giuffre for years in connection with her efforts to hold Jeffrey Epstein ("Epstein") and others accountable for their crimes. The United States Attorney's Office for the Southern District of Florida has confirmed that she is one of the victims of his sex-trafficking operation. (*See* Schiller Decl. at Exhibit 1.) For almost two years as a minor, she was forced to travel with Epstein and engage in sex acts with his friends. Dershowitz was one of those friends. He routinely visited stayed overnight at Epstein's many homes, flew on his private planes, and is still acts as lawyer. As one United States District Court recently described:

1

From between 1999 – 2007, Jeffrey Epstein **abused more than 30 minor girls**, including Petitioners Jane Doe 1 and Jane Doe 2 (hereinafter Petitioners) at his mansion in Palm Beach Florida, and elsewhere in the United States and overseas. Because Epstein and his co-conspirators knowingly traveled in interstate and international commerce to sexually abuse Jane Doe 1, Jane Doe 2 and others, they committed violations of not only Florida law, but also federal law. **In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually.** Epstein used paid employees to find and bring minor girls to him. Epstein worked in concert with others to obtain minors not only for his own sexual gratification, but also for the sexual gratification of others.

*The Crime Victims' Rights Act ("CVRA") Federal Case (Jane Doe 1 and 2 v. United States, Case No.: 08-80736-CIV-MARRA (S.D. Fla.))*, Order, pp. 1-2 (emphasis added).

Ms. Giuffre is not the only woman forced by Epstein to have sex with Mr. Dershowitz. Sarah Ransome, was forced to do so as well. (*See* Schiller Decl. at Ex. 2.) Multiple witnesses have refuted Dershowitz's false claims that he was never around Epstein in the presence of young girls, including, most recently, one of Epstein's former employees, who swore under oath that:

- She "witnessed a number of school age girls coming to the house, some of the young girls would be wearing their school uniforms"…who "then would be escorted upstairs";

- She was told these young girls "were interviewing for modeling positions" even though "it did not seem credible to me that these young girls were interviewing for modeling positions"; and

- "Alan Dershowitz was an individual who came to visit Epstein at his New York mansion a number of times when I was working for Epstein. Dershowitz was very comfortable at the home and would come in and walk upstairs. On a number of occasions I witnessed Dershowitz at the NY mansion going upstairs at the same time there were young girls under the age of 18 who were present upstairs in the house."

*Giuffre v. Dershowitz*, Case No. 19-CV-03377(LAP) (Farmer Aff. at DE 1-12).

At every turn, Dershowitz has publicly attacked Ms. Giuffre, Epstein's other victims, those who corroborate their accounts, their lawyers, and even a journalist who dared write about the subject.[1] Ms. Giuffre has had enough. She filed this action to bring an end to Dershowitz's

---

[1] Julie Brown, a reporter with the Miami Herald, wrote a series of articles titled "Perversion of Justice," after interviewing over 80 women (including Ms. Giuffre) who were abused by Jeffrey

despicable efforts to intimidate her and the other victims of his and Epstein's sexual abuse. She is prepared to face him in this Court. And she has put her trust in BSF to help her do that.

Dershowitz knows full well that disqualifying Ms. Giuffre's *pro bono* counsel could mean he might never have to face his day of reckoning in this action. His motion, however, should be denied for each of four independent reasons. First, Dershowitz was never a client of BSF. As the Florida Bar has already determined: "While it appears that you communicated with a member of [BSF] and may have been a prospective client of the firm at one point, ***the documentation provided in this case does not show that you were a client of [BSF].***" (*See* Schiller Decl. at Ex. 3.) As a result, Dershowitz is collaterally estopped from claiming here that he was in fact a client of BSF, a fact that eviscerates the opinion of his expert, which is based principally on the flawed assumption that Dershowitz was a "former client" of BSF.

Second, even if Dershowitz was ever a prospective client of BSF, his motion still fails because BSF implemented separation and screening procedures to ensure that any confidential information shared by Dershowitz during that period – there was none – was confined to the lawyer who communicated with Dershowitz and never shared with anyone involved in Ms. Giuffre's representation. In such circumstances, disqualification in unnecessary and inappropriate. *See Mayers v. Stone Castle Partners, LLC*, 126 A.D.3d 1, 7-8 (N.Y. App. Div. 2015) (holding that a "prospective client is entitled to obtain the attorney's disqualification only if it is shown that the information related in the consultation could be significantly harmful to him or her in the same or

---

Epstein. *See* J. Brown, *How a future Trump Cabinet member gave a serial sex abuser the deal of a lifetime*, THE MIAMI HERALD, (Nov. 28, 2018). After the publication, Dershowitz attacked Ms. Brown on Twitter and in an open letter to the Pulitzer Prize Committee. Ms. Brown nevertheless received the prestigious Polk Award in the Justice Reporting category for her work in exposing Epstein and his co-conspirators.

substantially related matter and finding that disqualification was inappropriate where the moving party failed to "meet this heavy burden") (internal quotations omitted).

Third, Dershowitz's "lawyer as witness" argument is a transparent attempt to manufacture a basis for disqualification where none exists. Dershowitz cannot strip Giuffre of her chosen counsel simply by claiming that he has a right to examine that counsel on discussions he had with them in the course of their representation of Ms. Giuffre. The law does not permit Dershowitz to so easily disqualify the chosen counsel of his adversary on that basis; if it did, every lawyer could face the possibility of disqualification by a litigation opponent for conduct that commonly occurs during the course of such a representation. *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (noting "Rule 3.7 lends itself to opportunistic abuse.").

Fourth, Dershowitz has waived any right he might have ever had to bring this motion. Despite knowing for years that BSF represents Ms. Giuffre, he only now brings this motion when it most tactically suits him. That is plainly impermissible and manifestly prejudicial to Ms. Giuffre. *See Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276 (S.D.N.Y. 2001) (Preska, J.) (noting delay and tactical maneuvering in filing a motion to disqualify can prejudice a party).

