# EXHIBIT 7

# AFFIDAVIT OF J. STANLEY POTTINGER

1. I am a member of the Bars of California and New York, and am the Managing Partner of The Pottinger Firm in South Salem, Westchester County, New York. I have been one of the attorneys representing Virginia Giuffre (formerly Virginia Roberts) since early 2014.

2. I am a former Director of the Office for Civil Rights at the Department of Health, Education and Welfare and a former Assistant Attorney General in charge of the Civil Rights Division of the United States Department of Justice.

3. I have been advised of the assertions Mr. Dershowitz has made to the Florida Bar concerning David Boies and Sigrid McCawley. I make this affidavit at the request of counsel for Mr. Boies and Ms. McCawley in order to provide the Florida Bar with information I have regarding the accuracy or inaccuracy of those assertions.

4. In or about June 2014, I approached David Boies to see if he would be willing to serve as co-counsel to a young woman, Virginia Giuffre, who had been the victim of sex trafficking when she was a child. I told Mr. Boies that Ms. Giuffre had been sexually abused and trafficked by Jeffrey Epstein, a convicted sex offender. I told Mr. Boies that the FBI and Florida prosecutors had identified more than 20 girls, including Ms. Giuffre, whom Mr. Epstein himself had abused and whom he had "lent out" to friends and business associates. I told him that the total number of girls involved was much larger.

5. I explained to Mr. Boies that Ms. Giuffre had decided to dedicate herself to bringing attention to the problem of sex trafficking, particularly of children, and that in that connection she was speaking out about her experiences. I told Mr. Boies that Ms. Giuffre was already represented by counsel but that she and her counsel expected her to become the target of vicious attacks by persons whose identities she revealed, many of whom were rich and powerful, and that we believed it would be desirable to have additional legal help available to her.

6. I approached Mr. Boies because of my high regard for him and Boies Schiller Flexner LLP ("BSF"); because of his well-known willingness, and the willingness of his firm, to take on cases in the public interest; and because of his firm's particular commitment to representing abused women and children.

7. I told Mr. Boies that there was an existing legal proceeding in Florida in which Ms. Giuffre might be called as a witness. Mr. Boies said that he was not a member of the Florida Bar and that he was limited in the number of *pro hac vice* motions he could file, but that he believed his Florida partner, Sigrid McCawley, who also had a particular interest in helping abused and disadvantaged women and children, might be interested in assisting in the representation of Ms. Giuffre.

1

8. Mr. Boies made clear that before undertaking a representation of Ms. Giuffre his firm would have to be satisfied that she was, in fact, a victim of sex trafficking and was not making unfounded claims. I told Mr. Boies that I believed Ms. Giuffre to be credible; that her other current counsel, Brad Edwards, a respected litigator and former state prosecutor, and Paul Cassell, a distinguished professor of law and former United States District Judge, both of whom were experienced in dealing with sex abuse cases, believed her to be credible; that the FBI had found her to be a victim of sex trafficking by Mr. Epstein; and that other witnesses corroborated what Ms. Giuffre said. Mr. Boies said he might want her to take a lie detector test, not because he didn't believe her, but as further due diligence. I said I thought Ms. Giuffre would be prepared to take such a test.

9. In the fall of 2014, I asked Mr. Boies if his firm represented, or if he knew, Mr. Leslie Wexner. I told him that in the course of investigating facts related to Mr. Epstein's sex trafficking, Mr. Wexner had been identified as a close business associate and personal friend of Mr. Epstein. I told Mr. Boies that there were assertions that Mr. Wexner had permitted Mr. Epstein to use, and entertain on, Mr. Wexner's Yacht, and that Mr. Wexner was alleged to have had sex with one or more of Mr. Epstein's girls, including Ms. Giuffre.

10. Mr. Boies told me that his firm did not represent Mr. Wexner or his companies, but that he had met Mr. Wexner at one or more dinner parties. Mr. Boies cautioned that before any assertions by Ms. Giuffre about Mr. Wexner were made, the facts should be thoroughly investigated and Mr. Wexner should be given a chance to address the assertions she was making about him. I agreed and asked Mr. Boies if BSF would undertake that investigation. Mr. Boies said he would ask BSF lawyers in Florida to help.

11. I know that Mr. Wexner was initially contacted for a discussion with him and/or his counsel in December 2014 by Mr. Steve Zack, the head of BSF's Miami office and the former President of the Florida Bar and of the American Bar Association. I also know that Messrs. Zack, Boies, and one or more other lawyers at BSF subsequently spoke with counsel for Mr. Wexner.

12. Mr. Dershowitz has asserted that an effort was made to extort Mr. Wexner. Although I was not present during all of the communications with Mr. Wexner's counsel, I know that:

(a) There was no plan or intent to extort, no suggestion of extortion, and no contemplation of extortion when I asked Mr. Boies for his firm's assistance with respect to Mr. Wexner in the fall of 2014, or at any other time.

