# EXHIBIT 8

# AFFIDAVIT OF CARLOS M. SIRES

I, Carlos M. Sires, being duly sworn, state under oath that the following facts are true:

1. I am an attorney licensed to practice law in Florida. I have been a member of The Florida Bar since 1981. I am a partner in the law firm Boies Schiller Flexner LLP ("BSF").

2. I met Alan Dershowitz in the course of doing legal work for related parties in litigation in Florida. As a result, he and I developed a collegial, friendly relationship.

3. On January 22, 2015, by happenstance, I watched Mr. Dershowitz's interview on the Today Show. The interview concerned the fact that, as a result of responding to public allegations that he had engaged in sex with an underage female, the accuser's lawyers had sued him for defamation. After the interview ended, I wrote him an email which I termed a "note of support." In the email, I stated that "If there is anything I can do for you, please let me know."

4. I never offered to represent Mr. Dershowitz in connection with the defamation case. The email I sent to him on January 22 was not an offer by me to represent him in the defamation case or in any other case. In response to my email, on January 22, Mr. Dershowitz wrote, thanking me for my "kind words" and asking if we could talk. My "kind words" telling him to let me know "If there is anything I can do for you" were not an offer to represent him.

5. Later the same day of the interview, January 22, Mr. Dershowitz and I had our single oral communication about the defamation matter, when I called him at his request. During that brief telephone conversation, Mr. Dershowitz indicated for the first time that he was interested in my joining his defense team, but that he could not afford BSF's rates. I told him clearly that our Firm would need to run a conflict check before any potential representation and that I was not able to decide whether to accept the representation or to agree on a fee schedule. I further told him that BSF's Chairman, David Boies, would make those decisions. Mr. Dershowitz told me that he knew Mr. Boies and would be glad to speak to him about BSF undertaking the representation. I never told Mr. Dershowitz at any time that we had agreed on a fee. I never told him that our Firm had completed a conflict check that would allow us to represent him, and I never told him that Mr. Boies had approved any potential representation.

6. I also told Mr. Dershowitz that, as a step in exploring whether to take on his representation, I would first confer with my partner Stuart Singer. After conferring with Mr. Singer, the next day, January 23, I wrote to Mr. Dershowitz telling him that "Stuart and I *think* we can provide help. We think a meeting would be a good idea." (Emphasis added.) The purpose of that proposed meeting was to learn more information so that BSF (and, in particular, Mr. Boies) could decide whether and on what terms, including financial terms, it might be prepared to represent Mr. Dershowitz. That meeting never occurred.

7. In our one telephone conversation and in our email communications I never in any way informed or even implied to Mr. Dershowitz that: I had completed a conflict check; I had received approval of anyone, including a managing lawyer of the firm for BSF to represent him; or I had received approval from BSF to accept the representation.

8. Mr. Dershowitz never requested legal advice from me. He did respond to my email by asking if we could speak and telling me: "I would love your help."

9. Never did Mr. Dershowitz share with me any substantive information relating to either the Crime Victims' Rights Action (CVRA) or the defamation lawsuit.

10. Never did Mr. Dershowitz share with me any defense strategy.

11. In our one telephone conversation Mr. Dershowitz and I did not discuss anything about the substance of the defamation action against him or his legal strategy. Instead, during the conversation, I reiterated my dismay at the accusations and Mr. Dershowitz vehemently and generally denied any wrongdoing; said his accuser was a liar; stated that the two lawyers who sued him should be disbarred; and stated he had a right to defend himself against the false allegations made in their court filings. Indeed, *nothing* Mr. Dershowitz stated during the conversation differed from what he had already stated publicly, including earlier that day on the Today Show.

12. While in the one telephone conversation I expressed my belief to Mr. Dershowitz that he would not have engaged in child molestation, I never addressed the ethical conduct of the lawyers who were suing him and, of course, I had no personal knowledge of the facts.

1

13. As part of considering the possible representation, I asked Mr. Dershowitz to send me "the complaint and any other submissions" in the defamation matter. As the nature of that request demonstrates, I did not request that he send me any privileged or confidential information. Another lawyer for Mr. Dershowitz sent me submissions filed in the litigation. Anything that was sent to me other than the public materials I had requested was sent to me without any request for it on my part, without any expectation on my part that it would be sent, and without any indication on my part that BSF would be willing or able to represent Mr. Dershowitz without all three essential requirements being met. In fact, I never indicated to Professor Dershowitz that any one of those three essential requirements had been met.

14. Of his own volition, on January 24, Mr. Dershowitz included me in an email addressed to "dear friends," to which he attached a memorandum containing his "random thoughts" on the defamation action. In the memorandum, Mr. Dershowitz denied the accusations against him, and repeated his assertions that the accuser was not truthful and the lawyers who sued him for defamation were unethical. The gist of the memorandum was Mr. Dershowitz's continued—and very public— assertion that he should be allowed to fight back against the charges without being liable for defamation.

15. I recalled having once run across case law relating to a conditional privilege to speak in self-defense or to defend one's reputation. I sent Mr. Dershowitz a case and a section of the Restatement of Torts referring to this issue. This was the only instance I communicated anything concerning a legal issue to him, his position on which he had disclosed publicly.

16. On January 30, I was informed by Mr. Singer he had spoken to Mr. Boies about the possible representation of Mr. Dershowitz and had been informed we could not take on the representation because the firm had a conflict. That same day, I informed Mr. Dershowitz, "Although we *hoped* to assist" him, the conflict precluded BSF from doing so. (Emphasis added.) Mr. Dershowitz responded to me later that day by writing: "Darn. I was really *hoping you could come on board*. Thanks for *considering it.*" (Emphasis added.) (Email message attached as Exhibit A.)

17. I never stated or implied that I or BSF would represent Mr. Dershowitz. In his own words, Mr. Dershowitz made it clear to me he knew BSF had not agreed to represent him. Instead, he was merely "hoping" that BSF "could" join his legal team and thanked me for BSF "considering" the possibility.

18. At no time, before or after the issuance of the February 9, 2015, Screening Memorandum did I disclose to either Mr. Boies or Ms. McCawley any substance of any communication I had with Mr. Dershowitz. I received, reviewed and complied with the Memorandum without exception.

19. At no time, before or after the issuance of the Screening Memorandum did either Mr. Boies or Ms. McCawley disclose to me any information regarding the representation of Ms. Virginia Roberts Giuffre.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Carlos M. Sires

STATE OF FLORIDA
SS:
COUNTY OF MIAMI-DADE

BEFORE ME, the undersigned authority, personally appeared Carlos M. Sires, personally known to me or who produced to me his Florida Driver License, who upon being first duly sworn, deposes and says that he has read the foregoing and it is true and correct to the best of his knowledge.

SWORN TO and SUBSCRIBED BEFORE ME this __24__ day of __November__, 2017.

_____
Notary Public, State of Florida
Print Name: Wilfredo Rosa III
Commission No. GG121514
My Commission Expires: July 5, 2021

WILFREDO ROSA III
MY COMMISSION #GG121514
EXPIRES: JUL 05, 2021
Bonded through 1st State Insurance

2