**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VIRGINIA L. GIUFFRE,

                Plaintiff,                      Case No.: 19 Civ. 3377 (LAP)

v.

ALAN DERSHOWITZ,

                Defendant.
_____/


**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

ARGUMENT ........................................................................................................... 4

I.  Giuffre's Claims Based On Dershowitz's Statements From 2018 And 2019 Are Not Time-Barred. .................................................................................................... 5

    A.  This Action Was Brought Within The Governing Statute of Limitations And The "Single Publication Rule" Is Inapplicable Under These Facts. ...................................... 5

    B.  In Any Event, Dershowitz's Defamatory Statements Within The Limitations Period Would Constitute A Republication And Trigger A New Limitations Period................. 8

II.  Dershowitz Cannot Avail Of The Self-Defense Privilege. ............................... 10

    A.  Dershowitz Cannot Avail Of The Self-Defense Privilege Because Giuffre Has Adequately Pleaded Malice And Improper Purpose...................................................... 10

    B.  Dershowitz's Statements Fall Outside The Self-Defense Privilege. ........................... 14

    C.  The Self-Defense Privilege Is Not Available To A Defamation Defendant At Motion To Dismiss. .................................................................................................... 16

CONCLUSION...................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................ 4

*Barber v. Daly*,
   185 A.D.2d 567 (3d Dep't 1992)................................................................... 2, 7

*Block v. First Blood Assocs.*,
   691 F. Supp. 685 (S.D.N.Y. 1988) ................................................................ 11

*Bucephalus Alternative Energy Grp., LLC v. KCR Dev.*,
   No. 8 Civ. 7343, 2009 WL 5179091 (S.D.N.Y. Dec. 23, 2009)..................... 1

*Collier v. Postum Cereal Co.*,
   134 N.Y.S. 847 (1st Dep't 1912) ................................................................... 15

*Consumer Fin. Protection Bureau v. RD Legal Funding, LLC*,
   No. 332 F. Supp. 3d 729 (S.D.N.Y. 2018)..................................................... 4

*Cook v. Conners*,
   109 N.E. 78 (N.Y. 1915).................................................................................. 7

*Davis v. Costa-Gavras*,
   580 F. Supp. 1082 (S.D.N.Y. 1984) .............................................................. 9

*Demas v. Levitsky*,
   738 N.Y.S.2d 402 (3d Dep't 2002)............................................................... 17

*Dillon v. City of New York*,
   704 N.Y.S.2d 1, 261 A.D.2d 34 (1st Dep't. 1999) ...................................... 18

*Etheredge-Brown v. Am. Media, Inc.*,
   13 F. Supp. 3d 303 (S.D.N.Y. 2014) ............................................................. 9

*Firth v. State of New York*,
   98 N.Y.2d 365 (2002) ..................................................................................... 8

*Foretich v. Capital Cities/ABC, Inc.*,
   37 F.3d 1541 (4th Cir. 1994) ........................................................................ 15

*Foster v. Churchill*,
   87 N.Y.2d 744, 665 N.E.2d 153 (1996)........................................................ 18

*Gelbard v. Bodary*,
   270 A.D.2d 866 (4th Dep't 2000) ................................................................ 10

ii

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) .................................................................................................. 13

*Giuffre v. Maxwell*,
    165 F. Supp. 3d 147 (S.D.N.Y. 2016) ...................................................................... 17

*Green v. Cosby*,
    138 F. Supp. 3d 114 (D. Mass. 2015) ...................................................................... 17

*Hoesten v. Best*,
    34 A.D.3d 143 (1st Dep't 2006) .............................................................................. 10

*Jewell v. Capital Cities/ABC, Inc.*,
    1998 WL 702286 (Oct. 7, 1998) ......................................................................... 2, 7

*Jim Henson Prods., Inc. v. John T. Brady & Assocs., Inc.*,
    867 F. Supp. 175 (S.D.N.Y. 1994) .......................................................................... 18

*Kroemer v. Tantillo*,
    270 A.D.2d 810 (4th Dep't 2000) ............................................................................ 17

*Lehman v. Discovery Commc'ns, Inc.*,
    332 F. Supp. 2d 534 (E.D.N.Y. 2004) ...................................................................... 8

*Liberman v. Gelstein*,
    605 N.E.2d 344 (N.Y. 1992) .................................................................................... 14

*Long v. Marubeni Am. Corp.*,
    406 F. Supp. 2d 285 (S.D.N.Y. 2005) ...................................................................... 19

*Loughry v. Lincoln First Bank, N.A.*,
    494 N.E.2d 70 (N.Y. 1986) ...................................................................................... 11

*Mayfield v. Fullhart*,
    444 S.W.3d 222 (Tex. App. 2014) ............................................................................ 8

*McNamee v. Clemens*,
    762 F. Supp. 2d 584 (E.D.N.Y. 2011) ...................................................................... 15

*Mencher v. Chesley*,
    85 N.Y.S.2d 431 (Sup. Ct. 1948) ............................................................................ 15

*O'Rorke v. Carpenter*,
    432 N.E.2d 136 (N.Y. 1981) .................................................................................... 11

*Orenstein v. Figel*,
    677 F. Supp. 2d 706 (S.D.N.Y. 2009) ......................................................... 17, 18, 19

*Pearce v. Manhattan Ensemble Theater, Inc.*,
  No. 6 Civ. 1535, 2009 WL 3152127 (S.D.N.Y. Sept. 30, 2009) .................................... 8

