UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| VIRGINIA L. GIUFFRE, | : No. 1:19-cv-03377-LAP |
| Plaintiff, | : |
| v. | : |
| ALAN DERSHOWITZ, | : |
| Defendant. | : |

**REPLY MEMORANDUM
IN SUPPORT OF ALAN DERSHOWITZ'S MOTION TO DISQUALIFY**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

THE BOIES FIRM MUST BE DISQUALIFIED IN ORDER TO MAINTAIN THE
INTEGRITY OF THESE JUDICIAL PROCEEDINGS .................................................... 1

    Boies Firm Attorneys Are Fact Witnesses ................................................................... 1

    Dershowitz was a Client of the Boies Firm ................................................................. 4

    The Bar Proceedings are Irrelevant to the Court's Consideration of this Motion ..........8

    Dershowitz's Motion to Disqualify is Timely, Meritorious, and Ripe ………...............9

## TABLE OF AUTHORITIES

**Cases**

*Sheldon Solow v. W.R. Grace & Co*, 83 N.Y.2d 303 (1994) .......................................................... 1

*Lamborn v. Dittmer*, 873 F.2d 522, 531 (2nd Cir. 1989) .............................................................. 2

*Murray v. Metro. Life Ins. Co.*, 583 F3d 173 (2nd Cir. 2009) ....................................................... 2

*Corvese v. Corvese,* 2001 WL 830669 (S.D.N.Y. 2001) ............................................................... 4

*First Hawaiian Bank v. Russell & Volkening, Inc.* 861 F.Supp. 233 (S.D.N.Y. 1994) .................. 4

*Seyler v. T-Systems North America, Inc.* 771 F.Supp (S.D.N.Y. 2011) ........................................ 4

*Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 834 F. Supp. 2d 141 (E.D.N.Y. 2011). ............................................................................................................................................. 4

*Seeley v. Seeley*, 514 N.Y.S.2d 110 (2nd Dept 1987). .................................................................... 7

*Benevida Foods, LLC v. Advance Magazine Publishers Inc.*, No. 15 CV 2729, 2016 U.S. Dist. LEXIS 81186, at *44-45 (S.D.N.Y. June 15, 2016) ................................................................. 7

*Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012). .............................. 7

*A to Z Assoc. v. Cooper*, 161 Misc.2d 283 (1993). ........................................................................ 8

*Jeffreys v Griffin*, 301 AD2d 232, 236 (1st Dept 2002), affd, 1 NY3d 34 (2003) .......................... 9

*David v Biondo*, 92 NY2d 318 (1998). ........................................................................................... 9

**Statutes / Codes**

New York Rules of Professional Conduct, Rule 1.18 ............................................................ passim

New York Rules of Professional Conduct, Rule 1.10 ..................................................................... 7

**Other Authorities**

Dareh Gregorian "Alleged 'sex slave' Virginia Roberts says she didn't have sex with former President Bill Clinton, but in explosive court filing, details 11-person orgy with Prince Andrew and others" New York Daily News, January 21, 2015………………………………………………………………………………………………..3

Sharon Churcher & Polly Dunbar "Teenage girl recruited by paedophile Jeffrey Epstein reveals how she twice met Bill Clinton)" Daily Mail, March 5, 2011, ................................................. 3

Statement of President Bill Clinton, available at: https://twitter.com/angelurena/status/1148357927625023490 .................................................... 4

## INTRODUCTION

The Boies Firm's hyperbolic, defensive and highly personal attack submitted in Opposition to Professor Alan Dershowitz's ("Dershowitz") motion to disqualify is itself the best evidence as to why the Court should disqualify the firm. In a barrage of self-serving and biased affidavits submitted by current Boies Firm attorneys and their co-counsel (the content of which Dershowitz vigorously denies), Plaintiff attempts to discredit Dershowitz's argument for disqualification. Plaintiff fails. Instead, she highlights that disqualification is necessary due to the pervasive involvement of the Boies Firm attorneys as fact witnesses to events that are fundamental to Dershowitz's defense in this case; and because of the inherent conflicts of interest that exist due to the receipt of confidential information critical to Dershowitz's defense in this case while Dershowitz was a client of the Boies Firm. Dershowitz's motion is timely, meritorious, and ripe, and if the integrity of these judicial proceedings are to be maintained and gross prejudice averted, the Boies Firm must be disqualified.

