UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

    Plaintiff,

v.

ALAN DERSHOWITZ,

    Defendant.

Civil Action No. 19-cv-03377-LAP

**REPLY MEMORANDUM IN SUPPORT OF
ALAN DERSHOWITZ'S MOTION TO DISMISS COMPLAINT**

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................1

I. GIUFFRE'S CLAIMS ARE TIME-BARRED.......................................................................1

    a. The Defamatory Statements on Which the Complaint Is Premised Are Substantively Identical to the Statements Prof. Dershowitz Made In Defense of Giuffre's Accusations in 2015 .................................................................1

    b. Giuffre Does Not and Cannot Plausibly Allege That Dershowitz's Recent Denials Reached a New Audience or Further Harmed Her Reputation. ....................3

II. THE COMPLAINT SHOULD BE DISMISSED NOW ON THE BASIS OF THE SELF-DEFENSE PRIVILEGE. ............................................................................................6

    a. Courts Dismiss Defamation Complaints on the Basis of Qualified Privileges ..................................................................................................................6

    b. The Complaint and Other Materials Properly Before This Court Establish That Prof. Dershowitz's Statements Are Protected by the Self-Defense Privilege and the Allegations of the Complaint Fail to Plausibly Allege That Dershowitz Abused That Privilege. ...........................................................................7

III. CONCLUSION .............................................................................................................10

## Table of Authorities

**Cases**

*Cerasani v. Sony Corp.*, 991 F. Supp. 343 (S.D.N.Y. 1998) ....................................................... 5, 6

*Church of Scientology Intern. v. Time Warner, Inc.*, 932 F. Supp. 589 (S.D.N.Y. 1996) .............. 5

*Clark v. Viacom Intern. Inc.*, 617 Fed. Appx. 495 (6th Cir. 2015) .................................................. 4

*Collier v. Postum Cereal Co.*, 134 N.Y.S. 847 (App. Div. 1912) ................................................... 8

*Firth v. State of New York*, 98 N.Y.2d 365 (2002) ........................................................................ 3

*Front v. Khalil*, 24 N.Y.3d 713 (2015) ........................................................................................... 6

*Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541 (4th Cir. 1994) ............................................... 9

*Gelbard v. Bodary*, 706 N.Y.S.2d 801 (App. Div. 2000) ............................................................... 4

*Giuffre v. Maxwell*, Case No. 16-3945, Dkt. 282-1 (2d Cir. July 2, 2019) .................................... 1

*Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298 (2d Cir. 1986) ................................................. 6

*Hanlin v. Sternlicht*, 775 N.Y.S.2d 146 (App. Div. 2004) .............................................................. 6

*Hoesten v. Best*, 821 N.Y.S.2d 40 (App. Div. 2006) ...................................................................... 4

*Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y. 1998) .......................................... 7, 8

*Lehman v. Discovery Communications, Inc.*, 332 F. Supp. 2d 534 (E.D.N.Y. 2004) .................... 4

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992) ...................................................................... 8, 9, 10

*McNamee v. Clemens*, 762 F. Supp. 2d 584 (E.D.N.Y. 2011) ....................................................... 9

*Mencher v. Chesley*, 85 N.Y.S. 2d 431 (Sup. Ct. 1948) ................................................................. 8

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ................................................................. 1

*Pearce v. Manhattan Ensemble Theater, Inc.*, 2009 WL 3152127 (S.D.N.Y. Sept 30, 2009) ....... 3

*Roth v. United Federation of Teachers*, 787 N.Y.S.2d 603 (Sup. Ct. 2004) .............................. 6, 9

*Staehr v. Hartford Fin. Servs. Group, Inc.,* 547 F.3d 406 (2d Cir. 2008) ...................................... 6

*State v. Eighth Judicial Dist. Court ex rel. County of Clark*, 42 P.3d 233 (Nev. 2002)……..... 8, 9

*Stega v. New York Downtown Hospital*, 31 N.Y.3d 661 (2018) ............................................. 9, 10

*Stukuls v. State of New York*, 42 N.Y.2d 272 (1977) .................................................................... 10

