LAW OFFICES OF
# Aidala, Bertuna & Kamins, P.C.

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
JOHN S. ESPOSITO
DOMINICK GULLO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
ANDREA M. ARRIGO

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118-13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
JENNIFER CASSANDRA
PETER W. KOLP
WILLIAM R. SANTO
PETER S. THOMAS

October 3, 2019

Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Giuffre v. Dershowitz*, Case No. 19-Civ-3377-LAP
                **Post-Argument Letter**

Dear Judge Preska,

In accordance with your Honor's letter endorsement [Dkt No. 60], Defendant Alan Dershowitz ("Prof. Dershowitz") respectfully submits the following:

***Limiting Principle***

At argument, Plaintiff's counsel Sigrid McCawley was asked what the limiting principle was, and she responded that "each and every distinct publication triggers a new statute of limitations..." (Transcript P.5, L.5) This is incorrect, in fact courts have expressly rejected this principle in *Hoesten v. Best*, 34 A.D.3d 143 (App. Div. 2006), *Gelbard v. Bodary*, 270 A.D.2d 866 (App. Div. 2000), and *Clark v. Viacom Intern. Inc.*, 617 Fed Appx. 495 (6th Cir. 2015), and explained that the purpose of the single publication rule is to prevent the "endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants." *Firth v. State of New York*, 98 N.Y.2d. 365, 370 (2002). The limiting principle is that the single publication rule does bar a claim based on a subsequent publication where "the second publication is intended to and does reach a new group." *Restatement (Second) of Torts § 577A, cmt. d.*

1

Ms. McCawley also argued that a mere denial of an accusation of a sexual misconduct, without more, constitutes a defamation (*See* Plaintiff's Demonstrative Handout, P.19). That interpretation is flawed. The historic right of reply specifically includes the right to call your accuser a liar and malign her motives in publishing the lie (*Restatement (Second) of Torts § 593, cmt. K*); and includes the right to impugn the accuser's motives. *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541 (4th Cir. 1994); *Mencher v. Chesley*, 85 N.Y.S. 2d 431 (Sup. Ct. 1948). Ms. McCawley's interpretation would preclude a falsely accused person from truthfully denying the false accusation by exposing that person to multiple lawsuits, while allowing the false accuser the unfettered ability to publically repeat false accusations with impunity, while using the litigation privilege as a shield, and strip the falsely accused of the ability to deny the accusations and call his accuser a liar. This would chill the most fundamental exercise of free speech: one's constitutionally protected privilege of denying a false charge in the court of public opinion.

If calling someone who has accused you of being a pedophile a "liar" or "perjurer" is permitted to constitute actionable defamation the floodgates of litigation would be opened and the court's docket inundated with frivolous lawsuits. The word "liar" is commonplace in our current political, cultural and media world, and has lost much of its sting. When both sides have called each other "liar" this is especially true.

*Leslie Wexner*

At argument, the question arose as to whether Leslie Wexner's name had been previously mentioned by Prof. Dershowitz and whether Prof. Dershowitz had specifically accused the Boies firm and their client of attempting to extort Wexner. The answer is <u>yes</u>. A December 12, 2015 New York Times article states: *"As he has defended that legacy, there has been ... an accusation of an extortion plot against the billionaire Leslie H. Wexner... 'Virginia and her lawyers hoped to get $1 billion, B-I-L-L-I-O-N, $1 billion or half of his net worth," Mr. Dershowitz testified he was*

2

*told, calling the plan an "extortion" attempt.*[1] Prof. Dershowitz has publically repeated the accusation regarding Wexner throughout 2016, 2017, and 2018.

The accusation regarding Wexner is relevant and material to the claims and defenses in this action. Prof. Dershowitz will question David Boies, Ms. McCawley and Wexner's lawyers about a meeting held at the Boies firm office and why Wexner's name "disappeared" from the case after that meeting; and, whether Giuffre's attorneys did not believe their own client's accusation against Wexner; or whether they did believe her and "hush money" was paid by Wexner in order to prevent Giuffre and her attorneys from disclosing the allegations against him.

### *Proportionality*

At argument, Ms. McCawley suggested that Prof. Dershowitz calling Giuffre a *liar* and a *perjurer* is disproportionate to Giuffre accusing Prof. Dershowitz of pedophilia. This conclusion is irrational and without basis. Assuming *arguendo* if true, Giuffre herself has repeatedly called Dershowitz a liar in court papers. It cannot be disproportionate to call someone a liar who has called you a liar.

### *Conflict Check*

At argument, the Court raised questions about a conflict check "and having to get Mr. Boies' consent." (Transcript P. 40, L. 12-15) Prof. Dershowitz categorically states that he offered to call Mr. Boies personally to get his consent to represent him and that Carlos Sires told him he did <u>not</u> have to do that, as Stuart Singer has the authority to consent to representation – which Mr. Singer did in fact do.

Respectfully Submitted,

_____
Imran H. Ansari

---

[1] New York Times, *Alan Dershowitz on the Defense (His Own)*, December 12, 2015, by Barry Meier, available at: https://www.nytimes.com/2015/12/13/business/alan-dershowitz-on-the-defense-his-own.html