# EXHIBIT C

JC29GIUC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   VIRGINIA L. GIUFFRE ,

4              Plaintiff,

5         v.                              19 CV 3377 (LAP)

6   ALAN DERSHOWITZ ,

7              Defendant.

8   ------------------------------x

                                    New York, N.Y.
9                                   December 2, 2019
                                    9:06 a.m.
10

11  Before:

                    HON. LORETTA A. PRESKA
12
                                         District Judge
13
                        APPEARANCES
14
    COOPER & KIRK
15      Attorneys for Plaintiff
    BY:  CHARLES J. COOPER
16       MICHAEL W. KIRK
         NICOLE J. MOSS
17       HALEY N. PROCTOR

18  TODD & WELD
    BY:  HOWARD COOPER
19       CHRISTIAN KIELY
                -and-
20  AIDALA BERTUNA & KAMINS
    BY:  IMRAN H. ANSARI
21       HON. BARRY KAMINS
         Attorneys for Defendant
22

23

24

25

2

JC29GIUC

1                THE COURT:  Giuffre against Dershowitz.  Is plaintiff

2        ready?

3                MR. C. COOPER:  Yes, your Honor.

4                THE COURT:  Good morning.

5                And is defense ready?

6                MR. H. COOPER:  Yes, your Honor.  Good morning.

7                THE COURT:  Good morning.  All right, counsel.  I was

8        a little concerned when I read the list of people whose

9        deposition you wish to take.  Seems to be a pretty long list

10       here.

11               Also, I had questions about some of the topics you

12       wanted to cover in discovery and questions about why we need

13       expert discovery here.

14               I'm looking at page three of the joint report under

15       anticipated subjects of discovery.  Dershowitz's sexual abuse

16       of and involvement in the human trafficking of Giuffre and

17       other women.

18               I mean it seems the issue here is much narrower than

19       that, isn't it?

20               I mean we're looking as to whether Dershowitz and

21       Giuffre had relations and we have the additional allegations in

22       the complaint with respect to supposed extortion schemes by

23       Giuffre and her lawyers.  Isn't that what we're here to talk

24       about?

25               Sir.

1          MR. C. COOPER:  Yes, your Honor.

2          That is true.  We do believe that the allegations of

3     the complaint comprehend an involvement by Mr. Dershowitz that

4     would satisfy this description but I'm quite certain that our

5     discovery into the basic allegations, defamation allegations in

6     the complaint will cover everything we need to cover.

7          THE COURT:  I'm not so sure what that means.

8          So my question specifically on A. is that let's just

9     say you ask about whether Dershowitz had relations with other

10    women in Epstein's house.

11         Do we care?

12         MR. C. COOPER:  Yes, your Honor.

13         THE COURT:  Why?  But if not Giuffre?

14         MR. C. COOPER:  Well, your Honor, if Mr. Dershowitz

15    had relations with others in Mr. Epstein's house that would

16    tend, we believe, to strongly corroborate the claims that

17    Ms. Giuffre is making with respect to her relations with

18    Mr. Dershowitz in Mr. Epstein's residences and other places.

19         THE COURT:  It's kind of like propensity evidence.

20         Let me do it a different way.

21         Yes, sir.  Go ahead.

22         MR. C. COOPER:  Only that Mr. Dershowitz's denial, of

23    course, is quite sweeping and --

24         THE COURT:  Well I thought it went to his allegation

25    that he had never met or had relations with plaintiff.

4

JC29GIUC

1          MR. C. COOPER:  That's certainly one of his claims.

2          He also claims he never had sex with anyone other than

3   his wife.  That's a central piece of his argument.

4          THE COURT:  But we're not going to do that.

5          Let me ask it a different way, may I?  And my object

6   here is to cut down on the time and expense of discovery.

7          MR. C. COOPER:  We welcome that, your Honor.

8          THE COURT:  Yes.  I think we would all.

9          So does it make sense to put together our documentary

10   discovery.  And as we know, we expect that there will be a lot

11   of travel documents that will be produced.

