## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

       Plaintiff/
       Counterclaim Defendant,

v.

ALAN DERSHOWITZ,

       Defendant/
       Counterclaim Plaintiff.

Civil Action No. 19-cv-03377-LAP

## ALAN DERSHOWITZ'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Howard M. Cooper
(MA BBO# 543842) (*pro hac vice*)
Christian G. Kiely
(MA BBO# 684308) (*pro hac vice*)
Kristine C. Oren
(MA BBO# 705730) (*pro hac vice*)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
ckiely@toddweld.com
koren@toddweld.com

Arthur L. Aidala
(S.D.N.Y. Bar No. ALA-0059)
Imran H. Ansari
(S.D.N.Y. Bar No. IHA-1978)
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
iansari@aidalalaw.com
aidalaesq@aidalalaw.com

Dated: January 24, 2020

# TABLE OF CONTENTS

Introduction ............................................................................................................... 1

Background ................................................................................................................ 1

Argument .................................................................................................................. 3

   I.      STANDARD OF REVIEW ............................................................................. 3

   II.     PLAINTIFF'S PROPOSED BATTERY CLAIM IS FUTILE. ...................................... 4

        A.    Plaintiff's Proposed Battery Claim Is Futile Because Plaintiff Failed to Plausibly Plead an Alleged Lack of Consent. ......................................................... 4

        B.    Plaintiff's Proposed Battery Claim Is Futile Because the Claims Revival Provision of the CVA Violates Dershowitz's Right to Due Process under the New York Constitution. ....................................................................... 9

        C.    Plaintiff's Proposed Battery Claim Is Futile Because the Statutory Provisions under Which She Seeks to Sue Are Unconstitutionally Void for Vagueness. ....... 13

   III.    PLAINTIFF'S PROPOSED CLAIM OF A VIOLATION OF THE WIRETAP ACT IS FUTILE. .......................................................................................... 15

        A.    Plaintiff's Proposed Claim Is Futile Because Plaintiff Lacks Standing under § 2520 to Allege a Wiretap Act Violation Where She Was Not a Party to the Recorded Conversations. ....................................................................... 15

        B.    Plaintiff's Proposed Claim Is Futile Because Plaintiff Fails to Adequately Allege that Dershowitz Recorded the Conversations for the Purpose of Committing a Criminal or Tortious Act. ....................................................................... 18

        C.    Plaintiff's Proposed Claim Is Futile Because It Is Barred by the Statute of Limitations. ......................................................................................... 23

   IV.    CONCLUSION .......................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Price*, 84 N.Y.3d 535 (1994) .................................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 4, 7

*Bakery Salvage Corp. v. City of Buffalo*, 573 N.Y.S.2d 788 (1991) ........................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 4

*By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956 (7th Cir. 1982) ........................ 19, 20

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010)............................................... 19, 20, 21

*Carpinelli v. City of Kingston*, 572 N.Y.S.2d 777 (1991) .......................................... 13

*Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) . 18, 19

*Desnick v. American Broadcasting Cos., Inc.*, 44 F.3d 1345 (7th Cir. 1995) .............. 19

*DirecTV, Inc. v. Wallace*, 347 F. Supp. 2d 559 (M.D. Tenn. 2004) ............................ 15

*Doe v. Hartford Roman Catholic Diocese Corp.*, 317 Conn. 357 (Conn. 2015)......... 11

*Fiore v. City of Detroit*, No. 19-10853, 2019 WL 3943055 (E.D. Mich. Aug. 21, 2019)........... 16

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................... 3

*Gallewski v. Hentz & Co.*, 301 N.Y. 164 (1950) ............................................. 11, 12, 13

*Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000)........................................................ 4

*Grayned v. City of Rockford,* 408 U.S. 104 (1972)...................................................... 14

*Hopkins v. Lincoln Trust Co.*, 233 N.Y. 213 (1922).................................................... 11

*Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487 (1989)................................................. 11,12

*In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001)............... 18, 19, 22

*In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621 (7th Cir. 2000) .......... 20

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466 (S.D.N.Y. 2014)........................................................................................... 11, 12

*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458 (2d Cir. 1994) ................ 3

*Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243 (2d Cir. 2002) ................................. 3

*Luis v. Zang*, No. 1:12-CV-629, 2018 WL 1724898 (S.D. Ohio Apr. 6, 2018) .................... 17, 18

*Matter of McCann v. Walsh Contrs. Co.*, 123 N.Y.S. 2d 509 (1953) ........................................... 12

*Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377 (2017) ........ 10

*Noel v. Hall*, 568 F.3d 743 (9th Cir. 2009) ............................................................................ 15, 17

*Noel v. Hall*, No. CIV. 99-649-AC, 2012 WL 3241858 (D. Or. Apr. 27, 2012) ........................ 17

*PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808 (D.N.J. 1993) ...................... 15

*People v. Bright*, 71 N.Y.2d 376 (1988) ......................................................................................... 13

*People v. Colon*, 66 N.Y.S.3d 654 (Sup Ct, Sep. 27, 2017) ......................................................... 6

*People v. Hatton*, No. 157, 23 N.Y.S.3d 113 (N.Y., Nov. 23, 2015) ............................................ 6

*People v. New York Trap Rock Corp.*, 57 N.Y.2d 371 (1982) ....................................................... 13

*People v. Parbhu*, 743 N.Y.S.2d 660 (N.Y. City Crim. Ct., Apr. 17, 2002) ................................ 6

*People v. White*, 906 N.Y.S.2d 782 (Sup Ct, Jan. 11, 2010) ......................................................... 6

*Robinson v. Robins Dry Dock & Repair Co.*, 238 N.Y. 271 (1924) .............................................. 11

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129 (2d Cir. 1993) ....................................................... 3

*Sheinbrot v. Pfeffer*, No. 93 CV 5343, 1995 WL 432608 (E.D.N.Y. 1995) ................................. 24

*Smoot v. United Transp. Union*, 246 F.3d 633 (6th Cir. 2001) .................................................... 16

*Stewart v. California Dep't of Educ.*, No. CIV 07CV0971JAH(CAB), 2008 WL 4478136 (S.D. Cal. Sept. 30, 2008) ................................................................................................................... 15, 16

*Turner v. Mun. Code Violations Bureau of City of Rochester*, 997 N.Y.S.2d 876 (2014) ........... 13

*United States v. Harriss,* 347 U.S. 612 (1954) .............................................................................. 13

*United States v. Jiau,* 734 F.3d 147 (2d Cir. 2013) ............................................................ 18, 19, 20

*United States v. Tarantino*, 617 F. App'x 62 (2d Cir. 2015) ....................................................... 18

