UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA L. GIUFFRE,<br><br>               Plaintiff,<br><br>  v.<br><br>ALAN DERSHOWITZ,<br><br>               Defendant.<br><br>ALAN DERSHOWITZ,<br><br>               Counterclaim Plaintiff,<br><br>  v.<br><br>VIRGINIA L. GIUFFRE,<br><br>               Counterclaim Defendant. | Civil Action No. 1:19-cv-3377 (LAP) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
THE MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Charles J. Cooper*
Michael W. Kirk
(S.D.N.Y. Bar No. 8801631)
Nicole J. Moss*
Haley N. Proctor*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600

**Admitted PHV*

Dated: February 7, 2020

## TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ............................................................................................................. ii

ARGUMENT ...................................................................................................................................1

I.     Plaintiff's Proposed Complaint States a Claim for Battery ..................................................1

         A.     Plaintiff Need Not Plead a Lack of Consent, But She Has Done So .......................3

         B.     The Child Victims Act Comports with Due Process ................................................5

               1.     The CVA permissibly revives lapsed claims by victims who were too vulnerable to bring their claims in a timely manner .............................5

               2.     The CVA is not void for vagueness ..............................................................6

II.    Plaintiff's Proposed Complaint States a Claim for Violations of the Wiretap Act .............9

         A.     Plaintiff Has Standing to Bring a Cause of Action Under the Wiretap Act. ...........9

         B.     Plaintiff Adequately Pleads a Criminal or Tortious Purpose .................................12

         C.     Plaintiff's Claim Is Not Clearly Time-Barred. ......................................................14

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Advance Pharmaceutical, Inc. v. United States*, 391 F.3d 377 (2d Cir. 2004) ................................ 8

*Allen v. Brown*, 320 F. Supp. 3d 16 (D.D.C. 2018) ............................................................... 14

*Anderson v. Morrow*, 371 F.3d 1027 (9th Cir. 2004) ............................................................... 8

*Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*,
  425 F.3d 126 (2d Cir. 2005) ................................................................................................. 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 3

*Ass'n of Int'l Auto Mfrs. v. Abrams*, 84 F.3d 602 (2d Cir. 1996) ......................................... 8

*Beckles v. United States*, 137 S. Ct. 886 (2017) ................................................................. 8

*BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*,
  603 Fed. App'x 57 (2d Cir. 2015) ......................................................................................... 3

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) ................................................................. 13

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ............................................................ 9

*Copeland v. Vance*, 893 F.3d 101 (2d Cir. 2018) ................................................................ 7

*Doe v. Alsaud*, 224 F. Supp. 3d 286 (S.D.N.Y. 2016) ........................................................ 1

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ........................................................... 11

*Fultz v. Gilliam*, 942 F.2d 396 (6th Cir. 1991) .................................................................. 14

*Goff v. Clarke*, 2002 N.Y. Slip Op. 50020(U)
  (Sup. Ct. Madison Cty. Jan. 22, 2002) ................................................................................. 2

*Hatchigian v. Int'l Broth. of Elec. Workers, Local Union No. 98*,
  1988 WL 100780 (E.D. Pa. Sept. 27, 1988) ........................................................................ 10

*Henderson v. United States*, 135 S. Ct. 1780 (2015) .......................................................... 9

*Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487 (1989) ........................................................... 6

*In re Bernard L. Madoff Inv. Securities LLC*, 468 B.R 620 (S.D.N.Y. Bankr. 2012) ....... 12

*In re Double Click Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................. 13

*In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003) ................ 15

*In re World Trade Center Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377 (2017) ..... 5, 6

*Jones v. C.I.R.*, 129 T.C. 146 (2007) .................................................................................. 10

*McKelvey v. United States*, 260 U.S. 353 (1922) .............................................................. 12

*Murphy v. Spring*, 2013 WL 5172951 (N.D. Okla. Sept. 12, 2013) .......................... 12, 13

*O'Connor v. Western Freight Ass'n*, 202 F. Supp. 561 (S.D.N.Y. 1962) ........................... 2

*Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, (2d Cir. 2012) ...... 5, 14

*People v. Bright*, 71 N.Y.2d 376 (1988) ..............................................................................7

*People v. D'Alessio,* 802 N.Y.S.2d 828 (1st Dep't 2005) ....................................................4

