SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DAVID BOIES,

                Plaintiff,

-vs-

ALAN DERSHOWITZ,

                Defendant.

Index No._____

**SUMMONS**

Plaintiff designates New York County as the place of trial

The basis of venue is
CLPR § 302(a) and §503(a)

**TO THE ABOVE NAMED DEFENDANT:**

    ALAN DERSHOWITZ
    2 Tudor City Place, 10EN
    New York, NY 10017

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on Plaintiff's attorneys within twenty (20) days after the service of this summons exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    The basis of venue is C.P.L.R. § 302(a) and §503(a) which are proper because defendant is a resident of New York County; owns, uses, or possesses property within New York County; and a substantial part of the events giving rise to the claim occurred in New York County.

Dated: New York, New York
November 7, 2019

By:   /s/ David Boies
David Boies
55 Hudson Yards
New York, NY 10001
Telephone:   (212) 446-2300
Facsimile:    (212) 446-2350

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| **DAVID BOIES,** | Index No. _____ |
| **Plaintiff,** | Hon. |
| vs. | **Complaint** |
| **ALAN DERSHOWITZ,** | |
| **Defendant.** | |

Plaintiff David Boies for his Complaint against Defendant Alan Dershowitz avers upon personal knowledge as to his own acts and status and events taking place in his presence and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. In the more than half a century during which Plaintiff has practiced law, he has been the subject of considerable public praise and criticism; some of both of which was reasonably justified, some of both less so. However, never has he been the subject of sustained, false, accusations of criminal conduct like those leveled by Defendant since at least November 2018.

2. Defendant has been the long-time friend and lawyer for convicted pedophile Jeffrey Epstein; he has also been personally accused under oath by two women of sexually abusing them when they were young. In an effort to distract attention from his own misconduct, Defendant has engaged in a campaign to attack and vilify each of the lawyers who have represented his victims, one of which is Plaintiff.

3. Defendant has repeatedly asserted that Plaintiff is guilty of an extortion scheme that either extorted or sought to extort (Defendant has said both) money from billionaire Leslie Wexner, and that Plaintiff induced the women who have sworn that Defendant abused them to make up that report as part of that extortion scheme. Those allegations, as Defendant knows, are false. Defendant makes those assertions without any basis whatsoever, with total disregard for whether they are true or false, and in the face of facts demonstrating that they are in fact false.

4. Defendant's repeated allegations of criminal conduct against Plaintiff have injured Plaintiff's reputation both with people who believe Defendant and with people who are uncertain whom to believe. Defendant's credibility with some people has been enhanced by the fact that he continues to be promoted by certain media whose political views Defendant supports.

5. Plaintiff believes that defamation lawsuits are ordinarily an undesirable way to respond to public criticism, particularly for someone like Plaintiff who himself has reasonable access to the media. However, in this case Plaintiff concludes that he has no reasonable alternative.

6. Plaintiff has sought to avoid the need for this action, including by presenting Defendant with facts demonstrating how false and reckless Defendant's allegations are. All such efforts have been unavailing, and Defendant has continued, and even increased, the intensity of his attacks.

7. Defendant has essentially challenged Plaintiff to sue him for defamation. Plaintiff has concluded he now has no practical alternative but to do so.

## THE PARTIES

8. Plaintiff David Boies is an individual and a lawyer with a place of business in New York County at 55 Hudson Yards, New York, New York 10001.

9. Defendant Alan Dershowitz is an individual who resides in New York County.

## JURISDICTION AND VENUE

10. This is a civil action for damages that exceed $25,000, exclusive of interest, costs, and attorney's fees.

11. Jurisdiction is proper in New York County pursuant to C.P.L.R. § 302(a) because Defendant is a resident of New York County and owns, uses, and/or possesses property within New York County, because Defendant also regularly does and solicits business in New York County, and because the defamatory statements at issue were published, among other places, in New York County.

12. Venue is proper in this Court pursuant to C.P.L.R. § 503(a) because Defendant is a resident of New York County, and because a substantial part of the events giving rise to the claim occurred in New York County, including in that New York County is the place, among other places, of the publication of Defendant's defamatory statements.

## FACTUAL ALLEGATIONS

**A.  Background**

13. In late 2014, Plaintiff's client, Virginia Giuffre (née Roberts), alleged in a lawsuit that Jeffrey Epstein trafficked her to Defendant for sex.

14. In 2017, Plaintiff's client, Sarah Ransome, also alleged that Jeffrey Epstein had trafficked her to Defendant for sex.

