quickly to my own cabana that night and went to sleep. Prince Andrew must have flown out early the next morning, as I did not see him when I got up.

46. I have seen Buckingham Palace's recent "emphatic" denial that Prince Andrew had sexual contact with me. That denial is false and hurtful to me. I did have sexual contact with him as I have described here under oath. Given what he knows and has seen, I was hoping that he would simply voluntarily tell the truth about everything. I hope my attorneys can interview Prince Andrew under oath about the contacts and that he will tell the truth.

47. I also had sexual intercourse with Jean Luc Brunel many times when I was 16 through 19 years old. He was another of Epstein's powerful friends who had many contacts with young girls throughout the world. In fact, his only similarity with Epstein and the only link to their friendship appeared to be that Brunel could get dozens of underage girls and feed Epstein's (and Maxwell's) strong appetite for sex with minors.

48. Brunel ran some kind of modeling agency and appeared to have an arrangement with the U.S. Government where he could get passports or other travel documents for young girls. He would then bring these young girls (girls ranging in age from 12 to 24) to the United States for sexual purposes and farm them out to his friends, including Epstein.

49. Brunel would offer the girls "modeling" jobs. A lot of the girls came from poor countries or poor backgrounds, and he lured them in with a promise of making good money.

50. I had to have sex with Brunel at Little St. James (orgies), Palm Beach, New York City, New Mexico, Paris, the south of France, and California. He did not care about conversation, just sex.

51. Jeffrey Epstein has told me that he has slept with over 1,000 of Brunel's girls, and everything that I have seen confirms this claim. Epstein, Brunel, and Maxwell loved orgies with

kids – that is, having sexual interactions with many young teenagers at the same time. Sometimes as many as ten underage girls would participate in a single orgy with them. I personally observed dozens of these orgies. The orgies happened on Epstein's island in the U.S. Virgin Islands, in New Mexico, Palm Beach, and many other places. Most of the girls did not speak English. It was my understanding that the girls had been persuaded to come by Brunel offering them illegal drugs or a career in modeling. Brunel was one of the main procurers of girls.

52. In addition to Ghislaine Maxwell, Sarah Kellen, and ▮▮▮▮▮▮▮▮▮ were also involved in the orgies. At this stage, I am hopeful that these other women will come forward and tell the truth about everything because that will help prevent future similar abuse.

53. I have seen reports saying or implying that I had sex with former President Bill Clinton on Little Saint James Island. Former President Bill Clinton was present on the Island at a time when I was also present on the Island, but I have never had sexual relations with Clinton, nor have I ever claimed to have had such relations. I have never seen him have sexual relations with anyone.

54. I now understand that Epstein reached a non-prosecution agreement with the federal government in 2007 and pled guilty to two state crimes in June 2008. I now know that I was identified by the federal government as one of Epstein's and his co-conspirator's sexually abused victims. However, no one told me about those events until after they happened.

55. On September 3, 2008, the FBI sent a victim notification letter to me. This was the first written communication I had received from the FBI. The letter is attached as Exhibit 1. The letter describes an agreement in which compensation would be made victims of Epstein's

sexual abuse. The letter also said that the federal government was going to "defer federal prosecution." No one had told me about deferring federal prosecution before this.

56. In 2011, two FBI agents, called me in Australia and then came to meet me. They met me at the U.S. Consulate in Sidney. They seemed to be very professional and hard working. I thought to myself, "Wow, these people will do the right thing against the bad guys and protect me."

57. The agents were mainly focused on Epstein but while there I provided them some information about others who were involved in illegal acts as well. I was aware that a false statement to these law enforcement officers was a crime and I told the truth giving them the information that I could recall about the individuals they inquired about.

58. Epstein also trafficked me for sexual purposes to many other powerful men, including politicians and powerful business executives. Epstein required me to describe the sexual events that I had with these men presumably so that he could potentially blackmail them. I am still very fearful of these men today.

