

MICHAEL A. BRILLE, General Counsel
Tel.: (202) 237-2727; E-mail: mbrille@bsfllp.com

June 5, 2020

**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   *Giuffre v. Dershowitz*, 19-cv-03377 (LAP)

Dear Judge Preska:

I write in response to Alan Dershowitz's May 29, 2020 request for a pre-motion conference and to correct the misleading presentation by his counsel of Boies Schiller Flexner LLP's position regarding his subpoena ("Subpoena"). I understand that you previously directed the parties "to talk about this before you start throwing paper at each other." Dkt. 96 at 24:14-15. Dershowitz filed his pre-motion letter in the midst of those very discussions.

On January 10, 2020, BSF served its initial objections to Dershowitz's demand that BSF produce essentially every document in its possession that might refer to him, as well much more related and unrelated to the firm's representation of Virginia Guiffre, over more than a twenty-year period. At the same time, BSF invited his counsel to "find some time to have a discussion, including with respect to next steps." Dkt. 125-10 at 7. His counsel did not respond for more than two months. *Id*.

When he did respond, BSF explained the substantial burden and cost imposed by the Subpoena because, among other reasons, it set forth a date range exceeding 22 years ("January 1, 1998 through the date of Your response"); sought more than five years of almost daily, privileged communications between BSF and its client; sought communications made under a promise of confidentiality without a protective order in place; sought communications with unidentified media outlets and journalists; and sought internal documents "concerning" those communications, raising serious privilege and work product concerns. Moreover, with BSF's offices closed and pertinent material stored on individual laptops, even an initial assessment of the sheer volume of documents being demanded required an arduous remote collection. In response, Dershowitz's counsel refused to narrow the date range for anything beyond two requests (although conceding that 2014-2016 was the period "most likely to be relevant to the subject matter of this litigation"); refused to propose search terms for any client communications; and continued to press for unidentified media communications (providing names "[w]ithout limiting the request"). Dkt. 125-10 at 3-5.

In the meantime, to assess the burden associated with these broad requests, BSF collected documents remotely and ran test searches using the search terms provided by Dershowitz. The result was a collection of more than 230,000 documents—an extraordinary volume to review for



actual responsiveness. Indeed, the search terms run against the 2014-2016 period alone returned over 70,000 documents. Obviously, trying to assess and log those communications would require extraordinary efforts (and costs) and take months to complete. *Id*. at 1-2.

Even so, BSF did ***not*** refuse to produce all documents (other than engagement letters) or any privilege log, as Dershowitz falsely asserts in his May 29 letter. Rather, on May 11, BSF offered a proposal to produce documents responsive to Requests 1-5 and 10-12 – broadly speaking, any relevant, non-privileged communications between BSF and identified third parties – if Dershowitz would agree to undertake "reasonable steps to avoid imposing undue burden or expense" on BSF, as Rule 45(d)(1) requires. That proposal included (a) limiting the date range for all requests to the 2014-2016 period that counsel had already admitted was "most likely to be relevant to the subject matter of this litigation"; (b) identifying email recipients and refining search terms to reduce the volume of documents that needed be manually reviewed; and (c) compensating BSF for the costs imposed by the Subpoena. *See, e.g., In re Subpoena to Loeb & Loeb LLP*, 19 Misc. Civ. 241 (PAE), 2019 WL 2428704 (S.D.N.Y. Jun. 11, 2019). BSF stood on its objections to Dershowitz's demand to produce documents that have absolutely no relevance to this litigation (Requests 6-9).

