# Cooper & Kirk

Lawyers
A Professional Limited Liability Company

Charles J. Cooper  
(202) 220-9660  
ccooper@cooperkirk.com

1523 New Hampshire Avenue, N.W.  
Washington, D.C. 20036

(202) 220-9600  
Fax (202) 220-9601

June 5, 2020

**VIA ECF**

The Honorable Loretta A. Preska  
United States District Court  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

      Re:    *Giuffre v. Dershowitz*, **Case No. 19-cv-3377-LAP**  
              Rule 45 Subpoena to Boies Schiller Flexner LLP ("Subpoena")

Dear Judge Preska:

      I write on behalf of Plaintiff Virginia Giuffre in response to Defendant Alan Dershowitz's letter requesting a pre-motion conference concerning the Subpoena issued by Defendant to Boies Schiller Flexner LLP ("BSF"), Plaintiff's prior counsel in this matter and her current counsel in other ongoing Epstein-related matters. (Doc. 125). Although Plaintiff is not the target of the Subpoena, she respectfully submits this letter in her capacity as the party-Plaintiff and as one of the individuals whose privileged attorney-client communications fall within the Subpoena's broad scope.

      Plaintiff respectfully submits that Defendant's request to litigate the contours of the Subpoena is premature. Over the past two months, Defendant has served similarly broad subpoenas on Plaintiff's other counsel—Edwards Pottinger LLC, Stanley Pottinger, Brad Edwards, and Paul Cassell. In addition, Defendant has served similarly broad document requests upon Plaintiff. The parties are in the middle of good faith negotiations over the scope of Defendant's document requests, and Plaintiff understands that her other counsel are likewise attempting to negotiate the appropriate response to the subpoenas served on them. It will be a better use of party, third-party, and judicial resources to defer considering the issues raised by Defendant's letter until Plaintiff, Defendant, and the third parties have exhausted their efforts to reach an understanding about the scope of the requests and an agreement about which documents (if any) will be produced voluntarily. There is significant overlap between the document requests and subpoenas, so only after negotiations have concluded can the Court meaningfully assess the proportionality of the remaining requests. Moreover, the subpoenas to Plaintiff's other counsel are likely to give rise to privilege disputes identical to those outlined in Defendant's letter. Especially given BSF's representation that negotiations concerning the Subpoena were ongoing, Defendant should be required to conclude his negotiations with all of Plaintiff's counsel, at least as they pertain to Defendant's requests for her privileged communications, before seeking this Court's intervention.

As the privilege holder for many of the privileged communications covered by the Subpoena, Plaintiff also wishes to respond to Defendant's substantive points concerning the privilege. Defendant has not come close to meeting the showing required to obtain an *in camera* review of the privileged materials under the crime-fraud exception. In order to obtain *in camera* review, a party must show "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989) (quotation marks omitted). Generally, "the proposed factual basis must strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) (quotation marks omitted), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351 (2014). A party must make an even higher showing, however, "[w]here the very act of litigating is alleged as being in furtherance of a fraud": he must demonstrate "probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering a crime or fraud." *In re Richard Roe, Inc.* (*Roe II*), 168 F.3d 69, 71 (2d Cir. 1999); *see also United States v. Ceglia*, No. 12-876, 2015 WL 1499194, *3 (S.D.N.Y. Mar. 30, 2015).

Defendant has not made even the threshold showing required to obtain *in camera* review, much less the heightened showing required of him because he alleges that "the very act of litigating" is "in furtherance of a fraud." *Roe II*, 168 F.3d at 71. In support of his patently incredible theory that at least a half dozen highly respected officers of this and many other courts risked their reputations, their bar licenses, their careers, and potentially their freedom to execute a fraudulent "shakedown" conspiracy in which they pressured a trafficking victim to falsely accuse Defendant in order to "use the example they made of him . . . to extort" settlements from wealthy individuals, Defendant's letter points to just three pieces of "evidence": (1) court filings in which Plaintiff accuses Defendant of sexual abuse and complicity in trafficking (filings that are innocent if Plaintiff's accusations are true), (2) an email in which a journalist states that Defendant was suspected of being a pedophile but that the *journalist* was not aware of proof of that fact (which has no bearing on *Plaintiff's* state of mind), and (3) double hearsay consisting of Defendant's selective account of a conversation in which Plaintiff's estranged friend allegedly recounted that Plaintiff was reluctant to accuse Defendant publicly (which, even if true, suggests a lack of malice on Plaintiff's part).[1] (Doc. 125). Defendant also *asserts* that Plaintiff directed her attorneys to contact Wexner's lawyers—an assertion that is in some tension with his allegation in his Counterclaims that Plaintiffs' attorneys pressured her to carry out their scheme. (*Id.*) Of course, an attorney contacting another party's lawyer as part of a due diligence inquiry into a potential claim that his client may have against that other party is an entirely ordinary occurrence in the practice of law. Defendant's unsupported assertions and question-begging interpretations of such ambiguous evidence, not to mention the sheer implausibility of his conspiracy theory itself, would leave a "prudent person" incredulous—not convinced there is a reasonable likelihood that *in camera* review would reveal evidence of a crime or fraud.

---

[1] Defendant has elsewhere claimed that Plaintiff's attorney David Boies stated that he does not believe Plaintiff's allegations about Defendant, (Doc. 118, Counterclaims ¶ 34), but the unlawful recording of the conversation is indecipherable, (Doc. 79), and Defendant's account has been contradicted by Boies and numerous witnesses to contemporaneous negotiations, including Defendant's own representative. (Docs. 36-12–36-14). Understandably, Defendant does not point to the recording as part of his "factual basis" supporting *in camera* review.

June 5, 2020
Page 3

      Defendant's alternative argument that Plaintiff waived her privilege is also unavailing. Given the breadth of his requests in the Subpoena and in the litigation more broadly, Defendant effectively posits that, merely by alleging that she did not engage in the outlandish conspiracy of which Defendant accuses her, Plaintiff has put all of her communications with all of her attorneys at issue. Fairness is the touchstone of the waiver analysis. *See John Doe v. United States*, 350 F.3d 299, 304 (2d Cir. 2003); *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987). If a person accused of engaging in a criminal conspiracy with her attorneys can be put to the choice of either leaving the accusation unanswered or turning over nearly a decade of privileged communications concerning sexual assault to her accused abuser, then the important "policy of protecting open and legitimate disclosure between attorneys and clients," *Zolin*, 491 U.S. at 571, will have been seriously compromised. In any event, it is premature to determine whether the privilege is impairing Defendant's defense. Plaintiff has not yet sought to prove the elements of her claims by selectively disclosing the substance of privileged communications. If and when she does so, the Court will have an opportunity to consider whether fairness dictates that she or her attorneys must make additional disclosures to enable Defendant to defend himself. Until then, nothing in the law supports finding a blanket waiver simply because Plaintiff has filed a complaint defending her good name and reputation.

      For all of these reasons, Plaintiff respectfully requests that the Court direct Defendant to continue good faith negotiations with her, BSF, and other third parties before moving to compel a response to the Subpoena.

Respectfully,

s/ Charles J. Cooper
Charles J. Cooper

cc: Counsel of Record