UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

       Plaintiff / Counterclaim Defendant,

  v.

ALAN DERSHOWITZ,

       Defendant / Counterclaim Plaintiff

Case No. 19-cv-03377-LAP

**PROFESSOR ALAN DERSHOWITZ'S OPPOSITION TO VIRGINIA L. GIUFFRE'S**
**<u>MOTION TO DISMISS AMENDED COUNTERCLAIMS</u>**

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................... iii

Introduction .................................................................................................................... 1

Argument ....................................................................................................................... 2

    I.     Giuffre's Defamatory Statements Are Not Privileged ................................... 3

        A.  The Litigation Privilege Does Not Apply to Giuffre's In-Court Statements in the Crime Victims' Rights Act ("CVRA") Litigation Because Those Statements Were Deliberately and Maliciously Inserted into the Public Record, Leaked to the Media for Improper Purposes, and Stricken Under Rule 12(f) as "Immaterial and Impertinent." .......................................................................................... 3

        B.  Neither the "Fair Report" Privilege Nor the Litigation Privilege Protect Giuffre's Out-of-Court Statements. ................................................................... 5

            i.      The Fair Report Privilege Does Not Protect Out-of-Court Statements from Maliciously Instituted Litigations as Dershowitz Alleges Here. ................. 5

            ii.     The Litigation Privilege Does Not Protect Out-of-Court Statements Because They Are Outside the Scope or Were Made Maliciously or With Knowledge of Falsity. ................................................................................ 6

            iii.    Giuffre's Out-of-Court Statements Are Not Protected by Either Privilege Because They Are Outside the Scope or Were Made Maliciously or With Knowledge of Falsity. ................................................................................ 8

                1.  Giuffre's Statements Are Not Protected by the Fair Report Privilege ... 8

                2.  Giuffre's Statements Are Not Protected by the Litigation Privilege. .... 9

    II.    Giuffre's Statements Based on Her CVRA Joinder Motion and CVRA Declaration Have Been Republished Within the Statute of Limitations. ....................................... 11

    III.   The Statements Set Forth in Paragraph 42(b), (c), (f) and (g) Are Supported by Facts Sufficient to Establish Vicarious Liability ................................................................. 13

    IV.   Statements in Paragraphs 39 and 42(b), (c), (d), (f) and (g) Are Actionable as Statements of Fact or Mixed Opinion. ................................................................. 14

    V.    Dershowitz Adequately Pled All Defamatory Statements Under Rule 8. ................. 17

VI.    Dershowitz Adequately Pled His Intentional Infliction of Emotional
        Distress Claim.................................................................................................18

Conclusion ..............................................................................................................20

Certificate of Service ............................................................................................. vii

Tab A ....................................................................................................................T-1

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                                   <u>Page</u>

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982)............................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ...................................................................................2, 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ..........................................................................2

*Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*,
608 F. Supp. 1187 (S.D.N.Y. 1985)...............................................................................6, 7, 10, 13

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019). ....................................................................3, 4, 5

*Butler v. Delaware Otsego Corp.*, 610 N.Y.S.2d 664 (1994)........................................................18

*Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355 (W.D.N.Y. 2010). ................................19

*Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169 (S.D.N.Y. 1988). ...........................................13

*D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211 (E.D.N.Y. 2012). ...............................................6

*Dachowitz v. Kranis*, 401 N.Y.S.2d 844 (1978). ...........................................................................3

*Davis v. Boeheim*, 24 N.Y.3d 262 (2014). ............................................................................15, 16

*Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610 (E.D.N.Y. 2018)......................7

*Dillon v. City of New York*, 704 N.Y.S.2d 1 (1999). ...................................................................15

*Edwards & Cassell v. Dershowitz*, No. CACE 15-000072 (17th Judicial District, Broward
County, Florida)..............................................................................................................................8

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 CIV. 5105 NRB,
2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014). ...............................................................................2

*Feist v. Paxfire, Inc.*, No. 11-cv-5436, 2017 WL 177652 (S.D.N.Y. Jan. 17, 2017). ..............7, 13

*Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015). .........................................................................7, 10

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18 CIV 5290 (CM), 2019 WL 1768965
(S.D.N.Y. Apr. 4, 2019)...................................................................................................6, 11, 14

*GEM Holdco, LLC v. Changing World Techs.*, No. 650941/2013, 2014 WL 4249134
(N.Y. Sup. Ct. Aug. 28, 2014). ...................................................................................................6, 7

*Giglio v. Rubin*, 104 N.Y.S.2d 263 (App. Div. 1951). ...................................................13

*Giuffre v. Maxwell*, 165 F. Supp. 3d 147 (S.D.N.Y. 2016). ..................................... *passim*

*Giuffre v. Maxwell*, No. 15 CIV. 7433, 2017 WL 1536009 (S.D.N.Y. Apr. 27, 2017).................7

*Gonzalez v. Bratton*, 48 F. App'x 363 (2d Cir. 2002) (summary order). ................................18, 19

*Green Acres Trust v. London*, 688 P.2d 658 (Ariz. Ct. App. Dep't A 1983). ..............................13

*Green v. Cosby,* 138 F. Supp. 3d 114 (D. Mass. 2015). .............................................11, 12

*Green v. Fischbein*, 522 N.Y.S.2d 529 (1st Dep't 1987)................................................19

*Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993)....................................................15

*Halcyon Jets, Inc. v. Jet One Grp., Inc.*, 894 N.Y.S.2d 392 (1st Dep't 2010)..............................6

*Halperin v. Salvan*, 499 N.Y.S.2d 55 (1986)..............................................3, 9, 19, 20

*Hanly v. Powell Goldstein, LLP*, No. 05 CV 5089, 2007 WL 747806
(S.D.N.Y. Mar. 9, 2007), *aff'd*, 290 F. App'x 435 (2d Cir. 2008)................................19

*Hillgardner v. Chambi*, 959 N.Y.S.2d 89 (App. Term 2012)..........................................3

*In re Swift*, No. 94-10285-CEC, 2016 WL 355515 (Bankr. E.D.N.Y. Jan. 28, 2016). ................20

*James v. DeGrandis*, 138 F. Supp. 2d 402 (W.D.N.Y. 2001). ......................................19

*Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y. 1998). ......................................17, 18

*Kaye v. Trump*, 873 N.Y.S.2d 5 (2009). ..............................................................19

*Kelly v. Schmidberger*, 806 F.2d 44 (2d Cir. 1986)..........................................17, 18

*Lacher v. Engel*, 817 N.Y.S.2d 37 (2006). ...........................................................16

*La Duke v. Lyons*, 673 N.Y.S.2d 240 (1998)............................................................19

*Larson v. Perry*, No. 19-CV-10203-IT, 2020 WL 1495883 (D. Mass. Mar. 27, 2020). ................3

*Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15-cv-4779,
2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016)...........................................................16

*Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285 (S.D.N.Y. 2005). ...........................16

iv

*Moore v. Manufacturers' Nat. Bank*, 123 N.Y. 420 (1890)............................................................3

*Morgan Art Found. Ltd. v. McKenzie*, No. 18-cv-4438, 2019 WL 2725625
(S.D.N.Y. July 1, 2019). .............................................................................................................7

*Murphy v. Metro. Transp. Auth.*, 548 F. Supp. 2d 29 (S.D.N.Y. 2008). ......................................13

*Natural Res. Media & Tech. Grp., LLC v. Snoop Youth Football League Found.*,
No. 07 CIV. 7701 (SAS), 2008 WL 728650 (S.D.N.Y. Mar. 14, 2008). .....................................17

