# Cooper & Kirk

Lawyers

A Professional Limited Liability Company

Charles J. Cooper
(202) 220-9660
ccooper@cooperkirk.com

1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036

(202) 220-9600
Fax (202) 220-9601

July 7, 2020

**VIA ECF**
The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:  ***Giuffre v. Dershowitz*, Case No. 19-cv-3377-LAP**

Dear Judge Preska:

I write on behalf of Plaintiff Virginia Giuffre, and on behalf of myself and my colleagues at Cooper & Kirk, in response to the Order dated July 3, 2020 (Doc. 147), concerning the protective order entered in *Giuffre v. Maxwell*, dated March 18, 2016 (Doc. 62 in No. 15 civ. 7433) ("Protective Order").

Before addressing Mr. Dershowitz's requests, I wish to respond to the Court's finding "that Cooper & Kirk's possession of the *Maxwell* discovery materials violates the plain terms of the *Maxwell* protective order." Order dated July 1, 2020 (Doc. 144) ("Destruction Order"). I do so not for the purpose of contesting the Court's finding—we are gathering and are prepared to destroy all such material forthwith—but rather for the purpose of explaining why we believed in good faith that our access to and possession of confidential *Maxwell* discovery material was permissible under the terms of the *Maxwell* Protective Order. In a declaration that accompanies this letter, I set forth the circumstances that led to our access to and possession of material designated "confidential" under the Protective Order and describe our extensive communications with counsel for Mr. Dershowitz regarding that confidential material. Decl. of Charles J. Cooper, dated July 7, 2020 ("Cooper Decl.").

The Protective Order grants access to confidential material not only to "attorneys actively working on [*Maxwell*]," but also to "persons regularly . . . associated with the attorneys actively working on [*Maxwell*], whose assistance is required by said attorneys in the preparation for trial, at trial, or at other proceedings in [*Maxwell*]." Protective Order ¶ 5(a)–(b). Ms. Giuffre formally retained Cooper & Kirk in November 2019 to represent her not only in the instant case against Mr. Dershowitz, but also "in *Giuffre v. Maxwell* . . . by consulting with [her] litigation counsel, Boies, Schiller & Flexner LLP, on matters relating to the unsealing of the record in that case." Cooper Decl. ¶ 6. We believed that our assistance to BSF on Ms. Giuffre's behalf in connection with the proceedings in *Maxwell* concerning unsealing the record in that case fell within the letter and spirit of the Protective Order. Indeed, Judge Sweet declined to order the destruction of confidential material upon the settlement of Ms. Giuffre's claims against Ms. Maxwell because "further proceedings" upon a remand from the Second Circuit to unseal portions of the record "may require parties' use of confidential materials." *See* Op. at 6 (Feb. 26, 2019) (Doc. 967 in No. 15 civ. 7433).  Consistent with this ruling, we also believed—erroneously, we now see—that "actively

July 7, 2020
Page 2

working" on the case could readily be construed to include work performed in connection with unsealing proceedings. The Court also appears to construe "actively working" to require either an entry of appearance, attendance at a court conference, or submission of a filing in the *Maxwell* case. Destruction Order at 5–6. We understood that phrase, however, to include all attorneys who are actually rendering legal advice in connection with *Maxwell*.[1] The Protective Order's provision for access by individuals assisting "attorneys actively working" on the case reinforced our belief that a court appearance was not a prerequisite to access.

The Protective Order further provides that "CONFIDENTIAL information shall not be disclosed or used for any purpose except the preparation and trial of" *Maxwell*. Protective Order ¶ 4. The Court does not suggest that Cooper & Kirk has *disclosed* confidential material—and indeed we have not, except with the Court's permission, Cooper Decl. ¶ 28—but it states that it "would be surprised—shocked, even—if Cooper & Kirk was not in some sense 'using' the *Maxwell* discovery in its representation of Ms. Giuffre in her action against Mr. Dershowitz." Destruction Order at 5. The Court's statement suggests that merely litigating this action with knowledge of confidential material would constitute prohibited "use."

We did not believe that to act with knowledge of the contents of confidential material is to "use" that material within the meaning of the Protective Order, for it is a form of use that is virtually unavoidable by parties and attorneys who participate in separate litigations concerning related subject-matter. (Unlike some protective orders, the Protective Order does not prohibit participation in related actions.) Instead, we understood the Protective Order to prohibit introducing confidential materials as exhibits at depositions, hearings, or trial, filing them with the court, or relying on them as the basis of factual allegations in filings.[2] Rule 26, under which the Protective Order issued, supports this construction: the word "use" refers to the active employment of material, rather than mere review or knowledge thereof. For example, it requires a party to produce or describe discoverable material "that the disclosing party . . . may *use* to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(ii). If the rule were understood to require a party to disclose all material the party *reviews* "to support her claims or defenses," the impeachment exception would be a dead letter. Instead, "use" appears to refer to the employment of that information "to supply evidence on a motion, at a hearing, or at a trial." FED. R. CIV. P. 37(c)(1) (prohibiting a party that fails to make initial disclosures under Rule 26(a) from using undisclosed material for these purposes).

