UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA L. GIUFFRE,<br><br>Plaintiff / Counterclaim Defendant,<br><br>v.<br><br>ALAN DERSHOWITZ,<br><br>Defendant / Counterclaim Plaintiff. | Case No. 19-cv-03377-LAP<br><br>**DECLARATION OF CHARLES J. COOPER** |

CHARLES J. COOPER hereby declares pursuant to 28 U.S.C. § 1746 as follows:

1. I am a senior partner at Cooper & Kirk PLLC ("Cooper & Kirk"), and I make this declaration in response to the Court's Order dated July 1, 2020 (Doc. 144), and its Order dated July 3, 2020 (Doc. 147).

2. I submit this declaration to describe the background and circumstances under which Cooper & Kirk came into possession of materials designated "confidential" under the protective order entered in *Giuffre v. Maxwell*, dated March 18, 2016 (Doc. 62 in No. 15 civ. 7433) ("Protective Order"), as well as our communications with counsel for Defendant Dershowitz regarding the *Maxwell* materials. The information in this declaration is based on my own personal knowledge and the knowledge of the other lawyers working with me on this case.

3. Ms. Giuffre was originally represented both in the above-captioned action and in *Giuffre v. Maxwell* by Boies Schiller Flexner, LLP ("BSF"). As the party plaintiff and counsel in *Maxwell*, both Ms. Giuffre and BSF had access to and familiarity with materials designated "confidential" under the Protective Order (referred to herein as "confidential material"), but under

the terms of the Protective Order, they could not "disclose[ ] or use[ ]" that material in connection with this action. Protective Order ¶¶ 4, 5.

4.     On October 24, 2019, shortly after this Court disqualified BSF in this action under the advocate-witness rule, Mr. Dershowitz filed a request for pre-answer discovery with the Court, asking that Ms. Giuffre be required to produce the transcripts of and exhibits to her depositions from *Giuffre v. Maxwell* and *Edwards v. Dershowitz*, No. CACE 15-000072 (Fl. 17th Jud. Cir.). *See* Letter from Howard M. Cooper to the Honorable Loretta Preska, dated Oct. 24, 2019 (Doc. 71). The transcripts and exhibits from *Giuffre v. Maxwell*, and the transcript from *Edwards*, were marked "confidential" under the Protective Order in *Giuffre v. Maxwell*.

5.     On October 25, 2019, this Court ordered Ms. Giuffre's then-unidentified replacement counsel "to inform the Court by letter no later than November 4" if "counsel disagrees" with the request for pre-answer discovery. Memo Endorsement dated Oct. 25, 2019 (Doc. 72). Five days later, after Mr. Dershowitz sought an extension of time to answer the Complaint until his request for pre-answer discovery could be resolved, this Court directed his counsel to confer with Ms. Giuffre's "current counsel" (i.e., BSF) on "this rather ministerial matter." Memo Endorsement dated Oct. 30, 2019 (Doc. 74).

6.     I first met personally with Ms. Giuffre in late October, while Mr. Dershowitz's request for pre-answer discovery was pending, and we agreed that Cooper & Kirk would represent her. Because this Court was deliberating over a process for unsealing the record in *Giuffre v. Maxwell*, and because Mr. Dershowitz's request for pre-answer discovery underscored the effect that process would have on the above-captioned action, Ms. Giuffre retained Cooper & Kirk to represent her in *Giuffre v. Maxwell*, as well as in this action. Specifically, our engagement letter with Ms. Giuffre states that "[w]e will also represent you on a limited basis in *Giuffre v. Maxwell*,

No. 1-7433 (S.D.N.Y.), by consulting with your litigation counsel, Boies, Schiller & Flexner LLP, on matters relating to the unsealing of the record in that case."

7.      As we informed the Court in our letter responding to Mr. Dershowitz's request for pre-answer discovery, we were then under the impression that Mr. Dershowitz already had full access to confidential material from the *Giuffre v. Maxwell* because he was identified by both parties as a potential witness in that action, *see* Decl. of Alan M. Dershowitz dated Aug. 11, 2016, at ¶¶ 29–30 (Doc. 363 in 15 civ. 7433) (public redacted filing), and the Protective Order expressly states that confidential information may be disclosed to "deponents, witnesses, or potential witnesses," Protective Order ¶ 5(g). *See* Letter from Charles J. Cooper to the Honorable Loretta A. Preska, dated Nov. 4, 2019 (Doc. 84) ("Nov. 4 Letter"). And as a party to *Edwards v. Dershowitz*, he certainly had access to her deposition transcript and exhibits in that case. Moreover, he had publicly (and inaccurately) characterized then-sealed confidential documents that Ms. Giuffre had produced in *Giuffre v. Maxwell*. *See* Alan M. Dershowitz, *Letter to the Editor: Article Misrepresented Dershowitz*, THE HARVARD CRIMSON (Dec. 5, 2018), available at https://www.thecrimson.com/article/2018/12/5/letter-dershowitz-misrepresention/.[1]  When we conferred about Mr. Dershowitz's request, I asked counsel for Mr. Dershowitz to correct me if I was incorrect in believing that Mr. Dershowitz already had access to the documents he sought, and counsel did not respond. A true and correct excerpt of that email exchange is attached hereto as

