# EXHIBIT K

K6n1giuc

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   VIRGINIA L. GIUFFRE,

 4                 Plaintiff,

 5         v.                              19 Civ. 3377 (LAP)

 6   ALAN DERSHOWITZ,

 7                 Defendant.              Premotion Conference
                                          (Via Teleconference)
 8   ------------------------------x
                                          New York, N.Y.
 9                                        June 23, 2020
                                          2:09 p.m.
10
     Before:
11
                        HON. LORETTA A. PRESKA,
12
                                          District Judge
13
                            APPEARANCES
14
     COOPER & KIRK, PLLC
15        Attorneys for Plaintiff
     BY:  NICOLE J. MOSS, ESQ.
16
     BOIES, SCHILLER & FLEXNER LLP
17        Attorneys for Plaintiff
     BY:  SIGRID S. McCAWLEY, ESQ.
18        ANDREW VILLACASTIN, ESQ.
          SABINA MARIELLA, ESQ.
19
     TODD & WELD LLP
20        Attorneys for Defendant Alan Dershowitz
     BY:  HOWARD M. COOPER, ESQ.
21        KRISTINE C. OREN, ESQ.

22   AIDALA BERTUNA & KAMINS PC
          Attorneys for Defendant Alan Dershowitz
23   BY:  ARTHUR L. AIDALA, ESQ.
          IMRAN H. ANSARI, ESQ.

24

25
```

K6n1giuc

                              APPEARANCES
                              (CONTINUED)

HADDON, MORGAN AND FOREMAN, P.C.
     Attorneys for Defendant Ghislaine Maxwell (15 Civ. 7433)
BY:  LAURA A. MENNINGER, ESQ.
     JEFFREY S. PAGLIUCA, ESQ.

HOLLAND & KNIGHT LLP
     Attorneys for Intervenors Miami Herald Media Company,
     Julie K. Brown (15 Civ. 7433)
BY:  CYNTHIA GIERHART, ESQ.

KRIEGER, KIM & LEWIN LLP
     Attorneys for Interested Party John Doe (15 Civ. 7433)
BY:  NICHOLAS J. LEWIN, ESQ.
     PAUL M. KRIEGER, ESQ.

K6n1giuc

|      |                                                                    |
|------|--------------------------------------------------------------------|
| 1    | THE COURT:  Counsel for Ms. Giuffre, please?                       |
| 2    | MS. MOSS:  Good morning, your Honor.  This is Nicole               |
| 3    | Moss with Cooper & Kirk, and we represent Ms. Giuffre in the       |
| 4    | *Giuffre v. Dershowitz* matter.                                    |
| 5    | THE COURT:  Yes, ma'am.  Good afternoon.                           |
| 6    | Counsel for Mr. Dershowitz?                                        |
| 7    | MR. COOPER:  Good afternoon, your Honor.  Howard                   |
| 8    | Cooper for Professor Dershowitz, and on the line unmuted with      |
| 9    | me is my colleague Kristine Oren, as is Arthur Aidala and Imran    |
| 10   | Ansari.                                                            |
| 11   | THE COURT:  Thank you.                                             |
| 12   | Is counsel for Ms. Maxwell on?                                     |
| 13   | MS. MENNINGER:  Yes.  Good afternoon, your Honor.                  |
| 14   | Laura Menninger from Haddon, Morgan and Foreman on behalf of       |
| 15   | Ms. Maxwell, and I have with me Jeffrey Pagliuca.                  |
| 16   | THE COURT:  Thank you.                                             |
| 17   | Is counsel for Doe on?                                             |
| 18   | MR. LEWIN:  Good afternoon, Judge.  This is Nick                   |
| 19   | Lewin.  I'm joined by my partner Paul Krieger from Krieger, Kim    |
| 20   | & Lewin, on behalf of nonparty John Doe.                          |
| 21   | THE COURT:  Yes, sir.  Thank you.                                  |
| 22   | Are there any other lawyers for parties that I haven't             |
| 23   | noted?                                                             |
| 24   | MS. McCAWLEY:  Yes, your Honor.  This is Sigrid                    |
| 25   | McCawley from Boies Schiller.  We represent Ms. Giuffre in the     |

K6n1giuc

| | |
|---|---|
| 1 | *Maxwell* matter.  And I have with me my colleagues Andrew |
| 2 | Villacastin and Sabina Mariella. |
| 3 | THE COURT:  Yes, ma'am.  Good afternoon. |
| 4 | MS. McCAWLEY:  Good afternoon. |
| 5 | THE COURT:  Anyone else? |
| 6 | MS. GIERHART:  Good afternoon, your Honor.  This is |
| 7 | Cynthia Gierhart from Holland & Knight on behalf of Julie Brown |
| 8 | and the Miami Herald.  And Christine Walz will not be joining. |
| 9 | I'll be on the call on her behalf. |
| 10 | THE COURT:  Yes, ma'am.  Good afternoon. |
