ZEIGER, TIGGES & LITTLE LLP

TELEPHONE: (614) 365-9900
FACSIMILE: (614) 365-7900

ATTORNEYS AT LAW
3500 HUNTINGTON CENTER
41 SOUTH HIGH STREET
COLUMBUS, OHIO 43215

WRITER'S DIRECT NUMBER:
(614) 365-4113

August 17, 2020

**SUBMITTED VIA ECF**

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street, Room 2220
New York, NY 10007-1312

  Re: <u>Virginia L. Giuffre v. Alan Dershowitz</u>, Case No. 19-cv-3377

Dear Judge Preska:

  We write in response to Defendant's inappropriate, and misleading, Offer of Proof.

  The Court directed the Parties and Non-Parties to meet and confer concerning the requested discovery from Non-Parties, jointly report to the Court, and to participate in an August 17 hearing to address any remaining outstanding issues. [R-155.] The status report discloses that Defendant stands alone in seeking to impose an unreasonable burden on a non-party by the pursuit of irrelevant information as to the limited legal claims at issue. [R-162] Briefly, Plaintiff and Non-Parties agreed a protective order should issue. Defendant disagreed. Plaintiff and Non-Parties also agreed no deposition of Mr. Wexner should be permitted. Defendant once again disagreed.

  Realizing how untenable his position is both factually and legally, Defendant interjects very selective information into the public record in an attempt to preempt the Court's consideration of the discreet discovery issues and otherwise muster fodder for his perpetual media campaign. His tactics are in contravention of the Second Circuit's teachings in <u>Brown v. Maxwell</u> and arguably in violation of this Court's prior admonition as to the central factual issue in this case and how to conduct discovery conferrals. [R-152]

  Even then, the false narrative offered has nothing to do with the principal issue remaining for the Court's consideration: whether Defendant should be permitted to depose Mr. Wexner solely to collaterally attack Plaintiff. For literally months, Non-Parties have repeatedly advised Defendant he was free to conduct the deposition of Attorney Zeiger, the Non-Party with personal knowledge, even though such testimony would not support his "extortion" narrative. Defendant's Proffer attempts to preemptively attack Attorney Zeiger's testimony even before conducting his deposition. The Proffer consists of Defendant's own deposition from an unrelated case where he merely retells his story yet again, and then a partial recording of only one (of several) conversations wherein Defendant promotes his defense narrative and inaccurately conflates his representations as evidence he possesses. As is evident by even the most cursory of readings, Attorney Zeiger's use of the term "shakedown" is a short-hand description for the theory Mr. Dershowitz had just uttered, not vice versa.

### A. Defendant Provides No Basis For Deposing Mr. Wexner.

Defendant's preemptive attack on Attorney Zeiger's testimony is immaterial to determining the propriety and necessity for Mr. Wexner's deposition. Mr. Wexner has never met Ms. Giuffre or spoken to her legal counsel. While Mr. Wexner had met Defendant many years ago, he has not seen or spoken to Defendant for at least five years and has never spoken to him about Plaintiff, her legal counsel, or allegations of wrongdoing, including any alleged extortion. Defendant does not—and cannot—suggest otherwise.

Instead, Defendant's demand to depose Mr. Wexner, in lieu of simply accepting the offered alternative of a response to a written deposition question, emanates from an obvious desire to cloak himself in Mr. Wexner's credibility. While it is true Mr. Wexner never met Ms. Giuffre and thus could not have had any contact with her, this does not answer the question of whether Plaintiff and Mr. Dershowitz had "intimate contact or not." [R-152] If left to his own devices and as reflected in the Rule 26 disclosures, Defendant would seek to collaterally attack Plaintiff with the testimony of many. The request for Mr. Wexner's deposition is just the first. Ironically, Mr. Dershowitz taunted Plaintiff to sue him, and now that she has, he seeks to advance a defense through others, not himself.

