# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| DAVID BOIES,<br><br>Plaintiff,<br><br>-against-<br><br>ALAN DERSHOWITZ,<br><br>Defendant. | INDEX NO.: 160874/2019<br><br>**VERIFIED ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |

ALAN DERSHOWITZ,

                Counterclaim Plaintiff,

-against-

DAVID BOIES,

                Counterclaim Defendant.

      Defendant Alan Dershowitz (hereinafter "Dershowitz") hereby answers the Complaint of

Plaintiff David Boies (hereinafter "Boies") and asserts Affirmative Defenses and Counterclaims

as follows:

### ANSWER

### NATURE OF THE ACTION

      1.      Dershowitz lacks knowledge or information sufficient to admit or deny this

paragraph in the form so alleged, except that it is denied that Dershowitz has leveled "false"

accusations against Boies.

      2.      Denied.

Case 1:19-cv-03377-LAP Document 169-1 Filed 08/18/20 Page 3 of 54

3.    Denied that Dershowitz's statements are false.

4.    Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged.

5.    Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged, in that this paragraph appears to be a recitation of Boies' opinion.

6.    Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged, except that it is denied that Boies has presented Dershowitz with evidence demonstrating that the allegations against him are false.

7.    Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged, in that this paragraph appears to be a recitation of Boies' opinion.

## THE PARTIES

8.    This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

9.    This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, denied in the form alleged.

## JURISDICTION AND VENUE

10.    This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, denied that Boies has suffered any damages.

11.    This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, denied that Dershowitz published "defamatory statements".

12.    This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, denied that Dershowitz published "defamatory statements".

2

Case 1:19-cv-03377-LAP Document 169-1 Filed 08/18/20 Page 4 of 54

## **FACTUAL ALLEGATIONS**

13.     This paragraph refers to a document which speaks for itself, and thus no response is required. To the extent a response is required, Boies' client Giuffre made allegations against the Dershowitz in 2014, while represented by Boies, that were categorically false, and Dershowitz has vehemently denied those allegations since they were first made.

14.     This paragraph refers to a document which speaks for itself, and thus no response is required. To the extent a response is required, Boies' client Ransome made allegations against the Dershowitz in 2017, while represented by Boies, that were categorically false, and Dershowitz has vehemently denied those allegations since they were first made.

15.     This paragraph refers to a document which speaks for itself, and thus no response is required. To the extent a response is required, Dershowitz has interposed an answer to Giuffre's complaint and asserted affirmative defenses and counterclaims against Giuffre for the defamatory statements she and her agents have made against Dershowitz.

16.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

17.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

18.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

19.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

20.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 5 of 54

21.      Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

22.      Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

23.      Denied.

24.      Denied.

25.      Denied.

26.      This paragraph refers to a published article which speaks for itself, and thus no response is required. Ransome's accusation against Dershowitz referred to in this paragraph is vehemently denied.

27.      This paragraph refers to a published article which speaks for itself, and thus no response is required.

28.      This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

29.      This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

30.      Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

31.      Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

32.      Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

33.      Denied

4

34.     Denied.

35.     Denied.

36.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

37.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

38.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

39.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

40.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

41.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

42.     Denied.

43.     Denied.

44.     Denied.

45.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

46.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

47.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

5

48. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

49. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

50. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

51. Denied.

52. Denied.

53. Denied.

54. This paragraph refers to a published article which speaks for itself, and thus no response is required.

55. This paragraph refers to a published article which speaks for itself, and thus no response is required.

56. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

57. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

58. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

59. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

60. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

6

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 8 of 54

61.     Denied.

62.     Denied.

63.     Denied.

64.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

65.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

66.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

67.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

68.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

69.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

70.     Denied.

71.     Denied.

72.     Denied.

73.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

74.     This paragraph refers to a published article which speaks for itself, and thus no response is required, to the extent a response is required, denied in the form alleged.

7

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 9 of 54

75.     This paragraph refers to a published article which speaks for itself, and thus no response is required, to the extent a response is required, denied in the form alleged.

76.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

77.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

78.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

79.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

80.     Denied.

81.     Denied.

82.     Denied.

83.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

84.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

85.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

86.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

87.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

8

88. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

89. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

90. Denied.

91. Denied.

92. Denied.

93. This paragraph refers to a published article which speaks for itself, and thus no response is required.

94. This paragraph refers to a published article which speaks for itself, and thus no response is required.

95. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

96. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

97. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

98. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

99. Denied.

100. Denied.

101. Denied.

102. Denied.

9

103.   Denied, in that Defendant's statements are factual.

104.   Denied.

105.   Denied.

106.   Denied.

107.   Denied.

108.   Denied.

109.   Denied.

110.   Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Boies' Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Boies' claims are barred by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Boies' claims are barred by the single publication rule.

### FOURTH AFFIRMATIVE DEFENSE

Boies' claims are barred by the doctrines of laches, waiver, ratification and/or estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Boies' claims are barred because Dershowitz's allegedly defamatory statements concerning Giuffre are true or substantially true.

### SIXTH AFFIRMATIVE DEFENSE

Boies' claims are barred because Dershowitz's allegedly defamatory statements are all protected by the First Amendment and Article I, Section 8 of the New York State Constitution.

10

### SEVENTH AFFIRMATIVE DEFENSE

Boies' claims are barred because Dershowitz's allegedly defamatory statements are all protected by the self-defense privilege.

### EIGHTH AFFIRMATIVE DEFENSE

Boies' claims are barred because he is a public figure and Dershowitz did not act with actual malice.

### NINTH AFFIRMATIVE DEFENSE

Boies' claims are barred because the alleged defamatory statements at issue in the Complaint did not cause or contribute to any damages suffered by Giuffre.

### TENTH AFFIRMATIVE DEFENSE

Boies' claims are barred by the incremental harm doctrine.

### ELEVENTH AFFIRMATIVE DEFENSE

Boies' suffered no damages by reason of the acts complained of in the Complaint, or by any acts or omissions of Dershowitz and/or for which Dershowitz is legally responsible.

### TWELFTH AFFIRMATIVE DEFENSE

Boies' alleged damages, if any, are speculative, hypothetical, unsupported by any reasonable methodology, and are not cognizable as a matter of law.

### THIRTEENTH AFFIRMATIVE DEFENSE

Boies' alleged losses, if any, were caused by his own actions and/or inactions and/or the actions of third parties, and therefore, he is precluded from recovery from Dershowitz.

### FOURTEENTH AFFIRMATIVE DEFENSE

Boies' failed to mitigate his damages, if any.

### FIFTEENTH AFFIRMATIVE DEFENSE

11

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 13 of 54

Dershowitz is not liable to Boies in any amount because, at all times relevant herein, Dershowitz has not acted improperly or in bad faith with respect to Boies.

### SIXTEENTH AFFIRMATIVE DEFENSE

Dershowitz is not liable to Boies in any amount because, at all times relevant herein, Boies has failed to act properly and in good faith with respect to Dershowitz.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Boies and his partners, employees, co-counsel, agents and/or his clients are with unclean hands and have engaged in conduct consistent with intimidation, extortion, malicious prosecution and/or abuse of process.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Boies and his partners, employees, co-counsel, agents and/or his clients are with unclean hands, in filing the within lawsuit and other actions and are acting in a manner with intent, or reckless disregard, to harass, intimidate Dershowitz, and/or seek publicity and media attention, and financial gain, at the expense and detriment of Dershowitz.

### NINETEENTH AFFIRMATIVE DEFENSE

Boies' action is barred by the doctrines of res judicata and/or judicial estoppel and/or collateral estoppel.

### TWENTIETH AFFIRMATIVE DEFENSE

Boies' claims are barred, in whole or in part, by the doctrine of unclean hands.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

By virtue of the tortious conduct and defamatory statements of Boies and his partners, employees, agents, co-counsel and/or clients, made against Dershowitz, Boies is barred in whole or in part from recovering for the claims made in his Complaint.

12

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part, as Boies, and/or his partners, and/or his employees, and/or his agents, and/or hid co-counsel, and/or his clients, are with unclean hands as they have engaged in defamation, libel, and/or slander *per se* against Dershowitz.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part as Boies, and/or his partners, and/or his employees, and/or his agents, and/or his co-counsel, and/or his clients are with unclean hands in commencing a lawsuit in bad faith, engaging in tortious public banter, defamatory conduct and disparagement, in engaging in repeated harassing behavior and conduct directed Dershowitz, therein causing damages.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part as Boies, and/or his partners, and/or his employees, and/or his agents, and/or his clients are with unclean hands, in that they have engaged in abuse of process, suborned perjury, engaged in an extortive scheme, engaged in deceit and collusion, submitted false affidavits, pleadings and submissions to the court, have engaged in the filing of a lawsuit in bad faith, engaging the media and public sphere with defamatory and self-serving statements, solely in order to gain public notoriety, product and self-promotion, and recognition, and in order to seek financial gain at the expense and detriment of Dershowitz, and have violated New York Judiciary Law § 487, and/or 22 N.Y.C.R.R. 130-1.1.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

The acts alleged to have been committed in Boies' Complaint, if found to have been committed, were committed by third-parties over which Dershowitz had no control nor right of control.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part as Boies, and/or his partners, and/or his employees, and/or his agents, and/or his co-counsel, and/or his clients are with unclean hands in commencing a lawsuit in bad faith, engaging in tortious public banter, defamatory conduct and disparagement, in engaging in repeated harassing behavior and conduct directed at Dershowitz, therein causing intentional, reckless and/or negligent infliction of emotional distress, and/or negligently and/or with reckless disregard causing Dershowitz pain and suffering.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part as Boies, and/or his partners, and/or his employees, and/or his co-counsel, and/or his agents, and/or his clients, are with unclean hands, and have engaged in tortious conduct by engaging in a campaign of disparagement and false accusations against Dershowitz and thereby damaging Dershowitz's business, professional and personal reputation and relationships and Giuffre and/or her attorneys and/or agents' actions made on her behalf constitute *prima facie* tort against Dershowitz.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Boies' Complaint contains redundant, immaterial, impertinent, and/or scandalous matter and allegations that should be stricken by this Court pursuant to CPLR § 3024(b). Boies' inclusion of this material is part of a design to disseminate knowingly false and defamatory material about Dershowitz to the media.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Dershowitz reserves the right to raise any and all other affirmative defenses he deems proper based on the discovery process or any future development of the case.

