| COOPER & KIRK, PLLC | TODD & WELD LLP | AIDALA, BERTUNA & KAMINS, PC |
|---|---|---|
| 1523 New Hampshire Ave, N.W. | One Federal Street | 546 Fifth Avenue |
| Washington, DC 20036 | 27th Floor | 6th Floor |
| (202) 220-9600 | Boston, MA 02110 | New York, NY 10036 |
|  | (617) 720-2626 | (212) 486-0011 |

November 5, 2020

**VIA ECF**

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Giuffre v. Dershowitz*, Case No 19-cv-3377-LAP
               Joint Status Report Pursuant to ECF No. 187

Dear Judge Preska:

      In accordance with the Court's order of October 28, 2020 (ECF No. 187), the parties have conferred concerning the status of discovery and submit the following joint report:

      Consistent with the Joint Report of the Parties pursuant to Fed. R. Civ. P. 26(f) (Nov. 20, 2019) ("Joint Report") (ECF No. 93), both parties continue to anticipate needing to take more than the ten depositions permitted under Fed. R. Civ. P. 30(a)(2)(i). Both parties also agree in principle that it will be necessary to exceed the presumptive seven-hour limit on party opponent depositions and have committed to confer on the parameters of those depositions at the appropriate time. The parties have jointly agreed to take John Zeiger's deposition on December 16, 2020.

      The parties have reached an impasse on the general protective order to apply to discovery produced in this case. Specifically, the parties disagree about whether documents produced by Plaintiff in *Giuffre v. Maxwell* under the protective order in that case should remain protected in this case, and they propose to submit letter briefs on this issue in accordance with the following schedule: Parties will file initial letters no later than 5 pm EST on Thursday, November 12, and responsive letters no later than 5 pm EST on Thursday, November 19.

      The parties additionally submit the following individual status reports:

**Plaintiff**

      Plaintiff is close to completing her initial productions in this case. On December 16, 2019, Plaintiff produced copies of her productions in *Giuffre v. Maxwell* and *Edwards v. Dershowitz*, copies of productions by third parties Victims Refuse Silence and Mar-a-lago in *Giuffre v. Maxwell*, transcripts and exhibits from Plaintiff's depositions in *Giuffre v. Maxwell*, and all Epstein plane flight logs in Plaintiff's possession. On February 28, 2020, Plaintiff produced copies of records provided in response to public records requests submitted in connection with this litigation. Documents from Plaintiff's two email accounts were collected on December 23, 2019, and all responsive, non-privileged, non-confidential documents identified therein that were not previously

produced in the *Maxwell* matter have been produced on July 21 and October 26, 2020.[1] On October 27, 2020, Plaintiff produced material from *Giuffre v. Maxwell* in accordance with this Court's order of September 9, 2020 (ECF No. 174). Finally, direct messages from Plaintiff's Twitter account were collected in late October 2020, and responsive messages were produced on November 3, 2020.

Plaintiff has collected but not yet produced financial and medical records, and other responsive, non-privileged documents that contain confidential information, because the parties have not yet agreed on a protective order. Plaintiff's text and "WhatsApp" messages were collected on February 5, 2020, but Plaintiff is still reviewing these documents and thus has not yet made a production from these collections. Finally, Plaintiff has withheld certain documents on privilege grounds. The parties have not yet conferred on a privilege log.

Defendant's document productions are seriously deficient. The parties agreed on search terms for Defendant's emails on August 7, 2020. Thus far, however, Defendant has produced only 1,681 documents (counting emails and attachments) from Defendant's personal email account, out of what Plaintiff understands to be a much larger body of responsive documents. Moreover, Defendant has not collected, reviewed or produced a single email directly from his Harvard account. Accordingly, Plaintiff served a document subpoena directly on Harvard in September, seeking, inter alia, Defendant's emails. Plaintiff is currently working cooperatively with Harvard on that subpoena. Plaintiff anticipates privilege and cost-shifting disputes relating to Defendant's Harvard email account, but those disputes are not yet ripe to bring to a court. Also anticipated but unripe are disputes about Defendant's assertions of privilege over his communications with Ghislaine Maxwell and/or Jeffrey Epstein and/or their counsel. Defendant has not yet produced Twitter Direct Messages or any other electronic messages such as text messages.

