# Cooper & Kirk

Lawyers
A Professional Limited Liability Company

Nicole J. Moss　　　　　　　　1523 New Hampshire Avenue, N.W.　　　　　　(202) 220-9600
(202) 220-9636　　　　　　　　　　　　Washington, D.C. 20036　　　　　　　　Fax (202) 220-9601
nmoss@cooperkirk.com

November 19, 2020

**VIA ECF**
The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

　　　　Re:　*Giuffre v. Dershowitz*, No. 19-cv-3377-LAP
　　　　　　　**Protective Order**

Dear Judge Preska:

　　　　I write on behalf of Plaintiff Virginia Giuffre in response to Defendant Alan Dershowitz's letter of November 12, 2020 (Doc. 194), and in further support of Plaintiff's letter of the same date (Doc. 193).

　　　　The parties' dispute is less lofty than Defendant's rhetoric concerning transparency and openness suggests. At this point, the parties have no real disagreement over whether particular material should be made public. The only question is *how* the parties should decide whether particular material should be made public.

　　　　Plaintiff produced volumes of sensitive information in *Giuffre v. Maxwell* in reliance on the protective order that had been entered in that case. Then, in December of last year, she produced the same material to Defendant in this action in reliance on the *express* understanding that he would adhere to the *Giuffre v. Maxwell* protective order for material marked "confidential." Now that Defendant has reaped the benefits of the speedy production facilitated by that understanding, he seeks to deny Plaintiff the protection for which she bargained by asking the Court to enter an order that would permit him to disclose any of the information she has produced unless, in his judgment, it meets a narrower definition of "Confidential Information" to which Plaintiff agreed only in reliance on her understanding that all confidential documents in her *Giuffre v. Maxwell* productions would remain protected. Defendant's bait and switch is patently unfair.

　　　　In an effort to accommodate Defendant's professed desire that judicial proceedings proceed in the open whenever possible—a desire Plaintiff shares—Plaintiff has offered to consider promptly any request by Defendant to de-designate a confidential document he wishes to use in this action. Defendant does not explain in his opening letter why Plaintiff's proposal—which Plaintiff made nearly a month ago—does not adequately protect his interests, and he should not be permitted to articulate his reasons for the first time in his responsive letter, to which Plaintiff will have no opportunity to reply. Instead, Defendant lets loose a school of red herrings.

November 19, 2020
Page 2

First, he complains that the "vast majority" of the documents that Plaintiff produced to him will be designated "confidential. This complaint is baseless and largely irrelevant to the present dispute. Contrary to Defendant's representation that "virtually every document produced by Plaintiff in the *Maxwell* case bore a confidentiality designation," nearly half of the documents contained in Plaintiffs' *Giuffre v. Maxwell* productions were not designated "confidential." *None* of the more than 1,300 electronic messages that Plaintiff has produced apart from her initial disclosures in this matter is designated "confidential," and Plaintiff anticipates producing hundreds more once she completes her review of her text messages. Finally, Plaintiff has produced scores of flight logs, documents returned by public records requests, documents produced by Victims Refuse Silence and Mar-a-Lago in *Giuffre v. Maxwell*, and documents she produced in *Edwards v. Dershowitz*, all without confidentiality designations.

It is true that Plaintiff has withheld a number of documents pending the Court's entry of a protective order. These documents contain material that matches the definition of "Confidential Information" to which Defendant has already agreed and will thus remain "confidential" regardless of how the Court resolves the present dispute. *See* Doc. 194-1 (Defendant's proposed protective order). It is also true that Plaintiff applied confidentiality designations to the thousands of pages of mostly third-party documents she reviewed, excerpted, redacted, and produced from *Giuffre v. Maxwell*. These court-ordered productions have spared Defendant the time and resources he would have had to expend to obtain these documents through third-party discovery and will remain "confidential" regardless of how this Court resolves the present dispute.[1]

