**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

VIRGINIA L. GIUFFRE,

      Plaintiff / Counterclaim Defendant,

      v.

ALAN DERSHOWITZ,

      Defendant / Counterclaim Plaintiff.

Case No. 19-cv-03377-LAP
**REDACTED VERSION**

<u>**VIRGINIA L. GIUFFRE'S RESPONSE MEMORANDUM OF LAW**</u>
<u>**IN OPPOSITION TO MOTION TO DISQUALIFY COOPER & KIRK PLLC**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ......................................................................................1

BACKGROUND .......................................................................................1

ARGUMENT ...........................................................................................7

I.      Defendant's Motion Does Not Satisfy the High Bar for Disqualification. .........................7

II.     Fairness Considerations Militate Strongly Against Disqualification. ...............................11

        A.     Disqualification Would Severely Disadvantage Plaintiff. .....................................12

        B.     The "Unfair Advantage" About Which Defendant Complains Is Illusory. ...........13

        C.     Defendant's Fairness Concerns May Be Addressed by Other Means. ..................16

CONCLUSION .......................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**                                                                       **Page**

*Bd. of Educ. of City of New York v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979) .................7, 9, 11, 12

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ...........................................................................2

*Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78 (D.D.C. 2020) ......................................7, 8

*Chem. Bank v. Affiliated FM Ins. Co.*,
   No. 87 CIV. 0150 (VLB), 1994 WL 141951 (S.D.N.Y. Apr. 20, 1994) ...........................12, 13

*Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342 (S.D.N.Y. 2007)...................................9

*Corpac v. Rubin & Rothman, LLC*, 920 F. Supp. 2d 345 (E.D.N.Y. 2013) ...................................7

*DeVittorio v. Hall*, No. 07 CIV. 0812 (WCC),
   2007 WL 4372872 (S.D.N.Y. Dec. 12, 2007) ............................................................7, 10, 11

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*,
   No. 15-CV-2044 (AJN) (RLE), 2017 WL 2418742 (S.D.N.Y. June 5, 2017) .......................14

*Gen. Am. Commc'ns Corps. v. Rumpf*,
    No. 83 CIV. 2308 (CBM), 1989 WL 101926 (S.D.N.Y. Aug. 29, 1989).........................10, 11

*Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*,
   No. 99 C 0762, 1999 WL 528545 (N.D. Ill. July 19, 1999) ............................................10, 11

*In re Corp. Res. Servs., Inc.*, 595 B.R. 434 (S.D.N.Y. 2019) ......................................................12

*Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK,
   2013 WL 3991107 (N.D. Cal. Aug. 2, 2013) ..........................................................................9

*Matter of Beiny*, 129 A.D.2d 126, 517 N.Y.S.2d 474 (N.Y. App. Div., 1st Dept. 1987).............14

*Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*,
   542 F. Supp. 2d 296 (S.D.N.Y. 2008)..............................................................................10, 11

*Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147 (S.D.N.Y. 2017)...................................................14

*Tradewinds Airlines, Inc. v. Soros*,
   No. 08 CIV. 5901 (JFK), 2009 WL 1321695 (S.D.N.Y. May 12, 2009) ................7, 8, 10, 11

*Ullrich v. Hearst Corporation*, 809 F. Supp. 229 (S.D.N.Y. 1992) .......................................14, 15

## INTRODUCTION

Defendant Alan Dershowitz ("Defendant") sought to take a discovery shortcut by obtaining from Plaintiff Virginia Giuffre ("Plaintiff") a substantial volume of material produced or created in *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y.) ("the *Maxwell* action"). The Court and Plaintiff have sought to accommodate Defendant by granting him access to materials that mention him and are thus most likely to be relevant to this action. Defendant is not satisfied with this solution. He now seeks to "level the playing field" by imposing upon Plaintiff a devastating handicap: disqualifying her counsel over a year after discovery has commenced. He does so not because he believes Plaintiff's counsel has engaged in the sort of intentionally wrongful conduct that typically justifies disqualification in cases involving access to confidential information, but instead because they have access to information that he wants but cannot get. Defendant's request is unprecedented and should be denied.

In opposing Defendant's motion, Plaintiff does not intend to diminish the gravity of the Court's earlier finding that Cooper & Kirk received materials to which it was not entitled under a protective order entered in the *Maxwell* action. However, where counsel received those materials in good faith and have not breached any right *Defendant* had in the protective order, there is no basis for disqualification. And if Cooper & Kirk must be disqualified, Defendant's chosen counsel, Todd & Weld, must likewise be disqualified because Defendant has provided it with access to large volumes of protected *Maxwell* materials, even though the firm is not entitled to access to the *Maxwell* materials under the Court's interpretation of the *Maxwell* protective order.

