UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

      Plaintiff / Counterclaim Defendant,

  v.

ALAN DERSHOWITZ,

      Defendant / Counterclaim Plaintiff

Case No. 19-cv-03377-LAP

**REDACTED VERSION**

**PROFESSOR ALAN DERSHOWITZ'S REPLY IN SUPPORT OF
<u>MOTION TO DISQUALIFY COOPER & KIRK PLLC</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

INTRODUCTION ..........................................................................................................1

ARGUMENT ..................................................................................................................2

    I.     THE UNFAIR PREJUDICE TO PROFESSOR DERSHOWITZ RESULTING
          FROM THE DENIAL OF EQUAL ACCESS TO THE *MAXWELL*
          MATERIALS CANNOT REASONABLY BE QUESTIONED...........................2

          A.    Plaintiff Cannot Seriously Deny the Relevance of the *Maxwell*
                  Materials ............................................................................................2

          B.    The Prejudice Cannot be Cured Through Independent Discovery ..............5

          C.    If the Court Remains Unconvinced of the Seriousness of the
                  Prejudice to Professor Dershowitz, It Should Permit a Keeper of
                  Records Deposition of Cooper & Kirk ........................................................6

    II.    THERE IS NO BASIS FOR "MUTUAL" DISQUALIFICATION ..................7

    III.    COOPER & KIRK'S DISQUALIFICATION WOULD NOT CAUSE
           UNDUE PREJUDICE TO PLAINTIFF; NONETHELESS, PROFESSOR
           DERSHOWITZ REMAINS OPEN TO ALTERNATIVE RELIEF..................8

CONCLUSION................................................................................................................8

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                     **Page**

*Soto v. Castlerock Farming and Transport, Inc.*,
282 F.R.D. 492 (E.D. Cal. 2012). ...................................................................................................5

*United States v. Yerdon*,
2013 WL 600170 (N.D.N.Y. 2013). ..............................................................................................2

## INTRODUCTION

Plaintiff Virginia Giuffre ("Plaintiff" or "Giuffre") filed this action falsely accusing Professor Dershowitz of sexually assaulting her as part of a sex trafficking conspiracy he allegedly entered into with Jeffrey Epstein and Ghislaine Maxwell in the early 2000s, and then defaming her by denying her accusations almost two decades later. Plaintiff's primary source of non-public information regarding this alleged conspiracy is unquestionably the discovery she and her counsel obtained in the *Giuffre v. Maxwell* case, and the allegations in Plaintiff's original complaint and operative Amended Complaint (ECF No. 117) are thus no doubt partially derived from and informed by this material. Professor Dershowitz accordingly sought the production from Plaintiff of all confidential discovery material which Plaintiff and her counsel obtained in the *Maxwell* case. Professor Dershowitz's request for the production of these materials which Plaintiff and her counsel possess was not a discovery "shortcut." Rather, it was an obligatory request for the production of relevant, non-privileged materials in the possession of a party and her counsel; materials which Plaintiff has put directly at issue through her own complaint, and whose relevance (and indeed, centrality) to this case Plaintiff has conceded through her own requests for discovery into the very same subject matter from Professor Dershowitz.[1]

If, as Plaintiff contends, Professor Dershowitz's motion for disqualification is unprecedented, that is only because he finds himself in an unprecedented situation, having been categorically denied access to a wealth of relevant non-privileged information in the hands of his litigation adversary. "Inequality of access to information serves as an impediment to full and fair

---

[1] Plaintiff is guilty of precisely the same "shortcut" for which she criticizes Professor Dershowitz. Among her staggering ninety-six separate requests for production are requests for copies of all documents produced by all parties and non-parties in the *Edwards v. Dershowitz* case, as well as, incredibly, all documents which are responsive to any of the *Edwards* plaintiffs' documents requests but which were not produced in that case. *See* Exhibit A to the Supplemental Declaration of Christian G. Kiely, at Request Nos. 83-85, and 88-89.

litigation. . . . Indeed, it is this potential imbalance that has spawned the discovery process and the legally-mandated practice of exchanging information." *United States v. Yerdon*, 2013 WL 600170, at *2 (N.D.N.Y. 2013). The unfair prejudice to Professor Dershowitz of being forced to litigate on such an unlevel playing field far outweighs any prejudice to Plaintiff of having to find replacement counsel. Of course, Professor Dershowitz is presently able to illustrate the unfair prejudice resulting to him from the status quo only by reference to select materials which have been made available to him. There are no doubt scores of additional materials in Cooper & Kirk's possession, the particulars of which are presently unknown to Professor Dershowitz, which further contribute to Plaintiff's unfair advantage. If the Court has any doubts remaining about the severity of the unfair prejudice, then it should allow Professor Dershowitz to take a keeper of records deposition of Cooper & Kirk to allow the Court to decide this motion based on a complete record concerning the nature and scope of the materials in Cooper & Kirk's possession.

