```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

VIRGINIA L. GIUFFRE,

                    Plaintiff,

-against-

ALAN DERSHOWITZ,

                    Defendant.

19 Civ. 3377 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Alan Dershowitz's motion
(dkt. no. 203) to disqualify Cooper & Kirk PLLC ("Cooper &
Kirk") as Plaintiff Virginia Giuffre's legal counsel.

    After the Court disqualified the law firm of Boies Schiller
Flexner LLP ("BSF") as Ms. Giuffre's counsel in October 2019
upon Mr. Dershowitz's motion, (Opinion & Order, dated Oct. 16,
2019 [dkt. no. 67]), Ms. Giuffre retained Cooper & Kirk to
represent her in this lawsuit.  BSF continued to represent Ms.
Giuffre in the ongoing unsealing proceedings in her separate,
now-settled defamation lawsuit against Jeffrey Epstein associate
Ghislaine Maxwell.[1]  When Cooper & Kirk took over as counsel to
Ms. Giuffre in this lawsuit against Mr. Dershowitz, it received
from Ms. Giuffre's prior counsel, and had access to, materials
designated "confidential" in the Maxwell litigation.  After the

---

[1] Giuffre v. Maxwell, dkt. no. 15-cv-07433 ("Maxwell").

Court granted Mr. Dershowitz's request to modify the <u>Maxwell</u> protective order to permit him immediate access to some discovery designated as "confidential" in <u>Maxwell</u>--but declined to grant him access to all of it--Mr. Dershowitz moved to disqualify Cooper and Kirk on the basis that the firm previously had accessed the full trove of confidential <u>Maxwell</u> materials.

For the reasons stated below, Dershowitz's motion to disqualify Cooper & Kirk is denied.

I.   <u>Background</u>

Plaintiff Virginia Giuffre alleges that she was a victim of sexual trafficking and abuse by Jeffrey Epstein and his associates and that Alan Dershowitz was among the men with whom Epstein compelled her to have sex.  (<u>See</u> Amended Complaint ("Am. Compl."), dated Apr. 15, 2020, [dkt. no. 117], ¶¶ 2, 5-6.)  Mr. Dershowitz vigorously denies these allegations and has accused Plaintiff of, among other things, being a "serial liar[]" with a "documented history of lying about prominent people" who fabricated her accusations against him as part of an extortion plot.  (<u>Id.</u> ¶ 17.)  Plaintiff brought this lawsuit against Dershowitz on the basis that these statements were false and defamatory, (Am. Compl. ¶¶ 94-112), among other claims.  Mr. Dershowitz counterclaimed against Ms. Giuffre for defamation and intentional infliction of emotional distress.  (Answer with

Affirmative Defenses & Counterclaims, dated Nov. 7, 2019 [dkt.
no. 90]; Am. Counterclaims, dated June 3, 2020 [dkt. no. 127].)

    i. The Maxwell Action

    When Ms. Giuffre filed her initial complaint against Mr.
Dershowitz in April 2019, BSF represented Ms. Giuffre as legal
counsel.  BSF also had represented Ms. Giuffre in her defamation
lawsuit against Ghislaine Maxwell, which Ms. Giuffre brought
after Ms. Maxwell accused her of lying about Maxwell's alleged
complicity in Jeffrey Epstein's purported trafficking scheme
("Maxwell").[2]  Ms. Giuffre filed her lawsuit against Ms. Maxwell
in September 2015, and the parties settled it in May 2017.
(Order of Joint Stipulation for Dismissal, dated May 24, 2017
[dkt. no. 916 in 15-cv-7433]).  As counsel to Ms. Giuffre in the
Maxwell action, BSF of course had access to the mound of
discovery generated in that litigation and presumably had
intimate knowledge of much of it.  Much of the material in that
case remains under seal or was designated confidential and
remains subject to that case's protective order.[3]  (Order, dated

---

[2] Mr. Dershowitz eventually intervened in Maxwell, see Brown v.
Maxwell, 929 F.3d 41, 46 (2d Cir. 2019), was designated a
potential witness, signed on to the Maxwell protective order,
and received confidential discovery materials in preparation for
his potential testimony in that case (see Exs. A-B to Decl. of
Nicole Moss, dated Dec. 4, 2020 [dkt. no. 218-1, 218-2]).

[3] As the parties are aware, pursuant to its mandate in Brown v.
Maxwell, the Court is undertaking a parallel, individualized
review of the materials filed under seal in Maxwell and has been
(continued on following page)

Mar. 18, 2016 [dkt. no. 62 in 15-cv-7433].)  Under the Maxwell
protective order, materials properly marked confidential "shall
not be disclosed or used for any purpose except the preparation
and trial of [Maxwell]," (id. ¶ 4), and were only permitted to
be disclosed to specific people, including (1) "attorneys
actively working on [that] case," (2) "persons regularly
employed or associated with the attorneys who are actively
working on [that] case," and (3) "deponents, witnesses, or
potential witnesses" (id. ¶¶ 5(a)-(h)).  Under the terms of the
Maxwell protective order, Giuffre and Dershowitz may only use
"confidential" materials they received in Maxwell in this action
with the Court's leave or, alternatively, with the consent of
the party who produced the materials.  (Id. ¶ 5).

