

Christian G. Kiely
E-mail: ckiely@toddweld.com

March 3, 2021

**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *Giuffre v. Dershowitz*, Case No.: 19-cv-03377-LAP

Dear Judge Preska:

      Defendant Alan Dershowitz ("Prof. Dershowitz") hereby responds to Plaintiff Virginia Giuffre's letter of February 26, 2021 requesting a pre-motion conference with respect to issues relating to Prof. Dershowitz's Harvard University email account (ECF No. 242).

      Plaintiff's request for the Court to intervene in negotiations relating to the production of Prof. Dershowitz's Harvard email is both premature and based on a misleading and incomplete recitation of the relevant facts.  Since the time Plaintiff filed her letter on Friday, February 26, Harvard's counsel has: i) shared the results of the parties' latest search term proposals, which have finally returned a reasonable volume of results which Prof. Dershowitz is prepared to accept; and ii) notified the parties that it has agreed in principle to Prof. Dershowitz's proposal that it forgo an internal review of a substantial (but yet unknown) number of emails sent to and from certain individuals not associated with Harvard, thereby significantly reducing the cost of Harvard's internal review.  *See* **Ex. A**.  These developments moot in large part the disputes related to the search protocol which Plaintiff has raised in her letter.  Indeed, last night, Plaintiff's counsel wrote in response to the latest search results from Harvard: "We think this last round of revisions has been very productive and hope it brings us close to an agreement on the protocol."  *Id.*  Accordingly, Prof. Dershowitz submits that the Court should allow the parties and Harvard an opportunity to resolve outstanding details and conclude their agreement.

      The only substantial issues which remain for Court to resolve are: i) Plaintiff's attempt to use a routine dispute about email search terms as a basis to prematurely move *in limine* to exclude at trial relevant evidence of Plaintiff's lies about other Epstein associates (in relation to which Plaintiff has sued Prof. Dershowitz of defamation); and ii) Plaintiff's far-fetched claim that Prof. Dershowitz, a tenured (now emeritus) professor at the Harvard Law School, is not entitled to use his Harvard email address for privileged communications.  Both arguments are meritless and should be rejected by the Court.

      Before addressing the specific remaining disputes between the parties, however, it is necessary to respond to Plaintiff's unfounded accusations that Prof. Dershowitz and his counsel have somehow been dilatory in the collection of his Harvard email.  As Prof. Dershowitz has previously informed the Court, his efforts at voluntary collection of his Harvard email were stymied when Harvard would not even agree to collect his email, or apply search terms to determine the volume of email that might have to be reviewed, without Prof. Dershowitz agreeing up front, on a carte blanche basis, to pay for all costs associated with Harvard's internal review.  *See* ECF No. 190.  Prof. Dershowitz could not obligate himself to pay for costs which could not even be estimated prior to the search terms being run.



Once subpoenaed by Plaintiff, Harvard dropped its insistence that an agreement to pay the costs of its review be put in place prior to it providing search term reports. Application of the approximately 235 separate search terms specified in Plaintiff's subpoena returned a staggering volume of between 128,000 and 150,000 documents.[1] *See* **Ex. B**. Since the time that Harvard provided those initial results in November, the parties have been continually engaged with Harvard's counsel in an effort to refine the search terms to target actually relevant information. After many iterations, Harvard just yesterday provided the parties with the results of the most recent searches, which returned 16,802 documents based on Plaintiff's most recent set of proposed terms, and 14,418 documents based on Prof. Dershowitz's most recent set of proposed terms. *See* **Ex. A**. The parties can surely bridge this modest remaining gap without the Court's intervention.

