UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

       Plaintiff / Counterclaim Defendant,

  v.

ALAN DERSHOWITZ,

       Defendant / Counterclaim Plaintiff.

Case No. 19-cv-03377-LAP

**REDACTED**

**PROFESSOR ALAN DERSHOWITZ'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO COMPEL PRODUCTION OF CERTAIN ATTORNEY-CLIENT
COMMUNICATIONS ON THE BASIS OF WAIVER, OR, IN THE ALTERNATIVE,
REQUEST FOR *ZOLIN* EXAMINATION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................4

      I.      GIUFFRE WAIVED PRIVILEGE OVER COMMUNICATIONS
            WITH HER COUNSEL REGARDING THE DECISIONS TO
            ACCUSE PROFESSOR DERSHOWITZ AND LESLIE WEXNER
            BY PLACING THOSE COMMUNICATIONS DIRECTLY AT
            ISSUE IN THIS LAWSUIT......................................................................4

            A.   The Law Governing "At-Issue" Waivers of the Attorney-
                 Client Privilege .......................................................................4

            B.   At-Issue Waivers Do Not Require the Privilege Holder to
                 Affirmatively Rely on Attorney-Client Communications
                 for a Claim or Defense ...........................................................6

            C.   It Is Irrelevant That Professor Dershowitz Did Not Have
                 Access to the Sought-After Communications When He
                 Made the Allegedly Defamatory Statements .............................8

            D.   Giuffre's Deposition Testimony Concerning Her
                 Communications with Her Attorneys Further Supports
                 a Finding of Waiver .................................................................9

      II.     ALTERNATIVELY, THE COURT SHOULD CONDUCT A *ZOLIN*
            EXAMINATION TO DETERMINE WHETHER THE CRIME-
             FRAUD EXCEPTION NEGATES THE PRIVILEGE ...................................10

            A.   Law Governing the Crime-Fraud Exception to the
                 Attorney-Client Privilege.......................................................10

            B.   Standards Governing *In Camera* Inspection Pursuant
                 to *United States v. Zolin*.......................................................11

            C.   Professor Dershowitz's Proffered Evidence Amply
                 Satisfies the Standard to Obtain a *Zolin* Examination
                 of Plaintiff's Communications with Her Then-Counsel
                 Regarding Her Original Accusations Against Professor
                 Dershowitz and Leslie Wexner .................................................12

CONCLUSION....................................................................................................................15

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                                    <u>**Page**</u>

*A.I.A. Holdings, S.A. v. Lehman Bros. Inc.*,
1999 WL 61442 (S.D.N.Y. Feb. 3, 1999) ............................................................................11, 14

*Adam Friedman Assocs. LLC v. Media G3, Inc.*,
2012 WL 1563942 (S.D.N.Y. May 1, 2012) ..................................................................5

*Amusement Industry, Inc. v. Stern*,
293 F.R.D. 420 (S.D.N.Y. 2013) ..................................................................................11

*Bowne v. AmBase Corporation*,
150 F.R.D. 465 (S.D.N.Y. 1993) ....................................................................................6

*Gardner v. Major Auto. Companies, Inc.*,
2014 WL 1330961 (E.D.N.Y. Mar. 31, 2014) ................................................................5

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993) ............................................................................................8

*Horn v. City of New Haven*,
2019 WL 3997095 (D. Conn. Aug. 23, 2019) ................................................................5

*In re County of Erie*,
546 F.3d 222 (2d Cir. 2008)................................................................................1, 4, 6, 7, 8

*In re Grand Jury Proceedings*,
219 F.3d 175 (2d Cir. 2000)....................................................................................5, 11

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
731 F.2d 1032 (2d Cir. 1984)..................................................................10, 11, 14, 15

*In re John Doe, Inc.*,
13 F.3d 633 (2d Cir. 1994)............................................................................................10

*Jane Doe #1 & Jane Doe #2 v. United States*,
No. 08-80736-CIV-Marra (S.D. Fla.) ......................................................................2, 12

