

Christian G. Kiely
ckiely@toddweld.com

**REDACTED VERSION**  December 13, 2021
**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *Giuffre v. Dershowitz*, Case No.: 19-cv-03377-LAP
             Response to Plaintiff's Request for Pre-Motion Discovery Conference (ECF No. 373)

Dear Judge Preska:

      Defendant Alan Dershowitz ("Professor Dershowitz") hereby responds to Plaintiff's letter request for a pre-motion conference with respect to certain alleged discovery issues (ECF No. 373). Ever since this Court conditioned Prof. Dershowitz's ability to take Plaintiff's deposition on the "substantial completion" of his own document productions, Plaintiff has made every effort to prolong document discovery through all means possible in an attempt to put off her deposition indefinitely. In doing so, Plaintiff has continued to exploit the inherent asymmetry of discovery which has defined this case, with Plaintiff having produced a little over 4,000 documents compared to Prof. Dershowitz's over 18,000 documents. Plaintiff now seeks to drag document discovery out even further by requiring Prof. Dershowitz to engage in a fishing expedition, reviewing an even broader universe of emails, including *any* email which includes *any* reference to Jeffrey Epstein whatsoever, without more, and by challenging Prof. Dershowitz's privilege assertions over swaths of presumptively privileged emails exchanged with his longtime client Jeffrey Epstein and Mr. Epstein's other counsel.

      The Court should deny Plaintiff's motion in all its respects and order Plaintiff to submit to a deposition in the month of January. It is extraordinary that two and a half years into this case Prof. Dershowitz has been prevented from taking Plaintiff's deposition. While Prof. Dershowitz disagrees with the Protective Order recently entered by the Court and the other limits the Court has imposed on his ability to take discovery central to his defenses, it is critical that the Court impose parallel limitations on the scope of Plaintiff's discovery initiatives consistent with what the Court views as the central issue in the case, whether Prof. Dershowitz had sexual relations with Plaintiff. Prof. Dershowitz has been put to a tremendous burden in responding to discovery in the case. His counsel has devoted thousands of hours to reviewing over 80,000 emails and attachments for responsiveness and privilege. At the same time, Prof. Dershowitz's own discovery initiatives have largely been rejected by the Court. The Court should not amplify this asymmetry by requiring Prof. Dershowitz to review even more emails with such low probable relevance, or by entertaining Plaintiff's meritless privilege challenges.

### I. Prof. Dershowitz's Privilege Assertions are Valid; the Volume of Privilege Assertions is a Direct Result of Plaintiff's Overbroad Discovery Requests.

Although Plaintiff actually challenges only a few discrete categories of privilege claims, she begins by complaining that Prof. Dershowitz has withheld an "extraordinary" number of documents on privilege grounds. As Plaintiff well knows, the volume of documents over which Prof. Dershowitz has asserted privilege is a direct consequence of Plaintiff's overbroad document requests and search parameters which spanned decades and which, by their very nature, encompassed tens of thousands of facially privileged emails between Prof. Dershowitz and his counsel in various litigations, and with his longtime client Jeffrey Epstein and various other counsel to Mr. Epstein. Having forced Prof. Dershowitz's counsel to review these tens of thousands of presumptively privileged (and largely irrelevant) attorney-client communications, Plaintiff should not be heard to complain about the length of Prof. Dershowitz's privilege logs. Nor do Plaintiff's challenges to the validity of those privilege assertions have any merit.

   a. <u>Prof. Dershowitz Has Validly Asserted Privileges Over Communications with Epstein and his Counsel.</u>

Prof. Dershowitz's attorney-client relationship with Jeffrey Epstein primarily began in 2005, when Epstein learned he was under investigation by the Palm Beach Police Department.[1] *See Edwards et al. v. Dershowitz*, Videotape Cont. Dep. of Alan M. Dershowitz (hereinafter "Dershowitz Dep."), Vol. 6, 830:19-21, attached hereto as <u>Exhibit A</u>. Prof. Dershowitz thereafter served as a member of the legal team which represented Epstein in various related matters, including the subsequent federal investigation which ended with the execution of a federal non-prosecution agreement and plea to state charges, the defense of civil actions bought by alleged victims, and efforts to uphold the validity of the non-prosecution agreement against various challenges. *See* Dershowitz Dep. 860:20-862:9. Epstein continued to seek legal advice from Prof. Dershowitz up until his indictment and death in 2019. *See, e.g.,* Dershowitz Dep. 829:6-8.

