# Cooper & Kirk

Lawyers
A Professional Limited Liability Company

Nicole J. Moss
nmoss@cooperkirk.com

1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036

(202) 220-9636
Fax (202) 220-9601

January 11, 2022

**Via ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    *Giuffre v. Dershowitz*, Case No.: 19-cv-03377-LAP
             **Response Letter: Pre-Motion Discovery Conference**

Dear Judge Preska:

    I write on behalf of Plaintiff Virginia Giuffre in response to Defendant Alan Dershowitz's letter of January 4, 2022, requesting a pre-motion conference at which he will seek leave to exceed the ten-deposition limit set by Rule 30. Doc. 391 ("Def. Ltr."). Defendant has taken five depositions to date, and he proposes to take at least an additional twenty, in addition to Plaintiff's, for a grand total of **at least twenty-six**. This minimum is only slightly less than the thirty-one that Defendant proposed to take in the parties' Rule 26(f) report. *See* Doc. 93, at 6 (Nov. 20, 2019). In response to that report, the Court advised Defendant that he "can't depose all the people on the list." Hearing Tr. 10:17–18 (Dec. 2, 2019) ("Tr."). Plaintiff opposes Defendant's request to exceed the limit because the excess depositions he seeks to pursue are cumulative, unnecessary, or irrelevant.

    Defendant argues that, even if the depositions are cumulative, unnecessary, or irrelevant, he should be permitted to take them because Plaintiff purportedly agreed that he could take more than ten depositions in their joint Rule 26(f) report. This argument is flawed on many levels. First, although we initially agreed with the defense's prediction that this case would require more than ten depositions per side in 2019, there was no "agreement" that Defendant could take more than ten depositions, and certainly not if they turned out to be unnecessary. To the extent that Defendant relied on our prediction, his reliance was unreasonable. As Defendant well knew, we were retained to replace Plaintiff's disqualified counsel just days before the Rule 26 conference, and our predictions were necessarily preliminary and tentative. In any event, the Court is no more bound by the parties' agreement about the scope of discovery today than it was in 2019, when the Court informed the parties in no uncertain terms that "[w]e are not taking all these people." Tr. at 11:9–10. And after the Court advised the parties that it would not permit them to take all of the depositions contemplated by the Rule 26(f) report, Defendant made no effort to negotiate an alternative proposal with Plaintiff or to suggest a different number of depositions that might be acceptable to the parties and the Court. Instead, Defendant forged ahead with noticing these depositions with no consultation with the Plaintiff and no indication from the Court that it would

Hon. Loretta A. Preska
January 11, 2022
Page 2

permit the parties to exceed the normal ten-deposition limit or by how much. Thus, Defendant noticed the depositions he has already taken or plans to take in the coming weeks at his own risk.

In any event, it is implausible in the extreme that Defendant would have opted not to take any of the depositions he has taken to date had he known he would be limited to ten. He has repeatedly insisted that all of the witnesses he has deposed thus far are central to his defense. *See, e.g.*, Letter from H. Cooper to Hon. Preska, Doc. 156 (Aug. 10, 2020); Letter from H. Cooper to Hon. Preska, Doc. 210 (Nov. 20, 2020); Letter from H. Cooper to Hon. Preska, Doc. 352 (Nov. 2, 2021); *see also infra* note 4 (collecting the latest articles summarizing Defendant's defense). Defendant chose to notice these depositions because he believed the witnesses would support his story. He may not ask the Court to save him from his own poor strategic choices now that the witnesses have failed to follow Defendant's script.[1]

Instead, the Court should consider the usual Rule 26(b)(2)(C) factors, such as whether the proposed discovery is cumulative, is available from another source, or imposes a burden that outweighs its benefit. The Court must also "be vigilant to ensure that [the discovery] processes are not used improperly for purposes unrelated to their role." *Paisley Park Enter., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999). Under these traditional standards, Defendant has not supported his request to exceed the limit.

Although no witness deposed to date has credibly corroborated his extortion conspiracy theory, Defendant proposes to take *seven* additional depositions on that topic. To begin, Defendant proposes to depose Abigail Wexner. He provides no argument about why this deposition is necessary or justified. It is not. Defendant has already deposed the Wexners' personal attorney, John Zeiger, and Leslie Wexner himself, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. There is no evidence that Ms. Wexner had any involvement in the discussions between Plaintiff's counsel and Mr. Wexner's attorney in which Defendant has falsely claimed that Plaintiff and her former counsel made extortionate demands. *See* Excerpts from Dep. of John Zeiger (Dec. 16, 2020), attached hereto as Exhibit 2.

Defendant additionally proposes to depose six of Plaintiff's current or former lawyers. Plaintiff does not dispute the relevance of her lawyers' testimony.

Defendant also proposes to depose *thirteen* witnesses who knew Plaintiff and Epstein at the time of Defendant's abuse. Defendant argues that he has no choice but to depose these witnesses because Plaintiff has "spoliated" contemporaneous evidence of her time with Epstein. We are aware of no basis for this grave accusation, and Defendant provides none.

