# EXHIBIT A

## Affidavit of David Boies

1. I am a member of the New York Bar and Chairman of Boies Schiller Flexner LLP (BSF). I am not a member of The Florida Bar.
2. In June 2014 I was approached by Stanley Pottinger who asked me to consider assisting with the representation of a young woman, Virginia Giuffre (formerly Virginia Roberts), who had been the victim of sex trafficking when she as a child.
3. I and my firm have made protecting the rights of abused women and children an important part of our pro bono practice, and I said we would consider assisting in the representation of Ms. Giuffre.
4. I told Mr. Pottinger that before undertaking any representation of Ms. Giuffre we would want to be satisfied that her story was true. Mr. Pottinger replied that Ms. Giuffre had been identified as a victim of sex trafficking by the FBI and the U.S. Attorney for the Southern District of Florida; that she was currently represented by Brad Edwards and former federal Judge Paul Cassell, both of whom were committed and experienced lawyers representing sex trafficking victims and both of whom had vetted Ms. Giuffre's assertions; that Ms. Giuffre's sex trafficking by Jeffrey Epstein was verified both by testimony and documentary evidence.
5. I personally met with Ms. Giuffre in July 2014 in my Firm's offices in New York City to further satisfy myself that she was credible.
6. I also asked Mr. Pottinger, whom I had known for many years and who was a noted civil rights lawyer and former head of the Civil Rights Division of the U.S. Department of Justice to personally further vet Ms. Giuffre's assertions. He did so, and reported back to me that he was convinced she was telling the truth. I agreed that BSF would assist in the representation of Ms. Giuffre, although we did not actually do any work until November 2014.
7. There are three proceedings referenced by Mr. Dershowitz - - (a) a Criminal Victims Rights Act ("CVRA") proceeding in the United States District Court for the Southern District of Florida, (b) a defamation case against Mr. Dershowitz in the 17th Judicial Circuit before Judge Lunch, and (c) a defamation case against one of Mr. Epstein associates Ghislaine Maxwell, in the United States District Court for the Southern District of New York.
8. Neither I nor anyone from my Firm participated in the CVRA proceeding. My partner Sigrid McCawley (but not me) represented Ms. Giuffre pro bono in the Dershowitz defamation action where Ms. Giuffre was subpoenaed as a witness. Both I and Ms. McCawley represented Ms. Giuffre, along with other counsel, on a contingency fee basis in the Maxwell defamation action.
9. In late December, 2014, Messrs. Edwards and Cassell filed a Joinder Motion in the CVRA proceeding identifying Mr. Dershowitz as one of the men to whom Epstein had lent out Ms. Giuffre for sex. Neither I nor Ms. McCawley participated in that decision, nor were we even aware that naming Mr. Dershowitz was contemplated; indeed Ms. McCawley's representation of Ms. Giuffre began over a month later.
10. Following the filing of the CVRA Motion naming him, Mr. Dershowitz undertook an extensive PR campaign attacking Messrs. Edwards and Cassell. On January 5, 2015, in response, Edwards and Cassell filed the Florida defamation case against Dershowitz.
11. On January 9, 2015, Mr. Dershowitz noticed Ms. Giuffre's deposition in the Florida defamation action. Because Edwards and Cassell were parties to that action, around the middle of January I was asked whether BSF could represent Ms. Giuffre as a witness. I explained that I was not a member of The Florida Bar and that I tried to limit my pro hac applications so that I could be able to appear in major cases that the firm had in Florida. However, I said I would ask a lawyer in one of BSF's Florida offices to assist Ms. Giuffre. The first week in February 2015, I referred Mr. Pottinger to Ms. McCawley in BSF's Fort Lauderdale office who had a special commitment to representing abused women and children.
12. On January 29 or 30, 2015, as Managing Partner I received a call from Stuart Singer, the Administrative Partner in BSF's Fort Lauderdale office who described a request by Mr. Dershowitz for the firm to represent him in the Florida defamation action and asked for permission to do a conflicts check. I told Mr. Singer that we had a conflict and he said he would ask Mr. Sires to so inform Mr. Dershowitz.
13. I was told by Mr. Singer and Mr. Sires that Mr. Sires had asked only for public pleadings for purposes of performing a conflicts check, but Mr. Dershowitz, in addition to having his counsel send public pleadings, had himself sent a memorandum he had written. Without telling me anything about the substance of the memorandum, I was told that the memorandum essentially summarized the points Mr. Dershowitz had been making publicly. Out of an abundance of caution, the Firm screened both Mr. Singer and Mr. Sires, and so advised Mr. Dershowitz.

