

Andrew W. Schilling
Partner
1133 Avenue of the Americas
Suite 3100
New York, NY  10036
T (212) 600-2330
aschilling@buckleyfirm.com

March 2, 2022

**BY ECF**
The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    <u>Giuffre v. Dershowitz</u>, Case No. 19-cv-3377-LAP

Dear Judge Preska:

    This firm serves as local counsel to non-party President and Fellows of Harvard College ("Harvard") in this case. In accordance with the Court's order dated February 23, 2022 (Dkt. No. 413), we respectfully submit this letter to respond to defendant's February 22, 2002 letter (Dkt. No. 408) regarding the significant costs that Harvard has incurred in complying with a non-party subpoena.

## Introduction

    Harvard is not a party to this case and has no stake in its outcome. In connection with a Rule 45 subpoena served by plaintiff dated September 8, 2020, which necessitated a substantial review and production of Harvard email, Harvard to date has incurred over $100,371.44 in vendor costs, as well as approximately $74,000 in legal fees. Those costs and expenses are continuing to mount, and Harvard will be incurring further costs going forward, with the parties having returned to Harvard for another production, which will necessitate months of additional hosting costs. Although Harvard is thus continuing to comply with the subpoena, and is incurring ongoing expenses that are significant, neither party has made a reasonable offer to reimburse Harvard for anything approaching its actual costs.

    To respond to the subpoena, Harvard was required to collect and run searches through defendant Mr. Dershowitz's Harvard email. To do that, Harvard incurred significant hosting costs for the more than 307 gigabytes of data taken from Mr. Dershowitz's Harvard inbox, which Harvard has needed to maintain solely for purposes of this litigation for more than a year. Already to date, Harvard has produced more than 28,000 documents in connection with this litigation.

    Rule 45 protects non-parties like Harvard from incurring undue burden or significant expense in connection with responding to a subpoena. Fed R. Civ. P. 45(d)(1) & 1991 advisory committee note. Accordingly, to protect the rights of non-parties, courts have the discretion to allocate those costs among the parties. *See, e.g., In re L. Firms of McCourts & McGrigor Donald*, 2001 WL 345233, at *3 (S.D.N.Y. Apr. 9, 2001). Here, while Harvard is prepared to assume some

of the costs of complying with the subpoena, it respectfully submits that either or both of the parties should reimburse Harvard for a substantial portion of those costs.

### Response to Defendant's February 22, 2022 Letter

In his February 22, 2022 submission to this Court, defendant faults Harvard for proceeding in good faith with its production without securing payment of its costs in advance. But Rule 45 does not condition a non-party's right to reimbursement upon entering into any such pre-production agreement. *See* Fed. R. Civ. P. 45, 1991 advisory committee note ("The court is not required to fix the costs in advance of production."). Here, moreover, neither party can fairly claim surprise that Harvard is seeking the reimbursement of its costs, given that counsel for Harvard raised the issue of cost sharing at the very outset. For example, by letter dated February 18, 2021 (attached as **Exhibit A**), Harvard expressed its position that the expenses should be borne by the parties, not by Harvard. Although the parties did not reach agreement on cost sharing at the time, Harvard nevertheless moved forward with its responsibilities under the subpoena, working in good faith with the parties to navigate this complicated and costly document review, fielding countless requests and questions, and producing documents. At no time did Harvard waive its right to reimbursement of its costs.

Nor is it reasonable for defendant to suggest that anyone expected those costs to be only $5,000. As the parties are aware, and as noted above, compliance with the subpoena required Harvard to collect, host, and run searches on more than 800,000 documents from defendant's Harvard email inbox. Given the magnitude of the data, Harvard worked with an e-discovery vendor, XACT Data, to repeatedly edit, modify, and run the searches and search terms requested by the parties. To further cull down the number of results from these terms, Harvard and XACT worked with the parties to develop a number of exclusion protocols, which were essentially additional lists of search terms that needed to be run on the documents to identify documents to exclude from the search term runs. The high vendor costs at issue are directly attributable to disputes between the parties, as the parties' disagreements with respect to search terms led to months of negotiations (which means months of additional hosting charges) and the running and re-running of search terms and hit reports.

