

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Rachel F. Strom**
212.489.8230 tel
212.489.8340 fax

rachelstrom@dwt.com

March 4, 2022

**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

     Re: *Giuffre v. Dershowitz,* Case No. 19-cv-03377-LAP
       S.D. Fla. Order Prohibiting Production of Netflix Documents

Dear Judge Preska:

   We are counsel for non-parties Netflix, Inc., RadicalMedia LLC, Leroy & Morton Productions LLC, Lisa Bryant, and Joseph Berlinger (collectively the "Netflix Non-Parties") and write to correct the inaccuracies in the letter submitted by Defendant's counsel to this Court regarding the protective order issued by the Southern District of Florida (the "Letter") (Dkt. No. 421).

   *First*, the Netflix Non-Parties did not "seek" a protective order from the Southern District of Florida prohibiting Professor Dershowitz from producing their documents.  *See* Ltr. at 1.  Rather, as we notified this Court we would do, and as can be seen in the Netflix Non-Parties' Notice of Compliance in the *Dershowitz v. Netflix* action, attached hereto as **Exhibit A**, we alerted the Southern District of Florida of Professor Dershowitz's violation of our Stipulated Protective Order for purposes of seeking sanctions.  The court, *sua sponte*, suggested ordering Professor Dershowitz not to produce the Netflix Non-Parties' documents in this case—relief that the Netflix Non-Parties gladly welcomed in order to preserve their confidentiality interests.  The fact that Professor Dershowitz now finds himself caught between two competing court orders cannot be blamed on the Netflix Non-Parties.  To the contrary, it is a direct consequence of his inability to maintain his obligations in his proliferating litigations across the United States.

   *Second*, the belated argument that Professor Dershowitz did not breach the Stipulated Protective Order in *Dershowitz v. Netflix* because he responded to Ms. Giuffre's requests for production prior to the entry of that Protective Order, *see* Ltr. at 2, entirely ignores the history of this case.  Months ago, on December 3, 2021—after the entry of the *Netflix* Stipulated Protective Order—Ms. Giuffre filed a motion to compel seeking the Netflix Non-Parties' documents.  *See* Dkt. Nos. 373-74.  Professor Dershowitz did not alert the Netflix Non-Parties to this motion.  Nor

**DWT.COM**

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Hon. Loretta A. Preska
March 4, 2022
Page 2


did Professor Dershowitz alert the Netflix Non-Parties of this Court's February 14, 2022 decision on Ms. Giuffre's motion.  *See* Dkt. No. 401.  Instead, the Netflix Non-Parties only learned of this decision through New York State Bar Association list-serv emails.  Both failures constitute blatant violations of the Stipulated Protective Order.[1]

      To the extent this Court has any further hearings about the Netflix Non-Parties' documents, we ask to be included in such hearings.

                    Respectfully submitted,

                    */s/ Rachel F. Strom*

                    Rachel F. Strom


cc:    All counsel of record (via ECF)

---

[1] Further, even Professor Dershowitz's objections to Ms. Giuffre's document requests, which he now points out were served before the Stipulated Protective Order was entered, *see* Ltr. at 2, stated that he would only produce discovery from the *Dershowitz v. Netflix* action pursuant to a protective order that may be entered in that case.  Yet Professor Dershowitz never alerted counsel for the Netflix Non-Parties that there were outstanding demands for their documents at the time the Stipulated Protective Order was entered in Florida.  *See* Dkt. 374-16.  This too was a violation of the Stipulated Protective Order.

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:21-cv-21961-ALTONAGA/TORRES**

-------------------------------------------------------------------- x

ALAN DERSHOWITZ,

                Plaintiff,

      - against -

NETFLIX, INC., et al.

            Defendants.

