# Cooper & Kirk

Lawyers
A Professional Limited Liability Company

| Nicole J. Moss | 1523 New Hampshire Avenue, N.W. | (202) 220-9636 |
| nmoss@cooperkirk.com | Washington, D.C. 20036 | Fax (202) 220-9601 |

March 14, 2022

**Via ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

  Re: *Giuffre v. Dershowitz*, Case No.: 19-cv-03377-LAP
     Opposition to Defendant's Letter Motion re: Production of Tax Returns

Dear Judge Preska:

  I write on Plaintiff's behalf in response to Defendant's Letter Motion for Relief from Order re: Production of Tax Returns, Doc. 434 (Mar. 9, 2022). Plaintiff opposes Defendant's request for relief and asks that the Court order Defendant to promptly obey its February 14 order requiring Defendant to produce his tax returns in discovery. Doc. 401, at 6 (Feb. 14, 2022).

  More than two years ago, Plaintiff and Defendant each demanded tax returns from the other. Both parties believed these documents to be relevant to the claims and counter claims at issue in this case. Yet Plaintiff long ago produced her tax returns to Defendant (apart from her 2020 return, which she withheld in the face of Defendant's intransience but immediately produced upon entry of the Court's Order making clear these documents should be produced), while Defendant has refused to produce his, even in the face of this Court's order requiring him to do so. This is unacceptable behavior that wastes the Court's time and the parties' resources.

  Simple fairness alone demands that Defendant produce his tax returns. The Court has already recognized as much, holding that any burden on Defendant is "minimal," "fairness weighs in favor of production as Plaintiff has already produced her tax returns," and "what's sauce for the goose is sauce for the gander." Doc. 401 at 6. It would be patently unfair to relieve Defendant of his obligation to produce his tax returns now, only *after* he has received tax returns from Plaintiff.

  That unfairness is made worse by the fact that the parties have previously briefed this issue to the Court, and the Court decided it, without Defendant raising the objections he now belatedly asserts. Defendant claims that his wife objects to the production of their joint returns, but even if this were a valid basis for withholding the returns, he could have and should have raised this objection before now, and certainly when the parties previously briefed this issue. Having failed to do so, this objection is waived. *See Fischer v. Forrest*, No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017); *Highland CDO Opportunity Master Fund, L.P. v. Citibank,* N.A., No. 12 Civ. 2827 (NRB), 2014 WL 7191044, at *2 (S.D.N.Y. Dec. 17, 2014); *In*

Hon. Loretta A. Preska
March 14, 2022
Page 2

*re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 12185082, at *2 (S.D.N.Y. Nov. 19, 2013).

      Defendant also now offers, for the first time, to waive his claims of economic loss and produce any 1099s he received reflecting income from Epstein as a substitute for the tax returns the Court ordered him to produce.[1] This curated replacement relief does not adequately address Plaintiff's interest in Defendant's tax returns. Plaintiff will seek to prove at trial that Defendant suffered no general reputational harm as a result of Plaintiff's allegedly defamatory statements, and Defendant's tax returns may support that assertion. If, for example, Defendant's income did not significantly decrease after Plaintiff made the statements he is challenging, that would support an inference that Defendant did not suffer general reputational harm. Alternatively, Defendant's tax returns may contain evidence of general reputational harm linked to Defendant's representation and public defense of President Donald Trump, rather than any comments of Plaintiff if any decreases in income took place during the period when he was defending President Trump. Non-economic damages for loss of reputation include "the loss of professional status and the ability to earn wages," *Cantu v. Flanigan*, 705 F. Supp. 2d 220, 227 (E.D.N.Y. 2010), so Plaintiff is likely to show that this evidence is relevant and admissible at trial. Plaintiff is entitled to a comprehensive picture of Defendant's income during the relevant period, and his tax returns are the least burdensome and obvious way for Plaintiff to obtain this relevant information.

      Lastly, this is not Defendant's first attempt to litigate an issue to a loss, only to *then* assert defenses and objections not yet raised. Previously, Defendant refused to provide the discovery documents from the *Netflix* case, forcing Plaintiff to file a motion to compel. The parties briefed that motion, and the Court ordered the documents to be produced. Doc. 401 at 5. Only then did Defendant assert that the protective order in the *Netflix* case would restrict his production, causing another round of letter briefs to the Court. Letter re Resp. to Netflix Letter from Def., Doc. 414 at 2 (Feb. 23, 2022). The Court should not indulge the Defendant's repeated impositions on the Court's time, resources, and patience.

      Plaintiff respectfully asks that Defendant's motion seeking relief from the order to produce his tax returns be denied.

Respectfully,

s/Nicole J. Moss
Nicole J. Moss

CC:    Counsel of Record (via ECF)

---

[1] As Plaintiff has also long sought evidence of payments from Epstein, this belated offer to produce 1099s that should have been produced years ago is not the compromise offer Defendant would have the Court believe. Rather this is just further evidence of Defendant's dilatory discovery tactics.