UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
VIRGINIA L. GIUFFRE,     :
                                                   :    No. 19 Civ 3377 (LAP)
                Plaintiff,         :
                                                  :
           - against -          :
                                                  :
ALAN DERSHOWITZ,     :
                                                  :
                Defendant.        :
---------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF THE NETFLIX NONPARTIES'
MOTION FOR A PROTECTIVE ORDER**


Rachel F. Strom
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Tel. 212.489.8230
Email: rachelstrom@dwt.com

*Attorneys for Nonparties Netflix, Inc., Leroy
& Morton Productions LLC, RadicalMedia
LLC, Lisa Bryant and Joseph Berlinger*

Nonparties Netflix, Inc. Leroy & Morton Productions LLC, RadicalMedia LLC, Lisa Bryant and Joseph Berlinger (collectively, the "Netflix Nonparties") respectfully submit this memorandum of law in support of their motion for a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(A).

## PRELIMINARY STATEMENT

The Netflix Nonparties have intervened in this action for the limited purpose of trying to prevent the disclosure of their confidential newsgathering materials to Plaintiff Virginia Giuffre ("Giuffre"). The documents sought by Giuffre – which the Court has ordered Defendant Alan Dershowitz ("Dershowitz") to produce – consist nearly entirely of journalistic notes, unedited video, and other newsgathering materials used to create the docu-series, *Jeffrey Epstein: Filthy Rich* ("*Filthy Rich*"). These documents were produced to Dershowitz by the Netflix Nonparties in a separate defamation lawsuit that Dershowitz brought against them in the U.S. District Court for the Southern District of Florida (the "Florida Action"). Normally, such materials would be squarely protected from disclosure by New York's shield law (N.Y. Civ. Rights Law § 79-h), and similar protections afforded under Florida law, as well as the First and Fourteenth Amendments. However, the Netflix Nonparties agreed to produce them in the Florida Action – subject to a stipulated confidentiality order – for the sole purpose of defending themselves against Dershowitz's meritless libel claims. Broader disclosure to Giuffre in this case, however, would impose an undue burden on the ability of the Netflix Nonparties' to conduct sensitive newsgathering about matters of public interest – activity protected by the First Amendment. *See, e.g.*, *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 35 (2d Cir. 1999) (warning that "exposure of press files to litigant scrutiny . . could [] impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of

1

the likelihood that they would be sucked into litigation"). No such intrusion is warranted here, even under a plain Rule 26(b) standard, because the editorial decisions that the Netflix Nonparties made when they reported on this litigation have relatively little importance in resolving the issues in this litigation. Indeed, as it relates to this litigation, *Filthy Rich* did not report on anything that Ms. Giuffre has not already said dozens of times before, including in this litigation. Thus, there is simply no reason that Ms. Giuffre needs to review every outtake, every draft or cut or outline that the Netflix Nonparties produced in the Florida Action. Accordingly, good cause exists for the Court to enter a protective order shielding the Netflix Nonparties' newsgathering materials from further disclosure in this case.

## FACTUAL BACKGROUND

### A. *Filthy Rich* and the Florida Action

In May 2020, the Netflix Nonparties began streaming the four-part docu-series, *Jeffrey Epstein: Filthy Rich*. Dkt. 374-13 ("Netflix Compl.") ¶ 1. On June 3, 2020, Dershowitz amended his counterclaim in this action, claiming that, as part of Giuffre's alleged "campaign to maliciously disparage and attach Dershowitz," she "made a number of defamatory statements about Dershowitz," including in *Filthy Rich*. Dkt. 127 ("Am. Counterclaim") ¶ 42. But he also alleges that Giuffre and/or her agents made nearly identical statements in the *Miami Herald*, *New Yorker*, and on The View. *Id.* ¶¶ 37-39.

Nearly a year later, on May 26, 2021, Dershowitz commenced the Florida Action. *Id*. Dershowitz alleges in that action that he was defamed by Giuffre's on-camera accusation in *Filthy Rich* that Dershowitz had sex with her six times while she was a minor. Netflix Compl. ¶¶ 72, 82, 104.

In order to defend the Florida Action, the Netflix Nonparties produced documents created during the production of *Filthy Rich* that relate to Dershowitz. They did so subject to the

2

protections of the protective order entered in that case on November 18, 2021 (the "Florida Protective Order"). Dkt. 414-1. Among other things, the Florida Protective Order requires that any party who receives a demand for documents marked confidential in the Florida Action must promptly notify the Designating Party in writing, in order to afford the Designating Party "an opportunity to try to protect its confidentiality interests." *Id.* § 8.

### B. Giuffre's Motion to Compel

On December 3, 2021, Giuffre moved to compel Dershowitz's production of documents produced by the Netflix Nonparties in the Florida Action. Dkt. 374. The Court granted Giuffre's motion on February 14, 2022. Dkt. 401. As the Court is now well aware, Dershowitz failed to comply with the Florida Protective Order because he never notified the Netflix Nonparties that their documents were being sought in this case, much less that such production had been compelled by this Court. *See* Dkt. 433 at 2 ("Counsel for Mr. Dershowitz conceded that the protective order was not followed but rested on the "no harm no foul" principal.").

