UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA L. GIUFFRE, | |
| Plaintiff / Counterclaim Defendant, | |
| v. | Case No. 19-cv-03377-LAP |
| ALAN DERSHOWITZ, | |
| Defendant / Counterclaim Plaintiff. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO NETFLIX NONPARTIES' MOTION FOR A PROTECTIVE ORDER**

## BACKGROUND

On November 18, 2021, Chief Judge Cecilia M. Altonaga, of the United States District Court for the Southern District of Florida, entered a protective order governing certain documents produced in the case captioned *Alan Dershowitz v. Netflix, Inc.*, No. 1:21-cv-21961-CMA ("*Netflix* Action"). *See generally* S.D. Fla. Stipulated Protective Order (Nov. 18, 2021), filed in this action as Doc. 414-1 (hereafter, the "*Netflix* protective order"). In a section titled "Protected Material Subpoenaed or Ordered Produced in Other Litigation," the *Netflix* protective order required that "[i]f a Party is served with a subpoena, demand *or a court order issued in another litigation*," the receiving party should "notify in writing" the party to whom the documents belong that such request had been made, and should "notify in writing" the party seeking those documents that the *Netflix* protective order exists. Additionally, the protective order required that the recipient of the court order or subpoena "[c]ooperate with respect to all reasonable procedures sought to be pursued by the [party] whose Protected Material may be affected," so as "to afford the [party] … an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued." *Netflix* Protective Order at 14.

At the time the *Netflix* protective order was entered, Defendant was in possession of requests for production from Plaintiff seeking all documents that had been produced to him by any party in the *Netflix* litigation, including the Netflix Nonparties. Yet even *after* the *Netflix* protective order was entered, Defendant did not notify Plaintiff or the Netflix Nonparties about either the protective order's existence or about Plaintiff's request. When Plaintiff moved to compel production of the *Netflix* documents, Doc. 374 at 10–12 (Dec. 3, 2021), Defendant opposed, Doc. 381 at 8 (Dec. 13, 2021), but he again failed to mention the *Netflix* protective order. It was not until *after* this Court granted Plaintiff's motion to compel, Doc. 401, at 5 (Feb. 14, 2022), that the Netflix Nonparties first learned (independent of any action by Defendant) that Plaintiff was

1

seeking their documents in this action, and that this Court had ordered Defendant to produce them. The Netflix Nonparties then moved to intervene here.

At a hearing before this Court on February 25, 2022, the Netflix Nonparties admitted that they had waived their journalist privilege over the documents at issue. Feb. 25 Hearing Tr. 8:17–19. Nonetheless, they claimed that requiring Defendant to disclose the materials in his possession to Plaintiff would "burden" Netflix, and that the documents were irrelevant to these proceedings. *Id*. at 6:6–19, 8:17–25. The Court disagreed, and "reiterate[d]" that the *Netflix* "documents certainly are relevant in that they are statements which are the subject of claims and counterclaims," and "order[ed] them to be produced." *Id*. at 12:7–10. The Netflix Nonparties also accurately informed this Court that, through the meet-and-confer process, Plaintiff and her attorneys had "agreed to sign onto the protective order in our case in Florida," so that any documents shared with Plaintiff would be just as protected in her possession as they are in Defendant's. *Id*. at 4:10–11.

On March 3, 2022, the Netflix Nonparties returned to Magistrate Judge Torres, in the Southern District of Florida, to seek relief for Defendant's violation of the *Netflix* protective order. Judge Torres recognized—and the Netflix Nonparties agreed—that the *Netflix* protective order "doesn't preclude another judge in her jurisdiction from saying I have a compelling need for the production," Tr. of Hearing in *Netflix* Action, Doc. 427-1 at 15:10–14 (Mar. 3, 2022) ("*Netflix* Hearing Tr."), but merely "provides that the designating party—in this case the Netflix Nonparties—are entitled to 'try to protect their confidentiality interests." *Id*. at 21:23–22:2. Had Defendant complied with this notice provision as required, the Netflix Nonparties "would have an opportunity to seek intervention for the limited purpose of opposing the motion" to compel

2

production of the *Netflix* documents before that motion had been decided. *Id*. at 15:17–18, 16:8–10.