## BACKGROUND

### I.   BSF BEGINS ITS REPRESENTATION OF MS. GIUFFRE

In 2000, when she was a minor, Virginia Giuffre was recruited by an associate of Jeffrey Epstein's to meet him at his Palm Beach mansion. While there, she was forced to have sex with him for the first time. Thereafter, Epstein trafficked Ms. Giuffre throughout the United States and Europe in order to have sex with him and his associates. One of those associates was Dershowitz, whose close relationship with Epstein is well-documented.[2] (*See* Schiller Decl. at Ex. 4, Cassell

---

[2] As set forth in the Complaint, Dershowitz and Epstein are close friends who socialized and traveled together frequently. He has publicly described Epstein as "a friend if we had hamburgers

Aff. ¶¶ 13-15.) After two years of sexual abuse, Ms. Giuffre ultimately escaped from Epstein in September 2002 and fled to Australia.

## II.   GIUFFRE PARTICIPATES IN LITIGATION FILED AGAINST EPSTEIN

In 2005, the Palm Beach police department received a tip about underage girls being brought to Epstein's Palm Beach home under the ruse of giving a "massage," but who were then sexually abused by Epstein. The police report includes disturbing testimony from over 30 women, involving virtually the exact same scenario, being lured into Epstein's bedroom and then being sexually assaulted.[3] While the investigation uncovered evidence of multiple crimes committed by Epstein, and the United States Attorney's Office for the Southern District of Florida prepared a 53-page indictment outlining numerous federal sexual offenses, Epstein was given a secret deal that allowed him to plead to a single state charge. Judge Marra Feb. 21, 2019 Order at 3. That plea deal and failure to properly notify Epstein's victims became the subject of a Crimes Victims' Rights Act case (the "CVRA case") that was filed in Florida against the government by attorney Brad Edwards and former Federal Judge Paul Cassell ("Edwards and Cassell").

On September 3, 2008, the United States Attorney's Office for the Southern District of Florida contacted Ms. Giuffre to inform her that she was considered a victim of Mr. Epstein's

---

on the boardwalk in Coney Island and talked about his ideas." "Vanity Fair Reminds US When Jeffrey Epstein Wasn't a Creep." *The Atlantic Wire*, June 21, 2011. Dershowitz also has been quoted as saying Epstein was [t]he only person outside of my immediate family that I send drafts to …." "The Talented Mr. Epstein," *Vanity Fair* 2003. (*See* Schiller Decl. at Ex. 5). Epstein's employees have confirmed that Dershowitz visited Epstein's Palm Beach and New York City mansions often, stayed overnight, and was present when the victims of Epstein's sex trafficking were there. (*See* Schiller Decl. at Ex. 4, Cassell Aff. ¶¶ 13-15.) Indeed, while Dershowitz originally denied having had a massage at one of Epstein's homes, he later admitted that he did, but claimed it was only one massage and he kept his underwear on. (*See* Schiller Decl. at Ex.6.)

[3] Other evidence of Epstein's sex trafficking operation included hundreds of message pads evidencing underage girls calling Epstein, Amazon book orders for sex slave manuals, and video of the inside of Epstein's home showing nude photographs throughout the house.

crimes and to advise her that she could contact Robert Josefsberg at Podhurst Orseck, P.A. for further information. Mr. Josefsberg ultimately pursued a civil action on Ms. Giuffre's behalf in Florida, (*Jane Doe 102 v. Epstein*, Case No. 09-CV-80656-KAM [S.D. Fla.]), which was settled by Mr. Epstein.

Thereafter, in March 2011, the FBI flew to Australia to interview Ms. Giuffre about the abuse she suffered at the hands of Mr. Epstein and his associates. After meeting with the FBI, and frustrated that Epstein was not properly prosecuted for his crimes, in May 2014, Virginia met in person with Edwards and Cassell. In the summer of 2014, attorney Stan Pottinger, who was working with Edwards and Cassell, and who had previously served in senior positions at the United States Department of Justice, asked David Boies to consider assisting in the representation of Ms. Giuffre. (*See* Schiller Decl. at Ex. 7, Pottinger Aff.; Schiller Decl. at Ex. 16, Stephen Zack Aff.) Mr. Boies met Ms. Giuffre in person in July 2014 and he agreed represent her, although he did not participate in the existing CVRA case.

On December 30, 2014, Edwards and Cassell without BSF's participation filed a motion to add Ms. Giuffre as a plaintiff in the CVRA case. That motion described the fact that Ms. Giuffre had been lent out for sex by Epstein to a number of people, including Dershowitz. Almost immediately thereafter, Dershowitz attacked Edwards and Cassell, calling them "unethical," saying they should be "disbarred," and stating they were "prepared to lie, cheat and steal."[4] Cassell and Edwards subsequently sued Dershowitz for defamation on January 6, 2015. *See Edwards &*

---

[4] *See* Transcript of Dershowitz's CNN interview with Don Lemon on January 5, 2015, during which Dershowitz stated: "I'm asking her to file criminal rape charges against me. I am waiving the statute of limitations or any immunity. But if she files false rape charges against me, she goes to jail for filing a false charge." *Available at* http://www.cnn.com/TRANSCRIPTS/1501/05/cnnt.02.html (last accessed: Mar. 4, 2018). *However, Mr. Dershowitz later refused such a waiver and thereby blocked a civil suit by Ms. Giuffre.*

*Cassell v. Dershowitz*, No. 15-000072 (17th Judicial Circuit for Broward County, Florida). Ms. Giuffre was a fact witness in that case and was represented by BSF attorney Sigrid McCawley, who first became involved in the matter on February 3, 2015.

In addition to representing Ms. Giuffre in the litigation between Dershowitz and Edwards and Cassell, BSF also represented her in two other matters: an appeal to the Fourth District Court of Appeals in Florida in that same matter and in litigation filed in September 2015 in the Southern District of New York (along with related appeals). *See Giuffre v. Maxwell*, Case No. 15-CV-0743. The *Maxwell* case was extensively litigated, involved multiple witnesses of Epstein's sexual abuse, and was settled on the eve of a four week jury trial (albeit with certain appeals still pending).

## III.    DERSHOWITZ'S CONTACTS WITH BSF

In January 2015, Dershowitz appeared on the news attacking Ms. Giuffre for going public with her allegations of abuse. On January 22, 2015, Carlos Sires, a BSF partner and friend of Dershowitz who had previously worked with Dershowitz, saw him interviewed on the "Today Show" regarding Ms. Giuffre's allegations and the defamation action. Mr. Sires had no knowledge that Ms. Giuffre was already a BSF client, or of any of the facts incriminating Dershowitz. After the interview ended, Mr. Sires wrote Dershowitz a note of support via e-mail, stating: "If there is anything I can do for you, please let me know." (*See* Schiller Decl. at Ex. 8, Sires Aff. at ¶ 3.) Dershowitz responded by thanking Mr. Sires for his "kind words" and asking if they could talk. (*Id.* at ¶ 4.)