(b) I spoke contemporaneously with Messrs. Zack and Boies about their discussions with Mr. Wexner's counsel. At no time was there any indication whatsoever that Messrs. Zack, Boies, or anyone else representing Ms. Giuffre had asked for anything from Mr. Wexner and his counsel other than information, or that any attempt at extortion had been made or contemplated.

2

(c) I am informed that the last communication with Mr. Wexner's counsel was in December 2015.

(d) Neither Mr. Wexner nor his counsel has ever given any indication that they believed they were threatened or that there was any attempted extortion.

(e) A representative of Mr. Wexner's counsel stated to the media that she or he, the representative, did not believe there had been any extortion attempt.

13. In or about December 2014, Mr. Boies asked me to interview Ms. Giuffre personally, face-to-face, in order to gather further details of her experiences with Mr. Epstein and others; to "scrub" her story yet again; and to assess her credibility both specifically and in general. I did so for more than two hours approximately 60 days later, in February 2015, in Denver, Colorado. At that time Ms. Giuffre's description of relevant events, including intimate details, and her answers to probing questions remained consistent with her earlier statements to me and Mr. Boies and her other counsel, Messrs. Edwards and Cassell. I reported the gist of my interview to Mr. Boies and gave him my conclusion that her credibility was intact.

14. At the end of December 2014, Ms. Giuffre's counsel (Messrs. Edwards and Cassell) filed papers in the so-called "Crime Victims Rights (CVRA)" case in the United States District Court for the Southern District of Florida that named Mr. Dershowitz, among others, as someone who had participated in the sexual exploitation of Ms. Giuffre. Mr. Boies was not a lawyer in that case, and did not draft or participate in the drafting or filing of that pleading.

15. When I informed Mr. Boies of the filing he told me that while he was aware of Mr. Dershowitz's reputation for running naked on beaches in Martha's Vineyard and hitting on students and girlfriends of students, he was disappointed to learn of his involvement with someone as young as Virginia. He also told me that while the naming of some perpetrators was probably inevitable, he thought the more the public focus could be kept on the evil of trafficking and the less on the personalities involved the better it would be for Virginia. Mr. Boies said that Mr. Dershowitz's standard practice in defending clients was to try to attack and smear the victim, and that he was concerned Mr. Dershowitz would do the same to Virginia.

16. In January 2015, Ms. Ghislaine Maxwell, a former close associate of Jeffrey Epstein's and friend of Mr. Dershowitz's, launched a series of public attacks on Ms. Giuffre's credibility. At the same time, Mr. Dershowitz launched a series of public attacks on Messrs. Edwards and Cassell for their representation of Ms. Giuffre and for having filed Ms. Giuffre's affidavit in the CVRA case naming him.

17. Early in January Mr. Dershowitz went on television, asserted he had never had sex with Ms. Giuffre, said he wanted to have a chance to clear his name in court, and said that in order to do so, he would waive the statute of limitations so that Ms. Giuffre could sue him. Indeed, he specifically challenged Ms. Giuffre to sue him. However, when Mr. Edwards

followed up on behalf of Ms. Giuffre and asked Mr. Dershowitz to waive the statute of limitations as he had publicly proclaimed he would do, Mr. Dershowitz refused and has continued to refuse to this day.

18. Messrs. Edwards and Cassell told me, and I told Mr. Boies, that they intended to sue Mr. Dershowitz for defamation, which they soon did. Mr. Boies and I discussed the fact that Ms. Giuffre would almost certainly be a witness in the case against Mr. Dershowitz and that she would need counsel in Florida other than the plaintiffs in the defamation case, Messrs. Edwards and Cassell, to represent her.

19. Mr. Boies again mentioned Ms. McCawley and suggested that I now contact Ms. McCawley in the BSF Ft. Lauderdale office in order to see if she would represent Ms. Giuffre at her deposition. I spoke with Ms. McCawley during the first week of February 2015. After inquiring into the facts and the client's credibility, she agreed to represent Ms. Giuffre if she needed representation as a witness in the lawsuit by Messrs. Edwards and Cassell against Mr. Dershowitz.

20. Mr. Boies and I also discussed filing a defamation lawsuit on behalf of Ms. Giuffre against Ms. Maxwell in New York, which, after extensive investigation, we ultimately did in September 2015.

21. I participated with Messrs. Boies, Edwards, and Cassell in representing Ms. Giuffre in suing Ms. Maxwell. The trial court denied the defendant's motions to dismiss and for summary judgment. On the eve of trial, the case was settled. Although the defendant insisted that the amount of the settlement should be confidential for 10 years, I am able to say that it reflected the belief on both sides that Ms. Giuffre would prevail at trial.

22. In the course of preparing the Maxwell case, we as counsel to Ms. Giuffre accumulated additional witnesses and evidence corroborating Ms. Giuffre's assertions, including another young woman who testified under oath that she had been trafficked by Mr. Epstein and had had sex with Mr. Dershowitz.