*Pruiss v. Bosse*,
  912 F. Supp. 104 (S.D.N.Y. 1996) ............................................................................. 7

*Reynolds v. Pegler*,
  223 F.2d 429 (2d Cir. 1955) .............................................................................. 16, 17

*Rinaldi v. Viking Penguin, Inc.*,
  52 N.Y.2d 422, 420 N.E.2d 377 (1981) ..................................................................... 8

*Roberti v. Schroder Inv. Mgmt. N. Am., Inc.*,
  No. 4 Civ. 2404, 2006 WL 647718 (S.D.N.Y. Mar. 14, 2006) .............................. 19

*Rosenberg v. Metlife, Inc.*,
  453 F.3d 122 (2d Cir. 2006) ............................................................................... 4, 18

*State v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*,
  42 P.3d 233 (Nev. 2002) ..................................................................................... 14, 16

*Van Buskirk v. The New York Times Co.*,
  325 F.3d 87 (2d Cir. 2003) ....................................................................................... 6

*West v. Am. Tel. & Tel. Co.*,
  311 U.S. 223 (1940) ................................................................................................ 18

**Statutes**

18 U.S.C. § 3771 ...................................................................................................... 3, 16

**Other Authorities**

Restatement (Second) of Torts § 577A  (1977) ................................................... 2, 6, 7

Restatement (Second) of Torts § 600 ......................................................................... 11

Restatement (Second) of Torts § 605 ......................................................................... 14

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ................................................................. 4

N.Y. C.P.L.R. § 215(3) ............................................................................................... 5

Rule 15(a)(2) .............................................................................................................. 20

Plaintiff, Virginia Giuffre hereby responds to Alan Dershowitz's Motion to Dismiss, ECF No. 22, and states as follows.

## INTRODUCTION

On March 2, 2019, Professor Alan Dershowitz tweeted to his over 200,000 followers: "My perjuring accusers are Virginia Roberts and Sarah Ransomme. Both have long records of lying . . . : I hereby accuse my false accusers of committing the felony of perjury and challenge them to sue me for defamation." ECF No. 1-6. Now that Giuffre has filed her suit against him, Dershowitz is trying desperately to get out of the case.

Despite having publicly challenged Giuffre to file a defamation claim against him, Dershowitz now argues that the Complaint should be dismissed because, he argues, (i) Giuffre's claims are time-barred under the applicable statute of limitations, and (ii) his defamatory statements are protected by "the First Amendment and the self-defense privilege." ECF No. 23 (hereinafter, the "Motion" or "Mot.") at 8, 16.[1] Both arguments are frivolous.

Plaintiff's claims are not time barred. Dershowitz's defamatory statements that are the basis of Plaintiff's Complaint were made from November 2018 through March 2019, well within the one-year limitations period for defamation claims in New York. Dershowitz asserts that his recent "statements do not give rise to a new cause of action for defamation because the statements

---

[1] Notably, Dershowitz's motion does not cite to or quote any portion of Federal Rule of Civil Procedure 12(b)(6), which governs motions to dismiss complaints based on the sufficiency of their allegations. This makes sense given that his arguments raise two fact-dependent affirmative defenses incapable of resolution at motion to dismiss. Equally notable is the fact that Dershowitz does not deny that the statements for which he is currently being sued are defamatory if they are timely and if they are not shielded by privilege. Dershowitz may not argue otherwise in his reply. *See Bucephalus Alternative Energy Grp., LLC v. KCR Dev.*, No. 8 Civ. 7343, 2009 WL 5179091, at *7 (S.D.N.Y. Dec. 23, 2009) (Preska, J.) (arguments waived when first raised in reply).

1

are substantively identical to the 2015 statements and did not reach a new audience." Mot. at 8. Dershowitz's assertion fails for two independent reasons.

First, the law of defamation does not protect serial defamers by allowing them to hide behind the statute of limitations. Rather the law clearly provides that a defamer is liable for each new publication of a defamatory statement. *See Jewell v. Capital Cities/ABC, Inc.*, No. 97 Civ. 5617 1998 WL 702286, at *2 (Oct. 7, 1998) (Preska, J.) (noting that "every distinct publication of a . . . slanderous statement gives rise to a separate cause of action") (quoting *Barber v. Daly*, 586 N.Y.S.2d 398, 400 (3d Dep't 1992)); Restatement (Second) of Torts § 577A cmt. a (1977) ("It is the general rule that each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises."). Second, even a cursory review of the two sets of statements shows that they are neither "substantively identical" nor made to the same audiences.

Dershowitz's argument that his defamatory statements are protected by the self-defense privilege fails for three independent reasons. First, the self-defense privilege is a qualified privilege that is forfeited if abused. Any qualified privilege was abused here where, as alleged in the Complaint, Dershowitz made each statement with the intent to intimidate and destroy the reputation of Ms. Giuffre, and with full knowledge that his statements were false. Second, the scope of Dershowitz's substantive attacks on Giuffre exceeded the substance of any statements by Giuffre. Third, in defamation actions, the invocation of privilege by a defendant is an affirmative defense inappropriate for resolution in a motion to dismiss.