## THE BOIES FIRM MUST BE DISQUALIFIED IN ORDER TO MAINTAIN THE INTEGRITY OF THESE JUDICIAL PROCEEDINGS.

*Boies Firm Attorneys Are Fact Witnesses*

The very allegations in the Plaintiff's Complaint mandate disqualification of the Boies Firm. For example, paragraphs 69-81 of the Complaint contain factual allegations in which the statements, actions and conduct of "Roberts' [Giuffre] Lawyer" -David Boies, Sigrid McCawley, and inferably other witnesses in the Boies Firm- are placed directly in issue rendering these attorneys necessary fact witnesses. Dershowitz will attack these allegations as a critical part of his defense and prove that Giuffre's counsel made admissions fatal to her claims against him. Dershowitz plans to call Boies, McCawley and other Boies Firm attorneys, to impeach their own client's testimony. *Sheldon Solow v. W.R. Grace & Co.*, 83 N.Y.2d 303 (1994). It is expected, despite self-serving claims to the contrary, that under oath and giving truthful testimony, these

1

witnesses will offer testimony adverse and prejudicial to Giuffre. *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2nd Cir. 1989). In such cases, "a law firm can be disqualified by imputation… when… the witness will provide testimony prejudicial to the client, and the integrity of the judicial system will suffer as a result." *Murray v Metro. Life Ins. Co.*, 583 F3d 173 (2nd Cir. 2009).

As Professor Bruce A. Green states in his Declaration:

> [T]he meaning and import of Boies's extrajudicial statements is a central issue in the case by virtue of the Plaintiff's pleadings. Perhaps Boies can explain away his extrajudicial statements in a manner that is not embarrassing to him and detrimental to Giuffre. For example, it may suffice for him to explain why, in context, his statements casting doubt on Giuffre's credibility should be understood as having been merely "hypothetical," as the Complaint alleges they were. [Complaint] at ¶ 69. But that may not suffice as a strategy, since Prof. Dershowitz will surely challenge this explanation, and therefore Giuffre's trial counsel must be free to discredit Boies's prejudicial statements even at the expense of Boies's own professional reputation. Boies's partners and associates will not have the necessary independence. Finally, the Complaint puts in issue not only the past conduct of some of the Boies Schiller Firm's individual lawyers but, at least implicitly, the ongoing conduct of the Firm, including its filing and prosecution of this lawsuit. The Complaint disputes that Giuffre and her lawyers -including the Boies Schiller Firm- engaged in a scheme to extort money by falsely accusing Prof. Dershowitz and other men of having sexual relations with Giuffre, an alleged minor victim of sex trafficking. If the jury is aware that the Boies Schiller Firm's lawyers are serving as trial counsel, it cannot avoid considering whether the lawsuit itself is in furtherance of, and proof of, the alleged scheme. As long as the Boies Schiller Firm remains in this case, its conduct of the litigation will be an implicit, if not explicit, subject of the lawsuit, making the Firm's trial lawyers, at the very least, unsworn witnesses. The interest in preserving the integrity of the proceedings weighs heavily against permitting this further complexity.

Moreover, recent events have further called into question the credibility of the Boies Firm attorneys by demonstrating that they have promulgated the accusations of the Plaintiff and other accusers of Dershowitz, such as Sarah Ransome and Maria Farmer. For example, the Boies Firm has attached the affidavit of Sarah Ransome as an exhibit to both Plaintiff's Complaint and their opposition to this motion. However, emails of Sarah Ransome, sent to a New York Post reporter, raise serious questions as to her credibility and the veracity of her accusations against Dershowitz. *See*, Supplemental Declaration of Alan Dershowitz, annexed hereto as **EXHIBIT A**.