*Yukos Capital S.A.R.L. v. Feldman*, 2016 WL 4940200 (S.D.N.Y. 2016) ..................................... 6

**Secondary Sources**

Robert D. Sack, Sack on Defamation at § 9.2.1 (3d ed. 2015) ...................................................... 10

### i. Introduction

Earlier this month, in the related defamation case of *Giuffre v. Maxwell*, the Second Circuit expressly warned that courts must be careful to ensure that the litigation process is "'not used to gratify spite or promote scandal' or 'serve as [a] reservoir[] of libelous statements for press consumption.'" *Maxwell*, Case No. 16-3945, Dkt. 282-1, at 19 (2d Cir. July 2, 2019) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The Second Circuit further instructed that "[d]istrict courts should exercise the full range of their substantial powers to ensure their files do not become vehicles for defamation." *Id.* at 25. That decision has particular relevance here, where Ms. Giuffre has previously invoked the jurisdiction of the courts to level malicious, false accusations against Prof. Dershowitz under the assumed protection of the litigation privilege, and is now suing him for defamation for daring to defend himself publicly. Consistent with the Second Circuit's guidance, this Court should scrutinize the allegations of Giuffre's Complaint against Prof. Dershowitz, and avail itself of any and all procedural mechanisms available to ensure its docket is not misused. One such procedural mechanism available to this Court is to allow Prof. Dershowitz's motion to dismiss Giuffre's Complaint on the grounds that she waited years too long to bring her claims, and because Dershowitz's statements defending himself against her allegations of criminal child sexual abuse fall within the self-defense privilege and are therefore not actionable.

### ii. Argument

I. **GIUFFRE'S CLAIMS ARE TIME-BARRED.**

    a. **The Defamatory Statements on Which the Complaint Is Premised Are Substantively Identical to the Statements Prof. Dershowitz Made in Defense of Giuffre's Accusations in 2015.**

1

Giuffre first asserts that Dershowitz's recent statements are not substantively identical to his original denials in 2015. But they *are* identical, and particularly so in all of their allegedly defamatory aspects, which is the *only* relevant consideration. As the Complaint alleges, Dershowitz's allegedly defamatory statements are that "he had not had sex with [Giuffre], that [Giuffre] was intentionally lying about having sex with Dershowitz, that [Giuffre] committed the crime of perjury, that [Giuffre] had committed the crime of extortion, and that [Giuffre] had intentionally fabricated her assertions about Dershowitz to extort money from others." Compl. ¶ 51. Tellingly, in her Opposition, Giuffre does not quote from Dershowitz's 2015 statements or attempt to explain how they are meaningfully different from the more recent statements set forth in her Complaint. Prof. Dershowitz, on the other hand, quotes extensively from both the 2015 and 2018 statements in his opening brief, and invites the Court to refer to that brief at pp. 4-6, which confirms the identical nature of the two sets of statements. A side by side comparison of a representative sampling of those statements demonstrates that they are virtually identical:

| 2015 | 2018-2019 |
|---|---|
| Giuffre's story is "completely, totally fabricated, made-up," and I am the "innocent victim of an extortion conspiracy."[1] | Giuffre's "story was 100% flatly categorically made up" and "Giuffre and her attorneys fabricated the assertion in order to get money from other powerful, wealthy people."[2] |
| "I don't even know who [Giuffre] is . . . I've never seen her, I've never met her[.]"[3] | "I never met [Giuffre]; I never had sex with her[.]"[4] |

---

[1] "Dershowitz: 'I'm an Innocent Victim of an Extortion Conspiracy,'" *Wall Street Journal Law Blog*, Jan. 2, 2015. *See* Proctus Decl. Ex. E.

[2] "Even from jail, Jeffrey Epstein manipulated the system," *Miami Herald*, November 28, 2018. *See* Compl. Ex. 1, p. 8.

[3] *Today Show*, Jan. 5, 2015, *available at* https://www.today.com/video/today/56723136. *See* Proctus Decl. Ex. G at 8-9.

[4] "Alan Dershowitz: 'I never had sex with Virginia Roberts,'" *Miami Herald*, Dec. 2, 2018. *See* Compl. Ex. 3.