12          So, this is great fun.  Mr. Cooper and Mr. Cooper.

13          Mr. Cooper at the back table.

14          MR. H. COOPER:  Yes, your Honor.

15          THE COURT:  Producing a lot of those documents with

16   respect to your client is going to get us a long way, right?

17          MR. H. COOPER:  I think so.

18          THE COURT:  And same thing with respect to plaintiff?

19   Right?  One of the items in here is travel documents and

20   employment records.

21          MR. C. COOPER:  Yes, your Honor.

22          THE COURT:  There's some issue with respect to how old

23   plaintiff was when she was employed.

24          Does it make sense to put those documents together

25   first, and I would think pretty quickly, and see where the

JC29GIUC

1   areas of overlap are?

2           MR. C. COOPER:  We would certainly contemplate

3   receiving -- asking for those and receiving them in our initial

4   round of document requests, your Honor.

5           THE COURT:  I would think so.

6           Then what?  What do you want to do next?  After that,

7   to try to limit this?

8           For example, B. State and Federal Investigations of

9   Epstein and Maxwell.  That sounds hard.

10           Dershowitz's decades-long friendship with Epstein.

11           Dershowitz's involvement in defending Epstein and

12   negotiating a nonprosecution agreement.

13           Giuffre's communications with law enforcement

14   regarding her time with Epstein.

15           Compensation paid to Giuffre for her story.

16           All of this sounds pretty far afield from the main

17   allegations.

18           MR. C. COOPER:  Your Honor, we think these items that

19   we've listed that you've mentioned at least from our

20   anticipated subjects go to the question of Mr. Dershowitz's

21   credibility.  I suspect that Mr. Cooper behind me will say the

22   same thing about the subjects that he'd like to explore with --

23   in his discovery of our client.  This is a -- this case at the

24   end of the day, your Honor, is a -- at least with respect to

25   the central issue is a he-said/she-said.  So credibility is

JC29GIUC

1  extremely important.

2           THE COURT:  Totally agreed.  But there has to be some

3  reasonable limit on what we're going to do here.

4           MR. H. COOPER:  Your Honor, let me.

5           THE COURT:  Sir.

6           MR. H. COOPER:  Thank you.

7           Let me say here that I'm not sure that phase document

8  discovery will necessarily get us where I think you want us to

9  go.  I fully agree and I believe we raised during our 26(f)

10 conference that it would be extraordinary if not preposterous

11 to attack a statement by Professor Dershowitz that he's only

12 had sex with his wife for the last many years by allowing

13 plaintiff to embark on discovery to see if he's had sex with

14 anybody else.  And I don't believe that that is appropriate.  I

15 don't believe that's within the bound of permissible discovery.

16          THE COURT:  Or propriety.

17          MR. H. COOPER:  Having said that, your Honor, on the

18 flip side, and we've demonstrated this in a lot of ways in our

19 counterclaim which is a speaking counterclaim.

20          THE COURT:  No kidding.

21          MR. H. COOPER:  Ms. Giuffre has, we believe, made a

22 number of false allegations against numerous prominent men.

23          Now, discovery from those men is a brief deposition.

24 It is something that, as we've talked to plaintiff's counsel

25 about, I think is an hour or two for both sides.  And the point

JC29GIUC

1    there would simply be --

2            THE COURT:  But if you're going down that line I don't

3    see why plaintiff doesn't get -- able to go down her line.  But

4    both of them seem very far afield.  There are other ways to

5    attack people's credibility in this case.

6            MR. H. COOPER:  Well one of the fundamental ways to

7    attack the credibility of a false complainant of a sexual

8    assault allegation is by proof that they have made prior and

9    other false allegations of sexual assault and --

10           (Counsel and defendant confer)

11           And with regard to the core defamations that are at

12    issue both ways, your Honor, Ms. Giuffre is suing Professor

13    Dershowitz for essentially calling her a liar on those topics

14           THE COURT:  I'll well aware of that, counsel.

15           MR. H. COOPER:  I know you are.

16           So to me, your Honor -- and we have pretty much ready

17    to go a document discovery request that is pointed and my guess

18    is --

19           THE COURT:  And massive, no doubt.

20           MR. H. COOPER:  No.  Not massive, your Honor.  Very

21    much tied to the allegations against Professor Dershowitz and

22    those that he is making against the plaintiff.  And I do think

23    it would make sense for us to exchange the document requests,

24    see what areas of agreement that we have.