*United States v. Tarantino*, No. 08-CR-0655 JS, 2012 WL 5430865 (E.D.N.Y. Nov. 7, 2012) ......................................................................................................................................... 18, 20

## Statutes and Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3

Fed. R. Civ. P. 15(a)(1)(B) ........................................................................................... 3

Fed. R. Civ. P. 15(a)(2) ................................................................................................ 3

114 Cong. Rec. 14694 (1968) ..................................................................................... 20

18 U.S.C. § 2520 ................................................................................... 2, 15, 16, 18, 23

18 U.S.C. § 2510(6) .................................................................................................... 16

18 U.S.C. § 2511(2)(d) .......................................................................................... 18, 19

N.Y. C.P.L.R. § 214 ................................................................................... 2, 5, 9, 10, 12

N.Y. Penal Law § 130 .................................................................................. 5, 6, 9, 13, 14

S. Rep. No. 90–1097, 1968 U.S.C.C.A.N. 2112 (1968) ............................................. 20

The Omnibus Crime Control and Safe Streets Act of 1968 ("Wiretap Act") ............................. 15

## Other Authorities

Sharon Churcher, *Prince Andrew and the 17-Year-Old Girl His Sex Offender Friend Flew to Britain to Meet Him*, DailyMail.com (Mar. 2, 2011), https://www.dailymail.co.uk/news/article-1361039/Prince-Andrew-girl-17-sex-offender-friend-flew-Britain-meet-him.html (emphasis added). ............................................................. 2

Connie Bruck, *Alan Dershowitz, Devil's Advocate*, The New Yorker (Aug. 5 & 12, 2019) , https://www.newyorker.com/magazine/2019/08/05/alan-dershowitz-devils-advocate. ..... 23, 24

*Restatement (Third) of Agency § 5.03* ......................................................................... 24

Virginia Roberts, The Billionaire's Playboy Club 112 (unpublish manuscript) ........................... 8

## **Introduction**

Alan Dershowitz ("Defendant" or "Dershowitz") respectfully submits this memorandum in opposition to Plaintiff Virginia Giuffre's ("Plaintiff" or "Giuffre") Motion for Leave to File an Amended Complaint ("Motion").  (ECF #99).  Giuffre's proposed additional claims for battery and wiretapping are futile.  First, Giuffre's battery claim fails as a matter of law because: (i) she fails to plausibly allege facts which, if believed, would be sufficient to establish that she did not consent to any alleged sexual conduct with Dershowitz which she falsely claims occurred and upon which she predicates her battery claim; (ii) the New York Child Victims Act violates due process under the New York Constitution; and (iii) the penal code provisions Giuffre relies on to allege her battery claim are unconstitutionally void for vagueness due to their failure to specify what circumstances indicate a lack of consent.  Second, Giuffre's federal wiretapping claim fails as a matter of law for multiple independent reasons including that: (i) she lacks standing to challenge the recording of a conversation to which she was not a party; (ii) she fails to adequately allege that Dershowitz made the at-issue recordings for the purpose of committing a criminal or tortious act; and (iii) the statute of limitations has expired.  Giuffre's Motion should be promptly denied.

## **Background**

On April 16, 2019, Giuffre filed her original Complaint in this matter against Dershowitz for defamation.  ("Complaint") (ECF #1).  Dershowitz filed a Motion to Dismiss the Complaint on June 25, 2019 (ECF #22), and the Court issued an Opinion and Order denying that motion on October 16, 2019 (ECF #67).  Dershowitz thereafter filed an Answer with Affirmative Defenses and Counterclaims on November 7, 2019.  (ECF #90).  Giuffre followed with a Motion for Leave to File an Amended Complaint on December 20, 2019, (ECF #99), seeking to add time-barred claims for sexual battery which she argues have been revived under the New York Child Victims

1

Act ("CVA"), N.Y. C.P.L.R. § 214-g, and a claim for a violation of the federal Wiretap Act, 18 U.S.C. § 2520, based on Dershowitz's recording of conversations with her lawyer, David Boies ("Boies").  She attached her proposed Amended Complaint ("Amended Complaint" or "AC") as an exhibit to her Motion.  (ECF #101-1).

Dershowitz is mindful of the Court's suggestion to wait until summary judgment to seek dismissal of Giuffre's proposed new claims.  However, where those claims now include the highly inflammatory but legally untenable suggestion that Dershowitz had nonconsensual sex with a woman he never met or that he should be subject to a legal claim for a properly-made recording by someone who did not even participate in the conversations, he is compelled to oppose Giuffre's Motion now.  Dershowitz, accordingly, requests that the Court deny Giuffre's Motion in its entirety.

Moreover, although not material to the instant motion, Dershowitz is further compelled to note that Giuffre's allegation that she was below the age of 18 when she claims to have had sex with Dershowitz is demonstrably false and is alleged without a good faith basis in fact by her own account, making her ineligible to bring a claim under the CVA.  Giuffre, who also claims to have had sex with Dershowitz in Florida where the age of consent is 18, has stated under oath that she cannot be certain whether or not she was below the age of consent at the time she claims (falsely) that she met Dershowitz.  Giuffre has consistently been unable to pinpoint the months or even years she claims she met Dershowitz.  In her 2011 interview with the *Daily Mail*, the account provided closest in time to the alleged incident, she stated that "[a]fter about *two* years, [Epstein] started to ask me to 'entertain' his friends."[1]  At the same time, she claimed she was as young as

---

[1] Sharon Churcher, *Prince Andrew and the 17-Year-Old Girl His Sex Offender Friend Flew to Britain to Meet Him*, DailyMail.com (Mar. 2, 2011), https://www.dailymail.co.uk/news/article-

14 years old when she first met Epstein.  She later swore under oath that she was 15 when she first made her accusations against Dershowitz in the Crime Victims' Rights Act ("CVRA") Action. She then swore under oath in the *Edwards v. Dershowitz* matter that she was about 16 when she first allegedly had sex with Dershowitz, which has been conclusively proven false.  In the *Giuffre v. Maxwell* matter, Giuffre admitted under oath, when confronted with her own employment records, that she did not even meet *Epstein* until she was 17 (or nearly 17).  Against this backdrop, Giuffre cannot credibly allege with any degree of certainty that she was under 18 at the time she falsely claims to have had sex with Dershowitz.

**Argument**

## I.    <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 15(a), Giuffre's right to amend her Complaint expired 21 days after the service of Dershowitz's Motion to Dismiss.  Fed. R. Civ. P. 15(a)(1)(B). She therefore must seek leave of this Court to amend.  Fed. R. Civ. P. 15(a)(2).  Although leave to amend should be freely given when justice so requires, "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam).  When a proposed amendment would be futile, as it would be in this case, it is appropriate for a court to deny leave to amend.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).  An amendment may also be futile if the proposed claim is barred by the statute of limitations.