*People v. Doyle*, 77 Cal. App. 3d 126 (1977) ....................................................................10

*Ramos v. Racette*, 2012 WL 12924 (E.D.N.Y. Jan. 4, 2012) ...............................................7

*Rivera v. Puerto Rican Home Attendants Services, Inc.*, 930 F. Supp. 124 (S.D.N.Y. 1996) .........2

*Rosen v. Brookhaven Capital Mgmt., Co.*, 194 F. Supp. 2d 224 (S.D.N.Y. 2002) ..............3, 12

*Rubin v. Garvin*, 544 F.3d 461 (2d Cir. 2008) ......................................................................7

*S. S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous.
    Dev. Fund Co., Inc.*, 608 F.2d 28 (2d Cir. 1979) ...........................................................15

*Smoot v. United Transp. Union*, 246 F.3d 633 (6th Cir. 2001) .......................................9, 10

*Staehr v. Hartford Fin. Services Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) ...............3, 4, 14, 15

*Stewart v. Cal. Dep't of Educ.*, 2008 WL 4478136 (S.D. Cal. Sept. 30, 2008) ....................12

*Superior Performers, Inc. v. Meaike*, 2014 WL 5819826 (M.D.N.C., Nov. 10, 2014) ........10

*Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38 (S.D.N.Y.2001) .............................15

*Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662 (S.D.N.Y. 1996) ...................12

*United States v. Fields*, 113 F.3d 313 (2d Cir. 1997) ..........................................................9

*United States v. Sylla*, 790 F.3d 772 (7th Cir. 2015) ...........................................................7

*Watson v. United States*, 865 F.3d 123 (2d Cir. 2017) ........................................................8

*Zgraggen v. Wilsey*, 200 A.D.2d 818 (3d Dep't 1994) .........................................................2

**Statutes**

18 U.S.C.
    § 2510.............................................................................................................................9, 11
    § 2511...........................................................................................................................11, 12
    § 2520.....................................................................................................................9, 10, 14

CPLR
    214-g ..............................................................................................................................2, 3
    215......................................................................................................................................6

N.Y. PENAL LAW § 130.05 ...................................................................................................3, 6

**Other Authorities**

*Possessory Interest,* BLACK'S LAW DICTIONARY (11th ed. 2019) ........................................9

RESTATEMENT (SECOND) OF AGENCY § 397 ........................................................................9

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 20 ....................................10

Plaintiff Virginia L. Giuffre ("Plaintiff") respectfully submits this reply memorandum in support of her motion for leave to file an amended complaint ("Motion").

Defendant argues that Plaintiff's proposed claims for battery and violations of the Wiretap Act fail to state claims and are therefore futile. Each of Defendant's arguments fails as a matter of law. Defendant's arguments fall into two categories: those that seek to smuggle factual disputes into attacks on the sufficiency of Plaintiff's pleading, and those that offer novel legal theories. Defendant's factual arguments center on facts Plaintiff has no obligation to plead but has, in any event, pled adequately—a circumstance Defendant implicitly acknowledges by seeking to counter Plaintiff's allegations with his own account of the facts. Plainly, a motion to amend is not the forum for resolving genuine factual disputes between the parties. And Defendant's novel legal theories are novel for a reason: they fail to comport with the constitutional doctrine or statutory text he invokes. Even if they had merit, the novelty of these arguments would counsel against denying Plaintiff's proposed claims as *futile*, but as it is, the Court can and should reject Defendant's legal arguments outright.

## ARGUMENT

**I.   Plaintiff's Proposed Complaint States a Claim for Battery.**

Under New York law, "the elements of a civil battery are (1) bodily contact, which is (2) harmful or offensive in nature, and (3) made with intent." *Doe v. Alsaud*, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016) (quotation marks omitted). The proposed amended complaint ("PAC") satisfies these elements by alleging that Defendant intentionally engaged in sexual intercourse with Plaintiff while she was being trafficked by Epstein and his co-conspirators without obtaining Plaintiff's consent. PAC ¶¶ 39, 114. Defendant erroneously argues that the absence of consent is an element in Plaintiff's claim, but New York law treats consent as a defense to a battery tort for which

1

Defendant bears the burden of proof. *O'Connor v. Western Freight Ass'n*, 202 F. Supp. 561, 565 (S.D.N.Y. 1962). To be sure, New York courts will consider lack of consent in the course of "determining whether the contact was offensive, but it is not . . . conclusive." *Zgraggen v. Wilsey*, 200 A.D.2d 818, 819 (3d Dep't 1994).[1] Accordingly, Plaintiff was not required to allege lack of consent to state a claim for battery, though as we explain below, she did adequately allege lack of consent.