15. In April 2019, Giuffre sued Defendant for defamation in federal court in the Southern District of New York.

3

B.  **Defendant's Defamatory Statements**

1.  <u>The November 28, 2018, Defamatory Statements in the Miami Herald</u>

16.  On November 28, 2018, the Miami Herald published an article about Jeffrey Epstein entitled "Even from jail, sex abuser manipulated the system. His victims were kept in the dark" (the "Miami Herald Article").

17.  The Miami Herald Article included quotations from an interview it conducted with Defendant. Defendant told the Miami Herald with respect to Giuffre's accusations that Defendant sexually assaulted her:

> "'The story was 100 percent flatly categorically made-up,' he said, adding that Roberts and her attorneys fabricated the assertion in order to get money from other powerful, wealthy people she alleges she had sex with."

18.  Defendant intended, and a reasonable reader of the November 28 Miami Herald Article would understand, that Defendant was accusing Plaintiff of suborning perjury and engaging in extortion.

19.  Defendant made his statements to the Miami Herald with the purpose and effect of having the Miami Herald repeat those statements to readers throughout the United States, including in New York County.

20.  Defendant intended that, and a reasonable reader of the Miami Herald Article would understand that, Defendant's reference to Ms. Giuffre's "attorneys" referred to Plaintiff.

21.  The Miami Herald Article was disseminated in print and on the internet, was carried throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals using the internet in New York County.

22.  Persons in New York County other than Plaintiff have viewed the November 28 Miami Herald Article and read and heard the defamatory statements contained therein.

23. Defendant's above statements in the Miami Herald Article are false and defamatory.

24. Defendant knew that the November 28 Defamatory Statements were false and acted in reckless disregard for the truth or falsity of the November 28 Defamatory Statements.

25. Because the November 28 Defamatory Statements accused Plaintiff of a serious crime and injured Plaintiff in his business and profession, those statements are defamatory *per se*.

### 2. The December 18, 2018, Defamatory Statements to the New York Daily News

26. On December 18, 2018, the New York Daily News published an article entitled "Second woman claims billionaire perv Jeffrey Epstein 'directed' her to have sex with Alan Dershowitz" (the "New York Daily News Article") about Sarah Ransome's accusation that Epstein lent her out to Defendant for sex.

27. In response to Ms. Ransome's allegation that Epstein directed her to have sex with Defendant, Defendant provided a statement that was published in the New York Daily News Article. Defendant asserted that Plaintiff had knowingly caused Ms. Ransome to falsely accuse Defendant of sexual assault, asserting, "The villain here is David Boies, who is exploiting a crazy woman in order to get revenge against me."

28. Defendant intended, and a reasonable reader of the December 18 New York Daily News Article would understand, that Defendant was accusing Plaintiff of suborning perjury.

29. Defendant made his statements to the New York Daily News with the purpose and effect of having the New York Daily News repeat those statements to readers throughout the United States, including in New York County.

30. The New York Daily News Article was disseminated in print and on the internet, throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals in New York County.

31. Persons in New York County other than Plaintiff have viewed the December 18 New York Daily News Article and read and heard the defamatory statements contained therein.

32. The December 18 Defamatory Statements were republished in The New Yorker on July 29, 2019, in an article entitled "Alan Dershowitz, Devil's Advocate." That article was also disseminated in print and on the internet, was carried throughout the United States, including in New York County, and can also be viewed on the internet by anyone in the world.

33. Defendant's above statements in the New York Daily News Article are false and defamatory.

34. Defendant knew that the December 18 Defamatory Statements were false and acted in reckless disregard for the truth or falsity of the December 18 Defamatory Statements.

35. Because the December 18 Defamatory Statements accused Plaintiff of a serious crime and injured Plaintiff in his business and profession, those statements amount to defamation *per se*.

### 3. The December 19, 2018, Defamatory Statements to the Daily News

36. On December 19, 2018, Defendant wrote a letter to the editor of the Daily News, which was published on the Daily News's website (the "Daily News Letter").

37. In the December 19 Daily News Letter, Defendant wrote that "Attorney David Boies threatened that unless I withdrew a bar complaint I had filed against him for falsely accusing me of sexual misconduct, he would find another woman to accuse me of similar misconduct", that, referring to Plaintiff, "He has now found an unbalanced woman", and that "She only began to accuse me after meeting Boies".

6

38. Defendant intended, and a reasonable reader of the December 19 Daily News Letter would understand, that Defendant was accusing Plaintiff of suborning perjury.