59. I will continue to cooperate fully in the investigation and prosecution of Epstein, Maxwell, or any of their friends who participated in the sexual abuse of minors. I also hope that this information is treated in a way that will keep me safe from Epstein and others criminals identified here so as to encourage more victims of similar crimes to come forward. If these crimes are not prosecuted, despite my volunteering this information and cooperation, then it may deter other similar victims from coming forward.

60. In this affidavit, I have tried to focus on how I was trafficked for sexual purposes. I have not described all of the details of the sexual activities Epstein forced me to have. Also, I have not described all of the details of the other events discussed here. If a judge wants me to

present my information in more detail, including more specific descriptions of the sexual activities with the men Epstein sent me to, I could do so.

61. I have directed my attorneys, Bradley J. Edwards and Paul G. Cassell, to pursue all reasonable and legitimate means to have criminal charges brought against these powerful people for the crimes they have committed against me and other girls. They are representing me in this case pro bono.

62. Since I filed my motion in this case, my credibility has been attacked. I am telling the truth and will not let these attacks prevent me from exposing the truth of how I was trafficked for sex to many powerful people. These powerful people seem to think that they don't have to follow the same rules as everyone else. That is wrong. I hope that by coming forward, I can help expose the problem of sex trafficking and prevent the same sort of abuse and degradation that happened to me from happening to other girls.

63. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of January, 2015.

(Location of signature left undisclosed for security reasons)



# EXHIBIT 1

FILED: NEW YORK COUNTY CLERK 01/27/2020 06:10 PM
NYSCEF DOC. NO. 4
INDEX NO. 160874/2019
RECEIVED NYSCEF: 01/27/2020

Case 1:19-cv-03377-LAP   Document 125-3   Filed 05/29/20   Page 6 of 18



U.S. Department of Justice

United States Attorney
Southern District of Florida

500 South Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Facsimile: (561) 820-8777

September 3, 2008

## NOTIFICATION OF IDENTIFIED VICTIM

NOTICE: IN ACCORDANCE WITH TITLE 18, UNITED STATES CODE, SECTION 3509(d) AND FLORIDA LAW, THE ATTACHED DOCUMENT IS TO BE TREATED AS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT IN CONNECTION WITH A LEGAL PROCEEDING.



U.S. Department of Justice

United States Attorney
Southern District of Florida

500 South Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Facsimile: (561) 820-8777

September 3, 2008

VIA COURIER

Re:  Jeffrey Epstein/            NOTIFICATION OF
     IDENTIFIED VICTIM

Dear           :

By virtue of this letter, the United States Attorney's Office for the Southern District of Florida provides you with the following notice because you are an identified victim of a federal offense.

On June 30, 2008, Jeffrey Epstein (hereinafter referred to as "Epstein) entered a plea of guilty to violations of Florida Statutes Sections 796.07 (felony solicitation of prostitution) and 796.03 (procurement of minors to engage in prostitution), in the 15th Judicial Circuit in and for Palm Beach County (Case Nos. 2006-cf-009454AXXXMB and 2008-cf-009381AXXXMB) and was sentenced to a term of twelve months' imprisonment to be followed by an additional six months' imprisonment, followed by twelve months of Community Control 1, with conditions of community confinement imposed by the Court.

In light of the entry of the guilty plea and sentence, the United States has agreed to defer federal prosecution in favor of this state plea and sentence, subject to certain conditions, including the following:

1.  An independent Special Master was assigned the task of selecting an attorney representative to represent the victims, including you, in connection with civil actions between the victims and Mr. Epstein. The

NOTIFICATION OF IDENTIFIED VICTIM
SEPTEMBER 3, 2008
PAGE 2 OF 3

Special Master selected Robert Josefsberg, Esq. of the firm Podhurst Orseck, P.A., a highly-respected and experienced attorney. You are not obligated to use Mr. Josefsberg as your civil attorney, but, as explained in greater detail below, Mr. Josefsberg's services will be provided at no cost to you because Mr. Epstein is obligated to pay the costs and fees of the attorney-representative. Also, Mr. Epstein and his attorneys can only contact you via Mr. Josefsberg, assuming that you would like Mr. Josefsberg to serve as your attorney.