For Requests 1 and 2, BSF offered to "consider providing a privilege log [for client communications] if you alleviate this undue burden by supplying narrower search terms designed to identify only the documents most pertinent to your claims and agreeing to advance BSF the costs of complying with each of your requests." Dkt. 125-10 at 2. For Request 3, BSF offered to "produce any direct communications with Mr. Wexner (but not its related internal documents), subject to the issuance of an appropriate protective order to protect this production from further disclosure, in view of the expectation of confidentiality with which these communications were conducted." *Id*. With respect to Requests 4 and 5, BSF offered to "produce any direct communications with identified journalists and media outlets relating to this matter (but not its internal documents) if you could provide a list of email addresses and domains, as well as narrow search terms designed to return a reasonable volume of responsive documents only, which thus far has not occurred." *Id*.[1] For Request 10, BSF offered to "produce any direct communications with the individuals you identify and their representatives relating to this matter (but not its internal documents or communications relating to the Maxwell litigation) if you could provide narrower search terms that return a reasonable volume of documents, which thus far has not occurred." *Id*. Finally, for Request 11, BSF advised counsel that it "is barred by the express terms of the agreements you request from disclosing their unredacted content; and, for some, absent Mr. Dershowitz obtaining a court order on notice to the affected parties." *Id*. BSF must respect and adhere to these contractual limitations before any disclosure could be made.

Dershowitz never responded and instead filed his May 29 letter. He apparently considers it reasonable to demand that BSF manually review more than 230,000 documents, as his counsel refuses to provide any further search terms that would allow for a more refined computer search. He also continues to demand not just a privilege log, but an overbroad log of at least 70,000

---

[1] Counsel never explained the relevance of any such documents created after Dershowitz himself publicized his conspiracy theory in 2015. https://www.nytimes.com/2015/12/13/business/alan-dershowitz-on-the-defense-his-own.html.



documents, no matter the cost and labor required, and despite the fact that the Committee Note to Local Rule 26.2(c) expressly states that "traditional document-by-document privilege logs may be extremely expensive to prepare, and not really informative to opposing counsel and the Court."

He also wrongly believes he can make those demands by asserting meritless crime-fraud and waiver arguments. Ms. Guiffre did not place five years of attorney-client communications at issue by denying non-existent communications. *In Re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) ("waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense"). His crime-fraud assertions are equally baseless, because where, as here, "the very act of litigating is alleged as being in furtherance of a fraud, the party seeking disclosure under the crime-fraud exception must show probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud." *In re Richard Roe, Inc.* (*Roe II*), 168 F.3d 69, 71 (2d Cir. 1999). This Court's denial of Dershowitz's motion to dismiss in this action undermines any such assertion. *Levy v Young Adult Institute*, 13-CV-02861 (JPO) (SN), 2015 WL 10891654, *3 (S.D.N.Y. Dec. 14, 2015).[2]

As in *Loeb*, Dershowitz's continued attempts to enforce such an overbroad subpoena warrants shifting the costs of compliance to him—to "further encourage the [the subpoenaing party] to judge, at the threshold, whether [the subpoenaed law firm] likely possesses enough non-privileged documents of consequence to the [proceeding] to justify undertaking extensive, and discovery." *Loeb*, 2019 WL 2428704, at *5.[3] Without this, he is motivated to ***increase*** the burdens and expenses BSF must bear, not "avoid imposing" them, as Rule 45 demands. Dershowitz already has engaged in malicious, damaging conduct toward BSF and its Chairman. *See* Dkt. 125-1. Unless forced to moderate, he is never likely to authorize his counsel to make the mandatory reasonable accommodations to BSF required by Rule 45.

Beyond this directive, there is no need for a pre-motion conference. His request should be denied, and the parties instructed to resume good-faith negotiations. Thank you.

Respectfully yours,

BOIES SCHILLER FLEXNER LLP

By: /s/ Michael A. Brille

Michael A. Brille
Richard E. Weill

cc: All counsel via ECF

---

[2] Moreover, Mr. Wexner (Dershowitz's alleged extortion victim) denies that there ever was an extortion plot against him. *See* https://www.columbusmonthly.com/news/20191203/what-jeffrey-epstein-scandal-means-to-columbus-and-les-wexner ("A source close to Wexner also says there was no extortion.").

[3] *Loeb* ordered cost shifting where compliance would entail review of "25,000 documents that are responsive to the Subpoena," *id.* at *4-6—while almost ten times as many documents are involved here.