*O'Brien v. Alexander*, 898 F. Supp. 162 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir. 1996). ...6

*P&G Auditors & Consultants, LLC v. Mega Int'l Commercial Bank Co.*,
No. 18-CV-9232 (JPO), 2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019). .....................................18

*Pandozy v. Tobey*, No. 06 CIV. 12885 (CM), 2007 WL 3010333 (S.D.N.Y. Oct. 11, 2007). ........3

*Pezhman v. Chanel*, 67 N.Y.S.3d 618............................................................................................3

*Reszka v. Collins*, 25 N.Y.S.3d 457 (N.Y. App. Div. 2016)...........................................................6

*Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422 (1981)................................................................11

*Stuto v. Fleishman*, 164 F.3d 820 (2d Cir. 1999)..........................................................................19

*Sullivan v. Board of Educ.*, 517 N.Y.S.2d 197 (2d Dep't 1987)..............................................18, 20

*The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F. Supp. 555
(S.D.N.Y. 1976). .........................................................................................................................7

*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995). ...................................................................13

*Villacorta v. Saks Inc.*, 932 N.Y.S.2d 764 (Sup. Ct. 2011). .........................................................19

*Volpe v. Paniccioli*, 72 N.Y.S.3d 519 (N.Y. Sup. Ct. 2017)..........................................................6

*Williams v. Williams*, 23 N.Y.2d 592 (1969). ...........................................................................5, 6

*Worytko v. Cty. of Suffolk*, No. 03 CV 4767, 2007 WL 1876503 (E.D.N.Y. June 28, 2007)........19

<u>Other Authorities</u>

Fed. R. Civ. P. 8.......................................................................................................................2, 17

Fed. R. Civ. P. 12(f)................................................................................................................3, 4, 9

Fed. R. Civ. P. 12(b)(6)..............................................................................................2

N.Y. C.P.L.R. § 203(d)..............................................................................................12

N.Y. Civ. Rights Law § 74. .........................................................................................5

Giuffre's Opp. to Mot. Dismiss, *Giuffre v. Maxwell*, 165 F. Supp. 3d 147
(S.D.N.Y. 2016) (15-cv-07433), ECF No. 23.......................................................6, 10

## INTRODUCTION

Plaintiff Virginia Giuffre's ("Plaintiff" or "Giuffre") partial motion to dismiss asks the Court to ignore its own prior rulings based upon arguments she previously raised successfully. For example, in opposing Defendant Alan Dershowitz's ("Defendant" or "Dershowitz") motion to dismiss based upon the self-defense privilege under the First Amendment, Giuffre argued that Dershowitz could not claim the protection of the privilege because that defense was not limitless, and Giuffre had adequately pled constitutional malice at the motion to dismiss stage. ECF No. 67 at 28-29. The Court agreed and in doing so remarked that although Dershowitz could not avail himself of the privilege at the motion to dismiss stage, he was nevertheless himself "always free to sue Giuffre if he felt aggrieved by what he views as her false and defamatory statements about him." ECF No. 67 at 27-28. Giuffre now hypocritically asks this Court to apply the litigation and fair report privileges in a manner which contradicts her prior position, is contrary to law, and ignores Dershowitz's well-pled allegations. In doing so, she ignores the limiting principles which demarcate the boundary of their applications so as to somehow make her completely immune from liability for every one of her knowingly false and malicious defamatory statements alleged in Dershowitz's Amended Counterclaims save for a single accusation which she attempts to quietly concede in a footnote she cannot seek to dismiss.

As discussed below, Giuffre's motion is without merit. She asks the Court, improperly, to shield her false character assassination of, and defamatory statements about, Dershowitz under the litigation privilege when the very statements she references have already been struck as impertinent from the litigation in which they were uttered — the very situation to which the Second Circuit has said the litigation privilege does not apply. She ignores that Dershowitz has properly and plausibly alleged that she published other of her statements both maliciously and

with knowledge of their falsity, causing them to enjoy no protection under any privilege. Indeed, as the Court has already recognized, either Giuffre or Dershowitz is intentionally lying about and has intentionally defamed the other, and a jury will have to decide who is the liar. ECF No. 67 at 29. Dershowitz's well-pled allegations directly accuse Giuffre of being the malicious liar by having made up stories of sexual encounters that never occurred. The privileges in which Giuffre attempts to seek refuge provide no protection for her intentional misuse of the litigation process in knowingly publishing lies about Dershowitz or having her agent attorneys carry out her dirty work maliciously and with maximum publicity. Professor Dershowitz's claims allege that Giuffre has defamed him intentionally, maliciously, categorically, and indeed as part of an extortionate conspiracy. They are all well-pled and should be allowed to proceed. Likewise, his intentional infliction of emotional distress claim is well-pled, directed at distinct harm and conduct, and should also proceed. Here, the alleged defamation — maliciously and falsely accusing an innocent man of a horrible crime of moral turpitude — is not merely a "plausible" cause of action; it is certain.

## ARGUMENT

The pleading standard that applies to complaints under Rule 8(a) also applies here to a Rule 12(b)(6) motion to dismiss counterclaims. *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 CIV. 5105 NRB, 2014 WL 3950897, at *7 (S.D.N.Y. Aug. 13, 2014). Dershowitz's counterclaims require only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dershowitz has sufficiently alleged his claims, because they contain "factual content that allows the court to draw the reasonable inference that

the [counterclaim] defendant is liable for the misconduct alleged[.]" *Iqbal*, 556 U.S. at 678-79. A

court should "draw on its judicial experience and common sense" to evaluate plausibility. *Id.*

The allegations at issue are already before the Court.  Dershowitz will not repeat them

here, but for the convenience of the Court they are appended hereto at Tab A.

**I.**   **Giuffre's Defamatory Statements Are Not Privileged.**

**A.**   **The Litigation Privilege Does Not Apply to Giuffre's In-Court Statements in the Crime Victims' Rights Act ("CVRA") Litigation Because Those Statements Were Deliberately and Maliciously Inserted into the Public Record, Leaked to the Media for Improper Purposes, and Stricken Under Rule 12(f) as "Immaterial and Impertinent."**

Dershowitz has sufficiently alleged each of his claims of defamation. Giuffre's assertion

that the litigation privilege protects her and her attorneys' statements from liability against the

Amended Counterclaims ("AC") is without merit.  ECF No. 127. The law here is clear.

"Statements made in the course of a judicial proceeding or a quasi-judicial proceeding will not

be afforded the protection of an absolute privilege if they are not pertinent to those proceedings."

*Hillgardner v. Chambi*, 959 N.Y.S.2d 89 (App. Term 2012). The Second Circuit has been

explicit in its limitation on the privilege: statements must be "material and pertinent to the

questions involved" in order to come within the privilege. *Brown v. Maxwell*, 929 F.3d 41, 53

n.47 (2d Cir. 2019) (citation omitted); *see also Moore v. Manufacturers' Nat. Bank*, 123 N.Y.