The proceedings in this action reinforced our interpretation of the Protective Order. When Ms. Giuffre retained Cooper & Kirk, BSF had been litigating this action for approximately six months. To our knowledge, no party had objected that BSF—which was also counsel in the *Giuffre v. Maxwell* matter—could not be counsel because they had access to the confidential *Maxwell* material. Moreover, Ms. Maxwell—the only party other than Ms. Giuffre whose privacy interests are expressly protected by the Protective Order—took the position that releasing certain confidential material to Mr. Dershowitz "subject to the Protective Order" would adequately protect her interests under the order, even though the premise of Mr. Dershowitz's request was that he would be reviewing that material for the purpose of developing

---

[1] We store confidential material in restricted-access folders on our firm server or encrypted hard-drives, to which only the attorneys and employees who actually work on this matter have access. Cooper Decl. ¶ 29.

[2] We have refrained from using confidential material in this manner and announced our intention to obtain confidential material anew in discovery so that we could use it in this action. Cooper Decl. ¶¶ 13, 31.

July 7, 2020
Page 3

his claims and defenses in this action. Cooper Decl. ¶ 9. Ms. Maxwell even specified that she considered the question of Mr. Dershowitz's *access* to confidential material in this action to be distinct from the question of the *use* of that information in this action. *Id.* Finally, we mistakenly believed the Court understood that we had access to and were reviewing confidential *Maxwell* material, Cooper Decl. ¶ 14, although we now understand that the Court believed our access was limited to Ms. Giuffre's depositions.

Again, we accept the Court's view that our interpretation of the Protective Order was mistaken, and we stand ready to destroy any confidential material the Court directs us to destroy. We simply wish the Court to understand that we proceeded in good faith.

Turning to Mr. Dershowitz's proposed motions, we strongly oppose Mr. Dershowitz's request for leave to move to disqualify Cooper & Kirk. Mr. Dershowitz makes no claim that he will be able to meet the "high standard of proof" that governs motions to disqualify, offering nothing more than "[m]ere speculation" in place of "facts" that "present a real risk that the trial will be tainted." *Zappin v. Comfort*, 2019 WL 409831, *2 (S.D.N.Y. Feb. 1, 2019) (quotation marks omitted). What is more, his speculation proves too much: He complains that "the Court cannot police Ms. Giuffre's own communications with her lawyers at BSF and Cooper & Kirk about these materials . . . ." But if the mere specter that Ms. Giuffre might communicate confidential material to her lawyers were enough to taint the trial, then Ms. Giuffre would have to go unrepresented. In any event, asymmetries of information are commonplace in litigation, and where (as here) the protected information at issue is discoverable, courts have refused to correct any alleged advantage by disqualifying attorneys with knowledge of the protected information. *See Tradewinds Airlines, Inc. v. Soros*, 2009 WL 1321695, at *9 (S.D.N.Y. May 12, 2009).

What is more, Mr. Dershowitz's proposed motion is untimely: in our early exchanges with counsel for Mr. Dershowitz, they assumed, and we confirmed, that we had access to confidential *Maxwell* material in Ms. Giuffre's and her former counsel's possession. *See* Cooper Decl. ¶¶ 15–21. And to the extent that our early exchanges left any doubt in counsel's mind about our access to such confidential material, that doubt was surely dispelled in February when we disclosed that we were representing Ms. Giuffre in *Maxwell* and we committed to produce *Ms. Maxwell's production* from that case if the Court granted leave. Cooper Decl. ¶¶ 22–24; *see also id.* ¶ 25. (Certainly, Ms. Menninger drew the correct inference from our discovery responses alone. Tr. 8:16–21 (June 23, 2020)). Counsel for Mr. Dershowitz's expression of shock at the June 23 hearing, Tr. 10:10–12, should not be taken seriously, and Mr. Dershowitz should not be permitted to move to disqualify Cooper & Kirk at this late hour. In contrast to our transparency, Mr. Dershowitz has steadfastly refused to respond to our inquiry in November whether he already had access to confidential material from *Maxwell* by virtue of his role as a potential witness in that case, Cooper Decl. ¶ 7, even as he moves to disqualify Cooper & Kirk for the "unfair" advantage that our access to confidential material gives Ms. Giuffre.

We do not oppose Mr. Dershowitz's request for a stay, and we join his request for a clarification. Specifically, the Destruction Order directs us to "destroy (a) all materials from *Giuffre v. Maxwell* . . . save for the transcript of Ms. Giuffre's deposition in that case and (b) all work product derived from the *Maxwell* materials." Destruction Order at 13. We wish to clarify whether we may retain our copies of and work product derived from (1) the exhibits to Ms. Giuffre's depositions in *Maxwell*, and (2) materials from *Maxwell* that are not marked confidential. As to the former, we already produced the exhibits from Ms. Giuffre's deposition to Mr. Dershowitz. Cooper Decl. ¶ 19. As to the latter, we do not understand the Protective Order to prohibit the disclosure to us of material not marked confidential.

July 7, 2020
Page 4

Respectfully,

s/ Charles J. Cooper
Charles J. Cooper

cc: Counsel of Record