---

[1] In his letter to the editor, Mr. Dershowitz stated: "There is evidence that directly proves I was framed. These include emails between Roberts and a journalist, a book manuscript by Roberts and a legal brief that are smoking guns showing that I was 'deliberately framed for financial reasons.' These exculpatory documents have been sealed by Roberts' lawyers and I am seeking to make them public." Although his characterization of them is inaccurate, the email and book manuscript to which he was apparently referring were not unsealed by the Second Circuit until eight months later. *See* Doc. 278 at 564, and Doc. 286 at 6, *in Brown v. Maxwell*, No. 18-2868 (2d Cir. Aug. 9, 2019).

Exhibit A. He has not responded to this date. For that reason, we believed then and believe now that Mr. Dershowitz's request for pre-answer discovery was intended not to give Mr. Dershowitz access to materials he had never seen, but instead to legitimize his access to them and/or to bring those transcripts and exhibits out from under the Protective Order. *See* Nov. 4 Letter, at 2; *see also* Letter from Imran H. Ansari to the Honorable Loretta A. Preska, dated Oct. 30, 2019 (Doc. 73) ("Mr. Dershowitz seeks . . . the unsealing of the Plaintiff's deposition transcripts and exhibits from prior actions"); Letter from Imran H. Ansari to the Honorable Loretta A. Preska, dated Oct. 30, 2019 (Doc. 1001, in No. 15 civ. 7433) (same); Letter from Imran H. Ansari to the Honorable Loretta A. Preska, dated Nov. 4, 2019, at 2 (Doc. 80) ("Mr. Dershowitz has made a request for discrete pre-answer discovery in the unsealing the Plaintiff's deposition transcripts and exhibits in collateral matters so that he may thoroughly prepare his responsive pleading.").

8.      In a letter filed with the Court in this action, we reaffirmed the position taken by Ms. Giuffre in *Giuffre v. Maxwell* that "the entire record in *Maxwell*" should be unsealed, including the deposition transcripts and exhibits, but we argued that Mr. Dershowitz had not met his burden to obtain pre-answer discovery and that the unsealing should therefore proceed in accordance with the Second Circuit's mandate in *Brown v. Maxwell*. Nov. 4 Letter, at 2.

9.      Ms. Maxwell also responded to Mr. Dershowitz's request. She argued that Mr. Dershowitz and his counsel should have access to the transcripts and exhibits and submitted that an order requiring Ms. Giuffre to produce the materials "subject to the Protective Order" would adequately protect Ms. Maxwell's and other parties' interests. Letter from Ty Gee to the Honorable Loretta Preska, dated Nov. 1, 2019 (Doc. 1002, in No. 15 civ. 7433). Ms. Maxwell, however, reserved her "right to address the appropriate limitations on *the use* in another case of sealed materials in" *Giuffre v. Maxwell*. *Id.* (emphasis added).

10. The Court denied Mr. Dershowitz's request for pre-answer discovery. Order dated Nov. 5, 2019 (Doc. 85).

11. Since that time, our involvement in *Giuffre v. Maxwell* has been more limited than we originally anticipated when Ms. Giuffre retained us to advise her in that matter. Until last month, proceedings in that action have largely concerned the process by which documents would be unsealed and third parties notified, instead of the question whether specific documents should be unsealed, which is the issue about which we anticipated consulting with BSF. The unsealing process is now underway, and our involvement would have begun in earnest as documents that implicated Ms. Giuffre's interests in this action were considered for unsealing. Of course, our participation, if any, will now be curtailed due to our inability to review the confidential material.

12. At the time Ms. Giuffre retained Cooper & Kirk, the parties' discovery plan was due on November 13, 2019, leaving little time for Cooper & Kirk to formulate a position on the issues on which the parties were required to confer under FED. R. CIV. P. 26(f). This deadline was later extended.

13. On November 20, 2019, we submitted a discovery plan jointly with counsel for Mr. Dershowitz. Joint Report of the Parties Pursuant to Fed. R. Civ. P. 26(f) (Nov. 20, 2019) (Doc. 93). In that plan, we reported that "Giuffre and Dershowitz intend to seek discovery of materials which are currently under seal in *Giuffre v. Maxwell* and both parties agree that such materials should be unsealed." *Id.* at 7.