| 11 | Who else? |
| 12 | All right.  We seem to be together on this. |
| 13 | As we know, we are here on Professor Dershowitz's |
| 14 | motion to have the protective order in the *Maxwell* case |
| 15 | modified to permit the production of all of the information |
| 16 | that was subject to discovery in that case produced to him in |
| 17 | this case.  I guess my first question is -- and this is |
| 18 | following reading Mr. Cooper's letter.  Mr. Cooper has said in |
| 19 | here a couple of places that reliance on the protective order |
| 20 | was not reasonable.  It seems that Judge Sweet seemed to have |
| 21 | found that it was reasonable and in fact was important to the |
| 22 | parties and nonparties who produced information and documents |
| 23 | in the case.  Mr. Cooper, why shouldn't I give some weight to |
| 24 | Judge Sweet's findings that the reliance interest by those |
| 25 | parties was important? |

K6n1giuc

1          MR. COOPER:  Thank you, your Honor.  And I know you're

2     aware there are two Mr. Coopers in this case, but I get that

3     you're asking me.

4          THE COURT:  I know.  But I think Mr. Charles Cooper is

5     not on the phone.  Is that right?

6          MR. COOPER:  That is true.  So --

7          THE COURT:  Okay.  So it's you, Mr. Cooper.  You can't

8     hide.

9          MR. COOPER:  Your Honor, nor would I want to.

10          Your question, of course, needs to be directed at the

11     precise context here.  First, this is not an issue of public

12     disclosure as to which an expectation of reasonable reliance

13     might apply.  First, Professor Dershowitz has offered

14     unequivocally -- and subject only to rights he would enjoy

15     anyway, to get the Court to issue a further order changing the

16     status quo, but -- to join the protective order.

17          But secondly, with all respect to Judge Sweet, his was

18     not the final word with regard to the protective order at issue

19     here, and I have studied as best I can, as someone without

20     access to the entirety of the record in *Giuffre v. Maxwell*, the

21     procedural history, but when the Second Circuit spoke with

22     regard to this issue, it was very clear that there had been no

23     effective individualized or particularized assessment of any

24     particular discovery item, deposition testimony, and the like

25     prior to its being allowed to enjoy the full protection of the

K6n1giuc

1    order.  And I would respectfully submit, under those

2    circumstances, your Honor, that someone who comes forward and

3    testifies with a concern about publication to the public

4    generally would not have had a reasonable expectation that

5    there couldn't be modification of the order to a private

6    individual who will agree to continue to abide by it and

7    that --

8         THE COURT:  Oh, except that the protective order

9    stipulated that the materials would be used in connection with

10   that lawsuit only.

11        MR. COOPER:  I do understand, your Honor, and I can

12   tell you that while I understand the literal language, we now

13   have Ms. Giuffre having brought claims that highly and

14   substantially overlap between the *Maxwell* case and the case now

15   brought against Professor Dershowitz.

16        But before I get to that, your Honor, I'm really

17   commenting on the issue of what someone could reasonably have

18   relied upon, and the issue that someone would have thought of

19   at that point in time was public disclosure, and then, of

20   course, your Honor, we get into the issue of -- assuming that

21   I'm correct, and I'm happy to argue it to you paragraphs

22   cited -- that there is substantial overlap between the cases,

23   and Ms. Giuffre has put at issue a conspiracy here between,

24   allegedly, Ms. Maxwell, Mr. Epstein, and Professor Dershowitz

25   that she put pretty much at issue in the *Maxwell* case that she

K6n1giuc

1   brought, that we are going to be seeking these materials

2   anyway, and I would imagine that there can't be an expectation,

3   a reasonable expectation under this protective order that there

4   could be no further discovery if something already deemed

5   discoverable per se -- and by logic, since it happened in the

6   *Maxwell* case, it's going to be undertaken here -- and courts,

7   including the Second Circuit, your Honor, have addressed this.