### B. A Protective Order Is Still Appropriate Despite Dershowitz's Media Dump.

Defendant seeks to compel non-parties to participate in his fight without the benefit of a protective order. Defendant's selective public offerings only serve to heighten the need for one. Since Ms. Giuffre accused Defendant of sexually abusing her, Defendant has developed the narrative that she sought to destroy him as an example of what would happen if Mr. Wexner did not make a billion dollar extortion payment to Plaintiff and her lawyers. With no claim ever filed against Mr. Wexner, Defendant offers the syllogism: Mr. Wexner paid Plaintiff off or Plaintiff and her attorneys lied about Mr. Wexner's involvement.

The truth is not nearly as interesting as this syllogism would suggest. As part of a dialogue that concluded more than five years ago, Attorneys Boies and Zeiger engaged in a series of conversations regarding Plaintiff's assertions. Attorney Zeiger communicated what has been publicly stated: that Mr. Wexner was unaware of, and was never a participant in, any of the abhorrent behavior engaged in by Epstein against Epstein's victims, that Mr. Wexner had never met Ms. Giuffre, and that any claims to the contrary were not true. These discussions culminated in a meeting in Mr. Boies' office on July 8, 2015, wherein Attorney Zeiger explained in detail the mass of evidence definitively proving that no meeting with Ms. Giuffre could have occurred.

Following the meeting, Mr. Boies dropped the issue. Over the *five years* since the meeting occurred, Attorney Zeiger has heard nothing from Attorney Boies or other legal counsel representing Ms. Giuffre. Rather, on July 16, 2019, Attorney Bradley Edwards, who also represents Ms. Giuffre, stated at a press conference with Mr. Pottinger by his side, that the information he has collected over the past decade leads him to conclude that Mr. Wexner never knew of Epstein's sexual abuse.

At no time has Ms. Giuffre or her legal counsel made an extortion demand or otherwise solicited money or any other consideration from Mr. Wexner or his legal counsel. Nor has Mr. Wexner or his legal counsel ever offered or paid money or any other consideration to Ms. Giuffre, her legal counsel or any surrogate for either. To be clear, no settlement or agreement of any kind has been entered into with Ms. Giuffre or her legal counsel.

Defendant had no role in the foregoing—but it was not for a lack of trying. In 2015, Defendant unsuccessfully attempted to contact Mr. Wexner. He then talked to Mr. Wexner's wife, who in turn referred him to Attorney Zeiger. In his conversation with Attorney Zeiger, Mr. Dershowitz said had been accused of sexual misconduct by Ms. Giuffre and, in a series of follow up telephone calls, repeatedly promoted his extortion theory. Defendant sought to align his interests with Mr. Wexner—for reasons obvious then and even more obvious now—but Attorney Zeiger declined. In those telephone calls, Defendant made clear what Attorney Zeiger already knew—there was no truth to any alleged wrongdoing by Mr. Wexner. For instance on October 29, 2015, Defendant communicated to Attorney Zeiger that there were four or five witnesses to a statement by Mr. Boies that he had concluded there was no viable claim against Mr. Wexner. (Defendant had testified regarding Mr. Boies' statement in a deposition two weeks earlier on October 15. *Edwards v. Dershowitz*, Case No. CACE 15-000072 (17th Jud. Dist. Broward Cty.) (Exh. A)).

Despite Defendant touting Attorney Boies' acknowledgement and knowing that no extortion demand or payment has ever been made, Defendant continues to claim he was somehow a pawn in a billion dollar scheme to extort Mr. Wexner. Defendant continues to press for Mr. Wexner's deposition despite knowing Mr. Wexner possesses no discoverable information concerning the issues in this lawsuit. He continues to object to the proposed protective order so that he may continue to advance his media narrative without repercussion. The Non-Parties therefore respectfully assert that the Court should preclude Mr. Wexner's deposition and should issue a protective order in the form proposed by the Non-Parties.

Very truly yours,

Marion H. Little, Jr.

Enclosure

cc: Will Piereson, Esq. (via email)
Ms. Megan E. Phillips (via email)
Charles J. Cooper, Esq. (via email)
Michael W. Kirk, Esq. (via email)
Nicole J. Moss, Esq. (via email)
Haley N. Proctor, Esq. (via email)
Howard M. Cooper, Esq. (via email)
Kristine Chappen Oren, Esq. (via email)
Christian Kiely, Esq. (via email)
Guy Petrillo, Esq. (via email)

869991v1