**WHEREFORE**, Defendant **ALAN DERSHOWITZ** respectfully requests judgment dismissing the Plaintiff's Complaint against him, together with the costs and disbursements of this action, and for any expenses incurred by him in the defense thereof, including attorneys' fees and costs, and such other and further relief as to this Court may seem just and proper.

## COUNTERCLAIMS

1.     Counterclaim Plaintiff Alan Dershowitz (hereinafter "Dershowitz") brings the within counterclaims against Counterclaim Defendant David Boies (hereinafter "Boies") for defamation, intentional infliction of emotional distress, and violations of New York Judiciary Law § 487.

2.     Since 2014, Boies, members of his law firm Boies Schiller Flexner LLP (hereinafter referred to collectively, including Boies, Sigrid McCawley, relevant firm attorneys, employees, and their agents and relevant co-counsel Bradley Edwards, Paul Cassell, and Stanley Pottinger, as "BSF") and their clients Virginia Giuffre, Sarah Ransome, and Maria Farmer (hereinafter referred to individually as "Giuffre", "Ransome" and "Farmer", and collectively as "BSF Clients") - motivated by money and other improper factors - have engaged in a sustained campaign to subvert the judicial process for the purposes of disseminating outrageous, knowingly false and defamatory claims accusing Dershowitz of sexual abuse. Boies' conduct has gone beyond that of a lawyer advocating for his client, and has crossed over into the sphere of animus and bitterness. Motivated by this animus, Boies, BSF and the BSF Clients have waged a war of defamation against Dershowitz. These actions have led to Dershowitz being vilified and strung up in the court of public opinion despite his efforts to clear his name in the public domain. In order to defend against these salacious claims, Dershowitz has exercised his First Amendment right and publically denounced these accusations as false and has sought to bring to light the nefarious purpose of Boies, BSF and the BSF Clients' scheme.

15

3.       Critically, the actions of Boies and BSF ago beyond the tort of defamation. These intentional actions have taken a tremendous emotional and physical toll on Dershowitz. And perhaps most troubling, is that Boies, BSF, and the BSF Clients have become active participants in a larger extortive scheme in order to extract settlements, and concessions from those in positions of power – with Dershowitz becoming the public exemplar of their false claims. Boies, BSF and their co-counsel, acting in a manner of an enterprise advancing an extortive scheme and pattern of improper conduct, have suborned this perjury, and have knowingly submitted the false claims and allegations within pleadings and submissions to courts within the State of New York, within the instant action, and within filings in federal court in the Southern District of New York, in causes of action premised on New York law. These actions are in violation of New York Judiciary Law § 487.

4.       Dershowitz brings the within counterclaims in order to rectify tortious conduct of Boies, BSF and the BSF Clients by establishing the truth and to hold Boies accountable for his own actions, and that BSF and the BSF Clients, for which he is libel for as both *respondeat superior*, partner and/or as agent, respectively. Dershowitz seeks to recover damages for the serious harm his reputation, his business, and his health, and importantly, seeks vindication, justice, and the restoration of his good name.

## PARTIES

5.       Dershowitz is a renowned criminal defense attorney and *Professor Emeritus* at Harvard Law School.  He has authored more than 40 books and is a frequent public speaker on issues of criminal defense, constitutional law, First Amendment freedoms, and the Middle East.

6.       Boies is likewise a renowned attorney, and is the managing partner at Boies Schiller Flexner LLP ("BSF") is a Limited Liability Partnership law firm registered in New York with its

16

principal place of business at 55 Hudson Yards, 20th Floor, New York, New York 10001, and conducts business in the State of New York. Boies and BSF (including co-counsel, Edwards, Cassell, and Pottinger) represent Virginia Giuffre, Sarah Ransome and Maria Farmer, and Boies and BSF have taken the lead in bringing their false claims against Dershowitz to the public domain. Boies is the authorized agent of Giuffre, Ransome and Farmer, and as such, he is liable for the torts committed by Giuffre, Ransome, and Farmer, that he participated, condoned, facilitated and/or encouraged. As managing partner of BSF, he is liable for the actions of his employees, partners and/or agents, the co-counsel he has acted in concert with and/or aided and abetted in the tortious and/or extortive scheme implemented against Dershowitz and others, and as *respondeat superior*, and/or pursuant to the laws of partnership, and/or pursuant to the laws of agency.[1]

## JURISDICTION AND VENUE

7.      Jurisdiction in the Supreme Court of the State of New York, County of New York, is proper, as this Court has jurisdiction over this action pursuant to Section 7 of Article VI of the Constitution of the State of New York and pursuant to Judiciary Law § 140-b because this is a civil action for, inter alia, monetary damages (exclusive of interest and costs) in excess of the jurisdictional maximum of the Civil Court, and Plaintiff's claims exceed the jurisdictional threshold of the Supreme Court of the State of New York, County of New York. Furthermore, insofar as this Court has subject matter jurisdiction over Boies' Complaint, it has supplemental jurisdiction over Dershowitz's Counterclaims made herein. Jurisdiction is further proper pursuant to C.P.L.R. § 301 and/or § 302 because Boies is a New York domiciliary, Boies has voluntarily

---

[1] Boies has admitted in a proposed Amended Complaint in *Giuffre v. Dershowitz* that "Boies was acting as Plaintiff's lawyer and agent". 1:19-cv-03377-LAP, Document 101, filed 12/20/19

17

submitted to the jurisdiction of the State of New York, County of New York, by filing his

complaint there, and Boies has committed tortious acts there.

8.       Venue is proper in New York County under C.P.L.R. § 503(a), where upon

information and belief, a substantial part of the events giving rise to the claims occurred in New

York County, including the defamatory acts.

## FACTUAL ALLEGATIONS

### *The Root of the False Accusations and Boies' Campaign of Defamation*

9.       In or about 1996, Dershowitz began to develop a professional and academic

relationship with the now deceased financier Jeffrey Epstein ("Epstein"). Epstein was a patron of

the arts and academia who would frequently invite academics, politicians, business leaders, and

other influential individuals to his homes in New York, Florida, and elsewhere for discussion.

Dershowitz was a guest at some of these events and an occasional visitor to Epstein's properties.

He joined such distinguished guests as the President and Provost of Harvard, the Dean of the

Kennedy School, and several distinguished professors, business leaders, and government officials

from around the world, who at the time, simply viewed Epstein as a prominent figure with diverse

intellectual and economic interests.

10.      However, Epstein's actions would soon come into question and under scrutiny by

law enforcement and the public, and his reputation irreparably tarnished. In 2006, Epstein learned

that prosecutors in Florida were investigating him for alleged sex crimes. Dershowitz being a

preeminent criminal defense attorney, Epstein asked him to join his legal defense team, and

Dershowitz accepted.  Ultimately, Epstein's legal team, comprised of Dershowitz, Roy Black,

Kenneth Starr, Jay Lefkowitz, Gerald Lefcourt, and several other prominent lawyers, negotiated a

non-prosecution agreement with federal prosecutors and Epstein agreed to plead guilty to state charges for soliciting a minor for prostitution and to register as a sex offender.

11.     In 2008, two women whom the government had previously identified as victims of sexual abuse by Epstein filed an action pursuant to the Crime Victims' Rights Act ("CVRA"), alleging that the United States Attorney's Office for the Southern District of Florida had violated their rights under the CVRA, 18 U.S.C. § 3771, by failing to timely inform them that it had entered into the non-prosecution agreement with Epstein.  *See Doe v. United States*, 9:08-cv-80736, Dkt. No. 435 at pp. 22-23 (S.D. Fla. Feb. 21, 2019).

### *Baseless Allegations made by Giuffre with the Support of Boies and BSF*

12.     On December 30, 2014, BSF's co-counsel for Plaintiffs in the CVRA Action, Edwards and Cassell, filed the Joinder Motion on behalf of Giuffre and another woman, seeking to have them added as Plaintiffs in the case.  Although it was not publicly known at the time, and though Boies has denied it, albeit falsely, BSF represented Giuffre in connection with the Joinder Motion.[2]

13.     Giuffre and her lawyers, including Boies and BSF, alleged in the CVRA Joinder Motion that in addition to sexually abusing her himself, Epstein had "required [Giuffre] to have sexual relations with Dershowitz on numerous occasions while she was a minor, not only in Florida but also on private planes, in New York, New Mexico and the U.S. Virgin Islands[,]" and that, "in addition to being a participant in the abuse of [Giuffre] and other minors, Dershowitz was an eye-witness to the sexual abuse of many other minors by Epstein and several of Epstein's co-conspirators." *See* CVRA Joinder Motion, annexed hereto as **EXHIBIT A.**

---

[2] Stanley Pottinger also serves as co-counsel for Giuffre.