Apart from responsive emails and other communications, Defendant has largely not yet produced: billing records, documentation of Jeffrey Epstein's reimbursements for legal fees, certain "travel records," documentation underlying Defendant's various bar complaints, confidentiality, joint defense, or common interest agreements with key individuals associated with this case, medical records (presumably withheld pending entry of a protective order), and a recording of a conversation with Julie Brown of the Miami Herald (which Defendant says is currently inaccessible). Defendant has also refused to produce tax records and documents relating to certain details of the settlement of his litigation with Brad Edwards and Judge Paul Cassell, and Plaintiff anticipates moving to compel production of those records. The parties continue to negotiate the scope of Defendant's response to certain requests, and until Plaintiff receives complete productions, she will not be in a position to determine whether Defendant has complied with all of her discovery requests or whether there are additional disputes that require this Court's intervention.

---

[1] Plaintiff has committed to Defendant that, if in the course of preparing her privilege log, Plaintiff discovers additional responsive, non-privileged documents, or privileged documents that can be produced in redacted form, she will supplement her productions.

Nov. 5, 2020
Page 3

Plaintiff strongly disagrees with many of Defendant's factual representations regarding the discovery process, the protective order, and Plaintiff's production and preservation efforts and reserves the right to address those inaccuracies and misstatements at the appropriate time.

**Defendant**

At the outset, it bears noting that discovery in this matter has been enormously complex as a result of the confidentiality issues posed by the *Giuffre v. Maxwell* case, which have permeated this case. Although Defendant will reserve argument on this issue to the letter briefs proposed above, Plaintiff recently made clear for the first time her belief that all documents which Plaintiff produced in the *Maxwell* case — which comprise a substantial portion of Plaintiff's productions in this case — are subject to the *Maxwell* Protective Order merely by virtue of the fact of their prior production in that case. (This, of course, renders Plaintiff's initial agreement to a minimal protective order in this case, as discussed in the Joint Report (ECF No. 93), completely illusory and would create a situation where Plaintiff can effectively maintain confidentiality over most of her documents while Defendant enjoys no such protection).

As well, Defendant objects in principle to Plaintiff's counsel participating in deposition discovery in this case for the reasons set forth in Plaintiff's letters, ECF Nos. 176 & 179, and in Defendant's forthcoming motion to disqualify. While Defendant is thus as eager as anyone to advance this proceeding, there are limits to what can be accomplished before resolution of the disqualification motion. Defendant notes here, again, that it is solely the failure of Plaintiff's counsel to abide by the *Maxwell* protective order that has created this situation.

As for Defendant's specific discovery efforts, to date, Defendant has produced approximately 3,744 documents totaling approximately 35,000 printed pages. This includes all of Defendant's document productions in the related *Edwards v. Dershowitz* matter, all documents (including calendars, travel records, credit card bills, phone records, etc.) provided to the Freeh Group for use in its independent investigation, all relevant audio recordings, and a substantial production of email from Defendant's Gmail account. Since the date the parties reached agreement on email search terms on August 7, 2020, Defendant's counsel has reviewed approximately 16,000 emails and attachments for responsiveness and privilege, and made four rolling productions, on August 18, August 28, September 11, and October 23, totaling 1,681 documents. These productions include many of the categories of documents which Plaintiff incorrectly states have yet to be produced, and more of these documents will be included in future rolling productions. Approximately 26,000 emails and attachments from Defendant's Gmail account remain to be reviewed, although the review is in process.

Plaintiff's criticism of Defendant's efforts with respect to the collection of his Harvard email account is without merit. While Defendant no doubt has a possessory interest in his Harvard emails, he does not have the technical ability to perform a forensic collection of those emails for use in litigation without Harvard's agreement and participation. As soon as the parties reached agreement on an initial set of search terms to apply to the Harvard account (on August 7, 2020), Defendant provided that list to Harvard and asked for basic information concerning the volume of email generated by application of the search terms and the date range of email available for collection. Harvard would not provide that basic information necessary for Defendant to properly assess the burden to him of the Harvard collection and review process, unless Defendant signed a

contract obligating him to pay for all costs associated with the collection, including the cost for Harvard to hire outside counsel to review the emails for Harvard confidential information and information protected by the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"). This became a point of contention between Defendant and Harvard, as Defendant obviously could not agree to pay for the costs of a review without having the basic information necessary to estimate those costs.