That leaves approximately 475 files that contain confidentiality designations, a significant portion of which contain material that matches the definition of "Confidential Information" to which Defendant has already agreed, and another significant portion of which have been produced in this action (as part of Plaintiff's email productions) without a confidentiality designation. The remaining documents are the only documents at issue in this dispute, and again, Plaintiff has made clear to Defendant that she will promptly consider and respond to requests to de-designate specifically identified documents for use in this proceeding.[2]

---

[1] We note that Defendant already had many of these confidential documents separate and apart from Plaintiff's production to him, as evidenced by the fact that Defendant produced many of these same documents (and at least one additional document that Plaintiff did not already have) as part of his email productions. Troublingly, Defendant did not designate these documents as confidential or otherwise indicate that they were subject to the protective order in *Giuffre v. Maxwell* even though they indisputably are. Defendant implicitly conceded as much by filing one such document under seal yesterday.

[2] Plaintiff maintains her objection to reviewing each of those documents for confidentiality because there is no legitimate need to require her to undergo that burden and expense. And it will be burdensome. Because Plaintiff's prior counsel designated each of these documents as confidential, Plaintiff's current counsel will need to investigate each document, understand the basis for prior counsel's designation, and potentially confer with prior counsel before de-designating a document. This is wholly unnecessary for those documents as to which Defendant is not questioning the confidential designation and for those documents (there likely are many) that have no relevance in this litigation and will not be used in any filings or other proceedings.

November 19, 2020
Page 3

    This leads to the second red herring: Having refused to take Plaintiff up on her offer to consider de-designation of specifically identified documents for use in this action, Defendant has no basis to accuse Plaintiff of shielding material that is relevant to this case from public view. The only court in which Plaintiff's proposal even *arguably* hampers Defendant is in the court of public opinion, inasmuch as Defendant is not currently at liberty to deploy Plaintiffs' production in the media. Defendant's laments have no place in a discovery dispute: the purpose of discovery is to facilitate truth-seeking in judicial proceedings, not to build a supply line for a media campaign. Defendant's practice of seeding his media campaign with cherry-picked information produced in litigation (at times, improperly[3]) is among the reasons that Plaintiff is unwilling to allow Defendant to exercise his own judgment about which of her personal documents he makes public.

    Third, Defendant argues that Plaintiff is "free to do with her own documents . . . whatever she wishes." That is not entirely true: Plaintiff produced at least one document in *Giuffre v. Maxwell* that she was at liberty to produce *only* under a protective order, and there may be others. That is part of the reason that Plaintiff insists on the opportunity to review documents designated "confidential" in *Giuffre v. Maxwell* before Defendant uses them publicly in this case. But setting aside documents that she is legally obligated to protect for other reasons, it is not Plaintiff's position that her decision to designate a document as "confidential" in *Giuffre v. Maxwell* limits her ability to disclose it publicly now. Instead, Plaintiff's position is simply that Defendant should be held to the agreement he struck when Plaintiff made her initial disclosures: Defendant would receive a large volume of relevant material within days of the opening of discovery, but he would have to respect the confidentiality designations on those documents until such time as Plaintiff or the Court lifts them.[4]

    Ultimately, none of Defendant's arguments bears on whether Plaintiff is entitled to the protection upon which she relied in producing documents to Defendant in December of last year or the reasonableness of her proposed accommodation to review the confidentiality designation of any specific documents that Defendant identifies. Plaintiff therefore respectfully requests that the Court enter a protective order in accordance with the form attached to her letter of November 12, 2020 (Doc. 193) as Exhibit A.

                                                Respectfully,

                                                s/ Nicole J. Moss
                                                Nicole J. Moss

cc: Counsel of Record

---

    [3] For example, in a 2018 letter to the editor of *The Harvard Crimson*, Defendant (inaccurately) characterized confidential documents that had not yet been unsealed in the *Giuffre v. Maxwell* matter. *See* Declaration of Charles J. Cooper, dated July 7, 2020 ¶ 7, n.1 (Doc. 149).

    [4] By contrast, the productions Plaintiff ultimately receives may not be subject to a protective order, but nearly a year into discovery, she has yet to receive most of the material to which she is entitled. *See* Letter re Joint Status Report, Doc. 190 at 2 (Nov. 5, 2020).