## BACKGROUND

Plaintiff was the victim of sex trafficking and abuse by the late Jeffrey Epstein and his associates. Am. Compl. ¶¶ 2, 5, Doc. 117 (Apr. 15, 2020). Defendant, Epstein's attorney and close

friend, was among the men with whom Epstein compelled Plaintiff to have sex. *Id.* ¶ 6. When Plaintiff publicly accused Defendant of complicity in Epstein's crimes in an action challenging a non-prosecution agreement that Defendant negotiated on behalf of Epstein and his co-conspirators, Defendant began a relentless smear campaign to discredit Plaintiff as a perjurer and extortionist. *Id.* ¶¶ 10, 14. Plaintiff brings this action for sexual battery, defamation, and violations of the Wiretap Act arising from secret recordings of one of Plaintiff's attorneys. *Id.* ¶¶ 94–131.

Plaintiff instituted this action in April 2019. At the time, she was represented by Boies Schiller & Flexner LLP ("BSF"). BSF had previously represented Plaintiff in the *Maxwell* action, in which Plaintiff brought defamation claims against Ghislaine Maxwell, another Epstein associate who had accused Plaintiff of lying about Maxwell's complicity in Epstein's trafficking scheme.

In its capacity as Plaintiff's counsel in the *Maxwell* action, BSF not only possessed but was intimately familiar with all documents and testimony produced, given, or filed in the *Maxwell* action. Much of the material in BSF's possession remained under seal or subject to a protective order entered in that action. Order, Doc. 62 (Mar. 18, 2016), *in Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y.) ("Protective Order" or "*Maxwell* Protective Order"). As an associate of Maxwell and Epstein, Defendant had intervened and been designated as a potential witness in the *Maxwell* action. *See Brown v. Maxwell*, 929 F.3d 41, 46 (2d Cir. 2019); Declaration of Nicole Moss ("Moss Decl.") Ex. A. In his capacity as a potential witness, he signed a copy of the *Maxwell* Protective Order and received copies of dozens of confidential and sealed *Maxwell* document productions, testimony, filings, and other documents. Moss Decl. Exs. A, B. Under the terms of the *Maxwell* Protective Order, and as relevant here, only parties to, attorneys actively working on, and potential witnesses in the *Maxwell* action could access protected material, and neither BSF, Plaintiff, nor Defendant are permitted to use that material in this action without leave of Court unless they

independently obtain the material, through discovery in this action or otherwise. Protective Order ¶¶ 4, 5.

On June 7, 2019, Defendant moved to disqualify BSF in this action under the advocate-witness rule and on the ground that BSF had a conflict of interest because Defendant sought to retain BSF in connection with Plaintiff's accusations against him. Mem. of Law in Supp. of Mot. to Disqualify, Doc. 8 (June 7, 2019). Notably, Defendant did not move to disqualify BSF on the ground that its familiarity with material subject to the *Maxwell* Protective Order gave Plaintiff an unfair advantage in this action. *Id.* Nor did any party to *Maxwell* raise concerns about BSF representing Plaintiff in this action.

On October 16, 2019, this Court disqualified BSF under the advocate-witness rule. Op. and Order 30, Doc. 67 (Oct. 16, 2019). On the same day, the Court ordered the parties to submit a proposed discovery plan no later than November 13, leaving just under one month for Plaintiff to locate new counsel, and for new counsel to familiarize themselves with her claims and confer with counsel for Defendant on a discovery plan. The Court later extended that deadline. Order, Doc. 91 (Nov. 15, 2019).

Cooper & Kirk appeared on behalf of Plaintiff on October 31, 2019. *See, e.g.*, Mot. for Charles J. Cooper To Appear Pro Hac Vice, Doc. 76 (Oct. 31, 2019). Plaintiff retained Cooper & Kirk to represent her not only in this action, but also in ongoing unsealing proceedings in the *Maxwell* action. *See* Declaration of Charles J. Cooper ¶ 6, Doc. 149 (July 7, 2020) ("Cooper Decl."). Consequently, both BSF and Cooper & Kirk believed in good faith that Cooper & Kirk was stepping into the shoes of BSF in this case and would be assisting BSF in *Maxwell*, and that Cooper & Kirk was thus no less authorized than BSF to review confidential materials from the

*Maxwell* action that were contained in Plaintiff's case files at BSF and/or in Plaintiff's custody. Letter from Charles J. Cooper to the Hon. Loretta A. Preska at 1, Doc. 148 (July 7, 2020).