That said, Professor Dershowitz brought this motion only as a last resort, and he remains open to alternatives to disqualification. Professor Dershowitz's preferred solution remains that he be provided with equal (or roughly equal) access to the *Maxwell* discovery materials in Cooper & Kirk's possession. However, if the Court is not inclined to reconsider its prior rulings on this issue, then Professor Dershowitz submits that Cooper & Kirk must be disqualified.

## ARGUMENT

### I.   THE UNFAIR PREJUDICE TO PROFESSOR DERSHOWITZ RESULTING FROM THE DENIAL OF EQUAL ACCESS TO THE *MAXWELL* MATERIALS CANNOT REASONABLY BE QUESTIONED.

#### A.  Plaintiff Cannot Seriously Deny the Relevance of the *Maxwell* Materials.

Plaintiff argues that there will be no unfair prejudice to Professor Dershowitz resulting from Cooper & Kirk's continued representation of her because Professor Dershowitz already has

access to the *Maxwell* case materials which the Court deems most relevant.  (Opp. pp. 16-17).
This argument is flawed for the reasons discuss below, but it is not even correct as a factual
matter.  Professor Dershowitz has *not* in fact been provided all *Maxwell* case materials bearing
directly on what the Court (and now Plaintiff) considers to be the "central issues" in the case.
One of those central issues, according to Plaintiff herself, is Professor Dershowitz's assertion
that Plaintiff's false accusation against him was made as part of an attempt to extort "wealthy
Epstein associates" including Leslie Wexner.  (Opp. p. 17).  But Professor Dershowitz has been
provided access only to those Maxwell case materials that mention *him* by name and has been
*denied* access to *Maxwell* case materials concerning Wexner and the other prominent friends of
Epstein whom Plaintiff has accused, *see* ECF No. 174, despite their indisputable and conceded
centrality to this case.

  Perhaps more importantly, however, Plaintiff has put directly at issue, and previously
conceded the relevance of, the much broader set of *Maxwell* materials in her and her counsel's
possession.  This includes in particular the categories of documents listed on Appendix A to the
parties' Joint Status Report, ECF No. 153 (included herewith as Suppl. Kiely Decl. Exhibit B),
which Professor Dershowitz previously sought as a form of compromise.  To begin with, the
allegations of Plaintiff's Amended Complaint are not limited to Plaintiff's own (alleged)
personal observations, but also rely on information apparently derived from the *Maxwell*
materials.   They  include  the  allegations  that  "Epstein's  employees  have  confirmed  that
Defendant visited Epstein's Palm Beach and New York City mansions often, would stay
overnight, and was present when the victims of Epstein's sex trafficking were there";  that
Professor Dershowitz's "claims that he was never present where Plaintiff was trafficked and
never in the presence of young girls are lies"; that Professor Dershowitz made his allegedly

defamatory statements concerning Plaintiff "in concert with Epstein *and others*, including Ghislaine Maxwell . . . as part of conspiracy to discredit and try to silence Plaintiff"; that Professor Dershowitz's statements were made "pursuant to his conspiracy with Epstein and Maxwell maliciously as part of an effort to conceal sex trafficking crimes committed around the world by Epstein *and other powerful persons*."  Am. Compl., ECF No. 117 at ¶¶ 34; 52; 53; 64 (emphasis added).   All of these allegations are apparently, at least in part, Plaintiff's interpretations of discovery from the *Maxwell* case.  On top of that, the Amended Complaint expressly relies on statements and testimony by Juan Alessi, Maria Farmer and Sarah Ransome, *see* ECF No. 117 at ¶¶ 60, 62-64, 72-74, 81, ██████████████████████████

██████████████████████████████████████

In addition, and as Professor Dershowitz has pointed out previously, Plaintiff is suing him for calling her a "serial liar" who has a "documented history of lying about prominent people."  Am. Compl., ECF No. 117 at ¶¶17(p) & (n)(i).  This Court has not and could not properly or fairly rule during discovery that Professor Dershowitz is somehow not entitled to gather information concerning Plaintiff's multiple lies about other prominent men where she has put the matter at issue.   Indeed, Plaintiff's complaint introduced allegations and attached affidavits from other women concerning Professor Dershowitz's alleged sexual activity, and Plaintiff has sought broad discovery into "[a]ll documents and communications relating to any meeting [Professor Dershowitz] had with *any female* associated with Jeffrey Epstein or Ghislaine Maxwell[.]"   Suppl. Kiely Decl. Ex. A. at Request No. 8 (emphasis added).  It is highly disingenuous for Plaintiff to argue here that it is solely her (falsely) alleged relationship with Professor Dershowitz that is discoverable.