    ii. BSF's Disqualification from this Lawsuit

    On June 7, 2019, less than two months after Ms. Giuffre
filed her original complaint in this action, Mr. Dershowitz
moved to disqualify BSF as Ms. Giuffre's legal counsel.  (Mem.
of Law in Supp. of Mot. to Disqualify, dated June 7, 2019 [dkt.
no. 8].)  Mr. Dershowitz argued that BSF should be disqualified
on the basis of (1) a purported conflict of interest, because
Mr. Dershowitz allegedly had consulted with BSF's lawyers in

---

(continued from previous page)
unsealing those materials in batches, where appropriate, after
hearing from the Maxwell parties and non-parties.

connection with his representation in this lawsuit, and (2) the
advocate witness rule, which may prohibit an attorney from
representing a party where the attorney will be called as a
witness.  Giuffre v. Dershowitz, 410 F. Supp. 3d 564, 577
(S.D.N.Y. 2019).  The Court held that the advocate witness rule
required BSF's disqualification.  (Id. at 581.)

Following BSF's disqualification, the law firm of Cooper &
Kirk took over as Ms. Giuffre's legal counsel.  Ms. Giuffre
originally retained Cooper & Kirk to represent her both in this
lawsuit and in the Maxwell action.  (See Decl. of Charles J.
Cooper, dated July 7, 2020 [dkt. no. 149], ¶ 6.)  Cooper & Kirk
submits that it believed in good faith that it was stepping into
the shoes of BSF in this case and would be assisting BSF in
Maxwell; it therefore believed it was authorized to review
confidential discovery from Maxwell that was contained in
Plaintiff's case files at BSF or in Plaintiff's custody.
(Letter from Charles J. Cooper, dated July 7, 2020 [dkt. no.
148], at 1.)

In June 2020, Mr. Dershowitz sought to modify the Maxwell
protective order to compel Ms. Giuffre and others to produce to
him all filings and discovery materials from the Maxwell action,
including third-party discovery marked confidential.  (Letter
from Howard M. Cooper, dated June 12, 2020 [dkt. no. 133], at
1.)  He sought these materials on the basis that the Maxwell

discovery purportedly overlapped substantially with the
discovery in this action and that its production would promote
efficiency.  (Id.)  The Court rejected Dershowitz's request for
wholesale turnover of the discovery in Maxwell, finding that he
had not demonstrated the extraordinary circumstance or
compelling need required to justify modification of a protective
order.  (Order, dated July 1, 2020 [dkt. no. 144], at 7.)
Observing the third-party reliance on the Maxwell protective
order, the Court found that although "'fostering judicial
economy and avoiding duplicative discovery are laudable goals
. . . they hardly amount to extraordinary circumstances or
compelling need.'"  (Id. at 8 (quoting Md. Cas. Co. v. W.R.
Grace & Co., No. 83 Civ. 7451 (SWK), 1994 WL 419787, at *9
(S.D.N.Y. Aug. 10, 1994).)  Moreover, the Court found that
allowing modification of the protective order to permit
wholesale turnover of confidential documents from Maxwell
potentially would undercut the ongoing Maxwell unsealing
process.  (Id. at 9-10.)

    In that same order, the Court also noted that it was
"troubled to learn at the June 23 oral argument that replacement
counsel for Ms. Giuffre, Cooper & Kirk, had received from Ms.
Giuffre's former counsel, BSF, the Maxwell materials at issue in
their entirety."  (Id. at 4.)  The Court ordered that Cooper &
Kirk destroy the Maxwell materials except for the transcript of

Giuffre's deposition in that case.  (Id. at 13.)  Dershowitz
immediately sought to stay the Court's destruction order,
(Letter from Howard M. Cooper, dated July 2, 2020 [dkt. no.
146]), a request that the Court granted.  (Order, dated July 3,
2020 [dkt. no. 147]).  The Court directed the parties to confer
and develop a proposal for limited disclosure of confidential
Maxwell discovery to Mr. Dershowitz.  (Order, dated July 22,
2020 [dkt. no. 152].)

The parties thereafter conferred and informed the Court
that Ms. Giuffre did not object to producing to Mr. Dershowitz
(1) the names of all deponents, subpoena recipients, and
affiants in Maxwell and (2) sealed materials from the Maxwell
action falling in 13 enumerated categories.  (Joint Status
Report, dated July 29, 2020 [dkt. no. 153].)  The Court noted
its concern that disclosure to Mr. Dershowitz of these
materials, even under a protective order, could undermine the
unsealing process in Maxwell and infringe upon the privacy
rights of third parties without affording them notice and an
opportunity to be heard.  (Order, dated, Aug. 4, 2020 [dkt. no.
154], at 2.)[4]  Accordingly, the Court invited comment from

_____

[4] The Court's August 4 order further explained that discovery
materials not designated "confidential" in Maxwell were not
covered by the Maxwell protective order and thus could be
produced to Mr. Dershowitz.  (Order, dated Aug. 4, 2020 [dkt.
no. 154], at 3.)