**Cost of Harvard's Review:**

Prof. Dershowitz submits that any dispute regarding who should reimburse Harvard for the costs of its internal review is premature, and potentially moot, in light of Harvard's agreement yesterday to forgo an internal review of what may turn out to be the vast majority of documents in the collection. The email addresses that will likely be excluded from Harvard's internal review include most if not all of the addresses included in Appendix A to Plaintiff's letter. There is thus no need for the Court to address this issue now, much less order Prof. Dershowitz to immediately pay Harvard for the costs associated with an internal review of the documents responsive to Appendix A. Nonetheless, if the Court is inclined to resolve this dispute now, it should hold Plaintiff responsible for paying any costs for which Harvard demands to be reimbursed. Plaintiff has sought the production of email from Harvard in response to a subpoena which Plaintiff served on Harvard. As such, Rule 45(d)(1) dictates that it is Plaintiff's – not Prof. Dershowitz's – responsibility, as the "party . . . responsible for issuing and serving a subpoena[,]" to "take reasonable steps to avoid imposing undue burden or expense" on Harvard. This obligation includes an obligation to be reasonable about the scope of discovery being requested from Harvard and, if appropriate, to bear some or all of the costs associated with compliance. *See, e.g., US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *4 (S.D.N.Y. 2012); *Prescient Acquisition Group, Inc. v. MJ Publishing Trust*, 2006 WL 2996645, at *2 (S.D.N.Y. 2006).[2]

**Search Terms Relating to Individuals Accused by Giuffre:**

As set forth above, the disputes concerning the search protocol, including search terms relating to Leslie Wexner, Prince Andrew, and other associates of Jeffrey Epstein whom Plaintiff has accused of misconduct, have in large part been resolved since the filing of Plaintiff's letter. Still, because it is not clear from Plaintiff's letter whether her request to file a *motion in limine* to exclude evidence concerning

---

[1] Two separate searches were run: a plain text search for terms appearing anywhere in an email or attachment, which returned 128,000 results; and a metadata search of to/from/cc/bcc fields, which returned 22,000 results. It is likely that some overlap exists between the two searches, although the extent of the overlap is unknown based on the way in which the searches were run.

[2] Rule 45(e)(1)(D) provides that "the person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost."



Hon. Loretta A. Preska
March 3, 2021
Page 3 of 5

her claims about these individuals is truly only an alternative request, Prof. Dershowitz briefly addresses that argument.

It is simply false that Prof. Dershowitz refuses to include search terms relating to these individuals. Rather, as with all of Plaintiff's original set of 235 search terms, Prof. Dershowitz has appropriately and painstakingly sought to refine these terms, through the use of qualifiers, date limiters, and the like, in a manner that is reasonably calculated to return actually relevant information and exclude irrelevant information. A full set of the terms Prof. Dershowitz has agreed to search, including terms relating to other men accused by Giuffre, is attached hereto as **Ex. C**.[3] To the extent Plaintiff's position is that she is entitled to any and all non-privileged documents located in fifteen years' worth of Prof. Dershowitz's email which may technically be responsive to one or more of their 97 separate document requests, irrespective of their actual relevance or the burden associated with producing all such documents, that position is entirely contrary to the Federal Rules of Civil Procedure, which teach a guiding principle of "proportionality." Prof. Dershowitz's insistence on proportionality, and use of appropriately-tailored search terms to achieve it, is no basis to exclude his evidence concerning Plaintiff's lies about other Epstein associates, particularly where Plaintiff has sued Prof. Dershowitz for defamation over this claim. Regardless, the point is now moot since agreement on terms is imminent.

**Prof. Dershowitz's Expectation of Privacy in his Harvard Email:**

Finally, Plaintiff advances the remarkable position that Prof. Dershowitz, a tenured professor (now emeritus) at Harvard Law School, lacks a sufficient expectation of privacy in his Harvard-provided email for emails exchanged with counsel or clients to be legally privileged. This argument is without merit and should be summarily rejected.

Consistent with widely accepted practice, Prof. Dershowitz uses his Harvard Law School office and email for legal work and counseling unrelated to his teaching. No one from Harvard ever questioned this practice or suggested to Prof. Dershowitz that emails sent or received by his Harvard email account may not be legally privileged because the email was not private. To the contrary, Harvard, through its Office of the General Counsel, previously expressly acknowledged and agreed that "Prof. Dershowitz has a substantial legal interest in protecting confidential and sensitive information contained in his emails and other electronically stored information maintained by Harvard from inappropriate disclosure . . . , *including information that is protected by the attorney-client privilege, the work product doctrine and/or other privileges or protections*." See **Ex. D** at 3. (emphasis added).