*John Doe Co. v. United States*,
350 F.3d 299 (2d Cir. 2003)....................................................................................5, 10

*Madanes v. Madanes*,
199 F.R.D. 135 (S.D.N.Y. 2001) ..................................................................................11

*Martin v. Hearst Corp.*,
777 F.3d 546 (2d Cir. 2015)...........................................................................2

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
2012 WL 2568972 (S.D.N.Y. July 3, 2012) ...................................................8

*McGowan v. JPMorgan Chase Bank, N.A.*,
2020 WL 1974109 (S.D.N.Y. Apr. 24, 2020)..................................................7

*NYU Winthrop Hosp. v. Microbion Corp.*,
405 F. Supp. 3d 387 (E.D.N.Y. 2019) ............................................................8

*Pall Corp. v. Cuno, Inc.*,
268 F.R.D. 167 (E.D.N.Y. 2010) .................................................................5, 9

*Parneros v. Barnes & Noble, Inc.*,
332 F.R.D. 482 (S.D.N.Y. 2019) ....................................................................8

*Sedco Int'l S.A. v. Cory*,
683 F.2d 1201 (8th Cir. 1982) .....................................................................4, 7

*Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*,
864 F.3d 236 (2d Cir. 2017)..........................................................................15

*United States v. Hodge and Zweig*,
548 F.2d 1347 (9th Cir. 1977) ......................................................................11

*United States v. Jacobs*,
117 F.3d 82 (2d Cir. 1997)........................................................................2, 11

*United States v. McDonald*,
2002 WL 31956106 (E.D.N.Y. May 9, 2002) ........................................11, 14

*United States v. Zolin*,
491 U.S. 554 (1989).............................................................................. *passim*

*Windsor Secs., LLC v. Arent Fox LLP*,
273 F. Supp. 3d 512 (S.D.N.Y. 2017)..............................................................4

## Other Authorities

Restatement (Second) of Torts § 581A cmt. h (1977) ....................................8

## <u>INTRODUCTION</u>

Defendant and Counterclaim Plaintiff Alan Dershowitz ("Professor Dershowitz") respectfully submits this memorandum of law in support of his Motion to Compel the Production of Certain Attorney-Client Communications on the Basis of Waiver, or, in the Alternative, Request for *Zolin* Examination.

Professor Dershowitz seeks a ruling that Plaintiff Virginia Giuffre ("Plaintiff" or "Giuffre") waived privilege over communications with her lawyers concerning her private assertion of sexual assault claims against Leslie Wexner and simultaneous, public assertion of similar accusations against Professor Dershowitz in late 2014 and early 2015, by putting those communications directly at issue in this lawsuit. The Court is well aware by now that the "central assertion" upon which Giuffre is suing Professor Dershowitz for defamation is his claim that "Plaintiff has committed perjury, and that in December 2014, Plaintiff and her lawyers hatched a scheme to falsely accuse [him] of sex trafficking as part of a criminal attempt to extort a settlement from another party[,]" namely, Leslie Wexner. Amended Complaint ("Am. Compl."), ECF No. 117, at ¶ 14. As the Court has already acknowledged, by suing over this claim, "Giuffre made the truth of these statements (Dershowitz's ultimate defense on the merits), including the actions and motivations of at least one of [her] attorneys, a necessary – indeed essential – part of the Complaint." ECF No. 67 at 33. In other words, by suing over this claim, Giuffre put squarely at issue in this litigation the question whether she conspired with her lawyers to falsely accuse Professor Dershowitz as part of a plot to force a settlement from Leslie Wexner, and thus impliedly waived any privilege over her communications with her then-counsel concerning her accusations against Professor Dershowitz and Mr. Wexner. *See In re County of Erie*, 546 F.3d 222 (2d Cir. 2008). Professor Dershowitz is entitled to prove the truth

of this alleged defamation, and fairness – which is the touchstone of the waiver inquiry – dictates that Plaintiff's communications with her lawyers be disclosed to him in pursuit of that defense where she has elected to place her relationship with her attorneys at the center of her Amended Complaint.