In addition to his longstanding attorney-client relationship with Epstein, following Plaintiff's public accusation in late 2014 that Prof. Dershowitz had sexually abused her and was a co-conspirator in Epstein's alleged sex trafficking ring, Prof. Dershowitz and his counsel entered into a common interest agreement with Epstein and his counsel for purposes of coordinating a defense against Plaintiff's accusations concerning Prof. Dershowitz. A copy of that agreement is attached as Exhibit D to Plaintiff's letter.

At the outset, it bears noting that Prof. Dershowitz did not make a blanket claim of privilege over all his communications with Epstein as might have been justified under the circumstances. Rather, his counsel carefully reviewed each individual communication in order to determine whether the communication was privileged or non-privileged, and if privileged, what privileges

---

[1] Prior to 2005, Prof. Dershowitz occasionally provided advice to Epstein on miscellaneous legal matters. *See* Dershowitz Dep. at 830:12-17.

Todd&Weld LLP

Hon. Loretta A. Preska
December 13, 2021
Page 3 of 11

applied. As a result of that effort, Prof. Dershowitz produced hundreds of his communications with Epstein, while asserting various applicable privileges over others.

Plaintiff does not identify specific communications between Prof. Dershowitz and Epstein which she contends are not privileged but instead purports (apparently) to mount a categorical attack on all of Prof. Dershowitz's claims of privilege over communications with his longtime client Epstein. None of Plaintiff's arguments withstands scrutiny.

Plaintiff's first line of attack is to argue that the common interest doctrine is not applicable because Prof. Dershowitz and Epstein did not share a common legal interest. *See* ECF No. 373 at 2. Plaintiff's position relies on an artificially narrow reading of the common interest doctrine, is contrary to law, and is undermined by Plaintiff's own invocation of the common interest privilege to withhold her own communications from discovery in this action.

Parties who collaborate on a common strategy in their defense or face common problems in threatened civil litigation receive protection under the common interest privilege. *Schultz v. Milhorat*, 2011 WL 13305347, at *3 (E.D.N.Y. 2011) (citing *Eugenia VI Venture Holdings, Ltd. v. Chabra*, 2006 WL 1096825, at *1 (S.D.N.Y. 2006), and *GUS Consulting GMBH v. Chadbourne & Parke LLP*, 858 N.Y.S.2d 591, 593 (Sup. Ct. 2008)). "The parties need not have 'total identity of interest' as long as 'a limited common purpose necessitates disclosure to certain parties[.]' *Eugenia VI Venture Holdings, Ltd. v. Chabra*, 2006 WL 1096825, at *1 (S.D.N.Y. Apr. 25, 2006) (quoting *In re Megan–Racine Assocs., Inc.*, 189 B.R. 562, 571–72 (Bankr. N.D.N.Y.1995)); *see also GUS Consulting*, 858 N.Y.S.2d at 593 (common interest rule applies "where an 'interlocking relationship' or a 'limited common purpose' necessitates disclosure to certain parties").

Prof. Dershowitz's and Epstein's common interest in defending against the false charges leveled by Plaintiff amply satisfies the standard for protection under the common interest doctrine. Plaintiff's argument is essentially that, because Prof. Dershowitz's and Epstein's interests with regard with the CVRA litigation, the *Edwards v. Dershowitz* case, and subsequent related litigations (including the *Giuffre v. Maxwell* suit and this action), were not fully aligned in all respects, they were not permitted to avail themselves of the common interest doctrine. Not only does the law not require a complete identity of interests, *see Eugenia*, 2006 WL 1096825, at *1, but Plaintiff's argument ignores that she herself created a zone of common interest when she framed her accusations against Prof. Dershowitz as part of a broader alleged sex trafficking conspiracy in which Epstein and Prof. Dershowitz were alleged co-conspirators (as she also did in her original complaint in this case). There can be no serious dispute that alleged co-conspirators are entitled to participate in a common interest agreement in defense of such charges. *See, e.g., United States v. Wedd*, 2016 WL 11660531, at *2 (S.D.N.Y. Nov. 16, 2016) ("It is common for alleged co-conspirators to enter into joint defense agreements.").[2]