---

[1] Defendant's questionable strategic choices continue. For example, counsel for both parties will travel to Atlanta next week so that he can use one of his depositions on the sister of Plaintiff's childhood boyfriend, for the purpose of having her testify that Plaintiff told her nothing about Defendant's abuse—a fact that, once again, Plaintiff is willing to stipulate to. Yet Defendant noticed this deposition *after* we advised his counsel that we would not agree to extra depositions. Not. of Dep. of Crystal Figueroa (Dec. 20, 2021), attached hereto as Exhibit 1.

Hon. Loretta A. Preska
January 11, 2022
Page 3

      Apart from Juan Alessi, whose relevance Plaintiff does not dispute, Defendant purportedly offers five "former Epstein household employees" to refute the proposition that Epstein's crimes "would have been obvious to any visitor to Epstein's properties, including Prof. Dershowitz." Def. Ltr. At 3. Depositions of the pilots (David Rodgers and Larry Visoski) for this purpose are unnecessary because Plaintiff is willing to stipulate that they would deny witnessing sexual conduct on Epstein's planes, if Defendant will stipulate that they rarely left the cockpits during the flights (as they have previously testified). A deposition of Adam Perry Lang, Epstein's personal chef, would be of limited value in establishing Defendant's knowledge because a personal chef is not similarly situated to "a self-described close friend of Epstein." OFFICE OF PROFESSIONAL RESPONSIBILITY, UNITED STATES DEPARTMENT OF JUSTICE, REPORT: INVESTIGATION INTO THE U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF FLORIDA'S RESOLUTION OF ITS 2006-2008 FEDERAL CRIMINAL INVESTIGATION OF JEFFREY EPSTEIN AND ITS INTERACTIONS WITH VICTIMS DURING THE INVESTIGATION 8 (Nov. 2020) ("OPR REPORT"), available at https://wapo.st/3qlW2W5. And it is entirely implausible that Defendant wishes to call Rina Oh (a female acquaintance of Epstein) for the purpose of showing that there was no visible evidence of Epstein's wrongdoing, as she made a claim against Epstein's estate. See Tara Palmeri, The Woman Who Enabled Jeffrey Epstein, POLITICO (May 14, 2021), https://politi.co/32XopB2. That begs the question for what purpose Defendant actually seeks to call Oh.

      Defendant proposes to depose Plaintiff's "friends and family" for the purpose of asking whether she "told them that she had any sexual or other inappropriate contact with" Defendant "during the time of her alleged abuse by" Defendant. Def. Ltr. At 2. But Plaintiff has already offered to stipulate that she did not contemporaneously reveal Defendant's abuse to her parents, her younger brother, or Crystal Figueroa. She offered a similar stipulation for James Michael Austrich.[2] Defendant does not need to depose five witnesses to establish an uncontested fact, which strongly suggests that his real motive for seeking these depositions is something else entirely.

      At the heart of Defendant's request is something more than a push to bury Plaintiff in needless discovery. Discovery to date has left his facially preposterous extortion conspiracy claims in shambles,[3] so Defendant has taken his disgraceful tactic of victim shaming to an even deeper level of debasement.[4] Rather than refuting a victim's accusations on their merits or casting doubt

---

[2] In Giuffre v. Maxwell, Austrich testified that he did not know who Defendant was, and that if Plaintiff had mentioned "Alan Dershowitz" to him, he does not remember the name. Excerpts from Dep. of James Michael Austrich (June 23, 2016), attached hereto as Exhibit 3. Plaintiff offered to stipulate that his testimony would be the same here.

[3] Plaintiff's sealed submissions of May 20 and November 12, 2021, Pl's Resp. Mem. Of Law in Opp'n to Alan Dershowitz's Mot. to Compel, Doc. 309 and Doc. 359, collected the evidence that effectively vaporized Defendant's theory. [redacted]

[4] See, e.g., Larry Keller, Billionaire's lawyer tried to discredit teen girls, police say, Palm Beach Post (July 29, 2006), bit.ly/3tnanAF; OPR REPORT, at 14–15 ("Dershowitz was 'overly aggressive' and threatened, 'We're going to destroy your witnesses; don't go to court because we're going to destroy those girls.'").

Hon. Loretta A. Preska
January 11, 2022
Page 4

on her credibility by legitimate means, this tactic calls for "destroying" the victim's reputation writ large to deter her from maintaining her accusations—and, if deterrence fails, to persuade the public from which the jury will be drawn that the accuser is a "bad person" who perhaps invited her abuse and is unworthy of trust or recompense.[5]

Defendant leaves no mystery about why he is doing this. In his own words, "[i]f you don't have the law or legal facts on your side, argue your case in the court of public opinion." ALAN DERSHOWITZ, TAKING THE STAND 133 (2013). Defendant has escalated his victim shaming in the court of public opinion with a vengeance since the witness, Rebecca Boylan, whom he had been touting for years as the source for his extortion conspiracy theory flatly rejected it in her recent deposition. *See* Letter from C. Cooper to Hon. Preska, Doc. 360 (Nov. 12, 2021). Over the past month and a half, Defendant has penned at least six op-eds and made numerous media appearances, in which he has escalated from calling Plaintiff and her former lawyers extortionists to accusing Plaintiff of being a gleeful partner in Epstein's and Maxwell's sex trafficking conspiracy.[6] To be clear: he is drawing a moral equivalency between a teenager victimized by one of history's most notorious pedophiles—a vulnerable girl who was sexually trafficked and abused from a young age and who succumbed to one of her abuser's coercive pressure to introduce him to her friends—and an educated, mature woman who stands convicted of masterminding the pedophile's trafficking operation.