14. On February 3, 2015, I asked my secretary to alert Ms. McCawley that she could be getting a call from Mr. Pottinger, and it is my understanding soon thereafter Mr. Pottinger contacted Ms. McCawley. Ms. McCawley ultimately agreed to represent Ms. Giuffre in the Florida defamation action.

15. About a week later, I received a request from Scott Gant a partner in BSF's Washington D.C. office, to consider representing Mr. Dershowitz in an unrelated matter. I informed Mr. Gant that we could not represent Mr. Dershowitz and asked him to so inform Mr. Dershowitz.

16. When Mr. Dershowitz challenged Ms. Giuffre's assertion that he was one of the men to whom Epstein had lent her out for sex, Ms. McCawley and I decided to ask Ms. Giuffre to take a lie detector test to further confirm she was truthful when she accused Mr. Dershowitz of having sex with her. Ms. Giuffre took such a test, and passed.

17. Mr. Dershowitz has asserted I told him I did not believe Ms. Giuffre had sex with him. That is not true.

18. The first time Mr. Dershowitz alleges I told him I did not believe Ms. Giuffre was May 19, 2015. That was my initial communication with Mr. Dershowitz concerning this matter. Mr. Dershowitz had been trying to meet with me for several weeks. I was reluctant to meet with him because I was not personally representing Ms. Giuffre in the Florida defamation action and I felt Mr. Dershowitz, whom I had known for many years, was trying to go around Ms. McCawley. However, when approached by a former BSF partner, David Stone, who requested that I at least met with Mr. Dershowitz to hear him out, I agreed.

19. Messrs. Dershowitz, Stone, and I first met in New York on May 19, 2015. The stated purpose of the meeting was to convince me to listen to a subsequent presentation by Mr. Dershowitz of evidence that he claims disproved Ms. Giuffre's assertions about him. I did not say, and there would have been no possible way for me to have had a basis to say, on May 19 that I did not believe Ms. Giuffre.

20. In June and July 2015 I had two meetings with Mr. Dershowitz and Mr. Stone, and several telephone calls with Mr. Dershowitz, in which Mr. Dershowitz argued that he did not have, and could not have had, sex with Ms. Giuffre. After extensive consideration of everything Mr. Dershowitz told and showed me, I ultimately concluded that his denials were not credible.

21. In an effort to convince BSF to cease representing Ms. Giuffre, Mr. Dershowitz asserted that BSF had a conflict because he had discussed a possible representation by BSF of him with my partners Stuart Singer and Carlos Sires of BSF's Ft. Lauderdale office. Based on an analysis by BSF's general counsel and the firm's outside ethics counsel, the firm concluded that no conflict existed. Mr. Dershowitz was so advised. I also told Mr. Dershowitz repeatedly that if he believed there was any reason BSF could not continue to represent Ms. Giuffre he should make a motion so that the matter could be resolved by the court. Mr. Dershowitz never did.

22. Mr. Dershowitz has asserted that I and others at BSF sought to "extort" Mr. Leslie Wexner by naming Mr. Dershowitz in the CVRA litigation. There was no effort to extort Mr. Wexner (indeed, no settlement demand was ever made of, or even discussed with, Mr. Wexner or his counsel). Neither Ms. McCawley nor I participated in the decision to name Mr. Dershowitz or were even aware that naming him was contemplated until after the public filing.

23. Mr. Dershowitz's Florida Bar complaint to The Florida Bar, including attachments, was recently leaked to the press, and at least one publication (*The Washington Post*) has said that it currently plans to publish a story concerning the matters raised by Mr. Dershowitz.

*/s/ David Boies*
David Boies

STATE OF NEW YORK      )
    ss.:               )
COUNTY OF NEW YORK     )

On this 1st day of December 2017 before me, the undersigned Notary Public in and for New York, personally appeared DAVID BOIES, personally known to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, executed the instrument.

*/s/ Denina DePool*
Notary Public

DENINA ANN DEPOOL
Notary Public - State of New York
No. 01DE6165544
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires Sep. 16, 2019

2