Additionally, as the parties have also been aware, Harvard's review necessitates its attention to protecting private student information. As an educational institution, Harvard has obligations to protect student information under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"). To fulfill its obligations under FERPA, Harvard had to establish a separate exclusion protocol to isolate any potentially privileged or confidential communications from the production, so that Harvard could review them manually.[1] Such a manual review process was necessary here because Mr. Dershowitz was using his Harvard email for non-Harvard

---

[1] Defendant is correct that Harvard's vendor initially made an error in calculating the universe of documents that would need to be reviewed. Harvard took steps to inform the parties and work towards a solution promptly after this error was identified. As noted below, Harvard proposes absorbing those costs itself.

purposes, and because protected student information could not be separated from personal matters through an automated search process.[2]

Defendant also argues in his February 22, 2022 letter that this Court limited Harvard's right to reimbursement at a hearing held on March 25, 2021, a proceeding to which Harvard was not a party. Harvard does not share defendant's understanding of the Court's ruling. Although Harvard of course respectfully defers to this Court's interpretation of its own ruling, Harvard did not understand that ruling to limit Harvard's right to reimbursement to only a small portion of its costs. Indeed, even if the Court were addressing at the hearing only a narrow issue immediately presented, Harvard understood the Court's rationale to rest at least in part on its correct understanding that Harvard was incurring these costs solely because Mr. Dershowitz had been using his Harvard account for non-Harvard purposes and therefore should be reimbursed for them. *See* Dkt. No. 408-1 (Tr. at 71-72 & 48-49) ("Professor Dershowitz decided that he would use his Harvard account for all of these communications. Why should it be on plaintiff's head to pay for this?"). Accordingly, Harvard fairly interpreted that ruling as obligating defendant to reimburse Harvard for its costs. That said, Harvard remains agnostic as to the allocation of these costs as between the parties, provided that Harvard is fairly reimbursed for its costs.

### Recent Efforts to Resolve the Matter

In its February 23, 2022 order, the Court extended Harvard's time to respond to defendant's February 22, 2022 letter to allow the parties an additional opportunity to resolve this dispute. To that end, Harvard and the parties met and conferred on February 25. As we had previously advised the Court, Harvard was willing to bear a portion of the costs, even though it is a non-party with no stake in the outcome of this case. Harvard also shared with the parties redacted copies of invoices for its legal fees. There was little progress made, however, in resolving the matter. Plaintiff has advised Harvard that she need not contribute anything toward Harvard's costs. Defendant maintains his position that he need contribute only a negligible amount (roughly $5,000) relating to a small collection of documents discussed in a hearing on March 25, 2021 (although defendant did agree to present the invoices to an insurance carrier that, as Harvard understood it, may have some obligation to pay litigation costs). To date, however, the parties have reached no agreement.

### Conclusion

For these reasons, Harvard respectfully requests that the Court enter an order requiring that either or both parties reimburse Harvard for the past and future fees and costs incurred by Harvard in responding to the subpoena. To help achieve a resolution, Harvard is prepared to absorb up to $60,000 in the legal fees and costs it has incurred to date in connection with this matter. Such a concession would more than account for Harvard's need to conduct a FERPA review as well as any costs or inefficiencies associated with its vendor's error.[3]

---

[2] We note also that, in addition to these searches of defendant's Harvard email, plaintiff's subpoena also sought other Harvard documents. As a result, Harvard had to engage with plaintiff in negotiations regarding requests unrelated to defendant's emails. That issue was successfully resolved without the need for Court intervention.

[3] Harvard's offer to absorb a portion of these costs is limited to the costs it has incurred, to date, in connection with the Giuffre subpoena. Harvard is not making any concessions as to the costs that will be incurred in responding to the Netflix subpoena.

We thank the Court for its consideration of this submission. Should the Court have questions regarding the facts recounted above with regard to Harvard's efforts to date to comply with the subpoena or the costs incurred to date, Harvard will make its outside counsel who has been handling these matters for Harvard, Michelle Peirce, available to address the Court's inquiries.

Respectfully submitted,

*/s/ Andrew W. Schilling*

Andrew W. Schilling