-------------------------------------------------------------------- x

     :
     :
     :
     :
     :
     :
     :
     :
     :

## DEFENDANTS' NOTICE OF COMPLIANCE FOR DISCOVERY HEARING (MARCH 3, 2022)

Defendants Netflix, Inc., Leroy & Morton Productions LLC, RadicalMedia LLC, Lisa Bryant and Joseph Berlinger (collectively "Defendants") respectfully submit this Notice pursuant to Paragraph 3(c) of the Order Setting Discovery Procedures entered by the Honorable Magistrate Judge Torres. *See* Dkt. 46. Defendants will call up for hearing before Magistrate Judge Torres on <u>March 3, 2022, at 1:30 p.m.</u> to discuss Plaintiff's repeated breaches, violations of Court orders, and unwillingness to adhere to the federal and local rules. Defendants will raise the following issues:

**A.**     **Plaintiff's Breach of the Protective Order**

On November 18, 2021, Judge Altonaga entered a Stipulated Protective Order that governs the handling of the parties' confidential discovery in this action. *See* Ex. 2[1] (the "Protective Order"). Section 8 of the Protective Order requires prompt notification in writing if a party is served with a subpoena, demand, or a court order issued in another litigation that calls for a party's

---

[1] All exhibit source materials have been provided to the Court via FedEx and electronically.

confidential materials.  *Id.*  Plaintiff failed to provide notice to Defendants that their confidential documents were being sought by Virginia Giuffre in *Giuffre v. Dershowitz*, a defamation case proceeding in the Southern District of New York (the "SDNY Action").

Instead, it was only through a New York State Bar Association email that Defendants' counsel learned that Judge Preska, who is presiding over the SDNY Action, had *already ordered* Plaintiff to provide Ms. Giuffre with all of the confidential documents Defendants produced in this action.  *See* Ex. G (NYSBA email); Ex. 5 (the "SDNY Order").  This SDNY Order came months after Ms. Giuffre initially requested Defendants' documents and months after Ms. Giuffre filed a motion to compel the production of these documents.  Although Plaintiff disputed Ms. Giuffre's motion, he failed to mention the Protective Order or provide Ms. Giuffre's counsel with a copy of this Protective Order, as the Protective Order itself requires.  *See* Ex. 2, Section 8.  And he provided no notice to Defendants that their confidential documents had been sought.  *Id.*

On Tuesday, February 15, Defendants' counsel learned of Judge Preska's Order, and immediately contacted Plaintiff's counsel to raise Plaintiff's breach and to try to protect Defendants' confidentiality interests.  *See* Ex. H (Feb. 15, 2022 email 7:19 PM).  Plaintiff's counsel replied the next day that they were "looking into this" and would respond by close of business Friday, February 18.  *See id.* (Feb. 16, 2022 email 4:29 PM).

Instead of offering a solution or even acknowledging their breach, Plaintiff's counsel waited until 4:57 pm on Friday evening—the night before a holiday weekend—to provide Defendants' counsel with a listen-only public telephone number for a hearing in the SDNY Action occurring on the next business day.  *See* Ex. I.  Plaintiff's counsel said that Defendants' counsel should somehow raise objections through this listen-only line.  *Id.*  Plaintiff's counsel also indicated that they did not expect Judge Preska to actually order the release of Defendants'

confidential documents, even though she had, in fact, *already* ordered the production of these documents. *Id.*

Defendants immediately filed a letter with Judge Preska seeking the opportunity to be heard. *See* Ex. 6 (Defendants' Letter to J. Preska). Judge Preska agreed to hear from Defendants, and asked Defendants' counsel to work with Ms. Guiffre's counsel to try to narrow the scope of the parties' differences. Unsurprisingly, Judge Preska ultimately affirmed her prior Order compelling production of Defendants' confidential documents.

Plaintiff's counsel admitted to Judge Preska that Plaintiff breached the Protective Order, but stated that there was "no harm, no foul" from the breach because Judge Preska allowed Defendants to be heard *after* she had already ordered the production of Defendants' documents. As detailed below, this Court should sanction Plaintiff and his counsel for Plaintiff's breach of the Protective Order, coupled with Plaintiff's pattern of non-compliance with the Court's orders and the parties' agreed upon discovery protocol.