### C. The Netflix Nonparties' Intervention

By letter dated February 21, 2022, the Netflix Nonparties asked this Court to be heard before their confidential material was produced. Dkt. 407. At a hearing on February 24, 2022, the Court ordered the Netflix Nonparties to confer with the parties to try to narrow the scope of the production. Dkt. 433 at 2. The only concession made by counsel for Giuffre was that she would not seek the Netflix Nonparties' financial information or insurance agreements. Dkt. 421-1 at 4:5-5:20. At the conclusion of the hearing, the Court reiterated its finding that the Netflix Nonparties' documents "certainly are relevant," and ordered that they be produced by Dershowitz. Dkt. 421-1 at 12:7-15.

### D. Judge Torres' Order

On March 3, 2022, at a hearing in the Florida Action before Magistrate Judge Edwin G. Torres, the Netflix Nonparties raised the issue of Dershowitz's noncompliance with the Florida Protective Order. Dkt. 427-1. To remedy Dershowitz's breach, and to try to "put us back in a place where we would have been" had Dershowitz not breached the Order, *id.* at 31:4-7, Judge Torres ordered Dershowitz not to re-produce in this litigation any materials produced in the Florida Action without first obtaining an order from Judge Torres. *Id.* at 30: 8-17.

On March 9, 2022, this Court issued an Order allowing the Netflix Nonparties to file the instant motion for relief. Dkt. 433. And, on March 14, 2022, Judge Torres entered an order on the public docket prohibiting Dershowitz from providing the Netflix Nonparties confidential discovery materials to Giuffre absent further order from that court. *Dershowitz v. Netflix*, No. 1:21-cv-21961-CMA, Dkt. 95.

## ARGUMENT

For the reasons set forth below, "good cause" exists to issue a protective order "forbidding the disclosure" of their confidential newsgathering materials in this case. Fed. R. Civ. P. 26(c)(1)(A).[1] While the Netflix Nonparties waived their shield law protection over the limited discovery materials they produced in the Florida Action, they did so because they had to in order to defend against claims by Dershowitz. That limited waiver does not mean that the interest in further dissemination of their newsgathering materials simply evaporates. This is particularly true here, where the very sources for the newsgathering now want full access to review *all* the editorial

---

[1] Alternatively, reconsideration of the Court's Order granting Giuffre's motion to compel would also be appropriate given that the Court did not previously have an opportunity to consider the Netflix Nonparties' confidentiality interests set forth herein. *See Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (holding that the decision by the court to reconsider a prior ruling rests within "the sound discretion of the district court") (citation omitted).

decisions that the press made about *them*. Because, as is relevant here, *Filthy Rich* only reports on what Giuffre has admittedly been saying for seven years, there is no reason that she needs the full editorial decisions that the Netflix Nonparties made when discussing this action.

I.  **EVEN OUTSIDE OF THE SHIELD LAW CONTEXT, THERE IS A STRONG INTEREST IN PROTECTING NEWSGATHERING MATERIALS**

Courts in the Second Circuit have long recognized that the need for robust discovery in civil actions must sometimes yield to the substantial national interest in limiting disclosure of confidential news materials. *See, e.g.*, *Gonzales*, 194 F.3d at 32 (holding that non-confidential newsgathering materials are subject to protections in light of the "broad[] concern for the potential harm to the 'paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters'") (quoting *Baker v. F. & F. Inv.*, 470 F.2d 778, 782 (2d Cir. 1972)). *See also von Bulow v. von Bulow*, 811 F.2d 136, 143 (2d Cir. 1987) ("[T]he compelled production of a reporter's [nonconfidential] materials may substantially undercut the public policy favoring the free flow of information to the public [].") (citation omitted).

Particularly relevant here, the court in *Gonzales* warned against permitting broad discovery from journalists in litigations relating to high-profile entities:

> [I]t would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press . . . and could otherwise impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation. . . . And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Id.* at 35. *See also United States v. LaRouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988) ("We discern a lurking and subtle threat to journalists and their employers if disclosure of outtakes,

5

notes, and other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly, compelled.").

These concerns are particular acute here. The portion of *Filthy Rich* at issue in the Florida Action is the Netflix Nonparties' news reporting about ***this litigation***. *See* Netflix's Answer, No. 1:21-cv-21961, Dkt. 42 ¶ 110 ("*Filthy Rich* provides a privileged fair report of the legal dispute between Dershowitz and Giuffre []."). It would substantially burden news coverage of the judicial branch if reporters and documentarians believed there was a good chance that their newsgathering materials could be turned over to the subjects of their reporting and used as evidence in the very litigation being covered. As the Second Circuit feared in *Gonzalez*, allowing such disclosure in this case would send a message to "potential sources" who will likely be "deterred from speaking to the press" for fear of being sucked into litigation or having their information turned over to the parties. *Gonzalez*, 194 F. 3d at 35.