Judge Torres also recognized, however, that even if the Netflix Nonparties had been given the opportunity to intervene earlier in this case, "the judge in New York could have then decided, one way or the other, that she was going to compel the production or not notwithstanding [the Netflix Nonparties'] claim of confidentiality." *Id*. at 16:15–18. This Court, in Judge Torres' words, "is absolutely 100 percent entitled to" "exercise her jurisdiction" and order Defendant to produce the *Netflix* documents in his possession to Plaintiff. *Id*. at 17:14–17. But as a way of remedying Defendant's breach of the *Netflix* protective order, Judge Torres then ordered Defendant *not* to produce the documents to Plaintiff to "put us back in a place we would have been before," had Defendant complied with the *Netflix* protective order. *Id*. at 31:5–6. Judge Torres viewed this as a "cure" because it would give the Netflix Nonparties the ability to seek procedural rights in this Court that the *Netflix* protective order had contemplated. *Id*. at 32:14–15. Judge Torres made clear: "I am not doing this in derogation of Judge Preska. I am simply enforcing our jurisdiction, which will therefore allow [the Netflix Nonparties] additional time to present whatever arguments [they] think [they]'re entitled to present and may make a difference." *Id*. at 32:18–22.

On March 9, 2022, this Court set a briefing schedule under which the Netflix Nonparties could file the instant motion for a protective order. On March 14, 2022, Judge Torres entered an order on the public docket reflecting the oral order he had given at the March 3, 2022 discovery hearing. Judge Torres' written order prohibited Defendant from producing the Netflix Nonparties' confidential documents to Plaintiff until his further order.

On March 16, 2022, the Netflix Nonparties filed this motion for a protective order.

3

Meanwhile, Plaintiff sought to defer her deposition—then scheduled to take place on March 31 and April 1—until the Netflix Nonparties' motion was resolved and their documents, produced to Plaintiff (if they are ever going to be produced). On March 18, 2022, the Court granted Plaintiff's motion. On the understanding that Defendant would work to accelerate the briefing and hearing on the Netflix Nonparties' motion, the Court ordered the parties to work in good faith in order to get this done as quickly as possible consistent with their schedules with the goal that Plaintiff would sit for her deposition within ten days of receiving the documents or a court order granting the Netflix Nonparties' motion. Tr. at 38:3–40:8, 41:4–24.

Unbeknownst to the Court and Plaintiff at the March 18 hearing, on March 14, 2022, Defendant and the Netflix Nonparties had signed a stipulation dismissing their claims against each other in the *Netflix* action. Doc. 443-1 (Stipulation of Dismissal). Plaintiff learned of this stipulation after it was filed on the public docket in the *Netflix* action on March 18. Because the *Netflix* protective order requires the destruction of confidential documents 60 days after the case is disposed, *Netflix* Protective Order at 17, Plaintiff advised the Court that she was willing to drop her request for the production of the *Netflix* discovery materials and proceed with scheduling Plaintiff's deposition so long as Defendant would agree that neither he nor his attorneys had viewed or would view in the future (or otherwise obtain knowledge of) the content of the *Netflix* discovery materials. Doc. 443. Defendant declined Plaintiff's offer, agreed (in an about-face from his prior position, *see* Doc. 380, at 8) that the *Netflix* discovery materials are relevant to this litigation, and now takes the position that the parties should proceed under the prior briefing schedule set by the Court rather than try to expedite resolution of this issue.[1] Doc. 445.

---

[1] The prior schedule will have the question whether Defendant must produce the *Netflix* materials resolved at the very soonest on April 6, 2022. At that point, assuming the Court orders

4

Accordingly, Plaintiff now files this memorandum opposing the Netflix Nonparties' motion for a protective order.

## ARGUMENT

**I.   The Netflix Nonparties Waived Their Journalist Privilege By Voluntarily Producing Confidential Documents to Defendant.**

The Netflix Nonparties invoke the journalist privilege and the public policies it promotes, but both are inapplicable because the Netflix Nonparties voluntarily waived any privilege they held over the *Netflix* discovery documents by voluntarily producing them to Defendant.

As with other privileges, the First Amendment's qualified journalist's privilege may be waived. *Ayala v. Ayers*, 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009); *see also Simon v. Nw. Univ.*, 321 F.R.D. 328, 332-33 (N.D. Ill. 2017) (holding that journalist waived privilege over documentary materials); *Guice-Mills v. Forbes*, 12 Misc. 3d 852, 857–58, 819 N.Y.S. 2d 432, 436 (N.Y. Sup. Ct. 2006) (same). New York's Shield Law also explicitly recognizes waiver: "Notwithstanding the provisions of this section, a person entitled to claim the [exemption of journalists for contempt] … *waives such exemption* if such person voluntarily discloses or consents to disclosure of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section." N.Y. CIVIL RIGHTS LAW § 79-h(g) (emphasis added).