Mr. Sires called Dershowitz that same day. Dershowitz said he was interested in Mr. Sires joining his defense team, but he indicated concern with paying BSF's rates. Mr. Sires told Dershowitz that the firm would need to run a conflict check before any potential representation was considered, and that the Firm's Chairman, Mr. Boies, would need to decide whether to accept the representation and agree on a fee schedule. (*Id.* at ¶ 5.) Dershowitz told Mr. Sires that he knew

Mr. Boies and would be glad to speak to him. (*Id.*) Mr. Sires also told Dershowitz that he would first confer with Stuart Singer, BSF's Administrative Partner in its Fort Lauderdale office. During this brief conversation, Dershowitz generally denied any wrongdoing and called his accuser was a liar, but did not disclose any substantive and/or confidential information relating to the defamation action against him. (*Id.* at ¶ 11.) This was the one and only oral communication Mr. Sires had with Dershowitz regarding the matter. (*Id.* at ¶ 15.)

On January 23, 2015, Mr. Sires and Dershowitz exchanged several emails, but Mr. Sires never requested any confidential information from Dershowitz, nor did he ever inform Dershowitz that the conflict check had been run or that he had approval for representation from Mr. Boies. (*See* Schiller Decl. at Ex. 8, Sires Aff. at ¶ 6, 7; 13). Even so, the next day, on January 24, 2015, and prior to the Firm providing him a response on the conflicts check he knew was underway, Dershowitz included Mr. Sires in a group e-mail addressed to "dear friends," to which he attached a memorandum containing his "random thoughts" on the defamation action. The purported "strategy" that Dershowitz now claims to be described in the memorandum was the same as that which he repeatedly stated in public, including in his January 22, 2015 interview on the "Today Show" and in his January 14, 2015 article in the Wall Street Journal. (*Id.* at 11-14.)

Dershowitz never contacted Mr. Boies, as he had suggested he would do to Mr. Sires. On January 29 or 30, 2015, Mr. Singer raised the prospective representation with Mr. Boies. (*See* Schiller Decl. at Ex. 9, Singer Aff., ¶ 6.) He did not share Dershowitz's memorandum or discuss its contents with Mr. Boies. (*Id.*) Mr. Boies informed Mr. Singer that there was a conflict precluding the representation of Mr. Dershowitz. Mr. Singer immediately relayed this information to Mr. Sires. (*Id.* and Ex. 8, Sires Aff., ¶ 16.) That same day, Mr. Sires sent an email to Dershowitz informing him that, "[a]lthough we *hoped* to assist you," the Firm was precluded from doing so

"due to a conflict, the nature of which we are not at liberty to discuss." (Emphasis added.) Dershowitz's response confirms that he understood full well that he had not been accepted as a BSF client and refutes his belated claims otherwise: "***Darn. I was really hoping you could come on board. Thanks for considering it.***" (*See* Schiller Decl. at Ex. 10 and Ex. 8 at ¶ 16 (emphasis added).

On February 9, 2015, out of an abundance of caution, BSF's then-General Counsel issued a screening memorandum to all BSF personnel, directing Mr. Sires and Mr. Singer not to discuss or share any information regarding any aspect of the allegations against Dershowitz or Dershowitz's responses to those allegations with any BSF personnel or in the presence of or near any BSF personnel. (*See* Schiller Decl. at Ex. 11, Gravante Memo.) Mr. Sires and Mr. Singer were completely screened from BSF's representation of Ms. Giuffre. Likewise, Mr. Boies and Ms. McCawley were screened from Dershowitz's communications with Mr. Sires and the memorandum provided by Dershowitz, which they had never reviewed. On February 10, 2015, BSF sent notice to Dershowitz pursuant to Rule 1.18(d)(2)(iv) of the New York Rules of Professional Conduct (the "Rules"), that BSF had initiated screening procedures. As The Florida Bar found after reviewing these exact same facts, Mr. Dershowitz was never a client of BSF.

## IV.   DERSHOWITZ'S CONTACTS WITH DAVID BOIES

Beginning in May 2015, Dershowitz made repeated efforts to try to meet with Mr. Boies, as counsel for Ms. Giuffre, regarding her allegations against him. Dershowitz asked David Stone, a former BSF partner and colleague of Dershowitz, to seek such a meeting. At Mr. Stone's request, Mr. Boies met with Mr. Stone and Dershowitz in New York in mid-2015 to allow Dershowitz to try to resolve Ms. Giuffre's allegations. Dershowitz's assertion that David Boies said at any time during those meeting that he did not believe Ms. Giuffre had sex with Dershowitz is false. (Boies Declaration at ¶¶ 4-6; *See* Schiller Decl. at Ex. 12, David Boies Aff., at ¶¶ 17-20 and Ex. 13,

McCawley Aff.) Indeed, Mr. Stone, who was present at those meetings, testified under oath that Mr. Boies said no such thing. (*See* Schiller Decl. at Ex. 14, Stone Affidavit.) As Mr. Stone explains in his sworn affidavit:

> "I am informed that Mr. Dershowitz has also asserted that at a meeting on June 1, 2015, "Boies said his goal was to persuade Virginia Roberts that she was mistaken in identifying me as a person with whom she had sex'. Mr. Boies never said that in my presence, and what he did say in my presence both before and after June 1, 2015 was inconsistent with what Mr. Dershowitz ascribes to Mr. Boies."

(Stone Aff at ¶ 7.) Regarding the July 6, 2015 meeting, Mr. Stone explained:

> "Following the July 6, 2015 meeting, Mr. Dershowitz expressed to me that he believed he was making progress in convincing Mr. Boies that the client was mistaken in identifying Mr. Dershowitz as someone with whom she had sex. I told Mr. Dershowitz that I thought he was overly optimistic and reading things into what Mr. Boies was saying and hearing what he wanted to hear. I truly believe this was the case, i.e., that Mr. Boies was making careful and guarded statements consistent with statements lawyers often make in settlement discussions and that Mr. Dershowitz, who urgently wanted the case to go away, was reading things into those statements that weren't there."