23. Sometime in the second half of May 2015, Mr. Boies told me that he had been contacted by Mr. Dershowitz and David Stone, an attorney acquainted with both Mr. Dershowitz and Mr. Boies. Mr. Boies reported to me that Messrs. Dershowitz and Stone wanted to meet with BSF in order to try to convince the firm that Ms. Giuffre was mistaken in identifying Mr. Dershowitz as one of the men with whom Ms. Giuffre had had sex at Mr. Epstein's direction.

(a) Mr. Boies told me that Mr. Dershowitz claimed to have documentary proof that Ms. Giuffre was mistaken and that he, Mr. Boies, had agreed to meet with Messrs. Stone and Dershowitz the first week in June in order to let them provide their evidence.

4

(b) Mr. Boies told me he was doubtful about Mr. Dershowitz's claimed innocence because Mr. Dershowitz had backed down on his earlier offer to waive the statute of limitations to permit the validity of Ms. Giuffre's allegations to be decided in court. Nevertheless, Mr. Boies said that he wanted to accommodate Mr. Stone, who at one time had been a partner in BSF's New Jersey office, and that, in any event, he thought he should hear Mr. Dershowitz out.

(c) Mr. Boies also told me he now wanted Ms. Giuffre to take a lie detector test. He said that in light of Mr. Dershowitz's claim, he wanted to be as sure as possible that Ms. Giuffre was telling the truth. I contacted Ms. Giuffre who agreed to take a polygraph test, which she did (and passed) before the end of May 2015.

24. Mr. Dershowitz has asserted that Mr. Boies told him that Mr. Boies was supposedly convinced that Mr. Dershowitz had not had sex with Ms. Giuffre. While I do not have personal knowledge of what Mr. Boies did or did not say to Mr. Dershowitz outside my presence, I can say:

(a) I spoke to Mr. Boies regularly concerning Ms. Giuffre and about Ms. Giuffre's assertions concerning Mr. Dershowitz. At no time did Mr. Boies indicate that he did not believe Ms. Giuffre or that he had been convinced that Mr. Dershowitz had not had sex with her. On the contrary, beginning in June 2015, Mr. Boies told me on repeated occasions that he believed Ms. Giuffre to be credible; that he believed Mr. Dershowitz to be lying; and that he believed Mr. Dershowitz attacks on Ms. Giuffre and her counsel to be disgraceful (sometimes using more colorful words).

(b) Mr. Boies also told me that the gaps in the information and materials Mr. Dershowitz had presented to him as alleged "proof" that he was never with Ms. Giuffre were many and large, and that although Mr. Dershowitz kept promising to fill in the gaps, he never did.

(c) Ms. Giuffre's having taken, and passed, a lie detector test with respect to her assertion that she had had sex with Mr. Dershowitz on multiple occasions reinforced Mr. Boies's belief that she was telling the truth.

(d) Mr. Dershowitz was caught in a number of lies. Mr. Boies and I discussed and agreed that the extent to which Mr. Dershowitz lied about his involvement with Mr. Epstein reinforced our mutually-held conviction that his denials of having had sex with Ms. Giuffre were not credible.

25. Mr. Dershowitz has asserted to the Florida Bar that Mr. Boies was convinced of Mr. Dershowitz's innocence as early as May 19, 2015. That is not possible. The first time that Mr. Dershowitz presented any materials at all to BSF to try to prove his innocence was in June and July of 2015.

5

26. During 2016 and 2017 Mr. Dershowitz was trying to persuade reporters to write stories based on the allegations that Mr. Dershowitz has now made to the Florida Bar. In most cases Mr. Dershowitz made his assertions to reporters "on background" so that the assertions would not be attributed to him. However, Mr. Dershowitz made assertions concerning Mr. Boies on the record to Boston Magazine, and those assertions were similar, or virtually identical, to the assertions Mr. Dershowitz has now made to the Florida Bar. Mr. Dershowitz was informed that if Boston Magazine published his assertions, Mr. Boies would sue Mr. Dershowitz for defamation. Mr. Dershowitz then retracted his statements to Boston Magazine, which did not publish those assertions.

27. On October 17, 2016, David Boies, Sigrid McCawley, Brad Edwards, Paul Cassell, Jack Scarola (attorney for Messrs. Edwards and Cassell) and I submitted a joint statement to Boston Magazine[1]. In it we described Mr. Dershowitz's allegations as "a complete fabrication" and "nothing but a smoke screen," and stated that "every one" of us "believes Ms. Giuffre over Alan Dershowitz." That statement represented, and still represents, my own belief and, by every indication that I have, the belief of each of us.

*J. Stanley Pottinger*

STATE OF NEW YORK   )
    ss.:                                )
COUNTY OF NEW YORK   )

On this 6th day of October 2017 before me, the undersigned, a Notary Public in and for said State, personally appeared J. STANLEY POTTINGER, personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument.

Notary Public
JOHN A. PASTERICK
NOTARY PUBLIC, STATE OF NEW YORK
NO.01PA6082750
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 11/04/~~2016~~ 2018

---

[1] Exhibit 5 to the Boies/McCawley Response to the Florida Bar.

6