## FACTUAL BACKGROUND

Virginia Giuffre was the victim of sex trafficking and abuse by Jeffrey Epstein, beginning when she was only 16 years old. Compl. ¶ 2. At the time, Alan Dershowitz was not only Epstein's

attorney and close friend, he was also a co-conspirator and participant in the sex-trafficking scheme. *Id.* ¶¶ 4, 6.

Epstein was arrested for sex trafficking in 2006, pleaded guilty to Florida state law prostitution charges, and entered into a non-prosecution agreement ("NPA") with the United States Attorney for the Southern District of Florida. *Id.* ¶¶ 7-8. The NPA was challenged in July 2008 by two of Epstein's victims because it had been concealed from Epstein's victims in violation of the Criminal Victims' Rights Act, 18 U.S.C. § 3771 (the "CVRA"). *Id.* ¶ 9. Although not initially part of that lawsuit, Giuffre provided information to the plaintiffs in that case in December 2014, and a joinder motion was eventually filed on her behalf. *Id.* ¶ 10. The Rule 21 motion for joinder described how she had been trafficked by Epstein and identified certain men with whom she had been forced to have sex, including Defendant Alan Dershowitz. *Id.*[2]

This action arises from a series of statements made by Dershowitz, beginning in late 2018, in response to a series of articles published by the Miami Herald that described Epstein's (and his lawyers') efforts to obtain the NPA, and mentioned Dershowitz's sexual abuse of Giuffre. Compl. ¶¶ 13-14. Dershowitz's statements not only dispute his having sex with Giuffre, but also accuse Giuffre of committing perjury and extortion. *Id.* ¶ 14. For example, in a December 1, 2018, letter to the editor of *Raw Story*, Dershowitz stated: "I never met Roberts; I never had sex with her; she simply made up the entire story for money." ECF No. 1-2. Dershowitz repeated this accusation four days later, in a December 5, 2018, letter to *The Harvard Crimson*, stating: "Roberts made up the accusations out of whole cloth in order to obtain millions of dollars from Leslie Wexner." ECF No. 1-5.

---

[2] Dershowitz misinforms this Court in his filing that Paul Cassell and Bradley Edwards were "sanctioned" for the joinder motion. The court did not issue any sanction against Cassell and Edwards. ECF No. 24-4 at 6-7.

As described in the Complaint, Dershowitz, acting in concert with Epstein, intentionally and maliciously released his false and defamatory statements about Giuffre to the media in order to discredit her; to subject her to public hatred, contempt, ridicule, and disgrace; and to intimidate her into silence.  Compl. ¶ 90.  Dershowitz made each statement with full knowledge that it was completely false.  *Id*. ¶ 91.  Dershowitz's statements compound the victimization Giuffre suffered as a teenager, as well as the trauma that she has been forced to cope with since.  The reputational harm is particularly damaging given that Giuffre currently runs a not-for-profit organization, Victims Refuse Silence, Inc., which she founded in 2014 to help victims of sex trafficking.  *Id*. ¶¶ 45, 86.

Giuffre filed the instant lawsuit on April 16, 2019.

## ARGUMENT

"In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must 'accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.'"  *Consumer Fin. Protection Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 751 (S.D.N.Y. 2018) (Preska, J.).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 12(b)(6)'s "plausibility standard is not akin to a 'probability requirement.'"  *Id*.

"Under New York law, libel consists of five elements: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)."  *Rosenberg v. Metlife, Inc.*, 453 F.3d 122, 123 n.1 (2d Cir. 2006) (internal quotation marks omitted).

4

Dershowitz's motion does not, and could not, deny that his statements were defamatory, that they were published to a third party, and that they were (as accusations of crimes) actionable per se.  Nor does he, or could he, challenge in a 12(b)(6) motion the Complaint's well-pleaded allegations that his defamatory assertions were false, and knowingly so.  Instead, Dershowitz raises two affirmative defenses for which Dershowitz (not Giuffre) bears the burden.  As set forth below, each of Dershowitz's defenses is meritless.

## I.    Giuffre's Claims Based On Dershowitz's Statements From 2018 And 2019 Are Not Time-Barred.

Dershowitz argues that Giuffre's claims must be dismissed as time-barred under New York's one-year statute of limitations period for defamation claims.  Any argument Dershowitz might have had was waived by his affirmative invitation to Giuffre to sue him for defamation. Comp. ¶ 21.  Moreover, this action is in fact clearly timely.

### A.    *This Action Was Brought Within The Governing Statute of Limitations And The "Single Publication Rule" Is Inapplicable Under These Facts.*

Under New York law, the statute of limitations for defamation claims is one year.  *See* N.Y. C.P.L.R. § 215(3).  As stated in the Complaint, the specific defamatory statements for which Giuffre is suing include:

- November 28, 2018: "the story was 100% flatly categorically made up" and "Roberts and her attorneys fabricated the assertion in order to get money from other powerful, wealthy people". (Exhibit 1, p. 8).

- December 1, 2018: "I never met Roberts; I never had sex with her; she simply made up the entire story for money". (Exhibit 2).

- December 2, 2018: "I was 'deliberately framed for financial reasons'"; Roberts made her claims about Dershowitz "in order to obtain money from a wealthy businessman and that Roberts had never previously included me among the people with whom she claimed to have had sex"; "one of Roberts' own lawyers has acknowledged in front of witnesses that Roberts claims against me are 'wrong' 'simply wrong'"; "I never met Roberts; I never had sex with her; she simply made up the entire story for money". (Exhibit 3).