Despite knowledge of the content of these emails, the Boies Firm has relied on Ransome's affidavit in support of the Plaintiff's Complaint in *this* case and in support of their opposition to

2

Dershowitz's motion. Dershowitz intends to question Boies Firm attorneys about their submission of Ransome's affidavit, and then vouching of her credibility, despite knowledge of these emails.[1] *See* **EXHIBIT A**

Likewise, in the wake of Jeffrey Epstein's arrest, further questions as to the Plaintiff's credibility have arisen. These questions will necessitate the questioning of Boies who has stated on a recording that his client was "wrong… simply wrong". Other Boise Firm attorneys, will also need to be questioned about their knowledge of Plaintiff's false accusations in this matter.[2] For example, the Boies Firm attorneys have seemingly allowed the Plaintiff to issue statements, some under oath, that she was on Little St. James Island with former President Bill Clinton: "I have seen reports saying or implying that I had sex with former President Bill Clinton on Little St James Island…. **Clinton was present on the island at a time when I was also present on the island**, but I have never had sexual relations with Clinton…"[3] Giuffre also claimed to have met President Clinton **twice** in a 2011 Daily Mail article, and described a meeting in great detail.[4] *See*, March 5,

---

[1] For the purpose of supporting his motion to disqualify, Dershowitz will issue a *subpoena duces tecum* pursuant to F.R.C.P Rule 45 in order to obtain these emails from the New York Post and requests the Court consider them in support of his motion to disqualify upon receipt.

[2] Plaintiff claims that this recording is not admissible pursuant to F.R.C.P. Rule 408. However, the recording was not made during settlement negotiation, but rather while Dershowitz was providing exculpatory material to the Boies Firm proving that the Plaintiff's accusations against him were false. Plaintiff has also waived any possible negotiation privilege claim by disclosing alleged details of these conversations herself.

[3] https://www.nydailynews.com/new-york/alleged-sex-slave-didn-sex-bill-clinton-article-1.2087614

[4] Giuffre describes meeting Clinton: *"Ghislaine Maxwell [Epstein's associate] went to pick up Bill in a huge black helicopter that Jeffrey had bought her. She'd always wanted to fly and Jeffrey paid for her to take lessons, and I remember she was very excited because she got her license around the first year we met. I used to get frightened flying with her but Bill had the Secret Service with him and I remember him talking about what a good job she did… We all dined together that night. Jeffrey was at the head of the table. Bill was at his left. I sat across from him. Emmy Tayler, Ghislaine's blonde British assistant sat at my right. Ghislaine was at Bill's left and at the left of Ghislaine there were two olive-skinned brunettes who'd flown in with us from New York…. Maybe Jeffrey thought they would entertain Bill, but I saw no evidence that he was interested in them. He and Jeffrey and Ghislaine seemed to have a very good relationship. Bill was very funny."* See **EXHIBIT B**

3

2011, Daily Mail, *Teenage girl recruited by paedophile Jeffrey Epstein reveals how she twice met Bill Clinton*, annexed hereto as **EXHIBIT B**.

A statement released by President Clinton on July 8, 2019 directly refutes these claims and reads (available at: https://twitter.com/angelurena/status/1148357927625023490):

In 2002 and 2003, President Clinton took a total of four trips on Jeffrey Epstein's airplane: one to Europe, one to Asia, and two to Africa, which included stops in connection with the work of the Clinton Foundation. Staff, supporters of the foundation, and his Secret Service detail traveled on every leg of every trip. He had one meeting with Epstein in his Harlem office in 2002, and around the same time made one brief visit to Epstein's New York apartment with a staff member and his security detail. He's not spoken to Epstein in well over a decade, and **he has never been to Little St. James Island**, Epstein's ranch in New Mexico, or his residence in Florida.