2

| **2015** | **2018-2019** |
|---|---|
| "She has filed a perjured affidavit[.]"[5] | "My perjuring accusers are Virginia Giuffre and Sarah Ransomme."[6] |

The Complaint itself alleges no substantive distinction between the two sets of statements. Instead, it expressly acknowledges that the statements on which Giuffre bases her claims are reprisals of earlier denials. Compl. ¶ 21 ("*More recently, Dershowitz . . . has again* taken to claiming publically that he demands a trial on the question of whether [Giuffre] committed perjury and made up her statements about him for money."). Any slight differences in verbiage between the 2015 and 2018 statements are wholly insubstantial, immaterial to the republication analysis, and do not provide grounds to deny Prof. Dershowitz's motion to dismiss.

### b. Giuffre Does Not and Cannot Plausibly Allege That Dershowitz's Recent Denials Reached a New Audience or Further Harmed Her Reputation.

Giuffre next responds to Prof. Dershowitz's statute of limitations defense by citing the exception to the single publication rule, that the repetition of a defamatory statement on a different occasion "which is not merely a delayed circulation of the original edition" gives rise to a new cause of action retriggering the one year limitations period. *Firth v. State*, 98 N.Y.2d 365, 371 (2002). But as Giuffre herself acknowledges, there are two important limitations to this exception: republication only "occurs when a subsequent publication: (1) is intended for and reaches a new audience, or (2) materially changes or modifies the original." Opp. at 8 (quoting *Pearce v. Manhattan Ensemble Theater, Inc.*, 2009 WL 3152127, at *8 n.7 (S.D.N.Y. Sept. 30, 2009)). Those limitations embody the policy underlying the republication exception, which is to protect a plaintiff against "new reputational harm" which may result if a defamatory statement is

---

[5] *Today Show*, Jan. 22, 2015, *available at* https://www.today.com/video/today/56841769. *See* Proctus Decl. Ex. G at 53-55.

[6] Twitter, March 2, 2019. *See* Compl. Ex. 6.

3

rebroadcast to a new or larger audience. *Clark v. Viacom Intern. Inc.*, 617 Fed. Appx. 495, 505 (6th Cir. 2015); *see also Lehman v. Discovery Communications, Inc.*, 332 F. Supp. 2d 534, 539 (E.D.N.Y. 2004) ("A rebroadcast has renewed impact with each viewing and creates a new opportunity for injury, thereby justifying a new cause of action."). Thus, when the repetition of an allegedly defamatory statement has not reached a new audience and as a result poses no risk of new reputational harm, no new cause of action accrues. *Hoesten v. Best*, 821 N.Y.S.2d 40, 45 (App. Div. 2006); *Gelbard v. Bodary*, 706 N.Y.S.2d 801 (App. Div. 2000). As the Sixth Circuit recognized in *Clark v. Viacom*, and as is equally applicable here, where the allegedly defamatory statements have been widely disseminated over the internet via prominent news organizations with worldwide reach, they have "already been directed at most of the universe of probable interlocutors" and there is as a matter of law no new audience to reach, and no new cause of action accrues upon their repetition. 617 Fed. Appx. at 506. Giuffre fails even to address *Clark* in her Opposition, much less argue that it does not control here. Her failure to do so is telling.

Giuffre cannot escape the holding of *Clark* on the grounds that the list of media outlets to which Dershowitz gave statements in 2015 does not perfectly correspond to the list of outlets which Giuffre identifies in her Complaint. Dershowitz's 2015 media campaign was pervasive. Following the original publication of Giuffre's accusations against him in the CVRA action – and the massive publicity it generated – Prof. Dershowitz made over thirty television appearances and was quoted in an equal number of print and online articles published the world over by news organizations including CNN, NBC News, ABC World News, the BBC, the *New York Times*, the *Wall Street Journal*, and Reuters, vigorously denying the allegations and accusing Giuffre of fabricating them. *See* Proctus Decl. Ex. G. The Court can and should take judicial notice of Dershowitz's 2015 media campaign in deciding this motion to dismiss, *see*

4

*Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 n.3 (S.D.N.Y.1998) (taking judicial notice of scope of prior media coverage in dismissing complaint on grounds that plaintiff was 'libel-proof'), especially where the Complaint itself acknowledges the scope of this prior coverage. Compl. ¶ 11 (describing how Dershowitz defended himself "in nationally televised news interviews" in early 2015). It is certainly no answer to Dershowitz's argument that the Complaint relies on statements made to the *Miami Herald*, *Raw Story* and *The Harvard Crimson*, all of which unquestionably have more limited reach than the *New York Times* and CNN.