25           I do note that we're in the unusual position that

JC29GIUC

1   there is apparently voluminous discovery from the Giuffre v.

2   Maxwell case that at some point may be available to us which

3   may narrow some of the task here, for both sides.  So getting

4   the documents together from each side in terms of areas of

5   agreement, getting the documents that are currently under seal

6   subject to your Honor's process in the Giuffre v. Maxwell case

7   I think would get us pretty far down the road in terms of

8   seeing relevant document discovery and identifying areas of

9   disagreement.

10          MR. C. COOPER:  If I may, your Honor.

11          THE COURT:  Sir.

12          MR. C. COOPER:  First of all, we have no intention of

13   trying to discover into whether Mr. Dershowitz has ever had sex

14   generally with anyone other than his wife.  But it is relevant

15   and we believe goes to the heart of Mr. Dershowitz's

16   credibility whether he has had sex in connection with Epstein's

17   operation, particularly given the fact that apart from

18   Ms. Giuffre another young woman has alleged under oath that she

19   too had sex with Mr. Dershowitz in connection with that

20   operation.

21          And the other point I want to emphasize here is

22   Ms. Giuffre has not brought a defamation case against

23   Mr. Dershowitz because he called her a liar.  He said that she,

24   along with her lawyers and a cadre of what would have to be at

25   least a dozen people, all of them officers of the court, your

JC29GIUC

```
 1    Honor, engaged in a extraordinary effort to completely concoct

 2    out of whole cloth this claim against Mr. Dershowitz in order

 3    to use him as some kind of an example in their effort to

 4    blackmail and extort his words.

 5              THE COURT:  I understand that, although.

 6              MR. C. COOPER:  So that's not just lying, you know.

 7              THE COURT:  Well lying was part of the defamation

 8    claim for sure.

 9              MR. C. COOPER:  Of course.

10              THE COURT:  OK.

11              MR. C. COOPER:  Your Honor, this case probably would

12    never have been brought had that been the only thing he said.

13              THE COURT:  OK.  And but your point is what?  That the

14    latter is the more serious claim?

15              I'm not sure why you're telling me this.

16              MR. C. COOPER:  Well because counsel has suggested to

17    you this case is a simple case over whether or not

18    Mr. Dershowitz said she was a liar.  It's not.  It's who --

19              THE COURT:  I said that when I came out here.  It has

20    to do with whether they, in fact, had relations and who was

21    lying or is lying and, secondly, the conspiracy-to-extort

22    theory.

23              MR. C. COOPER:  Yes, your Honor, you did.  And, again,

24    I'm just attempting to bring this back from counsel's comment

25    to what the real allegations are and the real issues before the
```

JC29GIUC

1  Court are.

2         MR. H. COOPER:  Your Honor, if I may?

3         THE COURT:  Sir.

4         MR. H. COOPER:  We're talking about the scope of

5  discovery here.

6         THE COURT:  We are.

7         MR. H. COOPER:  We're talking about it in context of

8  an ever-evolving set of facts.  Just this weekend -- and we've

9  supplemented our 26(f) statement, your Honor, Mr. Patrick

10  Kessler was brought to our attention and, to put it mildly, the

11  allegations made concerning Mr. Boies and his firm and other

12  counsel we think are going to be directly relevant to proving

13  the truth of what Professor Dershowitz said.

14         Now in order to do that we need to depose these folks.

15         THE COURT:  Why are you telling me this?

16         MR. H. COOPER:  Because, your Honor --

17         THE COURT:  You can't depose all the people on the

18  list.

19         Now this guy Kessler, if, as you say, has photographs

20  and videos that's closer to being a -- closer to probative

21  evidence.