---

1361039/Prince-Andrew-girl-17-sex-offender-friend-flew-Britain-meet-him.html (emphasis added).

*Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000).

*Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal* mandate the minimum pleading standard to state a claim in a complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). While a complaint "does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, alterations, and internal quotation marks omitted). As *Iqbal* explains, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## II.   PLAINTIFF'S PROPOSED BATTERY CLAIM IS FUTILE.

### A.   Plaintiff's Proposed Battery Claim Is Futile Because Plaintiff Failed to Plausibly Plead an Alleged Lack of Consent.

Giuffre seeks to add a claim against Dershowitz for sexual battery under the New York Child Victims Act ("CVA"), which temporarily revives otherwise time-barred tort claims based on sex offenses committed in violation of Article 130 of the New York Penal Law against persons

who were under the age of 18.  N.Y. C.P.L.R. § 214-g.

Although the relevant age for purposes of invoking the revival provision of the CVA is *eighteen, id.* § 214-g, the age of consent in New York is *seventeen*.  N.Y. Penal Law § 130.05(3)(a).  Therefore, a plaintiff like Giuffre who claims she was between the ages of seventeen and eighteen at the time of the alleged offense must plead and prove an actual lack of consent – rather than a legal incapacity to consent based on age – in order to state a claim under the CVA.

Giuffre's Motion should be denied because she has not and cannot adequately plead an actual lack of consent.  For years, Giuffre consistently described her alleged encounters with Dershowitz as involving what was essentially underaged prostitution, with Giuffre herself initiating the alleged sexual contact under the guise of providing a "massage" for which she was paid.  Now that her employment records conclusively prove that her original claim that she was underage was false, she has conveniently recast her encounters with Dershowitz as non-consensual based on an actual lack of consent rather than a legal incapacity to consent based on age, in order to make a claim under the CVA.  But her theory of lack of consent, which relies not on her own expression of lack of consent, but rather on Dershowitz's alleged knowledge that Giuffre was being "trafficked" by Jeffrey Epstein, fails as a matter of law.

Giuffre claims that Dershowitz's alleged offenses against her constituted either third degree sexual abuse in violation of New York Penal Law § 130.55, or forcible touching in violation of New York Penal Law § 130.52.[2]  AC ¶ 115.  "Whether or not specifically stated, it is an element

---

[2] In order to state a claim for sexual abuse in the third degree under N.Y. Penal Law § 130.55, Giuffre must state that Dershowitz (1) subjected Giuffre to sexual contact (2) without Giuffre's consent.  N.Y. Penal Law § 130.55.  In order to state a claim for forcible touching under N.Y. Penal Law § 130.52, Giuffre must allege that Dershowitz (1) intentionally, and for no legitimate purpose (2) forcibly touched (3) the sexual or other intimate parts (4) of Giuffre (5) for the purpose of degrading or abusing her, or for the purpose of gratifying his sexual desire, and (6) the sexual act was committed without her consent.  N.Y. Penal Law §§ 130.52, 130.05.

of every offense defined in [Article 130] that the sexual act was committed without consent of the victim." N.Y. Penal Law § 130.05.1. For most sex offenses contained in Article 130, lack of consent must be proven by forcible compulsion or incapacity to consent. *Id.* § 130.05.2. However, for the two offenses selected by Giuffre — two of the least serious sex offenses under New York law — lack of consent may be proven by surrounding "circumstances . . . in which the victim does not expressly or impliedly acquiesce in the actor's conduct." *Id.* § 130.05.2(c). Giuffre invokes this statutory language to allege a lack of consent. AC ¶ 115.

The "surrounding circumstances" standard, by its plain language, requires that there be notice to the defendant that the complainant does not acquiesce in the defendant's conduct. N.Y. Penal Law § 130.05.2(c). It is *not* an "affirmative consent" standard under which the onus is on the defendant to affirmatively seek and obtain consent. While there is very limited case law applying this "surrounding circumstances" standard, it appears that violations of § 130.55 and § 130.52 are most frequently charged in public groping cases in which there is no meaningful opportunity for the victim to object to the contact and/or no testimony from the victim regarding lack of consent. *See, e.g.*, *People v. Parbhu*, 743 N.Y.S.2d 660 (N.Y. City Crim. Ct., Apr. 17, 2002); *People v. Hatton*, No. 157, 23 N.Y.S.3d 113, 117 (N.Y., Nov. 23, 2015); *People v. White*, 906 N.Y.S.2d 782 (Sup Ct, Jan. 11, 2010); *People v. Colon*, 66 N.Y.S.3d 654 (Sup Ct, Sep. 27, 2017). In these cases, lack of consent can plausibly be inferred from allegations that a defendant groped a stranger in public, which is a presumptively nonconsensual act.

Here, the battery count is futile because Giuffre fails to allege facts or offer anything other than conclusory allegations, which are insufficient to establish that she did not "expressly or impliedly acquiesce" in the alleged sexual conduct. The proposed amendment therefore fails to satisfy the *Twombly/Iqbal* standard and therefore would not survive a motion to dismiss.

Giuffre's allegations in her Amended Complaint concerning the alleged sexual battery are limited to the following:

- "During the time period that Plaintiff was being trafficked by Epstein, she was forced to have sex with Defendant.  Plaintiff was forced to engage in sexual acts with Defendant in various locations."  AC ¶ 36.

- "On one such occasion, in late 2000 or early 2001, Defendant sexually assaulted Plaintiff at Epstein's mansion located at 9 East 71st Street, New York, New York 10021."  AC ¶ 37.[3]

- "At the time of the incident, Plaintiff was under the age of 18.  Epstein had taken her from her home, family, and friends in Palm Beach, Florida, and flown her to New York, New York, where he repeatedly sexually abused her.  In the weeks immediately prior to the incident, Defendant had met Plaintiff in circumstances that would have put a reasonable person on notice that she was being sexually trafficked."  AC ¶ 38.

- "As Defendant knew, Plaintiff did not consent to the sexual intercourse but rather was under the coercive influence of Epstein and/or his co-conspirators."  AC ¶ 40.

Each of these statements asserts a legal conclusion that Giuffre did not consent to sexual contact, but both alone and together they fail to provide any factual basis for asserting the conclusion.  For example, in paragraph 38, Giuffre asserts in conclusory fashion that there were "circumstances" which she claims "would have put a reasonable person on notice that she was being sexually trafficked."  AC ¶ 38.  *Nowhere, however, does she allege factually what those circumstances were or how they apply to anything having to do with Dershowitz.*  Nor does she allege that Dershowitz had actual knowledge that she was secretly withholding consent while initiating the alleged sex.  Each of her legal conclusions must be discounted for purposes of determining whether Giuffre stated a claim.  *Iqbal*, 556 U.S. at 679.