Defendant's error stems from his failure to recognize that Plaintiff has pled a common-law claim for battery, not "a claim under the [Child Victims Act ("CVA")]." Mem. of Law in Opp'n to Mot., Doc. 112 at 5 (Jan. 24, 2020) ("Opp'n Mem."). The CVA does not create a cause of action; instead, the CVA defines or resets the limitations period for claims that exist independent of the statute. The CVA revives "civil claim[s] or cause[s] of action" that were "barred as of the effective date of this section because the applicable limitation period has expired"—that is, claims that must have existed (and in fact expired) before the statute took effect. CPLR 214-g. Thus, while the CVA governs the timeliness of Plaintiff's claim, the CVA's requirements are not elements of her claim.

Accordingly, each of Defendant's arguments concerning the CVA is actually an argument that Plaintiff's battery claim is untimely, not that it is legally insufficient. This Court may deny an amendment as futile on the ground that the claim is time-barred, but only if it is apparent on the

---

[1] Because a lack of consent is so often the means by which a plaintiff meets her burden to prove "offensive" contact, it is sometimes described as an element of battery. *See, e.g.*, *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 134 (2d Cir. 2005). But other cases make clear that it is but one of several means of establishing "harmful or offensive contact." *See, e.g.*, *Rivera v. Puerto Rican Home Attendants Services, Inc.*, 930 F. Supp. 124, 133 (S.D.N.Y. 1996) ("To prove battery, the required intent is merely that the defendant intentionally made bodily contact and that the intended contact was itself offensive *or* without consent." (emphasis added)); *Goff v. Clarke*, 2002 N.Y. Slip Op. 50020(U), *2 (Sup. Ct. Madison Cty. Jan. 22, 2002) ("One way in which the physical touching of another may be deemed offensive is if the contact is made without the consent of the person being touched.").

face of the proposed complaint that the claim is time-barred. *Staehr v. Hartford Fin. Services Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Claims covered by the CVA are timely if filed between August 14, 2019, and August 13, 2020, CPLR 214-g. Defendant must therefore establish that it is apparent from the face of the PAC that Plaintiff cannot invoke the CVA's revival provision. None of Defendant's arguments has come close to making that demanding showing.

### A.   Plaintiff Need Not Plead a Lack of Consent, But She Has Done So.

Defendant first argues that Plaintiff has not pleaded facts that plausibly establish "circumstances . . . in which the victim does not expressly or impliedly acquiesce in the actor's conduct." Opp'n Mem. at 6 (quoting N.Y. PENAL LAW § 130.05.2(c)). The existence of such circumstances is an element of certain sex offenses defined in Article 130 of the New York Penal Code. The CVA, in turn, revives claims arising from "conduct which would constitute a sexual offense as defined in" Article 130. CPLR 214-g.

Were the elements of the Article 130 sex offenses also elements of Plaintiff's claim, she would have to allege facts sufficient to support a reasonable inference that Defendant's abuse occurred under circumstances suggesting that she had not expressly or impliedly consented to Defendant's actions. *See* N.Y. PENAL LAW § 130.05.2(c); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As it is, however, these "circumstances" are merely facts that allow her to overcome an affirmative defense that her claim is time-barred. Even if Plaintiff ultimately bears the burden of establishing that these circumstances existed, she is "not required to plead, in a complaint, facts sufficient to overcome" a limitations defense. *BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 603 Fed. App'x 57, 59 (2d Cir. 2015) (summary order); *see also Rosen v. Brookhaven Capital Mgmt., Co.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002). Denial of Plaintiff's motion is

3

therefore appropriate only if it is apparent from the factual allegations contained in the PAC that Plaintiff could *not* prove circumstances suggesting lack of consent. *See Staehr*, 547 F.3d at 425.