39. Defendant made his statements in the December 19 Daily News Letter with the purpose and effect of having the Daily News repeat those statements to readers throughout the United States, including in New York County.

40. The Daily News Letter was disseminated on the internet, was carried throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals in New York County.

41. Persons in New York County other than Plaintiff have viewed the Daily News Letter and read or heard the December 19 Defamatory Statements contained therein.

42. Defendant's above statements in the Daily News Letter are false and defamatory.

43. Defendant knew that the December 19 Defamatory Statements were false and acted in reckless disregard for the truth or falsity of those statements.

44. Because the December 19 Defamatory Statements accused Plaintiff of a serious crime and injured Plaintiff in his business and profession, those statements amount to defamation *per se*.

4. The December 22, 2018, Defamatory Statements to the Harvard Crimson

45. On December 22, 2018, the Harvard Crimson published an article entitled "Epstein Allegedly Directed Second Woman to Have Sex with Harvard Prof. Dershowitz, Court Documents State" (the "Harvard Crimson Article").

46. The Harvard Crimson Article included reporting on an interview with Defendant and included the following: "Dershowitz said Boies orchestrated Ransome's allegation against him in retaliation for a bar complaint Dershowitz filed against Boies, calling Boies a 'villain'", and, "'This is the result of a threat by David Boies, against whom I filed ethics charges with the

7

bar, that if I did not withdraw my ethics charges, he would come up with another woman,'' Dershowitz said."

47. Defendant intended, and a reasonable reader of the December 22 Harvard Crimson Article would understand, that Defendant was accusing Plaintiff of suborning perjury.

48. Defendant made his statements in the December 22 Harvard Crimson Article with the purpose and effect of having the Harvard Crimson repeat those statements to readers throughout the United States, including in New York County.

49. The Harvard Crimson Article was disseminated on the internet, was carried throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals in New York County.

50. Persons in New York County other than Plaintiff have viewed the Harvard Crimson Article and read or heard the December 22 Defamatory Statements contained therein.

51. Defendant's above statements in the Harvard Crimson Article are false and defamatory.

52. Defendant knew that the December 22 Defamatory Statements were false and acted in reckless disregard for the truth or falsity of those statements.

53. Because the December 22 Defamatory Statements accused Plaintiff of a serious crime and injured Plaintiff in his business and profession, those statements amount to defamation *per se*.

### 5. The July 17, 2019, Defamatory Statements to Newsmax

54. On July 17, 2018, Newsmax published a column authored by Defendant entitled "J'accuse – The New Yorker is Trying to Silence Me" (the "Newsmax Column").

55. The Newsmax Column included statements by Defendant including that Giuffre "was 'pressured'" "by her lawyers to falsely accuse me of having underage sex with her. They

8

expected a big payday"; and that Giuffre and Ransome had each made "false accusations" that were "both engineered by the same lawyer. Sometimes smoke does not mean fire; it means arson.".

56. Defendant intended, and a reasonable reader of the July 17 Newsmax Column would understand, that Defendant was accusing Plaintiff of suborning perjury and of engaging in extortion.

57. Defendant made his statements in the July 17 Newsmax Column with the purpose and effect of having Newsmax repeat those statements to readers throughout the United States, including in New York County.

58. Defendant intended that, and a reasonable reader of the Newsmax Column would understand that, Defendant's reference to Ms. Giuffre's and Ms. Ransome's "lawyer" referred to Plaintiff.

59. The Newsmax Column was disseminated on the internet, was carried throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals in New York County.

60. Persons in New York County other than Plaintiff have viewed the Newsmax Column and read and heard the July 17 Defamatory Statements contained therein.

61. Defendant's above statements in the Newsmax Column are false and defamatory.

62. Defendant knew that the July 17 Defamatory Statements were false and acted in reckless disregard for the truth or falsity of those statements.

63. Because the July 17 Defamatory Statements accused Plaintiff of a serious crime and injured Plaintiff in his business and profession, those statements amount to defamation *per se*.

9

### 6. The July 18, 2019, Defamatory Statements to Fox News

64. On July 18, 2019, Fox News published an interview between Laura Ingraham and Defendant entitled "Defendant: Accusers said I didn't do it until David Boies changed their minds" (the "Fox News Interview").

65. During the Fox News Interview, Ingraham asked Defendant about Giuffre's lawsuit against Defendant for defamation. When asked what Boies "thinks he has" on Defendant, Defendant said: "Each of the two accusers had said I didn't do it, *and then they met David Boies, and he changed their mind.* So they committed perjury after meeting David Boies. There is no coincidence about that." (Emphasis added.)