2. If you elect to file suit against Mr. Epstein pursuant to Title 18, United States Code, Section 2255, Mr. Epstein will not contest the jurisdiction of the United States District Court for the Southern District of Florida over his person and/or the subject matter, and Mr. Epstein waives his right to contest liability and also waives his right to contest damages up to an amount as agreed to between you and Mr. Epstein, so long as you elect to proceed exclusively under 18 U.S.C. § 2255, and you waive any other claim for damages, whether pursuant to state, federal, or common law. Notwithstanding this waiver, Epstein's agreement with the United States, his waivers and failure to contest liability and such damages in any suit are not to be construed as an admission of any criminal or civil liability.

3. As stated above, Mr. Epstein has agreed to pay the fees of the attorney representative selected by the independent third party. This provision, however, shall not obligate Epstein to pay the fees and costs of contested litigation filed against him. Thus, if after consideration of potential settlements, you and Mr. Josefsberg elect to file a contested lawsuit pursuant to 18 U.S.C. § 2255 or you elect to pursue any other contested remedy, the obligation to pay the costs of the attorney representative, as opposed to any statutory or other obligations to pay reasonable attorneys fees and costs such as those contained in Section 2255, shall cease.

Please contact either myself at _____ or Justice Department Victim-Witness Specialist Twiler Smith at _____ with a good telephone number and/or e-mail address, so that we may provide Mr. Josefsberg with a timely means of communicating with you. If you would like to contact Mr. Josefsberg

directly, he can be reached at +1 305 358-2800.

If you have already selected other counsel to represent you, or if you do so in the future, and you decide to file a claim against Jeffrey Epstein, Mr. Epstein's attorney, Jack Goldberger, asks that you have your attorney contact Mr. Goldberger at Atterbury Goldberger and Weiss, 250 Australian Avenue South, Suite 1400, West Palm Beach, FL 33401, (561) 659-8300.

In addition, there has been litigation between the United States and two other victims regarding the disclosure of the entire agreement between the United States and Mr. Epstein. Mr. Josefsberg can provide further guidance on this issue, or if you select another attorney to represent you, that attorney can review the Court's order in the matter of *In re Jane Does 1 and 2*, United States District Court for the Southern District of Florida Court File No. 08-80736-CIV-MARRA.

Please understand that neither the U.S. Attorney's Office nor the Federal Bureau of Investigation can take part in or otherwise assist in civil litigation. Thank you for all of your assistance during the course of the federal and state investigations and please accept the heartfelt regards of myself and Special Agents Kuyrkendall, Slater, and Richards for your health and well-being.

Sincerely,

R. Alexander Acosta
United States Attorney

By: *[signature]*

A. Marie Villafaña
Assistant United States Attorney

cc: Robert Josefsberg, Esq.
Jack Goldberger, Esq.

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:08-CV-80736-KAM

JANE DOE 1 and JANE DOE 2,

    Petitioners,

vs.

UNITED STATES OF AMERICA,

    Respondent.

_____/

## ORDER DENYING PETITIONERS' MOTION TO JOIN UNDER RULE 21 AND MOTION TO AMEND UNDER RULE 15

This cause is before the Court on Jane Doe 3 and Jane Doe 4's Corrected Motion Pursuant to Rule 21 for Joinder in Action ("Rule 21 Motion") (DE 280), and Jane Doe 1 and Jane Doe 2's Protective Motion Pursuant to Rule 15 to Amend Their Pleadings to Conform to Existing Evidence and to Add Jane Doe 3 and Jane Doe 4 as Petitioners ("Rule 15 Motion") (DE 311). Both motions are ripe for review. For the following reasons, the Court concludes that they should be denied.

### I. Background

This is an action by two unnamed petitioners, Jane Doe 1 and Jane Doe 2, seeking to prosecute a claim under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. (DE 1). Generally, they allege that the respondent Government violated their rights under the CVRA by failing to consult with them before negotiating a non-prosecution agreement with Jeffrey Epstein, who subjected them to various sexual crimes while they were minors. (Id.). Petitioners initiated this action in July 2008. (Id.).