420, 426 (1890); *Dachowitz v. Kranis*, 401 N.Y.S.2d 844, 849 (1978).[1]

---

[1] The "impertinence" limitation has also been construed as a malice exception rendering actionable defamatory statements made solely to defame a defendant. *Halperin v. Salvan*, 499 N.Y.S.2d 55 (1986). *Halperin's* basis in law has been questioned by courts over the years (*see, e.g.*, *Pandozy v. Tobey*, No. 06 CIV. 12885 (CM), 2007 WL 3010333 (S.D.N.Y. Oct. 11, 2007)), but it continues to be cited as an exception. *Pezhman v. Chanel*, 67 N.Y.S.3d 618 (case history omitted). The District of Massachusetts recently applied the same reasoning in finding that the absolute privilege does not apply to the use of "speech as evidence of [] misconduct." *Larson v. Perry*, No. 19-CV-10203-IT, 2020 WL 1495883, at *6 (D. Mass. Mar. 27, 2020) (question of fact as to whether litigation privilege applies to speech allegedly used as a "means to effectuate

Giuffre's argument that Paragraphs[2] 3, 18 and 20 are protected under the "absolute" litigation privilege as statements made in judicial documents fails because these statements were stricken as impertinent under Rule 12(f) and are not protected by the litigation privilege. Tab A at T-1. Giuffre made her first defamatory statements in an attempt to join an action in which alleged victims of abuse by Jeffrey Epstein ("Epstein") sued the government for failing to timely provide them with a required notice of Epstein's non-prosecution agreement ("CVRA Action"). AC ¶¶ 3, 17-18. In her motion to intervene ("CVRA Joinder Motion") and declaration ("CVRA Declaration"), Giuffre falsely stated she had sex with Dershowitz. AC ¶¶ 18-20. Dershowitz has alleged (and has evidence) that Giuffre succumbed to "pressure" from her lawyers to falsely accuse Dershowitz in order to extort money from a billionaire. AC ¶¶ 23, 30. In denying her CVRA Joinder Motion, the Court struck Giuffre's false accusations under Rule 12(f) as "immaterial and impertinent" and struck her defamatory statements concerning Dershowitz from Giuffre's Declaration because they contained "impertinent details regarding non-parties." AC Ex. B at 4-6.  Giuffre did not appeal the Court's ruling.

Recognizing that the litigation privilege allows "[u]nscrupulous litigants [to] weaponize the discovery process to humiliate and embarrass their adversaries," the Second Circuit has noted abuse of the privilege may be tempered by removing from its protections any material that has been struck from filings as "redundant, immaterial, impertinent, or scandalous." *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019) (quoting Fed. R. Civ. P. 12(f)). Giuffre is precisely the "[u]nscrupulous litigant" contemplated by the Court. "[W]hen a district court strikes statements from the record pursuant to Fed. R. Civ. P. 12(f) on the grounds that the matter is 'impertinent'

---

unlawful ends"). *See* Section I.B., *infra*, for a discussion regarding Giuffre's defamatory statements that have been made maliciously or with knowledge of falsity.
[2] All references to a "Paragraph" refer to the allegations set forth in that paragraph number of Dershowitz's Amended Counterclaims. ECF No. 127; Tab A.

and 'immaterial,' it makes the very same determination that permits a defamation action . . ." *Id.* at 53 n.47. "[T]he judicial system would be well served were our common law courts to revitalize this crucial qualification to the litigation privilege." *Id.*[3]

Dershowitz has adequately pled his defamation claim in Paragraphs 3, 18, and 20 pertaining to her CVRA Joinder Motion and CVRA Declaration because Giuffre's statements in those documents fit precisely in the exception to the litigation privilege articulated by the Second Circuit.[4]  *See id.* The statements were struck by another federal court in a case in which Giuffre sought to become a party as impertinent and immaterial, and Giuffre cannot now use the litigation privilege to claim that those statements are protected. This Court should deny Giuffre's motion as to these claims.

> **B.      Neither the "Fair Report" Privilege nor the Litigation Privilege Protect Giuffre's Out-of-Court Statements.**
>
> > i.      *The Fair Report Privilege Does Not Protect Out-of-Court Statements from Maliciously Instituted Litigations As Dershowitz Alleges Here.*

The "fair report" privilege does not protect Plaintiff's out-of-court defamatory statements related to her maliciously instituted pleadings. Section 74 of the New York Civil Rights Law ("Section 74") protects publications of a "fair and true report of any judicial proceeding," which is lost upon the malicious commencement of a legal proceeding in order to disseminate defamatory claims to the press — as Giuffre has done here.

Section 74 protects "reports of judicial proceedings which are made in the public interest" by facilitating their communication to the public in order to better secure the administration of justice. *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969). The Legislature did

---

[3] Giuffre's lawyers subsequently withdrew the false allegations and admitted it was a "mistake" to file them. Giuffre should be estopped from relying on what she — through her lawyers — admitted was a "mistake." AC Ex. H.

[4] Giuffre has republished these statements within the statute of limitations. *See* Section II, *infra*.

not intend for the statute to allow litigants like Giuffre to "maliciously [file a complaint] alleging false and defamatory charges [and] circulate a press release or other communication based thereon and escape liability by invoking the statute." *Id*. at 599. Giuffre is subject to the *Williams* exception, which applies when a person maliciously institutes an action and then circulates the complaint, a press release, or other communication based on the action to generate publicity. *Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187, 1195-97 (S.D.N.Y. 1985).[5]

As discussed below, dismissal is inappropriate because Dershowitz has adequately pled malicious conduct meriting the *Williams* exception. Whether this exception applies is a question of fact for the jury.[6] *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18 CIV. 5290 (CM), 2019 WL 1768965, at *6 (S.D.N.Y. Apr. 4, 2019); *Halcyon Jets, Inc.*, 894 N.Y.S.2d at 393.

> ii.   *The Litigation Privilege Does Not Protect Out-of-Court Statements Because They Are Outside the Scope or Were Made Maliciously or With Knowledge of Falsity.*

Giuffre improperly relies on the absolute litigation privilege. That privilege applies only to statements "made in the course of a judicial proceeding" and not to out-of-court statements. *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012); *Volpe v. Paniccioli*, 72 N.Y.S.3d 519 (N.Y. Sup. Ct. 2017). Giuffre relies on cases that apply this very limitation. *See, e.g.*, *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir. 1996) ("*[I]n the context of a legal proceeding*, statements by parties and their attorneys are absolutely privileged if . . . they are pertinent to the litigation.") (emphasis added to demonstrate omitted portion of standard quoted by Plaintiff); *D'Annunzio*, 876 F. Supp. 2d at 220–21; *GEM*

---

[5] Application of the *Williams* exception allows a defamation action to proceed past a motion to dismiss. *See, e.g.*, *Volpe v. Paniccioli*, 72 N.Y.S.3d 519 (N.Y. Sup. Ct. 2017); *Reszka v. Collins*, 25 N.Y.S.3d 457, 459 (N.Y. App. Div. 2016); *Halcyon Jets, Inc. v. Jet One Grp., Inc.*, 894 N.Y.S.2d 392 (1st Dep't 2010).

[6] In the past, Giuffre has argued that whether a qualified privilege applies to bar an action is a fact issue inappropriate for a motion to dismiss. Giuffre's Opp. to Mot. Dismiss at 7, *Giuffre v. Maxwell*, 165 F. Supp. 3d 147 (S.D.N.Y. 2016) (15-cv-07433), ECF No. 23.

*Holdco, LLC v. Changing World Techs.*, No. 650941/2013, 2014 WL 4249134 (N.Y. Sup. Ct. Aug. 28, 2014). Dershowitz's defamation claims must stand because statements made by Plaintiff or her agent attorneys to the press and dissemination of copies or summaries of filings to the media are not covered by the litigation privilege. *Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187, 1195 (S.D.N.Y. 1985) ("Delivery of a complaint or summary of a complaint to the press . . . in no way aids a party in furthering [their legal claim] and . . . must fall outside the privilege afforded statements made during the course of judicial proceedings.").