14. Mr. Dershowitz renewed his request for the transcripts and exhibits at the Rule 16 Conference with the Court on December 2, 2019. The Court asked me whether I had reviewed the transcripts of Ms. Giuffre's deposition in *Giuffre v. Maxwell*, and I responded that my colleagues had done so. Tr. at 17:4–7 (Dec. 2, 2019). After the Court urged us to consider producing the

5

n
n

transcripts to Mr. Dershowitz, my colleague, Mr. Kirk, notified the Court that "[w]e were under the impression that we could not produce the Maxwell deposition due to the Maxwell protective order." *Id.* at 17:23–25. The Court agreed that we could produce the deposition "for use in [*Giuffre v. Dershowitz*] only" and subject to the condition that "it is not to be disclosed." *Id.* at 18: 2–5. The Court also directed the parties to confer about an initial exchange of other documents that might narrow the factual disputes. *See, e.g.*, Tr. at 17:11–14. True and correct excerpts of that transcript are attached hereto as Exhibit B.

15. The day after the Rule 16 Conference, counsel for Mr. Dershowitz served on Ms. Giuffre requests for production, interrogatories, and a notice of a subpoena duces tecum to BSF. Notably, Mr. Dershowitz did not request copies of the *Maxwell* materials from BSF. A true and correct copy of Mr. Dershowitz's subpoena to BSF is attached as Exhibit C.

16. Instead, in a December 4 email regarding initial disclosures, counsel for Mr. Dershowitz proposed to "broaden the upfront exchange to include all materials in [Ms. Giuffre's] custody, possession or control from the Maxwell case." A true and correct excerpt of an email exchange concerning initial disclosures is attached as Exhibit D.

17. Counsel for both parties agreed to hold a telephonic conference to discuss initial disclosures and other discovery-related matters on December 6. My colleagues, Mr. Kirk, Ms. Moss, and Ms. Proctor, participated in the conference. They have reviewed their notes and inform me that, when Ms. Moss requested that Mr. Dershowitz produce his prior productions in related matters, Mr. Dershowitz's counsel responded that he believed we already had copies of Mr. Dershowitz's production in *Giuffre v. Maxwell*. Ms. Moss stated that she would confirm that we had a copy of the production in question. In a follow-up email recording the parties' agreements during the telephonic conference, Ms. Moss noted that counsel for Mr. Dershowitz would "confirm

6

whether there were any documents produced in the *Maxwell* matter that were not copied to Plaintiff's then counsel, Boies Schiller." Exhibit D.

18. We do not believe Mr. Dershowitz made a document production in response to a subpoena in *Giuffre v. Maxwell*, but counsel's comment reflects an assumption that we would have access to any production he had made, irrespective of whether it was marked "confidential" under the Protective Order. (It is possible counsel for Mr. Dershowitz was referring to declarations and exhibits Mr. Dershowitz filed under seal in *Giuffre v. Maxwell*. *See* Docs. 363, 435 in 15 civ. 7433 (redacted public versions of sealed filings)).

19. On December 16, 2019, we produced the following materials from *Giuffre v. Maxwell* as part of our initial disclosures:

    a. Copies of transcripts and exhibits from Ms. Giuffre's depositions in *Giuffre v. Maxwell*, portions of which remained subject to the Protective Order;

    b. Copies of Ms. Giuffre's productions in *Giuffre v. Maxwell*, which included a transcript of her deposition in *Edwards v. Dershowitz*, and portions of which remained subject to the Protective Order;[2]

    c. A copy of the production Mar-a-Lago made in *Giuffre v. Maxwell*, which was not marked "confidential" under the Protective Order;

    d. A copy of the production Victims Refuse Silence made in *Giuffre v. Maxwell*, which was not marked "confidential" under the Protective Order; and

    e. Copies of flight logs originally produced in *Giuffre v. Maxwell*, which have since been made public.

---

[2] Under the terms of the Protective Order, these materials could be disclosed to us and to Mr. Dershowitz without an order from this Court because Ms. Giuffre, as the producing party, consented to their disclosure. Protective Order ¶ 5.

20. Because portions of Ms. Giuffre's *Maxwell* deposition transcripts, exhibits, and productions remained "confidential" under the Protective Order, we produced them "subject to the Court's direction that this is for use only in this case and that only materials that have been unsealed by the Court may be publicly disclosed." A true and correct copy of Ms. Moss's letter covering our initial disclosures is attached hereto as Exhibit E.

21. Pursuant to Rule 26(a)(1)(A)(ii), we also disclosed that Ms. Giuffre had "in [her] possession, custody, or control" the following documents, which she "*may* use to support [her] claims or defenses":

    a. Ms. Giuffre's own productions from *Giuffre v. Maxwell*;

    b. "Documents produced by Ghislaine Maxwell in the *Giuffre v. Maxwell* matter and relied upon by Ms. Giuffre in her summary judgment briefing in that matter[, which] are located in the court records."

    c. "Deposition transcripts from the *Giuffre v. Maxwell* matter."