8   In terms of judicial economy, the *EPDM* case speaks directly

9   about whether there is a right inevitably to discover the same

10  information.  And so I don't think it would be reasonable for a

11  party who is a witness in both cases to expect that their

12  discovery materials, their deposition testimony, somehow would

13  be immune from discovery in a further lawsuit.

14       THE COURT:  All right.  Who wants to speak on the

15  other side of that, please?

16       MS. MENNINGER:  Your Honor, this is Laura Menninger on

17  behalf of Ms. Maxwell.

18       I would strongly dispute that the parties, including

19  Ms. Maxwell particularly but also any of the third parties from

20  whom discovery was sought and obtained in the *Maxwell* matter,

21  didn't rely on the promises made in the protective order that

22  the materials would be destroyed or returned at the conclusion

23  of that case.  It was expressly --

24       THE COURT:  But may I interrupt you, Ms. Menninger.

25  What happened to that provision?  What happened to that

K6n1giuc

1  provision?  Why wasn't that done at the end of the case?

2        MS. MENNINGER:  Your Honor, we attempted to enforce

3  that provision, especially with regard to Ms. Giuffre's counsel

4  at the time, and we had a hearing in front of Judge Sweet where

5  it was determined that because there was still ongoing

6  litigation with the third-party intervenors and appeal on the

7  Second Circuit, that it was not yet ripe to be resolved.

8        THE COURT:  Thank you.  I will share Mr. Cooper's

9  failure to memorize every docket entry in the case.  Thank you.

10        Go ahead, ma'am.

11        MS. MENNINGER:  And your Honor, I would note a couple

12  of other concerns we have on this reliance point.

13        For example, the protective order provided that the

14  only attorneys who would be given access to the confidential

15  materials were attorneys actively working on the *Maxwell* case.

16  I was troubled, when I reviewed some of the discovery responses

17  that were attached to Mr. Cooper's letter, that it appears that

18  Ms. Giuffre's current counsel, which is new and different

19  counsel at Cooper & Kirk, appear to have access to the

20  confidential materials even though they were never actively

21  working on the *Maxwell* case.  They may promise to produce

22  Ms. Maxwell's production in *Maxwell* in the *Dershowitz* case if

23  this Court so orders, and it also appears that they have

24  produced all of Ms. Giuffre's depositions and productions in

25  the *Maxwell* case over into the *Dershowitz* case.

K6n1giuc

1          So the leakage concern that we have, the reliance that

2     we have on the protective order is coextensive with the third

3     parties' reliance but certainly no less diminished.  When our

4     client was ordered to submit to second and third depositions,

5     that was, Judge Sweet found expressly, based on the promise of

6     the protection of the protective order, and so to now say that

7     no one could reasonably have relied on a protective order which

8     expressly provided that those materials would be destroyed or

9     returned at the conclusion of the case I think is not supported

10    by the plain language of the protective order and the rulings

11    of Judge Sweet.

12          THE COURT:  Ms. Moss, is it the fact that you and your

13    colleagues have access to those materials from the *Maxwell*

14    case?

15          MS. MOSS:  Your Honor, when we were retained by

16    Ms. Giuffre, she retained us both to represent her in this case

17    and to represent her in conjunction with the Boies Schiller

18    firm in the *Maxwell* case, so yes, we do have access to those

19    materials.  And as I think we made clear in our responses to

20    defendant Dershowitz, the reason we could not produce them is

21    because of the protective order.

22          But I would remind your Honor that when it comes to

23    Ms. Giuffre's depositions from the *Maxwell* case and her own

24    production in that matter, at our initial status conference

25    with you, you directed us to provide those, so we of course did

K6n1giuc

1    follow that directive.