14.     Giuffre had not previously accused Dershowitz of having sex with her. To the contrary, she has made statements - both orally and in writing - that <u>directly</u> contradicted her accusation. Despite these contradictions, Boies and BSF continued to advance and support the unfounded claims - and continue to this day.[3]

15.     Giuffre further alleged in the CVRA Joinder Motion that she had been sexually abused by British Royal Prince Andrew, and "many other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," none of whom were publicly identified (other than Dershowitz, Prince Andrew, and a French modeling agency executive, Jean Luc Brunel). *Id.*

16.     In a sworn declaration filed under seal a few weeks after the Joinder Motion, Giuffre repeated and expanded upon her allegations against Dershowitz. *See* Giuffre Declaration annexed hereto as **<u>EXHIBIT B</u>**. She claimed in the declaration that she was 15 when she met Epstein, and that she had sex with Dershowitz at least six times between the ages of 16 and 19,

---

[3] *"One such powerful individual that Epstein forced then-minor Jane Doe #3 to have sexual relations with was former Harvard Law Professor Alan Dershowitz, a close friend of Epstein's and well-known criminal defense attorney. Epstein required Jane Doe #3 to have sexual relations with Dershowitz on numerous occasions while she was a minor, not only in Florida but also on private planes, in New York, New Mexico, and the U.S. Virgin Islands. In addition to being a participant in the abuse of Jane Doe #3 and other minors, Dershowitz was an eye-witness to the sexual abuse of many other minors by Epstein and several of Epstein's co-conspirators. Dershowitz would later play a significant role in negotiating the NPA on Epstein's behalf. Indeed, Dershowitz helped negotiate an agreement that provided immunity from federal prosecution in the Southern District of Florida not only to Epstein, but also to "any potential coconspirators of Epstein." NPA at 5. Thus, Dershowitz helped negotiate an agreement with a provision that provided protection for himself against criminal prosecution in Florida for sexually abusing Jane Doe #3. Because this broad immunity would have been controversial if disclosed, Dershowitz (along with other members of Epstein's defense team) and the Government tried to keep the immunity provision secret from all of Epstein's victims and the general public, even though such secrecy violated the Crime Victims' Rights Act."* (from Jane Doe #1 and Jane Doe #2 v. U.S., U.S. District Court of Southern District of Florida, "JANE DOE #3 AND JANE DOE #4'S MOTION PURSUANT TO RULE 21 FOR JOINDER IN ACTION" at 4)

20

and gave specific details of the alleged encounters, though no timeframes. However, her employment records prove that she did not even meet Epstein until she was 17 (or nearly 17). In submitting this sworn declaration, Giuffre committed perjury. Critically, her perjury was suborned by her lawyers at BSF, who knew that these allegations were false and unsupported by credible evidence.

17.     Giuffre's false accusations against Dershowitz in the CVRA Joinder Motion were stricken in a sanction by the Court pursuant to Fed. R. Civ. P. 12(f) as "impertinent" and "immaterial" because they were "unnecessary to the determination of whether [Giuffre] should permitted to join [the original Petitioners'] claim that the Government violated their rights under the CVRA." *See* Judge Marra's decision annexed hereto as **EXHIBIT C**.

18.     The circumstances of the CVRA Joinder Motion - from the timing of the filing, to the decision to publicly name Dershowitz but not the other prominent men, to the unusual amount of media coverage of the filing generated by Giuffre's lawyers - strongly suggest that the accusation against Dershowitz was part of a larger conspiracy undertaken by Giuffre and her lawyers to subvert the judicial process for the purposes of making false claims against Dershowitz in order to make a public example out of him, and extort private settlements from other, wealthier individuals associated with Epstein, whose alleged misconduct was well outside the statute of limitations. This evidenced an extortive scheme by Boies, BSF, and the BSF Clients, in order to extract large settlements from prominent figures, and Dershowitz fell victim to such plot.

19.     Giuffre and her lawyers deliberately made these false allegations against Dershowitz in a court pleading in an effort to shield Giuffre from liability for defamation under the litigation and fair report privileges. She and her lawyers intended that the allegations contained in the CVRA Joinder Motion would be continuously repeated and widely disseminated by the

21

media, which they were. The CVRA filing, and the lurid accusations against Dershowitz contained therein, generated massive media coverage. Upon information and belief, Giuffre or her lawyers either provided the media with copies of the CVRA Joinder Motion or directed them to the docket, in order to stimulate media coverage at a time of year when most people were on vacation, and long before the Epstein story was national news.

20.    Around the same time that she publicly accused Dershowitz, Giuffre, through her lawyers at BSF, privately made an accusation against Leslie Wexner (hereinafter "Wexner"), the billionaire founder and CEO of L Brands and owner of Victoria's Secret. Boies personally met with Wexner's lawyer in what Wexner's lawyer and wife both described as a "shakedown". Although the statute of limitations had long expired for any legal action against Wexner, Boies and his partner described in detail the alleged sexual encounters between Giuffre and Wexner, including an alleged demand by Wexner that Giuffre wear Victoria's Secret-type lingerie during their encounters. Such an accusation, if made publicly, could have massively damaged Wexner and his company. No public accusation against Wexner was ever made. This means that Wexner either submitted to Giuffre and her lawyers' extortion conspiracy and paid the demanded hush money, or that Boies came to disbelieve Giuffre's claims regarding Wexner (yet has continued to advance her claims despite the knowledge of their falsity). If the latter, the Boies firm suborned perjury when Giuffre later testified under oath in a sealed deposition that she was sexually trafficked to Wexner. This accusation was confirmed by Boies and BSF co-counsel Stanley Pottinger in an affidavit:

> 9. In the fall of 2014, I asked Mr. Boies if his firm represented, or if he knew, Mr. Leslie Wexner. I told him that in the course of investigating facts related to Mr. Epstein's sex trafficking, Mr. Wexner had been identified as a close business associate and personal friend of Mr. Epstein. I told Mr. Boies that there were assertions that Mr. Wexner had permitted Mr. Epstein to use, and entertain on, Mr. Wexner's Yacht, and that Mr. Wexner was alleged to have had sex with one or more of Mr. Epstein's girls, including Ms. Giuffre.

22

*See* Affidavit of Stanley Pottinger, annexed hereto as **EXHIBIT D.**

21.     Despite the allegations against Wexner by their own client Giuffre, Giuffre's attorneys inexplicably pivoted to the opposite, with Giuffre's attorney Edwards even saying Wexner did nothing wrong. Wexner was not alone, upon information and belief, Giuffre's lawyers also approached other wealthy individuals whose alleged misconduct was well beyond the statute of limitations, as part of an extortion and shake down conspiracy.

22.     Boies and BSF knew, and had reason to know, that Giuffre's claims regarding Dershowitz are totally false, and have been disseminated with a knowledge of their falsity or a reckless disregard for the truth, and out of ill-will and spite. Despite a prior history of monetary motivation and inconsistencies, Boies and BSF supported Giuffre's false allegations against Dershowitz. Giuffre gave the first public account of her experiences with Epstein in a series of interviews with British tabloid journalist Sharon Churcher in 2011, which Churcher published via a series of articles in the *Daily Mail*. *See*, articles annexed hereto as **EXHIBIT E**. Giuffre was paid $160,000 for her story.  Giuffre gave Churcher the names of prominent men she allegedly had sex with.  The *Daily Mail* articles make no mention of Dershowitz (except as an attorney for Epstein), because Dershowitz was not among the men with whom Giuffre claimed to have had sex. Churcher has confirmed that Giuffre never accused Dershowitz of having sex with her. At the same time she was speaking with Churcher, Giuffre was shopping the rights to a book she was writing about her time with Epstein. The manuscript of her book mentions Dershowitz, but only as a friend of Epstein's - not as someone with whom Giuffre had sex - and that Giuffre only saw Dershowitz discussing business with Epstein, but never met him.

23.     An email exchange between Giuffre and Churcher is evidence of Giuffre's knowing and intentional fabrication of her allegations against Dershowitz. Giuffre emailed Churcher in May

23

2011 to report that she was working towards a book deal and was "*[j]ust wondering if you have any information on you from when you and I were doing interviews about the J.E. story.  I wanted to put the names of some of these assholes, oops, I meant to say, pedo's, that J.E. sent me to.  With everything going on my brain feels like mush and it would be a great deal of help.*" Churcher replied: "*Don't forget Alan Dershowitz....JE's buddy and lawyer...good name for your pitch as he repped Claus Von Bulow and a movie was made about that case....title was Reversal of Fortune. We all suspect Alan is a pedo and tho no proof of that, you probably met him when he was hanging [out] with JE.*"  *Id.* (ellipses in original; emphasis supplied).

— On Wed, 11/5/11, Sharon.Churcher@mailonsunday.co.uk <*Sharon.Churcher@mailonsunday.co.uk*> wrote:

From: Sharon.Churcher@mailonsunday.co.uk <Sharon.Churcher@mailonsunday.co.uk>
Subject: Re: Good News!!
To: "Virginia Giuffre" <███████████████>
Received: Wednesday, 11 May, 2011, 4.17 PM

Don't forget Alan Dershowitz. JE's buddy and lawyer..good name for your
pitch as he repped Claus von Bulow and a movie was made about that
case...title was Reversal of Fortune. We all suspect Alan is a pedo and tho
no proof of that, you probably met him when he was hanging put w JE

24.     Giuffre wrote back but did not inform Churcher that she was mistaken that there was "no proof" of sexual misconduct by Dershowitz. She did not do so because Churcher was correct, and Giuffre had not reported having sex with Dershowitz. Instead, she replied only: "Thanks again [Sharon], I'm bringing down the house with this book!!!" *See*, Giuffre-Churcher email exchange annexed hereto as **EXHIBIT F.**

25.     In the spring of 2011, Giuffre was interviewed by the FBI regarding her experiences with Epstein. She described in detail her time with Epstein and her allegations of being "lent out" to Epstein's friends, who she named, but never accused Dershowitz. Under the threat of criminal prosecution for providing a false statement to a federal agent, Giuffre, despite the aforementioned

24

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 26 of 54

conspiracy, did not state her false claims regarding Dershowitz to the FBI. This is corroborated by the account of Giuffre's close friend, who confirmed that Giuffre only accused Dershowitz after she was pressured by her lawyers, including Boies, those at BSF and their co-counsel, to do so.