In the interim, on September 8, 2020, Plaintiff served a subpoena on Harvard seeking the production of Defendant's Harvard email. In response, Defendant informed Plaintiff that given the difficulties posed by the voluntary collection process, he had no objection in principle to Plaintiff pursuing this discovery via subpoena so long as: (i) accommodations are made for the protection of Defendant's attorney-client privileged information; and (ii) the collection and review is much more narrowly tailored than the process underway for Defendant's Gmail account, given the likelihood that much of the relevant, non-privileged information contained in the Harvard email account is contained within and has been or will be produced from Defendant's Gmail account.

In contrast to the substantial email review and production efforts undertaken by Defendant's counsel, Plaintiff has taken the position that Plaintiff's prior productions in the *Giuffre v. Maxwell* case largely satisfy her discovery obligations in this case. Plaintiff appears to take the position that her email production is nearly complete, even though she has to date produced only 746 emails and attachments as a result of the review conducted for this litigation, many of which are duplicative of emails contained in Plaintiff's *Maxwell* productions. Although this issue is not yet ripe for review, Defendant believes that Plaintiff is in possession of substantial additional relevant non-privileged information which has yet to be produced.[2] By way of example only, there are no doubt responsive documents relating to Plaintiff's contacts with former Epstein employees for the Jeffrey Epstein-themed podcast, "Broken: Seeking Justice." As well, Defendant learned for the first time as a result of Plaintiff's most recent document production that Plaintiff retained testifying experts in the *Maxwell* case who purported to opine on, among other things, reputational damages and health effects to Plaintiff from the defamation at issue in that case. These materials are no doubt discoverable in this case where Plaintiff is alleging additional, separate damage to her reputation and health.

On a related note, Defendant has repeatedly sought to schedule Plaintiff's deposition and has been told only that she cannot travel to the United States as the result of the pandemic; a situation which is not likely to abate anytime soon.

Further contributing to the asymmetry of the discovery burdens in this case is that fact that, in contrast to the mountain of contemporaneous records which Defendant has produced from the relevant 2000-2002 time frame, Plaintiff has not produced, and claims not to possess, virtually any contemporaneous documents from this time period to support her claims, apparently having destroyed critical evidence in the form of a contemporaneous journal in a bonfire in 2013. Defendant is thus forced to rely primarily on third-party discovery in support of his claims and

---

[2] It should be noted in this regard that Plaintiff has a history of falsely denying the existence of relevant discovery, testifying in her deposition in the *Edwards v. Dershowitz* case that she had not exchanged emails mentioning Dershowitz with Sharon Churcher, a claim which was subsequently shown to be false.

defenses.  All of this discovery is likely to be resisted and will take time to complete.   (For example, Defendant has recently subpoenaed the journalist Sharon Churcher for a deposition, as she possesses critical exculpatory information regarding the falsity of Plaintiff's claims.  It is anticipated that Churcher will file papers in the next two weeks asking Your Honor to quash that subpoena).    Defendant does not believe a schedule for the completion of discovery should be established until the disqualification motion has been resolved.

Respectfully,

COOPER & KIRK, PLLC

/s/ Nicole Jo Moss
Charles J. Cooper*
Michael W. Kirk
Nicole J. Moss*
Haley N. Proctor*
*Admitted Pro Hac Vice
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
ccooper@cooperkirk.com
mkirk@cooperkirk.com
nmoss@cooperkirk.com
hproctor@cooperkirk.com

TODD & WELD LLP

/s/ Christian G. Kiely
Howard M. Cooper*
Christian G. Kiely*
Kristine C. Oren*
*Admitted Pro Hac Vice
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
ckiely@toddweld.com
koren@toddweld.com

AIDALA, BERTUNA & KAMINS, P.C.

/s/Arthur L. Aidala
Arthur L. Aidala (S.D.N.Y. Bar No. ALA-0059)
Imran H. Ansari (S.D.N.Y. Bar No. IHA-1978)
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
iansari@aidalalaw.com
aidalaesq@aidalalaw.com