Fortifying that conclusion, Cooper & Kirk entered this action subject to an order to confer with counsel for Defendant about producing transcripts and exhibits from Plaintiff's depositions in the *Maxwell* action, even though those materials were and remain partially subject to the *Maxwell* Protective Order. Cooper Decl. ¶¶ 4–5, 7.  In connection with Defendant's request for copies of those transcripts, Cooper & Kirk disclosed on the record that it had access to those transcripts and exhibits, and no one—including Maxwell, who weighed in on Defendant's request—objected. *Id.* ¶¶ 7–9, 14. Over the next several months, Cooper & Kirk continued to be transparent about its access to confidential material from *Maxwell*, *id.* ¶¶ 16–26, but counsel for Defendant did not "pick up on" the significance of Cooper & Kirk's disclosures because "the issue of where the documents resided was not the focus of the parties' discussions," Letter from Howard Cooper to the Hon. Loretta A. Preska at 1, Doc. 150 (July 10, 2020).

In June 2020, Defendant filed a letter seeking access to confidential materials from the *Maxwell* action. First Letter Mot. for Local Rule 37.2 Conference, Doc. 133 (June 12, 2020). At a telephonic hearing concerning that letter, Cooper & Kirk again confirmed that it had access to confidential materials from the *Maxwell* action. Tr., Cooper Decl. Ex. K, at 9, Doc. 149-11 (July 7, 2020).

On July 1, 2020, the Court issued an order denying Defendant's request to access protected material from the *Maxwell* action. Order, Doc. 144 (July 1, 2020) ("Destruction Order"). In the same order, the Court held that Cooper & Kirk was not entitled to access confidential material under the *Maxwell* Protective Order and ordered Cooper & Kirk to destroy all such material in its possession, as well as any work product derived from that material. *Id.* Defendant immediately

moved to stay the Destruction Order, for reconsideration, and for leave to move to disqualify Cooper & Kirk. Letter Mot. To Stay, Doc. 146 (July 2, 2020). In response, Cooper & Kirk explained why it believed in good faith that BSF was permitted to share with Cooper & Kirk confidential materials under the *Maxwell* Protective Order, acknowledged that it would destroy that material at the Court's order, and opposed Defendant's proposed disqualification motion. Letter from Charles J. Cooper to the Hon. Loretta A. Preska, Doc. 148 (July 7, 2020).

The Court stayed the Destruction Order and directed the parties to confer and develop a proposal for a limited disclosure of protected material to Defendant. Order, Doc. 147 (dated July 3, 2020; filed July 6, 2020); Order, Doc. 152 (July 22, 2020). In the course of those discussions, Cooper & Kirk shared an inventory of the confidential and sealed materials in its possession (only a subset of all protected materials from the *Maxwell* action), but declined to disclose the identities of confidential deposition witnesses who had not yet been revealed in public filings. Joint Status Report Pursuant to ECF No. 152, Doc. 153 (July 29, 2020). The parties submitted a joint letter requesting, among other things, leave to disclose the nature of any confidential material in their respective possessions; Defendant further sought an order compelling Plaintiff to produce specified material from the *Maxwell* action, which request Plaintiff did not oppose. *Id.* at 3.

On September 9, 2020, after obtaining input from interested nonparties, the Court ordered Plaintiff to produce to Defendant "all sealed materials and discovery that mentions Mr. Dershowitz, excluding material produced by or material (or portions of material) discussing a specific nonparty Doe whose privacy interests are the subject of a separate sealed order to be provided to Ms. Giuffre." Order at 7, Doc. 174 (Sept. 9, 2020). On October 27, 2020, Plaintiff produced to Defendant excerpts of deposition and hearing transcripts, deposition exhibits, party and non-party productions, other discovery materials, and sealed filings that were in Cooper &

Kirk's custody and mentioned Defendant (including sufficient surrounding material to provide context for the references). In addition to the material Cooper & Kirk had inventoried in July, this production included material that Cooper & Kirk discovered while reviewing Plaintiffs' emails, which had been collected in December 2019. Moss Decl. ¶ 6. On November 9, 2020, Plaintiff made a supplemental production consisting of excerpts of expert reports in Cooper & Kirk's possession, which had previously been inadvertently omitted from the October 27 production. *Id.* Plaintiff marked all documents pursuant to the Court's order with a confidentiality legend to denote that they remained subject to the *Maxwell* Protective order. *Id.*