Beyond putting much of the *Maxwell* discovery directly at issue, Plaintiff has acknowledged the relevance of the sought-after material by requesting discovery from Professor Dershowitz on the very same subject matters.   Included herewith as <u>Exhibit C</u> to the Supplemental Declaration of Christian G. Kiely is a chart which compares the categories of documents included in Professor Dershowitz's narrowed request for the production of *Maxwell* case materials (Suppl. Kiely Decl. <u>Ex. B</u>) with Plaintiff's own document requests (Suppl. Kiely Decl. <u>Ex. A</u>) and search terms which Plaintiff requested be run against Professor Dershowitz's Gmail account.   Virtually every category of document listed on that Appendix A is included within Plaintiff's own document requests to Professor Dershowitz and requested search terms. Despite Plaintiff's professed adherence to the Court's directives regarding the narrow scope of discovery, Plaintiff has requested in this case the same categories of documents that Defendant is seeking from the *Maxwell* case, thereby acknowledging the central relevance of these categories of documents and the prejudice to Professor Dershowitz resulting from their withholding.

### B.  The Prejudice Cannot Be Cured Through Independent Discovery.

The unfair prejudice to Professor Dershowitz from the present informational asymmetry simply cannot be adequately cured by attempting to re-construct the *Maxwell* record in Plaintiff's and her counsel's possession.   Professor Dershowitz preemptively addressed this argument in his opening brief and will not belabor the point here.   "[W]hen an opposing party and a non-party both possess documents, the documents should be sought from the party to the case."   *Soto v. Castlerock Farming and Transport, Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012).   Nonetheless, even if there were a valid justification for requiring Professor Dershowitz to pursue from non-parties to this action discovery which is already in the possession of a party, Professor Dershowitz obviously cannot pursue discovery from persons whose very identities have been withheld from him, as many of the *Maxwell* deponents and subpoena recipients have been.

Independent discovery is inadequate for another reason.  Plaintiff has sued Professor Dershowitz for defaming her by calling her a "serial liar."  Am. Compl., ECF No. 117 at ¶ (n)(i).  Professor Dershowitz is entitled to prove the truth of this assertion, including by discovering what factual support Plaintiff had for the increasingly fantastical claims she has made in the media, including, for example, her claims that Epstein and Maxwell had *thousands* of underage victims.  *See* https://twitter.com/VRSVirginia/status/1307975083349037056 (accusing Epstein pilot Larry Visoski of "carrying 100's if not 1000's of underage minors across state borders and internationally");     https://twitter.com/vrsvirginia/status/1281901632419008512     (claiming Maxwell's victims "are in the 1000's").  But the question of what Plaintiff knew and when she knew it is not necessarily a question that can be answered through independent discovery, unless each non-party is required to provide a complete copy of any document production or testimony they provided in the *Maxwell* case.   It is thus imperative that Professor Dershowitz be provided with precisely the same information that Plaintiff has access to.

> **C. If the Court Remains Unconvinced of the Seriousness of the Prejudice to Professor Dershowitz, It Should Permit a Keeper of Records Deposition of Cooper & Kirk.**

Professor Dershowitz is severely hamstrung in his ability to create a record here, forced to extrapolate based on the small number of *Maxwell* discovery documents to which he is privy.  Nevertheless, Professor Dershowitz submits that, even based on the limited information available to him, he has amply demonstrated the patent unfairness to him of the present information asymmetry.  If, however, the Court remains unconvinced, it should permit Professor Dershowitz to take a deposition of a keeper of records for Cooper & Kirk to better understand the scope and nature of the materials presently in their possession, including the identities of all persons who provided deposition or document discovery in the *Maxwell* case.

## II.      THERE IS NO BASIS FOR "MUTUAL" DISQUALIFICATION.

To deflect from their own violation of the *Maxwell* protective order, Cooper & Kirk accuse Professor Dershowitz of violating that protective order by producing to Plaintiff in discovery in this case confidential *Maxwell* discovery material which was located during a review of his email.  Plaintiff misleadingly suggests that these materials included protected *Maxwell* information not already in Cooper & Kirk's possession.  Not so.  Included in Professor Dershowitz's productions were a small number of sealed *pleadings* which Cooper & Kirk represents were not among the materials supplied to them by predecessor counsel at Boies Schiller Flexner LLP.[2]  However, these pleadings were sealed only because they referenced or attached confidential discovery materials, *all of which were already in Cooper & Kirk's possession*.  Thus, Professor Dershowitz has not produced *any* protected information which Cooper & Kirk did not already possess.  Nor is it accurate to suggest that Professor Dershowitz did not properly designate this material as confidential when producing it, given that it all bears the original confidential or under seal designations from the *Maxwell* case.  Finally, it is completely disingenuous to suggest that Todd & Weld are somehow deserving of mutual disqualification because in the course of reviewing their client's email for production, they came across (and produced to Plaintiff) confidential *Maxwell* materials which were legitimately supplied to Professor Dershowitz under the terms of the *Maxwell* protective order and which Cooper & Kirk already had in their possession.[3]