nonparties in <u>Maxwell</u> as it considered the <u>Dershowitz</u> parties'
proposal.  (<u>Id.</u> at 2.)

    After considering the parties' submissions and those from
interested nonparties, the Court declined to approve in full the
parties' proposal to modify the protective order.  (Order, dated
Sept. 9, 2020 [dkt. no. 174], at 7.)  The Court reiterated that
wholesale turnover of the <u>Maxwell</u> discovery could undercut the
unsealing process underway and that the privacy interests of the
<u>Maxwell</u> litigation's nonparties weighed against such broad,
unilateral modification of the protective order.  (<u>Id.</u> at 5.)
Moreover, the Court found that Mr. Dershowitz could not
demonstrate a compelling need to modify the protective order for
all 13 broad categories of documents that he requested,
especially considering the narrower allegations in this case.
(<u>Id.</u> at 6.)  The Court granted the request to modify the
protective order in part, ordering Ms. Giuffre to turn over to
Mr. Dershowitz "all sealed materials and discovery that mentions
Mr. Dershowitz, excluding material produced by or material (or
portions of material) discussing a specific nonparty Doe whose
privacy interests are the subject of a separate sealed order."
(<u>Id.</u> at 7.)[5]

---

[5] Pursuant to the Court's order, Cooper & Kirk since has produced
to Mr. Dershowitz excerpts of deposition and hearing
transcripts, deposition exhibits, party and non-party
(continued on following page)

Mr. Dershowitz thereafter moved to disqualify Cooper & Kirk as Ms. Giuffre's counsel.[6]

## II.  Legal Standard

The authority of federal courts to disqualify counsel "derives from their inherent power to preserve the integrity of the adversary process." Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted).  "Motions to disqualify are generally not favored.  They are often tactically motivated; they cause delay and add expense; they disrupt attorney-client relationships sometimes of long standing; in short, they tend to derail the efficient progress of litigation." Felix v. Balkin, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999) (internal citation omitted).  The decision to disqualify "is a matter committed to the sound discretion of the district court." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir.1990).

---

(continued from previous page)
productions, other discovery materials, and sealed filings that were in Cooper & Kirk's custody and mentioned Defendant (including sufficient surrounding material to provide context for the references), as well as excerpts of expert reports. (Decl. of Nicole J. Moss ("Moss. Decl."), dated Dec. 4, 2020 [dkt. no. 218], ¶ 6.)

[6] (Memorandum of Law in Support of Prof. Alan Dershowitz's Motion to Disqualify ("Mot."), dated Nov. 18, 2020 [dkt. no. 204]; Prof. Alan Dershowitz Reply in Support of Motion to Disqualify ("Reply"), dated Dec. 11, 2020 [dkt. no. 223]; see also Virginia Giuffre's Response Memorandum of Law in Opposition to Motion to Disqualify ("Opp."), dated Dec. 4, 2020 [dkt. no. 217].)

The rules of the American Bar Association and state disciplinary bodies "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, 409 F.3d at 132; see also Bd. of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). Moreover, "[d]isqualification is appropriate only if the attorney's misconduct 'tends to taint the underlying trial' by affecting his or her presentation of the case.'" Tradewinds Airlines, Inc. v. Soros, No. 08 CIV. 5901 JFK, 2009 WL 1321695, at *4 (S.D.N.Y. May 12, 2009) (quoting Nyquist, 590 F.2d at 1246). "The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it." W.T. Grant Co. v. Haines, 531 F.2d 671, 677 (2d Cir. 1976). "[T]he Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel. . . ." Kubin v. Miller, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992). However, "any doubt is to be resolved in favor of disqualification." Giuffre v. Dershowitz, 410 F. Supp. 3d 564, 570 (S.D.N.Y. 2019) (quoting Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975)).

III. Discussion

Mr. Dershowitz argues that Plaintiff has an unfair advantage because Cooper & Kirk has reviewed confidential discovery from its client's lawsuit against Ghislaine Maxwell and the Court since has declined to modify that case's protective order to allow him to use those confidential materials wholesale here.  Mr. Dershowitz contends that, as a result, he will be prejudiced so long as Cooper & Kirk continues to represent Ms. Giuffre.  His ultimatum for the Court is simple: disqualify Plaintiff's lawyers or give him the documents.

Within this Circuit, "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage."  Nyquist, 590 F.2d at 1246.  Outside of these cases, courts "have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct."  Id.