Moreover, Harvard's Policy on Access to Electronic Information (the "Policy"), *see* **Ex. E**, makes clear that Harvard users, and particularly tenured faculty, have a strong expectation of privacy in their Harvard email and other electronically stored information. Harvard "does not routinely monitor the content of information transmitted through or stored in University information systems." Access to faculty email accounts and other electronically stored information may be made only in extremely limited circumstances, where there is a "legitimate and important University purpose," following authorization by the Dean of the Faculty or the Office of the General Counsel, and upon notice to the

---

[3] Prof. Dershowitz discovered that two terms were inadvertently omitted from this list: "Andrew w/25 (Tramp OR (Epstein w/3 Jeff*) OR Maxwell OR JE)" and "Jean* w/3 Brunel."



Hon. Loretta A. Preska
March 3, 2021
Page 4 of 5

user. The need for access is to be weighed against "the possible effect of access on University values such as academic freedom and internal trust and confidence." Any access which is ultimately authorized must be limited to that "user electronic information that is related to the University's purpose in obtaining access." Finally, the Policy and access thereunder is subject to committee oversight to guard against abuse.

In the face of both Harvard's express acknowledgement and the language of its Policy, it is untenable for Plaintiff to contend that Prof. Dershowitz lacked a sufficient expectation of privacy in his Harvard email for emails sent to or from that account to be considered "confidential" for purposes of the attorney-client privilege and other legal privileges. "[T]he question of privilege comes down to whether the intent to communicate in confidence was objectively reasonable." *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 258 (S.D.N.Y. 2005). "Given the great variety of work environments, ... the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987). Harvard's Policy stands in stark contrast to the terms of use of many employer-provided emails systems, which permit monitoring and access by the employer at any time and for any reason. *See, e.g., Long v. Marubeni America Corp.*, 2006 WL 2998671, at *3 (S.D.N.Y. 2006) (finding no reasonable expectation of privacy in employer-provided email where handbook provided that employees "have no right of personal privacy in any matter stored in, created, received, or sent over the e-mail, voice mail, word processing and /or internet systems"); *Scott v. Beth Israel Medical Center Inc.*, 847 N.Y.S.2d 436, 441 (Sup Ct. Oct. 17, 2007) (similar). That Harvard reserved for itself the right, under certain limited circumstances, to access Prof. Dershowitz's email, does not defeat his reasonable expectation of privacy. *See, e.g., Convertino v. U.S. Dept. of Justice,* 674 F. Supp. 2d 97, 110 (D.D.C. 2009) (emails that DOJ employee sent to personal attorney from DOJ email remained privileged because "although the DOJ does have access to personal emails sent from his account," employee was "unaware that [DOJ] would be regularly accessing and saving emails sent from his account" and thus had reasonable expectation of privacy); *Leventhal v. Knapek*, 266 F.3d 64, 74 (2d Cir. 2001) (expectation of privacy reasonable absent evidence that the employee was notified "he should have no expectation of privacy in the contents of his office computer"); *Haynes v. Office of the AG,* 298 F. Supp. 2d 1154, 1161-62 (D. Kan. 2003) (expectation of privacy reasonable where "employees [were] allowed to use their work computers for private communications"). Nothing in Harvard's Policy can be interpreted to defeat Prof. Dershowitz's reasonable expectation of privacy in his email, much less to countenance a deliberate invasion by Harvard (or Plaintiff) of his attorney-client privileged communications.[4]

The Court should summarily reject Plaintiff's effort to improperly invade his attorney-client privilege. If the Court is not inclined to do so, it should permit full briefing on this matter. Finally, in no event should Harvard be ordered to produce any privileged communications to Plaintiff without an opportunity for Prof. Dershowitz to notify potentially hundreds of his own clients who would be impacted by such a ruling and would need an opportunity to intervene to protect their own legal privileges in their communications with Prof. Dershowitz.

---

[4] It is worth noting that under Plaintiff's position, emails between her and her legal team which include Prof. Paul Cassell, who communicates using his University of Utah email address, are non-privileged. In fact, given that the University of Utah is a public institution subject to public records laws, Prof. Cassell's expectation of privacy in his university email is considerably less than Prof. Dershowitz's.



Hon. Loretta A. Preska
March 3, 2021
Page 5 of 5

        Respectfully submitted,

        _/s/ Christian G. Kiely_
        Christian G. Kiely

cc:     All counsel of record, via ECF

Enclosures: Exs. A-D