In the alternative, Professor Dershowitz requests that the Court conduct an *in camera* inspection of the communications pursuant to *United States v. Zolin*, 491 U.S. 554 (1989), as there is a good faith basis to believe those communications were made in furtherance of a plot to extort Leslie Wexner which involved Giuffre making perjurious accusations against Professor Dershowitz and committing a fraud upon the court in *Jane Doe #1 & Jane Doe #2 v. United States*, No. 08-80736-CIV-Marra (S.D. Fla.) ("CVRA Action"), thus negating any privilege under the crime-fraud exception to the attorney-client privilege. *See United States v. Jacobs*, 117 F.3d 82 (2d Cir. 1997).

## BACKGROUND

Plaintiff filed her original complaint in this action on April 16, 2019 and amended her complaint on April 15, 2020. By her own description, the "central assertion" upon which Giuffre is suing Professor Dershowitz for defamation is his claim that "Plaintiff has committed perjury, and that in December 2014, Plaintiff and her lawyers hatched a scheme to falsely accuse [him] of sex trafficking as part of a criminal attempt to extort a settlement from another party[,]" namely, Leslie Wexner. Am. Compl., ECF No. 117, at ¶ 14. Given that "truth is an absolute defense to a defamation claim," *Martin v. Hearst Corp.*, 777 F.3d 546, 552 (2d Cir. 2015), the Court has already acknowledged that, by suing over this claim, "Giuffre made the truth of these statements (Dershowitz's ultimate defense on the merits), including the actions and motivations of at least

one of [her] attorneys, a necessary – indeed essential – part of the Complaint."  ECF No. 67 at 33.

In pursuit of his truth defense, Professor Dershowitz requested that Giuffre produce in discovery all documents concerning communications with her attorneys concerning Professor Dershowitz or Leslie Wexner.  As part of the meet and confer process, he subsequently narrowed that request to communications between Giuffre and her counsel at Boies Schiller Flexner LLP ("BSF"), Brad Edwards, Paul Cassell, and/or Stanley Pottinger which concern Professor Dershowitz or Mr. Wexner.  *See* **Exhibit A** to the Declaration of Christian G. Kiely ("Kiely Decl."), filed herewith.  Plaintiff has refused to produce any documents in response to this request on the basis of the attorney-client privilege and objected even to providing a privilege log of responsive documents.[1]  Professor Dershowitz now seeks a ruling that these documents are no

---

[1] Pursuant to L.R. 37.1, Professor Dershowitz hereby reproduces verbatim the requests for production at issue and Plaintiff's responses to the same:

**Request No. 17: All Documents concerning Communications with Your Attorneys concerning Dershowitz.**

**RESPONSE:** Plaintiff incorporates the General Objections as if set forth here. Plaintiff further objects to this Request on the grounds that it calls for the production of privileged documents irrelevant to this litigation.  Plaintiff objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action.  In accordance with Rule 34(b)(2)(C), Plaintiff states that she is withholding all responsive documents on the basis of the objections contained herein and objects to providing a privilege log due to the burdensome and harassing nature of this Request.

**Request No. 18: All Documents concerning Communications with Your Attorneys concerning Leslie Wexner.**

**RESPONSE:** Plaintiff incorporates the General Objections as if set forth here. Plaintiff further objects to this Request on the grounds that it calls for the production of privileged documents irrelevant to this litigation. Plaintiff objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action. In accordance with Rule 34(b)(2)(C), Plaintiff states that she is withholding all responsive

longer (or were never) privileged and an order compelling their production, either to him directly, or to the Court for an *in camera* inspection pursuant to *United States v. Zolin*.

Professor Dershowitz presumes the Court's familiarity with the general subject matter of this action and, in order to stay within page limitations, reserves discussion of particular facts relevant to his waiver and crime-fraud arguments to the argument sections below.