---

[2] Nor does the prospect of unspecified future adversity vitiate the common interest privilege. "[T]he common interest rule is concerned with the relationship between the transferor and the transferee at the time that the confidential information is disclosed. The fact that the parties'



With respect to the instant litigation, Plaintiff claims there could be no valid common interest between Prof. Dershowitz and Epstein because Epstein was never a party to this action. ECF No. 373 at 3. Not only does Plaintiff allege in this action that Prof. Dershowitz and Epstein were co-conspirators, which is itself sufficient to give rise to a common interest, Plaintiff actually identified Epstein as "party" in her original complaint. *See* ECF No. 1 at ¶ 29 (under the heading "Parties," alleging that "Jeffrey Epstein is an individual who resides in the Southern District of New York at 9 East 71st Street, New York, New York, 10021."). Perhaps more importantly, that complaint further alleged that Prof. Dershowitz made the alleged defamatory statements at issue in this case "*on behalf of his co-conspirator and client Epstein*." *Id.* at ¶ 47 (emphasis supplied). Plaintiff's argument that Prof. Dershowitz and Epstein did not share a valid common interest in defeating these allegations is absurd.[3]

Plaintiff next argues that there is no valid common interest privilege applicable to communications between Prof. Dershowitz and Epstein and their respective legal teams because there is no evidence of a "meeting of the minds" with respect to a joint legal strategy. To the contrary, Prof. Dershowitz has produced a formal Common Interest and Joint Defense Agreement (the "Joint Defense Agreement"), effective December 31, 2014, which was entered into by counsel for Prof. Dershowitz and Epstein on their behalf, and which expressly evidences a "meeting of the minds".[4] Plaintiff argues that the language of the Joint Defense Agreement "disproves a critical element of the common interest rule by reserving to each party 'the right to determine its own strategy and arguments, including strategies and arguments that might differ from those of other Parties.'" ECF No. 373 at 4. Again, this argument rests on an erroneous interpretation of the

---

interests have diverged over the course of the litigation does not necessarily negate the applicability of the common interest rule." *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 159 F.R.D. 307, 313 (D.D.C.1994); *Kingsway Financial Services, Inc. v. Pricewaterhouse–Coopers LLP*, 2008 WL 4452134, at *7–8 (S.D.N.Y. Oct. 2, 2008) ("The fact that the parties are currently adverse in a related action does not alter the fact that [they] shared a common interest at the time the communications were made.").

[3] The suggestion that the parties must agree to pursue a common *legal*, as opposed to *factual*, defense is not only nonsensical but it is expressly contradicted by relevant authorities. As the relevant section of the Restatement (Third) of the Law Governing Lawyers explains, "[t]he communication must relate to the common interest, which may be either *legal, factual, or strategic* in character." Restatement (Third) of the Law Governing Lawyers § 76, cmt. e (2000) (emphasis supplied).

[4] Plaintiff challenges this agreement in part because the copy which Prof. Dershowitz produced in this litigation was only partially executed. Counsel has confirmed with Martin Weinberg, counsel for Jeffrey Epstein, that he did execute the agreement. A copy of the signature page executed by Mr. Weinberg as counsel for Epstein has been produced to Plaintiff and is attached hereto as <u>Exhibit B</u>.



Hon. Loretta A. Preska
December 13, 2021
Page 5 of 11

common interest rule.  The common interest doctrine would cease to exist if the validity of a common interest agreement depended on the parties foregoing their right to pursue whatever strategy they deemed to be in their individual best interests.  This reservation of rights which Plaintiff argues invalidates the Joint Defense Agreement is a feature (whether express or implied) of all common interest agreements, consistent with attorneys' obligations to act in their individual clients' best interests.  Indeed, not surprisingly, Plaintiff's own common interest agreement with her attorneys, pursuant to which she has withheld communications from discovery, provides, among other things, that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  *See* Exhibit C at ¶ 8.  Surely, Plaintiff does not contend that this parallel language in her own common interest agreement vitiates her claims of common interest.