The evident purpose of many of Defendant's proposed depositions is to gain material for his disgraceful media campaign. According to Defendant, Plaintiff's "friends and family" will also testify that she "enjoyed her time with Epstein, that she lived in an apartment paid for by Epstein, that she came and went as she pleased, that was she [sic] well compensated, and that she bragged about recruiting other girls to work for Epstein." Def. Ltr. at 2. And Defendant offers a witness he

---

[5] *See, e.g.*, Letter from Alan Dershowitz to Det. Joseph Recarey (undated), attached hereto as Exhibit 4 at 1 (of one Epstein accuser, noting "she, herself, has chosen to go by the nickname of 'pimp juice' and [her social media profile] goes on to detail, including photos, her apparent fascination with marijuana"); *see also* Connie Bruck, *Alan Dershowitz, Devil's Advocate*, THE NEW YORKER (July 29, 2019), https://bit.ly/3GhkHQN (describing Defendant's 2015 media campaign to label Plaintiff a "prostitute" and a "bad mother").

[6] *See* Alan Dershowitz, *Temple Emanu-El Silences a Pro-Israel and Amplifies an Anti-Israel Voice*, JEWISH NEWS SYNDICATE (Dec. 1, 2021), https://bit.ly/3r0x2T1; Alan Dershowitz, *Dershowitz: Two Trials of Ghislaine Maxwell*, NEWSMAX (Dec. 1, 2021), https://bit.ly/3n2dwEE; Alan M. Dershowitz, *Temple Emanu-El Silences a Pro-Israel and Amplifies an Anti-Israel Voice*, GATESTONE INST. (Dec. 7, 2021), https://bit.ly/3q4n4AY; Alan Dershowitz, *Dershowitz: Ghislaine's Prosecutors Won't Call Her Main Accuser, Why?*, NEWSMAX (Dec. 10, 2021), https://bit.ly/3G6Kk77; Alan M. Dershowitz, *Dramatic Testimony from the Maxwell Case Will Shock You!*, GATESTONE INST. (Dec. 31, 2021), https://bit.ly/3eZpCdg; Alan Dershowitz, *Dershowitz: BBC Should Not Apologize for Interviewing Me*, NEWSMAX (Jan. 1, 2022), https://bit.ly/3f3JThK; Aina J. Khan, *BBC Will Look Into Alan Dershowitz Appearance on Maxwell Segment*, N.Y. TIMES (Dec. 30, 2021), https://nyti.ms/34w6d1H.

Hon. Loretta A. Preska
January 11, 2022
Page 5

identifies as "Carolyn" to establish that Plaintiff "recruited [Carolyn] to perform sexual massages for Jeffrey Epstein" when Carolyn was underage. *Id.* at 4.

This testimony has no bearing on the "core issues in this case," as none of these facts make it more or less likely that Plaintiff and Defendant "ha[d] intimate contact" or that Plaintiff and her former lawyers concocted and executed the extortion plot alleged by Defendant. Order, Doc. 355, at 4 (Nov. 10, 2021). It could not even support an attack (however impermissible) on Plaintiff's credibility because—Defendant's callous editorializing aside—it is largely consistent with facts that Plaintiff has ruefully acknowledged in prior testimony. *See* Compilation of Excerpts from Deps. Of Pl. (2016), attached hereto as Exhibit 5. Indeed, even if these facts were relevant to the claims and defenses in this action, the testimony of Plaintiff's "friends and family" would merely duplicate the testimony Defendant knows he can obtain from Plaintiff. The only thing Defendant will miss by not taking these depositions is the opportunity to elicit the facts stripped of their context: namely, the abuse and coercion Plaintiff suffered at a young age, the unconscionable demands being placed on Plaintiff by Epstein, and how Plaintiff coped with the fear and pressure.

Defendant attempts to dress his plans for these witnesses up in legitimate garb, claiming that he offers them for the purpose of ascertaining the value of Plaintiff's reputation as an advocate for sex abuse victims. But Plaintiff's reputation is what it is, having been shaped by information that is already publicly available. Defendant cannot use the discovery process as a cudgel to attempt to destroy Plaintiff's reputation in the hope of being able to claim that the damage worked by his defamatory statements is negligible by comparison.

Defendant insists that the depositions of the thirteen contemporaneous witnesses will impose little burden because the depositions will be short. But the burden imposed by a deposition is not limited to the hours spent in the deposition itself. Each of these depositions will require investigation, preparation, and out-of-state travel.

For all the reasons given above, Plaintiff opposes Defendant's request.

Respectfully,

s/ Nicole J. Moss
Nicole J. Moss

CC: Counsel of Record (via ECF)