**B.    Plaintiff's Breach of the Court's Order to Provide a Revised Privilege Log**

Plaintiff is also in breach of this Court's January 27 Order to produce a revised and accurate privilege log, verified by Plaintiff's counsel. By way of background, in December, Plaintiff provided a "draft" privilege log, which contained 500,000 entries, but which Plaintiff's counsel represented was still incomplete and which was not independently verified by Plaintiff's counsel in this litigation. *See* Ex. B (Dec. 6, 2021 email); Ex. 4 (Jan. 27, 2022 Discovery Hearing Tr. 67:20-21) ("THE COURT: I take it you didn't do this log. Mr. Brodsky: No."). To date, Plaintiff still has not provided a full and complete privilege log for this action.

At the parties' January 27 conference with this Court, after Defendants raised numerous objections to Plaintiff's log, the Court ordered Plaintiff's counsel to verify each item on Plaintiff's privilege log. Plaintiff's counsel attempted to sway the Court that this initial verification burden

should be placed on Defendants, stating: "My request would be, Judge, that the order of operations would be the [Defendants] identif[y] the items on the log [which they would like Plaintiff to review]." *See* Ex. 4 (Jan. 27, 2022 Hearing Tr. at 67:20-21; 70:17-19). This Court flatly rejected Plaintiff's proposal, reasoning instead:

> If the log was ten pages I would say sure. I have never seen a privilege log this big . . . so given this log, have the lawyers in New York do it. Have somebody do it. It seems to me this is going to be overbroad. So somebody needs to do a little bit more of an accurate check on it. . . . That burden should be on the party claiming the privilege.

*Id.* at 70:20-25; 71:2-9. Defendants' counsel reminded the Court and Plaintiff's counsel that Defendants had already done much of this work by providing logs containing only the line entries that did not appear to include attorneys. The Court ordered Plaintiff's counsel to start with those redacted logs. *See id.* at 72:8-73:1.[2]

It appears, however, that Plaintiff's counsel has ignored the Court's order. Plaintiff still has not provided a revised log to Defendants. Rather, Plaintiff provided a new log that lists 168 documents over which he is no longer asserting privilege. *See* Ex. M (attachment to Feb. 25, 2022 email). This again forces Defendants to go line-by-line through Plaintiff's draft 500,000-item log in order to understand which entries from this original log have been removed and which remain privileged. And, because Plaintiff's original log was only a draft that was completed by attorneys in Plaintiff's other cases, Defendants still have no idea what documents are being withheld for this action specifically.

---

[2] If Plaintiff's counsel failed to comply, the Court stated: "I will give you a date. Then that will be the date when we are going to do item by item [check] if I have to." Ex. 4 (Jan. 27, 2022 Hearing Tr. at 70:12-14). Thus, apparently, the parties and the Court will use this upcoming conference to go item by item through Plaintiff's privilege log.

More than that, it appears that despite the Court's clear order, Plaintiff's counsel only reviewed the names of a few individuals that Defendants' counsel provided to Plaintiff's counsel *before* the Court's January 27 Order. Plaintiff's counsel stated: "If there are any other individuals over which you have questions, please let us know and we will be happy to address them." *See* Ex. M (Feb. 24, 2022 email 8:29 PM). But this is the exact position this Court rejected at the last hearing—putting the burden back on Defendants to review Plaintiff's full log and cull through to find improperly withheld documents. Thus, Defendants ask this Court to again order Plaintiff to provide Defendants with a complete and verified privilege log. The log should be up-to-date and should include all documents withheld in this litigation, not just those documents withheld in Plaintiff's other cases.