During the parties' conference before this Court, counsel for Giuffre waved away these arguments, claiming that the Netflix Nonparties "crossed that rubicon when they chose to waive their privilege." Dkt. 421-1 at 10:24-25. Not so. The burden posed by public exposure of newsgathering materials does not disappear just because the reporter's privilege has been waived – particularly when the waiver is limited and made for the sole purpose of allowing a media defendant to defend itself against a defamation claim. Rather, as the Supreme Court explained in the context of a case involving compelled testimony from a reporter, courts have "repeatedly shown" "solicitude" for the media's First Amendment freedoms, and must "balance . . . these vital

6

constitutional and societal interests on a case-by-case basis . . . ." *Branzburg v. Hayes*, 408 U.S. 665, 709-10 (1972) (Powell, J., concurring).[2]

The Netflix Nonparties ask this Court to protect precisely those interests in deciding this motion.

## II. THE BURDEN OF THE PRODUCTION OF THE CONFIDENTIAL NEWSGATHERING MATERIALS SOUGHT BY GIUFFRE OUTWEIGH THE POTENTIAL BENEFIT

Under Fed. R. Civ. P. 26(b), a party is *only* able to obtain discovery on a matter that is "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." A court may grant a protective order if the discovery sought is outside of this scope. Fed. R. Civ. P. 26(c). That is just the case here.

The subject matter of this case is undeniably intertwined with that of the Florida Action. But it does not follow that just because the subject matter is related, that Giuffre's document request outweighs society's "paramount public interest in the maintenance of a vigorous, aggressive and independent press." *Baker*, 470 F.2d at 782.

*First*, Giuffre argues that she needs the Netflix Nonparties' newsgathering materials because Dershowitz amended his Counterclaim to allege that he was defamed by her statement about him in *Filthy Rich. See* Dkt. 374 at 10 (citing Am. Counterclaim ¶ 42(a)). But as Dershowitz alleges in his Amended Counterclaim, Giuffre has in fact made that same statement, for years, including in a sworn declaration filed in the CVRA Action in January 2015 (Am. Counterclaim ¶ 20), in an article in the *Miami Herald* in 2018 (*id.* ¶¶ 37-39), and in an August 2019 article

---

[2] *See also In re Grand Jury Proceedings (Ridenhour)*, 520 So. 2d 372, 376 (La. 1988) ( "[A] trial judge should balance the public interest in having all relevant testimony with the possible 'chilling effect' the disclosure will have on the freedom of the press and the ability to gather news.")

7

published by the *New Yorker* (*id.* ¶ 41).  It is difficult to understand how unpublished newsgathering materials might help defend against Dershowitz's defamation counterclaim, particularly when there is no dispute that her on-camera statement in *Filthy Rich* was accurately presented, and is consistent with her litigation position since 2015.

*Second*, Giuffre contends that she needs the Netflix Nonparties' newsgathering materials because they might contain some of the "evidence" that Dershowitz cited in his Amended Counterclaim to support his defamation allegations.  Dkt. 374 at 10.  But these documents identified as "evidence" in Dershowitz's Amended Counterclaim are clearly the parties' documents, not the Netflix Nonparties' newsgathering materials (*i.e.*, Giuffre's emails and book manuscript (Am. Counterclaim ¶¶ 2, 26-29); Giuffre's FBI interview (*id.* ¶ 30); and Dershowitz's "travel records, credit card statements, phone records" (*id.* ¶ 34)).  Such documents presumably have already been, or will be, produced in the normal course of party discovery.  They do not form a basis for compelling production of confidential newsgathering materials.

*Third*, at the very least, Giuffre's request is overbroad.  Giuffre's counsel suggested during a meet and confer that they need to see if the Netflix Nonparties have other incriminating evidence on Dershowitz in order to defend against his counterclaim.  But if that is the case, Giuffre certainly does not need *every* outtake, cut or draft that the Netflix Nonparties produced.  She could simply tailor her request to outtakes of interviews that mention Dershowitz – and not request the full production from the Netflix Nonparties.

## CONCLUSION

For the foregoing reasons, the Court should enter an order shielding from discovery the Netflix Nonparties confidential newsgathering materials that were produced in the Florida Action.

Dated: March 16, 2022

                                                  Respectfully submitted,

                                                  By:  */s/ Rachel F. Strom*

                                                  DAVIS WRIGHT TREMAINE LLP
Rachel F. Strom
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Tel. 212.489.8230
Email: Rachelstrom@dwt.com

*Attorneys for Nonparties Netflix, Inc.,
Leroy & Morton Productions LLC,
RadicalMedia LLC, Lisa Bryant and
Joseph Berlinger*

9

## CERTIFICATION PURSUANT TO FED. R. CIV. P. 26(c)(1)

Pursuant to Fed. R. Civ. P. 26(c)(1), the Netflix Nonparties have in good faith conferred with the parties to this action in an effort to resolve the dispute court action.

*/s/ Rachel F. Strom*
Rachel F. Strom