The Netflix Nonparties admit they waived any journalist's privilege they possessed over the *Netflix* discovery documents when they produced those materials to Defendant voluntarily.

---

production, Defendant will need to return to the U.S. District Court for the Southern District of Florida to obtain relief from Judge Torres's order *and* presumably from the *Netflix* protective order, which requires him to destroy or return the documents within sixty days. While Plaintiff will address the scheduling implications of Defendant's change in position separately in a letter to the Court, Plaintiff does wish to forecast that given known conflicts of both Plaintiff, Plaintiff's lead counsel, and lead counsel for Defendant, scheduling this deposition prior to the end of Mr. Howard Cooper's May criminal trial seems highly unlikely.

5

Mem. of Law in Support of the Netflix Nonparties' Mot. for a Protective Order, Doc. 440, at 2 (March 16, 2022). Yet the Netflix Nonparties continue to invoke the very same (waived) press protections by recharacterizing them as reasons that a production here would impose an "undue burden." *See*, *e.g.*, Doc. 440 at 1, 6–7 (claiming that further disclosing the *Netflix* discovery documents to Plaintiff will "substantially burden news coverage of the judicial branch" and will "send a message to potential sources"). This argument is flawed in important ways.

*First*, the "paramount public interest in the maintenance of a vigorous, aggressive and independent press," *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 33 (2d Cir. 1999), which the Netflix Nonparties invoke, is a public policy rationale that explains why they might have been entitled to a journalist's privilege *if they had maintained the confidentiality* of the *Netflix* discovery documents. They did not. The Netflix Nonparties do not cite a single authority invoking and enforcing a journalist's privilege where the journalist has already voluntarily produced the material to others. *See Gonzales*, 194 F.3d at 36–37 (ordering Dateline to produce previously-undisclosed journalistic documents over Dateline's objection); *von Bulow v. von Bulow*, 811 F.2d 136, (2d Cir. 1987) (ordering party to produce, in the first instance, documents allegedly covered by journalistic privilege); *Baker v. F and F Inv.*, 470 F.2d 778, 782–83 (2d Cir. 1972) (affirming refusal to compel journalist to reveal privileged material where no waiver occurred).

*Second*, any "burden" or policy concerns are adequately alleviated here by requiring the parties to sign the *Netflix* protective order (with some necessary minor modifications)[2] prohibiting the public disclosure of the *Netflix* discovery materials or by requiring the parties to bring these

---

[2] The provisions in the *Netflix* protective order requiring the sealing procedures of the Southern District of Florida when confidential materials are filed on the docket clearly need to be changed to those of this Court. Moreover, the requirement that those materials be returned or destroyed within 60 days of the resolution of the *Netflix* litigation must be amended to require return or destruction within 60 days of resolution of this matter, instead.

materials under a protective order in this case. Indeed, this Court previously considered weighty third-party privacy interests in maintaining confidentiality over the *Maxwell* materials but nevertheless ordered Plaintiff to produce those materials to Defendant, subject to a protective order, to the extent that they concerned Defendant. Order, Doc. 154 (Aug. 4, 2020). Given that the Netflix Nonparties have already limited their previous production to Defendant to materials about Defendant or Plaintiff's accusations against him, the same principle would require disclosure here, subject to a protective order.

II.     **The *Netflix* Discovery Documents Are Indisputably Relevant to This Case, As the Court Has Twice Held.**

The Court has already held twice that the *Netflix* discovery documents are relevant to this case, Doc. 401 at 5, and Feb. 25 Hearing Tr. at 12:8–10, and should do so again. Plaintiff's statements in the *Filthy Rich* documentary form the basis of Defendant's *only* legally viable counter-claim. As explained in Plaintiff's motion to dismiss, all of the other statements Defendant relies on are not actionable, either because they are privileged or because they are not attributable to Plaintiff. Pl's Memo. of Law iso Mot. to Dismiss Counterclaims, Doc. 120 at 2–15 (May 19, 2020).