(Stone Aff. at ¶ 9. *See also* Schiller Decl. at Ex. 13, McCawley Aff.)

In contrast, Dershowitz supports his claim with only his own self-serving affidavit and vague references to out of context excerpts from a surreptitious recording of his settlement discussions with Mr. Boies (without ever producing a copy of the complete recording). (*See* Boies Decl. at ¶¶ 1-7.) Dershowitz is now trying to use those same settlement discussions to disqualify BSF from representing Ms. Giuffre in this case.

## ARGUMENT

The measure for disqualifying a party's chosen lawyer is very high because it can cause substantial prejudice, particularly in a circumstance where, as here, the lawyer has been working with the client for over four years. The Second Circuit has "been loath to separate a client from his chosen attorney" for this very reason—a plaintiff's choice of her desired counsel bears great significance absence a showing of substantial prejudice. *Bohack Corp. v. Gulf & Western Indus.,*

*Inc.*, 607 F.2d 258, 263 (2d Cir. 1979). Though the precise test for analyzing a disqualification motion varies between jurisdictions, the Second Circuit's vigilance regarding such a drastic form of relief has been expressly recognized by the New York Court of Appeals and nearly every other Federal Circuit Court of Appeal.[5] Dershowitz does not come close to meeting this standard.

## I.    DERSHOWITZ WAS NEVER A BSF CLIENT

The cornerstone of Dershowitz's motion to disqualify is his argument that he is a "former client of the firm." Green Decl. ¶ 18; Mem. at 9. He was not. Neither facts he offers nor his unsupported declarations to the contrary can change that fact.

---

[5] *See S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 443 (N.Y. 1987) ("Disqualification of a law firm during litigation implicates not only the ethics of the profession but also the substantive rights of the litigants. Disqualification denies a party's right to representation by the attorney of its choice."); *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) ("[District Courts] should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice."); *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992) ("The drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel; and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons."); *Woods v. Covington County Bank*, 537 F.2d 804, 813 (5th Cir. 1976) ("It does not follow, however, that an attorney's conduct must be governed by standards which can be imputed only to the most cynical members of the public. Inasmuch as attorneys now commonly use disqualification motions for purely strategic purposes, such an extreme approach would often unfairly deny a litigant the counsel of his choosing."); *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988) ("Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon."); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 719 (7th Cir. 1982) ("[W]ith respect to orders granting disqualification motions, the losing party with the tainted counsel is immediately separated from the representation of his choice. The effect of this is immediate and measurable. The party who has had his counsel disqualified is abruptly deprived of his legal advisor, and, provided the affected party desires to proceed with his action, the litigation is disrupted while he secures new counsel."); *In re County of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000) ("A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice."); *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 43-44 (D.C. Cir. 2004) ("There is no question that a party's choice of counsel is entitled to substantial deference under our system of justice. Indeed, it is one of our most cherished privileges. For that reason permitting a litigant to retain its chosen counsel is a vitally important interest to be evaluated against disqualification and violation of ethical rules.").

### A.   The Florida Bar Has Already Found That Dershowitz Was Never A BSF Client

Dershowitz made this same assertion citing the exact same information in his complaint to The Florida Bar. He submitted over a hundred pages of materials and made arguments identical[6] to those made here, but the Bar flatly rejected his claim and found he was never a client of BSF.[7] (*See* Schiller Decl. at Ex. 3). That finding should be given collateral estoppel effect in this proceeding. *See A to Z Associates v. Cooper*, 215 A.D.2d 161, 161-62 (N.Y. App. Div. 1995) (affirming trial court's holding that findings of fact made by a hearing panel in attorney disciplinary proceeding which were confirmed by Appellate Division "were entitled to collateral estoppel effect no less than the quasi-judicial determination of administrative agencies"). *Cf. Kentucky Bar Ass'n v. Fernandez*, 397 S.W.3d 383, 389 (Ky. 2013) (holding that collateral estoppel precludes reconsideration in attorney disciplinary actions where a party had a full and fair opportunity to litigate); *In re Brauer*, 452 Mass. 56, 66 (Mass. 2008) (same). At a minimum, the findings of the Florida Bar, and the similar finding by the Bar of New York and the District of Columbia, are entitled to substantial weight.

### B.   No Attorney Client Relationship Was Ever Formed Between BSF and Dershowitz

Dershowitz argues that he "<u>reasonably believed that a lawyer-client relationship had been formed with the Boies Schiller Firm.</u>" Mem. at 4 (emphasis in original). Dershowitz, a highly sophisticated attorney, offers no factual or legal support for that argument. *See Knigge ex rel.*

---

[6] Indeed, Dershowitz's Declaration to this Court includes the exact language from his Florida Bar submission in paragraphs: 10-18; 23-38; 40-58; 60-64: 67-68 and partial paragraphs 24, 27, 45, 48, 60, 67, 68.

[7] Dershowitz also filed these exact same allegations with the New York Bar and the D.C. Bar, both of which similarly rejected Dershowitz's arguments, finding that there was no probable cause to pursue Dershowitz's claims. (Simon Decl. at ¶ 3.)

*Corvese v. Corvese*, 2001 WL 830669, at *3 (S.D.N.Y. 2001) (in determining whether a person

has a reasonable belief that a lawyer is representing him or her, "courts must look at the words and

conduct of the parties"). "A party's 'unilateral belief' that he is represented by counsel 'does not

confer upon him the status of client unless there is a reasonable basis for his belief.'" *Id.* New York

courts weigh a number of factors to determine whether a binding attorney-client relationship exists:

> 1) whether a fee arrangement was entered into or a fee paid;
>
> 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation;
>
> 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously;
>
> 4) whether the attorney actually represented the individual in an aspect of the matter (e.g., at a deposition);
>
> 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; [and]
>
> 6) whether the purported client believed that the attorney was representing him and whether this belief was reasonable.

*M.J. Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 585 (S.D.N.Y. 2003). *See also First*

*Hawaiian Bank v. Russell & Volkening, Inc.*, 861 F. Supp. 233, 238 (S.D.N.Y. 1994) (remarking

that no single factor in determining the existence of an attorney-client relationship is dispositive

because "courts have not employed a single, well-defined test for determining whether an attorney-

client relationship exists, and, moreover, have consistently rejected the argument that indicia of a

formal relationship are necessary").