5

- December 4, 2018: Plaintiff is a "certified, complete, total liar"; "I can prove conclusively that she made the whole thing up". At the same time Dershowitz claimed "that the FBI recognized the evidence showed he was not where she said he was". (Exhibit 4).

- December 5, 2018: "Roberts made up the accusations out of whole cloth in order to obtain millions of dollars from Leslie Wexner" and "there is evidence that directly proves I was framed. These include emails between Roberts and a journalist, a book manuscript by Roberts and a legal brief that are smoking guns showing that I was deliberately framed for financial reasons." (Exhibit 5).

- March 2, 2019: "My perjuring accusers are Virginia Roberts and Sarah Ransome [who reported that Epstein lent her out to Dershowitz for sex at the same time as Dershowitz was, at Epstein's request, representing Ransome as her lawyer]. Both have long records of lying". (Exhibit 6).

Compl. ¶ 17. Each of these statements were clearly made within the one-year statute of limitations.

In order to avoid this common-sense calculation of the statute of limitations to his statements from the past year, Dershowitz seeks to invoke New York's single publication rule, under which the statute of limitations period begins to run at "the earliest date on which the work was placed on sale or became generally available to the public." *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003). But the single publication rule does not protect Dershowitz's defamatory statements about Giuffre because his statements in 2018 and 2019 (i) are not the same statements or publications as those he identifies from 2015 and, even if they were, (ii) they would constitute republications with separately-triggered statutes of limitations.

Dershowitz argues that the defamatory statements he made in 2018 and 2019 are outside the statute of limitations period because they are "substantively identical" to separate statements made by him in 2015. Mot. at 10. Contrary to Dershowitz's argument, however, the statute of limitations starts to run each time a new statement is made, *see* Restatement (Second) of Torts § 577A(1) ("[E]ach of several communications to a third person by the same defamer is a separate publication."), and in the past year he has voluntarily made new statements to several different news organizations including on Twitter, network news, and a variety of internet publications. *See*

6

*Jewell*, 1998 WL 702286, at *2 (noting that "'every distinct publication of a . . . slanderous statement gives rise to a separate cause of action'"); *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) (holding that a proposed amended complaint asserted "new instances of defamation" where it alleged "new dates"); *Cook v. Conners*, 109 N.E. 78 (N.Y. 1915) ("The defendant communicated to others than the plaintiff the alleged libel on two independent occasions by means of two separate writings or newspapers.  Persons would read or acquire knowledge of it from or through either paper who would not do so through the other.  Each communication was a distinct publication which constituted, if the matter was libelous, a complete libel and a cause of action in favor of plaintiff."); *Barber*, 586 N.Y.S.2d at 400.  Dershowitz's recent statements from 2018 and 2019 did not merely refer back to prior statements or incorporate them by reference.  Under these facts, the single publication rule is inapplicable, and there is no support for Dershowitz's argument that the rule protects a defamer from publishing new statements through new media outlets.

Dershowitz's attempt to characterize his more recent statements as "substantively identical" and therefore the "same" as those he made in 2015 is fundamentally flawed.  Notably, the section of the Motion dedicated to this topic does not cite to *any* authority to support the novel idea Dershowitz's prior statements on a general subject matter could immunize him from new statements he made three years later.  *See* Mot. at 10-11 (citing cases for concept of judicial notice only).  Nor could it, as each new interview, letter to editor, or tweet used different words and conveyed a different message.  Each is, therefore, a new "publication" for statute of limitations purposes.  Restatement (Second) of Torts § 577A(1); *see also Jewell*, 1998 WL 702286, at *2; *Pruiss*, 912 F. Supp. at 106; *Cook*, 109 N.E. 78; *Barber*, 586 N.Y.S.2d at 400; *Mayfield v. Fullhart*,

444 S.W.3d 222, 227 (Tex. App. 2014) ("The single publication rule applies strictly to multiple copies of a libelous article published as part of a single printing.").

> B. *In Any Event, Dershowitz's Defamatory Statements Within The Limitations Period Would Constitute A Republication And Trigger A New Limitations Period.*

Even if the scope and substance of Dershowitz's defamatory statements from 2018 and 2019 were the same as those he made in 2015, the single publication rule would not apply because they are "republications" that re-start the statute of limitations periods.  Under New York law, "[r]epublication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'"  *Firth v. State of New York*, 98 N.Y.2d 365, 371 (2002) (quoting *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 435, 420 N.E.2d 377 (1981)).  Republications are treated as new publications for statute of limitations purposes when the republication reaches a new audience or substantively changes the original statement.  *See Pearce v. Manhattan Ensemble Theater, Inc.*, No. 6 Civ. 1535, 2009 WL 3152127, at *8 n.7 (S.D.N.Y. Sept. 30, 2009) ("Republication occurs when a subsequent publication: (1) is intended for and reaches a new audience, or (2) materially changes or modifies the original."); *Lehman v. Discovery Commc'ns, Inc.*, 332 F. Supp. 2d 534, 539 (E.D.N.Y. 2004) ("A rebroadcast has renewed impact with each viewing and creates a new opportunity for injury, thereby justifying a new cause of action.").