***Dershowitz was a Client of the Boies Firm.***

Plaintiff argues that Dershowitz was never a Boies Firm client. However, based on the interaction between Dershowitz and Boies Firm partner Carlos Sires ("Sires") Dershowitz reasonably believed that he was a client of the Boies Firm. The Plaintiff concedes that in determining whether a person has a reasonable belief that a lawyer is representing him or her the "courts must look at the words and conduct of the parties" *Corvese v. Corvese*, 2001 WL 830669 (S.D.N.Y. 2001) and that "courts have not employed a single well-defined test for determining whether an attorney-client relationship exists, and, moreover, have consistently rejected the argument that indicia of a formal relationship are necessary" *First Hawaiian Bank v. Russell & Volkening, Inc.*, 861 F. Supp. 233 (S.D.N.Y. 1994). And, contrary to Plaintiff's argument, under New York law, whether an attorney-client relationship was created does not depend on the existence of a formal retainer agreement or upon payment of a fee; rather, court must look to those words and actions of parties to ascertain existence of such a relationship. *Seyler v. T-Systems North America, Inc.*, 771 F. Supp. 2d 284 (S.D.N.Y. 2011), *Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 834 F. Supp. 2d 141 (E.D.N.Y. 2011) (formation of attorney-client relationship hinges upon a **client's** reasonable belief that he is consulting a lawyer in that capacity and his

4

manifested intention to seek professional legal advice; no special formality is required to demonstrate establishment of relationship.)

On January 22, 2015, Sires sent Dershowitz an unsolicited e-mail offering his legal assistance at the Boies Firm and Dershowitz accepted the offer. At no time did Sires inform Dershowitz that he was waiting on a conflicts check prior to providing representation to Dershowitz; he later sent an email informing Dershowitz that "Stuart and I think we can provide help." Annexed hereto as **EXHIBIT C** is a copy of the email sent from Sires to Dershowitz informing him that the Boies Firm can provide representation.

At this point Dershowitz reasonably believed that an attorney-client relationship had been formed with the Boies Firm. Based on this belief, Dershowitz had relevant documents emailed to Sires, including a detailed legal memorandum conspicuously marked **"LAWYER-CLIENT PRIVILEGE – CONFIDENTIAL"** and **"confidential l/c privilege"** describing how he intended to defend against and disprove Giuffre's allegations against him and his legal strategy for defense of a defamation lawsuit. This highly confidential memorandum was intended for members of Dershowitz's legal team only and would be highly prejudicial to Dershowitz if his adversaries were to possess it.

Plaintiff claims that the Confidential Memorandum is not covered by attorney-client privilege. This is patently absurd. As stated *supra*, the memorandum was marked "confidential" and "lawyer-client privilege". The Plaintiff, while ignoring this, points out that the email was addressed "Dear friends". This is of no consequence. The use of the term "friends" does not negate their status as attorneys for Dershowitz, nor is it unusual that he would consider fellow colleagues as "friends".

Plaintiff's inexplicable statement that the memorandum contained no confidential information is likewise erroneous. Plaintiff misstates that the strategy contained within was already

5

made public by Dershowitz. That is categorically untrue. The information was privileged going to the heart of Dershowitz's defense and was not discussed by Dershowitz publically or to the press. As Plaintiff states in her opposition, Dershowitz is a "highly sophisticated attorney". He would certainly not share confidential defense strategy with someone he did not believe to be acting as his attorney.[5]

Critical to the analysis of whether Dershowitz was a client of the Boies Firm is the manner in which Sires responded to the Confidential Memorandum. Rather than not responding or requesting that Dershowitz refrain from sending confidential material, Sires read and analyzed the Confidential Memorandum and responded to it by giving **legal advice**. He went so far as to attach a Restatement section and case law to his email to Dershowitz to further the discussion of the points in the Confidential Memorandum. Based on Sires' conduct it was completely reasonable for Dershowitz to have believed that he was a client of the Boies Firm. Annexed hereto as **EXHIBIT D** is a copy of the email from Sires to Dershowitz providing legal advice.

Only after Sires received the Confidential Memorandum and provided legal advice, and eight days after he first contacted Dershowitz, did he inform Dershowitz that the Boies Firm could not represent him due to an undisclosed conflict. However, the Boies Firm never presented Dershowitz with a conflict waiver, nor did the Boies Firm inform Dershowitz that the conflict was due to its representation of Giuffre.