Giuffre could have sued Prof. Dershowitz over his denials (notwithstanding their truth) within a year of their original publication in 2015. Her own lawyers sued Dershowitz for defamation arising from the same statements. And Giuffre certainly knew precisely what to do when she sued Jeffrey Epstein associate Ghislaine Maxwell for defamation for denying her accusations, claiming that Maxwell's denials "destroyed her credibility and reputation," and damaged her "worldwide." *See* Complaint, *Giuffre v. Maxwell*, 15-cv-07433, Dkt. No. 1, at ¶¶ 1 & 11 (S.D.N.Y. Sept. 21, 2015), attached hereto as Exhibit A.

If Maxwell's simple denials to a few media outlets "destroyed" Giuffre's reputation "worldwide" in 2015, then Dershowitz's more forceful rebuke, delivered on primetime airwaves and printed by global news organizations, surely did the same in 2015. Indeed, given Giuffre's judicial admissions about her reputation for truthfulness in her complaint against Maxwell, it is highly speculative that she had any reputation in this regard left to destroy in 2018. "[W]hen a particular plaintiff's reputation for a particular trait is sufficiently bad, further statements regarding that trait, *even if false and made with malice*, are not actionable because, as a matter of law, the plaintiff cannot be damaged in his reputation as to that trait." *Church of Scientology Intern. v. Time Warner, Inc.*, 932 F. Supp. 589, 593 (S.D.N.Y. 1996) (emphasis added). *See*

*generally Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) (discussing 'libel-proof plaintiff' doctrine). This is so even if the plaintiff's reputation has been ruined as a result of previous statements made by the same alleged defamer. *See Cerasani*, 991 F. Supp. at 354 (dismissing complaint alleging defamatory portrayal in movie where defendant had made same claims in earlier book which plaintiff "ignored"). In such cases, "the claim should be dismissed so that the costs of defending against the claim of libel, which can themselves impair vigorous freedom of expression, will be avoided." *Guccione*, 800 F.2d at 303.

## II. THE COMPLAINT SHOULD BE DISMISSED NOW ON THE BASIS OF THE SELF-DEFENSE PRIVILEGE.

### a. Courts Dismiss Defamation Complaints on the Basis of Qualified Privileges.

Giuffre is incorrect that this Court cannot dismiss her complaint on the basis of a qualified privilege, however applicable it may be to the facts alleged. Irrespective of whether lack of privilege is treated as an element of the prima facie case for defamation under New York law, courts can and do grant pre-answer motions to dismiss based on qualified privileges. *See Front v. Khalil*, 24 N.Y.3d 713, 720 (2015) (affirming dismissal based on qualified pre-litigation privilege); *Hanlin v. Sternlicht*, 775 N.Y.S.2d 146 (App. Div. 2004) (affirming dismissal based on qualified common-interest privilege); *Roth v. United Federation of Teachers*, 787 N.Y.S.2d 603, 612-13 (Sup. Ct. 2004) (same). The presumption against dismissing a complaint on the basis of an affirmative defense is "not absolute," but instead has "flexible contours," allowing for dismissal "where the facts needed for determination . . . can be gleaned from the complaint and papers . . . integral to the complaint." *Yukos Capital S.A.R.L. v. Feldman*, 2016 WL 4940200, at *7 (S.D.N.Y. 2016) (quoting *Staehr v. Hartford Fin. Servs. Group. Inc.*, 547 F.3d 406, 512 (2d Cir. 2008)). Here, the Court can and should determine that the self-defense privilege applies as a matter of law to Dershowitz's statements and dismiss Giuffre's Complaint as a result.