22         MR. H. COOPER:  Well but, your Honor, if the New York

23  Times account is to be credited -- and at the moment I can't

24  tell whether it should be or not other than what I read --

25  Mr. Kessler brought to the Times' attention a scheme that is a

1    very close match to the scheme alleged here with regard to

2    Leslie Wexner.

3            THE COURT:  And your point is what, counsel?

4            MR. H. COOPER:  And my point is that we will need to

5    take depositions on that topic, your Honor, in order to prove

6    the veracity, the truth defense that has been raised both with

7    regard to Ms. Giuffre's allegations and Professor Dershowitz's

8    own affirmative defamation claim.

9            THE COURT:  I hear you.  But we are not taking all

10   these people.

11           Answer another question.  Why do we think we need

12   expert discovery here?  Expert on what?

13           MR. H. COOPER:  So the only thing that I can think of,

14   your Honor, is on any electronics that are produced.  There is

15   an issue in this case for example about -- and I'm just picking

16   one that's widely known -- the photograph of Prince Andrew and

17   whether that's a fake or not.  And if we need to get an

18   expert --

19           THE COURT:  All right.  Any other reason we need an

20   expert here?

21           MR. H. COOPER:  Also, your Honor, there are claims for

22   psychological damages in this case.  Ms. Giuffre -- I don't

23   want to get into what we know about any history here in open

24   court, but there will be a need potentially to have her

25   evaluated from a psych perspective on the issue going to her

JC29GIUC

1   damages.

2          THE COURT:  OK.  Well both sides allege psychological

3   damages, right?

4          MR. H. COOPER:  That is true, your Honor.

5          THE COURT:  Do not spend any money on experts until we

6   talk again.

7          Is there any other reason to have an expert?

8          MR. C. COOPER:  Your Honor, I would only cite one and

9   that is the effect of the events on a young woman described in

10  the complaint.

11         THE COURT:  Psychological.

12         MR. C. COOPER:  Yes, your Honor.

13         Trauma and the effects on somebody's emotional state.

14         THE COURT:  Don't spend money on experts until we talk

15  again.

16         MR. C. COOPER:  Very well, your Honor.

17         THE COURT:  What is the status of the recording,

18  please?  Is it still with Stroz?

19         MR. C. COOPER:  That's our understanding, your Honor.

20  They will not release it absent your action.

21         THE COURT:  Right.

22         MR. C. COOPER:  We have requested the Court to provide

23  that authorization to send the microcassette to a different

24  firm.

25         THE COURT:  Do we have agreement on such a firm?

JC29GIUC

1        MR. H. COOPER:  Not yet, your Honor.

2        THE COURT:  Any reason we haven't?

3        MR. H. COOPER:  I haven't had a chance --

4        THE COURT:  Agree.  You haven't had a chance?  All

5   right.

6        MR. H. COOPER:  I haven't discussed it again with

7   Mr. Cooper yet.

8        THE COURT:  Agree on a firm.  There is no reason it

9   shouldn't be sent.  Maybe you can even agree on what you want

10  done.  I assume what you want done is efforts at enhancing what

11  sounds like difficult-to-hear material.

12        MR. C. COOPER:  That's one of the things, your Honor.

13  At least from our side.  We'd like to have expert analysis in

14  terms of whether it was a tape of the entire conversation and

15  whether the tape has in any way, according to forensic

16  analysis, been altered.

17        THE COURT:  All right.

18        MR. C. COOPER:  But apart from those basics.

19        MR. H. COOPER:  Your Honor happy to try to agree on a

20  protocol.

21        THE COURT:  So let's do that and get it done quickly.

22        Are there other recordings other than that one?

23        MR. H. COOPER:  Not that I'm aware of, your Honor, but

24  that is something that we will be asking for in discovery.

25        THE COURT:  I think you were the guys who had the

JC29GIUC

1   recordings.

2           MR. H. COOPER:  Well I don't know --

3           THE COURT:  Do you have anymore recordings?

4           (Counsel and defendant confer)

5           MR. H. COOPER:  Not that I'm aware of, your Honor.

6           MR. C. COOPER:  Your Honor, counsel has mentioned this

7   New York Times article from yesterday.  The article itself

8   contains excerpts from what purports to be, and the article

9   describes, as a recording between Mr. Dershowitz and this

10  Patrick Kessler character.

11          MR. H. COOPER:  That's true, your Honor.  Happy to

12  produce it.