---

[3] When previously asked under oath to provide years, seasons, or months of alleged sexual encounters, Giuffre was unable to do so.  Giuffre's memory about dates certainly has not improved with the passage of time.

Nowhere in her proposed Amended Complaint does Giuffre actually allege *facts* describing circumstances indicating that she did not "expressly or impliedly acquiesce" in her claimed sexual encounters with Dershowitz.  For example, Giuffre fails to allege that she herself in any way indicated to Dershowitz that she was not a willing participant in the alleged encounters she claims took place, despite a clear opportunity to do so.  She fails to allege that Dershowitz observed her engaged in other non-consensual sex, or that the conditions in which he is alleged to have observed her would have suggested she was an unwilling participant because she said or did something to so indicate such a state.  The only "fact" that Giuffre alleges with respect to her claimed observable lack of consent is that: "Defendant entered Epstein's bedroom immediately after one incident of abuse by Epstein, while Plaintiff was alone and unclothed.  Without obtaining her consent to the contact, he proceeded to engage in sexual intercourse with her."[4]  AC ¶ 39.  From this, Giuffre asserts that Dershowitz was "on notice" that she was being "trafficked" by Epstein and therefore did not consent to sex with Dershowitz.  Even if true (and it is not), the allegation that Dershowitz

---

[4] In her unpublished manuscript, she describes the alleged event quite differently:

> After an explicit session of Jeffrey's vulgar pilgrimage into my body, we were interrupted by a knock at the door by Jeffrey's good friend, Alan.  I wrapped myself up in Jeffery's pink bed sheets . . . and covered my face from the unexpected intrusion.  Jeffrey got up and wrapped a towel around his loins and answered the door completely calm.  Opening the bedroom door and letting Alan inside they began to converse about business immediately, right in front of me.  Jeffrey started to tell Alan what needed to be done while he jostled some notes down quickly.  I peeked my head from underneath the covers thinking they were too wrapped up in their work to notice me get up and dressed, and Jeffery turned back to me and told me to just stay there this would only take a second.  Going back to Alan he turned his focus back into work and hustled out a few more orders before letting Alan out of the door and returning his attention to me.

Virginia Roberts, The Billionaire's Playboy Club 112 (unpublish manuscript) (Def.'s Mot. Summ. J. Ex. KK, *Giuffre v. Maxwell* (Case No. 18-2868) (ECF# 278)).  Moreover, she places this incident at a time when she was nearly 19 years old.  *Id.* at 115.

observed Giuffre "alone and unclothed" in "Epstein's bedroom" is not probative of whether her presence in the bedroom was voluntary or involuntary.  Indeed, the allegation itself concedes that Dershowitz is alleged to have entered the bedroom only "after" the alleged abuse by Epstein and further admits that there were no tell-tale signs of anything other than consensual sex with a person above the age of consent.  Even assuming, as the Court must, all reasonable inferences that could be made in Giuffre's favor here, without more, this allegation provides no basis to infer that from this Dershowitz should have known she was being involuntarily trafficked by Epstein (presumably to others) and that Dershowitz was on notice that she did not consent to any contact.[5]

Simply put, Giuffre fails to plead a single factual allegation demonstrating "circumstances . . . in which [she did] not expressly or impliedly acquiesce" in the alleged sexual interactions with Dershowitz.  N.Y. Penal Law § 130.05.2(c).   On her own allegations, Giuffre had the opportunity to indicate a lack of consent to Dershowitz but did not do so, thereby at a minimum "impliedly acquiesc[ing]" in the conduct.  *Id.*  Without this necessary element, Giuffre fails to state a claim for the two offenses under the battery count.  The proposed battery count would be dismissed as futile, and thus should be excluded from the proposed Amended Complaint.

### B.    Plaintiff's Proposed Battery Claim Is Futile Because the Claims Revival Provision of the CVA Violates Dershowitz's Right to Due Process under the New York Constitution.

The battery count is also futile because the claims revival provision of the CVA, N.Y. C.P.L.R. § 214-g, violates Dershowitz's due process rights under the New York Constitution.

---

[5] Moreover, if this standard were adopted, then any person who she claims had sex with her — including George Mitchell, Leslie Wexner, Bill Richardson, Marvin Minsky, Prince Andrew, Ehud Barak and others — committed sexual assault against her, even if she initiated the sex.  The legislature could not have intended this expansive application of the law, and it would be unconstitutionally vague if so interpreted.

Passed on February 14, 2019 and taking effect on August 14, 2019, the CVA purports to revive for a one-year period previously time-barred tort claims which are based on conduct constituting one or more of the enumerated sex offenses under New York Penal Law Article 130, committed against a person under the age of eighteen.  N.Y. C.P.L.R. § 214-g.[6]  This retroactive revival of claims which Giuffre had every ability to assert against Dershowitz within the applicable three-year statute of limitations for tort claims is contrary to established New York law which recognizes that the due process clause of the New York Constitution permits the revival of previously time-barred claims only in exceptional circumstances not present here.

In contrast to the due process clause of the United States Constitution, which federal courts have held is generally not offended by claim revival statutes, *see Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig*., 30 N.Y.3d 377, 394 (2017) ("Claim-revival statutes generally pose no issue under the Fourteenth Amendment to the United States Constitution[.]"), the parallel provision of the New York Constitution has been interpreted to impose more "stringent" standards

---

[6] The statute provides in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age . . . or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section. . . .

N.Y. C.P.L.R. § 214-g.

on legislative efforts to revive previously time-barred claims.  *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 514 (1989).  "Statutes of limitations serve important policies in New York, such as 'fairness to defendant and society's interest in adjudication of viable claims not subject to the vagaries of time and memory.'"  *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466, 473 (S.D.N.Y. 2014) (quoting *Ackerman v. Price*, 84 N.Y.3d 535, 542 (1994)), *vacated on other grounds*, 892 F.3d 108 (2d Cir. 2018).  "For this reason, the New York Court of Appeals has described so-called 'revival statutes' as an 'extreme exercise of legislative power,'" and upheld them only in limited circumstances."  *Id.* (quoting *Hopkins v. Lincoln Trust Co.*, 233 N.Y. 213, 215 (1922) (Cardozo, J.)).