The allegations in the PAC do not foreclose proof of such circumstances. To the contrary, in addition to alleging that Plaintiff did not consent to the contact and that Defendant was aware of that fact, PAC ¶ 40, the PAC alleges: (1) Defendant was Jeffrey Epstein's "close friend" and a frequent guest at his residences and on his planes, ¶¶ 34, 60, 69, (2) Defendant was present at Epstein's residences with victims of Epstein's sex crimes, ¶¶ 6, 34, 61–63, (3) prior to the battery, Defendant witnessed Plaintiff herself "in circumstances that would have put a reasonable person on notice that she was being sexually trafficked," ¶ 38, (4) at the time of the battery, Plaintiff was under the age of 18, *id.*, while Defendant was over 60 years of age, (5) Defendant encountered Plaintiff alone and unclothed in Epstein's private bedroom, immediately after Epstein had assaulted Plaintiff in circumstances that strongly support the inference that Epstein told Defendant that he could enter the bedroom and assault Plaintiff, ¶ 39, (6) he proceeded to engage in sexual intercourse with her without obtaining express or implied consent to the contact, ¶ 40, and (7) Defendant has since engaged in a campaign to silence Plaintiff—an acknowledged trafficking victim—not merely by forthrightly denying her allegations, but by maligning her character, ¶¶ 17–18, 22, 58, 66, 68, 75–80, 87–89. Far from *foreclosing* proof of circumstances suggesting lack of consent, these factual allegations support (indeed, compel) "the reasonable inference" that such circumstances existed, thereby exceeding the Rule 8 pleading standard that does not even apply to them. *Iqbal*, 556 U.S. at 678; *see, e.g.*, *People v. D'Alessio,* 802 N.Y.S.2d 828, 829 (1st Dep't 2005) (looking to facts of parties' relationship as evidence that there was no "implicit permission" for sexual contact, even in the absence of "verbal protest").

4

Defendant's feckless attacks on the plausibility of an inference that Plaintiff did not consent consist of: (1) casting baseless aspersions on Plaintiff's credibility as a witness, *e.g.*, Opp'n Mem. at 5, 7 n.3, 8 n.4,[2] (2) reading relevant allegations out of the PAC, Opp'n Mem. at 7,[3] and (3) making unsupported factual allegations that are contrary to the allegations in the PAC, *e.g.*, Opp'n Mem. at 7 (asserting that Plaintiff initiated the contact). Even if the plausibility of Plaintiff's consent allegations were at issue, these arguments are manifestly improper on a motion to amend. *Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

### B. The Child Victims Act Comports with Due Process.

#### 1. The CVA permissibly revives lapsed claims by victims who were too vulnerable to bring their claims in a timely manner.

Defendant argues that the CVA violates his State due process rights by retroactively reviving an expired claim against him. In support, he asserts that the New York Constitution permits the legislature to revive causes of action only for those plaintiffs who were incapable of bringing their claims in a timely manner. Opp'n Mem. at 11–12. That is not the law. As the New York Court of Appeals recently clarified, "a claim-revival statute will satisfy the Due Process Clause of the State Constitution if it was enacted as a reasonable response in order to remedy an injustice." *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 400

---

[2] For example, Defendant asserts—without citing any source, much less record evidence or the PAC—that Plaintiff offered a different account of her abuse by Defendant than that offered in the PAC until she discovered that she was not under the age of consent in New York at the time of the abuse. Opp'n Mem. at 5. This is verifiably false.

[3] Defendant presents what he represents to be a comprehensive catalogue of allegations "concerning the alleged sexual battery," but he omits paragraph 39, in which Plaintiff alleges that Defendant encountered her "alone and unclothed" and "engage[d] in sexual intercourse" with her "[w]ithout obtaining her consent." Whatever the merits of Defendant's later argument that these facts are not probative of whether Epstein was trafficking Plaintiff, Opp'n Mem. at 9, they are certainly facts "concerning the alleged sexual battery," *id.* at 7, and probative of whether Plaintiff consented to the contact.

(2017).[4] The scope of review on a challenge to a claim-revival statute is limited because "there is no principled way for a court to test whether a particular injustice is serious or whether a particular class of plaintiffs is blameless; such moral determinations are left to the elected branches of government." *Id.* (quotation marks omitted). For this reason, the Court of Appeals has expressly *rejected* a requirement that the revival statute be limited to victims who were incapable of asserting their rights in a timely manner. *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 515 (1989).