66. Defendant intended, and a reasonable reader of the July 18 Fox News Interview would understand, that Defendant was accusing Plaintiff of suborning perjury.

67. Defendant made his statements in the July 18 Fox News Interview with the purpose and effect of having Fox News repeat those statements to readers throughout the United States, including in New York County.

68. The Fox News Interview was disseminated on television and on the internet, was carried throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals in New York County.

69. Persons in New York County other than Plaintiff have viewed the Fox News Interview and read or heard the July 18 Defamatory Statements contained therein.

70. Defendant's above statements in the Fox News Interview are false and defamatory.

71. Defendant knew that the July 18 Defamatory Statements were false and acted in reckless disregard for the truth or falsity of the July 18 Defamatory Statements.

10

72. Because the July 18 Defamatory Statements accused Plaintiff of a serious crime and injured Plaintiff in his business and profession, those statements amount to defamation *per se*.

### 7. The July 19, 2019, Defamatory Statements to New York Magazine

73. On July 19, 2019, New York Magazine published an article entitled "Alan Dershowitz Cannot Stop Talking" (the "New York Magazine Article"), which contained an interview with Defendant about his relationship with Jeffrey Epstein and the young women and girls who had accused Defendant of sexually assaulting them.

74. During the interview, Defendant repeatedly accused Plaintiff and his law firm of the serious crime of extortion. When asked about Plaintiff, Defendant said, "He's not a lawyer. *He's an extortionist*." (Emphasis added.)

75. Defendant also said that Plaintiff had convinced Plaintiff's client, Giuffre, to falsely accuse Defendant of sexually assaulting her: "You meet David Boies, magically you remember that you had sex with Alan Dershowitz." About the defamation lawsuit that Giuffre filed against Defendant, Defendant said, "I'm not going to be made whole until David Boies is imprisoned, disbarred, and discredited. I will only be made whole when the world understands that *this was a completely made up story for money*." (Emphasis added.) Further, based on its interview with Defendant, New York Magazine wrote, referring to Defendant: "In combative media appearances, he has alleged he was the target of a complex extortion plot, coordinated by the lawyer of his accusers, the equally renowned attorney David Boies. 'I know the truth,' Dershowitz told me. 'I know that I am a victim of a serious crime, a crime of perjury.'"

76. Defendant intended, and a reasonable reader of the July 19 New York Magazine Article would understand, that Defendant was accusing Plaintiff of suborning perjury and of engaging in extortion.

77. Defendant made his statements in the July 19 New York Magazine Article with the purpose and effect of having New York Magazine repeat those statements to readers throughout the United States, including in New York County.

78. The New York Magazine Article was disseminated in print and on the internet, was carried throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals in New York County.

79. Persons in New York County other than Plaintiff have viewed the New York Magazine Article and read or heard the July 19 Defamatory Statements contained therein.

80. Defendant's above statements in the New York Magazine Article are false and defamatory.

81. Defendant knew that the July 19 Defamatory Statements were false and acted in reckless disregard for the truth or falsity of the July 19 Defamatory Statements.

82. Because the July 19 Defamatory Statements charged Plaintiff with a serious crime and injured Plaintiff in his business and profession, those statements amount to defamation *per se*.

### 8. The August 13, 2019, Defamatory Statements to the Washington Post

83. On August 13, 2019, the Washington Post published an article entitled "It's Alan Dershowitz vs. David Boies, again and again" (the "August 13 Washington Post Article").

84. The August 13 Washington Post Article included quotations from an interview it conducted with Defendant. The Washington Post wrote with respect to its interview of Defendant as follows, quoting Defendant: "'I believe the law firm of Boies Schiller is a RICO,' Dershowitz said in a recent interview at his New York apartment, citing the acronym used for Racketeer Influenced and Corrupt Organizations Act, a law frequently used against the mafia. 'I believe they are the law firm of extortion, subornation of perjury and other crimes.'"

12

85. Defendant intended, and a reasonable reader of the August 13 Washington Post Article would understand, that Defendant was accusing Plaintiff of committing extortion and suborning perjury.

86. Defendant made his statements in the August 13 Washington Post Article with the purpose and effect of having the Washington Post repeat those statements to readers throughout the United States, including in New York County.