On December 30, 2014, two other unnamed victims, Jane Doe 3 and Jane Doe 4, moved to join as petitioners in this action pursuant to Federal Rule of Civil Procedure 21. (DE 280). Petitioners (Jane Doe 1 and Jane Doe 2) support the Rule 21 Motion. (Id. at 11). Jane Doe 3 and Jane Doe 4 argue that they "have suffered the same violations of their rights under the [CVRA] as the" Petitioners, and they "desire to join in this action to vindicate their rights as well." (Id. at 1). The Government vehemently opposes joinder under Rule 21. (DE 290). The Government argues that Rule 15 is the proper procedural device for adding parties to an action, not Rule 21. (Id. at 1).

"[O]ut of an abundance of caution," Petitioners filed a motion to amend their petition under Rule 15, conforming the petition to the evidence and adding Jane Doe 3 and Jane Doe 4 as petitioners. (DE 311 at 2). The Government opposes the Rule 15 Motion as well. (DE 314). Among other things, the Government argues that amending the petition to include Jane Doe 3 and Jane Doe 4 should be denied because of their undue delay in seeking to join the proceedings, and the undue prejudice that amendment will cause. (Id.).

After considering the parties' submissions and the proposed amended petition, the Court finds that justice does not require amendment in this instance and exercises its discretion to deny the amendment.

## II. Discussion

"The decision whether to grant leave to amend a complaint is within the sole discretion of the district court." Laurie v. Ala. Ct. Crim. Apps., 256 F.3d 1266, 1274 (11th Cir. 2001). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice does not require amendment in several instances, "includ[ing] undue delay, bad faith, dilatory motive

2

on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" Laurie, 256 F.3d at 1274 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). In addition to considering the effect of amendment on the parties, the court must consider "the importance of the amendment on the proper determination of the merits of a dispute." 6 Wright & Miller, Fed. Prac. & Fed. P. § 1488, p. 814 (3d ed. 2010). Justice does not require amendment where the addition of parties with duplicative claims will not materially advance the resolution of the litigation on the merits. See Herring v. Delta Air Lines, Inc., 894 F.2d 1020, 1024 (9th Cir. 1989).

A.    Rule 21 Motion

Jane Doe 3 and Jane Doe 4's first attempt to join in this proceeding was brought under Rule 21. (DE 280). "If parties seek to add a party under Rule 21, courts generally use the standard of Rule 15, governing amendments to pleadings, to determine whether to allow the addition." 12 Wright & Miller, Fed. Prac. & Fed. P., p. 432 (3d ed. 2013); see also Galustian v. Peter, 591 F.3d 724, 729-30 (4th Cir. 2010) (collecting cases and noting that Rule 15(a) applies to amendments seeking to add parties); Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993) ("A motion to add a party is governed by Fed. R. Civ. P. 15(a) . . . .").

Rule 21, "Misjoinder and Non-joinder of Parties," provides the court with a tool for correcting the "misjoinder" of parties that would otherwise result in dismissal. Fed. R. Civ. P. 21. Insofar as Rule 21 "relates to the addition of parties, it is intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." United States v. Com. Bank of N. Am., 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotation marks omitted).

In their Rule 21 Motion, Jane Doe 3 and Jane Doe 4 do not claim that they were omitted from this proceeding due to any "inadvertence" or "mistake" by Petitioners; rather, they seek to join this proceeding as parties that could have been permissively joined in the original petition under Rule 20 ("Permissive Joinder of Parties"). As courts generally use the standards of Rule 15 to evaluate such circumstances, the Court will consider the joinder issue as presented in the Rule 15 Motion.[1] The Court will consider the arguments presented in the Rule 21 Motion as if they are set forth in the Rule 15 Motion as well. Because the arguments are presented in the Rule 15 Motion (and because the Court is denying the Rule 15 Motion on its merits, as discussed below), the Rule 21 Motion will be denied.