Even assuming *arguendo* that the litigation privilege applies to an attorney's delivery of a copy or summary of a complaint, the *Williams* exception eliminates the privilege. *Bridge*, 608 F. Supp. at 1195.[7] A *qualified* pre-litigation privilege may protect an attorney's statements that are pertinent to the good faith anticipation of litigation, but does not protect attorneys, like Giuffre's attorneys, who seek to "assert[] wholly unmeritorious claims, unsupported in law and fact." *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 720 (2015).[8] Dershowitz has pled sufficient facts to show a plausible defeat of the qualified privilege based on Giuffre's and her attorneys' bad faith filing of her pleadings against Dershowitz. *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 634 (E.D.N.Y. 2018) (citing *Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 155-56 (S.D.N.Y. 2016)).

---

[7] Giuffre cites two non-binding cases that she contends support her argument. Both are aberrations in the law. *Feist v. Paxfire, Inc.*, No. 11-cv-5436, 2017 WL 177652, at *6 (S.D.N.Y. Jan. 17, 2017); *Morgan Art Found. Ltd. v. McKenzie*, No. 18-cv-4438, 2019 WL 2725625, at *17 (S.D.N.Y. July 1, 2019). *Feist* applies the privilege in the pre-litigation context only. *Morgan* relies on a case that inappropriately co-mingles common law and statutory privileges and exceptions. *The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F. Supp. 555, 561 (S.D.N.Y. 1976). *Morgan* deviates from clearly established law and should be ignored.
[8] Giuffre advocated for this interpretation in *Giuffre v. Maxwell*, arguing that Ghislaine Maxwell's defamatory statements were not made in good faith anticipation of litigation, but instead to bully, harass, and intimidate her, defeating the qualified privilege. *Giuffre v. Maxwell*, No. 15 CIV. 7433, 2017 WL 1536009, at *8 (S.D.N.Y. Apr. 27, 2017).

   iii. *Giuffre's Out-of-Court Statements Are Not Protected by Either Privilege Because They Are Outside the Scope or Were Made Maliciously or With Knowledge of Falsity.*

  Giuffre claims that her out-of-court statements in Paragraphs 6, 37 and 39 are protected under the fair report and litigation privileges as statements based on court documents provided to the press, and her out-of-court statements in Paragraphs 35, 38-41, and 42(b)-(g)[9] are protected as statements reiterating allegations in court documents.[10] Tab A. Each of these claims, with one exception,[11] is based on three sources: the (1) CVRA Joinder Motion, (2) CVRA Declaration and (3) Complaint[12] in this action. *See* AC Ex. A, Ex. C; ECF No. 1. [13]

   1. <u>Giuffre's Statements Are Not Protected by the Fair Report Privilege.</u>

  The fair report privilege does not apply to any statements related to the CVRA Action because her malicious conduct falls under the *Williams* exception. Giuffre's conduct there was part of a larger conspiracy to make a public example out of Dershowitz in order to extort money from powerful men. AC ¶ 5. The Counterclaims set forth this maliciousness. Before Giuffre met her lawyers at Boies Schiller Flexner, LLP ("BSF") and the firms associated with them, she

---

[9] Dershowitz assumes Plaintiff's inclusion of Paragraph 42(b) was in error, as there is no explanation as to why it is privileged and is not treated as privileged in Plaintiff's Appendix A.

[10] Giuffre concedes that the statement in Paragraph 42(a) has been adequately pled and has not moved for dismissal of that statement. Her concession acknowledges the weakness of her fair report privilege argument as the statement there cannot be distinguished from the ones she challenges with her proposed limitless application of the privilege.

[11] Giuffre claims Paragraph 42(g) refers to a bar complaint and is addressed separately.

[12] Although she has since amended her Complaint (ECF No. 117), the defamatory statements that Giuffre argues relate to this proceeding are based on her original Complaint.

[13] Under Giuffre's broad standard of privilege, all of Dershowitz's statements about Giuffre, as well as his replies to Giuffre's privileged statements, are also privileged as pertinent to or fair reports of the CVRA Action, *Edwards & Cassell v. Dershowitz*, No. CACE 15-000072 (17th Judicial District, Broward County, Florida), and this case. This standard bars Giuffre's own claims in this case. Every alleged statement by Dershowitz has been made by him in court filings. Giuffre argues that the "privilege also extends to factual descriptions of positions to be taken in the litigation, even if those positions have not yet been staked out in a formal filing." ECF No. 137 at 11. If the Court accepts Giuffre's extreme position, it should dismiss Giuffre's claims as well.

provided many accounts of her abuse to various people, sometimes under oath and to law enforcement officials, including personally drafting a book manuscript describing the sexual abuse she allegedly suffered. AC ¶¶ 2, 25-30. None of these accounts named Dershowitz as an alleged abuser. *Id*. Giuffre's story suddenly changed after BSF began representing her in 2014, who thereafter contacted Leslie Wexner seeking to "investigate" him with regard to alleged conduct strikingly similar to that of which Dershowitz was falsely accused. AC ¶¶ 2, 17, 23, 31. After Dershowitz discovered and highlighted Giuffre's extortionary practices to the public, Giuffre sued Dershowitz in this case. AC ¶¶ 1, 23.

These facts pled by Dershowitz plausibly allege the true reason for Giuffre's motion to intervene in the CVRA Action, and her continued defamation of Dershowitz in her Complaint here — as a way to widely disseminate her knowingly false claims about Dershowitz in order to demand so-called "hush money" from Wexner. AC ¶¶ 23, 24, 40. This motive for litigating, with no purpose but to defame in order to gain financial advantage, is exemplary of the exception to the fair report privilege.[14] As such, *Williams* bars the application of the fair report privilege to statements in Paragraphs 6, 37, and 39, relating to the CVRA Joinder Motion, CVRA Declaration, and Complaint in this case.

### 2. Giuffre's Statements Are Not Protected by the Litigation Privilege.

Nor can the litigation privilege save these statements. Paragraphs 6, 37, 39 state that Plaintiff or her attorneys provided a copy of her CVRA Joinder Motion, CVRA Declaration, or Complaint in this action to the media, or directed them to the docket. Tab A at T-1. The relevant defamatory statements about Dershowitz from the CVRA filings (Paragraphs 6 and 37) were stricken as impertinent under Rule 12(f) and are not protected by the litigation privilege, nor is

---

[14] The same malicious conduct, made with knowledge of the statements' falsity, also renders Giuffre's statements unprotected by the litigation privilege under *Halperin*.

providing the filings or summaries of them to the media. AC Ex. B at 4-6. Moreover, by the time Giuffre disseminated the documents, they were already filed and therefore constitute out-of-court statements to the media unprotected by the litigation privilege. *Bridge*, 608 F. Supp. at 1195.

To the extent Giuffre's attorneys provided the Complaint in this action to Julie Brown, (AC ¶ 39), the pre-litigation privilege fails as well, because this litigation was instituted in bad faith to "assert[] wholly unmeritorious claims, unsupported in law and fact" against Dershowitz. *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 720 (2015).[15] Moreover, Giuffre's attorneys were clearly acting beyond their capacities as lawyers and instead as self-interested participants in the litigation, rendering the pre-litigation inapplicable.[16] *See* AC ¶ 22.

Likewise, Giuffre's statements set forth in Paragraphs 35, 38-41 and 42(b)-(g) are actionable because they are out-of-court statements unprotected by the litigation privilege. Tab A. Because Giuffre's assertions in the CVRA Action and Complaint in this action were maliciously instituted in order to disseminate defamatory statements to the media — as Dershowitz has pled — she forfeited all protections of the fair report privilege as well for statements describing those proceedings. *See, e.g.*, AC ¶¶ 8, 20, 22, 24, 35, 39-40, 42.