True and correct excerpts from Ms. Giuffre's initial disclosures are attached hereto as Exhibit F.

22. On February 28, 2020, we served Ms. Giuffre's objections and responses to Mr. Dershowitz's requests for production and interrogatories. Among other documents, we committed to "produce to Defendant the document production received from Ghislaine Maxwell in the *Giuffre v. Maxwell* matter, which is currently subject to the protective order in that case," provided "the Court grants leave." True and correct excerpts of Ms. Giuffre's objections and responses to Mr. Dershowitz's requests for production are attached hereto as Exhibit G.

23. In response to a demand that Ms. Giuffre "[i]dentify each attorney who has represented [her] from 1998 to present," Ms. Giuffre disclosed that "Chuck Cooper, Mike Kirk, Nicole Moss, Haley Proctor and other attorneys and staff at Cooper & Kirk, PLLC represent

Plaintiff . . . in the litigation styled *Giuffre v. Maxwell*, 15-cv-07433-RWS in the Southern District of New York." True and correct excerpts of Ms. Giuffre's objections and responses to Mr. Dershowitz's interrogatories are attached hereto as Exhibit H.

24. We also produced a copy of our engagement letter, which reflected that we represented Ms. Giuffre in *Giuffre v. Maxwell*.

25. On Friday, March 27, 2020, counsel for Mr. Dershowitz sent an email stating that "to the extent not encompassed by our initial request for production to Ms. Giuffre, we intend to serve a formal request next week requesting production of all documents produced by any party or non-party in the Giuffre v. Maxwell case, as well as all deposition transcripts and exhibits." My colleague, Ms. Moss, responded that "as indicated in Plaintiff's responses to Defendant's discovery requests, we have no objection to producing copies of other documents exchanged in that matter but cannot do so without a court order and compliance with the *Maxwell* protective order. I am happy to meet and confer on the best path forward for complying with the *Maxwell* Order and getting a court order in this case that would enable us to produce the documents you are requesting." A true and correct excerpt of the email exchange is attached hereto as Exhibit I.

26. On June 10, 2020, my colleague, Ms. Moss, called counsel for Mr. Dershowitz to discuss a negotiated briefing schedule for our pending motion to dismiss Mr. Dershowitz's amended counterclaims. During the phone call, counsel for Mr. Dershowitz notified Ms. Moss that he intended to move the Court to grant him access to all pleadings, filings, and discovery in *Giuffre v. Maxwell*. My colleague conferred with Mr. Dershowitz's counsel again on June 12, and in a follow-up email after that call, Mr. Dershowitz's counsel summarized our position as follows: "Ms. Giuffre agrees that we may have access to Maxwell's productions . . . so long as the Court grants leave and this access complies with the protective order. We understand that you are still

considering whether to agree to provide access to the third-party materials if the court grants leave." A true and correct excerpt of the email exchange is attached hereto as Exhibit J. We ultimately revised that position to the position reflected in Mr. Dershowitz's letter to the Court: "Plaintiff does not oppose the Court granting Dershowitz access under the Protective Order in the *Maxwell* case to any discovery or other filings from that case the Court deems are relevant to issues in dispute in this case. If the Court deems that any additional discovery or filings from the *Maxwell* matter are relevant to this case and orders their production, Plaintiff will of course comply with that Court order." Letter from Howard M. Cooper to the Honorable Loretta A. Preska, dated June 12, 2020 (Doc. 133).

27. A true and correct copy of the transcript of the Court's telephonic hearing on Mr. Dershowitz's request is attached hereto as Exhibit K.

28. Apart from the disclosures described above, at no time have we disclosed confidential material or sealed filings from *Giuffre v. Maxwell* to anyone apart from Ms. Giuffre, attorneys and employees of Cooper & Kirk, and attorneys and employees of BSF.

29. All confidential material and sealed filings we have received from BSF are stored (1) on our firm server in a restricted-access folder that may be accessed only by attorneys and employees actively working on this matter, and/or (2) on the encrypted hard-drives of computers that are accessible only by attorneys and employees actively working on this matter.

30. In order to safeguard confidential material, our protocol requires attorneys and employees to password protect documents designated "confidential" under the Protective Order, or documents that contain or paraphrase confidential material, if they are going to send the documents over email. Emails that quote or paraphraswe confidential material in the body of the message are to be conspicuously marked as containing confidential material.

31. We have not used confidential material from *Giuffre v. Maxwell* in court filings (sealed or unsealed), or as exhibits in depositions, hearings, or at trial.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 7, 2020                                                                           Respectfully submitted,


                                                                                              s/ Charles J. Cooper
                                                                                              Charles J. Cooper