2                    THE COURT:  Yes, ma'am.

3                    Who else wants to be heard on reliance?

4                    MR. COOPER:  Your Honor, this is Mr. Cooper again.  I

5    do want to respond to what was just said, but I don't want to

6    go out of turn.

7                    THE COURT:  Go ahead.

8                    MR. COOPER:  Thank you, your Honor.

9                    I would just ask your Honor to consider the piece of

10   information that you've just learned, which is, frankly, news

11   to me and other counsel for Professor Dershowitz, and that is

12   that Cooper & Kirk have access, in terms of prosecuting the

13   case against Professor Dershowitz and defending against his

14   claims, to all of the *Maxwell* materials, while we do not.  And

15   with respect, I understand how that seems to have come about by

16   a coincidence or perhaps an intentional representation in both

17   cases, but that situation is unfair and inequitable, and I

18   can't imagine that anybody reasonably relying on a protective

19   order would ever have foresaw that could be achieved by virtue

20   of the protective order.  That's not what it's intended for, to

21   give a side a completely unfair tactical advantage in a piece

22   of litigation, especially like this.

23                   THE COURT:  Could not have foreseen, counsel.

24                   MR. COOPER:  Correct, your Honor.

25                   THE COURT:  Thank you.

K6n1giuc

1          MR. COOPER:  Would not have been reasonable.

2          THE COURT:  Thank you.

3          Who else wants to be heard on reliance?

4          All right.  The next question I have is:  How are we

5     to protect the interests of the nonparties or third parties who

6     either produced materials or were mentioned in the materials?

7          MR. COOPER:  And your Honor, again --

8          THE COURT:  And I'm sorry.  And one more thing.

9     Related to that, obviously, are the concerns I have about

10    avoiding the unsealing process in *Maxwell*.  I think I do count

11    this as Professor Dershowitz's third try at that.

12          But go ahead, counsel.  Mr. Cooper, did you want to

13    talk?

14          MR. COOPER:  Your Honor, I assume you were directing

15    that question at me as well, so I'm happy to.

16          The short answer is that Professor Dershowitz has

17    agreed unequivocally to sign on to the protective order in the

18    case, which means that his lawyers with appearances in the

19    matter of *Giuffre v. Dershowitz*, the client himself, their

20    experts, and those listed in the protective order will be the

21    only ones with access to the materials, and they will be used

22    solely for purposes of the case.  There will be an ability --

23    and I don't know this, but logic dictates that much of the

24    materials have already been designated as confidential, if not

25    all of them, except those published by the Second Circuit, or

K6n1giuc

ordered published, and so the net effect will be that for

purposes of this litigation, an additional set of lawyers and

their clients will have access.

          And further, your Honor, paragraph 14 of the existing

protective order invites the parties to seek further order of

the Court if there is an unforeseen issue that needs to be

dealt with, so I would imagine if there is some additional

concern that the producing party, or the subject party, more

accurately, could raise it with the Court, and, in turn, to the

extent that the protective order was improvidently granted in

terms of covering certain items -- for example, that may

already be in the public domain -- there would be a

corresponding right to seek leave of court for a further order

to address that circumstance.

          THE COURT:  I don't think that's improvidently

granted.  At the time, there weren't specific documents

enumerated as being subject to the protective order.  The fact

that some document that was designated as confidential pursuant

to the protective order later became public doesn't mean that

the protective order was improvidently granted at the outset.

So I don't think that's a fair comparison.

          While we're talking about improvidently granted, as

you know, the general requirements for talking about whether

the Court should modify the order is absent a showing of

improvidence in the grant of the order or some extraordinary

K6n1giuc

1    circumstance or compelling need.  I don't think there's anyone

2    here who's arguing that the order was initially granted

3    improvidently.  So the question on the table is whether this is

4    an extraordinary circumstance or a compelling need.  Is that

5    right?