26.     Churcher has confirmed that Giuffre never accused Dershowitz of having sex with her.  This evidence proves that Giuffre's claim that she had sex with Dershowitz is a recent fabrication, concocted only after she met with her lawyers and was pressured by them to falsely accuse Dershowitz. Regardless, Giuffre, Boies, BSF and their co-counsel, have disseminated the accusation while knowing it was false.  Indeed, Giuffre has lied about these emails by falsely testifying under oath that no such emails between her and Churcher about Dershowitz existed. Her counsel at BSF, including Boies and partner McCawley, upon becoming aware of Giuffre's false testimony, took no steps to correct the record. Boies, BSF and co-counsel, suborned Giuffre's perjury, and as such, they are likewise responsible for the defamatory acts against Dershowitz, and are liable for the damages caused by the scheme as described herein.

27.     Despite Giuffre's credibility having been completely destroyed, Boies, BSF and co-counsel, continue to advance her false allegations against Dershowitz in a course of defamation under the guise litigation. She has repeatedly and deliberately lied and committed perjury for money – and this has been suborned by her attorneys including Boies and those at BSF. The false allegations made by Giuffre against Dershowitz have been made after she met her attorneys, who have pressured her and suborned her perjury for their own and Giuffre's profit. Her attorneys, being fully aware of her penchant to lie and the falsity of her claims, have submitted perjured affidavits, and vouched for her false testimony.

28.     In addition to the false allegations against Dershowitz, she has fabricated allegations and far-fetched stories against a number of high-profile individuals. For example, she

25

Case 1:19-cv-03377-LAP Document 169-1 Filed 08/18/20 Page 27 of 54

has described in great detail having dinner with and closely observing former Vice President Al Gore and his wife Tipper on Epstein's Caribbean island and claims she saw Vice President Gore and Epstein walk on the beach of the island together. The Gores did not know Epstein and have never set foot on his island. When Dershowitz directly asked Boies to call Al Gore, his former client, to confirm that Giuffre had lied when she claimed to have met the Gores on Epstein's Caribbean island, Boies responded: "I'm not vouching for her general credibility."

29. Giuffre has also alleged that she was forced to have sex with former Israeli Prime minister Ehud Barack, former New Mexico Governor Bill Richardson, former Democratic Senate Majority Leader Sen. George Mitchell, the late MIT computer scientist Marvin Minsky, billionaire Thomas Pritzker of Hyatt Hotels, hedge fund manager Glenn Dubin, MC2 model agency cofounder Jean Luc Brunel, England's Prince Andrew, and also an unnamed "prince," "foreign president," and owner of "a French hotel chain." Many of these accused men have issued denials and disclaimers stating that they have never even met Giuffre. While Dershowitz has no knowledge of the truth or falsity of any or all of these accusations, Giuffre has offered no proof other than her own uncorroborated word, which has been thoroughly discredited by her proven lies about the Gores, President Clinton, her age, the absence of emails naming Dershowitz, and other matters.

30. Perhaps one of the most prominent denials to Giuffre's fabrications is from President Bill Clinton. Giuffre's statements – some under oath, and others made in a 2011 *Daily Mail* article – claimed that she was on Little St. James Island with former President Clinton:

> Clinton was present on the island at a time when I was also present on the island . . . . Maxwell went to pick up Bill in a huge black helicopter … Bill had the Secret Service with him and I remember him talking about what a good job she did… We all dined together that night. Jeffrey was at the head of the table. Bill was at his left.

26

I sat across from him. Emmy Tayler, Ghislaine's blonde British assistant sat at my right. Ghislaine was at Bill's left and at the left of Ghislaine there were two olive-skinned brunettes who'd flown in with us from New York.... Maybe Jeffrey thought they would entertain Bill, but I saw no evidence that he was interested in them. He and Jeffrey and Ghislaine seemed to have a very good relationship. Bill was very funny.

*See*, **EXHIBIT E.**

31.     An investigation, and records obtained pursuant to the Freedom of Information Act, concluded that President Clinton, and Al Gore and his wife Tipper Gore, were never on Epstein's island, in direct contradiction of the incredulous story by Giuffre. A statement released by President Clinton on July 8, 2019 directly refutes Giuffre's claims and reads:

In 2002 and 2003, President Clinton took a total of four trips on Jeffrey Epstein's airplane: one to Europe, one to Asia, and two to Africa, which included stops in connection with the work of the Clinton Foundation. Staff, supporters of the foundation, and his Secret Service detail traveled on every leg of every trip. He had one meeting with Epstein in his Harlem office in 2002, and around the same time made one brief visit to Epstein's New York apartment with a staff member and his security detail. He's not spoken to Epstein in well over a decade, **and he has never been to Little St. James Island,** Epstein's ranch in New Mexico, or his residence in Florida.

*See*, Statement from President Clinton's spokesperson, Angel Ureña, annexed hereto as **EXHIBIT G.**

32.     After being falsely accused, Dershowitz assembled travel records, credit card statements, phone records, and other documentation which prove that Dershowitz could not have been in the places during the time period when Giuffre claims to have had sex with him. These documents were inspected for authenticity by former FBI Director Louis Freeh. When Dershowitz presented this documentation to Boies, he concluded that it was "impossible" for Dershowitz to have been where Giuffre claims they had sex, and that her claims were "wrong," "simply wrong." Nevertheless, Boies and his firm continued to persist in advancing Giuffre's false claims, and in submitting perjurious affidavits.

33.     Giuffre has never retracted any part of her accusations against Dershowitz, even the central claim that she was a minor at the time she allegedly had sex with Dershowitz, a claim which has since been conclusively proven to be false by Giuffre's own admissions and employment records. Giuffre continues to call Dershowitz a "pedophile" and "child rapist" and "child molester" despite her own admissions and her own records that prove she was an adult at the time she falsely claims to have had sex with him.

### *Boies, BSF and the BSF's Relentless Defamation, Disparagement and Tortious Conduct*

34.     Since accusing Dershowitz in the CVRA Joinder Motion in December 2014, Giuffre and her lawyers at BSF, along with Ransome and Farmer, have repeatedly and publicly outside of court reaffirmed the false claims against Dershowitz, directing the media and the public to the allegations in the CVRA Joinder Motion and making clear that they stand by those accusations against Dershowitz. The full scope of Boies, BSF, and their clients' efforts to promote media coverage of false accusations against Dershowitz through confirming and repeating those false accusations to members of the media, with the intention that they publish those claims to mass audiences, is not yet known and will be the subject of discovery in this case. Boies and BSF have been a driving force, appearing alongside Giuffre, Farmer and Ransome at press conferences, and providing their defamatory statements to the media.

35.     Clearly, Boies, members of BSF, Giuffre, Ransome and Farmer have engaged in a campaign to maliciously disparage and attack Dershowitz, and over the years, have made a number of defamatory statements about Dershowitz, either on their own accord, or speaking as one another's agent. For example:

a.  In response to Judge Loretta Preska's ruling disqualifying Giuffre's lawyers at BSF from representing her in this action, Giuffre issued a statement which referred to

28

Dershowitz as a "co-conspirator" of Epstein. *See*, New York Daily News article containing this statement annexed hereto as **EXHIBIT H.** Giuffre went on to state "It is no surprise that Alan Dershowitz, who was part of Epstein's ecosystem of power and privilege, is attempting to manipulate the legal system in the face of the serious charges I have brought against him. The reckoning of accountability has begun and today's decision will be appealed." ("Judge boots powerhouse lawyer David Boies from case pitting Jeffrey Epstein victim Virginia Giuffre against acclaimed attorney Alan Dershowitz," *New York Daily News*, 10/16/2019) *Id.* As Giuffre's authorized agent, Boies is liable for these false and defamatory statements, which they either drafted, edited, or approved.

b. Giuffre and her lawyers at BSF also served as a source for a lengthy *New Yorker* profile of Dershowitz published on August 5, 2019, and upon information and belief, falsely confirmed to the article's author, Connie Bruck, that Giuffre had sex with Dershowitz, intending that the *New Yorker* publish the accusation, which it did. *See*, New Yorker's profile of Dershowitz containing Giuffre's false allegations against Dershowitz annexed hereto **EXHIBIT I.**

c. On or about July 31, 2019, in *The American Lawyer*, Boies stated: "[T]he problem is that [Dershowitz] believes that if he quacks loudly enough and outrageously enough, people will focus on what he's saying and not the underlying conduct… [H]e's desperate to detract attention from the underlying accusation. People who have good defenses present those defenses. Those who don't engage in ad hominem attacks." and "He's attacked everyone who's tried to help victims… detectives and