Since August, Plaintiff has begun to receive productions from Defendant's email. These productions have included several dozen nonpublic, confidential, or sealed documents from the *Maxwell* action, which counsel for Maxwell had provided to Defendant. *See* Moss Decl. Ex. B.[1] Many of these documents were not previously in Cooper & Kirk's possession because, again, Cooper & Kirk had received only a subset of the protected *Maxwell* materials from BSF by the time the Court ruled that Cooper & Kirk was not entitled to access those materials. *Id.* Although the vast majority of the documents have not yet been unsealed or have been unsealed only in part, Defendant neither marked these documents as "confidential" (with one exception), nor (to Plaintiff's knowledge) sought leave of court before producing them. Plaintiff of course intends to treat them as sealed and/or confidential to the extent that Cooper & Kirk can independently discern that they are protected materials from *Maxwell*. *Id.* ¶ 5.

---

[1] The cover emails for these documents were initially withheld on a claim that they were protected under a joint defense privilege with Maxwell. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Defendant produced some cover emails that make clear he received these materials from Maxwell's counsel. Moss Decl. ¶ 4.

Unsatisfied with the Court's order requiring Plaintiff to produce specific *Maxwell* materials, Defendant now moves to disqualify Cooper & Kirk, insisting that our access to confidential and sealed *Maxwell* materials that do not mention Defendant gives us an unfair advantage in this action. The Court should deny that motion.

## ARGUMENT

### I.   Defendant's Motion Does Not Satisfy the High Bar for Disqualification.

Motions to disqualify are "subject to particularly strict scrutiny." *Corpac v. Rubin & Rothman, LLC*, 920 F. Supp. 2d 345, 352 (E.D.N.Y. 2013). Disqualification interferes with a party's right to chosen counsel, is often sought "for tactical reasons," and "inevitably cause[s] delay." *Bd. of Educ. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Accordingly, "[d]isqualification is appropriate *only* if the attorney's *misconduct* 'tends to taint the underlying trial by affecting his or her presentation of the case.' " *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 (JFK), 2009 WL 1321695, at *4 (S.D.N.Y. May 12, 2009) (quoting *Nyquist*, 590 F.2d at 1246) (emphasis added). Courts in this Circuit "have recognized only two situations in which" that will be so: first "where the attorney or his firm concurrently represents parties with adverse interests," thereby "undermining" the ethical duty of "undivided loyalty"; second "where the attorney is in a position to use in litigation against a former client relevant, privileged information obtained during the prior representation," which would violate the "duty to protect client confidences." *Id*. Outside these two ethical breaches, as Defendant's own cited cases acknowledge, disqualification is "rare[ly]" justified, *id*., even where other breaches are alleged. *See DeVittorio v. Hall*, No. 07 CIV. 0812 (WCC), 2007 WL 4372872, at *11 (S.D.N.Y. Dec. 12, 2007); *see also Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 91 (D.D.C. 2020) ("Except in cases of truly egregious misconduct likely to infect future proceedings, other means less

prejudicial to the client's interest than disqualifying the counsel of the Party's choice are ordinarily available." (internal brackets omitted)).

Defendant does not (and could not) argue that Cooper & Kirk has committed any misconduct or breached any duties owed to him. Cooper & Kirk has never represented Defendant, nor is it representing parties with adverse interests in this suit. Cooper & Kirk is thus in no possible danger of breaching its duties of loyalty and confidentiality. Nor is this one of the rare cases where the draconian measure of disqualification is otherwise justified. In every disqualification case Defendant cites, the lawyer whose disqualification is sought allegedly breached some duty owed to the movant—if not the duty of client confidentiality, then the duty under a protective order to maintain the confidentiality of materials the movant had produced. *See Tradewinds*, 2009 WL 1321695, at **1–3; *infra* at 10. But Defendant, who was not a party in *Maxwell* and who produced no discovery in *Maxwell*, is owed no duties under the *Maxwell* Protective Order. Cooper & Kirk's good faith, albeit erroneous, receipt of *Maxwell* materials to which the Court found it was not entitled, therefore, violated no right that Defendant can claim.