---

[2] *See* Opp. Ex. B at row nos. 12-15, 16, 24, 27-28, 32-33, 37, 39, 44, and 48.  All documents reflected in these rows are pleadings with the exception of the document at row 32, which is a rough copy of a deposition transcript which Cooper & Kirk already possessed in its final form, as reflected at row 35.

[3] If the Court disqualifies Cooper & Kirk, this material could readily be extracted from their discovery database before turning it over to successor counsel, using the bates numbers listed on Exhibit B to Plaintiff's Opposition.

III.   **COOPER & KIRK'S DISQUALIFICATION WOULD NOT CAUSE UNDUE PREJUDICE TO PLAINTIFF; NONETHELESS, PROFESSOR DERSHOWITZ REMAINS OPEN TO ALTERNATIVE RELIEF.**

Plaintiff grossly overstates the prejudice that would result to her if the Court were to disqualify Cooper & Kirk at this stage in the proceedings.  Although document discovery is indeed well under way, no depositions have yet been taken, and no trial date has been scheduled or could be scheduled imminently in light of the pandemic.  There is no merit to the suggestion that Plaintiff may not be able to find replacement counsel were Cooper & Kirk to be disqualified; and while plaintiff would likely have no trouble finding counsel willing to represent her *pro bono*, Plaintiff evidently has the resources to pay for counsel.[4]

Nonetheless, Cooper & Kirk's disqualification would obviously result in some degree of disruption to the case, and Professor Dershowitz agrees with Plaintiff that disqualification is an imperfect solution – that "familiarizing [replacement] counsel with Plaintiff's claims without conferring on them at least some of the advantage of which [Professor Dershowitz] complains would be next to impossible."  Opp. at 13.  Professor Dershowitz's preferred solution therefore remains that he be provided with equal access to the *Maxwell* discovery materials in Cooper & Kirk's possession, or something, like a comprehensive, unredacted inventory, that assures that these materials can be re-assembled through independent discovery.  That is the only way to cure the fundamental unfairness here.

## <u>CONCLUSION</u>

For the foregoing reasons and the reasons stated in his opening Memorandum of Law, Professor Dershowitz respectfully requests that if the Court remains disinclined to permit Professor Dershowitz broader access to the *Maxwell* materials than simply those materials which

---

[4] Plaintiff recently purchased a multi-million dollar beachfront home near Perth, Western Australia.  *See*  https://www.dailymail.co.uk/news/article-9013123/Jeffrey-Epstein-sex-victim-Virginia-Roberts-moves-1-9million-Ocean-Reef-Perth-home-family.html.

mention him, that the Court enter an order disqualifying Cooper & Kirk from continuing to represent Plaintiff in this action.  Professor Dershowitz respectfully requests that the Court hold oral argument on his Motion.

         Respectfully submitted,

         ALAN DERSHOWITZ,

         By his attorneys,

         */s/ Howard M. Cooper*
         Howard M. Cooper (MA BBO # 543842) *(pro hac vice)*
         Christian G. Kiely (MA BBO # 684308) *(pro hac vice)*
         Kristine C. Oren (MA BBO # 705730) *(pro hac vice)*
         TODD & WELD LLP
         One Federal Street, 27th Floor
         Boston, MA  02110
         T: 617-720-2626
         hcooper@toddweld.com
         ckiely@toddweld.com
         koren@toddweld.com

         */s/ Imran H. Ansari*
         Arthur L. Aidala (S.D.N.Y. Bar No. ALA-0059)
         Imran H. Ansari (S.D.N.Y. Bar No. IHA-1978)
         AIDALA, BERTUNA & KAMINS, P.C.
         546 Fifth Avenue, 6th Floor
         New York, NY  10036
         T: 212-486-0011
         iansari@aidalalaw.com
         aidalaesq@aidalalaw.com

Dated: December 11, 2020

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Court's electronic filing system and served to all counsel of record on December 11, 2020.

/s/ Christian G. Kiely
Christian G. Kiely