11

As an initial matter, Mr. Dershowitz does not identify any Rule of Professional Responsibility that Cooper & Kirk purportedly has violated, nor can the Court discern one.[7]  He does not allege that either Cooper & Kirk or any of its lawyers has ever violated a duty to him or that the firm has a purported conflict of interest that gives rise to an appearance of impropriety.  See e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 233 (2d Cir. 1977).  Nor does he allege that the firm is in a position to use against him his own privileged or confidential information.  He instead seeks to place Cooper & Kirk's representation among the "rare exceptions," Nyquist, 590 F.2d at 1246, outside of the two principal categories identified

---

[7] Although one court within this Circuit has observed that the Court of Appeals has found "violations of a protective order . . . to constitute a violation of [New York] Rule of Professional Conduct 8.4," the conduct must involve "dishonesty, fraud, deceit or misrepresentation" to rise to the level of violating that rule.  Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research, No. 15-CV-2044 (AJN) (RLE), 2017 WL 2418742, at *4 (S.D.N.Y. June 5, 2017) (citing Peters v. Comm. On Grievances for U.S. Dist. Court for S. Dist. Of New York, 748 F.3d 456, 459, 461-62 (2d Cir. 2014)); NY ST RPC Rule 8.4.  To the extent that Cooper & Kirk's receipt and review of the Maxwell discovery after it replaced BSF as counsel amounted to a violation of the Maxwell protective order, Mr. Dershowitz does not allege that Cooper & Kirk acted dishonestly.  To the contrary, Cooper & Kirk appears to have been forthcoming about its possession of the Maxwell materials in its exchanges with Mr. Dershowitz's counsel, and it appears to have believed in good faith that it was entitled to access these materials in connection with providing assistance in Maxwell.  (See Letter from Charles J. Cooper, dated July 7, 2020 [dkt. no. 148], at 1.)

by the Court of Appeals, where disqualification is nonetheless
warranted.[8]

Mr. Dershowitz points to one case within this Circuit
addressing a scenario where neither of these two classifications
was in question, (Mot. at 6-7) (citing Tradewinds Airlines, Inc.
v. Soros, 2009 WL 1321695 (S.D.N.Y. May 12, 2009)), and there
the Court declined to disqualify counsel anyway.  The defendant
in Tradewinds sought disqualification of plaintiff's counsel
because that attorney previously had represented a different
plaintiff in a prior lawsuit against the same defendant.  Id. at
*1.  The earlier case resulted in settlement, and its protective
order barred the parties and counsel from using that case's
confidential discovery materials in any other case.  Id. at *2.
In the subsequent case, defendant argued that plaintiff's

---

[8] This Court recently has observed that courts within this
Circuit have rarely, if ever, disqualified counsel without
finding a violation of the Code of Professional Responsibility.
In re Corp. Res. Servs., Inc., 595 B.R. 434, 448 n.4 (S.D.N.Y.
2019) ("Although some courts in this Circuit have stated that
'disqualification may be justified even in the absence of a
clear ethical breach 'where necessary to preserve the integrity
of the adversary process,' even in these cases, the courts based
their decisions regarding disqualification of counsel on whether
these attorneys had violated a rule of professional conduct."
(quoting Merck Eprova A.G. v. ProThera, Inc., 670 F. Supp. 2d
201, 208 (S.D.N.Y. 2009) (internal citation omitted)); see also
Drag Racing Techs., Inc. as D.R.T., Inc. v. Universal City
Studios, Inc., No. 02 CIV. 0958 (BSJ), 2003 WL 1948798, at *3
(S.D.N.Y. Apr. 24, 2003) ("Disqualification is warranted only in
situations where violations of the Canons of the Code of
Professional Responsibility (the "Canons") pose a significant
risk of trial taint." (citation omitted)).

counsel had an unfair advantage because plaintiff's counsel had accessed these confidential materials previously. Id. at *8.

As an initial matter, Tradewinds' facts are distinct in key respects. There, the law firm--but not the plaintiff--had been involved in the prior litigation. Accordingly, the law firm--but not the plaintiff--had been acquainted with the confidential discovery materials that the defendant alleged imbued his counterparty with an unfair advantage.[9] It therefore was possible, in theory, for the court to purge the taint of exposure to the confidential discovery material by disqualifying counsel. The same cannot be said here. As a practical matter, Mr. Dershowitz offers no explanation as to how replacing Cooper & Kirk with any other law firm would somehow mitigate his disadvantage when Ms. Giuffre herself also had access to the confidential discovery material in Giuffre v. Maxwell, a multi-year lawsuit in which she was the plaintiff, an involved litigant, and a deponent. To the contrary, Mr. Dershowitz

_____

[9] Mr. Dershowitz likewise points to Hu-Friedy Manufacturing Co. v. General Electric Co., No. 99 C 0762, 1999 WL 528545 (N.D. Ill. July 19, 1999), a replica of the scenario in Tradewinds where counsel represented a plaintiff in a lawsuit against GE and obtained confidential discovery from GE prior to settling the case, then sued GE on behalf of another plaintiff. There, the Court found that Plaintiff had "no unfair advantage in this action due to its previous exposure to the confidential information" because, to the extent the information was relevant, it could be obtained in discovery. Id. at *3 (emphasis in original).

appears to concede that disqualifying Ms. Giuffre's counsel, a
"drastic measure" for which courts must employ a "restrained
approach" when considering, Capponi v. Murphy, 772 F. Supp. 2d
457, 471 (S.D.N.Y. 2009), would do little to remedy these
perceived advantages.  (Reply at 8 ("Professor Dershowitz agrees
with Plaintiff that disqualification is an imperfect solution
. . . .").)