## ARGUMENT

I. **GIUFFRE WAIVED PRIVILEGE OVER COMMUNICATIONS WITH HER COUNSEL REGARDING THE DECISIONS TO ACCUSE PROFESSOR DERSHOWITZ AND LESLIE WEXNER BY PLACING THOSE COMMUNICATIONS DIRECTLY AT ISSUE IN THIS LAWSUIT.**

### A.  The Law Governing "At-Issue" Waivers of the Attorney-Client Privilege.

The Second Circuit recognizes implied waiver of the attorney-client privilege in three principal circumstances: "[i] when a client testifies concerning portions of the attorney-client communication, ... [ii] when a client places the attorney-client relationship directly at issue, ... and [iii] when a client asserts reliance on an attorney's advice as an element of a claim or defense...."  *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)).  Applicable here is the second such circumstance: the so-called "at-issue" waiver.  An at-issue waiver occurs "where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information."  *Windsor Secs., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 517-18 (S.D.N.Y. 2017) (internal

---

documents on the basis of the objections contained herein and objects to providing a privilege log due to the burdensome and harassing nature of this Request.

citation omitted).[2]  "In other words, a party may risk 'at issue' waiver by putting its own conduct at issue."  *Adam Friedman Assocs. LLC v. Media G3, Inc.*, No. 2012 WL 1563942, at *3-4 (S.D.N.Y. May 1, 2012).  "[T]he privilege may be waived if the privilege holder makes factual assertions the truth of which can only be assessed by examination of the privileged communication."  *Pall Corp. v. Cuno, Inc.*, 268 F.R.D. 167, 169 (E.D.N.Y. 2010).  Fairness is the touchstone of the inquiry.  *See John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003).  The Second Circuit has found that in certain cases, "it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions."  *Id.*  "Whether fairness requires disclosure ... is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted."  *In re Grand Jury Proceedings,* 219 F.3d 175, 183 (2d Cir. 2000).

Clearly, by suing Professor Dershowitz for defamation over his assertion that Plaintiff conspired with her lawyers to falsely accuse him as a part of a plot to extort Leslie Wexner, Giuffre has put directly at issue her communications with her lawyers surrounding the decision to accuse Professor Dershowitz in filings made by Giuffre in the CVRA Action, the decision to privately assert claims against Wexner, and the relationship between those two things.  "Underlying any determination that a privilege should be forfeited is the notion of unfairness[,]"

---

[2] Although the at-issue waiver doctrine is most commonly applied in legal malpractice actions, *see Gardner v. Major Auto. Companies, Inc.*, 2014 WL 1330961, at *4 (E.D.N.Y. Mar. 31, 2014), it is not limited to any particular context. *See, e.g., Horn v. City of New Haven*, 2019 WL 3997095, at *2 (D. Conn. Aug. 23, 2019) (habeas petition based on prosecutor's failure to disclose certain *Brady* material placed at issue and thus waived privilege over attorney-client communications and work product concerning whether defense counsel knew of undisclosed *Brady* material prior to trial); *Adam Friedman Assocs. LLC v. Media G3, Inc.*, 2012 WL 1563942, at *4 (S.D.N.Y. May 1, 2012) (motion to vacate grant of summary judgment which was based on prior counsel's alleged failure to inform client of need to oppose summary judgment waived privilege over communications with prior counsel regarding that issue).

and specifically, "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Erie*, 546 F.3d at 229; *see also Bowne v. AmBase Corporation*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993) (otherwise privileged communications put at issue where party "asserts a factual claim the truth of which can only be assessed by examination of a privileged communication"). Here, it would be fundamentally unfair – and inconsistent with the First Amendment freedoms underpinning the truth defense – for Giuffre to be allowed to sue Professor Dershowitz for allegedly falsely stating that she conspired with her lawyers to falsely accuse him, without allowing Professor Dershowitz access to communications with her lawyers which are "potentially capable of rebutting [this] assertion." *Erie*, 546 F.3d at 229. Indeed, it is hard to imagine a clearer example of a party "assert[ing] a factual claim the truth of which can only be assessed by examination of a privileged communication[,]" *Bowne*, 150 F.R.D. at 488, than Giuffre's claim in this lawsuit that she did not conspire with her attorneys and Professor Dershowitz's assertion that she did is false and defamatory.