   Finally, Plaintiff appears to challenge Prof. Dershowitz's assertion of a common interest privilege over communications between he and Epstein with no other counsel copied on the grounds that these "are not attorney-client communications at all."  ECF No. 373 at 5.  However, as Plaintiff does not actually dispute, there is no requirement that counsel be included communications between parties to a common interest agreement in order for those communications to be privileged.  "If information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication."  *Gucci Am., Inc. v. Gucci*, 2008 WL 5251989, at *1 (S.D.N.Y. Dec. 15, 2008).  *See also Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 21–22 (D. Mass. 2017) ("The fact that communications are between non-lawyers does not per se waive the privilege" where the communications "are either seeking or discussing legal advice."); *INVISTA North America S.a.r.l. v. M & G USA Corp.*, 2013 WL 12171721 (D. Del. June 25, 2013) (common-interest doctrine protects communications between non-attorneys); Restatement (Third) of the Law Governing Lawyers § 76, cmt. d (2000) ("Under the [common interest] privilege, any member of a client set—a client, the client's agent for communication, the client's lawyer, and the lawyer's agent (see § 70)—can exchange communications with members of a similar client set.").

   In addition, Epstein continued to consider Prof. Dershowitz to be a member of his legal team and sought advice from him during the period of time in which he and Prof. Dershowitz were parties to the Joint Defense Agreement.  These communications are independently privileged under Epstein's attorney-client privilege, and Prof. Dershowitz has asserted this privilege where applicable, as Plaintiff acknowledges.  In response, Plaintiff asserts that it would be a conflict of interest for Prof. Dershowitz to continue his attorney-client relationship with Epstein following Giuffre's accusations.  This is ironic coming from Plaintiff, who continued to be represented by Boies Schiller Flexner LLP even after they were accused of conspiring with Plaintiff to commit extortion.  Any such conflict could be waived, and regardless, the existence of a conflict is utterly irrelevant to the question whether an attorney-client relationship continued to exist between Epstein and Prof. Dershowitz, which it plainly did.

Todd & Weld LLP • Attorneys at Law • One Federal Street, Boston, MA 02110 • T: 617.720.2626 • F: 617.227.5777 • www.toddweld.com



Finally, as Plaintiff acknowledges, Prof. Dershowitz has additionally asserted work product protection over many of the communications with Epstein and his legal team which are also protected by the common interest and/or attorney-client privileges. Plaintiff suggests, with barely any argument, that the Court should reject these work production assertions which, they acknowledge, would provide independent grounds to withhold communications even if the Court deemed the common interest and/or attorney-client privileges in applicable to certain of the communications. Plaintiff correctly acknowledges that, unlike the attorney-client privilege, "disclosure to persons outside the attorney-client relationship waives the protection of the [work product] privilege only if the disclosure is to an adversary, or materially increases the likelihood of disclosure to an adversary." *SR Intern. Business Ins. Co. Ltd. v. World Trade Center Properties*, 2002 WL 1455346, at *9 (S.D.N.Y. July 3, 2002). *See also Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009) (work product protection is waived only if a disclosure "substantially increases the opportunities for potential adversaries to obtain the information."). In the face of this rule, Plaintiff argues, essentially, that because Prof. Dershowitz's and Epstein's interests in defending against Giuffre's accusations were not fully aligned, this made them potential adversaries who could not share work product with each other without waiving work product protection. Plaintiff offers no support for this proposition, which is both counterfactual and contrary to law. As set forth above, Prof. Dershowitz and Epstein indisputably had a common interest in defending against her allegation that they conspired together to sexually traffic Plaintiff to Prof. Dershowitz. "Where the disclosing party and the recipient party share a common interest, courts generally find no waiver of the work product privilege." *In re Rsrv. Fund Sec. & Derivative Litig.*, 2012 WL 4774834, at *6 (S.D.N.Y. Sept. 12, 2012). "[T]he sharing of litigation materials among nonadversarial parties, such as co-plaintiffs, or among parties opposing the same adversary in different proceedings, has been held not to constitute waiver." *United States v. Stewart*, 287 F. Supp. 2d 461, 468 (S.D.N.Y. 2003). Plaintiff's position also completely ignores the fact that any disclosures were made pursuant to the Joint Defense Agreement which expressly obligated the parties to keep their communications confidential. For all these reasons, Plaintiff has not even come close to showing that disclosures of work product between Prof. Dershowitz and Epstein and their respective legal teams "substantially increase[ed] the opportunities for potential adversaries to obtain the information."