**C.     Plaintiff's Breach of the Court's Order to Provide Marital Communications**

Plaintiff breached this Court's January 27 order to produce all "responsive" marital communications from early 2019 to present by February 24. *See* Ex. 4 (Jan. 27, 2022 Hearing Tr. at 85:24-25). This Court made clear to Plaintiff's counsel that: "[A]nything after 2019 may be impeachable. So if you want to withdraw [Plaintiff's wife, Carolyn Cohen] as a witness, fine with me. If you don't want to withdraw her as a witness, then just produce it." *Id.* at 85:14-16. The Court ordered Plaintiff to produce these communications "a week prior to the hearing date," *i.e.*, no later than February 24. *Id.*

To ensure that Plaintiff would not miss this deadline, on February 9, Defendants' counsel reminded Plaintiff's counsel that by Thursday, February 24, Plaintiff either had to "produce communications between Carolyn Cohen and Professor Dershowitz dated after 2019 or remove Ms. Cohen as a damages witness and provide a privilege log of these communications." *See* Ex. F (Feb. 9, 2022 email).

Nevertheless, Plaintiff breached this Court's order. On the evening of February 24, Plaintiff's counsel sent an email stating that they had reviewed these post-2019 communications but determined the communications were not "responsive to any of the topics on which Carolyn is going to testify." *See* Ex. M (Feb. 24, 2022 email 8:29 PM). Plaintiff, therefore, refused to produce them. Defendants' counsel emailed Plaintiff's counsel on the morning of February 25, reminding them that the Court had specifically rejected their current position and had held that "responsiveness would be about Netflix or Ms. Giuffre or the lawsuit" or "if it relates to the litigation in any way." *See id.* (Feb. 25, 2022 email 12:00 PM); Ex. 4 (Jan. 27, 2022 Hearing Tr. at 85:24-25). That evening—one day after these documents should have been produced—Plaintiff's counsel wrote:

> We disagree that putting up Carolyn as a witness results in a wholesale waiver of every issue in the case. However, in a good faith effort to narrow the issues, as soon as the vendor is finished processing the documents, we will be sending you a link to communications between Alan and Carolyn from 2019 onward that are not otherwise attorney-client or attorney work product privileged.

Plaintiff then produced some of Ms. Cohen's emails, but has not represented that the production is complete. And it seems highly unlikely that the production is complete, as there is not a single communication about *Filthy Rich*, Plaintiff's interviews for the Series, or the release he signed for the Series, which was emailed to Ms. Cohen.

Thus, Defendants ask this Court to again order Ms. Cohen and Plaintiff to produce all marital communications after 2019 or, alternatively, to explain why the current production is missing key documents and to provide a privilege log of any communications that continue to be withheld on privilege grounds.

## D.     Plaintiff's Misrepresentations to the Court About his Marital Communications

At the parties' January hearing, Defendants argued that Plaintiff had waived his marital privilege by producing numerous communications between him and his wife without the presence

6

of third parties.  *See* Ex. 4 (Jan. 27, 2022 Hearing Tr. 83:4-12).  This Court questioned Plaintiff's counsel about his "selective waiver" issue in the following exchange:

> Judge Torres:  "Well, what communications do you have? Because then you have also the issue of selective waiver.  That is the other thing.  Why did you waive anything?"
>
> Plaintiff's counsel: "Well, we didn't.  Those are communications we produced that are not between Professor Dershowitz and his wife."
>
> Judge Torres: "I see.  They are third party communications."
>
> Plaintiff's counsel: "Correct."

*Id.* at 83:10-18.

Plaintiff's counsel was wrong.  Plaintiff has produced dozens of communications between him and his wife without the presence of third parties.  These communications were marked "Confidential" and include correspondence from January 1, 2015 through 2018.  *See, e.g.*, Ex. 8-9 (DERSHOWITZ00001954; DERSHOWITZ00002174).  On February 18, 2022, Defendants' counsel advised Plaintiff's counsel that this was a clear waiver of marital privilege.  *See* Ex. J (Feb. 18, 2022 email 2:32 PM).  In response, Plaintiff's counsel declined to produce the messages and stated that he did not "recall representing to Judge Torres that [Plaintiff] ha[s] not produced any marital communications between Alan and Carolyn" and placed the burden on Defendants to find this representation.  *See* Ex. N (Feb. 24, 2022 email, response in red).  Only after Defendants' counsel provided Plaintiff's counsel with the above quotation from the January 27 hearing transcript did Plaintiff's counsel admit that he was wrong, he "did not recall that exchange," and he would "notify Judge Torres at the hearing next week of [his] mistake."  *Id.* (Feb. 25, 2022 email, response in green).