Any outtakes from Plaintiff's *Filthy Rich* interviews are highly relevant to provide context and detail to the only statement Defendant adequately alleges to have defamed him. Courts often require the production of such material in similar circumstances, even where a journalist privilege still exists, because of its undeniable relevance. *See, e.g., Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1141–43 (10th Cir. 2014) (plaintiff in defamation action entitled to obtain outtakes because "[t]he object of discovery—the original footage—is the best and perhaps only evidence from which a fact-finder can determine" whether plaintiff was defamed); *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 36 (2nd Cir. 1999) (deputy obtained recording of

his encounter with undercover reporter because "[t]he outtakes are clearly relevant to a significant issue in the case," and "can provide unimpeachably objective evidence of" conduct at issue).

Notes and communications, to the extent they are contained in the *Netflix* discovery materials, are also highly relevant because they may reveal evidence corroborating Plaintiff's account of events. Potential corroborating evidence would not only go to the core of the factual disputes in this action but would also tend to reveal Defendant's state of mind, to the extent that the Netflix Nonparties shared that corroborating evidence with Defendant during his *Filthy Rich* interviews.

The *Netflix* discovery materials are indisputably relevant to these proceedings and should be produced to Plaintiff.

### III. The Netflix Nonparties Should Not Be Permitted To Belatedly Tailor Their Requests.

The Netflix Nonparties seek, in the alternative, to "tailor" Plaintiff's document request to "outtakes of interviews that mention Dershowitz" rather than to "request the full production," but the time for such a proposal has long since passed. Throughout Plaintiff's meet-and-confers, the Netflix Nonparties have taken an all-or-nothing approach. *Netflix* Hearing Tr. at 27:6–13 (describing meet-and-confer process with Plaintiff, "MS. STROM: 'Ms. Giuffre said there are certain things we won't ask for, and I said great. … But I didn't carve that out, and I continued to object to the whole entire thing.'"). Given the obvious relevance of a large part of the *Netflix* discovery materials, the Netflix Nonparties should not now be heard to argue that *some* of these materials are irrelevant.

Additionally, any tailoring would impose a commensurate burden on Defendant, who would then need to review the documents to make a selective production based on whatever

tailoring criteria are reached. That would further delay the production and impose additional expense.

Having refused to work with Plaintiff to find a narrower category of documents for Defendant to produce, the Netflix Nonparties should not now be permitted the opportunity to seek "tailored" requests. Had they done so earlier, this briefing and the delay it has occasioned may not have been necessary. The Netflix Nonparties preferred an all-or-nothing strategy, so they should not be permitted to avoid a "nothing" result by seeking a belated compromise.

## CONCLUSION

No one disputes this Court's power to order Defendant to produce to Plaintiff the *Netflix* discovery documents in his possession. When announcing that he would order Defendant *not* to produce the *Netflix* discovery documents, Judge Torres himself recognized—and the Netflix Nonparties agreed—that this Court may nonetheless order the production Plaintiff seeks. *Netflix* Hearing Tr. at 15:9–15 (THE COURT: "… [B]ecause remember, the fact that we have a protective order, that doesn't preclude, right, that doesn't preclude another judge in her jurisdiction from saying I have a compelling need for the production." MS STROM: "Absolutely."). Moreover, as Plaintiff has shown, (1) the Netflix Nonparties waived any journalist privilege they possessed over the documents they voluntarily produced to Defendant; (2) the Netflix Nonparties would not be unduly burdened within the meaning of Federal Rule of Civil Procedure 26 if this Court continues to compel Defendant's production; and (3) the *Netflix* discovery documents at issue are highly relevant to the claims in this case.

Accordingly, unless Defendant will forego reviewing the Netflix Nonparties' confidential documents, the Court should order Defendant to produce to Plaintiff the documents in his possession, excepting only those documents Plaintiff has agreed to be irrelevant (certain financial- and insurance-related documents).

Date: March 23, 2022                    Respectfully submitted,

s/ Charles J. Cooper
Charles J. Cooper*
Michael W. Kirk
Nicole J. Moss*
Haley N. Proctor*
COOPER & KIRK PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
(202) 220-9600
*Admitted PHV

*Attorney for Plaintiff Virginia Giuffre*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that the foregoing was served upon all counsel of record using the CM/ECF system.

s/ Charles J. Cooper
Charles J. Cooper*
COOPER & KIRK PLLC
1523 New Hampshire Ave. NW Washington, DC 20036
(202) 220-9600
*Admitted PHV

*Attorney for Plaintiff Virginia Giuffre*