Here, none of the above factors support Dershowitz's contention that he had established an

attorney-client relationship with BSF. (1) There was no fee arrangement with BSF and no fee was

ever paid. (2) There also was no written contract or retainer agreement detailing the fact and scope

of the purported representation. (3) Furthermore, Mr. Sires and Dershowitz had no "informal

relationship" whereby the attorneys performed legal services gratuitously.  Mr. Sires did not

actually perform any legal services for Dershowitz, and the email exchange between Mr. Sires and Dershowitz did not amount to the provision of legal advice or services. *See Knigge ex rel. Corvese*, 2001 WL 830669, at *3 (finding that no attorney-client relationship existed where the purported client "could have had no reasonable belief than an attorney-client relationship existed" because "telephone advice is not the traditional method of providing advice"). Moreover, Mr. Sires made clear that legal services would not be performed gratuitously and that a fee agreement would be required. (4) Mr. Sires never actually represented Dershowitz at a deposition or in any other aspect of the matter. (5) Mr. Sires never excluded Dershowitz from any aspect of the litigation. (6) Mr. Dershowitz asserts that he believed that BSF was representing him but that belief was unwarranted and, in any event, is belied by Dershowitz's own contemporaneous emails. *See Calamar Enterprises, Inc. v. Blue Forest Land Group*, LLC, 222 F. Supp. 3d 257, 264 (W.D.N.Y. 2016) (finding that no attorney-client relationship existed where a party was only able to assert only "speculative and unsupported" claims that it believed a firm had been "continuously representing it since 2011-2012, even though no work was performed and no legal bills were rendered"); *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 765 (2d Cir. 1990) (finding no attorney-client relationship where purported client contacted a Legal Aid Society attorney about "possible" representation but the purported client's case was never accepted); *Knigge ex rel. Corvese*, 2001 WL 830669, at *4 (finding no attorney-client relationship existed where the purported client never entered into a retainer agreement nor paid for any legal advice).

Although Dershowitz voluntarily (contrary to Mr. Sires' request, which had been limited to public pleadings) copied Mr. Sires into a group email attaching a memorandum that he now claims contained confidential information, this communication by itself cannot give rise to an attorney-client relationship, and plainly was not covered by attorney-client privilege. *See Cohen*,

14

2015 WL 745712, at *5 (Preska, J.) (citing *Rossi v. Blue Cross and Blue Shield of Greater New York*, 73 N.Y.2d 588, 594 (N.Y. 1989)) ("[O]nly communications between the client and the attorney that are primarily or 'predominantly of a legal character,' with a focus on the provision of legal advice or services are protected by the attorney-client privilege."). The memorandum contained no confidential information or legal strategy addressed specifically to Mr. Sires clearly manifesting the recognized hallmarks of an attorney-client relationship. In fact, it was transmitted to numerous "friends" of Dershowitz. Nor did it communicate any material that had not already been disclosed publicly and repeatedly by Dershowitz to various news organizations. Likewise, none of BSF's attorneys "actually represented" Dershowitz in a matter. BSF excluded Dershowitz entirely from representation due to the identified conflict with the firm's representation of Ms. Giuffre, not merely to protect her interest.

As explained in the declaration of Professor Roy D. Simon, Jr., Professor of Legal Ethics at Hofstra University School of Law:

> In my opinion, Mr. Dershowitz could not have formed a reasonable belief that he was a client in the circumstances presented here. He could not have formed such a reasonable belief for multiple reasons, including the following:
>
> a. In his first (and only) telephone call with Mr. Sires, Mr. Dershowitz was told that Boies Schiller could not agree to represent him until it had checked for conflicts of interest and had received approval from the Firm's Chairman, David Boies. The Firm never advised Mr. Dershowitz that it had cleared conflicts or that Mr. Boies had approved the representation. These missing pieces would have been highly significant to a professor who had taught professional responsibility at Harvard Law School for many years and had written many articles about professional responsibility.
>
> b. In his phone call with Mr. Sires, Mr. Dershowitz told Mr. Sires that he could not afford Boies Schiller's fees, and Mr. Dershowitz and Boies Schiller never agreed upon (or even discussed) the terms of a fee agreement.
>
> c. Mr. Dershowitz did not have another phone call with Boies Schiller lawyer during the eight days the Firm was considering whether to accept the representation.
>
> d. Mr. Dershowitz never signed a retainer agreement or received a letter of engagement. Nor was he told orally that the Firm would represent him.

15

e. Mr. Dershowitz never met in person with any lawyer at Boies Schiller while the Firm was considering whether to represent him. On the contrary, after the Firm had suggested an in-person meeting so that it could better evaluate whether to accept the representation, the Firm cancelled the meeting before it ever occurred.

f. Boies Schiller did not give Mr. Dershowitz any legal advice.

g. Mr. Dershowitz was a highly skilled lawyer, a professor of legal ethics an author of articles on professional responsibility, and a sophisticated litigant who had personal experience forming attorney-client relationships with other lawyers, so he would have understood that he could not consider himself a client of a law firm until the firm had completed a conflicts check, cleared conflicts, and agreed to represent him.

The best evidence of what Mr. Dershowitz believed is his own email to Mr. Sires immediately after Sires informed Dershowitz that Boies Schiller could not represent him due to a conflict. Dershowitz wrote, "Darn. I was really ***hoping*** you could come on board. Thanks for considering it." (Emphasis added.) If Mr. Dershowitz had truly believed he was *already* a client at the time Boies Schiller declined his matter, I would have expected him to write an email saying, "But I thought you had agreed to represent me!" or "You have already taken me on as a client and I do not consent to your withdrawal," or words to that effect.

(Simon Decl. at ¶¶ 49-50.)

Dershowitz's asserted belief that BSF was representing him is particularly unpersuasive since Dershowitz is not only a lawyer, but a professor of law, and a sophisticated litigant with decades of experience both as an advocate and a client. *See World Hill Ltd. v. Sternberg*, 25 Misc. 3d 1224(A), 1224(A) (Sup. Ct., N.Y. County 2009) (finding no attorney-client relationship where "[the defendant's] carefully worded affidavits ... conspicuously fail to state that [the defendant], a sophisticated business person, made any agreement to retain Mr. Moskovitz as his attorney in connection with the sale of his interest in Oz to plaintiffs, or discussed any terms of the representation"). *Accord Cohen v. Cohen*, 2015 WL 745712, at *5 (S.D.N.Y. Jan. 30, 2015) (Preska, J.) ("A client's own expectations or beliefs alone, however, are insufficient to form an attorney-client relationship."). No one with Dershowitz's background in that circumstance could reasonably believe that an attorney-client relationship had been formed.