The Complaint quotes (and attaches as exhibits) Dershowitz's statements to the *Miami Herald*, *Raw Story*, *Law & Crime*, *The Harvard Crimson*, and Twitter.  In his Motion, Dershowitz lists the news organizations he gave statements to in 2015, but identifies none of the news organizations to which the allegations in the Complaint (¶ 17) are sourced.  *See* Mot. at 3; ECF 24 (Proctus Decl., attaching exhibits).  By identifying Dershowitz's statements to these new outlets, the Complaint sufficiently alleges that they are new statements intended to reach new audiences.

*See Pearce*, 2009 WL 3152127 at *8 n.7.  And even if they were the same statements republished by the same news organizations as before, they would be still republications subject to new limitations periods.  *See Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 306–07 (S.D.N.Y. 2014) (holding that, with republications, "[i]t is plausible to infer that this is done as part of a conscious effort to reach a new audience" and denying summary judgment); *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1094 (S.D.N.Y. 1984) ("[A] deliberate decision to republish or active participation in implementing the republication resurrects the liability otherwise laid to rest by the statute of limitations.").

Dershowitz attempts to avoid this rule by arguing that (i) his recent statements "reached the same global audience as his original 2015 statements; and (ii) "New York courts have recognized an important exception to the republication rule . . . where a statement made 'on a different occasion' from the original publication does *not* reach a new audience."  Mot. at 12.  Each argument is meritless.

First, Dershowitz's identification of a "global audience" asserts that the entire world has already been exposed to his statements from 2015.  But, as noted above, his recent statements were made to new media outlets, and different publications have different audiences.  Even if they were the same websites or news agencies (they are not), these news organizations would have a different audience now than they did four years ago.  Dershowitz cites no authority for the proposition of a "global audience" that would immunize serial defamers from repeated acts of slander or libel, and the Court should decline his invitation to create one.

Second, the cases Dershowitz identifies for the proposition that there is no republication when identical statements are made to the same audiences are easily distinguished.  Unlike the statements in *Hoesten*, which the court found "were made to the same audience" and "insofar as

the record shows, the statements were *identical* reports of the complaints that Best had previously reported," Dershowitz's 2018 and 2019 statements defaming Giuffre are different from those he issued in 2015, and published through new organizations to reach new audiences. *Hoesten v. Best*, 34 A.D.3d 143, 151, 821 N.Y.S.2d 40 (1st Dep't 2006) (emphasis added). *Gelbard* is similarly inapposite, as the defamatory statements in that case merely involved a defendant who "restated" the contents of an already written letter outside of the one-year limitations period to the same hospital peer review committee. *Gelbard v. Bodary*, 270 A.D.2d 866, 867, 706 N.Y.S.2d 801 (4th Dep't 2000).

**II.   Dershowitz Cannot Avail Of The Self-Defense Privilege.**

Dershowitz asserts that his statements are protected by the self-defense privilege.  Mot. at 16.  This argument fails for three independent reasons.  First, the self-defense privilege is a qualified one (not an absolute one) that is forfeited if abused.  It cannot be used to dismiss a defamation claim where, as here, the Complaint sufficiently alleges that the defendant acted with malice and for an improper purpose.  Second, Dershowitz's statements fall outside any self-defense privilege because they exceed the scope and substance of any statement to which he was responding.  Finally, Dershowitz's assertion of the self-defense privilege is incapable of resolution at motion to dismiss, as it is an affirmative defense that Giuffre is entitled to rebut.

*A.   Dershowitz Cannot Avail Of The Self-Defense Privilege Because Giuffre Has Adequately Pleaded Malice And Improper Purpose.*

Dershowitz's assertion of the self-defense privilege at motion to dismiss should be rejected because the Complaint adequately pleads facts to show that Dershowitz has abused any qualified privilege by making each statement with full knowledge of its falsity.

"Under New York law, a qualified or conditional privilege may exist" only if the defamatory statements "are made . . . without malice."  *Block v. First Blood Assocs.*, 691 F. Supp.

685, 699 (S.D.N.Y. 1988). "There is no qualified privilege under New York law when such statements are spoken with malice, knowledge of their falsity, or reckless disregard for their truth." *Id.*; *see also* Restatement (Second) of Torts § 600 ("[O]ne who upon occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity."); *Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 376, 494 N.E.2d 70 (1986) (holding that a qualified "privilege is conditioned on its proper exercise, and cannot shelter statements published with malice or with knowledge of their falsity or reckless disregard as to their truth or falsity"); *O'Rorke v. Carpenter*, 432 N.E.2d 136, 136 (N.Y. 1981) ("Plaintiffs may defeat defendant's claim of qualified privilege by demonstrating that the alleged defamatory statements were known to be false at the time of publication.").

Here, the Complaint pleads sufficient facts to defeat any qualified privilege defense. As just one example, the Complaint alleges that "[d]uring the time that Roberts was being trafficked by Epstein she was forced to have sex with Alan Dershowitz. Roberts was forced to engage in sexual acts with Dershowitz in, among other locations, Epstein's mansion located at 9 East 71st Street, New York, New York 10021." Compl. ¶ 36. Accepting this factual allegation as true, it necessarily follows that Dershowitz's statements that Giuffre is a perjurer and extortionist were made with full knowledge of their falsity. The Complaint's allegations would meet even the standard for common-law malice, as it alleges that Dershowitz's statements that "Roberts and her attorneys fabricated the assertion in order to get money from other powerful, wealthy people," and that "she simply made up the entire story for money," "were published internationally for the malicious purpose of further damaging a sexual abuse and sexual trafficking victim; to destroy Roberts's reputation and credibility; to cause the world to disbelieve Roberts; and to destroy

11

Roberts's efforts to use her experience to help others suffering as sex trafficking victims." *Id*. ¶¶ 17, 88.