Alternatively, it is <u>not</u> disputed by Plaintiff that Dershowitz was at the very least a prospective client pursuant to Rule 1.18. As noted by Professor Green in his declaration, if this was the case, "<u>the result is the same</u>". "It is well established that the fiduciary relationship existing between lawyer and client extends to a preliminary consultation by a prospective client with a view

---

[5]Dershowitz has not annexed the Confidential Memorandum to his moving papers so as to not waive privilege but will make this Confidential Memorandum available for *in camera* review by the Court.

toward retention of the lawyer, even where actual employment does not arise… it is well settled that doubts as to the existence of a conflict of interest must be resolved in favor of disqualification." *Seeley v. Seeley*, 514 N.Y.S.2d 110 (2nd Dept 1987).

Again, inexplicably, the Plaintiff claims in her opposition that the Boies Firm never received information that could be "significantly harmful" to Dershowitz (Rule 1.18[c]) as the information was provided by Dershowitz on the Today Show and other public sources. This is entirely false. The Confidential Memorandum contained strategy and legal analysis that Dershowitz was proposing to his attorneys to be utilized in his defense. These points were certainly not raised on television and to the public.

The Boies Firm claims that it implemented sufficient screening procedures to obviate the need for disqualification. However, as Professor Green states in his declaration, the N.Y. Rules "unequivocally forbid screening". The disqualification rule applies not only to the lawyers who were repositories of the former client's confidential information but to all the lawyers of their firm. *See* N.Y. Rules, Rule 1.10(a). Furthermore, assuming, *arguendo*, that Dershowitz is considered a prospective client, under a fact specific analysis, the screening process was not sufficient in *this* case pursuant to Rule 1.18(d). The Boies Firm will be hard pressed to deny that the factual circumstances of this case create a unique situation in which counsel at the Boies Firm have become material fact witnesses necessary to Dershowitz's defense. Due to the tenuous nature of this case, Dershowitz should not be expected to rely on the representation that screening was implemented and that his confidential legal strategy -which is relevant to this action- was safeguarded. *See, e.g., Benevida Foods, LLC v. Advance Magazine Publishers Inc.*, No. 15 CV 2729, 2016 U.S. Dist. LEXIS 81186, at *44-45 (S.D.N.Y. June 15, 2016), *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012). Accordingly, as the decision to

disqualify is within the Court's discretion, any "doubts as to the existence of a conflict of interest must be resolved in favor of disqualification". *Seeley, supra.*

***The Bar Proceedings are Irrelevant to the Court's Consideration of this Motion.***

Plaintiff further argues that the response letter of the Florida Bar should be given preclusive collateral estoppel effect to Dershowitz's motion to disqualify.[6] However, this argument is flawed. First, the Florida Bar letter is not a legal opinion nor decision. The grievance was not a contested proceeding. Moreover, the disciplinary committee exercises broad discretion and is not bound by legal constraints, and critically it does not render legal findings. Indeed, the response letter states: **"The Bar only has the authority to address questions of ethics and cannot address any legal issues"**. Second, there has been a critical change in circumstance, in that for the first time, the Boies Firm represents the Plaintiff in an action directly against the Dershowitz. The situation is now all the more tenuous and the risk of prejudice -to both parties- is substantial. Third, where the bar complaints sought disciplinary action against Boies and McCawley as individual attorneys before the grievance committee, the instant motion seek disqualification of those attorneys and the Boies Firm, as a whole, based on legal principals in a direct action between the Plaintiff and Defendant in Federal Court. The hallmarks of collateral estoppel -identity of issues, parties, and the opportunity for Dershowitz to fully and fairly litigate his claims in a court of law- are not present, and therefore, collateral estoppel cannot be applied. *See, infra.*

Furthermore, the cases relied upon by the Plaintiff in support of their argument for collateral estoppel are distinguishable from the facts in the present matter. For example, in *A to Z Assoc. v. Cooper*, 161 Misc.2d 283 (1993) the court found that collateral estoppel would preclude re-litigation of issues decided in attorney disciplinary proceeding, but only after there was 31 days

---

[6]Plaintiff submits the June 17, 2019 Florida Bar response letter, but no documents from complaints to the New York and DC Bar that it requests the Court to give preclusive effect to, therefore the court should not consider the same.