6

### b. The Complaint and Other Materials Properly Before This Court Establish That Prof. Dershowitz's Statements Are Protected by the Self-Defense Privilege and the Allegations of the Complaint Fail to Plausibly Allege that Dershowitz Abused That Privilege.

Like all defamation defenses under New York law, in determining the applicability of the self-defense privilege, Prof. Dershowitz's statements must be examined in the context in which they were made. *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 395 (S.D.N.Y. 1998) (Preska, J.). In December 2014, Giuffre, having never before accused Dershowitz despite having given multiple accounts of her time with Epstein in interviews with the FBI, in emails with a British journalist, and in her own memoirs, suddenly accused Dershowitz of sexually abusing her in a public court filing. Compl. ¶ 10. Dershowitz was not even a party to that action, yet Giuffre chose to identify him while leaving unnamed "other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders" whom she claimed had sexually abused her as well. Proctus Decl. Ex. A at 6. Giuffre thereby severely limited Dershowitz's ability to respond, to defend himself, or to disprove her accusations in the forum in which they were made, while at the same time insulating herself from a defamation suit under the litigation privilege. Against this backdrop, Prof. Dershowitz responded publicly in numerous print, online, and television interviews (generally in response to requests for comment on Giuffre's accusations) denying Giuffre's accusations, calling her a liar, and questioning her motives in accusing him. He repeated these same claims years later in response to renewed reporting on the allegations by the *Miami Herald*. Dershowitz had no practical choice but to defend himself and his reputation in precisely the manner he did.

Giuffre's argument that Dershowitz made an excessive response and therefore abused and forfeited the protection of the self-defense privilege ignores both the law and the factual

7

allegations of her own Complaint. Contrary to Giuffre's argument, New York does indeed recognize a robust privilege of reply. As this Court has recognized, consonant with the New York Constitution's broad protection of free speech rights, "New York has consistently chosen to provide libel defendants with greater protection than that afforded by federal law." *Jewell*, 23 F. Supp. 2d at 391. This greater protection is accomplished, in part, through the recognition of a robust set of privileges, which embody New York policy that "the public interest is served by shielding certain communications, *though possibly defamatory*, from litigation, rather than risk stifling them altogether." *Id.* at 392 (emphasis added) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992)). Consistent with this policy, the right of reply under New York law includes the right to impugn the plaintiff's motives in making the initial defamatory charges. *Mencher v. Chesley*, 85 N.Y.S.2d 431, 434 (Sup. Ct. 1948) ("[A] person subjects his own motives to discussion when he makes a public attack upon another. Legitimate self-defense is not limited to a mere denial of the charge, but it may include a proper counterattack[.]"); *Collier v. Postum Cereal Co.*, 134 N.Y.S. 847, 853 (App. Div. 1912) ("One in self-defense is not confined to parrying the thrusts of his assailant. Of course, the counter attack must not be unrelated to the charge, but surely the motives of the one making it are pertinent.").

New York courts have apparently not had occasion to address the forfeiture analysis specific to the self-defense privilege, as opposed to that applicable to qualified privileges more generally. Giuffre concedes however that *State v. Eighth Judicial Dist. Court ex rel. County of Clark*, 42 P.3d 233 (Nev. 2002), supplies the relevant test for abuse of the self-defense privilege. Opp. at 14. The privilege is abused if the response: "(1) includes substantial defamatory matter that is irrelevant or non-responsive to the initial statement; (2) includes substantial defamatory material that is disproportionate to the initial statement; (3) is excessively publicized; or (4) is

made with malice in the sense of actual spite or ill will." *Id.* at 239.  Here, where Dershowitz's statements are indisputably responsive to Giuffre's accusations against him, Giuffre bears the burden of demonstrating that the self-defense privilege has been forfeited.  *See Liberman,* 80 N.Y.2d at 441; *Stega v. New York Downtown Hospital*, 31 N.Y.3d 661, 673 (2018).  "Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege."  *Roth*, 787 N.Y.S.2d at 613.  The allegations of Giuffre's Complaint fall far short of establishing any such abuse of the privilege.  Plainly, given the nature of the accusations Giuffre publicly leveled against Dershowitz, a simple denial would have been an utterly ineffective defense in the court of public opinion.  Rather, the public would rightly expect anyone falsely accused of such a heinous offense not only to deny the charge, but also to hit back against the accuser and question her motives.  That is precisely what the law allows and precisely what Dershowitz did here.  Calling someone a liar or perjurer is far less defamatory than calling someone a child rapist.  It is at least not "disproportionate."[7]