13          THE COURT:  Do you have those?

14          MR. H. COOPER:  I have only read about this this

15  weekend, your Honor.  I assume my client does.  So we will

16  produce that in the course of discovery.  Absolutely.  Just as

17  we will be pursuing, as I said, the entirety of the episode

18  between Mr. Kessler and the lawyers.

19          MR. C. COOPER:  And as the Court obviously has

20  anticipated we are going to be asking for and seeking any and

21  all recordings that Mr. Dershowitz may have made of any and all

22  telephone conversations or otherwise that bear on --

23          THE COURT:  Absolutely.  So let's get these --

24          MR. H. COOPER:  -- your order goes both ways.  Because

25  we're going to be looking for the same thing.

JC29GIUC

1             THE COURT:  Absolutely.

2             Does plaintiff have any recordings that you know of,

3    counsel?

4             MR. C. COOPER:  I'm aware of none.

5             THE COURT:  Let's get those produced and get them to

6    analysis so you people can get your transcripts and get

7    whatever other analysis you want.

8             MR. C. COOPER:  Thank you.

9             THE COURT:  I assume you can agree on it.  And let's

10   get going here.

11            MR. C. COOPER:  Yes, your Honor.

12            THE COURT:  What else?

13            How are we going to keep this under control, friends?

14            MR. H. COOPER:  Your Honor, while Mr. Cooper and I

15   haven't dealt with each other previously, just by virtue of his

16   wonderful last name I'm sure that we'll be able to --

17            THE COURT:  You're in trouble now, counsel.

18            MR. H. COOPER:  We will be able to work a lot of this

19   out and I would suggest respectfully, your Honor, that

20   discovery proceed in the ordinary course:  We exchange written

21   discovery.  We identify our areas of disagreement, try to

22   narrow them, and then deal with whatever needs to be dealt with

23   through normal motion practice.

24            If I'm wrong, then I believe we will be capable

25   jointly of informing the Court that we have problems.  And

JC29GIUC

1      then, perhaps, your Honor, we can --

2              THE COURT:  Two things.  Number one, this is not going

3      to go on forever and ever.

4              Number two, we are not doing all of this stuff.  This

5      is not going to be the book for my dear friends the reporters

6      to write on the whole matter.  We need to narrow it down and

7      get to the issues quickly.

8              My suggestion for you is that perhaps I have -- I

9      don't know if you've discussed your initial disclosures yet,

10     but your initial disclosures comprise your respective client's

11     travel schedules, travel documents, employment materials and

12     the like, so that you can --

13             MR. H. COOPER:  Can we add to that, your Honor?  I'm

14     sorry to interrupt.  But we had tried to get Ms. Giuffre's, I'm

15     told, multihundred-page deposition transcript produced to us

16     before we had our 26(f) conference.

17             THE COURT:  That's not a travel document.

18             MR. H. COOPER:  I understand that.  But it would help

19     us narrow discovery knowing what it is that she's testified to

20     already.  We did -- we put this together without the benefit of

21     that.

22             THE COURT:  Right.

23             MR. H. COOPER:  And obviously to the extent that she's

24     testified on certain subject matters or answered questions

25     about who witnesses --

JC29GIUC

1           THE COURT:  Why don't you two talk to each other about

2      it.

3           MR. H. COOPER:  Happy to.

4           THE COURT:  We're not going to disclose the transcript

5      publicly without further order.  But if you people agree --

6      counsel, have you seen the deposition?

7           MR. C. COOPER:  My colleagues have, your Honor.

8           THE COURT:  So figure out whether that's going to help

9      you people or not and let me know.

10          MR. C. COOPER:  Very well.

11          THE COURT:  But as I'm saying I would -- I think I

12     would suggest that your initial disclosure be all of the travel

13     documents and whatnot so that you can at least figure out what

14     dates you're looking at.

15          Does that make any sense?

16          MR. C. COOPER:  Your Honor, it does.

17          THE COURT:  What else do you want for initial

18     disclosures?

19          Sir.

20          MR. KIRK:  Actually, your Honor, could I go back to

21     one thing.