Although the New York Court of Appeals has upheld other claim revival statutes, it has done so only in circumstances "*wherein the plaintiff could not have brought an action in a timely manner.*"  *Doe v. Hartford Roman Catholic Diocese Corp.*, 317 Conn. 357, 433 n.58 (Conn. 2015) (applying New York law) (emphasis added).  In *Robinson v. Robins Dry Dock & Repair Co.*, 238 N.Y. 271, 279 (1924), the Court of Appeals upheld a statute reviving time-barred wrongful death claims in the case of a widow who had previously been receiving workers' compensation benefits, which had been her exclusive recourse against the defendants for causing her husband's death until the New York workers' compensation statute was ruled unconstitutional and her benefits terminated.  Next, in *Gallewski v. Hentz & Co.*, 301 N.Y. 164 (1950), the Court of Appeals upheld a statute which revived claims belonging to citizens of German-occupied countries during World War II, on the grounds that the German occupation had "resulted in a complete disruption of communication," and residents of German-occupied countries suffered from "a practical and total inability to commence actions in the courts."  *Id.* at 175.  Accordingly, as in *Robinson*, revival complied with "elementary notions of justice and fairness."  *Id.*  The Court of Appeals has likewise

11

upheld revival statutes applicable in cases involving latent injuries caused by exposure to toxins, "where plaintiffs had no way to discover their injuries within the time period for commencing an action." *In re World Trade Ctr.*, 66 F. Supp. 3d at 474 (citing *Matter of McCann v. Walsh Contrs. Co.*, 123 N.Y.S. 2d 509 (1953); *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487 (1989)).

Applying these precedents, Judge Hellerstein struck down as unconstitutional "Jimmy Nolan's Law," which revived certain time-barred claims for personal injuries suffered by Ground Zero recovery workers resulting from exposure to toxic dust. *In re World Trade Ctr.*, 66 F. Supp. 3d at 475-76. That statute did not fit within the precedents discussed above because the plaintiffs in that case were able to avail themselves of the discovery rule, N.Y. C.P.L.R. § 214-c, under which a claim does not accrue until a plaintiff discovers his condition, even if the exposure which caused the injury occurred years earlier.[7] *In re World Trade Ctr.*, 66 F. Supp. 3d at 475. There was therefore no "practical and total inability to commence [an] action" which had supported the constitutionality of the revival statutes previously considered by the Court of Appeals. *Id.* (quoting *Gallewski,* 301 N.Y. at 175). On this basis, the court concluded that notwithstanding the obvious sympathies at play, the "'exceptional' circumstances or 'serious injustice' that the New York Court of Appeals has required for nearly 100 years is simply not present here" and Jimmy Nolan's Law accordingly did "not fall within the narrow exception for revival statutes," rendering it unconstitutional under the due process clause of the New York Constitution. *Id.* (quoting *Gallewski,* 301 N.Y. at 174).

Here, the CVA is unconstitutional as applied to Giuffre's sexual battery claim against Dershowitz because *nothing* prevented her from commencing an action against Dershowitz within

---

[7] The "discovery rule" applicable in toxic torts, N.Y. C.P.L.R. § 214-c, was not enacted until 1993 and thus was not available to the plaintiffs in *McCann* and *Hymowitz*.

the statute of limitations, apart from the fact that she did not invent her accusations against Dershowitz until long after the statute of limitations had expired.   Giuffre therefore has not and cannot allege a "practical and total inability to commence [an] action" within the applicable limitations period.  *Gallewski,* 301 N.Y. at 175.  The proposed sexual battery claim is futile for this reason and Giuffre's motion to amend her Complaint to add this claim should be denied.

C.   **Plaintiff's Proposed Battery Claim Is Futile Because the Statutory Provisions under Which She Seeks to Sue Are Unconstitutionally Void for Vagueness.**

Finally, the battery count is futile because the section of New York Penal Law 130.05.2(c) which defines consent with reference to surrounding "circumstances . . . in which the victim does not expressly or impliedly acquiesce in the actor's conduct" is void for vagueness.  A constitutional statute must be "informative on its face . . . to assure that citizens can conform their conduct to the dictates of the law."  *People v. New York Trap Rock Corp.*, 57 N.Y.2d 371, 378 (1982) (internal quotations and citations omitted).  In order to withstand a challenge for unconstitutional vagueness, a statute must satisfy a two-part test.  First, it "must provide sufficient notice of what conduct is prohibited."  *People v. Bright*, 71 N.Y.2d 376, 382 (1988) (citations omitted); *Turner v. Mun. Code Violations Bureau of City of Rochester*, 997 N.Y.S.2d 876, 877 (2014).   Adequate notice is provided when a "person of ordinary intelligence [has] fair notice that his contemplated conduct is forbidden by the statute."  *Bright*, 71 N.Y.2d at 382–83 (quoting *United States v. Harriss,* 347 U.S. 612, 617 (1954)) (citations omitted).   Second, the statute "must not be written in such a manner as to permit or encourage arbitrary and discriminatory enforcement."  *Id.* at 382 (citations omitted); *Turner*, 997 N.Y.S.2d at 877; *see, e.g.*, *Bakery Salvage Corp. v. City of Buffalo*, 573 N.Y.S.2d 788, 790 (1991).  This prong requires "explicit standards for those who apply it in order to avoid 'resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'"  *Carpinelli v. City of Kingston*, 572 N.Y.S.2d 777, 779 (1991)

(quoting *Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972)) (citations omitted).

In this case, Giuffre seeks to sue under a statute that allows lack of consent to be proven by surrounding "circumstances . . . in which the victim does not expressly or impliedly acquiesce in the actor's conduct." N.Y. Penal Law § 130.05.2(c). The statute is unconstitutionally void for vagueness as applied to the allegations in the proposed Amended Complaint because it fails to provide adequate notice to a person of ordinary intelligence of what constitutes sufficient circumstances indicating a lack of consent. Does the lack of consent depend on where the incident occurs, the timing of events leading up to the incident, or the actions or words of third parties like Epstein? Furthermore, must the defendant be aware of these circumstances, and if so, what set of circumstances is sufficient to put him on notice? Can a lack of consent be inferred from surrounding circumstances even where the alleged victim objectively manifests consent during the encounter? Such a broad statute fails to provide adequate notice to a defendant of what constitutes sufficient "circumstances" indicating a lack of consent and would effectively make any "john" paying a prostitute for sex guilty of rape if the prostitute is alleged to have been "trafficked" (some argue that *all* prostitutes are, by definition, trafficked). It would also be applying a new concept — consensual sex with a trafficked woman is involuntary — retroactively to alleged conduct (apparently-consensual sex with an adult) that no one imagined was criminal when it occurred.

Furthermore, this kind of broad language leads to arbitrary enforcement, failing the second prong of the void-for-vagueness test. Because the statute does not define what is sufficient to qualify as notice to a defendant, anyone seeking to enforce the statute has unfettered discretion to paint their own picture, highlighting circumstances that were subjectively sufficient to show a lack of notice, leading to arbitrary enforcement based on who the plaintiff chooses to target. Because such language makes the statutory provisions under which Giuffre seeks to sue unconstitutionally

14

void, Plaintiff's proposed claim would fail on a motion to dismiss, rendering her claim futile.