The CVA is constitutional because it redresses the injustice of statutes of limitations expiring before child victims matured and recovered enough to assert their rights, and it does so through the reasonable (and widely adopted) remedy of reviving all child victims' claims for one year. Plaintiff's case illustrates the wisdom of the Legislature's policy. The limitations period for battery—a common claim arising from sexual abuse—was one year when the battery alleged in the PAC occurred. CPLR 215(3) (2000). During that year, Plaintiff remained under Epstein's control and thus unable to bring a tort claim against Defendant, who was at the time Epstein's "close friend, and co-conspirator." PAC ¶¶ 6, 33. The CVA therefore offers a reasonable solution to the injustice Plaintiff suffered in losing her right to hold Defendant accountable as a result of the trafficking scheme Defendant facilitated.

### 2.   The CVA is not void for vagueness.

Finally, Defendant argues that N.Y. Penal Law Section 130.05.2(c)—which defines a "lack of consent" as resulting from "any circumstances . . . in which the victim does not expressly or impliedly acquiesce in the actor's conduct"—is unconstitutionally vague. He challenges the

---

[4] Defendant has pointed to no (in force) decision invalidating a revival statute under the New York Constitution. The only ruling Defendant cites, Judge Hellerstein's vacated decision in the *World Trade Center* litigation, was effectively abrogated by the New York Court of Appeals' decision issued after the Second Circuit certified the question during the appeal of Judge Hellerstein's decision. *See In re World Trade Center*, 30 N.Y.3d at 400.

6

consent standard "as applied to the allegations in the" PAC, Opp'n Mem. at 14; it is unclear whether he also seeks to mount a facial challenge. Regardless, his challenge fails.

A *criminal* law is unconstitutionally vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or if it "authorizes" or "encourages arbitrary and discriminatory enforcement." *Copeland v. Vance*, 893 F.3d 101, 114 (2d Cir. 2018); *see also People v. Bright*, 71 N.Y.2d 376, 378 (1988). Again, Plaintiff does not seek to hold Defendant liable under the standards of conduct enunciated in the Penal Law. Instead, Plaintiff seeks to hold Defendant liable for *civil* battery. She invokes the CVA in anticipation of a limitations defense, and the CVA, in turn, incorporates portions of the Penal Law. The CVA cannot be unconstitutional for failing to "provide sufficient notice of what conduct is prohibited," *Bright*, 71 N.Y.2d at 382, because it does not prohibit *any* conduct. *See Rubin v. Garvin*, 544 F.3d 461, 469 (2d Cir. 2008) ("vagueness claim fails the test of common sense" when directed against a statute that does not require defendant "to adhere to a specific standard of conduct"). "Unlike a substantive criminal prohibition—the boundaries of which can potentially guide conduct—it is hard to conceive of how the rules [extending] the statutory limitations period applicable to [Defendant's conduct] had the potential to shape [Defendant's] conduct such that there was anything he needed to be 'fairly warned' about." *Ramos v. Racette*, 2012 WL 12924, *15 (E.D.N.Y. Jan. 4, 2012); *see also United States v. Sylla*, 790 F.3d 772, 774 (7th Cir. 2015). Because due process does not even require revival statutes to *exist* at the time the conduct giving rise to the revived claims occurs, *supra* Part I.B.1, it necessarily does not require *any* notice as to what conduct will result in revival of the limitations period.

The second prong of the vagueness test—concerning arbitrary or discriminatory enforcement—is equally inapplicable to the CVA. Due process simply does not require explicit

standards to guide courts in applying statutes of limitations. Courts have long enjoyed discretion to extend non-jurisdictional limitations periods when equity so requires. *E.g.*, *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017). The CVA merely limits that discretion by defining circumstances in which the limitations period shall be extended. "If a system of unfettered discretion is not unconstitutionally vague, then it is difficult to see how" a law that guides "discretion could be." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017).

In any event, the two-pronged vagueness test for criminal statutes does not apply because the CVA is a civil statute. The standard for civil statutes is far less stringent: "A civil statute is not impermissible under [the Due Process Clause] unless its commands are so vague as really to be no rule or standard at all." *Ass'n of Int'l Auto Mfrs. v. Abrams*, 84 F.3d 602, 614 (2d Cir. 1996) (quotation marks omitted); *see also Advance Pharmaceutical, Inc. v. United States*, 391 F.3d 377, 396 (2d Cir. 2004) (contrasting civil standard with the "sterner" two-pronged standard that applies to criminal and quasi-criminal statutes).