87. Defendant intended, and a reasonable reader of August 13 Washington Post Article would understand, that when Defendant made his characterization of "the law firm of Boies Schiller" and when he referred to the conduct of "the law firm" he was referring to Plaintiff and Plaintiff's supposed conduct.

88. The August 13 Washington Post Article was disseminated in print and on the internet, was carried throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals in New York County.

89. Persons in New York County other than Plaintiff have viewed the August 13 Washington Post Article and read and heard the August 13 Defamatory Statements contained therein.

90. Defendant's above statements in the August 13 Washington Post Article are false and defamatory.

91. Defendant knew that the August 13 Defamatory Statements were false and and acted in reckless disregard for the truth or falsity of those statements.

92. Because the August 13 Defamatory Statements accused Plaintiff of a serious crime and injured Plaintiff in his business and profession, those statements are defamatory *per se*.

13

### 9. The October 16, 2019, Defamatory Statements to the Washington Post

93. On October 16, 2019, the Washington Post published an article entitled "David Boies thrown out of libel suit he filed against Alan Dershowitz" (the "October 16 Washington Post Article").

94. The October 16 Washington Post Article included quotations from an interview it conducted with Defendant. The Washington Post wrote with respect to its interview of Defendant as follows, quoting Defendant: "'This is a woman that told everybody for years that she did not have sex with me. Suddenly, the day she meets David Boies, she changes her story.'"

95. Defendant intended, and a reasonable reader of the October 16 Washington Post Article would understand, that Defendant was accusing Plaintiff of suborning perjury.

96. Defendant made his statements in the October 16 Washington Post Article with the purpose and effect of having the Washington Post repeat those statements to readers throughout the United States, including in New York County.

97. The October 16 Washington Post Article was disseminated in print and on the internet, was carried throughout the United States, including in New York County, and can be viewed on the internet by anyone in the world, including individuals in New York County.

98. Persons in New York County other than Plaintiff have viewed the October 16 Washington Post Article and read and heard the October 16 Defamatory Statements contained therein.

99. Defendant's above statements in the October 16 Washington Post Article are false and defamatory.

100. Defendant knew that the October 16 Defamatory Statements were false and acted in reckless disregard for the truth or falsity of those statements.

14

101. Because the October 16 Defamatory Statements accused Plaintiff of a serious crime and injured Plaintiff in his business and profession, those statements are defamatory *per se*.

* * *

102. Defendant made his false and defamatory statements as set forth above, in New York County and elsewhere, in a deliberate effort to maliciously discredit Plaintiff. Defendant did so with the purpose and effect of having others repeat such false and defamatory statements and thereby further damaged Plaintiff's reputation. Defendant knew his statements were false.

103. Defendant intended his false statements to be specific statements of fact. Defendant's false statements were broadcast around the world and would have been understood by those who heard them to be specific factual claims by Defendant that Plaintiff asked two of Jeffrey Epstein's victims to intentionally lie about having sex with Defendant, that Plaintiff had committed the crime of extortion, and that Plaintiff had committed various violations of professional ethics.

## Claim for Defamation

104. The Defamatory Statements are about and concerning Plaintiff.

105. The Defamatory Statements were published to a broad audience.

106. The Defamatory Statements concerning Plaintiff are false.

107. Defendant knew the Defamatory Statements were false at the time he made them, and/or he acted with reckless disregard as to their truth or falsity.

108. Defendant deliberately published the Defamatory Statements knowing they would be disseminated to a broad audience and would harm Plaintiff's reputation and good standing. Defendant acted with spite and malice when making the Defamatory Statements.

15

109. The Defamatory Statements falsely charge Plaintiff with serious crimes and injured Plaintiff in his business and profession.

110. The Defamatory Statements are defamatory *per se* and damages are therefore presumed. In any event, however, Plaintiff's reputation and good standing has been harmed and will continue to be harmed by the Defamatory Statements.

## RELIEF DEMANDED

WHEREFORE, Plaintiff David Boies respectfully request that this Court award the following relief:

A. Awarding Plaintiff general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Defendant's wrongdoing;

B. Awarding Plaintiff nominal damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff prejudgment and post-judgment interest at the maximum rate allowable by law;

E. Awarding Plaintiff the costs of suit as incurred in this action and attorney's fees; and

F. All other relief as may be appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action asserted within this pleading.

Dated: New York, New York
       November 7, 2019

Respectfully submitted,

/s/ David Boies
David Boies
55 Hudson Yards
New York, NY 10001
Telephone:   (212) 446-2300
Facsimile:    (212) 446-2350

17