The Court also concludes that portions of the Rule 21 Motion   and related filings   should be stricken from the record. Pending for this Court's consideration is a Motion for Limited Intervention filed by Alan M. Dershowitz, who seeks to intervene to "strike the outrageous and impertinent allegations made against him and [to] request[] a show cause order to the attorneys that have made them." (DE 282 at 1). The Court has considered Mr. Dershowitz's arguments, but it finds that his intervention is unnecessary as Federal Rule of Civil Procedure 12(f) empowers the Court "on its own" to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Petitioners' Rule 21 Motion consists of relatively little argumentation regarding why the Court should permit them to join in this action: they argue that (1) they were sexually abused by

---

[1] The Court notes that, regardless of which motion it considers, the same standard governs the addition of parties under Rule 21 and Rule 15. See Goston v. Potter, No. 08-cv-478 FJS ATB, 2010 WL 4774238, at *5 (N.D.N.Y. 2010) (citing Bridgeport Music, Inc. v. Universal Music Grp., Inc., 248 F.R.D. 408, 412 (S.D.N.Y. 2008)).

Jeffrey Epstein, and (2) the Government violated their CVRA rights by concealing the non-prosecution agreement with them. (DE 280 at 3; see id. at 7-8). However, the bulk of the Rule 21 Motion consists of copious factual details that Jane Doe 3 and Jane Doe 4 "would prove" "[i]f allowed to join this action." (Id. at 3, 7). Specifically, Jane Doe 3 proffers that she could prove the circumstances under which a non-party introduced her to Mr. Epstein, and how Mr. Epstein sexually trafficked her to several high-profile non-party individuals, "including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders." (Id. at 3-6). She names several individuals, and she offers details about the type of sex acts performed and where they took place. (See id. at 5).[2]

At this juncture in the proceedings, these lurid details are unnecessary to the determination of whether Jane Doe 3 and Jane Doe 4 should be permitted to join Petitioners' claim that the Government violated their rights under the CVRA. The factual details regarding with whom and where the Jane Does engaged in sexual activities are immaterial and impertinent to this central claim (i.e., that they were known victims of Mr. Epstein and the Government owed them CVRA duties), especially considering that these details involve non-parties who are not related to the respondent Government. These unnecessary details shall be stricken.

The original Rule 21 Motion (DE 279) shall be stricken in its entirety, as it is wholly superseded by the "corrected" version of the Rule 21 Motion (DE 280). From the corrected Rule 21 Motion, the Court shall strike all factual details regarding Jane Doe 3 between the following sentences: "The Government then concealed from Jane Doe #3 the existence of its NPA from

---

[2] Jane Doe 4's proffer is limited to sexual acts between Mr. Epstein and herself. (See DE 280 at 7-8).

Jane Doe #3, in violation of her rights under the CVRA" (id. at 3); and "The Government was well aware of Jane Doe #3 when it was negotiating the NPA, as it listed her as a victim in the attachment to the NPA" (id. at 6). As none of Jane Doe 4's factual details relate to non-parties, the Court finds it unnecessary to strike the portion of the Rule 21 Motion related to her circumstances. Regarding the Declaration in support of Petitioners' response to Mr. Dershowitz's motion to intervene (DE 291-1), the Court shall strike paragraphs 4, 5, 7, 11, 13, 15, 19 through 53, and 59, as they contain impertinent details regarding non-parties. Regarding the Declaration of Jane Doe 3 in support of the Rule 21 Motion (DE 310-1), the Court shall strike paragraphs 7 through 12, 16, 39, and 49, as they contain impertinent details regarding non-parties. Jane Doe 3 is free to reassert these factual details through proper evidentiary proof, should Petitioners demonstrate a good faith basis for believing that such details are pertinent to a matter presented for the Court's consideration.