Moreover, two of these statements do not constitute a "substantially accurate" "report" of a court proceeding for purposes of the fair report privilege. In Paragraph 42(d), one of the statements at issue (that Dershowitz incorrectly described who gave him a massage) is not in the paragraphs of the Complaint cited by Plaintiff and does not constitute a fair "report." AC ¶ 42(d).

---

[15] If the Court applies a malice standard to the qualified pre-litigation privilege, Dershowitz has adequately pled that Giuffre made these statements both maliciously and with knowledge of their falsity. ECF No. 67 at 25; *see, e.g.*, AC ¶¶ 1, 8, 24, 40, 42, 46.

[16] If Giuffre is arguing the pre-litigation privilege protects her statements, this conflicts with her prior argument that the privilege is "meant to protect parties to a justiciable controversy in their attempts to narrow or resolve their claims to avoid litigation." Giuffre's Opp. to Mot. Dismiss at 13, *Giuffre v. Maxwell*, 165 F. Supp. 3d 147 (S.D.N.Y. 2016) (15-cv-07433), ECF No. 23.

Moreover, this is demonstrably false. Likewise, Plaintiff claims that Boies' statement in Paragraph 42(g) is related to the bar charges Dershowitz filed against Boies. Because his accusation that Dershowitz has a "pattern of attacking every lawyer who has represented women who have accused him of sexual abuse," to the extent it even relates at all to Dershowitz's bar complaint, "embellishes" the claim and "suggests more serious conduct than what is alleged," it is not protected by the fair report privilege. *GeigTech*, 2019 WL 1768965, at *5. Also, this was an out-of-court statement to the media and is not protected by the litigation privilege.

Any privilege conceivably applicable to Giuffre's defamatory statements has been lost by Giuffre and her lawyers' own actions, and all of Giuffre's statements are actionable.

## II.     Giuffre's Statements Based on Her CVRA Joinder Motion and CVRA Declaration Have Been Republished Within the Statute of Limitations.

Giuffre's meritless argument that the statute of limitations bars the claims based upon her statements in Paragraphs 3, 6, 18 and 20 ignores the Court's prior ruling *in her favor*. Tab A at T-1. The claims at issue here were republished by Giuffre to a new audience or in a new forum within the statute of limitations and thus constitute a new defamatory action.[17] ECF No. 67 at 14. Giuffre's actions demonstrated a clear intent to publish to a new audience. *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 434 (1981). Giuffre's formerly time-barred statements are also actionable because she published additional related allegations. ECF No. 67 at 16.

*Green v. Cosby* is instructive. 138 F. Supp. 3d 114 (D. Mass. 2015). In *Green*, the Court applied California's single publication rule on a motion to dismiss and found that a statement originally published in 2005 could have been republished in 2014 in light of the possibility that defendant's agent "provided or directed the same statement to the *Washington Post* in 2014 in

---

[17] Giuffre agrees that "even if they were the same statements republished by the same news organizations as before, they would be still [sic] republications subject to new limitations periods." ECF No. 38 at 9.

response to [plaintiff]'s more recent public accusations." *Id.* at 126-28. While Giuffre's initial CVRA Joinder Motion and CVRA Declaration standing alone may be time barred, Giuffre has since republished her statements from these filings within a year of the date of her Complaint on April 16, 2019. N.Y. C.P.L.R. § 203(d); ECF No. 1.

For example, Giuffre republished her defamatory statements to the *Miami Herald* on November 28, 2018, when she provided Julie Brown a copy of her sealed CVRA Declaration, which Brown then quoted in her article. AC ¶¶ 37, 38. The declaration had been under seal and Brown's article republished the statements to the public. Giuffre also republished her allegations from the CVRA Joinder Motion and CVRA Declaration when she stated to Brown that she had sex with Dershowitz, who then displayed a file photograph of Dershowitz while narrating that Giuffre was sexually involved with "academics." AC ¶ 38.

Likewise, Giuffre republished her statements by expanding her allegations from those in the CVRA filings in a *New Yorker* article, released August 5, 2019 to a new audience (*New Yorker* readers), which reported Giuffre's story after a series of conversations with Giuffre "during the past year" and referred to her CVRA filings. AC ¶ 41, Ex. J; ECF No. 67 at 16. Giuffre's intent to add to her defamatory statements was clear, as she provided additional details about her alleged sexual abuse and also explained the reason why she decided to name Dershowitz publicly: because "[Epstein] got away with it, basically. And Dershowitz was one of the people who enabled that to happen." AC ¶ 41, Ex. J. On May 27, 2020, Giuffre affirmatively republished claims from her CVRA filings that Dershowitz had sex with her to Netflix, a new forum and a new, larger audience reaching across the world. AC ¶ 42(a).

Giuffre's demonstrated intent to republish her defamatory statements within the statute of limitations, and her actions in doing so, render the statements actionable. The claims must stand.

### III.   The Statements Set Forth in Paragraph 42(b), (c), (f) and (g) Are Supported by Facts Sufficient to Establish Vicarious Liability.

Giuffre's argument that Dershowitz has not established that Giuffre is vicariously liable for the statements of her agents and attorneys fails. The law is clear. Giuffre is responsible for the defamatory statements of her attorneys, including David Boies, whether they are made with actual or apparent authority. *See Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169, 172 (S.D.N.Y. 1988); *Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187, 1197 (S.D.N.Y. 1985); *American Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982); *see, e.g.*, *Feist v. Paxfire, Inc.*, No. 11-cv-5436, 2017 WL 177652 (S.D.N.Y. Jan. 17, 2017). Dershowitz has plausibly alleged that Giuffre's attorneys made these statements with her authority and the fact-specific question of the scope of her attorneys' authority is a question for the jury. *Giglio v. Rubin*, 104 N.Y.S.2d 263, 266 (App. Div. 1951); *see, e.g.*, AC ¶¶ 8, 35, 42, 46.

A lack of actual authorization is not a sufficient defense where, as here, there is apparent authority.[18] *Carolco Pictures Inc.*, 700 F. Supp. at 172.  Boies' apparent authority is clear, as Giuffre has allowed Boies to serve as her authorized agent in speaking to the media and in other contexts for years. *See, e.g.*, AC ¶ 42; ECF No. 117, ¶ 119. Boies, by defaming Dershowitz, has attempted to bolster Giuffre's credibility and thereby acted to benefit her case.[19] Boies acted with apparent authority in his legal representation of Giuffre when he explained to the media Giuffre's

---

[18] Plaintiff cites to an Arizona case, *Green Acres Trust v. London*, 688 P.2d 658 (Ariz. Ct. App. Dep't A 1983), for the proposition that a client is not vicariously responsible for an attorney's statement if not specifically authorized.  *Green Acres* is distinguishable as the court did not offer instruction on what is needed to allege vicarious liability at the motion-to-dismiss stage. New York courts recognize that a question about agency is sufficient to defeat a motion to dismiss (*Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187 (S.D.N.Y. 1985)) or summary judgment (*Carolco Pictures Inc.*, 700 F. Supp. at 172).