6            MR. COOPER:  Well, your Honor, I think that there are

7    four factors to be taken into account, but those are definitely

8    two of them, and I used the words "improvidently granted"

9    perhaps inartfully, but only to highlight the fact that the

10   documents and materials that are now the subject matter we're

11   talking about weren't given the particularized analysis that

12   the Second Circuit's decision calls for.

13           THE COURT:  That's in hindsight, counsel.  Very few

14   protective orders detail specifically each document that is

15   covered by it at the outset.  That's apples and oranges.

16           And the four factors you're talking about are the

17   factors that the Court considers in determining whether

18   extraordinary circumstances exist, right?

19           MR. COOPER:  That is true, your Honor.

20           THE COURT:  Okay.

21           MR. COOPER:  And in addition, the compelling --

22           THE COURT:  Compelling circumstance, need, right.

23   Okay.

24           MR. COOPER:  And I would argue, your Honor, that there

25   is a compelling need here.  And without repeating it, the first

K6n1giuc

1    is for Professor Dershowitz to not be materially disadvantaged

2    in his defense and prosecution of this case while facing an

3    adversary who has in her custody, possession, or control all of

4    the materials that he seeks.  So that is the first of

5    compelling need.

6           Secondly, your Honor, especially with regard to the

7    more recent discovery standard related to proportionality,

8    there really is a compelling need for efficiency here, which

9    again, I won't repeat, but Professor Dershowitz has to defend

10   himself, and he will defend himself, by proving the truth of

11   what it is that he is alleged to have defamed Ms. Giuffre

12   about.  And if one were to look at paragraphs 14, 17, 18, and

13   53, just by way of example, Ms. Giuffre alleges that Professor

14   Dershowitz has defamed her by calling her a serial liar who's

15   committed perjury as part of an extortion scheme against

16   multiple wealthy third parties and individuals.  She uses those

17   words throughout.  Paragraph 53, she accuses Professor

18   Dershowitz of being in a conspiracy with Ms. Maxwell and

19   Jeffrey Epstein in order to conceal their sex trafficking

20   organization.  In light of those allegations, and in light of

21   the testimony already given directly on those points that have

22   been injected into this lawsuit by Ms. Giuffre, and

23   Mr. Dershowitz's, frankly, constitutional right to prove that

24   his speech is protected because it's true, he has a compelling

25   need for access to all of these materials.  It is, we believe,

K6n1giuc

1   based -- and we are looking, frankly, at the summary judgment

2   record that is public record to gather a list of approximately

3   13 or 14 names of people that we are able to discern were

4   deposed in the *Maxwell* case.  They are likely all to have

5   information that is relevant to Professor Dershowitz's defense

6   and counterclaims here, and that includes Ms. Maxwell, who, at

7   least according to the publicly available records, appears to

8   have been deposed at length.  And the idea that Ms. Giuffre

9   would go forward in this case with Ms. Maxwell's deposition

10  transcript available to her while we must depose her anew

11  strikes me as inconsistent with the purpose of discovery,

12  fairness, due process, and the like, and I would respectfully

13  submit, your Honor, that all of that constitutes not just a

14  compelling need but a need to consider judicial efficiency and

15  proportionality over form in this instance.

16          THE COURT:  It might be efficiency, but I'm not sure

17  it's proportionality, but okay.

18          Who else wants to be heard, please?

19          MS. MENNINGER:  Your Honor, this is Laura Menninger

20  again on behalf of Ms. Maxwell.

21          THE COURT:  Yes, ma'am.

22          MS. MENNINGER:  We were unaware that Ms. Giuffre's

23  current counsel had access to this confidential information,

24  and frankly, in my opinion, they do not have it properly under

25  the protective order because they were not actively litigating

K6n1giuc

the case when it was a case, which is what the protective order

covered, and I believe that the appropriate remedy for that

problem is that they return to Boies Schiller any materials

that they improperly had access to, we object strongly to their

current access, and I think that would cure the inequity that

Mr. Cooper has just described in one party having access to the

records while the other does not.