29

state law enforcement people." *See,* The American Lawyer piece containing these statements from Boies annexed hereto as **EXHIBIT J.**

d.  On or about July 19, 2019, in *New York Magazine*, Boies stated: "This is simply more evidence of how desperate Mr. Dershowitz is to distract attention from the evidence of his misconduct . . . Mr. Dershowitz's misconduct, and his lies about it, are documented in sworn affidavits, sworn depositions, and contemporaneous documents… I can understand why Mr. Dershowitz wants to distract attention from the facts…" The article also went on to state a false and inflammatory comment by Boies as follows: "'When I informed Mr. Boies,' Pottinger says in his affidavit, 'he told me that while he was aware of Mr. Dershowitz's reputation for running naked on beaches in Martha's Vineyard and hitting on students and girlfriends of students, he was disappointed to learn of his involvement with someone as young as Virginia.'" ("Alan Dershowitz Cannot Stop Talking," *New York Magazine,* 7/19/2019) *See*, New York Magazine piece containing these statements from Boies annexed hereto as **EXHIBIT K.**

e.  On or about July 17, 2019, in *Vanity Fair*, Boies stated: "Epstein's former employees said in sworn depositions that they saw Dershowitz at the house multiple times without his wife. 'This Olga woman doesn't exist. Epstein's barely kept women around who were over 25. It's a figment of Alan's imagination'". ("As the Jeffrey Epstein Case Grows, Manhattan and DC Brace for Impact," *Vanity Fair,* 7/17/19) *See*, Vanity Fair piece containing these statements from Boies annexed hereto as **EXHIBIT L.**

f. On or about July 7, 2019, outside the Manhattan federal courthouse, Boies stated: "Virginia sued Ms. Maxwell in the Southern District of New York for her participation in the sex trafficking. She is currently suing Alan Dershowitz for his participation in the sex trafficking." (available at: https://globalnews.ca/video/5472236/attorney-for-alleged-epstein-victims-comments-on-prince-andrew).

g. On or about July 5, 2019, in the *Miami Herald*, Boies stated: "It's very dangerous to take one position publicly and another position in court. Eventually, both the public and the court figure out that you're lying and you lose your credibility in both forums and that's what he has been doing - trying to take one position publicly and another in court - and they are now clashing." ("Dershowitz v. Boies: Jeffrey Epstein case unleashes war between two legal Goliaths," *Miami Herald*, 7/5/19) *See*, Miami Herald piece containing these statements from Boies annexed hereto as **EXHIBIT M.**

h. On or about April 16, 2019, Giuffre was quoted in the *Miami Herald* as saying: "I know that standing up for myself and others will cause Mr. Dershowitz and Mr. Epstein to redouble their efforts to destroy me and my reputation. But I can no longer sit by and not respond. As my complaint shows, my abusers have sought to conceal their guilt behind a curtain of lies." As Giuffre's authorized agent, Boies is liable for these false and defamatory statements. ("New Jeffrey Epstein accuser goes public; defamation lawsuit targets Dershowitz," *Miami Herald*, 4/16/2019). *See*, Miami Herald piece containing this statement from Giuffre annexed hereto as **EXHIBIT N.**

31

i.   On or about December 22, 2018, Boies was quoted in *The Harvard Crimson* as saying: "'Mr. Dershowitz should be ashamed of himself,' Boies wrote. 'I am ashamed he is a member of my profession... Harvard should be ashamed of his association with it,' he added." ("Epstein Allegedly Directed Second Woman to Have Sex with Harvard Prof. Dershowitz, Court Documents State," *The Harvard Crimson*, 12/22/18) *See,* Harvard Crimson piece containing this statement from Boise annexed hereto as **EXHIBIT O.**

j.   On or about December 18, 2018, in the *New York Daily News*, Boies stated: "Alan Dershowitz's absurd attacks... are consistent with his pattern of attacking every lawyer who has represented women who have accused him of sexual abuse... This is simply a pattern where he thinks if he is loud enough and crazy enough it will distract attention from what he's done." ("Second woman claims billionaire perv Jeffrey Epstein 'directed' her to have sex with Alan Dershowitz," *New York Daily News*, 12/18/2018) *See*, New York Daily News piece containing these statements from Boies annexed hereto as **EXHIBIT P.**

k.   On November 28, 2018, the *Miami Herald* published an interview with Giuffre as part of lengthy article discussing the preferential treatment Epstein allegedly received from the criminal justice system. *See,* Miami Herald piece re: Epstein's alleged preferential treatment annexed hereto as **EXHIBIT Q.** Giuffre and her lawyers provided the reporter, Julie Brown, with a copy of her sworn declaration in the CVRA action, which, unlike the CVRA Joinder Motion, remained under seal. The article quoted at length from Giuffre's declaration, including publishing, in particular, the details of her accusations against Dershowitz. This was not the only

32

time that Giuffre and her lawyers provided sealed court records to the media. Later, in July 2019, in anticipation of an order by the Second Circuit unsealing documents in the related *Giuffre v. Maxwell* case – including the smoking gun Churcher emails referenced above – Giuffre's lawyers at BSF supplied Brown and *New Yorker* reporter Connie Bruck with selected documents, still under seal, which they perceived as favorable to Giuffre. Dershowitz was thereafter pressured by reporters to provide emails and other evidence establishing his innocence even though they remained under seal, which Dershowitz refused to do. For example, Brown in a series of emails sent on September 5, 2019, pressured Dershowitz to release sealed material regarding emails from Ransome in which she made fantastical and outrageous claims of having sex tapes of Hillary Clinton, Donald Trump, Bill Clinton, and Richard Branson, stating in sum and substance *"Alan, you can send them. There are many documents floating around in this case, so I'm sure no one will go after you."* Dershowitz refused to fall into this trap and declined to send the emails. In these emails, Brown admits that *"They've [Boies, BSF, Ransome et al] acknowledged that she sent them and that they contained information that was false." See*, Brown and Dershowitz emails re: Ransome annexed hereto as **EXHIBIT R.** Brown has confirmed that Giuffre told her in their interview which led to the publication of the November 28, 2018 *Miami Herald* article that she (Giuffre) had sex with Dershowitz. In a videotaped interview that the *Herald* posted to its website as part of the story, "Giuffre described how Epstein and [Ghislaine] Maxwell began grooming her – not just to perform massages, but to sexually pleasure them and others[,]" including "politicians and academics and royalty."

33

When she mentioned "academics," the video showed a picture of Dershowitz. Giuffre and her lawyers at BSF, and their co-counsel working with Boies and BSF, were the sources of this publication. Upon information and belief, before filing her Complaint against Dershowitz in this action, Giuffre, Boies and her lawyers at BSF and/or their co-counsel, provided an advance copy to Brown to induce Brown to publish a story about the lawsuit on the same day it was filed, April 16, 2019. *See,* **EXHIBIT N.** In a statement issued that same day outside of any legal proceeding and published in the *Miami Herald* and other news outlets, Giuffre stated: "As my complaint shows, my abusers have sought to conceal their guilt behind a curtain of lies. My complaint calls for the accounting to which I, and their other victims, are entitled." *Id.* This statement was later provided to the television program The View, which read it on air during an appearance by Dershowitz on that show on May 2, 2019. *See,* screenshot of YouTube video showing Alan Dershowitz's May 2, 2019 appearance on The View annexed hereto **EXHIBIT S.** Giuffre accusing Dershowitz out of court of being one of her abusers is false and defamatory, and Boies and BSF, as agents for Giuffre, and who drafted, edited, and/or approved the defamatory statements, are liable.

36.     Upon information and belief Boies, BSF, Giuffre, and possibly Ransome and Farmer, have made other defamatory statements and engaged in further tortious conduct -within the statute of limitations- that Dershowitz intends to uncover during discovery and through the unsealing of documents in collateral matters.

37.     In any event, the accusations against Dershowitz are patently false. Dershowitz never met Giuffre or Ransome and never had sex with them, nor has he ever met Farmer. As to

34

Giuffre, whose allegations against Dershowitz seemingly have propelled other false allegations from BSF clients: prior to meeting lawyers at BSF, Giuffre – in accounts she gave to the FBI, her best friend, her boyfriend, and a journalist with whom she had a close relationship – had never included Dershowitz among the individuals she was allegedly trafficked to by Jeffrey Epstein. To the contrary, she wrote emails, a manuscript, and other material that made it clear that she *did not* have sex with Dershowitz. She has told numerous provable lies about her age, who she has met, whether she had emails concerning Dershowitz, and other fabrications, in addition to her false accusations about sex with Dershowitz. In the years since Giuffre's original accusation against Dershowitz in the CVRA Joinder Motion, BSF and their clients have repeatedly reaffirmed, incorporated by reference, and otherwise affirmatively republished to new audiences the false and defamatory claims made in that filing, which, in turn, have been republished in the media on countless occasions, and in particular over the past year as public interest over the Epstein saga has intensified.

38.     In addition, upon information and belief, Boies, BSF, Giuffre and others, have spoken to reporters, repeating the substance of the defamatory allegations on an off-the-record basis, in order to promote the further dissemination of a false narrative regarding Dershowitz. Boies, BSF, their agents, Giuffre and their other clients, have undertaken these actions to enrich themselves financially. Their lies concerning Dershowitz have caused tremendous damage to his personal and professional reputation, his business, his health and caused him emotional and physical pain and suffering.  Through these counterclaims, he seeks to hold Boies, BSF, and their clients, accountable for that damage.