Instead, Defendant's quarrel seems to be with the Court. *See, e.g.*, Mem. in Supp. of Mot. to Disqualify at 1, Doc. 204 (Nov. 18, 2020) ("Mem. in Supp.") ("The bases for Professor Dershowitz's motion to disqualify . . . are the product of the Court's various orders"); *id*. at 4 (alleging that "Professor Dershowitz has limited insight into the discovery conducted in the *Maxwell* case as a result of . . . the Court's orders"); *id*. at 8 ("[T]his Court has already denied Professor Dershowitz's efforts to obtain discovery"); *id*. at 13–14 (alleging prejudice from "the Court's seemingly narrow view of discovery"). For over a year after Plaintiff filed suit, Defendant was unconcerned about the known fact that Plaintiff's counsel had access to the *Maxwell* materials.

Only after Defendant failed to obtain access to all of the *Maxwell* materials did he raise concerns about Plaintiff's counsel.

Defendant's sole complaint is that Cooper & Kirk had an opportunity to review materials in its client's possession, custody, and control that it may not turn over to him. But Cooper & Kirk's submission detailing its good-faith basis for taking possession of protected *Maxwell* material remains uncontradicted, and indeed implicitly accepted, by Defendant. Letter from Howard Cooper to the Hon. Loretta A. Preska, Doc. 150 (July 10, 2020). Honest mistakes of this sort are not corrected through the extreme measure of disqualification. *See, e.g.*, *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 3991107, at *8 (N.D. Cal. Aug. 2, 2013) (demanding a showing that counsel "*wrongfully* acquired an unfair advantage that undermines the integrity of the judicial process" (emphasis added)); *Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 352 (S.D.N.Y. 2007) ("Disqualification of an attorney is only appropriate where there has been a clear violation of the Code of Professional Responsibility leading to a significant risk of trial taint." (internal quotation marks omitted)).

Nor is it reasonable to conclude that Cooper & Kirk's supposed advantage "taint[s] the underlying trial," *Nyquist*, 590 F.2d at 1246, given that it was an advantage that Plaintiff would have enjoyed to far greater measure, without objection, had she continued to be represented by her original counsel of choice, BSF. (The Court disqualified BSF, it is true, but not because of its access to and familiarity with the *Maxwell* materials.) The only difference between Cooper & Kirk and BSF—apart from the fact that the latter's familiarity with the *Maxwell* materials far exceeds the former's both in scope and depth—is that the Court has held that Cooper & Kirk was not entitled to access the *Maxwell* materials under the *Maxwell* Protective Order. But that does not

somehow convert a perfectly fair advantage that Plaintiff enjoyed when represented by her original counsel of choice into one that undermines the integrity of the trial.

Defendant's cited cases are not to the contrary. Mem. in Supp. 6–7. As mentioned, all can be distinguished from this one because they involved an alleged breach of a duty owed to the movant. Moreover, most involved an alleged breach of one of the two ethical duties described above, specifically the situation in which plaintiff's counsel has information from a prior confidential relationship with defendant. *See Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008); *DeVittorio*, 2007 WL 4372872, at *8; *Gen. Am. Commc'ns Corps. v. Rumpf*, No. 83 CIV. 2308 (CBM), 1989 WL 101926, at *2 (S.D.N.Y. Aug. 29, 1989). *Even so*, none hold disqualification necessary, and many squarely reject Defendant's own argument for disqualification. *See Tradewinds*, 2009 WL 1321695, at *8 ("The bare assertion that plaintiff's attorney has a tactical advantage in the litigation of the suit based on the knowledge gained in the prior suit is unconvincing." (cleaned up)); *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, No. 99 C 0762, 1999 WL 528545, at **1–2 (N.D. Ill. July 19, 1999) (finding "any unfair advantage or head start" to be "merely speculative" where counsel "maintain[ed] that it used no confidential information . . . to file this action" and could separately have pursued that information in discovery).

Defendant nevertheless contends that these cases *denying* disqualification *support* disqualification here because the court in each case pointed out that the confidential information at issue was discoverable, whereas Defendant has not yet been able to discover all of the *Maxwell* material. Mem. in Supp. at 6–8. This is what comes of Defendant trying to wedge the square peg of this case into the round hole of disqualification: in each case Defendant cites, disqualification turned not on whether *the movant* would be able to obtain the confidential information through

discovery, but instead on whether the *respondent* could have done so. *See Med. Diagnostic Imaging, PLLC*, 542 F. Supp. 2d at 315; *DeVittorio*, 2007 WL 4372872, at *10; *Gen. Am. Commc'ns Corps.*, 1989 WL 101926, at *4; *Tradewinds*, 2009 WL 1321695, at *8; *Hu-Friedy Mfg. Co.*, 1999 WL 528545, at **2–3. Thus, the question in these cases was whether the attorney with access to the confidential information could have obtained the same information through discovery in the pending action. The answer to that question in this case, as in the cases Defendant cites, is "yes": we know the *Maxwell* materials are discoverable because they were obtained through discovery in the *Maxwell* action.