The question the Court ultimately must answer, however, is
whether Cooper & Kirk's representation of Ms. Giuffre
nonetheless amounts to "the rare circumstance where an
attorney's conduct 'poses a significant risk of trial taint.'"
Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 231 (S.D.N.Y.
2010) (quoting Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748
(2d Cir. 1981)).  Tradewinds rejected defendant's contention
that "access to confidential information disclosed under the
Protective Order [in the prior litigation] necessarily gives
[plaintiff] an unfair advantage and taints th[e] case," holding
that disqualification was not warranted.  Tradewinds, 2009 WL
1321695, at *8.  Mr. Dershowitz argues that Tradewinds and other
cases[10] compel disqualification where "opposing counsel has the

---

[10] The other cases upon which Mr. Dershowitz relies for this
proposition concern an attorney's use of information alleged to
have been obtained from a prior client and are scenarios where
the court did not disqualify counsel anyway.  See Med.
Diagnostic Imaging, PLLC v. CareCore Nat., LLC, 542 F. Supp. 2d
(continued on following page)

benefit of confidential discovery from a prior litigation that
will not be discoverable in the case at bar." (Mot. at 6-7.)   To
be more precise, <u>Tradewinds</u> contemplated a scenario where the
information in the hands of opposing counsel is both <u>relevant</u>
and <u>not discoverable</u>, <u>i.e.</u>, privileged, and could be used
against a former client, which could warrant disqualification.
<u>Tradewinds</u>, 2009 WL 1321695, at *8 ("An attorney's prior access
to relevant but non-discoverable information gives her an unfair
advantage in litigation against a former client.").

As to relevance, the Court previously rejected Mr.
Dershowitz's contention that he is entitled to the full
discovery record in <u>Maxwell</u> via modification of the protective
order--he already has "had several bites at this particular
apple"--including because not all of it is relevant here.
(Order, dated Sept. 9, 2020 [dkt. no. 174], at 2.)   Mr.
Dershowitz initially sought to modify the <u>Maxwell</u> protective
order to permit him access to "all filings and discovery
materials, including third-party discovery" from that case.

---

296, 315 (S.D.N.Y. 2008) (finding that "in the context of a
violation of Canon 4," where an attorney uses a "former client's
confidences to the new client's advantage," disqualification may
not be warranted "if a party is capable of securing confidential
information by means other than through prior representation");
<u>DeVittorio v. Hall</u>, Nos. 07 Civ. 0812 (WCC), 07 Civ.1956 (WCC),
2007 WL 4372872, at *12; <u>Gen. Am. Commc'ns Corps. v. Rumpf</u>, No.
83 CIV. 2308 (CBM), 1989 WL 101926, at *5 (S.D.N.Y. Aug. 29,
1989).

(See Letter from Howard M. Cooper, dated June 12, 2020 [dkt. no. 133], at 1.)  The Court denied such an overbroad request because Mr. Dershowitz had "not beyond conclusory assertions demonstrated a congruence between the Maxwell action and his own that would warrant such an indiscriminate approach."  (Order, dated July 1, 2020 [dkt. no. 144], at 8.)  The Court observed that, although the two cases shared some similarities, "Ms. Giuffre's action against Mr. Dershowitz relates primarily to a much narrower range of conduct than what was at issue in her action against Ms. Maxwell."  Id. at 9.  It therefore declined to modify the Maxwell protective order to permit turnover of the entire confidential Maxwell discovery record "that may not even be relevant to his defense or to his counterclaims against Ms. Giuffre."  Id.

Mr. Dershowitz seeks to revisit this issue yet again, even though the Court has since modified the Maxwell protective order to permit him to use all sealed materials and discovery that reference him (subject to a limited exception[11]).  (Order, dated Sept. 9, 2020 [dkt. no. 174], at 7.)  He points to additional portions of the confidential Maxwell record that he believes are relevant to this case and for which he argues the Court is

---

[11] Evidently, Mr. Dershowitz already possesses some of the confidential materials that the Court held Mr. Dershowitz was not entitled to through modification of the protective order. (See Ex. B to Moss. Decl. [dkt. no. 218-2], at 4-6.)

required to modify the <u>Maxwell</u> protective order.  He believes
that he is entitled to, among other things, confidential <u>Maxwell</u>
materials concerning "Plaintiff's boyfriends at the time she
worked for Epstein, James Michael Austrich and Tony Figueroa;
her father, Sky Roberts; her mother, Lynn Trude Miller; Epstein
houseman Juan Alessi; Epstein pilot David Rodgers; and other
individuals who were present at Epstein's properties in the
relevant time period,"[12] (Mot. at 5); "discovery concerning
individuals whom Plaintiff alleges she was sexually trafficked
to by Epstein," (Mot. at 8); and testimony from "Juan Alessi,
Maria Farmer and Sarah Ransome" because, for those individuals,
"the Amended Complaint expressly relies on [their] statements
and testimony," (Reply at 4).[13]

---

[12] In the Court's August 4 order, it noted that documents not
marked confidential, including those such as "'the transcripts
of the depositions of witnesses including James Austrich, Tony
Figueroa, Sky Roberts, Brittany Henderson, and Juan Alessi,'
which 'do not bear confidential designations' and which were
unsealed by the Court of Appeals[]" could be turned over.