**B. At-Issue Waivers Do Not Require the Privilege Holder to Affirmatively Rely on Attorney-Client Communications for a Claim or Defense.**

In her response to Professor Dershowitz's pre-motion letter, Giuffre argued that she has not placed privileged communications "at issue" in this litigation because she does not intend to affirmatively *rely* on those communications in support of a claim or defense, as in the case of an advice of counsel defense. But the Second Circuit has made clear that placing the attorney-client relationship at issue and asserting reliance upon attorney-client communications are two distinct subspecies of implied waiver, and that reliance must be shown only in the latter instance. *See Erie*, 546 F. 3d at 228. The Second Circuit in *Erie* identified three principal instances in which

an implied waiver of the attorney-client privilege may be found: "[i] when a client testifies concerning portions of the attorney-client communication, ... [ii] when a client places the attorney-client relationship directly at issue, ... and [iii] when a client asserts reliance on an attorney's advice as an element of a claim or defense...." *Erie*, 546 F.3d at 228 (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d at 1206). Contrary to Plaintiff's assertion which she supported with a blatantly misleading purported quotation from *Erie*, *see infra* n.3, the Second Circuit held that reliance is required *in the third instance only*, where the privilege holder has asserted an advice-of-counsel or good faith defense. The Second Circuit made this clear when it stated that "[t]he key to a finding of implied waiver *in the third instance* is some showing by the party arguing for a waiver that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense." *Id.* at 228 (emphasis supplied).[3] Although the Second Circuit's discussion in *Erie* focused on the reliance element, that is only because that case involved an advice of counsel defense rather than the distinct type of implied waiver – the "at issue" waiver – applicable here, as to which reliance is irrelevant.

The distinction between at-issue and reliance-type implied waiver recognized by the Second Circuit in *Erie* has been expressly reaffirmed by numerous courts. *See McGowan v. JPMorgan Chase Bank, N.A.,* 2020 WL 1974109, at *6 (S.D.N.Y. Apr. 24, 2020) ("The 'at issue' waiver doctrine has also found waiver even where there is no intention to rely on attorney-client communications"); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 501 (S.D.N.Y.

---

[3] Giuffre in her response to Professor Dershowitz's pre-motion letter (ECF No. 282) quoted this same sentence from *Erie* as follows: "The key to a finding of ['at issue' waiver] is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." ECF No. 282 at 1. Giuffre's use of brackets rewrites the sentence to make it appear that the court was referring to the second instance of implied waiver when in fact it was expressly referring only to the third instance. As explained above, under the Second Circuit's jurisprudence, "at-issue waiver" is *not* synonymous with "implied waiver" but rather is just one type of implied waiver.

2019) ("The waiver doctrine, however, does not apply exclusively to situations where a party explicitly relies — or states that it intends to rely — on attorney-client communications."); *NYU Winthrop Hosp. v. Microbion Corp.*, 405 F. Supp. 3d 387, 391 (E.D.N.Y. 2019) ("the court [in *Erie*] made clear that its holding applied to only one of the three means of implied waiver set forth above"); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *6 (S.D.N.Y. July 3, 2012) ("in *Erie*, the Second Circuit recognized a separate and independent basis for finding an at issue waiver which was not applicable in that case").  Giuffre in her pre-motion letter complained that these decisions "misapprehend" *Erie*, but did not explain how, much less address the *Erie* court's express limitation of its holding to the advice-of-counsel defense.

### C.  It Is Irrelevant That Professor Dershowitz Did Not Have Access to the Sought-After Communications When He Made the Allegedly Defamatory Statements.