      b. <u>Privileged Emails Exchanged Using Prof. Dershowitz's Harvard Email Account Are Privileged.</u>

Plaintiff's argument that Prof. Dershowitz did not enjoy a reasonable expectation of privacy over his Harvard email sufficient to use that account for privileged communications is contradicted by the express terms of both Harvard's Policy on Access to Electronic Information and his prior agreement with Harvard governing the collection of his email for use in litigation, and is otherwise entirely without merit for the reasons explained in Prof. Dershowitz's prior submission on this subject. *See* ECF No. 244.



      c.  <u>Prof. Dershowitz's Confidential Communications with Lawyer Associates Are Protected by the Attorney-Client Privilege and Work Product Doctrines.</u>

Plaintiff's objection to claims of privilege over communications between Prof. Dershowitz and various lawyer colleagues and friends appears to have more to do with the number of such assertions rather than the substance of any individual claim. Again, the volume here is a direct consequence of Plaintiff's overbroad discovery requests. Plaintiff asserts that Prof. Dershowitz "is entitled to assert privilege only over communications he makes for the purposes of obtaining legal advice from someone with whom he has established or is seeking to establish an actual attorney-client relationship." ECF No. 373 at 7. With this, Prof. Dershowitz does not disagree. However, it must be emphasized that "a claim of attorney-client privilege does not depend on [a] formal employment relationship but on whether the client had a reasonable expectation of confidentiality under the circumstances." *Coiro v. Fed Cap Custodial Serv., Inc.*, 5 Misc. 3d 1002(A), 798 N.Y.S.2d 708 (Sup. Ct. 2004). Prof. Dershowitz has only claimed the attorney-client privilege over emails which were sent for the purpose of seeking or giving legal advice and in circumstances in which Prof. Dershowitz had a reasonable expectation of confidentiality.

As Plaintiff's own letter makes clear, ECF No. 373 at 8, Prof. Dershowitz and his counsel have made a good faith effort to distinguish between privileged and non-privileged communications, and accordingly have produced certain communications with Prof. Dershowitz's lawyer associates while withholding other communications with these same individuals on the basis of privilege. Plaintiff's counsel took it upon themselves to contact these individuals over the Thanksgiving holiday weekend. A grand total of three disclaimed the existence of an attorney-client relationship with Prof. Dershowitz. Although it is the client's understanding that controls, Prof. Dershowitz is prepared to withdraw his privilege claims over the handful of responsive communications exchanged with these three individuals simply because it is not worth fighting over. As to the others, most confirmed that they had exchanged privileged attorney-client communications with Prof. Dershowitz. Others, listed on Exhibit H to Plaintiff's letter, did not respond, but that is hardly surprising giving the timing of Plaintiff's inquiry in the middle of the Thanksgiving holiday weekend and regardless, a lack of response is not evidence of the absence of an attorney-client relationship.

Even if some of these communications were held not to be subject to the attorney-client privilege due to the absence of an attorney-client relationship, most would remain protected by the work product doctrine. It is well settled that disclosure of work product materials to third parties does not waive the work product protection unless such disclosure "substantially increases the opportunity for potential adversaries to obtain the information." *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009). The definition of work product includes any document which is generated in anticipation of litigation by a "party or its representative (including the ... party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). In determining whether a document is entitled to work product protection, the Second Circuit looks not to the role a particular document is to play in litigation (if any), but asks simply whether the document "would not have been prepared in substantially similar form but for the prospect of . . . litigation." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). The work product



doctrine thus protects Prof. Dershowitz's communications with his lawyer colleagues regarding the various Giuffre-related litigations so long as those communications were made on a confidential basis. *See United States v. Stewart*, 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003) (party did not waive work product protection by forwarding attorney-client communication to her daughter).

      d.  <u>Prof. Dershowitz Withdraws His Assertion of the Mediation Privilege.</u>

Prof. Dershowitz hereby withdraws his assertion of the mediation privilege over communications with David Stone.