It is now clear that Plaintiff does have a selective waiver issue, as this Court had suggested, and Plaintiff must be ordered to produce the full set of communications with his wife—even before

2019. These communications are directly relevant to the issues in this litigation, including Plaintiff's reputation before the Series aired. Defendants, therefore, again request the production of all responsive communications between Plaintiff and Ms. Cohen, even those pre-dating the signed release.

### E. Plaintiff's Failure to Produce all Responsive and Non-Privileged Documents

Plaintiff's document production appears to be missing some of the most integral documents in this case. Specifically, on February 14, Defendants' counsel notified Plaintiff's counsel that they had not produced a majority of Plaintiff's communications with Defendant Lisa Bryant—the very same communications that Plaintiff is relying upon to claim that Ms. Bryant made a promise to him that she breached in producing the Series. *See* Ex. J (Feb. 14, 2022 email 5:05 PM). Indeed, there were communications between Plaintiff and Ms. Bryant that were included in Defendants' production but that were missing from Plaintiff's production. These communications would have been captured by the parties' agreed-to search terms, which included, among other terms, "Bryant." *See* Ex. A (Oct. 15, 2021 email 12:57 PM). Plaintiff's counsel did not respond to these concerns.

On February 18, Defendants' counsel again emailed Plaintiff's counsel, seeking confirmation that they had run the agreed-upon search terms across the entirety of Plaintiff's documents. *See* Ex. J. (Feb. 18, 2022 email 2:32 PM). Again, Plaintiff's counsel ignored the request.

Then, on February 24, Plaintiff's counsel provided a "supplemental production," which they claimed contained the missing communications between Plaintiff and Ms. Bryant. Not only did Plaintiff's counsel fail to explain why these documents had not been produced previously, but this production was entirely deficient. It contained no metadata as is required by the parties' agreed-to ESI protocol. *See* Ex. A (Nov. 1, 2021 email 7:59 PM). Many of the emails were dozens

of pages long and included pages-upon-pages of indecipherable text. *See* Ex. 11 at pp. 4-16. And the production was *still* missing emails between Plaintiff and Ms. Bryant that Defendants had produced to Plaintiff. Defendants' counsel immediately notified Plaintiff's counsel of these defects. *See* Ex. K (Feb. 24, 2022 email 7:27 PM).

Later that evening, Plaintiff's counsel responded but refused to confirm that they had run the agreed-upon search terms. Instead, they stated: "We are comfortable with the document gathering and production process that was undertaken." *See* Ex. L (Feb. 24, 2022 email 8:30 PM). While Defendants are glad to hear Plaintiff's counsel is "comfortable," Defendants, understandably, are not. Plaintiff's counsel has either failed to properly collect and produce crucial documents, or Plaintiff and his wife have spoliated critical evidence. Thus, Defendants respectfully request that this Court order Plaintiff's counsel to confirm that they have, in fact, run the agreed-upon search terms across the full universe of Plaintiff's documents and that Plaintiff has not deleted any relevant emails.[3]