16

## II.   BSF'S SCREENING PROCEDURES PREVENTED ANY TAINT FROM DERSHOWITZ'S COMMUNICATIONS WITH MR. SIRES

Even though Dershowitz was never accepted as a client, BSF promptly implemented screening procedures pursuant to Rule 1.18(d) of the New York Rules of Professional Conduct.[8] Those procedures obviate any need for disqualification. *See Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 138 (2d Cir. 2005) ("We see no reason why, in appropriate cases and on convincing facts, isolation—whether it results from the intentional construction of a 'Chinese Wall,' or from de facto separation that effectively protects against any sharing of confidential information—cannot adequately protect against taint."); *Maricultura Del Norte v. Worldbusiness Capital, Inc.*, 2015 WL 1062167, at *15 (S.D.N.Y. Mar. 9, 2015) (ethical screens are generally sufficient to rebut presumption of disqualification); *Am. Intl. Group, Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 347 (S.D.N.Y. 2011) ("[M]inimal degree of [attorney's] involvement in the case also erodes any risk of taint."). Although the communications between Dershowitz and Mr. Sires were limited, the firm initiated the following measures:

- Mr. Sires took reasonable measures to avoid exposure to receiving more disqualifying information than was reasonably necessary to determine whether to represent Dershowitz and his unilateral decision to add Mr. Sires to the list of "friends" to whom he addressed his emailed memorandum does not change that fact;

- The only information that Carlos received was information that was already public;

- Once BSF identified the conflict, it issued a firm-wide screening memorandum and made certain that Mr. Sires and Mr. Singer (the only BSF lawyer with whom Mr. Sires had any contact regarding this matter) were timely screened from any lawyer representing Ms. Giuffre, including Mr. Boies and Ms. McCawley;

---

[8] As explained in Professor Simon's report, Boies Schiller never received information from Dershowitz that could be "significantly harmful" to him in the new matter pursuant to Rule 1.18(c) because it was all information Dershowitz had provided on the Today show and to other public sources, yet the firm still took the additional protection of conducting an appropriate screen. (Simon Decl. at ¶¶ 58-61.)

- BSF promptly provided written notice to Dershowitz informing him that BSF could not represent him; and

- Mr. Sires and Mr. Singer were not apportioned any part of any fee received from BSF's representation of Ms. Giuffre.

These measures were more than sufficient to prevent any taint from Dershowitz's limited communications with Mr. Sires. As Professor Simon explains: "In my opinion, Boies Schiller has fully satisfied the standards set by Rule 1.18(d)." (Simon Decl. at ¶ 64.) *See also Maricultura Del Norte*, 2015 WL 1062167, at *15 (S.D.N.Y. Mar. 9, 2015)  ("In *every* other post-*Hempstead* case [the court] located within this circuit, the district court, after considering whether an ethical screen was sufficient, has found the presumption rebutted and denied a motion to disqualify.") (emphasis added); *Plumbing Supply, LLC v. ExxonMobil Oil Corp.*, 2014 WL 6644221, at *7–8 (S.D.N.Y. Oct. 23, 2014) (denying disqualification motion where an ethical screen was sufficient to cure any potential prejudice); *Wrubel v. John Hancock Life Ins. Co.*, 2012 WL 2251116, at *3 (E.D.N.Y. June 15, 2012) (same); *Intelli–Check, Inc. v. Tricom Card Technologies, Inc.*, 2008 WL 4682433, at *4–5 (E.D.N.Y. Oct. 21, 2008) (same).

Moreover, all of the cases Dershowitz raises to challenge the legitimacy of BSF's ethical screen are inapposite or misconstrued. For instance, Dershowitz cites to *Young v. Cent. Square Cent. Sch. Dist.*, in claiming that the Second Circuit is "skeptical" about the effectiveness of ethical screens. 213 F. Supp. 2d 202, 217 (N.D.N.Y. 2002). In *Young*, the conflicted attorney had prepared legal memoranda, attended meetings concerning the case, had access to confidential information and the firm did not institute any formal institutional mechanisms before or after conflicted attorney's arrival at the firm that would have insulated her from this case. *See id*. Similarly, in *Mirogolio v. Morgan Fabrics Corp.*, cited by Dershowitz, "the same law partner has had direct personal involvement in the present and former representation" and "[t]here [was] no suggestion

18

that a screen was implemented when [opposing party] first raised the issue." 340 F. Supp. 2d 510, 512 (S.D.N.Y. 2004). BSF's efforts to wall Mr. Sires from Ms. Giuffre's case and the attorneys working on it are both well documented and effective, and Dershowitz points to no evidence that any information prejudicial to his case was communicated to anyone representing Ms. Giuffre.

As a result, here, as in *Brown & Williamson*, the minimal interactions between Dershowitz and Mr. Sires cannot form the basis for disqualification, and Dershowitz appears to be motivated solely by "tactical maneuvering." 152 F. Supp. 2d 276, 290 (S.D.N.Y. 2001) (Preska, J.). *See also Chemical Bank v. Affiliated FM Ins. Co.*, 1994 WL 141951, at *19 (S.D.N.Y. Apr. 20, 1994) (stating that the "absence of any real risk of trial taint or prejudice to [the moving party], compels [the court] to find that [the moving party] has pressed this motion solely to obtain a tactical advantage").

## III.   DERSHOWITZ'S WITNESS-ADVOCATE ARGUMENT IS A MANUFACTURED ATTEMPT TO SUPPORT HIS BASELESS DISQUALIFICATION MOTION

Dershowitz claims that BSF should be disqualified under the advocate-witness rule (Rule 3.7) because "Boies firm attorneys are necessary, material, and relevant fact witnesses who will offer testimony prejudicial to their client is problematic on multiple ethical levels." Mem. at 25. This argument is utterly without merit. As Professor Simon explains:

> "Mr. Dershowitz has advanced a conspiracy theory under which David Boies and Carlos Sires would be witnesses, but he can support this only with pure speculation, not evidence. The Second Circuit has been clear that a motion to disqualify under Rule 3.7(b) should not be granted unless the moving party can show "specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the client of the advocate-witness's firm] is substantial." *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). Mr. Dershowitz does not meet this high standard because he has not shown that Ms. Giuffre will suffer prejudice if Boies Schiller is permitted to remain in the case. *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445-46 (N.Y. 1987) ("Testimony may be relevant and even highly useful but still not strictly necessary. A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence.")