The *Maxwell* case is on all fours with the facts here.[3]  In *Maxwell*, Judge Sweet noted that "[a]t the center of this case is the veracity of a contextual world of facts more broad than the allegedly defamatory statements." *Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 150 (S.D.N.Y. 2016). There, as here, Giuffre filed a defamation claim against another participant in Epstein's sex-trafficking operations, Ghislaine Maxwell, for public statements that Giuffre's allegations of Maxwell's involvement were "untrue" and "obvious lies." *Id*.  In rejecting the defendant's motion to dismiss based on the self-defense privilege, the court held that Giuffre adequately pleaded that the defamatory statements

> were made with malice and knowledge of their falsity. . . .  Specifically, Plaintiff has pled that Maxwell assisted and participated in Giuffre's trafficking and ultimate abuse.  Taking these facts to be true as the Court must, it is a logically necessary conclusion that Maxwell's denial of this story would be made with knowledge of falsity; Maxwell could not have participated for the purpose of Plaintiff's trafficking and falsely deny that fact without knowledge of falsity.  Plaintiff has therefore pled sufficient facts to show a plausible defeat of any qualified privilege defense.

*Id.* at 155-56 (internal citation and footnote omitted); *see also id*. at 152 (holding that "statements that Giuffre's claims 'against [Defendant] are untrue,' have been 'shown to be untrue,' and are 'obvious lies' have a specific and readily understood factual meaning:  that Giuffre is not telling the truth about her history of sexual abuse and Defendant's role").

Dershowitz addresses the *Maxwell* decision in a footnote, arguing (i) that it is distinguishable because Dershowitz (unlike Maxwell) is a "public figure," and (ii) that Judge Sweet "misapplie[d] the standard for defeating the self-defense privilege [by] holding that the

---

[3] As Dershowitz admits, a court in this District rejected a previous defendant's attempt to invoke the self-defense privilege against Giuffre based on the same subject matter. Mot. at 21 n.9.

12

privilege can be defeated by a mere allegation of constitutional malice in the sense of knowing falsity." Mot. at 21 n.9. Each argument is baseless.

First, Dershowitz cites no authority for the proposition that because "as a public figure, Dershowitz faces a far higher burden under *New York Times v. Sullivan* and its progeny in vindicating his reputation," he therefore should "be afforded wider latitude to defend himself publicly under the self-defense privilege." *Id*. To the contrary, the very Supreme Court case Dershowitz cites for this proposition, *Gertz*, explains why it is not the law. Dershowitz quotes *Gertz* for the proposition that "[p]ublic . . . figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Id*. at 17 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974)). But in the very next sentence, the Supreme Court explains why a rule affording public figures wider latitude under the self-defense privilege would not make sense: "Private individuals are . . . more vulnerable to injury, and the state interest in protecting them is correspondingly greater." *Gertz*, 418 U.S. at 344. The state's greater interest in protecting private individuals weighs *against* providing public individuals with a more expansive right of self-defense.

Dershowitz's second argument, that the *Maxwell* case was incorrectly decided because "the self-defense privilege can only be properly defeated by the type of common law 'malice in the sense of actual spite or ill will,'" Mot. at 21 n.9, is foreclosed by numerous New York Court of Appeals cases that have held unequivocally that even reckless disregard as to a statement's truth would suffice to defeat a qualified privilege. *See Loughry*, 67 N.Y.2d at 376; *O'Rorke*, 432 N.E.2d at 136. Addressing Dershowitz's proposed standard directly, the New York Court of Appeals in *Liberman* held that "malice has now assumed a dual meaning, and we have recognized that the

constitutional as well as the common-law standard will suffice to defeat a conditional privilege." *Liberman v. Gelstein*, 605 N.E.2d 344, 350 (N.Y. 1992); *see also Foster v. Churchill*, 665 N.E.2d 153, 157 (N.Y. 1996) ("The defense of qualified privilege will be defeated by demonstrating a defendant spoke with malice.  Moreover, the conditional or qualified privilege is inapplicable where the motivation for making such statements was spite or ill will (common-law malice) or where statements were made with a high degree of awareness of their probable falsity (constitutional malice)" (internal quotation marks, citations, and alterations omitted)).  In light of these authorities, the Court should reject Dershowitz's attempt to invoke the self-defense privilege at motion to dismiss given the Complaint's well-pleaded allegations of Dershowitz's malice.

> B.  *Dershowitz's Statements Fall Outside The Self-Defense Privilege.*

The Court should also hold that Dershowitz has abused any qualified privilege because the scope and substance of his defamatory comments exceeded that of any statements by Giuffre to which he is responding.

The self-defense "privilege may be lost . . . if the reply: (1) includes substantial defamatory matter that is irrelevant or non-responsive to the initial statement; [or] (2) includes substantial defamatory material that is disproportionate to the initial statement."  *State v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 42 P.3d 233, 239 (Nev. 2002).  Dershowitz's attempt to avail of the self-defense privilege fails because his statements are both (i) irrelevant or non-responsive to any initial statement by Giuffre that he is "defending" himself from, and (ii) disproportionate.  Because Dershowitz's statements greatly exceed the scope of Giuffre's prior statements, his recent statements are both non-responsive to her statements and disproportionate.  *See* Restatement (Second) of Torts § 605 ("One who upon an occasion giving rise to a conditional privilege publishes defamatory matter concerning another, abuses the privilege if he does not reasonably believe the matter to be necessary to accomplish the purpose for which the privilege is given.").