8

of testimony, the right to present documentary and testimonial evidence, and full factual review by the Appellate Division. Here, there was no extensive litigation of the issues nor was there any judicial review of the issues. In fact, the court in *A to Z Assoc. v. Cooper* recognized that findings of professional disciplinary proceedings do not automatically lend themselves to collateral estoppel of subsequent actions brought in court. *See also, Jeffreys v Griffin*, 301 AD2d 232, 236 (1st Dept 2002), affd, 1 NY3d 34 (2003), *David v Biondo*, 92 NY2d 318 (1998).

Critically, the Florida response letter cannot be relied upon by the Court because it is simply wrong in its assessment of the timeline of events relevant to this matter. The letter states that Ms. McCawley reported that her individual representation of the client [Virginia Giuffre] began *after* Dershowitz was notified that there was a conflict of interest and that the Boies Firm would cease to represent him. However, we know from Plaintiff's opposition papers that representation of Ms. Giuffre by the Boies Firm began as early as July 2014 ("**Mr. Boies met Ms. Giuffre in person in July 2014 and he agreed to represent her…**" Plaintiff' Memorandum of Law, page 6). The representation by the Boies Firm was well before the first correspondence between Sires and Dershowitz on January 22, 2015. The taint, as alleged in the instant motion to disqualify, starts when the <u>Boies Firm</u> commenced representation of the Plaintiff, not when an individual attorney alleges that they "picked up the file". As time has progressed, the involvement of the Boies Firm attorneys as fact witnesses has only increased, as exemplified by the recent press conferences, statements, and overall conduct of the Boies Firm attorneys in regard to allegations against Dershowitz.

***Dershowitz's Motion to Disqualify is Timely, Meritorious, and Ripe.***

The suggestion that Dershowitz seeks disqualification as a tactical maneuver is ludicrous. The claim by Plaintiff that Dershowitz waived his right to bring his motion to disqualify and that his motion is untimely, is likewise erroneous. As stated *supra*, this is the first action where Giuffre,

9

as Plaintiff, and while represented by the Boies Firm as lead counsel, is opposing Dershowitz as Defendant. This motion to disqualify is not untimely. In fact it is fundamentally ripe. Dershowitz clearly has standing - arguably now more than ever- to move for disqualification. And although the Boies Firm claims they are *pro bono* counsel in this case, they have undoubtedly earned substantial fees for contingency representation of the Plaintiff in the *Giuffre v. Maxwell* matter, and possibly from others. In any event, Dershowitz has not remained silent about the issues necessitating disqualification, now compounded by recent events and this very action. He raised the alarm when the Plaintiff first made allegations against him and he discovered that the Boies Firm represented her. Dershowitz's motion was raised at the inception of litigation in this matter, and filed prior to joining issue by way of an answer or motion in response to Plaintiff's Complaint. The cases cited by the Plaintiff are not applicable to the facts at hand. Motions to disqualify have been deemed untimely when made after significant passage of time, on the eve of trial, after significant discovery, and when the parties have agreed to expedited litigation. No such factors exist here. In fact, Plaintiff's attorney Joshua Schiller in his May 9, 2019 response to Dershowitz's letter notifying the Boies Firm of the need for disqualification explicitly responded by stating "*If you do not make your motion now, we will take the position that you have waived any claim of disqualification*". *See*, Exhibit C to the Dershowitz Declaration. As requested by Plaintiff's Counsel, Dershowitz has made his motion "now", and as such, the motion is timely and the Plaintiff cannot now claim waiver.

**WHEREFORE**, for the foregoing reasons and those set forth in his moving papers, Dershowitz respectfully requests that the Court grant his Motion to Disqualify in its entirety and enter an Order disqualifying the law firm of Boies Schiller Flexner LLP as counsel for the Plaintiff Virginia Giuffre.

Dated: New York, New York
July 10, 2019

                                            Respectfully submitted,

                                            **AIDALA, BERTUNA & KAMINS, P.C.**
                                            *Attorneys for Alan Dershowitz*
                                            546 Fifth Avenue
                                            New York, NY 10036
                                            (212) 486-0011

By: _____
        Imran H. Ansari, Esq.

        _____
        Arthur L. Aidala, Esq.