Dershowitz acknowledges the authorities holding that malice of either the constitutional variety is generally sufficient to defeat a qualified privilege.  *See Liberman*, 80 N.Y.2d at 441.  However, neither *Liberman* nor any of the other cases Giuffre cites for this proposition deals with the self-defense privilege.  The cases which Dershowitz cited in his opening brief, which are specific to the self-defense privilege, recognize an important limitation to the normal forfeiture analysis applicable to the self-defense privilege:  that it is only malice of the common law variety, in the sense of ill will or spite, that can properly defeat it.  *See State v. Eighth Judicial Dist. Court ex rel. County of Clark*, 42 P.3d at 239; *Foretich v. Capital Cities/ABC, Inc.*,

---

[7] Giuffre cites to *McNamee v. Clemens*, 762 F. Supp. 2d 584, 601 (E.D.N.Y. 2011), to argue that anything beyond a general denial is actionable in defamation.  *McNamee* is inapposite because the defendant there did not invoke the self-defense privilege.  As discussed above, the protection of the self-defense privilege extends well beyond a general denial.

9

37 F.3d 1541, 1559 (4th Cir. 1994); Robert D. Sack, *Sack on Defamation*, at § 9.2.1 (3d ed. 2015). This rule is a common sense one. An individual facing an accusation of criminality or other misconduct such as the one leveled by Giuffre against Dershowitz can be expected to know, and thus speak with knowledge of, the truth or falsity of that accusation. Were the self-defense privilege to be defeated by an allegation of knowing falsity or reckless disregard for the truth, it would be no privilege at all. Rather, the more logical view is that the self-defense privilege is only forfeited by a reply that is excessive in scope or content, or which is motivated *solely* by ill will or spite. Critically, as to malice, Giuffre has the burden to plausibly allege that "malice was the *one and only cause* for the publication," a claim that would defy credulity in this case. *Stukuls v. State of New York*, 42 N.Y.2d 272, 282 (1977) (emphasis added); *see also Stega*, 82 N.Y.S.3d at 332 (defamation plaintiff has "burden of showing that a statement is actionable because it was motivated by malice . . . in order to negate the privilege. The defendant whose communications are subject to a qualified privilege would have no burden of showing lack of malice."). "If the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant also despised plaintiff." *Liberman*, 80 N.Y.2d at 439. Here, the allegations of the Complaint and the facts contained in the other materials properly before the Court in connection with this motion conclusively establish as a matter of law that Dershowitz's statements fall squarely within the self-defense privilege and the First Amendment, and Giuffre has not met her burden at the pleading stage to overcome that burden.

### iii. Conclusion

For the reasons stated herein and in Prof. Dershowitz's Memorandum of Law (ECF No. 23), Prof. Dershowitz respectfully requests that the Court GRANT his Motion to Dismiss the Complaint.

Respectfully submitted,

ALAN DERSHOWITZ,

By his attorneys,

/s/ Howard M. Cooper
Howard M. Cooper (MA BBO# 543842)
(*pro hac vice*)
Christian G. Kiely (MA BBO# 684308)
(*pro hac vice*)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
ckiely@toddweld.com

Arthur L. Aidala (S.D.N.Y. Bar No. ALA-0059)
Imran H. Ansari (S.D.N.Y. Bar No. IHA-1978)
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
aidalaesq@aidalalaw.com
iansari@aidalalaw.com

Dated: July 16, 2019

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was sent via the Court's electronic filing system, and served to all counsel of record on July 16, 2019.

                                                  /s/ Howard M. Cooper
                                                  Howard M. Cooper