22          THE COURT:  Yes, please.

23          MR. KIRK:  Just to be clear.  We were under the

24     impression that we could not produce the Maxwell deposition due

25     to the Maxwell protective order.  Obviously if your Honor gives

JC29GIUC

1       us leave to do so.

2                   THE COURT:  Right.

3                   MR. KIRK:  We'd be happy to do so.

4                   THE COURT:  But, again, it is between the two of you.

5       It is for use in this case only and it is not to be disclosed.

6                   MR. KIRK:  Understood.

7                   MR. C. COOPER:  Understood.

8                   THE COURT:  All right.

9                   MR. C. COOPER:  Until such time presumably as the

10      Court makes a decision on that question.

11                  THE COURT:  As always.

12                  What else?  What else for initial disclosure, friends?

13                  MR. H. COOPER:  I think that covers it from our

14      perspective, your Honor.

15                  MR. C. COOPER:  As I stand here before you, your

16      Honor, I can't think of other items.

17                  THE COURT:  Two weeks for that.

18                  MR. C. COOPER:  We've agreed on the 16th which is

19      two weeks.

20                  THE COURT:  That's even better.

21                  All right.  And then I know you've got dates in here

22      about when you're going to serve your document requests but

23      pretty soon after that let me know whether you agree or you

24      don't agree and whether you want to come in and chat.

25                  What is -- does plaintiff know yet about whether she's

JC29GIUC

going to amend?

          MR. C. COOPER:  Yes, your Honor.  We are going to

amend the complaint.

          THE COURT:  To add what kinds of claims, please?

          MR. C. COOPER:  Your Honor, we're going to add --

first of all, we're going to add additional allegations with

respect to defamatory statements of the same ilk made by

Mr. Dershowitz since the time the complaint was filed including

most recently in a book that he's published on this subject

exclusively.

          THE COURT:  May I ask you if they are defamatory

statements of the same ilk, why do we really need to amend

other than to get it out in public?

          Get those statements out in public even though they're

out in public?

          MR. C. COOPER:  They're in a book, your Honor.

          THE COURT:  I know.  So what do we need to amend for

that for?

          MR. C. COOPER:  These are fresh defamatory statements

adding to the -- quite squarely within our understanding from

the Court's decision intended to and reaching new audiences.

          THE COURT:  OK.  But you already have that -- you

already have that.  You won on that one.  I'm not sure -- tell

me what else you want to amend to do.

          MR. C. COOPER:  Your Honor, we also intend to amend to

1    offer state tort claims that have been revived, previously

2    time-barred when this complaint was filed, but have been

3    revived by the New York Child Victims Act.

4              THE COURT:  All right.  Comment on that, Mr. Cooper at

5    the back table.

6              MR. H. COOPER:  We'll be moving to dismiss if they

7    move to amend.

8              THE COURT:  What are you going to move to dismiss on

9    the basis?

10             MR. H. COOPER:  On the basis of futility.

11             I would point out only --

12             THE COURT:  Why is the revival of the state tort

13   claims under the Child Victims Act a futile amendment?

14             MR. H. COOPER:  Because I think there's irrefutable

15   proof that she wasn't a child and doesn't qualify which is one

16   of the reasons we ask --

17             THE COURT:  That's not a motion to dismiss -- I mean

18   unless you're going to make a summary judgment motion and put

19   in the initial discovery we were just talking about.

20             MR. H. COOPER:  Thank you, your Honor.  Exactly.  If

21   we get the records with regard to her employment at Mar-a-Lago

22   that we've sought we believe that it will be irrefutable that

23   she cannot avail herself of the state statute and the revived

24   statute of limitations or the extended statute of limitations.

25   And that's futility.

JC29GIUC

 1          THE COURT:  But that's going to be a summary judgment

 2    motion or a motion on the pleadings or something.  It's not a

 3    failure-to-state motion.

 4          MR. H. COOPER:  Futility of the amendment, your Honor,

 5    technically speaking.