## III.   PLAINTIFF'S PROPOSED CLAIM OF A VIOLATION OF THE WIRETAP ACT IS FUTILE.

### A.   Plaintiff's Proposed Claim Is Futile Because Plaintiff Lacks Standing under § 2520 to Allege a Wiretap Act Violation Where She Was Not a Party to the Recorded Conversations.

Giuffre's proposed Amended Complaint concedes, as it must, that she was not a party to the conversations which she alleges Dershowitz unlawfully recorded.  Instead, Dershowitz and David Boies ("Boies") were the only two participants to the conversations.  As a matter of law, Giuffre lacks standing to challenge a wiretapped conversation when she did not participate in the conversation.  Her lack of standing renders the Wiretap Act claim futile.

Plaintiff seeks recovery based on a section of Title III of The Omnibus Crime Control and Safe Streets Act of 1968 ("Wiretap Act") that provides a civil cause of action to private parties:

> [A]ny *person whose* wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a) (emphasis added).  Section 2520 provides a cause of action to a person who was a party to a communication. *Noel v. Hall*, 568 F.3d 743, 748 (9th Cir. 2009) ("The district court interpreted [Section 2520] to require plaintiffs to have been party to the communication in order to have standing to bring a claim.");  *Stewart v. California Dep't of Educ.*, No. CIV 07CV0971JAH(CAB), 2008 WL 4478136, at *8 (S.D. Cal. Sept. 30, 2008) ("The wiretapping statutes noted by Defendants allow . . . the speaker a right of action."); *see also DirecTV, Inc. v. Wallace*, 347 F. Supp. 2d 559, 565 (M.D. Tenn. 2004); *cf. PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 815 (D.N.J. 1993).  In contrast, a person who did not participate in a conversation does not have standing to challenge that communication.

In her proposed Amended Complaint, Giuffre makes a claim under the Wiretap Act for the recording of conversations between Dershowitz and Boies. AC ¶ 119. She justifies her standing with one case, *Smoot v. United Transp. Union*, 246 F.3d 633 (6th Cir. 2001). Pl.'s Mem. Supp. Mot. for Leave to File Am. Compl. 4 (ECF# 100). Giuffre misstates the applicability of *Smoot* here. *Smoot* relies on a doctrine that allows corporations and other entities to protect themselves from violations of the Wiretap Act. *Smoot* explains that the Wiretap Act intended to provide relief to "any person whose wire, oral, or electronic communication is intercepted." *Smoot*, 246 F. 3d at 639 (quoting 18 U.S.C. § 2520). The Wiretap Act must have intended to allow entities like corporations and associations to avail themselves of its legal protections, because it defines "person" to include an association or corporation. *Id.* at 639 (quoting 18 U.S.C. § 2510(6)). The court found that an entity whose representative participated in an intercepted conversation had a possessory interest in the conversation sufficient for standing under Section 2520. *Id.* at 640. Otherwise, entities would have no way to avail themselves of the Wiretap Act's protections despite the express statutory language defining them as "persons" under the Act. *Id.* at 639-40 ("However, if CSX does not have a possessory interest in the confidential statements made by its Senior Director of Employee Relations, acting as the designated representative for CSX . . . then it is difficult to conceive of a corporation or association ever having standing under the Act.").

*Smoot's* "possessory interest" doctrine is limited to providing standing to entities. *Fiore v. City of Detroit*, No. 19-10853, 2019 WL 3943055, at *3 (E.D. Mich. Aug. 21, 2019) ("The statute also covers corporations. . . . They can sue under § 2520 if they have a 'possessory interest in the [intercepted] communication.'") (citing *Smoot*, 246 F.3d at 640) (quotations and internal citation omitted); *see Stewart*, 2008 WL 4478136, at *8 (anticipatorily denying standing of plaintiff to sue under federal Wiretap Act for alleged unlawful recordings of his parent, despite the fact that the

16

parent may have been acting as an agent on his behalf during such recordings).  The doctrine does

not provide standing to an individual who was not a party to the intercepted communication.  In

*Noel v. Hall*, the plaintiff attempted to assert a violation of the Wiretap Act for conversations of

which he was not a party, claiming he had a possessory interest in those conversations.  The district

court, in summarizing the Ninth Circuit's reaction to the plaintiff's attempt to use *Smoot's*

"possessory interest" doctrine, cautioned that "*standing based on a 'possessory interest' was*

*created with corporations and other legal entities in mind, not individuals.*"  *Noel v. Hall*, No.

CIV. 99-649-AC, 2012 WL 3241858 at *6 (D. Or. Apr. 27, 2012) (emphasis added), *report and*

*recommendation adopted*, No. 3:99-CV-649-AC, 2012 WL 3241814 (D. Or. Aug. 7, 2012), *aff'd*,

525 F. App'x 633 (9th Cir. 2013) (summary order) (citing *Noel v. Hall*, 568 F.3d 743, 748 (9th

Cir. 2009)).  The Ninth Circuit had ruled on other grounds, but the district court repeated its

reasoning when Noel later attempted to assert standing again.  *Noel*, 2012 WL 3241858 at *7

("Although the Ninth Circuit declined to explicitly rule on this issue, it indicated that it was not

persuaded that an individual's possessory interest was sufficient to cure a standing issue.").

Giuffre attempts to use *Smoot*, a doctrine providing protection to entities, as an individual

to obtain standing to challenge the recordings of conversations of which she was not a party.  AC

¶ 119.  This is an inappropriate attempt to extend *Smoot*.  Giuffre is not an entity.  Unlike an entity,

Giuffre can speak for herself without the use of a representative.  She need not rely on the

communications of her agent, Boies, in order to receive the protections of the Wiretap Act for

conversations to which she was actually a party.[8]  Without standing, a wiretapping claim would

---

[8] Further support for this concept is provided in *Luis v. Zang*.  In that case, the plaintiff lacked
standing, even though he was a party to the intercepted conversations, because "[t]he possessive
adjective 'whose,' which modifies 'communication,' implies ownership, or at least possession or
control." No. 1:12-CV-629, 2018 WL 1724898 at *3 (S.D. Ohio Apr. 6, 2018) (ruling on other
grounds).  The plaintiff, having *sent* emails that were subsequently intercepted, no longer

fail on a motion to dismiss and is therefore futile to include in the Amended Complaint.

**B.      Plaintiff's Proposed Claim Is Futile Because Plaintiff Fails to Adequately Allege that Dershowitz Recorded the Conversations for the Purpose of Committing a Criminal or Tortious Act.**

Even if Giuffre has standing to challenge the recordings, her inability to plead a violation of the Wiretap Act renders the proposed amendment improper and futile.