The consent standard incorporated by the CVA is constitutional by any standard. A standard based on whether a victim expressly or impliedly consented to sexual contact sets forth a clear rule easily understood by a person of average intelligence and not subject to arbitrary or discriminatory application. Implied consent—to sexual contact or otherwise—is a concept that is ubiquitous in the law and—even in the more demanding context of criminal statutes—is routinely upheld against vagueness challenges because it depends upon a common-sense standard that people apply on a daily basis in their interactions with other human beings. *See, e.g.*, *Anderson v. Morrow*, 371 F.3d 1027, 1032 (9th Cir. 2004).

**II.     Plaintiff's Proposed Complaint States a Claim for Violations of the Wiretap Act.**

**A.     Plaintiff Has Standing to Bring a Cause of Action Under the Wiretap Act.**

The Wiretap Act grants a cause of action to "*any* person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the Wiretap Act. 18 U.S.C. § 2520(a).[5] "Person" is defined to mean "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6). "Whose" is undefined and therefore takes on its normal meaning as the possessory form of "who." Thus, the Wiretap Act is naturally understood to provide a cause of action to any individual or entity that has a possessory interest in the intercepted communication. *See Smoot v. United Transp. Union*, 246 F.3d 633, 640 (6th Cir. 2001). Defendant has not disputed this clear textual analysis.

Possession generally includes custody, control, a right to access, or a right to exclude. *See, e.g.*, *Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015) ("possession" consists of "direct physical control" *or* "the power and intent to exercise control over the object"); *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (right of access); *Possessory Interest*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The present right to control property, including the right to exclude others . . . ."). Accordingly, the concept of possession extends to things in the immediate control of or originating with third parties—especially agents. *E.g.*, *Henderson*, 135 S. Ct. at 1784–85 (felon has "constructive possession" over firearms in the custody of third parties who will "give the felon access to them or accede to the felon's instructions about their future use"); *Carpenter v. United States*, 138 S. Ct. 2206, 2219 (2018) (recognizing an individual's expectation of privacy in information collected by a third party); RESTATEMENT (SECOND) OF AGENCY § 397, cmt. a

---

[5] Defendant does not challenge Plaintiff's standing in the constitutional sense of alleging a cognizable injury traceable to his conduct. Plaintiff adequately alleges such an injury. PAC ¶ 130. Instead, he argues that she has no cause of action under the Wiretap Act.

9

("If . . . one is employed to do experimental work for inventive purposes, it is inferred ordinarily . . . that patentable ideas arrived at through the experimentation are to be owned by the employer."). Consistent with these principles, courts have recognized that principals have a possessory interest in their agent's communications within the meaning of the Wiretap Act. *See, e.g.*, *Smoot*, 246 F.3d at 640; *Superior Performers, Inc. v. Meaike*, 2014 WL 5819826, at *12 (M.D.N.C., Nov. 10, 2014); *Hatchigian v. Int'l Broth. of Elec. Workers, Local Union No. 98*, 1988 WL 100780, at *1 (E.D. Pa. Sept. 27, 1988).

Plaintiff has a possessory interest in the communications Defendant intercepted because they were made by her attorney on her behalf. Even more so than in a typical agency relationship, a client's rights in communications her attorney makes on her behalf bear the hallmarks of possession. She can insist on physical custody and control of any record her attorney makes of those communications. *Jones v. C.I.R.*, 129 T.C. 146, 154 (2007) (surveying authority). She enjoys a right of access to those communications by insisting that her attorney disclose their contents to her. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 20. To the extent that those communications are privileged, she enjoys the right to exclude (or not exclude) others from those communications. *E.g., id.* § 90(1) (work-product immunity). Under the Fourth Amendment, she even enjoys a reasonable expectation of privacy in her attorneys' papers and communications. *See, e.g.*, *People v. Doyle*, 77 Cal. App. 3d 126, 128 (1977). Because she had a possessory interest in Mr. Boies's communications with Defendant, Plaintiff may bring a claim under Section 2520.