As mentioned, Mr. Dershowitz moves to intervene "for the limited purposes of moving to strike the outrageous and impertinent allegations made against him and requesting a show cause order to the attorneys that have made them." (DE 282 at 1). As the Court has taken it upon itself to strike the impertinent factual details from the Rule 21 Motion and related filings, the Court concludes that Mr. Derschowitz's intervention in this case is unnecessary. Accordingly, his motion to intervene will be denied as moot.[3] Regarding whether a show cause order should

---

[3] This also moots Mr. Dershowitz's Motion for Leave to File Supplemental Reply in Support of Motion for Limited Intervention. (DE 317). Denying Mr. Dershowitz's motion to intervene also renders moot Petitioners' motion (DE 292) to file a sealed document supporting its response to Mr. Dershowitz's motion. It will accordingly be denied as moot, and DE 293 (the sealed response) will be stricken from the record.

issue, the Court finds that its action of striking the lurid details from Petitioners' submissions is sanction enough. However, the Court cautions that all counsel are subject to Rule 11's mandate that all submissions be presented for a proper purpose and factual contentions have evidentiary support, Fed. R. Civ. P. 11(b)(1) and (3), and that the Court may, on its own, strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f).

**B.     Rule 15 Motion**

Between their two motions (the Rule 21 Motion and Rule 15 Motion), Jane Doe 3 and Jane Doe 4 assert that "they desire to join in this action to vindicate their rights [under the CVRA] as well." (DE 280 at 1). Although Petitioners already seek the invalidation of Mr. Epstein's non-prosecution agreement on behalf of all "other similarly-situated victims" (DE 189 at 1; DE 311 at 2, 12, 15, 18-19), Jane Doe 3 and Jane Doe 4 argue that they should be fellow travelers in this pursuit, lest they "be forced to file a separate suit raising their claims" resulting in "duplicative litigation" (DE 280 at 11). The Court finds that justice does not require adding new parties this late in the proceedings who will raise claims that are admittedly "duplicative" of the claims already presented by Petitioners.

The Does' submissions demonstrate that it is entirely unnecessary for Jane Doe 3 and Jane Doe 4 to proceed as parties in this action, rather than as fact witnesses available to offer <u>relevant</u>, <u>admissible</u>, and <u>non-cumulative</u> testimony. (See, e.g., DE 280 at 2 (Jane Doe 3 and Jane Doe 4 "are in many respects similarly situated to the current victims"), 9 ("The new victims will establish at trial that the Government violated their CVRA rights in the same way as it violated the rights of the other victims."), 10 (Jane Doe 3 and Jane Doe 4 "will simply join in motions that the current victims were going to file in any event."), 11 (litigating Jane Doe 3 and

Jane Doe 4's claims would be "duplicative"); DE 298 at 1 n.1 ("As promised . . . Jane Doe No. 3 and Jane Doe No. 4 do not seek to expand the number of pleadings filed in this case. If allowed to join this action, they would simply support the pleadings already being filed by Jane Doe No. 1 and Jane Doe No. 2."); DE 311 at 5 n.3 ("[A]ll four victims (represented by the same legal counsel) intend to coordinate efforts and avoid duplicative pleadings."), 15 (Jane Doe 3 and Jane Doe 4 "challenge the same secret agreement — i.e., the NPA that the Government executed with Epstein and then concealed from the victims. This is made clear by the proposed amendment itself, in which all four victims simply allege the same general facts.")). As the Does argue at length in their Rule 15 Motion, Jane Doe 1's original petition "specifically allege[s] that the Government was violating not only her rights but the rights of other similarly-situated victims." (DE 311 at 2). The Court fails to see why the addition of "other similarly-situated victims" is now necessary to "vindicate their rights as well." (DE 280 at 1).

Of course, Jane Doe 3 and Jane Doe 4 <u>can</u> participate in this litigated effort to vindicate the rights of similarly situated victims — there is no requirement that the evidentiary proof submitted in this case come only from the named parties. Petitioners point out as much, noting that, regardless of whether this Court grants the Rule 15 Motion, "they will call Jane Doe No. 3 as a witness at any trial." (DE 311 at 17 n.7). The necessary "participation" of Jane Doe 3 and Jane Doe 4 in this case can be satisfied by offering their properly supported — and <u>relevant</u>, <u>admissible</u>, and <u>non-cumulative</u> — testimony as needed, whether through testimony at trial (<u>see</u> DE 280 at 9) or affidavits submitted to support the relevancy of discovery requests[4] (<u>see</u>

---

[4] The non-party Jane Does clearly understand how to submit affidavits. (<u>See</u> DEs 291-1, 310-1).