[19] Despite Plaintiff's claims, Boies did not "use" Giuffre, but instead Giuffre and Boies conspired together to enrich themselves. AC ¶ 1. Every statement Boies has made furthered Giuffre's position as a litigant. *Tomka v. Seiler Corp.*, cited by Plaintiff, applies only when the personal motives are "unrelated to the furtherance of the employer's business." 66 F.3d 1295, 1318 (2d Cir. 1995); *see also Murphy v. Metro. Transp. Auth.*, 548 F. Supp. 2d 29 (S.D.N.Y. 2008).

reasons for the timing of her lawsuit against Dershowitz (AC ¶ 42(b), Ex. L), described evidence Giuffre plans to use to prove Dershowitz's alleged lies (*Id.* ¶ 42(c), Ex. M) and commented on Dershowitz's litigation strategy while advocating for Giuffre's position by implying facts indicating Dershowitz is "lying" or that Boies has "evidence of [Dershowitz's] misconduct" *(Id.* ¶ 42(c), Ex. M; ¶ 42(f), Ex. O). Boies also acted with apparent authority when referring to Dershowitz's "pattern" of attacking "every lawyer" who has represented his accusers. *Id.* ¶ 42(g), Ex. P.

By Giuffre's own admission, Boies acts as her agent with respect to speaking on her behalf, *even when the communications are damaging to her interests*. In her Amended Complaint, Giuffre claimed that Boies acted as her agent when he was having a conversation with Dershowitz, even though those statements by Boies provide incontrovertible evidence against Giuffre in this case. ECF No. 117, ¶ 119. In another contradictory move, Giuffre sued Ghislaine Maxwell for making defamatory statements *through her agent. Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 150 (S.D.N.Y. 2016). Giuffre's position on vicarious liability cannot co-exist with her prior statements. She should be estopped from making the exact opposite argument after she prevailed on her original position in opposing Dershowitz's motion to dismiss.

## IV.   Statements in Paragraphs 39 and 42(b), (c), (d), (f) and (g) are Actionable as Statements of Fact or Mixed Opinion.

It is clear to any "objective, reasonable listener" that Giuffre and her agent attorneys' defamatory statements are actionable as statements of fact or mixed opinion. *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18 CIV. 5290 (CM), 2019 WL 1768965, at *8 (S.D.N.Y. Apr. 4, 2019). To determine whether an expression is one of fact (actionable) or opinion (protected), courts consider: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3)

whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993) (citation, quotations and alterations omitted). The "content of the communication as a whole, its tone and apparent purpose" is crucial to understanding whether it is reported as fact or opinion. *Davis v. Boeheim*, 24 N.Y.3d 262, 270 (2014) (citation omitted). A "mixed opinion" that implies that "the speaker knows certain facts, unknown to the audience, which support the speaker's opinion and are detrimental to the person being discussed" is also actionable. *Boeheim*, 24 N.Y.3d at 269 (citations and alterations omitted).

Dershowitz's defamation claims as to Paragraphs 39 and 42(b), (c), (d), (f) and (g) must stand because they are actionable as fact.[20] Tab A. The precise meaning of the key defamatory language in Paragraph 39 ("[M]y abusers have sought to conceal their guilt behind a curtain of lies.") is clear– Giuffre claims Dershowitz is lying when he says she is lying about the fact of whether she had sex with him.[21] Giuffre made this statement in the context of her lawsuit, which carries a serious and factual undertone.

Similarly, Giuffre's statements through her agent, Boies, alleged in Paragraphs 42(b), (c), and (g) that Dershowitz engaged in improper sexual conduct and is now trying to conceal his actions from the public eye are facts with precise meanings that can be proven true or false. AC ¶ 42(b) (referring to Dershowitz's "underlying conduct"), ¶ 42(c) (referring to "the facts" and

---

[20] Giuffre claims that the only statements of opinion that disclose a factual basis are privileged under the fair report privilege, but this privilege does not apply. *See* Section I, *supra.*

[21] Giuffre's subsequent statement calling for an "accounting" to which she is "entitled" is a natural extension of her preceding statement and should be considered as one statement. *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1999).

"evidence" of Dershowitz's "misconduct"), ¶ 42(g) (referring to "what he's done").[22] Similarly, the statements by Boies in Paragraphs 42(c) and 42(f) claiming Dershowitz is lying have a precise meaning and are statements of fact which can be proven true or false.[23] AC ¶ 42(c), (f); *Boeheim*, 24 N.Y.3d 262; *Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 152 (S.D.N.Y. 2016) ("[S]tatements that Giuffre's claims 'against [Maxwell] are untrue,' have been 'shown to be untrue,' and are 'obvious lies' have a specific and readily understood factual meaning[.]").[24] Finally, the statements set forth in Paragraph 42(d) are clear assertions of fact with precise meanings and can be proven true or false, as they pertain to whether a person Dershowitz previously described ("Olga") exists and whether certain evidence exists and is factually accurate, which will be proven at trial.

In considering the context of these statements, an "objective, reasonable listener" would not consider these statements to be merely opinion because they were made by an attorney involved with the litigation, implying a serious, factual tone (Giuffre admits as much by

---

[22] In *Giuffre v. Maxwell*, Giuffre sufficiently pled as fact statements by Maxwell calling Giuffre's accusations "obvious lies." 165 F. Supp. 3d 147, 150-52 (S.D.N.Y. 2016). There, the court said: "The issue is not a matter of opinion, and there cannot be differing understandings of the same facts that justify diametrically opposed opinion as to whether Defendant was involved in Plaintiff's abuse as Plaintiff has claimed. Either Plaintiff is telling the truth about her story and Defendant's involvement, or Defendant is telling the truth and she was not involved in the trafficking and ultimate abuse of Plaintiff. The answer depends on facts." *Id.*

[23] Giuffre relies on *Lacher v. Engel*, 817 N.Y.S.2d 37 (2006) to support the inference that claiming someone is a "liar" is not defamatory. This misstates *Lacher*. The court explained that the phrase "pathological character" is opinion but did *not* make the same determination for the accusations of "thief" and "liar." Likewise, in *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15-cv-4779, 2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016), cited by Plaintiff, the claims the court was describing as opinion were the statements that the litigation was "frivolous" and that Plaintiff subjected "unsuspecting victims to its legal wrath." *Id.* at *1 (quotation alterations omitted). Such claims are different from the ones at issue here, which refer to litigation strategy in light of certain facts. Statements about litigation strategy can be actionable as fact. *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 297 (S.D.N.Y. 2005) ("'We believe the lawsuit will prove unfounded' is an expression of opinion; 'our position is that the plaintiff is a forger' is not.").

[24] There, Giuffre argued that accusations of "lies" are defamatory. She cannot have it both ways.

characterizing five of the six challenged statements as protected as "substantially accurate" under the fair report privilege). Moreover, Boies' position as a lawyer with access to undisclosed evidence gives the average reader another reason to believe his statements as fact. Overall, every statement Boies has made was calculated to communicate a simple factual falsehood: that Dershowitz had sex with Giuffre. All of his statements must be understood against this background. ECF No. 67 at 29 ("[I]f Dershowitz proves that he did not have sex with her at all, then the truth or falsity of his statements will be established . . . but determination of this issue will await a jury."). Boies' statements are clearly factual or, at a minimum, mixed opinion.[25] They are on their face defamatory and Dershowitz's claims must stand.