        Moreover, your Honor, some of the points that

Mr. Lewin made in his very carefully thought-through letter I

would just reraise at this point, which include the fact that

even though Mr. Dershowitz is stating that he will abide by the

protective order, as we all understand, the point at which he

attaches one of those documents to a pleading, it then is

transformed into a judicial document, most likely, and loses

its confidential status.  So in my opinion, it appears the fox

would be guarding the henhouse with respect to whether these

materials remain confidential or don't.

        And finally, I did not hear anything in Mr. Cooper's

response that addressed the Court's question with regard to the

rights of the third parties or the nonparties from whom this

discovery was taken.  I think it is speculative to suggest that

the issues in the *Maxwell* case are coextensive with those that

are present in the *Dershowitz* case.  It is speculative to

believe that the parties were even asked about Mr. Dershowitz,

or Professor Dershowitz, in those depositions.  And without

K6n1giuc

 1    going into the content of all the sealed materials, I can

 2    represent that that is far from the case.

 3           I did not hear anything truly compelling beyond the

 4    fact that Professor Dershowitz's current counsel does not want

 5    to undertake the same types of discovery efforts that

 6    Ms. Maxwell had to do in order to defend herself.  They have

 7    the names of the witnesses, they've just told you, they have

 8    all of Ms. Giuffre's production from the *Maxwell* case, and so

 9    they have access to any other witnesses that were mentioned at

10    any of those discovery items, and they could undertake the same

11    efforts but tailored to the needs of their particular case,

12    which are not the same as those that were present in the

13    *Maxwell* case.

14           THE COURT:  Thank you.

15           Who else wants to be heard, please?

16           MR. LEWIN:  Judge, this is Nick Lewin on behalf of the

17    nonparties.  May I be heard at this point?

18           THE COURT:  Yes, sir.

19           MR. LEWIN:  Judge, to pick up on where I believe

20    Ms. Menninger left off, actually where your Honor left off, you

21    suggested, Judge, that it may be efficient but is not

22    proportional, and we would submit it's neither.  Mr. Cooper is

23    attempting to sort of merge these issues together.  First he

24    suggests that all they're asking is that Mr. Dershowitz "sign

25    on to" the existing protective order.  Well, there's no such

K6n1giuc

1     thing, Judge.  The protective order related to a different

2     case, involving different parties, from a different time, with

3     different lawyers, and different negotiations.  That's not how

4     protective orders work.  These are distinct cases.  John Doe

5     obviously is not a party in either case, so we don't have a

6     sense of overlap.  But it is, frankly, hard to imagine that the

7     overlap is so significant that every single piece of paper,

8     every single filing, every single page of discovery material is

9     relevant in one case simply because it exists in the other

10    case.  In fact, every indication is, Judge, that that is just

11    not true.

12            And the point we tried to make, Judge, is not just

13    about no further briefing; we think your Honor should deny

14    Mr. Dershowitz's application now and not permit further

15    briefing.  And the reason is not only that it would not be a

16    good use of this Court's time to entertain further briefing on

17    this issue, but that denial now would substantially protect the

18    ongoing unsealing review being conducted pursuant to the

19    protocol.  To allow this litigation now to continue casts a

20    substantial shadow over the unsealing process your Honor has

21    put into place with respect to the *Maxwell* documents; it raises

22    real and significant questions about whether and how a nonparty

23    would want to participate in that process, and whether any

24    participation would be undermined or influenced by the fact

25    that there is still active litigation over whether

K6n1giuc

1    Mr. Dershowitz is going to be able to import them.

2              Also, the last point I'd make, Judge, is that it's a

3    *non sequitur* really to suggest that Mr. Dershowitz's

4    constitutional rights would be prejudiced.  This is not about

5    whether or not Mr. Dershowitz has access to discovery.  He has

6    every mechanism available to every party in every federal case

7    available to him in the context of his own case.  The question

8    is whether it makes sense for this Court to import en masse all

9    the filings and discovery materials that your Honor is

10   confronting the challenges about now into a second case.  And I

11   think when you look through, in order to do that, your Honor

12   would have to revise, substantially revise the protective order

13   and the four factors that guide it.  None of them, none of them

14   in this case favor that kind of revision.