35

## *Boies and BSF Have Violated New York Judiciary Law § 487*

39.    Dershowitz is one of several individuals injured by a scheme employed by Boies, BSF (and their co-counsel, including Edwards, Cassell, and Pottinger, and agents as defined above), and the BSF Clients in which they have targeted prominent individuals with extortionate settlement demands premised on wrongful bad-faith threats of salacious legal allegations. In this regard they have acted in a manner akin to an enterprise, and have conspired together in furtherance of an extortive scheme that has claimed Dershowitz as a victim and caused him irreparable harm and damages. Furthermore, by these actions, and by advancing the false claims against Dershowitz, and suborning the perjury of Giuffre and others, and by the very virtue of the filing of actions, both the within complaint to which Dershowitz is answering herein, and the *Giuffre v. Dershowitz* matter based upon causes of action under New York law, and the suborning perjurious allegations made therein, Boies and BSF and their co-counsel have violated New York Judiciary Law § 487, which reads in pertinent part as follows:

> An attorney or counselor who: (1) is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

40.    Specifically, BSF and their co-counsel and agents, deliberately advised their client, Giuffre, a woman who has alleged that deceased billionaire Epstein sexually trafficked her while she was underage to several high-profile men, to falsely identify Dershowitz as one of the men to whom she was sexually trafficked by Epstein. Evidence consisting of written correspondence to which Giuffre was a party; recorded phone calls between Dershowitz and Giuffre's close friend Rebecca Boylan (hereinafter "Boylan"); and a sworn affidavit of Anthony Figueroa (hereinafter "Figueroa"), Giuffre's boyfriend for the time period during which she alleges she was sexually trafficked by Epstein, show that Giuffre did <u>not</u> identify Dershowitz as one of the men to whom

36

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 38 of 54

she was allegedly sexually trafficked by Epstein prior to retaining Boies and that she ultimately

named Dershowitz in court filings (CVRA motion) on December 30, 2014 at the behest of her

attorneys, including Boies and BSF. As discussed *supra*, Giuffre communicated with reporter

Sharon Churcher, who suggested that she name Dershowitz in her book manuscript, yet still, she

did not make any allegations regarding sex with Dershowitz. Likewise, Giuffre did not name

Dershowitz as someone she allegedly had sex with when interviewed by the FBI. Despite this

evidence, Boies, BSF and their co-counsel, have filed court proceedings and documents, including

in New York as against Dershowitz, that are based on these false allegations.

41.     Boies and his co-counsel, have used BSF in order to advance a pattern of extortive

conduct, of which Dershowitz complains of herein. BSF continues to act as a conduit for Boies

and the aforementioned co-counsel, agents, and clients, to advance their scheme and conspiracy,

in a manner akin to an enterprise. Although BSF is a Limited Liability Partnership law firm

registered in New York with its principal place of business at 55 Hudson Yards, 20th Floor, New

York, New York 10001, it maintains and operates offices across State lines and internationally,

maintaining offices in Albany, New York; Armonk, New York; Fort Lauderdale, Florida;

Hanover, New Hampshire; Hollywood, Florida; Las Vegas, Nevada; London, England; Los

Angeles, California; Miami, Florida; Orlando, Florida; Palo Alto; California; San Francisco,

California; and Washington DC. BSF conducts substantial business through the State of New

York, including: marketing and advertising its legal services in the State of New York; maintaining

three separate offices out of which it did business in the State of New York; negotiating and

entering contractual relationships to advocate for clients in the State of New York; and advocating

for clients in the State of New York. BSF has engaged in, and its activities have affected, interstate

commerce because, as a multi-state and international law firm, its activities involve commercial

37

activity across state lines and the use of interstate wires for, among many other purposes, making court filings in the various federal and state cases in which it serves as counsel. At all times relevant hereto, BSF acted for or on behalf of Boies, BSF co-counsel and BSF Clients in undertaking the acts and/or omissions alleged herein. BSF has availed itself of courts located in the State of New York to file actions in which the false allegations against Dershowitz have been made (including but not necessarily limited to, the instant action *Boies v. Dershowitz, Giuffre v. Dershowitz, Giuffre v. Maxwell, Farmer v. Estate of Epstein*).

42. The root of the allegations against Dershowitz evidence a rot that continues to fester. On information and belief, the inclusion of the accusations against Dershowitz in the CVRA motion was part of a broader conspiracy by Boies, BSF, their co-counsel, agents and their clients, to subvert the judicial process for the purpose of making false claims against Dershowitz so as to make a public example out of him, and extort private settlements from other, wealthier individuals associated with Epstein. Giuffre asserted in her CVRA motion that she had been sexually abused by "many other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," but publicly identified none of them, with the exception of Dershowitz, British Royal Prince Andrew, and a French modeling agency executive, Jean Luc Brunel.[4] It was only after she met her lawyers at BSF, and co-counsel, who "pressured" her to falsely accuse Dershowitz, suggesting to her that she could make money by doing so. This is part of the scheme by Boies, BSF, their co-counsel, and their clients, to accuse Dershowitz as part of a larger conspiracy to extort monetary settlements from Dershowitz and others in positions of wealth as described herein.

---

[4] She privately named these "powerful men" to her lawyers and in sealed depositions, but not publicly.

43.    Subsequent to Giuffre naming Dershowitz as one of the men to whom she was sexually trafficked, an independent investigation with respect to her claims undertaken by former FBI Director Louis Freeh concluded that "… the totality of the evidence found during the investigation refutes the allegations made against Professor Dershowitz." *See,* Freeh Report annexed hereto as **EXHIBIT T**. Dershowitz also went to the United States Attorney's Office and the District Attorney's Office in Manhattan in order to stress the falsity of the allegations, invite investigation into the false allegations perpetuated by Giuffre and her attorneys, and to affirm lack of culpability in light of the false allegations made against him.

44.    Boies, who in recorded conversations with Dershowitz explicitly acknowledged, based on Boies's review of Dershowitz's travel records, that Giuffre could not possibly have been sexually trafficked to Dershowitz at the times and places she has alleged, nonetheless pressured Giuffre to continue to publicly name Dershowitz in order to create leverage with which Boies could extort settlement demands from other high-profile men under the threat of Giuffre publicly naming them also. In doing so, Boies, BSF, and their co-counsel, knowingly suborned perjury on the part of Giuffre, and did so with the purpose of rendering Dershowitz an example of the potential damage that Boies, BSF, and their co-counsel and aforementioned clients, could do to the businesses and reputations of targets of his extortionate scheme.

45.    In response to Boies' and BSF's bad-faith and wrongful inducement of Giuffre's false claims against Dershowitz, Dershowitz commenced an ethics complaint against Boies with the hope that doing so would result in an investigation into Boies' and BSF's misconduct with respect to Giuffre's allegations against Dershowitz. Boies and BSF sought to pressure Dershowitz to withdraw his ethics complaint and the corresponding investigation into his ongoing scheme via threat: upon information and belief, that he would find another woman to accuse Dershowitz as a

39

participant in Epstein's alleged sex trafficking activities if Dershowitz did not drop the ethics complaint. After Dershowitz refused to yield to Boies' and BSF's threat by dropping his ethics complaint, Boies and BSF followed through on the threat by filing dubious affidavits of two women alleging Dershowitz's participation in Epstein's sex trafficking.

46.     The first of these affidavits was that of Maria Farmer whom Epstein had employed as security personnel at his Manhattan residence. In her affidavit, Farmer claimed she had observed Dershowitz frequenting Epstein's Manhattan residence and, more specifically, that she had seen Dershowitz entering an area of the residence where she knew several underage girls were located. As had been well-established at that point by the record in previous cases arising out of Giuffre's claims regarding Epstein's sex trafficking, the times at which Farmer claimed to have observed Dershowitz and the entire time period for which she was employed by Epstein both predated the time Dershowitz even met Epstein. Boies, BSF and their co-counsel and agents, were aware of this fact, and filed Farmer's affidavit. To date, Boies, BSF and their co-counsel, continue to advance the false claims of Farmer despite having the aforementioned knowledge regarding her perjury.

47.     Significantly, allegations gratuitously and maliciously made against Dershowitz by Boies, BSF and Farmer were recently stricken from the complaint filed by Farmer in the Southern District of New York, where Judge Naomi Reice Buchwald, in her December 23, 2019 decision wrote, "*Having considered the several letters on this issue... the Court exercises its authority pursuant to Federal Rule of Civil Procedure Rule 12(f)(1), to strike sua sponte the aforementioned language... the allegation is neither material nor directly pertinent to any claim or defense in this action.*" *See,* Judge Buchwald's decision annexed hereto as **EXHIBIT U.**

48.     The second of these affidavits was that of Sarah Ransome who claimed that she had engaged in sexual activity with Dershowitz. At the time of her affidavit, Ransome had an

established record of fantastical lying: (a) she had previously contacted the New York Post falsely claiming that she had sex tapes of Hillary Clinton, Bill Clinton, Donald Trump, and Richard Branson which she later admitted she had invented; (b) she claimed she was targeted for assassination by Hillary Clinton and the CIA and that she was working with the KBG to prevent the election of two "pedophiles" who were running for president; and (c) she had also previously falsely represented to the New York Post that Dershowitz was her lawyer in a fictitious pending lawsuit against a man she met on a dating website for wealthy older men seeking younger women who were willing to exchange intimacy for payment. Upon information and belief, Boies and BSF were aware of Ransome's admitted history of fabricating sexual encounters with prominent men, and of her history of fabricating her relationship to Dershowitz, and filed Ransome's affidavit. In fact, Miami Herald reporter Julie Brown in an email to Dershowitz stated in regard to the emails from Ransome to the New York Post: **"They've [Boies, BSF, Ransome et al] acknowledged that she sent them and that they contained information that was false."** *See*, **EXHIBIT R.** To date Boies and BSF continues to advance the false claims of Ransome despite having the aforementioned knowledge regarding her perjury.

49.     The perjurious affidavits and false allegations regarding Giuffre, Farmer and Ransome were contained in filings made within the State of New York, and/or within filings premised upon the law of the State of New York, and filed by Boies and BSF. The common thread between the three: all three of the false accusers, Giuffre, Ransome and Farmer, make their accusation against Dershowitz only *after* they meet their attorneys at BSF – who have suborned perjury and have submitted these false allegations and statements in the State of New York and elsewhere.