It is therefore beside the point that Defendant entertains doubts whether *he* will be able perfectly to reconstruct the *Maxwell* record using the same traditional discovery tools the *Maxwell* parties used. Defendant's argument thus reduces to this: Defendant believes certain elements of the *Maxwell* record will remain beyond his reach because they concern subject matter this Court has deemed to be irrelevant to this action. Mem. in Supp. at 13. In other words, Defendant asks the Court to disqualify Plaintiff's counsel on the ground that counsel has gained access, in good faith and without violating any duty to Defendant, to material the Court believes to be irrelevant to this action. Needless to say, this is not the sort of argument that distinguishes this case as a "rare" one in which disqualification is merited though no ethical breach has occurred. *Nyquist*, 590 F.2d at 1246.

## II. Fairness Considerations Militate Strongly Against Disqualification.

Unable to satisfy the traditional standard for disqualification, Defendant resorts to generalized considerations of fairness and due process. Mem. in Supp. at 8–12. But these considerations actually weigh strongly against disqualification.

### A. Disqualification Would Severely Disadvantage Plaintiff.

Plaintiff has already endured the burden of having her counsel of choice disqualified once. Fortunately, however, that disqualification occurred before discovery commenced, and Plaintiff was able to engage replacement counsel in relatively short order. Plaintiff will face a severe and unnecessary burden if her replacement counsel is disqualified now, over a year after the commencement of discovery.

First, disqualification is disruptive under any circumstances. *See, e.g.*, *Nyquist*, 590 F.2d at 1246; *In re Corp. Res. Servs., Inc.*, 595 B.R. 434, 447 (S.D.N.Y. 2019) (holding that bankruptcy court abused its discretion in disqualifying counsel where new counsel "would have to familiarize themselves with the extensive discovery in this case and formulate their own trial strategy" and "appreciable time and money would be spent" in the process (quoting *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 180 (2d Cir. 2009)) (internal brackets omitted)). The burdens that typically attend disqualification will be magnified in this action, in which discovery has been and will continue to be unusually complex for a private, non-commercial dispute.

Second, BSF and Cooper & Kirk have both represented Plaintiff in this action *pro bono*. Moss Decl. ¶¶ 8–9. Even if this were a simple tort case, it would be difficult for Plaintiff to find new *pro bono* counsel; the burdens of this complex litigation dim her prospects further. Indeed, given the attacks launched by Defendant against virtually every attorney who has represented Plaintiff since she accused Defendant, it may well be difficult for her to retain new counsel on any economic terms. *See Chem. Bank v. Affiliated FM Ins. Co.*, No. 87 CIV. 0150 (VLB), 1994 WL 141951, at *14 (S.D.N.Y. Apr. 20, 1994) ("[C]ourts must deter motions 'born of little more than hardball litigation strategy sessions and advanced where there is no threat of actual prejudice.' "

(quoting *Hartford Acc. & Indem. Co. v. RJR Nabisco, Inc.*, 721 F. Supp. 534, 541 (S.D.N.Y. 1989)).

Third, even if Plaintiff were able to find replacement counsel, familiarizing counsel with Plaintiff's claims without conferring on them at least some of the advantage of which Defendant complains would be next to impossible. For example, Plaintiff and her hypothetical future counsel would have to develop a mechanism for counsel to review Plaintiff's responsive, privileged email communications with her *Maxwell* counsel without gaining knowledge of protected material that is out of bounds in this case. As another example, Plaintiff—without the benefit of advice of counsel—would have to determine what she is free to share from her own records and/or recollection. This would require a lawyerly comprehension of the scope of the protective order, a disciplined inventory of what has been unsealed, and a superhuman recall of the source of her knowledge of facts relating to this action.