(Order, dated Aug. 4, 2020 [dkt. no. 154], at 4 n.1.)

[13] Mr. Dershowitz contends that Plaintiff's Amended Complaint
relies on confidential materials from <u>Maxwell</u> but specifically
only points to "statements and testimony by Juan Alessi, Maria
Farmer and Sarah Ransome" referenced in certain paragraphs of
the complaint (Reply at 3-4 (citing Am. Compl. ¶¶ 60, 62-64, 72-
74, 81)).  Ms. Giuffre annexed affidavits from both Ms. Farmer
and Ms. Ransome to the Amended Complaint to support the
allegations that Mr. Dershowitz references.  (<u>Compare</u> Ex. 12,
Affidavit of Maria Farmer [dkt. no. 1-12]; Ex. 14, Affidavit of
Sarah Ransome [dkt. no. 1-14] <u>with</u> Am. Compl. ¶¶ 62-64, 72-74).
The quoted testimony from Mr. Alessi (<u>id.</u> ¶ 60) is publicly
available.  This is unlike the situation in <u>Errant Gene</u>
(continued on following page)

To the extent these confidential <u>Maxwell</u> materials are relevant, Cooper & Kirk's disqualification might be warranted only if the materials were not discoverable.  See <u>Rumpf</u>, 1989 WL 101926, at *4; <u>see also</u> <u>Hu-Friedy Mfg. Co.</u>, 1999 WL 528545, at *3 (finding plaintiff had "no <u>unfair</u> advantage in this action due to its previous exposure to the confidential information" because "[a]ny reasonably competent attorney would routinely obtain it in discovery").  Mr. Dershowitz argues he cannot obtain these documents in discovery because the Court "has already denied Professor Dershowitz's efforts to obtain discovery of the materials in Cooper & Kirk's possession," (Mot. at 8), and that "under the Court's prior rulings Professor Dershowitz will never be allowed to see" these documents, (Mot. at 14).  But the Court's prior orders only addressed whether Mr. Dershowitz had made a showing of extraordinary circumstance or compelling need required to modify unilaterally a protective order in another litigation--and obtain that case's confidential discovery record wholesale--where parties and non-parties had reasonably relied on the protective order in handing over their

---

(continued from previous page)
<u>Therapeutics, LLC v. Sloan-Kettering Institute for Cancer</u>
<u>Research</u>, 2017 WL 2418742 (S.D.N.Y. June 5, 2017), to which Mr.
Dershowitz cites, where plaintiff's counsel learned the identify
of a third party solely through confidential discovery materials
and initiated a state court lawsuit against that third party
using information that was "designated ['attorneys' eyes only']
and Confidential."  <u>Id.</u> at *2.

documents and testimony.  (Order, dated July 1, 2020 [dkt. no. 144], at 12 ("Had the parties producing discovery in <u>Maxwell</u> under the auspices of the protective order anticipated that their information could eventually be turned over to make litigation of a related, but entirely separate, case more convenient, they may have never produced information in the first place."); <u>see also</u> Order, dated Sept. 9, 2020 [dkt. no. 174], at 5.)

Although the Court found that Mr. Dershowitz's proffered justification--principally, to avoid duplicative discovery--was insufficient to modify the protective order, it did not foreclose Mr. Dershowitz's ability to obtain discovery from third parties through other means.  As Ms. Giuffre points out, the materials Mr. Dershowitz seeks are discoverable by definition; indeed, they <u>are</u> the <u>Maxwell</u> discovery record.  Mr. Dershowitz hypothesizes that the Court might not agree that the discovery demands he ultimately serves on third parties will be sufficiently narrow.  (Mot. at 13 ("[T]here is no reasonable basis to presume the Court would require any of these non-parties to comply with Professor Dershowitz's discovery requests seeking the same information they produced in <u>Maxwell</u>.[14]  Indeed,

---

[14] Rather than serving such a hasty (and possibly overbroad) discovery demand, Mr. Dershowitz could consider crafting requests for third parties that are appropriate for <u>this</u> case, rather than the <u>Maxwell</u> case.

to date . . . the Court has charted a narrow scope of discovery
. . . .").   But "'[m]ere speculation' regarding the reasons for
supporting disqualification"-- that the Court may in the future
not fully agree with the scope of Mr. Dershowitz's discovery
requests when he makes them--"is insufficient" to disqualify
counsel.  Zappin v. Comfort, No. 18 CIV. 1693, 2019 WL 409831,
at *2 (S.D.N.Y. Feb. 1, 2019) (citations omitted).  As of now,
those materials remain presumably discoverable, and,
accordingly, Cooper & Kirk's prior access of them does not
warrant disqualification.  See DeVittorio, 2007 WL 4372872, at
*10.