Giuffre argued in her pre-motion letter that no unfairness would result to Professor Dershowitz if he is denied discovery into the attorney-client communications which she put at issue in this lawsuit because he did not have access to those communications when he accused Giuffre of conspiring with her lawyers to extort Leslie Wexner.  This is just the latest example of Giuffre's failure to comprehend Professor Dershowitz's absolute defense of truth and the implications of that defense to discovery in this case.  It is well-established that "it makes no difference [if] the true facts were unknown" at the time of publication, because "truth – not just known truth – is a complete defense to defamation."  *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) (Posner, J.) (citations omitted); *see* Restatement (Second) of Torts § 581A cmt. h (1977) ("[I]f the defamatory matter is true, it is immaterial that the person who publishes it believes it to be false; it is enough that it turns out to be true.").  Accordingly, the fact that Professor Dershowitz did not have access to Giuffre's attorney-client communications at

the time he made the subject statements does not render those communications undiscoverable in this action.  Giuffre in this defamation action – in which truth is an absolute defense – made "factual assertions the truth of which can only be assessed by examination of the privileged communication[s]."  *Pall Corp. v. Cuno, Inc.*, 268 F.R.D. at 169.  She must now face the consequences of that decision.

### D.  Giuffre's Deposition Testimony Concerning Her Communications with Her Attorneys Further Supports a Finding of Waiver.

Providing further support for a finding of waiver here is the fact that Giuffre partially disclosed the substance of communications with her then-counsel Edwards and Cassell in her 2016 deposition in the *Edwards v. Dershowitz* matter. ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███  That argument is now made even stronger in light of the allegations in Giuffre's Amended Complaint in this action that Professor Dershowitz's assertions concerning the involvement of her lawyers in making perjurious claims against him are false and defamatory.  Fairness dictates that Giuffre should not be allowed to deny the complicity of her lawyers in her false accusations against Professor Dershowitz without making a full disclosure of her communications with her counsel sufficient to allow Professor Dershowitz to test those claims.  To hold otherwise would be to permit Giuffre to make improper use of the attorney-client privilege as both "sword" and "shield."  *John Doe Co.*, 350 F.3d at 302.

## II. ALTERNATIVELY, THE COURT SHOULD CONDUCT A *ZOLIN* EXAMINATION TO DETERMINE WHETHER THE CRIME-FRAUD EXCEPTION NEGATES THE PRIVILEGE.

Giuffre's Amended Complaint in this case provides a textbook example of a litigant waiving privilege by placing the attorney-client relationship at issue, which is more than sufficient to strip any privilege over the sought-after communications. But should the Court conclude that no waiver has been made, then the Court should conduct an *in camera* examination pursuant to *United States v. Zolin*, 491 U.S. 554 (1989), to determine whether the crime-fraud exception applies to negate the privilege over Giuffre's communications with her then-counsel concerning her accusations against Professor Dershowitz and Mr. Wexner, because those communications were made in furtherance of the crimes of perjury and extortion conspiracy, and in furtherance of a fraud upon the court in the CVRA Action.

### A. Law Governing the Crime-Fraud Exception to the Attorney-Client Privilege.

"The crime-fraud exception strips the privilege from attorney-client communications that relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (internal citations and quotation marks omitted). "[T]he client need not have succeeded in his criminal or fraudulent scheme for the exception to apply." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984). "The rationale for the exclusion is closely tied to the policies underlying these privileges . . . .[A]dvice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection." *In re Grand Jury Subpoena*, 731 F.2d at 1038.

A party seeking to overcome the attorney-client privilege under the crime-fraud exception must satisfy a two-part showing: that is, "'that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications

in question were in furtherance of the fraud."' *Madanes v. Madanes*, 199 F.R.D. 135, 148 (S.D.N.Y. 2001) (quoting *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997)).   It is the client's intent that controls; communications made in furtherance of a crime or fraud "are properly excluded from the scope of the privilege even if the attorney is unaware that his advice is sought in furtherance of such an improper purpose."  *In re Grand Jury Subpoena*, 731 F.2d at 1038 (citing *United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977)); *see also Amusement Industry, Inc. v. Stern*, 293 F.R.D. 420, 426 (S.D.N.Y. 2013).