**II.    Prof. Dershowitz Has Properly Declined to Produce the Additional Non-Privileged Documents Which Plaintiff Seeks.**

      a.  <u>Plaintiff Is Not Entitled to Every Single Piece of Discovery Produced in the *Boies v. Dershowitz* and *Dershowitz v. Netflix* Actions.</u>

Despite advocating for very narrow discovery when it suits her, Plaintiff seeks the production of every single document produced, every single piece of written discovery propounded, and every single deposition given by any party and non-party in the *Boies v. Dershowitz* and *Dershowitz v. Netflix* actions. Although Prof. Dershowitz may justifiability have simply refused to produce any documents in response to these requests, in the interest of compromise, he agreed to produce in this case all documents he produced in those actions, as well as any written discovery responses and deposition testimony he provides. He objects to producing documents produced or deposition testimony given by other parties and non-parties in those actions.

Prof. Dershowitz's objection to producing discovery provided by other parties in these two separate actions is premised on relevance, burden and proportionality grounds. When Prof. Dershowitz attempted to obtain all discovery materials from the closely related case of *Giuffre v. Maxwell*, the Court repeatedly rejected those efforts, requiring Defendant to make a highly specific showing of relevance to obtain a narrow subset of the materials he originally sought. Accordingly, it would be inconsistent with the Court's prior rulings narrowing the scope of discovery (and highly unfair) for Plaintiff to receive all discovery materials from the *Boies* and *Netflix* cases while his mirror requests for the production of *Maxwell* case materials have largely been denied.

      b.  <u>The Financial Terms of the *Edwards v. Dershowitz* Settlement Are Irrelevant to this Action.</u>

The Court has emphasized time and again that the central issue in this case is whether Prof. Dershowitz had relations with Plaintiff. The amount that Prof. Dershowitz's liability insurers paid to settle a claim involving alleged unethical conduct by Edwards and Cassell has no relevance to this central issue and at best marginal relevance to this action. The Court should deny Plaintiff's request that the amount of the settlement be disclosed. If Prof. Dershowitz is required to disclose



the amount of the settlement in *Edwards v. Dershowitz*, then Plaintiff must be required to disclose the amount of her settlement with the Epstein Victims' Compensation Fund, which Plaintiff has refused to disclose. The amount of this payment is far more relevant to this action than the amount of the *Edwards v. Dershowitz* settlement, as it bears directly on Plaintiff's damages claim in this action.

        c. <u>Plaintiff Has Not Demonstrated a Need to Obtain Prof. Dershowitz's Tax Returns.</u>

As Plaintiff concedes, in order to obtain Prof. Dershowitz's tax returns, she must demonstrate "a compelling need for the returns because the information contained therein is not otherwise readily available." *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015). Plaintiff cannot make this showing because Prof. Dershowitz has and will continue to produce independent evidence of the economic injury he has sustained as a result of Plaintiff's defamations, and because he has already produced records of payments which Epstein made to him. The latter category of documents is of marginal relevance to this action and cannot justify the intrusion into Prof. Dershowitz's privacy that would result from the production of nearly 25 years' worth of his tax returns as requested by Plaintiff.

        d. <u>Prof. Dershowitz Has More Than Satisfied His Obligations with Respect to the Production of His Harvard Email.</u>

Prof. Dershowitz is completely justified in his refusal to agree to the review of even more of his Harvard emails. Prof. Dershowitz's counsel have reviewed nearly 80,000 emails and attachments and produced in excess of 18,000 documents totaling more than 120,000 pages. This is in stark contrast to Plaintiff's production of approximately 4,300 documents, many of which were the result of collection and review efforts previously conducted for the *Maxwell* case. Defendant has more than satisfied his obligations with respect to email discovery. Plaintiff now insists that Prof. Dershowitz broaden his search, abandoning previously agreed-upon qualifiers, and running incredibly broad searches for terms like "(Jeff OR Jeffrey) w/3 Epstein" without any qualifiers designed to target actually relevant information. Prof. Dershowitz has run numerous searches including Jeffrey Epstein's name and reviewed and produced the resulting emails. He has produced or logged every single email he exchanged with Jeffrey Epstein since 2007 (which is all that is available). Plaintiff's insistence that Prof. Dershowitz now review his email for *any document mentioning Jeffrey Epstein or any of his properties, without more, see* ECF No. 373 at 14, is patently unreasonable. Emails which simply mention Jeffrey Epstein or one of his properties, without more, do not come close to meeting the standard of relevance the Court has applied in this case. And even if they had any relevance, the Court must balance that relevance against the burden of producing the information. As Plaintiff herself has argued, "[r]ecent amendments to Rule 26(b)(1) 'emphasiz[e] the need to analyze proportionality before ordering production of relevant information' and 'encourage judges to be more aggressive in identifying and discouraging