---

[3] Beyond issues with Plaintiff's collection, Plaintiff's counsel has played games with their responses and objections to Defendants' Requests for the Production of Documents. For example, in Defendants' RFP No. 22, Defendants sought "*All payments made by you to Edwards or Cassell related to the settlement of the Edwards/Dershowitz Litigation*." Ex. 7. Plaintiff responded that no such documents existed. *Id.* In reality, Plaintiff's insurance carrier made such payments on his behalf. Defendants only learned of these payments after reviewing Plaintiff's document production and finding a copy of the settlement agreement, which stated that these payments were made but which did not contain the payment amounts. Defendants' counsel raised the issue on February 18, and Plaintiff's counsel responded, "Your request asked for payments made by Alan to Edwards or Cassell. Alan did not make any payments. An insurance carrier did." *See* Ex. N (Feb. 24, 2022 email, response in red). Defendants' counsel reminded Plaintiff's counsel that Defendants' document requests defined "You" as "Plaintiff Alan Dershowitz and any agents, attorneys, representatives, employers, employees or other persons or entities acting for or on behalf of Plaintiff or in concert with Plaintiff." *Id.* (Feb. 25, 2022, response in blue). Plaintiff's insurance carrier undoubtedly made payments to Edwards and Cassell on his behalf. Accordingly, these payments were responsive to Defendants' document request as written but were wrongly withheld. While Plaintiff's counsel has now produced the relevant information, the games they have played with this response bring into question all of Plaintiff's discovery responses.

**F.**     **Plaintiff's Repeated Breaches of the Discovery and ESI Protocol**

Plaintiff's productions are also in frequent breach of the parties' Discovery and ESI Protocols. On November 1, 2021, pursuant to the Rules of this Court, the parties agreed to an ESI Protocol and search terms that Plaintiff would apply to his document collection and production. *See* Ex. A (Nov. 1, 2021 email 7:59 PM). Notwithstanding these ESI requirements, on February 1, 2022 (one day *after* the deadline imposed by the Court for the production of certain documents), Plaintiff's counsel made an untimely supplemental production, which included two documents— a 450-page PDF and a 1200-page PDF—without any metadata, load sheets, or other required data fields. *See* Ex. B (Feb. 1, 2022 email 9:07 PM). These PDFs combined dozens of emails between Plaintiff and third-parties and were, frankly, entirely unusable.

When Defendants' counsel asked Plaintiff's counsel to comply with the agreed-upon protocol, Plaintiff's counsel responded that Plaintiff could not comply because Plaintiff had manually pulled his own documents from his Harvard email account rather than getting them directly from Harvard. *See* Ex. E (Feb. 1, 2022 email 9:14 PM).[4]

Instead of taking steps to prevent breaches of the Discovery and ESI Protocols, as explained in Section E, *supra*, Plaintiff's counsel made two deficient supplemental document productions on February 24. The first production could not be accessed that day because no credentials were provided to Plaintiff's FTP site. The second supplemental production contained unreadable PDFs exported without any metadata.[5] *See* Ex. K (Feb. 24, 2022 email 7:27 PM). For example, as can

---

[4] Plaintiff's counsel did ultimately separate his massive PDFs into separate documents, but the newly separated documents still were not text-searchable and did not contain any metadata. Defendants' e-discovery vendor was therefore required to spend time converting each document into a text-searchable format to give these documents the bare-minimal utility.

[5] Conversely, even when Defendants had to produce Signal messages, which must be screenshotted due to end-to-end encryption and which, therefore, contain no metadata, Defendants manually

be seen on pages 4 through 16 of the attached sample document, the text was produced as a string of letters vertically on the page. *See* Ex. 11. The vertical text makes the document impossible for a witness to read and testify to, while the lack of metadata further hinders Defendants' ability to search the documents' contents and prepare for depositions. In total, Plaintiff's counsel has produced 4 productions without metadata, two of which are Plaintiff's documents and the other two are Ms. Cohen's documents.

Thus, Plaintiff's most recent productions have come in violation of this Court's order and the parties' own discovery protocol.