19

Dershowitz cites one case, *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009), in support of this strategy, but that case is in fact further authority for why his motion should be denied. In *Murray*, the Second Circuit ruled *against* disqualification explaining that a party seeking advocate-witness disqualification of an entire law firm by imputation must satisfy a very demanding burden of proof, because "Rule 3.7 lends itself to opportunistic abuse." Thus, a law firm "can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Id*. at 178-79. The movant must show "specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the advocate-witness' client] is substantial." *Id*. at 178. With no showing of prejudice, BSF cannot be disqualified, and even the attorney-witnesses can participate in certain aspects of the case. *See id*. at 178-79; *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373-74 (E.D.N.Y. 2010) (denying motion to disqualify as "without merit" where defendants "failed to show that the testimony of [plaintiff's attorneys] would be 'necessary' regarding a significant issue of fact"); *See also Gormin v. Hubregsen*, 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009) (denying motion to disqualify and noting that the advocate-witness rule "addresses counsel's participation at trial, and does not bar counsel's participation in pre-trial proceedings").

Dershowitz is wrong that "when deciding a motion for disqualification, the Court must resolve any doubts in favor of disqualification." *See Filippi v. Elmont Union Free School Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 303 (E.D.N.Y. 2010); *Arifi v. de Transp. du Cocher, Inc.*, 290 F. Supp. 2d 344, 349 (E.D.N.Y. 2003).[9] Both of Dershowitz's cases are readily distinguishable from

---

[9] Dershowitz selectively quoted language is out of context—indeed it is far from well settled law in New York that a court must necessarily "resolve any doubts in favor of disqualification" given

the instant action. In *Fillipi*, the court granted disqualification where an obvious conflict existed: the law firm was representing a plaintiff in a Title VII suit against a defendant Board of Education, even though an associate at the law firm representing the plaintiff was the Vice President of the defendant Board, and was on the Board at the time the Board received letters regarding the alleged discrimination at issue in the lawsuit. *See Fillipi*, 722 F. Supp. 2d at 295. Similarly, in *Arifi*, the court granted disqualification where a firm's prior representation of the defendant concerned pre-suit discovery sought by plaintiff in connection with the accident. *See Arifi*, 290 F. Supp 2d. 344 at 349. That firm's current client was being sued by the same plaintiff with regard to the same accident and was asserting a cross-claim against the defendant it had previously represented. *See id*. And critically, unlike in this action, the firm did not claim to have erected a "Chinese Wall" between the conflicted attorney and the rest of the firm. *See id*. Thus, Dershowitz's reliance on these cases is misplaced—they either involve clear and flagrant conflicts of interest with former clients or the lack of an ethical screen, unlike here where Dershowitz was *never* a client of BSF and the firm nevertheless instituted a timely and effective ethical screen in the interest of caution.

In *Interpharm, Inc. v. Wells Fargo*, the court denied a motion to disqualify where the moving party's argument that opposing counsel constituted a necessary witness was "either baseless or little more than wishful thinking" and that even if the attorney "had admissible, non-privileged and non-cumulative testimony, the motion to disqualify is simply premature at this point in time." 2010 WL 1141201 at *5 (S.D.N.Y. Mar. 25, 2010). As in *Interpharm*, Dershowitz makes

---

the high standard the moving party must meet. *See, e.g.*, *Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d at 287 (Preska, J.) (noting the Second Circuit's direction that "unless an attorney's conduct tends to 'taint the underlying trial,' ... courts should be quite hesitant to disqualify an attorney") (citing *Board of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)); *Gurniak v. Emilsen*, 995 F. Supp. 2d 262, 269-70 (S.D.N.Y. 2014) (same); *In re Del-Val Financial Corp. Securities Litigation*, 158 F.R.D. 270, 273 (S.D.N.Y. 1994) (same).

only blanket assertions regarding testimony he would seek to obtain from Mr. Boies, Ms. McCawley, or other BSF attorneys, but fails to offer any evidence as to how such testimony is necessary or indeed even relevant at all to Ms. Giuffre's defamation claim. Moreover, several of Dershowitz's discussions with Mr. Boies for which he claims he will seek necessary testimony occurred in the context of settlement discussions between Mr. Boies (on behalf of Ms. Giuffre) and Dershowitz, and the contents of those discussions are plainly inadmissible under Federal Rule of Evidence 408. *See Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827-28 (2d Cir. 1992) ("[W]idespread admissibility of the substance of settlement offers could bring with it a rash of motions for disqualification of a party's chosen counsel who would likely become a witness at trial"). *See also S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445-46 (N.Y. 1987) ("Disqualification may be required only when it is likely that the testimony to be given by the witness is necessary. Testimony may be relevant and even highly useful but still not strictly necessary.") (internal citation omitted); *Brooks v. Caswell*, F. Supp. 3d 2015 WL 1137416, at *10 (D. Or. 2015) (denying motion for disqualification where testimony regarding settlement negotiations was not "necessary" because other parties attended those discussions and could testify instead of the lawyer against whom disqualification was sought).

The weight of the evidence here demonstrates that Dershowitz's reliance on the witness-advocate rule is little more than a tactical effort to disrupt Ms. Giuffre's efforts to seek redress for Dershowitz's defamatory statements. *See Finkel*, 740 F. Supp. 2d at 372 (noting the Second Circuit's "high standard of proof" for disqualification motions because "they are often interposed for tactical reasons") (internal citation omitted). *Accord Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 658 (Tx. 1990) (finding that disqualification under the witness-advocate rule would be inappropriate where the moving party's motion "had all the appearances of a tactical weapon

and lack[ed] proof that [the attorney was] a necessary witness"); *Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F. Supp. 96, 100 (D. Del. 1987) (denying motion to disqualify where defendants failed to meet their burden that the attorney in question was "likely to be a necessary witness" and noting that "motions to disqualify are often disguised attempts to divest opposing parties of their counsel of choice").