14

In other words, Dershowitz's defamatory statements cannot fairly be said to have been made in "self-defense."  *See Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1560-61 (4th Cir. 1994) ("If, however, one's reply exceeds the scope of the original attack, and says more than reasonably appears to be necessary to protect his reputation, it is not reasonably responsive." (footnotes omitted));[4] *see also Maxwell*, 165 F. Supp. 3d at 152 ("[T]o suggest an individual is not telling the truth about her history of having been sexually assaulted as a minor constitutes more than a general denial, it alleges something deeply disturbing about the character of an individual willing to be publicly dishonest about such a reprehensible crime."); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 601 (E.D.N.Y. 2011) ("While general denials of accusations aren't actionable, denials coupled with accusations that the accuser will be proven a liar and has lied in front of members of Congress cross the line from general denial to specific accusations reasonably susceptible of a defamatory meaning").

Dershowitz's own authorities note that the self-defense privilege is lost when the statements in question exceed the scope of the statements to which they are responding.  In *State*

---

[4] Dershowitz cites to *Foretich* as an example where the court allowed the defamation defendant a broad right of reply.  Mot. at 18 (quoting *Foretich* for the proposition that "[o]ne in self-defense is not confined to parrying the thrusts of his assailant").  But *Foretich* is distinguishable on at least two important grounds.  First, the court in *Foretich* applied Virginia law, and Dershowitz has not similarly identified New York case law affording a defamation defendant such wide latitude in the name of self-defense.  Second, the *Foretich* opinion itself was an interlocutory appeal of the district court's ruling on a pre-trial motion in limine, providing further support for the contention that such questions should not be resolved at motion to dismiss.  *See Foretich*, 37 F.3d at 1550-51.  Similarly, the New York lower court authorities Dershowitz does identify for the proposition that "[l]egitimate self-defense . . . may include a proper counterattack" both ultimately held that the availability of the privilege was one for the jury to decide.  *Collier v. Postum Cereal Co.*, 134 N.Y.S. 847, 854 (1st Dep't 1912) ("We shall not discuss the evidence bearing on those questions further than to say that we think they were plainly questions for the jury."); *Mencher v. Chesley*, 85 N.Y.S.2d 431, 434 (Sup. Ct., Kings County 1948) ("[T]he question whether the defendant went beyond his privilege is one of fact for the jury to determine, and that it cannot be disposed of as a matter of law.").

*v. Eighth Judicial Dist. Court*, the Supreme Court of Nevada held that a defamation defendant's actions were protected by the self-defense privilege only where she "limited her response to the allegations" specifically raised by the plaintiff.  42 P.3d at 239-40; *see also Reynolds v. Pegler*, 223 F.2d 429, 433 (2d Cir. 1955) (noting that "where the alleged libel is justified by way of defense as a reply to a prior attack upon the defendant by the plaintiff, the New York cases . . . place upon the trial judge the duty to determine . . . whether the content of the alleged libel is pertinent or relevant to the matter contained in the purported initial attack").

Here, Dershowitz asserts that his recent statements were necessary to defend himself from statements Giuffre made in 2014 and 2015 during the course of her participation in the CVRA lawsuit brought to challenge Epstein's NPA.  But Dershowitz's statements go far beyond denying that he participated in Epstein's sex-trafficking operations or that he had sex with Giuffre when she was still a teen.  Instead, his recent statements go as far as to accuse Giuffre of being a "certified, complete, total liar" involved in an extortion attempt.  Compl. ¶ 17; *see also id.* ("Roberts and her attorneys fabricated the assertion in order to get money from other powerful, wealthy people.").  Rather than being made in self-defense, Dershowitz's defamatory statements were made for the improper purpose of bullying, harassing, and intimidating Giuffre, and made in a manner that was not responsive to any statement she made but instead a disproportionate offensive to paint her as a perjurer and extortionist.

 C. *The Self-Defense Privilege Is Not Available To A Defamation Defendant At Motion To Dismiss.*

Finally, as a procedural matter, the self-defense privilege is unavailable to Dershowitz at motion to dismiss because it is an affirmative defense subject to rebuttal.  Dershowitz concedes that the self-defense privilege is, at most, a *qualified* one.  Mot. at 16 ("First Amendment jurisprudence in the area of defamation law has long recognized a qualified privilege in the

defamed even to defame in response . . . .").  Under New York law, a "[q]ualified privilege is an affirmative defense that must be pleaded and proved by the defendant."  *Kroemer v. Tantillo*, 270 A.D.2d 810, 810, 706 N.Y.S.2d 538 (4th Dep't 2000); *see also Demas v. Levitsky*, 738 N.Y.S.2d 402, 410 (3d Dep't 2002) (holding that "the recognized procedure is to plead the privilege as an affirmative defense and thereafter move for summary judgment on that defense").  Because a "Plaintiff also has a right to rebut the privilege or show it was lost," assertions of "affirmative privilege defenses are . . .  not appropriate for resolution on a motion to dismiss."  *Giuffre*, 165 F. Supp. 3d at 155.