 6          And I think that they have those documents so I

 7    suspect counsel will have to examine whether they have a good

 8    faith basis --

 9          THE COURT:  I am sure counsel will.

10          What else, sir?

11          MR. C. COOPER:  Your Honor, we are planning to file an

12    amendment adding a claim under the Electronic Communications

13    Privacy Act, the Wiretap Act, relating to the tape that -- it

14    was the subject for our previous discussion, the microcassette

15    and the tape that --

16          THE COURT:  Does plaintiff have standing to bring

17    that?  I thought Mr. Boies was taped.

18          MR. C. COOPER:  That's true.  And your Honor is asking

19    a serious question.

20          We believe that she does and we look forward to the

21    opportunity to convince the Court that she does.  But that's a

22    serious question.

23          THE COURT:  All right.  We know what you're going to

24    say.

25          MR. H. COOPER:  Thank you, your Honor.

1          THE COURT:  What else?

2          MR. C. COOPER:  That's it.

3          THE COURT:  All right.

4          MR. H. COOPER:  One comment, your Honor.

5          THE COURT:  Sir.

6          MR. H. COOPER:  We've asked for a trial date next

7     fall.

8          THE COURT:  I know but you're not having any expert

9     discovery so you're going to save a few months there.

10         MR. H. COOPER:  So we've asked for a relatively

11    aggressive discovery schedule to be completed through

12    mid-August and it's our hope that this matter is not going to

13    get delayed by filing superfluous motions to amend, etc. and we

14    can get to it.

15         THE COURT:  All right.  Then don't file a motion under

16    the CVA until it's time.  File no motion before its time.

17    There is no point in doing it now.

18         MR. H. COOPER:  Couldn't agree with you more, your

19    Honor.  Thank you.

20         THE COURT:  All right.  So let me just ask this.

21    There is no additional discovery that will be caused by the

22    addition of those state court claims, right?

23         MR. C. COOPER:  I think those state court claims are

24    going to be comprehended within the discovery that's

25    contemplated.  Yes, your Honor.  So the answer is --

JC29GIUC

1          THE COURT:  The state court claims aren't going to

2     cause any discovery we would not otherwise be undertaking.

3          MR. C. COOPER:  I believe that is true.

4          THE COURT:  So think about it in filing superfluous

5     motions.  There will be a time, and delaying discovery to do

6     this is not wise.

7          MR. H. COOPER:  I agree.

8          THE COURT:  What else?

9          MR. C. COOPER:  Nothing.

10          MR. H. COOPER:  Your Honor, the only other thing on

11     our list is -- and it may be premature to address it, again,

12     because I don't have a transcript from the Maxwell case, but

13     given the array of alleged defamations which apparently there's

14     going to be more, I don't know how we can do Ms. Giuffre's

15     deposition in one day.

16          THE COURT:  Nobody is saying that.  Talk -- have you

17     discussed it with counsel?

18          MR. H. COOPER:  If that -- we can talk about it,

19     terrific.  We were told that it was going to be limited.  Their

20     view was that it was going to be limited to a day.

21          THE COURT:  Right.  All right.

22          What are you going to do about attorney work product

23     and attorney-client communications here?

24          MR. H. COOPER:  Well, your Honor, we will be serving

25     the Boies firm and Mr. Boies individually with a subpoena.  It

JC29GIUC

```
 1    will seek privileged materials in light of the crime fraud

 2    exception and U.S. v. Zolin at least in the First Circuit.  And

 3    I think inevitably, your Honor, that will lead to a --

 4              THE COURT:  Motion practice.

 5              MR. H. COOPER:  Yes.  And perhaps an in camera review

 6    by the Court with regard to those documents.

 7              THE COURT:  Have you discussed this with counsel?

 8              MR. H. COOPER:  We have told counsel that we intend

 9    to.

10              THE COURT:  That's different from discussing.  Have

11    you had a discussion about it?

12              MR. H. COOPER:  No.

13              MR. C. COOPER:  We have not.

14              THE COURT:  You people need to talk about this before

15    you start throwing paper at each other.

16              MR. H. COOPER:  Absolutely, your Honor.

17              THE COURT:  All right.  Anything to add on that,

18    Mr. Cooper at the front table?

19              MR. C. COOPER:  Only this, your Honor.  It is our

20    expectation to seek discovery into Mr. Dershowitz's

21    attorney-client relationship with Mr. Epstein.

22              THE COURT:  And talk to me why that is relevant.  And

23    I mentioned earlier one of the items on your agenda was

24    Mr. Dershowitz's representation of Mr. Epstein in connection

25    with the nonpros agreement in Florida.  Why do we care about
```

JC29GIUC

1   that?