Conversations recorded with the consent of one party to the communication are legal under the federal Wiretap Act.  18 U.S.C. § 2511(2)(d).  A narrow exception to this rule is triggered when a party to the conversation intercepts a communication "for the *purpose* of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State*." Id.* (emphasis added).  Such a purpose — if proved — would make the interception illegal.

In the Second Circuit, this "criminal or tortious act" exception is "construed narrowly." *United States v. Jiau,* 734 F.3d 147, 152 (2d Cir. 2013); *Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *3 (S.D.N.Y. 2018).  "To show an intercept violated Title III, [a claimant] must show by a preponderance of the evidence 'either (1) that the *primary motivation*, or (2) that a *determinative factor* in [the defendant's] motivation for intercepting the conversation was to commit a criminal [or] tortious act.'" *United States v. Tarantino*, No. 08-CR-0655 JS, 2012 WL 5430865, at *10 (E.D.N.Y. 2012), *aff'd*, 617 F. App'x 62 (2d Cir. 2015) (summary order) (quoting *In re DoubleClick, Inc. Privacy Litig.*, 154 F.Supp.2d 497, 514–15 (S.D.N.Y. 2001) (emphasis added)); *United States v. Tarantino*, 617 F. App'x 62, 65 (2d Cir. 2015) (summary

---

possessed or controlled his messages after they were sent; as such he would not have standing to allege a wiretap claim under Section 2520 for a subsequent interception of his messages.  *Id.*  As *Luis* demonstrates, Giuffre was not a party to the conversations between Boies and Dershowitz and cannot claim a legal interest in them.  *Id.*  Not only did she not participate in the conversations, but also she clearly could not control the harmful admissions made by Boies during the conversations, nor would she be likely to assert ownership of his words.

order) ("Although Gargiulo later used the recording for blackmail, it is far from clear that blackmail was his 'primary motivation' or 'a determinative factor' at the time he made the recording." (citations omitted)); *Cohen*, 2018 WL 3392877, at *4 (granting motions to dismiss because plaintiff "fail[ed] to allege that Defendants' primary motivation at the time of the alleged interception was to commit a tort"); *see also Jiau*, 734 F.3d at 152.

"[W]hether a tort was committed is irrelevant—the test is whether Defendants *intended* to commit a tort." *Cohen*, 2018 WL 3392877, at *4 (emphasis in original) (citing *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. at 516 ("Courts applying § 2511(2)(d) have consistently ruled that a plaintiff cannot establish that a defendant acted with a 'criminal or tortious' purpose simply by proving that the defendant committed any tort or crime."); *see e.g.*, *Desnick v. American Broadcasting Cos., Inc.,* 44 F.3d 1345, 1353-54 (7th Cir. 1995) (affirming dismissal of wiretapping claim based on an inability to allege a criminal or tortious purpose where the parties originally recorded physicians' practices in order to gather information for a television segment, but subsequently may have used the tape for defamation); *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) (affirming dismissal of wiretapping counterclaim even though it was "conceivable" that the recording party would have used the tape for blackmail and that "this was his real purpose in making the recording," because "no evidence of such an intent was presented" by the opposing party) (interpreting older, broader version of exception in § 2511(2)(d)).

Furthermore, even if a person does have a sufficient tortious or criminal *offensive* motivation for making the recording itself, he still must have this motivation *at the time of interception*. *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010) ("If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there

is no violation."); *Jiau*, 734 F.3d at 152.

Finally, legislative history demonstrates that Congress enacted the "criminal or tortious act" exception to protect against offensive, as opposed to defensive, wiretapping. Originally, the purpose of the one-party consent rule was to protect "private persons who act in a defensive fashion." *Caro*, 618 F.3d at 99 (quoting 114 Cong. Rec. 14694 (1968)) ("[A] party to a criminal conversation that recorded the conversation in order to bring evidence to the police or recording 'out of a legitimate desire to protect himself and his own conversations from later distortions or other unlawful or injurious uses by the other party' would be protected under the statute. [114 Cong. Rec. 14694 (1968).]"). In contrast, Congress enacted the "criminal or tortious act" exception to the one-party consent rule in order to prevent harmful recordings from being used offensively against other parties to a communication, such as for blackmail, stealing business secrets, threatening the party or publicly embarrassing them. *Id.* at 99 (citing S. Rep. No. 90–1097, 1968 U.S.C.C.A.N. 2112, at 2236 (1968); 114 Cong. Rec. 14694 (1968)).

In keeping with legislative history, courts have found that recordings for defensive purposes are permissible. *By-Prod Corp.*, 668 F.2d at 959 ("A desire to make an accurate record of a conversation to which you are a party is a lawful purpose under the statute even if you want to use the recording in evidence.") (citation omitted); *see, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 626 (7th Cir. 2000) (finding that the exception under Section 2511(2)(d) did not apply to a recording party whose "motive in making the recordings may have been criminal or tortious (or more likely both)" (to elude detection of fraud) because his intended use or "purpose of gathering evidence of a violation of law is not criminal or tortious"); *Tarantino*, 2012 WL 5430865 at *9.

In this case, Dershowitz was a party to the recorded conversations between himself and

Boies and provided the necessary consent to each recording, making each recording legal.  Giuffre attempts to plead the "criminal or tortious act" exception.  AC ¶ 124.  To properly allege this exception, she must allege that (1) his primary motivation or a determinative factor in his motivation for making the recording was to use the recording offensively to commit a crime or tort against Boies, and (2) he had this motivation at the time he recorded the conversations.[9]

Giuffre fails to so allege.  In her proposed Amended Complaint, Giuffre makes the following allegations pertaining to the circumstances under which Dershowitz recorded his conversations with Boies:

- Defendant, in violation of the canons of ethics and in at least one case in violation of federal and state law, surreptitiously tape-recorded confidential settlement negotiations in which he had engaged with Plaintiff's lawyer, David Boies.  AC ¶ 76.

- In 2015, Defendant surreptitiously taped one or more telephone calls and/or in-person meetings between himself and Boies.  AC ¶ 119.

- In violation of 18 U.S.C. § 2511(1)(a), Defendant intentionally intercepted or endeavored to intercept Plaintiff's wire, oral, or electronic communications by recording telephone calls between himself and Plaintiff's agent, Boies.  AC ¶ 121.

- Plaintiff's communications were intercepted for the purpose of committing the criminal act of perjury or a tortious act of defamation in violation of the laws of the United States and of New York.  AC ¶ 124.