Defendant admits that the definition of "person" shows that Congress "must have intended to allow entities like corporations and associations to avail themselves of [the Wiretap Act's] legal protections." Opp'n at 16. Because such entities cannot participate directly in communications, all agree that Congress intended to extend the cause of action to entities that do not participate directly

10

in such communications but instead do so through their agents. But Defendant argues that only entities, not individuals, may sue for unlawful interception of their agents' communications. Opp'n Mem. at 17. Defendant offers no explanation as to why it would make sense to draw such an artificial distinction between the agency relationships of entities and persons, and we can conjure no reasonable explanation. In any event, the plain language of the statute forecloses this distinction. Congress defined "person" to include, among the classes "whose" intercepted communications give rise to a cause of action under the Wiretap Act, "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6). Congress thus drew no distinction between individuals and corporate entities.

There are other textual clues: The Wiretap Act defines a separate term—"aggrieved person"—to mean (in relevant part) "a person who was a party to any intercepted . . . communication." 18 U.S.C. § 2510(11). And it exempts from its prohibition certain recordings made by persons who are "party to the communication" or with the consent of "one of the parties to the communication." *Id.* §§ 2511(c)–(d).  These provisions show that, when Congress wants to identify *parties* to an intercepted communication, it "knows how to do so." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476 (2003).

Finally, although Defendant has identified one out-of-circuit decision entertaining the atextual limitation he proposes, the court provided no explanation for how it could be squared with the text of the statute, and Defendant has identified no binding or persuasive precedent adopting

it. Opp'n Mem. at 17.[6] Thus, Defendant has not carried his burden to show that Plaintiff's claim is futile.[7]

### B. Plaintiff Adequately Pleads a Criminal or Tortious Purpose.

Defendant next argues that Plaintiff fails adequately to allege a criminal or tortious purpose. As an initial matter, it is not clear that Plaintiff bears any responsibility to allege a criminal or tortious purpose. The Wiretap Act outlaws intercepting telephonic communications writ large. 18 U.S.C. § 2511(a)(1). It creates an exception to its prohibition when the person intercepting the communication "is a party to the communication," provided the person does not act "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(d). Thus, the "tortious purpose" requirement does not appear in the statutory provision defining the offense, but instead appears in a separate provision defining an exception to the offense. It is a "settled rule" that a "pleading founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . and that it is incumbent on one who relies on such exception to set it up and establish it." *McKelvey v. United States*, 260 U.S. 353, 357 (1922); *see also Rosen*, 194 F. Supp. 2d at 227. At least one court has recognized that the "tortious purpose" provision is one such "matter of an exception" and thus need not be pled. *See Murphy v.*

---

[6] Defendant cites *Stewart v. Cal. Dep't of Educ.*, 2008 WL 4478136 (S.D. Cal. Sept. 30, 2008), as a decision rejecting the "possessory interest" theory for individuals. Opp'n Mem. at 16–17. But there is no indication that the parties to the interception were acting as the (pro se) plaintiff's agents in that case, or that the court even considered the "possessory interest" theory.

[7] Although the meaning of "whose" is a question of law, the Court is under no obligation to settle it on a motion to amend. Where, as here, a party advances a novel legal theory in opposition to a proposed amendment, it usually has not carried its burden to establish futility. *Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 678 (S.D.N.Y. 1996); *In re Bernard L. Madoff Inv. Securities LLC*, 468 B.R 620, 633 (S.D.N.Y. Bankr. 2012). To the extent that the Court entertains any doubts about Plaintiff's construction of the statute, it should grant leave to amend and consider the legal question with the benefit of factual development.

*Spring*, 2013 WL 5172951, at *9 (N.D. Okla. Sept. 12, 2013). To be sure, the Second Circuit has at least once required a party to show that he could plead a tortious purpose in a proposed amended complaint, *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)—albeit without considering this argument—so the PAC alleges that Defendant acted with a tortious purpose. *See* PAC ¶¶ 78, 88, 124.