## V.     Dershowitz Adequately Pled All Defamatory Statements Under Rule 8.

Dershowitz has adequately pled his defamation claim. *See* Tab A. To be adequately pled under Rule 8, a defamatory claim requires "adequate identification of the allegedly slanderous statements, the maker of the purported statements, when they were made, and to whom they were communicated." *Natural Res. Media & Tech. Grp., LLC v. Snoop Youth Football League Found.*, No. 07 CIV. 7701 (SAS), 2008 WL 728650, at *3 (S.D.N.Y. Mar. 14, 2008). The claim must "afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) (citation omitted). Dershowitz was not required to plead the exact words of Giuffre's defamatory statements. *Id.* Likewise, he need not allege "the very hour or minute that the communications were made, nor the particular [individuals] involved," especially when Giuffre has been unable to pinpoint the

---

[25] Even if Giuffre asserts that Boies did include facts to support his opinions, because the veracity of all the "facts" leading to his statements that Dershowitz is lying about having had sex with Giuffre are challenged by Dershowitz's own defamation counterclaim, these statements would still be actionable. *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 382 (S.D.N.Y. 1998) (Preska, J.) ("[W]here statements of opinion are based upon disclosed facts which the plaintiff alleges are false, a motion to dismiss should not be granted.").

day, week or month when she alleges the abuse occurred. *P&G Auditors & Consultants, LLC v. Mega Int'l Commercial Bank Co.*, No. 18-CV-9232 (JPO), 2019 WL 4805862, at *8 (S.D.N.Y. Sept. 30, 2019) (citing *Kelly*, 806 F.2d at 46). As noted in Tab A, Dershowitz's defamation claims are based on the republication of the CVRA Joinder Motion, the CVRA Declaration and the statements in Paragraphs 37 through 42. Giuffre's challenges do not relate to those statements.[26] Each of Giuffre's defamatory statements against Dershowitz must be understood in the context of the entirety of her communication. Any claim, suggestion, implication or hint that Dershowitz has sex with Giuffre is defamatory. *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 361 (S.D.N.Y. 1998) (Preska, J.) ("[T]he court will not pick out and isolate particular phrases but will consider the publication as a whole. The publication will be tested by its effect upon the average reader.") (citation omitted). Dershowitz's defamation claims must stand.

## VI.   Dershowitz Adequately Pled His Intentional Infliction of Emotional Distress Claim.

Dershowitz's claim for intentional infliction of emotional distress ("IIED") can be sustained alongside his defamation claim. *Sullivan v. Board of Educ.*, 517 N.Y.S.2d 197 (2d Dep't 1987). Courts routinely allow IIED claims to proceed alongside tort claims when they are not duplicative of the *conduct* underlying the traditional tort claims.[27]  *See, e.g., Gonzalez v.*

---

[26] For example, the first three sentences of Paragraph 37 sufficiently identify the statement (republication of the CVRA Declaration), who made it (Giuffre and her lawyers), when (published on November 28, 2018), where and to whom (*Miami Herald* and their readership). Tab A at T-1. The remainder of the paragraph is not pled as defamatory allegations. Likewise, only the second sentence in Paragraph 40 is intended to be defamatory, and it sufficiently identifies the statement (calling Dershowitz a "co-conspirator" of Epstein, a criminal), who made it (Giuffre), when (October 16, 2019), where and to whom (in a public statement in response to the Court's ruling, as published in *The Daily Beast*). The other paragraphs and statements serve as context or to provide information for the privilege exceptions or the intentional infliction of emotional distress claim. AC ¶¶ 35, 36, 43, 46.

[27] *Butler v. Delaware Otsego Corp.* is not instructive. In *Butler*, both the conduct and the injury derived from the same, singular incident and allowing the IIED claim would have resulted in duplicative recovery. 610 N.Y.S.2d 664 (1994). In contrast, Giuffre's harmful actions include not

*Bratton*, 48 F. App'x 363, 365 (2d Cir. 2002) (summary order); *Worytko v. Cty. of Suffolk*, No.

03 CV 4767, 2007 WL 1876503, at *6 (E.D.N.Y. June 28, 2007). Alternatively, where an IIED

claim alleges an *injury* distinct from the injury in the defamation claim, both claims may be

actionable, even when they derive from the same conduct. *Hanly v. Powell Goldstein, LLP*, No.

05 CV 5089, 2007 WL 747806, at *6 n.9 (S.D.N.Y. Mar. 9, 2007), *aff'd*, 290 F. App'x 435 (2d

Cir. 2008)).

     Here, the conduct and injuries associated with each claim is different. Dershowitz's

defamation claims are for specific statements accusing Dershowitz of inappropriate sexual

conduct, as well as Giuffre's extortion plot, which have harmed Dershowitz's reputation and

caused him embarrassment and other losses. Tab A; AC ¶ 51. Dershowitz's IIED claim is for

Giuffre's "campaign of lies, disparagement, defamation, harassment, intimidation and

maliciousness," which has contributed to, aggravated, and continued to cause serious medical

issues. AC ¶¶ 53, 56.

     Further, the statements more than suffice as outrageous, as they involve "public

humiliation [and] false accusations of criminal or heinous conduct[.]" *Stuto v. Fleishman*, 164

F.3d 820, 828–29 (2d Cir. 1999).[28] Plaintiff's conduct surpasses the conduct courts have

previously found to be sufficiently "outrageous" to state a cause of action for IIED. *See, e.g.*,

*Halperin v. Salvan*, 499 N.Y.S.2d 55 (1986) (baseless lawsuit); *Green v. Fischbein*, 522

---

just defamatory statements, but also her broader campaign to destroy Dershowitz as part of an
extortion plot. Although overlapping, each includes distinct conduct with distinct harms.
[28] In contrast, the cases cited by Giuffre either involve accusations of far less heinous crimes or
do not involve widespread dissemination of the false claims around the world. *See La Duke v.
Lyons*, 673 N.Y.S.2d 240, 244 (1998), *Kaye v. Trump*, 873 N.Y.S.2d 5, 1 (2009), *Villacorta v.
Saks Inc.*, 932 N.Y.S.2d 764, 8 (Table) (Sup. Ct. 2011), *Carlson v. Geneva City Sch. Dist.*, 679
F. Supp. 2d 355, 373 (W.D.N.Y. 2010). In *James v. DeGrandis*, 138 F. Supp. 2d 402 (W.D.N.Y.
2001), while the accusations were spread regionally, they were less severe, concerning an alleged
improper *relationship* with a college student, as opposed to sexual abuse of a minor.

N.Y.S.2d 529 (1st Dep't 1987) (baseless lawsuits); *Sullivan v. Board of Educ.*, 517 N.Y.S.2d 197, 199, 200 (2d Dep't 1987) (allegations of defamation, threat of bringing falsified claims of wrongdoing and the spreading of false rumors). Whether the conduct is sufficiently outrageous is a jury issue. *Halperin*, 499 N.Y.S.2d at 58. There is much evidence to support this claim.

Since 2014, Giuffre publicized her claims in a campaign of harassment of Dershowitz across countless news outlets.[29] AC ¶¶ 5-8. Giuffre's public harassment has spread across the world through the media and has made him a *persona non grata* in Israel, England, and even Norway. AC ¶¶ 37-42. He has received countless horrible tweets. Her claims are false accusations of crimes of the worst kind – that Dershowitz had sex with a woman under 18 years old without her consent (she previously said much younger). AC ¶¶ 17-20. This campaign constitutes outrageous conduct. Dershowitz's IIED claim is adequately pled and must stand.

## CONCLUSION

Many of Giuffre's current arguments directly contradict the arguments she and her lawyers made in opposition to Dershowitz's motion to dismiss, some of which were already accepted by this Court. Many of these arguments also contradict her positions taken in the related litigation, *Giuffre v. Maxwell*. The Court should not condone such legal hypocrisy and instead should evaluate Giuffre's current arguments by reference to her prior ones.

For these reasons, Professor Dershowitz respectfully requests that the Court deny Giuffre's motion in its entirety.