15             The reliance here was reasonable.  Judge Sweet found

16   it, and your Honor should find it, and that should end the

17   story and allow these cases to proceed on parallel tracks, to

18   allow the protocol to continue to function in this case, and

19   allow Mr. Dershowitz to do whatever he would do in the normal

20   course to gain discovery in his case.

21             THE COURT:  What do you say, Mr. Lewin, to

22   Mr. Dershowitz's suggestion that he ought to have, for example,

23   Ms. Giuffre's depositions in the *Maxwell* case, at the very

24   least in order to gauge her credibility with respect to her

25   upcoming testimony in this case?  What do you say to that, as

K6n1giuc

an example?

              MR. LEWIN:  Judge, I say a few things.  The first is,
I don't know what's in the deposition transcript and so it's
impossible for me to look at that deposition transcript and
answer that question.  I would assume, though I don't know,
that both Ms. Maxwell and Ms. Giuffre designated a portion of
that transcript as confidential, and were I the lawyer -- and
again, your Honor, I'm disadvantaged by not knowing what's in
the transcript or what was asked -- the questions that I would
ask Ms. Giuffre in the context of a deposition if I were
Maxwell's counsel might differ based on whether I had
reasonably relied on the deposition transcript being designated
confidential and subject to the protective order.  So it's not
simply that that transcript should be released.  I think there
are real privacy interests.  And again, I don't represent and
have not communicated with Ms. Maxwell's counsel, but
presumably both parties operated in reasonable reliance on the
protective order in fashioning the decision to participate in,
the decision to object to, and the progress of those
depositions, Judge, and the transcripts that resulted.

              THE COURT:  Okay.  I guess I'm not asking you about so
much the substance.  Needless to say, I have not read or
memorized those depositions either.  But shouldn't, in the
normal course, a litigant be able to get an adversary's prior
sworn testimony on the same subject matter?  So that's really

K6n1giuc

1    the question I'm asking.  Why shouldn't that be the case here?

2                MR. COOPER:  Your Honor, if I may, this is Mr. Cooper.

3    Forgive me for interrupting, but I just wanted to point out

4    that at the initial status conference, we raised this issue,

5    and you ordered Ms. Giuffre to turn over her deposition

6    transcript in the *Maxwell* case as part of initial discovery and

7    she has done so, and --

8                THE COURT:  Okay.  Then let's do a different example.

9    My real question is:  Isn't there some kind of more narrowly

10   targeted way -- and, you know, Mr. Cooper, maybe you're the guy

11   to ask this to -- isn't there some more narrowly targeted way

12   to do this?  Mr. Lewin and Ms. Menninger are probably correct

13   that not every document or every deposition in the *Maxwell* case

14   is relevant here.  For example, why wouldn't you say, produce

15   all testimony with respect to Mr. Dershowitz, or documents with

16   respect to Mr. Dershowitz?  Why isn't that more narrowly

17   tailored than every single piece of discovery in the *Maxwell*

18   case?

19               MR. COOPER:  So let me answer that by making the

20   following points, your Honor:

21               First, as I know the Court recognizes, because I said

22   it, Professor Dershowitz obviously wants all information to be

23   out there, to be public, etc., because he believes it

24   exonerates him, and that's the truth.

25               THE COURT:  Thank you for that, counsel, but let's get

K6n1giuc

1       on to what we're talking about.