50.    As discussed *supra*, Boies, BSF, their co-counsel, and/or their clients engaged in extortionate conduct with respect to billionaire owner of Victoria's Secret and former Epstein associate, Leslie Wexner. Indeed, on or about December 2014, soon after Boies, BSF and their co-counsel, suborned Giuffre to falsely make a public example out of Dershowitz by falsely naming him as one of the men to whom she was trafficked by Epstein, they reached out to Wexner with a "shakedown", according both Wexner's wife and his counsel, John Zeiger (hereinafter "Zeiger"). The shakedown was premised on allegations by Giuffre against Wexner that were similar in substance to those false allegations she had just publicly made against Dershowitz at the behest of Boies, BSF and their co-counsel: the clear implication was that if Wexner did not pay a settlement, Boies, BSF and their co-counsel, would also name him publicly in court filings alleging that he, too, was one of the men to whom Giuffre was sexually trafficked by Epstein while she was underage. Boies, BSF and their co-counsel, made this settlement demand despite that, as seasoned and well-regarded attorneys, they had reason to know that the claims they were threatening that Giuffre could make against Wexner were barred at the time by the Statute of Limitations.

51.    Beyond implicitly threatening that Giuffre could make time-barred claims against Wexner alleging that he had sexual intercourse with Giuffre on multiple occasions while she was underage, Boies, BSF and their co-counsel, further suggested to Zeiger that Giuffre would include a specific detail in her public allegations that Wexner had deliberately instructed her to wear Victoria's Secret products during the sexual encounters she would allege took place between her and Wexner. Both Wexner's wife and Zeiger characterized these overtures for a settlement by Boies, BSF and their co-counsel, as a "shakedown" when they separately recounted same to Dershowitz. Subsequent to shaking down Wexner on time-barred allegations, for reasons unknown, Boies, BSF and their co-counsel, ultimately never made public filings naming Wexner

42

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 44 of 54

as one of the men to whom Giuffre was sexually trafficked. Boies and BSF's co-counsel Edwards also stated that Wexner did nothing wrong, despite Giuffre's testimony that he did. One can draw a reasonable inference that a settlement was paid under threat of exposure, or, that BSF recognized that Giuffre's allegations were false and lacked credibility, yet continued to press forward with her salacious claims against other prominent men, including Dershowitz.

52.     The lengths that Boies, BSF and their co-counsel will go to in order to perpetuate a false narrative of accusations in furtherance of their extortive scheme, of which Dershowitz is a victim, has been exemplified by recent reporting regarding the actions of Boies, BSF and co-counsel Stanley Pottinger. Boies, BSF and their co-counsel have engaged in a plot to procure illicitly-obtained data, images and/or video purporting to show other prominent individuals engaging in sexual activity with alleged underage victims of Epstein's sexual trafficking from a self-avowed hacker known only pseudonymously as Patrick Kessler (hereinafter "Kessler") for the purpose of extracting lucrative settlements from the individuals portrayed therein.

53.     As has been widely reported in the media, including extensively by the New York Times in an article published on November 30, 2019 entitled "*Jeffrey Epstein, Blackmail and a Lucrative 'Hot List,'*" Boies collaborated with Pottinger[5], to acquire a large archive containing Epstein's personal communications, financial records, and thousands of hours of footage from secret surveillance cameras set up in the bedrooms of Epstein's various properties where he entertained high-profile guests. Annexed hereto as **EXHIBIT V** is the New York Times article re: Kessler, Boies and Pottinger. This archive would come from Kessler, who represented to Boies and Pottinger that he had obtained the data contained therein by hacking into Epstein's overseas

---

[5] Pottinger has acted as co-counsel to BSF for the Epstein Accusers, and as discussed previously, was the attorney who brought BSF on as co-counsel to Giuffre in 2014.

43

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 45 of 54

servers, and that the surveillance footage within contained explosive images of prominent men engaged in sexual acts with alleged victims of Epstein's sex trafficking. Supposedly included amongst several other prominent individuals displayed in this surveillance footage was Dershowitz. The photograph Kessler provided to the New York Times that he purported to be of Dershowitz was of an elderly person other than Dershowitz.

54.     Boies and Pottinger met and corresponded with Kessler extensively with regard to the hacked Epstein archive, and reporting on the subject has exposed that it had been Boies and Pottinger's stated primary intention to use the hacked images and/or data they obtained from Kessler to leverage substantial settlements from the individuals portrayed therein, rather than for the purposes of advocating for alleged victims of Epstein's sex trafficking. Boies and Pottinger anticipated that they could reap up to forty percent of profits on settlements they extracted from the individuals portrayed in the hacked Epstein archive, and could possibly even leverage the settlement negotiations to represent those same individuals in subsequent legal matters. Boies and Pottinger's plot to extort settlements using the hacked Epstein archive was ultimately foiled when it became apparent that Kessler was a fraudster who did not possess the archive and that his photographs were fake.

55.     Boies and BSF's use of improper tactics to extract settlements from high-profile individuals has not been limited to the domain of allegations arising out of Epstein's alleged sex trafficking. Boies and BSF used similar tactics in his dealings with celebrated novelist Emma Cline (hereinafter "Cline"), whose ex-boyfriend, Chaz Reetz-Laiolo (hereinafter "Reetz-Laiolo"), was represented by Boies and BSF in a claim by Reetz-Laiolo alleging Cline plagiarized his writings for her acclaimed novel *Girls* and wrongfully invaded his privacy via a spyware program installed on her laptop, which he claimed to have used frequently during their relationship. Annexed hereto

44

as **EXHIBIT W** is the December 1, 2017 New Yorker article *"How the Lawyer David Boies Turned a Young Novelist's Sexual Past Against Her."* by Sheelah Kolhatkar, that discusses the Boies-Cline scandal.

56.     Specifically, as part of his settlement overture to Cline, Boies and BSF sent Cline a draft complaint on behalf of Reetz-Laiolo that included, among other inapposite content: nude photos Cline had taken of herself that had evidently remained on the laptop, which Reetz-Laiolo had purchased from Cline after their relationship ceased; a section dedicated to detailing Cline's sexual history; sexually explicit communications between Cline and individuals she met online (also from the laptop); and passages of graphic erotica that the draft complaint gratuitously included and alleged that Cline plagiarized but without any factual support. Per Cline's counsel in the matter, Boies and BSF additionally represented in negotiations that the damages to which Cline faced exposure in the case could total billions of dollars. Once again, as Boies and BSF had reason to know, Reetz-Laiolo's claims were at that point time-barred, and therefore the action through which Boies and BSF was threatening to egregiously and needlessly expose Cline's deeply-sensitive data was not legally cognizable. [6]

---

[6]  There have been a number of ethical issues involving Boies and BSF in recent history, for example: In 2012, the Boies Schiller Firm was cited for a blatant conflict of interest in *Madison 92nd Street Associates LLC. v. Marriott International, Inc. et. al.*, Case No. 1:13-cv-00219, 2013 WL 5913382 (S.D.N.Y 2013). Judge Colleen McMahon of the United States District Court for the Southern District of New York wrote: *"A clearer conflict of interest cannot be imagined. A first year law student on day one of an ethics course should be able to spot it. BSF [Boies Schiller Flexner], which holds itself out as one of the country's preeminent law firms, did not... Not when the firm, after being warned about the conflict, filed a lawsuit containing allegations as to which its own attorneys (including quite possibly name partner David Boies, who billed time to both representations) were important – indeed virtually necessary – rebuttal witnesses."* In 2003, Boies' co-counsel in a case was disciplined by the Florida Bar for misconduct he committed jointly with Boies while representing Bruce Winston. Boies was not admitted in Florida therefore not subject to discipline by the Florida Bar, his co-counsel however was. In 2003, Boies was the subject of an ethics complaint based on his financial support of a lawsuit involving a lawn care company owned by a Boies Schiller Firm's financial officer, Amy Habie. The trial judge in the

57.     Boies exercised, and continues to exercise, substantial control over the affairs of

the BSF as one BSF's founding and managing partners. Boies participated in the operation and

management of BSF by directing its affairs, as described above. BSF, in conjunction with the

individuals and co-counsel law firms discussed herein, have acted in a manner akin to an enterprise

in furtherance of the extortionate conspiracy Dershowitz alleges herein, Boies was a knowing and

willing participant in the schemes set forth herein, and reaped revenues and/or profits therefrom.

Boies, who is a person associated-in-fact with the BSF, knowingly, willfully, and unlawfully

conducted or participated, directly or indirectly, in the extortionate scheme as described herein,

and has acted in concert, conspired, aided and abetted, and utilized, BSF attorneys, employees,

---

case was disturbed by Boies having provided $4.5 million in free legal services to Habie's lawn care company that he filed a complaint with the Florida Bar alleging a violation of Rule 4-1.8(c), which prohibits certain financial assistance by lawyers to clients. In 2005, in a conflict of interest matter dealing with Adelphia, Tyco International, and Qwest Communications, it was revealed in the course of a bankruptcy proceeding that Boies had failed to disclose a direct conflict of interest to clients when he recommended that they engage the services of three data and document management services owned in part by his children. One client, Adelphia Cable, objected to being billed $7 million by companies owned by the Boies children without being informed of the children's ownership interests. As a consequence of Boies' non-disclosure, he was required to step down from his position as Adelphia's special counsel. Boies and his firm have long-standing ties with Theranos, a blood testing start-up. In early 2016, questions were raised in the media and by federal regulators about Theranos' technology that have caused its value to plummet. In the wake of these allegations, Boies joined Theranos as a director while at the same time acting as its lawyer in fighting these recent allegations about its technology, raising serious conflict of interest concerns. Upon information and belief, Boies and BSF engaged in litigious intimidation of Tyler Shultz for his role as whistleblower in the Theranos scandal. (*See* Steven Davidoff Solomon, "*Boies Dual Roles at Theranos Set Up Conflict*", New York Times, February 2nd, 2016) Boies and his firm eventually severed all ties with Theranos, reportedly over disagreements about legal strategies regarding its technology (*See* John Carreyrou, "*Theranos and David Boies Cut Legal Ties*," The Wall Street Journal, November 20th, 2016) Boies was also criticized for conflicts of interest and conduct relating to his simultaneous representation of Harvey Weinstein and the New York Times. *See*, Deborah L. Rhode "*David Boies's Egregious Involvement with Harvey Weinstein*", New York Times, November 9, 2017, stating: "*It is also that Mr. Boies's representation posed a conflict of interest, because his firm, Boies Schiller Flexner, was representing The New York Times, the "leading NY Newspaper," in libel litigation at the same time [as representing Harvey Weinstein]*."