### B.  The "Unfair Advantage" About Which Defendant Complains Is Illusory.

Defendant complains that, as a result of the Court's orders, he faces "trial by ambush." Mem. in Supp. at 1. Defendant's fear is unfounded. Plaintiff must disclose all material on which she intends to rely at trial or in other proceedings in this case. And to the extent *she* has in her possession "materials . . . which may lead to admissible evidence" that she may not disclose to him due to the *Maxwell* Protective Order, *id.*—a point she does not concede—she may not use those materials in this case absent leave of this Court. Letter from Charles J. Cooper to the Hon. Loretta A. Preska, 2, n.2 Doc. 148 (July 7, 2020) (explaining that Cooper & Kirk has "refrained from using confidential material" and "announced our intention to obtain confidential material anew in discovery").

According to Defendant, even if Cooper & Kirk does not use confidential *Maxwell* materials (aside from all those Defendant already possesses) as exhibits, does not file them with

the Court, and does not rely on them as the basis of any factual allegations, Cooper & Kirk might nevertheless "use" those materials because it cannot "unlearn" what is has learned from the *Maxwell* materials. Mem. in Supp. at 11. "Mere speculation" is no ground for disqualification. *Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 152 (S.D.N.Y. 2017) (cleaned up).

Defendant's "instructive" case from an intermediate state court instructs only by contrast. Mem. in Supp. at 11. In *Matter of Beiny*, 129 A.D.2d 126, 517 N.Y.S.2d 474 (N.Y. App. Div., 1st Dept. 1987), an attorney at Sullivan & Cromwell obtained under false pretenses another law firm's files from over ten years of representing a family involved in a trust-accounting suit. *Id.* at 128–29. "[G]iven the blatant abuse with which we are here confronted, involving willful disregard of procedural rules, deceit, and the covert acquisition of otherwise unobtainable privileged material," the court concluded "that Sullivan & Cromwell must be disqualified." *Id.* at 141. Moreover, unlike in this case, privileged material had already been "used extensively to surprise [the Trustee] during her deposition," *id.* at 129, and the documents contained directly relevant information, *id.* at 142. Similarly, in *Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*, further use was unavoidable because the attorney had already "used protected information to file suit in New York Supreme Court and disclosed protected information in its publicly filed state complaint." No. 15-CV-2044 (AJN) (RLE), 2017 WL 2418742, at *5 (S.D.N.Y. June 5, 2017) (cleaned up).

*Ullrich v. Hearst Corporation* takes a broader view of what it means to "use" information, but it too is manifestly distinguishable. In *Ullrich*, the plaintiff's attorney had "nearly 20 years" of experience representing *the defendant* in "very closely related" matters and thus had "extensive access to confidential information" that was "necessarily pertinent to the litigation" and could not have been obtained without the pre-existing attorney-client relationship. 809 F. Supp. 229, 234–

14

35 (S.D.N.Y. 1992). *Ullrich* represents a quintessential case for disqualification because the ethical rule at issue in that case "is not designed merely to prevent the *disclosure* of confidences by the lawyer," but rather "concerns itself as much with the lawyer's *use* of confidential information in a manner adverse to the interests of the former client that trusted the lawyer with its confidences." *Id.* at 235. By contrast, Cooper & Kirk owes no duty to Defendant (or to anyone) that would be breached by Cooper & Kirk "operating with knowledge" that Defendant lacks, Mem. in Supp. at 11, especially when this Court has already concluded that the information in question is only of limited relevance to this action.

Defendant's argument is also flawed as a factual matter. Even had it not received *Maxwell* materials, Cooper & Kirk could have obtained the strategic benefits Defendant describes (e.g., knowing what to ask for in discovery, which witnesses to seek to depose, and what questions to ask them) through perfectly legitimate consultations with Plaintiff and her previous counsel, BSF. Defendant has obtained and may continue to receive a similar benefit from his extensive consultations with Maxwell's attorneys (which were extensive enough for him to assert, albeit erroneously, that he and Maxwell had agreed to coordinate their defenses to Plaintiff's accusations, Moss Decl. ¶ 4).

Indeed, Defendant would have enjoyed a similar (perhaps greater) tactical advantage had he not disregarded the *Maxwell* Protective Order in his document productions. Defendant had access to a large volume of *relevant* protected material from *Maxwell* that was not in Cooper & Kirk's possession until Defendant produced it to Plaintiff in discovery. Moss Decl. Ex. B; *see also* Mem. in Supp. at 14 (noting that "virtually everything" from *Maxwell* in Defendant's possession that has not yet been unsealed "should be among the materials he is entitled to receive under the Court's most recent order . . . because they mention him"). Defendant's productions may have

eliminated his advantage, but *his* violation of the *Maxwell* Protective Order—which he signed—cannot support disqualifying Cooper & Kirk.