     Ms. Giuffre likewise is unable to rely on the confidential
Maxwell discovery that Mr. Dershowitz submits confers upon her
an unfair advantage.  Like Mr. Dershowitz, in this litigation
she may rely upon any non-confidential Maxwell discovery,
(Order, dated, Aug. 4, 2020 [dkt. no. 154], at 3), and any
confidential Maxwell discovery that references Mr. Dershowitz
(subject to a limited exception), (Order, dated Sept. 9, 2020
[dkt. no. 174], at 7).  Moreover, like Mr. Dershowitz, she may
rely on any of her own documents produced in Maxwell, whether
designated confidential in that litigation or not. (Agreed
Protective Order, dated Dec. 21, 2020 [dkt. no. 227], at 2-3.)
And to the extent Ms. Giuffre requires any other discovery from

third parties, she, like Mr. Dershowitz, can serve those third parties with discovery requests, as in any other litigation.

Mr. Dershowitz's arguments about why he should not have to obtain discovery from third parties--and that the Court should modify the protective order and give the balance of the <u>Maxwell</u> confidential discovery to him wholesale--are unavailing.  He insists that he should not need to seek discovery from third parties where a party to the case possesses the discovery, but Ms. Giuffre cannot use the confidential <u>Maxwell</u> materials he demands, either.  Indeed, Ms. Giuffre must also seek this discovery from the third parties who produced it and has indicated her intention to do so.  (<u>See</u> Letter from Charles J. Cooper, dated July 7, 2020 [dkt. no. 148], at 2 n.2 ("We have refrained from using confidential material in this manner and announced our intention to obtain confidential material anew in discovery so that we could use it in this action.").)  Moreover, unlike in <u>Soto v. Castlerock Farming and Transport, Inc.</u>, 282 F.R.D. 492 (E.D. Cal. 2012), these discovery materials were only in Ms. Giuffre's possession subject to a protective order that barred her from using them in any litigation other than <u>Maxwell</u>. As here, courts have routinely enforced protective orders and prohibited parties from using confidential discovery in other litigations when the discovery is obtained pursuant to a protective order forbidding such use. <u>See e.g.</u>, <u>Nielsen Co.</u>

(U.S.), LLC v. Success Sys., Inc., 112 F. Supp. 3d 83, 122
(S.D.N.Y. 2015).  Mr. Dershowitz's position that he is entitled
to all confidential Maxwell materials simply because Ms. Giuffre
possessed them would render the protective order completely
meaningless.

Moreover, Mr. Dershowitz doubts that he "could somehow
divine a list of non-parties who provided discovery in Maxwell,"
(Mot. at 13), and "cannot pursue discovery from persons whose
very identities have been withheld from him."  (Reply at 5.)
Because Mr. Dershowitz asserts that he can prove the truth of
his assertions that Ms. Giuffre extorted "wealthy Epstein
associates," (id. at 3), and has a "documented history of lying
about prominent people," (id. at 4 (emphasis added)), it would
seem that he should know the non-parties from whom he should
seek discovery on these issues.  The Court has already
considered his demand to modify the protective order and provide
him with a list of all deponents, subpoena recipients, and
affiants in Maxwell and denied his request as overbroad. (Order,
dated Sept. 9, 2020 [dkt. no. 174].)  That Ms. Giuffre and her
counsel may now have a "head start" because of Ms. Giuffre's
involvement in the Maxwell litigation, including remembering
non-parties who were involved in the litigation, may be an
advantage, but it is not an "unfair" one warranting her

attorney's disqualification.[15]  <u>Tradewinds</u>, 2009 WL 1321695, at
*8.

Mr. Dershowitz also makes much of this supposed strategic
advantage conferred upon Ms. Giuffre because of Cooper & Kirk's
prior access to <u>Maxwell</u> discovery.  He argues that Cooper & Kirk
must be disqualified because "[e]ven if they cannot overtly use
this material" they "will nonetheless be operating with
knowledge of critical information."  (Mot. at 10-11.)  Mr.
Dershowitz cites <u>Ullrich v. Hearst Corp.</u>, 809 F. Supp. 229
(S.D.N.Y. 1992) in support of this argument, but that case seems
to counsel against disqualification here.[16]  In <u>Ulrich</u>, the Court

---

[15] Mr. Dershowitz contends that seeking discovery from third
parties would not obviate the need to have access now to all
discovery they provided in <u>Maxwell</u> on other grounds as well.
(Mot. at 13 n.7.)  As to deposition testimony, Mr. Dershowitz
argues that he will need access to the prior testimony of
witnesses to "prepare for their depositions" and "impeach their
testimony."  (<u>Id.</u>)  He may request relevant portions of those
deposition excerpts if and when he decides to depose any of
those third parties.  But his contention that he somehow needs
all confidential <u>Maxwell</u> discovery now to police future third-
party compliance with any subpoena he serves by allowing him to
"verify the completeness of their document productions" (<u>id.</u>)
provides no cognizable basis to modify the <u>Maxwell</u> protective
order.