### B. Standards Governing *In Camera* Inspection Pursuant to *United States v. Zolin*.

"[A] lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege."  *United States v. Zolin*, 491 U.S. 554, 572 (1989).   In order to obtain an *in camera* review by a court to determine whether attorney-client communications come within the exception, a party need only make a prima facie showing, described by the Supreme Court as "a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  *Id.*  This is not a high standard.  It is lower than a preponderance of the evidence standard and is more akin to a probable cause standard.  *See, e.g.*, *In re Grand Jury*, 705 F.3d 133, 154 (3d Cir. 2012).  Importantly, a finding of probable cause in this context "is not negated by 'an innocent explanation which may be consistent with the facts alleged.'"  *United States v. McDonald*, 2002 WL 31956106, at *5 (E.D.N.Y. May 9, 2002) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros. Inc*., 1999 WL 61442, at *5 (S.D.N.Y. 1999)).

**C. Professor Dershowitz's Proffered Evidence Amply Satisfies the Standard to Obtain a *Zolin* Examination of Plaintiff's Communications with Her Then-Counsel Regarding Her Original Accusations Against Professor Dershowitz and Leslie Wexner.**

Evidence gathered through discovery to date more than satisfies the prima facie case that Giuffre's December 30, 2014 accusations against Professor Dershowitz in her joinder motion in the CVRA Action were false and a fraud upon the court; that Giuffre committed perjury when she repeated those same false accusations in a sworn declaration filed on January 21, 2015; and that Giuffre joined in an extortion plot when, at the exact same time she was publicly accusing Professor Dershowitz, she engaged her lawyers to pursue money damages from Leslie Wexner

███████████████████████████████████████████████████████████████

███████████████████████████████████████████. Specifically, that evidence reveals the following:

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████

ii. In September 2014, Giuffre entered into a contingent fee agreement with Brad Edwards, Paul Cassell, Stanley Pottinger, and Boies Schiller Flexner LLP ("BSF") to pursue money damages from Leslie Wexner.  Kiely Decl. **Ex. D**.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████

iv. Exactly one week later, on December 30, 2014, Plaintiff in a joinder motion filed by her then-lawyers in *Jane Doe #1 & Jane Doe #2 v. United States*, No. 08-80736-CIV-Marra (S.D. Fla.) ("CVRA Action"), publicly accused Professor Dershowitz of having sex with her when she was a minor and set off a media firestorm.  *See, generally,* Amended Counterclaim (ECF No. 127).  Plaintiff, through her same lawyers, later filed a sworn declaration in the CVRA Action repeating and expanding upon those same accusations. Kiely Decl. **Ex. F**.  Substantial evidence establishes the falsity (and indeed, impossibility) of Giuffre's claim against Professor Dershowitz, including: Giuffre's own manuscript, which includes accusations against numerous other prominent friends of Jeffrey Epstein but not Professor Dershowitz, *see* Kiely Decl. **Ex. G**; emails she exchanged with a journalist in which it was suggested to her

that Professor Dershowitz would be a good name to include in her book even though she did not have sex with him and there was "no proof" he did anything improper, Kiely Decl. **Ex. H**;[4] and Professor Dershowitz's own travel records, which, according to an investigation overseen by former FBI Director Louis Freeh, establish that he did not visit the locations where Giuffre claims to have had sex with him during the relevant time period; Kiely Decl. **Ex. I & Ex. J.**



vii. Giuffre's best friend, Rebecca Boylan, told Professor Dershowitz in a consensually recorded telephone call that: Giuffre never before mentioned him as someone she had sex with; her lawyers pressured her to name him; and Giuffre intended to sue Leslie Wexner for half his net worth. *See* Kiely Decl. **Ex. L**.

This evidence is more than sufficient to make out a prima facie case for application of the crime-fraud exception, on the basis that Giuffre used her then-counsel to commit a fraud upon the Court and perjury in the CVRA Action, and simultaneously undertook a plot to make a false claim against Leslie Wexner as part of a plan to extort millions from him.