Hon. Loretta A. Preska
December 13, 2021
Page 10 of 11

discovery overuse.'" *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016).[5]

Plaintiff's request is made even more unreasonable by the fact that the Court has now allowed Plaintiff's motions to amend and for a protective order, drastically narrowing the allegations of her complaint and limiting Prof. Dershowitz to taking discovery only into her accusations concerning him. Meanwhile, Plaintiff continues to pursue extremely broad discovery from Prof. Dershowitz into all things Epstein. Plaintiff's efforts in this regard are in direct contravention of the Court's orders and directives regarding the scope of discovery which Plaintiff routinely cites in opposing actually relevant discovery sought by Prof. Dershowitz. The Court must reject Plaintiff's fishing expedition.

### III. Prof. Dershowitz Has More Than Adequately Answered Plaintiff's Interrogatories.

There is nothing deficient about Prof. Dershowitz's answers to Plaintiff's Interrogatories. Defendant conducted a painstaking investigation in order to respond to Plaintiff's interrogatories, which was far out of proportion to the marginal relevance of the requested information. Defendant in his responses provided all requested information about the recordings which could reasonably be determined based upon that investigation and his independent recollection. This includes whether the subject recordings are reproductions or originals. As Defendant wrote in his response to Interrogatory No. 4, "[t]o the extent I have been able to surmise or otherwise determine whether a particular recording identified in Interrogatory Nos. 1-3 appears to have been originally made using a microcassettes recorder or the audio recording feature of an iPhone, I have done so in my response to Interrogatory Nos. 1-3." In many instances, this information could not reliably be determined and Prof. Dershowitz is not required to speculate. In any event, all responsive recordings which Defendant has been able to locate in his possession, custody or control, whether microcassette or digital, have been produced in this litigation and Plaintiff can draw her own conclusions on the basis of what has been produced. If Plaintiff wishes to cross examine Prof. Dershowitz regarding his responses, she will have the opportunity to do so at his deposition.

### IV. Depositions of the Parties Should Be Scheduled Without Further Delay.

As is demonstrated by the foregoing, Plaintiff is simply attempting to manufacture disputes in an effort to stonewall Prof. Dershowitz's efforts to take her deposition. Prof. Dershowitz has now done everything the Court has required of him as a pre-requisite to taking Plaintiff's deposition. His paper discovery is "substantially complete" under any definition of that term. While Prof. Dershowitz is willing to accommodate Plaintiff's request to reschedule her deposition from the previously noticed dates of January 4 and 5 so that Plaintiff does not need to travel from

---

[5] With regard to burden and proportionality, it bears noting that Harvard is already seeking to be reimbursed more than $130,000 for costs associated with the collection, review and production of Prof. Dershowitz's Harvard email.



Hon. Loretta A. Preska
December 13, 2021
Page 11 of 11

Australia over the Christmas holiday, the Court should order that Plaintiff appear for her deposition in New York City in the month of January.  There is no justification for further delay.

      Relatedly, we have informed Plaintiff's counsel that we intend to notice Prof. Dershowitz's deposition for the month of January as well in order to preserve his testimony given his age and recent health issues.  Plaintiff has refused to agree to schedule a date based upon her contention that Prof. Dershowitz's document productions are not substantially complete.  As set forth above, Prof. Dershowitz's document productions are substantially complete, and the Court should order Plaintiff's counsel to agree upon a date for Prof. Dershowitz's preservation deposition in the month of January.

Respectfully submitted,

/s/ *Christian G. Kiely*
Christian G. Kiely

cc:    All counsel of record, via ECF