### G.    Plaintiff's Attempts to Block Damages Discovery

Most recently, Plaintiff has started to block Defendants' ability to obtain key damages discovery. In his Amended Complaint, Plaintiff explained that he was seeking damages for "personal and professional reputational harm, lost business opportunities, emotional harm, embarrassment, humiliation and pain and suffering" as well as punitive damages. *See* Am. Compl. (Dkt No. 39) ¶¶ 120-21, 125, 132, 137. In his Initial Disclosures, Plaintiff provided no computation of damages but again stated that he would be seeking damages for: (1) non-economic harm, including physical well-being, emotional and psychological damages and damages to reputation; (2) past and future economic losses, and loss of future engagements; and (3) punitive damages. *See* Exhibit 8. Plaintiff further explained that he would produce documents in support of these damages on a rolling basis and attached a July 2020 email chain, which he claimed showed that the Alaska Bar Association cancelled his speaking engagement. *Id.*

---

provided metadata to Plaintiff immediately upon request. *See* Ex. C (Dec. 29, 2021 email 2:03 PM). Plaintiff cannot breach a protocol while simultaneously holding Defendants to it.

4870-6546-5105v.5 0094895-000117

Plaintiff has subsequently refused to produce any documents supporting his claim for economic damages or showing what damages he purportedly suffered. For example, despite agreeing to produce his tax returns from 2019 to the present (RFP No. 44), Plaintiff never produced these returns. When Defendants' counsel presented Plaintiff's counsel with this deficiency last week, Plaintiff's counsel responded: "Alan is withdrawing his claim for economic damages and therefore these documents are no longer relevant to the issues in this case." *See* Ex. N (Feb. 24, 2022 email, response in red). When Defendants' counsel asked whether this meant that Plaintiff was no longer seeking damages for his alleged cancelled speaking engagement at the Alaska Bar Association, Plaintiff's counsel simply ignored our email. *See* Ex. N (Feb. 25, 2022 email, response in blue). Defendants have already spent hours of attorney time subpoenaing the Alaska Bar Association, reviewing their documents and potentially preparing for a deposition from the Alaska Bar Association.

Further, even if Plaintiff has withdrawn his claim for economic damages, his tax returns are still relevant to his broader claim that he was damaged by *Filthy Rich*. If Plaintiff is actively working and obtaining sufficient income after the Series, *any* claim of damages will be undercut. Thus, Defendants are nonetheless entitled to the tax returns that Plaintiff previously agreed to produce.

In addition, Plaintiff has obstructed Defendants' deposition of Dr. Dexter Sun, a fact witness listed on Plaintiff's Initial Disclosures, who was purportedly the physician that "treated Professor Dershowitz after the broadcast streaming of *Filthy Rich* for severe emotional distress to the point of having a mini-stroke." *See* Ex. 8. After weeks of attempting to schedule this deposition, Defendants' counsel was informed by Dr. Sun's office on February 25 that Dr. Sun would not appear for a deposition because Plaintiff "told Dr. Sun he was taking him off the list"

and that he should "disregard this deposition." *See* Ex. P. This was news to Defendants. Defendants' counsel immediately emailed Plaintiff's counsel and asked them to confirm that Plaintiff was no longer seeking damages for his "severe emotional distress." *See* Ex. O. Plaintiff's counsel would only state that Plaintiff was "withdrawing Dr. Sun as a witness." *Id.* Plaintiff's decision to remove Dr. Sun as an "emotional distress" damages witness—while the day before asserting that Plaintiff's wife would still be testifying to "Alan's emotional distress damages as a result of the documentary"—merely underscores Plaintiff's gamesmanship. *See* Ex. M (Feb. 24, 2022 email 8:29 PM). But litigation is not a game.

Plaintiff cannot simply tell a fact witness to "disregard" a deposition subpoena. At this point, Dr. Sun has already produced relevant documents, making him an essential witness. Indeed, from these documents, it appears that Plaintiff has been diagnosed with a medical condition that calls into question the accuracy of Plaintiff's memory.

Defendants, therefore, respectfully request that this Court order Plaintiff to stop attempting to block Defendants' ability to depose Dr. Sun and order Plaintiff to produce the tax returns that he already agreed to produce.