Dershowitz simply does not come close to satisfying this demanding standard to justify BSF's disqualification, especially because his requested relief will cause substantial prejudice and hardship to Ms. Giuffre by denying her the *pro bono* services of her longstanding counsel. *See* Rule 3.7(a)(3)); *Bohack Corp. v. Gulf & Western Indus., Inc.*, 607 F.2d 258, 263 (2d Cir. 1979); *See also S & S Hotel Ventures*, 69 N.Y.2d at 443 ("The right to counsel of choice is not absolute and may be overridden where necessary—for example, to protect a compelling public interest— but it is a valued right and any restrictions must be carefully scrutinized.").

## IV.   DERSHOWITZ WAIVED ANY RIGHT HE EVER HAD TO BRING A MOTION TO DISQUALIFY

In addition to everything else, Dershowitz's motion is untimely. BSF, as Ms. Giuffre's counsel, has been adverse to Mr. Dershowitz for more than four years. He had numerous opportunities to move to disqualify BSF and while he threatened to do so, both in the media and court filings, he never did more than three years ago. In March 2016, Mr. Dershowitz threatened to move to disqualify BSF in *Cassell and Edwards v. Dershowitz*, Case No. CACE 15-000072 (Seventeenth Judicial Circuit of Broward County Florida) (Filing No.: 38710284). He never filed such a motion. Again, on August 19, 2016, during Ms. Giuffre's appeal to the Fourth District Court of Appeal, Case No. 4D16-1847, Dershowitz's attorney submitted an unsigned affidavit, titled *Affidavit of Alan Dershowitz in Support of Motion to Disqualify the Law Firm of Boies Schiller & Flexner On the Grounds That Partners Carlos Sires and Stuart Singer Had Confidential Lawyer-*

*Client Communications with Me Regarding this Case*, containing the exact same false assertions he has raised in his brief in this case. (*See* Schiller Decl. at Ex. 15). Again, he did not file a disqualification motion against BSF. In August 2016, Dershowitz intervened in *Giuffre v. Maxwell*, Case No. 15-CV-0743 [DE 362-364], but did not seek to disqualify BSF as Ms. Giuffre's counsel. In November 2016, Dershowitz filed an appeal against Ms. Giuffre in the Second Circuit (16-3945), but did not seek disqualification of BSF. The Second Circuit decided that appeal earlier today.

Only now, after repeatedly failing to seek disqualification of BSF in no less than four separate and prior actions in which BSF represented Ms. Giuffre does Dershowitz attempt this baseless motion to deprive Ms. Giuffre of her counsel. All of the issues raised by Dershowitz have been known to him since 2015. An undue delay in bringing a motion to disqualify creates an inference that the moving party is improperly using disqualification as a litigation tool. *See Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276, 289-91 (S.D.N.Y. 2001) (Preska, J.) (noting that delay and intentional tactical maneuvering in filing a motion to disqualify can greatly prejudice a party); *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (denying a motion for disqualification in part because of the movant's delay, which gave rise to concerns of tactical use).

In fact, Dershowitz has waived his objection to any of these purported issues with respect to BSF's representation of Ms. Giuffre by failing to formally object to the representation in four prior actions. *See Yasuda Trust & Banking Co. v. 250 Church Associates*, 206 A.D.2d 259, 259-60 (N.Y. App. Div. 1994) (affirming denial of disqualification motion on a theory of waiver and consent where defendants "failed to object to the firm's representation of plaintiff in two separate actions against defendants"). *Accord Baltimore County v. Barnhart*, 201 Md. App. 682, 714 (Md.

Ct. Spec. App. 2011) (affirming denial of disqualification as untimely and motivated by tactical concerns where the moving party failed to seek disqualification of an attorney's representation of an employee in prior appeal involving the same issues); *Georgia Baptist Health Care System, Inc. v. Hanafi*, 253 Ga. App. 540, 542 (Ga. 2002) (finding that a motion to disqualify was untimely and likely brought for tactical purposes where the moving party was aware of a conflict during a prior suit involving the same parties).

> As Professor Simon opined:

> Courts in New York, including courts in the Southern District of New York, are wary of motions to disqualify because such motions are often used as a form of "tactical maneuvering" and raise concerns about tactical abuse. They have the potential to deprive adversaries of their chosen counsel and to impose unnecessary expense and delay on the courts and the parties. Often, a motion to disqualify is motivated not by fear that the opposing law firm has an unfair advantage against its former client or prospective client, but rather by a desire to inflict pain and inconvenience on the opposing firm's client and to sideline a capable adversary.

> These concerns about tactical abuse are troubling in this case. At this point, after Ms. Giuffre has been represented by Boies Schiller for more than four years. She would suffer severe prejudice to her case if the Court were to disqualify the Firm.

(Simon Decl. at ¶¶ 83-84.) Because Dershowitz waited years to raise these objections to Ms. Giuffre's counsel, his motion should be denied as untimely and effectively waived.

## CONCLUSION

For the reasons set forth above, Plaintiff Virginia Giuffre respectfully requests that the Court deny Defendant Alan Dershowitz's Motion to Disqualify the Law Firm of Boies Schiller Flexner LLP.

Dated:  July 3, 2019                              Respectfully Submitted,


By:      /s/ *Joshua I. Schiller*
         Joshua I. Schiller
         BOIES SCHILLER FLEXNER LLP
         55 Hudson Yards
         New York, NY 10001
         (212) 446-2300
         jischiller@bsfllp.com

         Sigrid McCawley (*Pro Hac Vice Pending*)
         BOIES SCHILLER FLEXNER LLP
         401 E. Las Olas Blvd. Suite 1200
         Fort Lauderdale, FL 33315

         *Counsel for Plaintiff, Virginia Giuffre*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 3rd day of July, 2019, I served the attached document

via CM/ECF and e-mail to the following counsel of record.

Arthur L. Aidala
Imran H. Ansari
AIDALA, BERTUNA & KAMINS, P.C.
546 5th Ave
New York, NY 10036
Tel: (212) 486-0011
Fax: (212) 750-8297
Email: arthur@aidalalaw.com
Email: iansari@aisalalaw.com

*Counsel for Defendant, Alan Dershowitz*

By:  /s/ *Joshua I. Schiller*
     Joshua I. Schiller