Dershowitz does not discuss (and therefore waives any arguments concerning) these on point authorities.  Moreover, the very authority Dershowitz identifies for the existence of a "privilege of reply" in New York makes clear that it is unavailable at motion to dismiss. Dershowitz cites *Reynolds v. Pegler*, 223 F.2d 429, 432 (2d Cir. 1955), in a footnote on page 16 of his motion.  But in *Reynolds*, the Second Circuit held that even if a qualified privilege were available, there is still a "remaining question [of] whether the defendant's reply was made in bad faith, in which event the defense fails good faith," and that "[i]t is the function of the jury to pass upon the question of whether or not defendant published the alleged defamatory matter in good faith, as this is a subject on which reasonable men may differ."  *Id*. at 433; *see also Green v. Cosby*, 138 F. Supp. 3d 114, 142 (D. Mass. 2015) (noting that the self-defense privilege is a "conditional privilege" that "clash[es] with the applicable motion to dismiss standard").

The only authority Dershowitz cites where a court found that a qualified privilege could be ruled on at motion to dismiss did so only in dicta, and is otherwise distinguishable.  In *Orenstein*, the court found that "Defendants can succeed on a qualified privilege defense at the motion to dismiss stage."  *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009).  In reaching this

conclusion, the court rejected the plaintiff's argument that the affirmative defense could not be raised in a pre-answer motion to dismiss "in light of *the incorporation of a lack of privilege into the elements* of a defamation claim." *Id.* (emphasis added).  Respectfully, the conclusion that New York law incorporates "lack of privilege" as an element of defamation was error.

As the *Orenstein* court itself noted, "New York courts have articulated the standard for libel and defamation using various terms, not all of which explicitly include malice or the requirement that the statement in question lack privilege." *Id.*  The opinion itself quoted opinions from the New York Court of Appeals and the Second Circuit, neither of which incorporates a "lack of privilege" in its recitation of the elements of defamation.  *Rosenberg*, 453 F.3d at 123 n.1; *Foster*, 87 N.Y.2d at 751.  Where, as here, state courts have reached different conclusions, federal courts sitting in diversity must side with the state's *highest* court.  *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law."); *Jim Henson Prods., Inc. v. John T. Brady & Assocs., Inc.*, 867 F. Supp. 175, 189 (S.D.N.Y. 1994) (Preska, J.) ("In such circumstances, I must attempt to discern how [the state's] highest court would decide the issues and act accordingly.").  The *Orenstein* court erred by relying on an intermediate appellate court's opinion, *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't. 1999), as authoritative when *Dillon*'s articulation of New York defamation law conflicted with opinions from the New York Court of Appeals, *see Foster*, 87 N.Y.2d at 751.  *Orenstein*, 677 F. Supp. 2d at 711.

In any event, the *Orenstein* opinion did not rely on its conclusion regarding qualified privileges, as it held that "because an element of fault and intent appears in each standard and because Orenstein utterly fails to plead facts that could support his conclusory allegations regarding defendants' purported-and implausible-malice toward him, defendants' motion to

dismiss is granted." *Id.* This broad holding renders the court's holding on qualified privilege dicta.

Whereas *Orenstein* stands alone, numerous courts in New York federal and state courts have held that a qualified privilege should *not* be decided at the motion to dismiss stage. *See, e.g.*, *Roberti v. Schroder Inv. Mgmt. N. Am., Inc.*, No. 4 Civ. 2404, 2006 WL 647718, at *9 (S.D.N.Y. Mar. 14, 2006) (holding in Rule 12 context that "Defendant's alternative argument that it is entitled to defamation claim on qualified privilege grounds must also be rejected at this stage of the litigation" because "such a claim of qualified privilege may be rebutted by a showing that the statement, or the implication thereof, was made with spite or ill will or with a high degree of awareness of [its] probable falsity." (internal citation omitted)); *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 298 (S.D.N.Y. 2005) (denying motion to dismiss on qualified privilege grounds where plaintiffs alleged that statements were made with knowledge of falsity or reckless disregard for truth and stating that "[n]othing more is required at this stage of litigation"); *Colantonio v. Mercy Med. Ctr.*, 115 A.D.3d 902, 903 (2d Dep't 2014) ("At this juncture, the allegations of malice that were set forth in the complaint and in the plaintiff's affidavit preclude dismissal of the complaint for failure to state a cause of action . . . .").

For the foregoing reasons, the Court should reject Dershowitz's attempt to dismiss the Complaint based on the self-defense privilege.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff Virginia Giuffre respectfully requests that the Court deny Defendant Alan Dershowitz's Motion to Dismiss.[5]


Dated:  July 9, 2019                                     Respectfully Submitted,


                                         By:  /s/ Joshua I. Schiller

                                         Joshua I. Schiller
                                         BOIES SCHILLER FLEXNER LLP
                                         55 Hudson Yards
                                         New York, NY 10001
                                         (212) 446-2300
                                         jischiller@bsfllp.com

                                         Sigrid McCawley (*admitted pro hac vice*)
                                         BOIES SCHILLER FLEXNER LLP
                                         401 E. Las Olas Blvd., Suite 1200
                                         Ft. Lauderdale, FL 33301
                                         (954) 356-0011
                                         smccawley@bsfllp.com

                                         *Counsel for Plaintiff, Virginia Giuffre*

---

[5] In the event the Court decides to grant the Motion, Giuffre respectfully requests leave to amend the Complaint pursuant to Rule 15(a)(2).