2          MR. C. COOPER:  Your Honor, we believe that if

3   Mr. Dershowitz is, as Ms. Giuffre alleges, was involved with

4   Mr. Epstein in the activities that have been alleged, that his

5   communications with Mr. Epstein and the motivations that

6   Mr. Dershowitz had to negotiate the plea deal that has become

7   so controversial will be relevant and important.

8          THE COURT:  The question is whether there's -- you

9   have the ability to narrow that.

10          Based on popular press more than the papers here, I

11   think I recall some allegation that folks acting in concert

12   with Mr. Epstein were immunized or otherwise received a benefit

13   in that agreement.

14          MR. C. COOPER:  That's exactly right, your Honor.

15          THE COURT:  OK.

16          MR. C. COOPER:  That's at the core of the point.

17          THE COURT:  So we want to narrow it to that, right.

18          MR. C. COOPER:  That is the core of it, your Honor.

19   We can narrow it to that.

20          THE COURT:  Have we discussed that with Mr. Cooper at

21   the back table?

22          MR. C. COOPER:  No, your Honor.

23          THE COURT:  We need to have a big conversation about

24   all this attorney-client stuff, my friends, so that we don't

25   spend a lot of time moving on it.

| | |
|---|---|
| 1 | What else? |
| 2 | All right.  I would very much like to stay in contact. |
| 3 | I know Washington is far but the Accela is easy. |
| 4 | MR. C. COOPER:  Yes, it is. |
| 5 | THE COURT:  But let's do this quickly.  I want you to |
| 6 | get the initial disclosure out and figure out where we are. |
| 7 | Even if we can just have a chat about what that shows with |
| 8 | respect to dates and whatnot.  Dates and ages, right? |
| 9 | MR. C. COOPER:  Yes, your Honor. |
| 10 | THE COURT:  Could you report back right after the |
| 11 | first of the year on that? |
| 12 | MR. C. COOPER:  We certainly can. |
| 13 | MR. H. COOPER:  Absolutely. |
| 14 | THE COURT:  Wonderful.  What else do you want to do |
| 15 | today, friends? |
| 16 | MR. C. COOPER:  I would like to do one thing before we |
| 17 | conclude. |
| 18 | THE COURT:  Sir. |
| 19 | MR. C. COOPER:  I would like to introduce to the Court |
| 20 | my colleagues at counsel table with me. |
| 21 | THE COURT:  Yes, please. |
| 22 | MR. C. COOPER:  May I? |
| 23 | This is Michael Kirk, my partner. |
| 24 | MR. KIRK:  Good morning, your Honor. |
| 25 | MR. C. COOPER:  This is Nicole Moss. |

JC29GIUC

```
 1                    THE COURT:  Good morning, ma'am.

 2                    MR. C. COOPER:  And Haley Proctor.

 3                    We are mindful that we are here with the Court's

 4       permission.  We are grateful for that and we're honored to be

 5       here.

 6                    THE COURT:  Thank you.

 7                    MR. H. COOPER:  Having had the pleasure of being here

 8       before your Honor I suppose no introduction of our team is

 9       necessary.

10                    THE COURT:  Not at that table.

11                    MR. H. COOPER:  I would say I'm proud to have them

12       with me.

13                    THE COURT:  I saw Mr. Aidala sneak in, in the back.

14       He thought he was below the radar but he wasn't.

15                    MR. AIDALA:  Sorry, your Honor.

16                    THE COURT:  Anything else, friends?

17                    MR. H. COOPER:  Nothing for the plaintiff.

18                    THE COURT:  Thank you, friends.  Good morning.

19                    (Adjourned)

20

21

22

23

24

25
```