None of these allegations state that Dershowitz's primary motivation at the time of the recordings was to use the recordings offensively to defame Giuffre, or even more incredulous, to perjure himself.  *See Caro*, 618 F.3d at 98 ("Caro's assertion that he would plead a tortious intent is simply a recitation of the missing element in his claim—an exercise insufficient to rescue the

---

[9] There can be no good faith claim that Dershowitz recorded the conversations with a deliberate purpose to commit a crime or tort.  The low quality of the recordings proves that Dershowitz did not plan to use them in the media or in any offensive way.

complaint from its deficiencies.") (affirming dismissal); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 518-19 (S.D.N.Y. 2001) ("In the instant case, plaintiffs clearly allege that DoubleClick has committed a number of torts.  However, nowhere have they alleged that DoubleClick's 'primary motivation' or a 'determining factor' in its actions has been to injure plaintiffs tortiously.") (dismissing Wiretap Act claim).

Assuming all of Giuffre's allegations are true, Giuffre has not and cannot allege that Dershowitz recorded conversations with Boies — conversations which need to be enhanced to even be heard — with the purpose of using the recordings to defame Giuffre.  After all, he could not predict what Boies was going to say during their meetings, and therefore had no reason to make a recording with the intention of using it to defame Giuffre.

Moreover, Giuffre's allegations do not provide any factual basis to infer that Dershowitz had a tortious or criminal purpose *at the time he recorded the conversations*.  Dershowitz could have decided — but did not — to use the recordings for tortious or criminal purposes sometime *after* he made the recordings.

In reality, Dershowitz's primary motivation for recording the conversations with Boies was to defend himself against false allegations – the very use contemplated by the addition of the one-party consent exception to the Wiretap Act.  Under attack by Giuffre's deluge of defamatory statements and facing the tremendous uphill battle of proving a negative (that he never met Giuffre), Dershowitz recorded these conversations to use as exculpatory evidence in his own defense.  He turned out to be right, as the statements of Boies were exculpatory.  Notably, Boies himself acknowledged that he thought Dershowitz's intentions in recording one of the calls was

for the purpose of gathering evidence.[10]  The fact that Dershowitz offered these recordings to both state and federal law enforcement establishes that he did not make them for criminal or tortious purposes, but instead to defend himself.

Of course, because the statements Dershowitz subsequently made on the basis of these recordings are true, Defendant committed neither perjury nor defamation, nor did he intend to.

As an additional indication of Dershowitz's mindset during these recordings, Dershowitz did not announce the contents of these tapes to the public for months or even years after the conversations, although Boies suspected the recordings existed at the time they were made.  Given Giuffre's allegations that he recorded Boies' conversations with the intention of defaming her (or puzzlingly, perjuring himself), she has provided no explanation as to why he waited to announce the recordings to the public.  Instead, his delay fits Dershowitz's true intentions – he made the recordings to accurately reflect a potentially exculpatory conversation and disclosed them publicly only when Giuffre's false allegations against him became so horrifying that he needed to strengthen his defense.

Because Giuffre has not and cannot adequately plead that Dershowitz recorded his conversations with Boies for a criminal or tortious purpose, she fails to state a claim for illegal wiretapping, rendering futile its inclusion in the proposed Amended Complaint.

C. **Plaintiff's Proposed Claim Is Futile Because It Is Barred by the Statute of Limitations.**

Section 2520(e) of the Wiretap Act states that a "civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

---

[10] Connie Bruck, *Alan Dershowitz, Devil's Advocate*, The New Yorker (Aug. 5 & 12, 2019), https://www.newyorker.com/magazine/2019/08/05/alan-dershowitz-devils-advocate.

Giuffre was on notice of the alleged violation back in 2015, the same year the interceptions occurred, because Boies admitted to the media that he suspected he was being recorded at the time the recordings were made.[11]  Boies' suspicion that he was being recorded sufficed to give him a "reasonable opportunity" to investigate whether the conversations were recorded.  Furthermore, Giuffre acknowledges that Boies was acting as her agent when he had these conversations with Dershowitz, thus, any knowledge Boies had or had reason to have relating to the conversations was imputed to her through their agency relationship.  AC ¶ 119; *see Restatement (Third) of Agency § 5.03* ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal.").

When Boies suspected his conversations were recorded back in 2015, Giuffre gained imputed knowledge of the violation, and the clock on the "two year" statute of limitations began to run at that time.[12]  Because the clock has long since run out, the statute of limitations makes a Wiretap Act claim in the proposed Amended Complaint improper and futile.

## IV.    <u>CONCLUSION</u>

Based on these reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion for Leave to File an Amended Complaint to add battery and Wiretap Act claims.[13]

---

[11] Connie Bruck, *Alan Dershowitz, Devil's Advocate*, The New Yorker (Aug. 5 & 12, 2019), https://www.newyorker.com/magazine/2019/08/05/alan-dershowitz-devils-advocate.

[12] A few courts in other jurisdictions have found that each separate violation of the Wiretap Act constitutes a discrete cause of action subject to a new limitations period.  To Defendant's knowledge it does not appear that the Second Circuit has weighed in on this issue.  Given the unique circumstances presented here, Defendant does not believe this case should be the first foray into the issue.  Instead, Defendant urges the Court to consider any use or disclosures stemming from the original interception as part and parcel with the original interception.  *See, e.g., Sheinbrot v. Pfeffer*, No. 93 CV 5343, 1995 WL 432608, at *3 (E.D.N.Y. 1995) (treating interception and subsequent disclosures as a group for analysis of statute of limitations claim).

[13] Giuffre also seeks to amend her Complaint to plead additional instances of defamation.  Despite these additional claims of defamation being duplicative with the original defamatory statements included in Giuffre's Complaint, Dershowitz does not oppose this aspect of Giuffre's motion given

ALAN DERSHOWITZ

By his attorneys,

/s/ Howard Cooper
Howard M. Cooper (MA BBO # 543842)
(*pro hac vice*)
Christian G. Kiely (MA BBO# 684308)
(*pro hac vice*)
Kristine C. Oren (MA BBO# 705730)
(*pro hac vice*)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
ckiely@toddweld.com
koren@toddweld.com

/s/ Imran H. Ansari
Arthur L. Aidala (S.D.N.Y. Bar No. ALA-0059)
Imran H. Ansari (S.D.N.Y. Bar No. IHA-1978)
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
iansari@aidalalaw.com
aidalaesq@aidalalaw.com

Dated: January 24, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Court's electronic filing system and served to all counsel of record on January 24, 2020.

/s/ Kristine C. Oren
Kristine C. Oren

---

that the Court has already denied a motion to dismiss Giuffre's defamation claims, but does not concede that Giuffre's proposed Amended Complaint adequately states a claim for defamation and reserves all rights in this regard.