Defendant insists that pleading a contemporaneous tortious purpose is not enough: Plaintiff must allege that the purpose was his "primary motivation" or the "determinative factor." Opp'n Mem. at 18. The only controlling precedent Defendant cites for this pleading requirement merely holds that the tortious purpose alleged must be "independent of the intentional act of recording," not that the purpose must be alleged to be primary or determinative. *Caro*, 618 F.3d at 100. In any event, even though the PAC does not use Defendant's magic words "primary motivation" or "determinative factor," it alleges facts that support a "reasonable inference" that Defendant did act primarily with a tortious or criminal purpose. The PAC alleges that at the time he recorded these conversations, Defendant was desperately trying to discredit Plaintiff before an initially sympathetic but increasingly skeptical audience. PAC ¶¶ 79–85. It is thus plausible that he recorded the statements of Plaintiff's agent for the purpose of creating a false impression about Plaintiff's credibility and supporting his defamation campaign against her. That Defendant might have acted for the additional innocuous purpose of documenting his conversations does not neutralize his illicit purposes of defaming Plaintiff and perhaps even shoring up perjurious statements in future litigation, PAC ¶ 88. *See In re Double Click Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001).

To combat an inference of contemporaneous tortious purpose, Defendant once again resorts to unsupported factual assertions. Some of the assertions—that the recordings are of low

13

quality, and that Defendant did not disclose the contents of the tapes for months or even years after he made them, Opp'n Mem. at 21 n.9, 23—simply do not appear in the PAC and thus should not be considered on a motion to amend. *See Panther Partners Inc.*, 681 F.3d at 119. (In any event, the poor audio quality furthered Defendant's tortious purpose by allowing him to exercise greater artistry in shaping the public's perception of the conversations.) Other assertions—that he recorded the conversations to defend himself from Plaintiff's false accusations—directly contradict the allegations in the PAC and thus cannot justify denying leave to amend. The mere fact that Defendant disputes Plaintiff's factual account does not make her proposed amendment futile.

### C. Plaintiff's Claim Is Not Clearly Time-Barred.

Finally, Defendant argues that Plaintiff's Wiretap Act claim is time barred. The Wiretap Act requires civil claims to be filed within "two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). As noted above, a court may deny a proposed amendment on statute of limitations grounds only if it is apparent on the face of the complaint that the proposed claim is time-barred. *Supra* Part I; *Staehr*, 547 F.3d at 425.

As an initial matter, the PAC states a claim not only for the unlawful *interception* of Plaintiff's communications, but also for their unlawful use and disclosure. PAC ¶ 123. Although it is apparent from the face of the complaint that the interception occurred more than two years ago, *id.* ¶ 119, that is not the case for the uses and disclosures, *id.* ¶ 78. To the contrary, the most reasonable inference from the allegations in the PAC is that Defendant disclosed the recordings to the press in or shortly before November 2018. *Id.* ¶ 126. Thus, the claims arising from use and disclosure are not time-barred. *See Fultz v. Gilliam*, 942 F.2d 396, 403–04 (6th Cir. 1991); *Allen v. Brown*, 320 F. Supp. 3d 16, 37 (D.D.C. 2018).

With respect to the interception, the PAC alleges that Plaintiff did not discover the violation until November 2018. PAC ¶ 126. Defendant seeks to refute this allegation by citing an article that describes Mr. Boies's suspicions that Defendant was recording the conversation. Opp'n at 24. Even if the Court could look beyond the four corners of the complaint on a motion to amend—and it may not, *see Staehr*, 547 F.3d at 425—the article does not establish when Plaintiff "first ha[d] a reasonable opportunity to discover" the interception: It is hearsay, and it does not reveal the date on which Mr. Boies formed his suspicions, how definite those suspicions were, or whether Mr. Boies shared them with Plaintiff. Indeed, it is not even clear whether the quote about taping the call comes from the undated email or Boies's 2019 recollection of the conversation. As it is, because denying leave to amend would require a finding of fact, the Court should grant the amendment and "permit[ ] the parties to obtain an adjudication of the merits" on a motion for summary judgment or at trial. *S. S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co., Inc.*, 608 F.2d 28, 42–43 (2d Cir. 1979); *see also In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003); *Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38, 49 (S.D.N.Y.2001).

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant her Motion.

Dated:  February 7, 2020

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper*
Michael W. Kirk
Nicole J. Moss*
Haley N. Proctor*
COOPER & KIRK PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
(202) 220-9600
*Admitted PHV

15

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that the foregoing was served upon all counsel of record using the CM/ECF system.

/s/ Charles J. Cooper
Charles J. Cooper*
COOPER & KIRK PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
(202) 220-9600
*Admitted PHV

*Attorney for Plaintiff*