---

[29] Plaintiff's claim that there can be no IIED in the context of adversarial litigation assumes that the statements in question are protected by the litigation privilege. *In re Swift*, No. 94-10285-CEC, 2016 WL 355515, at *4 (Bankr. E.D.N.Y. Jan. 28, 2016). The corollary result is that, where privilege does not apply, as here, an IIED claim may survive.

Respectfully submitted,

ALAN DERSHOWITZ,

By his attorneys,


*/s/ Howard M. Cooper*
Howard M. Cooper (MA BBO # 543842) *(pro hac vice)*
Christian G. Kiely (MA BBO # 684308) *(pro hac vice)*
Kristine C. Oren (MA BBO # 705730) *(pro hac vice)*
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA  02110
T: 617-720-2626
hcooper@toddweld.com
ckiely@toddweld.com
koren@toddweld.com

*/s/ Imran H. Ansari*
Arthur L. Aidala (S.D.N.Y. Bar No. ALA-0059)
Imran H. Ansari (S.D.N.Y. Bar No. IHA-1978)
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, NY  10036
T: 212-486-0011
iansari@aidalalaw.com
aidalaesq@aidalalaw.com

Dated: July 2, 2020


## CERTIFICATE OF SERVICE

I, Kristine C. Oren, hereby certify that on this 2nd day of July, 2020, a copy of the foregoing was sent via email to all counsel of record listed as registered participants on the Notice of Electronic filing.


/s/ Kristine C. Oren
Kristine C. Oren

**TAB A**

| Paragraph | Statement |
|---|---|
| **3, 6, 18** | All statements concerning Dershowitz from the CVRA Joinder Motion. AC Ex. A. |
| **3, 20** | All statements concerning Dershowitz from the CVRA Declaration. AC Ex. C. |
| **37** | "On November 28, 2018, the *Miami Herald* published an interview with Giuffre as part of a lengthy article discussing the preferential treatment Epstein allegedly received from the criminal justice system.  Exhibit H.  Giuffre and her lawyers at Boies Schiller Flexner LLP provided the reporter, Julie Brown, with a copy of Giuffre's sworn declaration in the CVRA action (attached as Ex. C hereto and described in Paragraph 20), which – unlike the CVRA Joinder Motion – remained under seal, intending that Brown publish details of the sealed declaration, which she did.   The article quoted at length from Giuffre's declaration, including publishing, in particular, the details of her accusations against Dershowitz." |
| **38** | "Brown has confirmed that Giuffre told her in their interview which led to the publication of the November 28, 2018 *Miami Herald* article that she (Giuffre) had sex with Dershowitz.  In a videotaped interview that the *Herald* posted to its website as part of the story, 'Giuffre described how Epstein and [Ghislaine] Maxwell began grooming her – not just to perform massages, but to sexually pleasure them and others[,]' including 'politicians and academics and royalty.'  When she mentioned 'academics,' the video showed a picture of Dershowitz.  Giuffre and her lawyers were the sources of this false and defamatory publication." |
| **39** | "Upon information and belief, before filing her Complaint against Dershowitz in this action, Giuffre and/or her lawyers at Boies Schiller Flexner LLP, acting in their capacity as attorneys for Giuffre, provided an advance copy of the Complaint to Brown to publish a story about the lawsuit on the same day it was filed, April 16, 2019.  Exhibit I." |
| **39** | "In a statement issued that same day outside of any legal proceeding and published in the *Miami Herald* and other news outlets, Giuffre stated, in reference to her Complaint against Dershowitz: 'As my complaint shows, my abusers have sought to conceal their guilt behind a curtain of lies.  My complaint calls for the accounting to which I, and their other victims, are entitled.'  [Exhibit I.]" |
| **39** | "This statement was later provided to the television program The View, which read it on air during an appearance by Dershowitz on that show on May 2, 2019.  Exhibit J." |
| **40** | "[I]n response to the Court's ruling disqualifying Boies Schiller Flexner LLP from representing Giuffre in this action, on October 16, 2019, Giuffre issued a statement which referred to Dershowitz as a 'co-conspirator' of Epstein.  Exhibit K." |
| **41** | "Giuffre and her lawyers also served as a source for a lengthy *New Yorker* profile of Dershowitz published on August 5, 2019, and on information and belief, prior to the publication of the article, falsely stated to the article's author, Connie Bruck, that Giuffre had sex with Dershowitz, intending that the *New Yorker* publish the accusation, which it did.  Ex. J." |

| | |
|---|---|
| **42(a)** | "On or about May 27, 2020, in the Netflix documentary series, *Jeffrey Epstein: Filthy Rich*, approximately seven minutes and six seconds into the fourth episode of the series, entitled 'Finding Their Voice,' Giuffre states on camera: 'I was with Alan Dershowitz multiple times—at least six that I can remember.  Well, I was trafficked to-to Alan Dershowitz, from Epstein.  Epstein made me, essentially, forced me, to-to have sex with him.  Every time I was trafficked was at Epstein or Ghislaine's behest.  He's denied being with me.  Is one of us telling the truth?  Yes.  Is that person me?  Yes.'" |
| **42(b)** | "On or about July 31, 2019, in *The American Lawyer*, David Boies, in his capacity as Giuffre's attorney and authorized agent, stated: '[T]he problem is that [Dershowitz] believes that if he quacks loudly enough and outrageously enough, people will focus on what he's saying and not the underlying conduct… [H]e's desperate to detract attention from the underlying accusation. People who have good defenses present those defenses. Those who don't engage in ad hominem attacks.'  Exhibit L." |
| **42(c)** | "On or about July 19, 2019, in *New York Magazine*, in his capacity as an attorney and authorized agent for Giuffre and other Epstein accusers, Boies stated: 'This is simply more evidence of how desperate Mr. Dershowitz is to distract attention from the evidence of his misconduct. . . . Mr. Dershowitz's misconduct, and his lies about it, are documented in sworn affidavits, sworn depositions, and contemporaneous documents… I can understand why Mr. Dershowitz wants to distract attention from the facts…'  Exhibit M." |
| **42(d)** | "On or about July 17, 2019, in *Vanity Fair*, in his capacity as Giuffre's attorney and authorized agent, Boies stated: 'Epstein's former employees said in sworn depositions that they saw Dershowitz at the house multiple times without his wife. "This Olga woman doesn't exist. Epstein's barely kept women around who were over 25. It's a figment of Alan's imagination."'  Exhibit N." |
| **42(e)** | "On or about July 7, 2019, outside the Manhattan federal courthouse, in his capacity as Giuffre's attorney and authorized agent, Boies stated: 'Virginia sued Ms. Maxwell in the Southern District of New York for her participation in the sex trafficking.  She is currently suing Alan Dershowitz for his participation in the sex trafficking.'" |
| **42(f)** | "On or about July 5, 2019, in the *Miami Herald*, in his capacity as Giuffre's attorney and authorized agent, Boies stated, in reference to Dershowitz: 'It's very dangerous to take one position publicly and another position in court.  Eventually, both the public and the court figure out that you're lying and you lose your credibility in both forums and that's what he has been doing - trying to take one position publicly and another in court - and they are now clashing.'  Exhibit O." |
| **42(g)** | "On or about December 18, 2018, in the *New York Daily News*, in his capacity as an attorney and authorized agent for Giuffre and other Epstein accusers, Boies stated: 'Alan Dershowitz's absurd attacks… are consistent with his pattern of attacking every lawyer who has represented women who have accused him of sexual abuse… This is simply a pattern where he thinks if he is loud enough and crazy enough it will distract attention from what he's done.'  Exhibit P." |