2               MR. COOPER:  Secondly, your Honor, again, I go back to

3       what Ms. Giuffre has placed at issue in this case and, frankly,

4       what she's already testified to in a deposition that I'm not

5       allowed to talk about, and certainly will do on a public

6       record.  But her central assertion -- and this is public

7       record -- is that Professor Dershowitz conspired with Maxwell

8       and with Epstein to conceal their sex trafficking operations

9       and that she is suing Professor Dershowitz for falsely stating:

10      (1) that she had sex with Professor Dershowitz, or saying that

11      she didn't have sex, but it goes beyond that; she is also suing

12      Professor Dershowitz and saying he was untruthful when he

13      contended publicly and stated that what she was doing, along

14      with her lawyers, was an effort to extort Leslie Wexner and

15      other wealthy third parties.  She has placed at issue whether

16      there is any truth or not to all of that, and as a result,

17      Professor Dershowitz, who is at this moment -- and as his

18      counsel at this moment does not have access to the materials

19      beyond seeing the names of individuals whose testimony was

20      cited in the summary judgment record.  But by virtue of lining

21      up the allegations in the *Maxwell* case with the allegations in

22      the Dershowitz case and noting that literally in well over a

23      dozen paragraphs -- they are verbatim with each other, because

24      they refer to the same alleged conspiracy, the same quality and

25      type of alleged defamation -- it goes way beyond simply the

K6n1giuc

1    issue of any contact between Ms. Giuffre and Professor

2    Dershowitz.  So that suggested tailoring is, respectfully, your

3    Honor, so narrow that it would preclude Professor Dershowitz

4    from establishing the truth of the defamations as to which he's

5    being sued.

6              I would offer, your Honor, that there be entered an

7    order that Professor Dershowitz -- and your Honor can construct

8    the order, the Court has complete discretion to order that

9    Professor Dershowitz abide by the *Maxwell* protective order, as

10   his counsel will do as well, but that the materials

11   presumptively to be identified and turned over that are in the

12   hands of -- right now we're talking about a motion to compel

13   materials from Ms. Giuffre, but that are in her hands, and to

14   the extent that someone like John Doe's counsel is aware of a

15   particular issue applicable to his client, that it be raised

16   with the Court and we be allowed to respond to it.

17             THE COURT:  How is he going to know?  How is he going

18   to know?

19             MR. COOPER:  Because counsel for John Doe, as we sit

20   here today, is already aware of what materials related to his

21   client exist that are going to be turned over because

22   presumably they were the ones that designated them

23   confidential.

24             MR. LEWIN:  Judge, this is Nick Lewin.  You make the

25   exact right point.  There is a reason we have this enormously

K6n1giuc

complicated unsealing protocol in the *Maxwell* case.  And

Mr. Cooper's assertion is actually wrong.  And I only represent

one party that may or may not be identified in these materials,

and as your Honor knows better than I do -- in fact, literally

better than I do -- there are dozens.

      I think it's important, Judge, if I may have just a

minute to make a point, that, let's be clear, Mr. Dershowitz's

application is to permit him to make a motion to compel Giuffre

and others to produce to him "all filings and discovery

materials, including third-party discovery."  It literally

encompasses every page from the *Maxwell* case.  Your Honor asked

about one potential document, which is Ms. Giuffre's

deposition, which, again, I don't have access to, I have not

read.  First of all, I don't know, Judge, if in the ordinary

course a litigant in a different case would have access to

prior statements of an opposing party that are under seal, but

what this all tells us, Judge, and all the complexity and the

months your Honor has spent fashioning the protocol, is that

your Honor should deny this motion, deny it now, deny

Mr. Dershowitz's motion now, and then deal with applications to

the extent they can't be resolved by the parties in the

*Dershowitz* case on an individualized basis.  It's how cases

work.  And the idea that in a case -- it's ironic that in a

case with this many issues, the *Maxwell* case, regarding

third-party rights, that we would seek to simply import them en

K6n1giuc

1  masse into another case, it just doesn't make sense, Judge, and

2  there is no adequate way to protect nonparties.  And there was

3  reasonable reliance, as we set out in our letter, which I won't

4  repeat here.

5           And thank you, Judge, for allowing me that time to

6  speak.

7           THE COURT:  Yes, sir.

8           Who else?

9           All right, counsel.  I think we've probably exhausted

10  ourselves.

11           I will reserve decision and be back to you very

12  promptly.  Thank you for being available on the phone and for

13  speaking so graciously so as not to speak over each other.

14  Thank you, counsel.

15           May I ask my law clerks and interns to call in,

16  please.

17           Thank you, folks.

18           ALL COUNSEL:  Thank you, your Honor.

19                              o0o

20

21

22

23

24

25