46

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 48 of 54

resources, agents, co-counsel and the BSF Clients in advancing false claims against Dershowitz. The filings made within the State of New York, evidencing the false allegations against Dershowitz, are in furtherance of the scheme. These acts are not isolated, but instead were related in that they had the same or similar purposes and results, participants, victims, and methods of commission. In devising and executing the scheme, Boise, BSF personnel, their co-counsel, and/or the BSF Clients committed acts in that they deliberately, including through the use of interstate wire, executed a scheme whereby they employed wrongful threats of publicly exposing/publicizing patently-salacious allegations designed to cause in those fear of extensive public ridicule and embarrassment. Boies, BSF, their co-counsel and/or the BSF Clients employed this scheme in order to: (a) induce those into engaging in conduct from which they had a legal right to abstain; or (b) induce those into abstaining from conduct in which they had a legal right to engage. For the purpose of executing the scheme, Boies, BSF, their co-counsel, and/or the BSF Clients, committed these acts intentionally and knowingly, with the specific intent to advance the scheme. Boies, BSF, their co-counsel, and/or the BSF Clients, employed a scheme in which the specter of publicly disseminating sensitive information that would cause extensive damage to reputation of others, in order to induce settlements or forbearance. These actions were of a substantially-uniform nature in that, in all cases, Boies, BSF, their co-counsel, and/or the BSF Clients, explicitly raised the specter of damaging individuals via the dissemination of sordid allegations pertaining specifically to their sexual history. The aforementioned have improperly used the courts in the State of New York in furtherance of this scheme, and have deceived and colluded, by filing false allegations, with the court, and against Dershowitz.

58. The aforementioned pattern of conduct by Boies, BSF and their co-counsel, violates New York Judiciary Law § 487, and therefore, Dershowitz is entitled to treble damages, based on the statute's civil right of action.

## AS AND FOR A FIRST CAUSE OF ACTION
## DEFAMATION

59. Dershowitz realleges and incorporates herein by reference each of the prior paragraphs.

60. Boies, BSF, their co-counsel, and the BSF Clients, have conspired to publish false and defamatory claims of and concerning Dershowitz with a knowing or reckless disregard of their falsity. They have done so with the specific intent and design that the statements be a source for the media so that the media will publish the false allegations of and concerning Dershowitz, specifically that he had sex with Giuffre while she was underage as part of Epstein's criminal sex trafficking of minors, and other sexual conduct as alleged and/or inferred by the statements of and/or concerning Giuffre, Ransome and Farmer The aforementioned have falsely and with a knowing and reckless disregard of falsity and acting out of ill-will and spite publicly labelled Dershowitz as a child rapist and molester.

61. Boies, BSF, their co-counsel, and the BSF Clients have engaged in a campaign of defamation against Dershowitz, assisted and promoted by one another and by Boies, BSF lawyers, their co-counsel, and the BSF Clients, consisting of a combination of out-of-court statements and statements made in pleadings. These statements were knowingly false and instituted with malice of the constitutional and common law varieties, for the purposes of publicly disseminating libelous statements about Dershowitz via media statements which refer to those pleadings, causing the repeated republication of the false allegations.

48

62.     Boies is liable for his own defamatory statements, and those defamatory statements made by other BSF attorneys and/or co-counsel, and by the BSF Clients, including Giuffre, Ransome and Farmer, of whom he is an authorized agent, and which he condoned and encouraged, pursuant to the laws of agency, partnership and/or *respondeat superior*.

63.     Boies, BSF, their co-counsel, and the BSF Clients' false allegations constitute defamation.

64.     Boies, BSF, their co-counsel, and the BSF Clients' false allegations constitute defamation *per se*, including that they: (i) accused Dershowitz of a crime; (ii) exposed him to public contempt, ridicule, aversion and disgrace, and induced an evil opinion of him in the minds of right-thinking persons; and (iii) tended to injure him in his professional capacity as a legal scholar and civil libertarian.

65.     Boies, BSF, their co-counsel, and the BSF Clients intended their false statements to be widely published and disseminated on television, through newspapers, by word of mouth, and on the internet.  As they intended, the statements were published and disseminated around the world.

66.     As a result of Boies, BSF, their co-counsel, and the BSF Clients' campaign to spread malicious lies accusing Dershowitz of being a sexual predator, pedophile, abuser, child molester and other negative epithets, Dershowitz has suffered substantial damages in the form of personal and professional reputational harm, lost business opportunities, emotional harm, embarrassment, humiliation, and pain and suffering in an amount to be proven at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67.     Dershowitz realleges and incorporates herein by reference each of the prior paragraphs.

68.     Boies, BSF, their co-counsel, and the BSF Clients have engaged in extreme and outrageous conduct in engaging in a campaign of lies, disparagement, defamation, harassment, intimidation, and maliciousness directed at Dershowitz that is beyond the bounds of decency and not tolerated in civilized society.

69.     By engaging in the aforementioned conduct, Boies, BSF, their co-counsel, and the BSF Clients intended to cause, or disregarded a substantial probability of causing, severe emotional distress to Dershowitz, and did in fact cause severe emotional distress to Dershowitz.

70.     There exists a causal connection between the aforementioned conduct and the injury and damages suffered by Dershowitz.

71.     As a result of said conduct, Dershowitz has suffered and continues to suffer from severe emotional distress including anxiety, stress, mental anguish, and the physical effects therefrom, medical conditions including but not limited to cardiac conditions, and other ailments, precipitated by the harassment, disparagement, and other tortious conduct by Boies, BSF, their co-counsel, and the BSF Clients.

## AS AND FOR A THIRD CAUSE OF ACTION
## VIOLATION OF NEW YORK JUDICIARY LAW § 487

72.     Dershowitz realleges and incorporates herein by reference each of the prior paragraphs.

73.     As stated *supra* and herein, Boies, BSF and their co-counsel, have intentionally, deceitfully and/or willfully submitted false information, allegations, pleadings, and therein suborned perjury, to courts within the State of New York, both state and federal, with malintent and/or in furtherance of an extortive scheme by which Dershowitz has been damaged.

74.     As stated *supra* and herein, Boies, BSF, and their co-counsel are guilty of deceit and/or collusion in suborning perjury and preparing and submitting pleadings, affidavits, and

50

submissions with allegations with the knowledge or reckless disregard to their veracity, and/or have consented to the deceit and/or collusion of the BSF Clients, including Giuffre, Ransome and Farmer, in making false allegations, statements, submissions and/or filings against Dershowitz, and conspiring and assisting those others in making false allegations and preparing filings, statements, submissions and/or documents to that effect, and have done so with intent to deceive the court(s) by way of the false submissions, statements and/or filings, or any party, to wit, Dershowitz.

75.    As stated *supra* and herein, Boies, BSF, their co-counsel, willfully, deceitfully and with the intent of misleading the court and/or the party, to wit, Dershowitz, intentionally failed to disclose the perjurious nature of the allegations, statements, submissions, and/or filings, prepared and/or submitted on behalf of the BSF Clients, including Giuffre, Ransome, and Farmer, and therein suborned said perjury, and in furtherance of an ill-conceived, extortive and/or nefarious scheme, advanced those allegations, statements, filings, submissions, and/or pleadings on their behalf.

76.    Boies, BSF, and their co-counsel, as a result of their deceitful, willful and intentional acts as stated *supra* and herein, are responsible for treble damages to Dershowitz for violation of New York Judiciary Law § 487, and furthermore, Boies, BSF, and their co-counsels' intentional and willful distortion and omission of the facts within the submissions, statements, filings, pleadings, and/or documents filed with the courts in the State of New York, with the purpose of harassing, to harm or maliciously injure Dershowitz, and to obtain a monetary benefit by virtue of said claims, are in violation of 22 N.Y.C.R.R. 130-1.1, and therefore, they are liable to Dershowitz for damages for said violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaim Plaintiff **ALAN DERSHOWITZ** respectfully requests this Court enter judgment against the Counterclaim Defendant and award: (a) compensatory damages; (b) punitive damages; (c) treble damages; (d) attorney's fees; (e) costs; (f) such other and further relief as to this Court may seem just and proper.

## JURY DEMAND

Dershowitz demands a jury trial on all issues so triable in this action.


Dated: New York, New York
January 27, 2020


**AIDALA, BERTUNA & KAMINS, P.C.**
*Attorneys for Alan Dershowitz*
546 Fifth Avenue
New York, NY 10036
(212) 486-0011


By: _____
Imran H. Ansari, Esq.

52

Case 1:19-cv-03377-LAP   Document 169-1   Filed 08/18/20   Page 54 of 54

# VERIFICATION

STATE OF NEW YORK )
) :ss
COUNTY OF NEW YORK )

I, ALAN DERSHOWITZ, an attorney-at-law, hereby affirm, under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge: I am the Defendant and Counterclaim Plaintiff in the within action; I have read the foregoing Answer with Affirmative Defenses and Counterclaims and know the contents thereof, and I personally assert the defenses and counterclaims therein, and the same is true to my own knowledge, except as to the matters therein stated be alleged upon information and belief, and as to those matters I believe it to be true. The grounds of my belief as to all matters not stated upon my own knowledge are as follows: records, communications, and documents relevant to this matter.

Dated: January 26, 2020

ALAN DERSHOWITZ