Finally, if the Court concludes that Cooper & Kirk must be disqualified, Defendant's chosen counsel, Todd & Weld, must likewise be disqualified. As just noted, Defendant, through counsel at Todd & Weld, produced a large volume of material that is subject to the protective order in *Maxwell*, yet Todd & Weld is not entitled under the Court's interpretation of the *Maxwell* protective order to have access to those materials. It is no answer to suggest that the fact that Defendant produced some of his *Maxwell* materials to Plaintiff means that Todd & Weld will not have the supposedly unfair advantage Defendant claims that Cooper & Kirk enjoys because the Court's orders prohibit Plaintiff's new counsel from viewing any protected *Maxwell* materials under the Court's orders. And in any case, it would be unjust to deprive Plaintiff of her chosen counsel simply because she scrupulously sought to comply with the Court's orders by refusing to produce protected *Maxwell* materials without leave of Court while Defendant is permitted to keep his chosen counsel notwithstanding that he violated the *Maxwell* protective order by producing protected materials without leave of Court.

## C.  Defendant's Fairness Concerns May Be Addressed by Other Means.

The Court has already granted the most effective remedy for the fairness concerns that Defendant raises, by ordering Plaintiff to disclose most materials mentioning Dershowitz. This order covers the vast majority of the "circumstantial" material referenced in Defendant's motion. Mem. in Supp. at 9–10. Most of the remaining items on his list were part of Plaintiff's production in *Maxwell* and have thus already been produced to Defendant. Moss Decl. ¶ 7.

Materials outside the scope of the Court's order are of dubious relevance but could still be the subject of further discovery requests by Defendant. For example, if Defendant chooses to

depose a deponent from *Maxwell*, he could return to the Court with a narrow request to obtain a complete copy of that individual's deposition transcript.

The real issue here—as Defendant acknowledges—is that Defendant disagrees with this Court's determination about what is relevant to the claims and counterclaims and defenses in this action. The Court has repeatedly advised the parties that it considers the central issues in this litigation to be whether Defendant abused Plaintiff and whether Plaintiff engaged in a conspiracy with her attorneys to falsely accuse Defendant of abusing her in order to extort money from wealthy Epstein associates. *See, e.g.*, Tr. 2:20–24, Doc. 97 (Dec. 2, 2019) ("[W]e're looking as to whether Dershowitz and Giuffre had relations and we have the additional allegations in the complaint with respect to supposed extortion schemes by Giuffre and her lawyers."); *id.* 9:19–22 ("It has to do with whether they, in fact, had relations and who was lying or is lying and, secondly, the conspiracy-to-extort theory"); Mem. & Order at 9, Doc. 144 ("The Court is thus skeptical that judicial economy would be served by handing Mr. Dershowitz a mountain of discovery from a separate case that may not even be relevant to his defense or to his counterclaims against Ms. Giuffre."). Defendant nevertheless argues that the veracity of Plaintiff's allegations against other men are relevant because Plaintiff has sued Defendant for saying that she is a "serial liar" and has a "documented history of lying about prominent people." Mem. in Supp. at 8–9 (quoting Am. Compl. ¶¶ 17(p) & (n)(i)). Plaintiff disagrees with Defendant's position on relevance, but in any event, Defendant retains full access to ordinary discovery tools to identify and obtain evidence bearing on the issues he believes are relevant. That *Defendant* fears he will be thwarted by the argument that the evidence is too far afield of the issues in this case does not support disqualifying *Plaintiff*'s counsel.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to disqualify her counsel, Cooper & Kirk.

Date: December 4, 2020                    Respectfully submitted,

<u>s/ Charles J. Cooper</u>
Charles J. Cooper*
Michael W. Kirk
Nicole J. Moss*
Haley N. Proctor*
COOPER & KIRK PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
(202) 220-9600
*Admitted PHV

*Attorneys for Plaintiff Virginia Giuffre*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2020, I electronically filed the foregoing response

with the Clerk of the Court using the CM/ECF system, and I hereby certify that the foregoing

was served upon all counsel of record using the CM/ECF system.

<u>s/ Charles J. Cooper</u>
Charles J. Cooper*
COOPER & KIRK PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
(202) 220-9600
*Admitted PHV

*Attorney for Plaintiff Virginia Giuffre*