[16] Mr. Dershowitz also cites <u>Matter of Beiny</u>, 517 N.Y.S.2d 474
(1987), as being "instructive" in its holding that suppression
of improperly obtained documents is not an adequate remedy, but
federal courts have regularly distinguished it on the bases of
the attorney's egregious conduct in that case and because it
applied state law standards for suppression of evidence and
disqualification. <u>See</u> <u>Carrion v. City of New York</u>, 2002 WL
31093620, at *4 (S.D.N.Y. Sept. 18, 2002) ("In . . . <u>Beiny</u>, the
conduct of the parties was considerably more troubling than
(continued on following page)

disqualified plaintiff's attorney, who had represented the
defendant in numerous prior lawsuits and previously had provided
the defendant general legal advice.  <u>Id.</u> at 238.  Although the
attorney had never advised the defendant, his former client, in
connection with the instant lawsuit, the Court held that his
extensive consultations with defendant during his prior
professional representation of defendant warranted
disqualification.  <u>Id.</u> at 235-36.  The Court recognized that
such knowledge obtained during the course of his prior
representation imbued the attorney with knowledge beyond
discrete litigated matters, including "knowing what to ask for
in discovery, which witnesses to seek to depose, what questions
to ask them, what lines of attack to abandon and what lines to
pursue, what settlements to accept and what offers to reject,
and innumerable other uses."  <u>Id.</u> at 236.

---

(continued from previous page)
Mosaku's conduct here . . . .  In <u>Beiny</u>, the court found that
petitioner made misrepresentations in order to obtain and use
privileged documents."); <u>Ann L. v. X Corp.</u>, 133 F.R.D. 433, 439
(W.D.N.Y. 1990) ("Although not bound by the standards of
disqualification in <u>Matter of Beiny</u> (Weinberg), even if
disqualification is a permissible remedy under Rule 26(c), it
should simply be noted that the record in this case contains no
evidence of the egregious and calculated misconduct present in
that case."); <u>Balmer v. 1716 Realty LLC</u>, 2006 WL 898064, at *2
(E.D.N.Y. Apr. 3, 2006) ("Unlike <u>Beiny</u>, the failure to give
notice was due to mistake rather than deception on the part of
counsel in an attempt to gain a tactical advantage.").

These strategic advantages gained from close consultation
on legal matters with a client are not unique to Cooper & Kirk.
As discussed supra, likely they would accrue to any law firm
that represents Ms. Giuffre in her lawsuit against Mr.
Dershowitz, given her involvement as the Plaintiff in Maxwell,
her intrinsic knowledge of the details of her own personal life
and the facts as they relate to her allegations against Mr.
Dershowitz and Ms. Maxwell, and the personal nature of this
litigation.  This is the strategic benefit afforded to the
plaintiff in many civil cases.  But like any defendant, Mr.
Dershowitz can seek to depose Ms. Giuffre as a fact witness and
deploy other discovery tools and advocacy to gain strategic
footing.  Disqualifying Ms. Giuffre's counsel would do little,
if anything, to correct the imbalance that Mr. Dershowitz
identifies.

                      *    *    *

What Mr. Dershowitz wants from his motion to disqualify is
apparent: for the Court to reconsider its denial of his multiple
demands to modify the Maxwell protective order.  He does little
to hide the ball.  (See e.g., Reply at 2 ("Professor
Dershowitz's preferred solution remains that he be provided with
equal (or roughly equal) access to the Maxwell discovery
materials in Cooper & Kirk's possession.").)  The Court of
Appeals routinely has cautioned that "disqualification motions

                             26

are often interposed for tactical reasons," see e.g., Nyquist,
590 F.2d at 1246, and, accordingly, "[m]otions to disqualify
opposing counsel are viewed with disfavor in this Circuit."
Bennett Silvershein Assocs. v. Furman, 776 F. Supp. 800, 802
(S.D.N.Y. 1991).  Although it may be more convenient for Mr.
Dershowitz (and Ms. Giuffre) to make use of all confidential
Maxwell discovery through modification of the protective order,
the Court already has found that such an indiscriminate approach
is not warranted under the circumstances because it would
eviscerate the safeguards the protective order promised to third
parties (Order, dated July 1, 2020 [dkt. no. 144].)  Although it
may take more effort, Mr. Dershowitz has at his disposal the
Federal Rules of Civil Procedure, like any defendant, to track
down from both Ms. Giuffre and third parties evidence relevant
to his claims or defenses.  Disqualification levies a "serious
impact . . . on the client's right to select counsel of his
choice."  Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d
Cir. 1981).  Ms. Giuffre's head start is insufficient reason to
impose upon this right again by disqualifying her pro bono
counsel for the second time, nearly two years into this
litigation.

IV.   <u>Conclusion</u>

For the reasons described above, Defendant's motion to disqualify the law firm of Cooper & Kirk (dkt. no. 203) is denied.  The Clerk of the Court shall close the open motion.

**SO ORDERED.**

Dated:    New York, New York
          January 28, 2021

_____
LORETTA A. PRESKA
Senior United States District Judge

28