Giuffre in her pre-motion letter did not address, much less dispute, the legal standard governing invocation of the crime-fraud exception. Instead, Giuffre offered a series of alternative inferences which she contends may be drawn from the evidence Professor Dershowitz cites in support of his invocation of the crime-fraud exception. Implausible as those inferences



may be, the Court at this stage is not being asked to make any conclusive determinations of fact but merely to assess, under essentially a probable cause standard, whether there exists "a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Zolin*, 491 U.S. at 572.   A finding of probable cause in this context "is not negated by 'an innocent explanation which may be consistent with the facts alleged.'" *United States v. McDonald*, 2002 WL 31956106, at *5 (E.D.N.Y. May 9, 2002) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros. Inc.*, 1999 WL 61442, at *5 (S.D.N.Y. 1999)); *see also In re Grand Jury*, 731 F.2d at 1039 (concluding that whether stated in terms of "probable cause" or a "prima facie showing," the fraudulent objective need not be established definitively).   The evidence cited by Professor Dershowitz more than satisfies this relatively low standard and none of Giuffre's alternative inferences change this reality.

Giuffre erroneously imparts talismanic significance to the testimony of Wexner's lawyer, John Zeiger, that no monetary demand was ever made of Wexner, as if that testimony somehow both disposes of the question of whether an extortion plot ever existed and forecloses any further discovery into the same.   It does neither.   There is clear evidence of an extortion plot here where

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████   Indeed,

Giuffre had signed a contingent fee agreement with her counsel specifying that they were retained to seek money damages from Wexner.

If it is in fact true that Giuffre never made any monetary demand and Wexner never made

any payment (matters not necessarily within Zeiger's personal knowledge), that would establish

at most that there was no completed crime of extortion.  It does not mean that there did not at one

time exist a conspiracy or plot to extort Wexner that was ultimately abandoned.  Of course,

"[t]he client need not have succeeded in his criminal or fraudulent scheme for the [crime-fraud]

exception to apply."  *In re Grand Jury*, 731 F.2d at 1039.[5]  And regardless, Giuffre's submission

of a perjurious declaration in the CVRA Action provides an independent basis for application of

the crime-fraud exception.

## <u>CONCLUSION</u>

For the foregoing reasons, Professor Dershowitz respectfully requests that the Court: i)

rule that Giuffre has waived any privilege over communications with her then-counsel

concerning her accusations against Professor Dershowitz made in the CVRA Action, the

decision to simultaneously assert claims against Wexner (privately), and the relationship between

those two decisions; and ii) order the production of all such communications.  In the alternative,

Professor Dershowitz requests the Court order those same communications produced to the

Court *in camera* for an examination pursuant to *United States v. Zolin* to determine whether the

privilege has been negated by the crime-fraud exception.

---

[5] Nor will Professor Dershowitz be required to prove at trial that all the elements of extortion, or
attempted extortion, or extortion conspiracy are necessarily established in the way the
government would need to prove at a criminal trial.  What matters is whether Professor
Dershowitz's assertions of extortionate conduct are "substantially true," or in other words,
whether the "gist" of Professor Dershowitz's statements was accurate.  *See Tannerite Sports,
LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 242-
43 (2d Cir. 2017).

Respectfully submitted,

ALAN DERSHOWITZ,

By his attorneys,


/s/ Howard M. Cooper
Howard M. Cooper (MA BBO # 543842) *(pro hac vice)*
Christian G. Kiely (MA BBO # 684308) *(pro hac vice)*
Kristine C. Oren (MA BBO # 705730) *(pro hac vice)*
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA  02110
T: 617-720-2626
hcooper@toddweld.com
ckiely@toddweld.com
koren@toddweld.com

Arthur L. Aidala (S.D.N.Y. Bar No. ALA-0059)
Imran H. Ansari (S.D.N.Y. Bar No. IHA-1978)
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, NY  10036
T: 212-486-0011
iansari@aidalalaw.com
aidalaesq@aidalalaw.com

Dated: May 4, 2021


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Court's electronic filing system, and served to all counsel of record on May 4, 2021.

/s/ Christian G. Kiely
Christian G. Kiely

16