*    *    *    *

Plaintiff has admittedly breached the parties' Protective Order, breached this Court's January 27 order and breached the parties' Discovery and ESI Protocol twice.

While Defendants have continued to play by the rules, Plaintiff's counsel has made a complete mockery of the litigation process—treating litigation as an exercise in doing as little as

possible while simultaneously violating Court orders, missing critical deadlines, and forcing Defendants to treat Plaintiff's discovery responses as a game of clue to find all of the deficiencies.[6]

At the same time, Plaintiff removed fact witnesses (some without notice to Defendants) only after Defendants expended considerable time and resources to subpoena these third-parties, review their documents, and, if needed, prepare for their depositions.

Despite needing three discovery hearings in this case, never receiving a final privilege log, and still waiting on key communications between Plaintiff and Ms. Bryant, Defendants have never once asked for an extension to the discovery schedule and have continued to meet all Court-ordered deadlines. But at this point, it is clear that Plaintiff is withholding critical discovery that Defendants need to prepare for the upcoming depositions in this case—and discovery closes in one month.

This Court should not accept this unbalanced discovery process, which has significantly prejudiced Defendants. Plaintiff should be sanctioned for his failure to obey multiple Court orders, the Protective Order, and the Discovery and ESI Protocol. Failure to obey Court orders and discovery obligations is, of course, sanctionable—even allowing the entry of default judgment against the deficient party. *See* Fed. R. Civ. P. 37(b)(2)(A); Fed. R. Civ. P. 37(c); *Atmos Nation, LLC v. All Rise Records, Inc.*, No. 16-60032-CIV-COHN/SELTZER, 2017 WL 3635115, at *2 (S.D. Fla. Feb. 15, 2017) (affirming magistrate's order dismissing case with prejudice) (citing Fed. R. Civ. P. 37(b)(2)(A)); *Tarino v. Los Delfines Inc.*, No. 14-22871-CIV-COOKE/TORRES, 2015 WL 3761903, at *1-2 (S.D. Fla. June 11, 2015) (Torres, J.). In *Tarino*, for example, this Court

---

[6] By way of comparison, Defendants have continuously complied with the Protective Order, the Discovery and ESI Protocol, timely addressed any deficiency raised by Plaintiff, and provided an updated privilege log within 14 days of every document production in this case, as is required under Local Rule 26.1(e)(2)(D).

held there was an abundance of evidence to show that "Defendants' continued refusal to comply with the discovery rules and the Court's Orders was and is willful.  The outstanding discovery here was expressly compelled through court order, and Defendants have not provided any explanation whatsoever of why those orders have not been complied with."  2015 WL 3761903, at *2.  Here too, there is an abundance of evidence that Plaintiff refuses to comply with the discovery rules or this Court's orders.  Indeed, despite Defendants providing notice of the specific deadlines from this Court's January 27 order, Plaintiff violated the order in multiple ways.  At the upcoming March 3 conference, Defendants, therefore, seek all relief that this Court deems just and proper in light of Plaintiff's numerous breaches, violations, and delays.

## GOOD FAITH CERTIFICATION PER LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movants has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. Moreover, Defendants will continue to try and resolve these issues with Plaintiff in a cooperative manner up until the date of the scheduled hearing.

Dated: February 28, 2022

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
**Rachel F. Strom**
Rachel F. Strom (*admitted pro hac vice*)
**Amanda B. Levine**
Amanda B. Levine (*admitted pro hac vice*)
**Lindsey B. Cherner**
Lindsey B. Cherner (*admitted pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
rachelstrom@dwt.com
amandalevine@dwt.com
lindseycherner@dwt.com

**and**

**Deanna K. Shullman**
Florida Bar No. 514462
**Minch Minchin**
Florida Bar No. 1015950

SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
mminchin@shullmanfugate.com
*Attorneys for Defendants Netflix, Inc., Leroy &*
*Morton Productions LLC, RadicalMedia LLC, Lisa*
*Bryant and Joseph Berlinger*

16