

Christian G. Kiely
ckiely@toddweld.com

**REDACTED VERSION**    April 18, 2022
**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

>    Re:    *Giuffre v. Dershowitz*, Case No.: 19-cv-03377-LAP
>           Response to Plaintiff's Designation of Documents for *In Camera* Review
>           (ECF No. 458)

Your Honor:

Defendant Alan Dershowitz ("Prof. Dershowitz") hereby responds to Plaintiff's letter, ECF No. 458, in which she designates certain emails for *in camera* review pursuant to the Court's Order (ECF No. 401), and makes further arguments challenging the privileged nature of those emails. Although the Court simply directed Plaintiff to designate five emails from each of three categories for *in camera* review, and did not invite further argument, Prof. Dershowitz responds below to certain arguments which Plaintiff raises for the first time in her letter, and otherwise incorporates fully by reference the arguments defending his privilege assertions which he set forth in detail in his prior submission on this topic, ECF No. 380.

Simultaneously with the filing of this letter, we have submitted via email to Chambers copies of the emails which Plaintiff designated for *in camera* review.

>    I.    **The emails designated by Plaintiff over which Prof. Dershowitz has asserted the common interest privilege are all validly privileged.**

Prof. Dershowitz has already cited the applicable law governing the common interest privilege under New York law and in the Second Circuit, *see* ECF No. 380 at 3-5, and refers the Court to that prior briefing. Plaintiff in her letter presents no new arguments regarding Prof. Dershowitz's invocation of a common interest privilege between himself and Jeffrey Epstein. She continues to rely on an interpretation of the common interest privilege which is so narrow as to effectively render it a nullity, and which would equally invalidate her own invocations of the common interest privilege.

Plaintiff focuses on a supposed distinction between common legal interests and common factual interests and argues that only the former is sufficient to support a common interest agreement under New York and Second Circuit law. Plaintiff claims that New York courts have expressly rejected the Restatement view that "[t]he communication must relate to the common interest, which *may be either legal, factual, or strategic in character*" in order to be privileged pursuant to a common interest agreement. Restatement (Third) of the Law Governing Lawyers §



76, cmt. e (2000) (emphasis supplied). But Plaintiff does not actually cite any case in which any court has expressly rejected this sensible formulation. The cases which Plaintiff does cite stand for a far less extraordinary proposition: that the common interest must be legal in nature – in the sense that it is related to an ongoing or anticipated legal proceeding – rather than simply a commercial or other non-legal interest. *See Schaeffler v. United States*, 806 F.3d 34, 41 (2d Cir. 2015). The defense of claims asserted in legal proceedings, like the claims of conspiracy asserted by Plaintiff against Prof. Dershowitz and Epstein, is by definition "of a sufficient legal character" to give rise to a valid common interest privilege. *See id.*

Most significantly, Plaintiff in her most recent submission entirely ignores that beginning with the CVRA Joinder Motion filed on December 30, 2014, through the filing of her Second Amended Complaint in this case on November 16, 2021, Plaintiff continuously accused Prof. Dershowitz and Jeffrey Epstein of conspiring with one another to sexually traffic her, and later, to defame her. *See* ECF No. 380 at 4. Plaintiff does not cite a single case in which alleged co-conspirators were denied the protections of the common interest doctrine, and for good reason, as common interest agreements among alleged co-conspirators are perhaps the most quintessential application of the doctrine.

Nor is there any merit to Plaintiff's arguments that apparent occasional disagreements between Prof. Dershowitz and Epstein regarding strategy defeat their common interest or render communications which manifest those supposed disagreements non-privileged. Obviously, disagreements over strategy occur routinely among participants in joint defense agreements. It is only when those participants actually pursue strategies that are adverse to one another that they lose the protections afforded by a joint defense agreement. *See In re Jemsek Clinic, P.A.*, No. 06-31766, 2013 WL 3994663, at *13 (Bankr. W.D.N.C. Aug. 2, 2013) ("When two parties with a joint legal interest discuss their joint legal strategy, it is reasonable to assume that there will be some disagreements. Isolated disagreements over how to handle claims are not detrimental to the common interest privilege.").

Further, Plaintiff's efforts to narrowly construe the 2015 written Joint Defense Agreement at issue here run headlong into the plain language of that agreement, which expressly provides that it governs not only communications concerning the CVRA Action and the *Edwards v. Dershowitz* litigation, but also "*any other proceeding and/or investigation relating to or arising from*" those matters. ECF No. 373-4.[1] It strains the English language for Plaintiff to argue that subsequent litigations, anticipated litigations, and investigations involving Plaintiff's accusations against Prof. Dershowitz do not "relate to or arise from" those matters which themselves centered on Plaintiff's accusations against Prof. Dershowitz. Regardless, even if more recent communications, such as those involving this litigation, did not expressly come within the scope of the 2015 Joint Defense

---

[1] Prof. Dershowitz submits herewith as <u>Exhibit A</u> a copy of a December 15, 2015 email from the office of Martin Weinberg, counsel for Mr. Epstein, to Mary Borja, counsel for Prof. Dershowitz, attaching an executed copy of the signature page to the Joint Defense Agreement which has previously been submitted to the Court at ECF No. 373-4.



Agreement, there is substantial evidence, including the subject lines of the emails themselves (which have been provided to Plaintiff via Prof. Dershowitz's privilege logs), which indicates that Prof. Dershowitz and Epstein considered their communications concerning Plaintiff's accusations and related matters to be made pursuant to a joint defense agreement through the time of Epstein's death.

Finally, it bears repeating that there is no requirement that counsel be included on communications between parties to a common interest agreement in order for those communications to be privileged. "If information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication." *Gucci Am., Inc. v. Gucci*, 2008 WL 5251989, at *1 (S.D.N.Y. Dec. 15, 2008). *See also Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 21–22 (D. Mass. 2017) ("The fact that communications are between non-lawyers does not per se waive the privilege" where the communications "are either seeking or discussing legal advice."); *INVISTA North America S.a.r.l. v. M & G USA Corp.*, 2013 WL 12171721 (D. Del. June 25, 2013) (common-interest doctrine protects communications between non-attorneys); Restatement (Third) of the Law Governing Lawyers § 76, cmt. d (2000) ("Under the [common interest] privilege, any member of a client set—a client, the client's agent for communication, the client's lawyer, and the lawyer's agent (see § 70)—can exchange communications with members of a similar client set.").

We will now address each individual document in this category which Plaintiff has designated for *in camera* review:

> 1. "Ranch. Confidential," Doc. ID 111602, withheld as a joint defense/common interest communication concerning Jane Doe #1, et al. v. United States, Case No. 08-80736 (S.D. Fla.) ("CVRA Action"), dated February 6, 2015.
>
> This email chain contains a series of communications dated February 5 and 6, 2015, between Prof. Dershowitz and Jeffrey Epstein, which Prof. Dershowitz then forwarded to longtime Epstein attorney Martin Weinberg. The emails clearly concern coordinating a joint defense against Plaintiff's claims in the CVRA Action that Epstein sexually trafficked Plaintiff to Prof. Dershowitz, and in particular, ██████████████████████████████████████████████████████████████ ███████████████
>
> 2. "REDACTED," Doc. ID 114762, withheld as a joint defense/common interest communication concerning Edwards v. Dershowitz, dated April 19, 2015.
>
> This is an email dated April 19, 2015 from Ghislaine Maxwell to Epstein, and two of his attorneys, Prof. Dershowitz and Darren Indyke, concerning Plaintiff's allegations made in the CVRA Action against Epstein, Maxwell, and Prof. Dershowitz. It falls squarely within



Maxwell's joint defense agreement with Epstein concerning Plaintiff's accusations implicating the two of them.

3. "Dershowitz Claims Alleged Sex Victim Tried to Extort $1 Billion | Daily Business Review," Doc. ID 493068, withheld as a joint defense/common-interest communication concerning *Edwards v. Dershowitz*, dated October 16, 2015.

This email chain consists of communications between Prof. Dershowitz and Epstein concerning Prof. Dershowitz's deposition in the *Edwards v. Dershowitz* litigation, a matter which is expressly within the scope of the written Joint Defense Agreement, *see* ECF No. 373-4 at p. 1.

4. "Please csll me." Doc. ID 90433, withheld as a joint defense/common interest communication concerning Giuffre accusations v. Dershowitz, dated May 19, 2019.

This email chain consists of communications between Prof. Dershowitz and Epstein concerning Prof. Dershowitz's appearance on The View, during which he addressed Plaintiff's accusations against him, and in particular, ███████████████ ███████████████

5. "Villafonte email of sept 2007," Doc. ID 509849, withheld as a joint defense/common interest communication concerning this action and Giuffre accusations v. Dershowitz, dated September 16, 2019.



**II.    The emails designated by Plaintiff between Prof. Dershowitz and various attorney associates are privileged as confidential communications for purposes of seeking or receiving legal advice.**

As with the issues surrounding his invocation of the common interest privilege, Prof. Dershowitz refers the Court to his prior submission, ECF No. 380 at pp. 7-8, for the law governing Prof. Dershowitz's claims of privilege over confidential communications with lawyer associates concerning the various proceedings arising from Plaintiff's accusations. Because Plaintiff continues to harp on the absence of engagement letters or fee arrangements with these lawyer



associates, Prof. Dershowitz must again emphasize that "a claim of attorney-client privilege does not depend on [a] formal employment relationship but on whether the client had a reasonable expectation of confidentiality under the circumstances." *Coiro v. Fed Cap Custodial Serv., Inc.*, 5 Misc. 3d 1002(A), 798 N.Y.S.2d 708 (Sup. Ct. 2004). "The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." *United States v. Dennis*, 843 F.2d 652, 657 (2d Cir. 1988). "[I]t is the client's intent and purpose which governs whether or not an attorney client relationship is created." *People v. Deutsch*, 164 Misc. 2d 182, 184, 624 N.Y.S.2d 533, 535 (Sup. Ct. 1994). Accordingly, all that is required for the emails to be privileged is that Prof. Dershowitz contacted his lawyer associates in confidence for purposes of seeking legal advice.

With these principles, and the others set forth in ECF No. 380, in mind, we will now address each individual document in this category which Plaintiff has designated for *in camera* review:

1. Rory Millson, Doc. ID 516400, dated June 2, 2015.

In this email, Prof. Dershowitz is seeking, and Attorney Millson is providing, advice concerning Prof. Dershowitz's disputes with Plaintiff and with David Boies. ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

2. Jesse Diner, Doc. ID 518250, dated November 10, 2015.

This is an email between Prof. Dershowitz and Attorney Jesse Diner concerning Diner's prospective representation of Prof. Dershowitz in the *Edwards v. Dershowitz* matter, and inquiries from Edwards' counsel concerning the same. Of course, confidential communications between a prospective client and attorney remain privileged even if the attorney is not ultimately hired. *See Dennis*, 843 F.2d at 656. And, by necessary implication, communications between the client and that attorney concerning the substance of the original consultation are privileged as well.

3. Lawrence Marshall, Doc. ID 175727, dated May 19, 2016.

This is an email from Prof. Dershowitz to attorney and law professor Lawrence Marshall, who was a consulting expert in the *Giuffre v. Maxwell* case regarding potential ethical violations by counsel. This email, in which Prof. Dershowitz supplies factual information relevant to Marshall's analysis, is protected attorney work product.

4. Stephen Trachtenberg, Doc. ID 56835, dated April 8, 2019.

In this email, Prof. Dershowitz sent a draft article – a response to the New Yorker article which repeated Plaintiff's accusations against him – to attorney, law professor, and former



President of George Washington University, Stephen Trachtenberg. The email was labeled "Confidential. For your eyes and advice." Trachtenberg responded with his advice regarding publication of the article and its impact on Prof. Dershowitz's overall legal strategy regarding Plaintiff's accusations against him.

5. Michael and Marc Mukasey, Doc. ID 508261, dated April 16, 2019.

Prof. Dershowitz forwarded to the Mukaseys an email he had sent his lawyers seeking advice regarding ████████████████████████████████████ Evidently, the purpose of forwarding the email was to seek the same opinion from the Mukaseys.

### III. Prof. Dershowitz properly avails himself of the work product privilege given the existence of ongoing and anticipated litigation throughout the relevant time period.

Prof. Dershowitz refers the Court to his prior arguments regarding application of the work product doctrine set forth in ECF No. 380 at pp. 6-8. Plaintiff cannot dispute that there has been ongoing or reasonably anticipated litigation concerning her accusations against Prof. Dershowitz from the day she filed her joinder motion in the CVRA Action on December 30, 2014, through to the present day. That being the case, Plaintiff makes the novel and unsupported argument that documents which on their face satisfy the requirements for work product protection somehow lose that protection because, she claims, Prof. Dershowitz's participation in the various litigations was motivated by a desire to "supply his public campaign." Not only is this assertion false and counterfactual – it was *Plaintiff* who injected Prof. Dershowitz into the CVRA Action, *Plaintiff's lawyers* who sued Prof. Dershowitz in *Edwards v. Dershowitz*, and *Plaintiff* who sued Prof. Dershowitz in this action – it is also entirely irrelevant to the work product analysis. In determining whether a document is entitled to work product protection, the Second Circuit looks not to the role a particular document is to play in litigation (if any), but asks simply whether the document "would not have been prepared in substantially similar form but for the prospect of . . . litigation." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). All of the documents designated by Plaintiff amply satisfy this standard.

We now address each individual document in this category which Plaintiff has designated for *in camera* review:

1. "Investigation Quotation," Doc. ID 114598, dated May 4, 2015.

This is an email with a private investigator concerning an investigation into the Plaintiff as part of Prof. Dershowitz's defense of the *Edwards v. Dershowitz* litigation. Investigations into litigation adversaries and witnesses are indisputably protected as attorney work product.

2. "South Florida Dates," Doc. ID. 517279, dated July 8, 2015.


Hon. Loretta A. Preska
April 18, 2022
Page 7 of 7

This is an email between Prof. Dershowitz and his paralegal Nick Maisel regarding the collection, review and analysis of Prof. Dershowitz's travel records for production in *Edwards v. Dershowitz*. The collection of Prof. Dershowitz's travel records was indisputably an effort that was undertaken for purposes of litigation. █████████████

3. "Boies Memos for NYT Reporter," Doc. ID 511868, dated November 18, 2015.

In this email, sent during the pendency of the *Edwards v. Dershowitz* litigation, Prof. Dershowitz and his paralegal Nick Maisel discuss █████████████

4. "memo to U.S. Attorneys," Doc. ID 514586, dated November 4, 2016.

█████████████

5. "11/9/15," Doc. ID 73894, dated February 2, 2019.

This is an email from Prof. Dershowitz's assistant, Sarah Neely, to Prof. Dershowitz, containing a draft memo to Prof. Dershowitz's attorneys entitled "Confidential – Lawyer Client Privilege." It was prepared for purposes of sending to Prof. Dershowitz's attorneys in *Edwards v. Dershowitz* case and is obviously privileged on its face.

Respectfully submitted,

/s/ *Christian G. Kiely*
Christian G. Kiely

cc:   All counsel of record, via ECF

# Exhibit A

# Kiely, Christian

| | |
|---|---|
| **From:** | Martin G. Weinberg <owlmgw@att.net> |
| **Sent:** | Thursday, January 6, 2022 12:52 PM |
| **To:** | Kiely, Christian |
| **Subject:** | FW: Confidential- Dershowitz |
| **Attachments:** | Dershowitz MGW signature page.pdf |

Martin G. Weinberg, Esq.
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700 - Office
(617) 901-3472 - Cell
=================================
This Electronic Message contains information from the Law Office of Martin G. Weinberg, P.C., and may be privileged. The information is intended for the use of the addressee only. If you are not the addressee, please note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.

**From:** Martin G. Weinberg [mailto:owlmcb@att.net]
**Sent:** Tuesday, December 7, 2021 2:38 PM
**To:** Marty Weinberg <owlmgw@att.net>
**Subject:** Fw: Confidential- Dershowitz

Marty - Common interest agreement signature page

Chris Thomas
*Legal Assistant to Martin G. Weinberg*
20 Park Plaza, Suite 1000
Boston, MA 02116
p: (617) 227-3700
f:  (617) 338-9538


----- Forwarded Message -----
**From:** Martin G. Weinberg, Esq. <owlmcb@att.net>
**To:** "mborja@wileyrein.com" <mborja@wileyrein.com>; "owlmgw@att.net" <owlmgw@att.net>
**Sent:** Tuesday, December 15, 2015, 10:16:41 AM EST
**Subject:** Confidential- Dershowitz

Dear Ms. Borja,

Attached please find Marty's signature for the Common Interest Agreement regarding the Alan Dershowitz matter.

Please let me know if you have problems downloading or viewing the attachment.

Sincerely,

Evan Capps,

1

Paralegal

Martin G. Weinberg, P.C.
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700

*Privileged & Confidential*

DATED: _____

**COLE, SCOTT & KISSANE, P.A.**
*Counsel for Dershowitz*

By: _____
Thomas E. Scott, Esq.

DATED: _____

**COFFEY BURLINGTON**
*Counsel for Dershowitz*

By: _____
Kendall Coffey, Esq.

DATED: _____

**MARTIN G. WEINBERG, P.C.**
*Counsel for Epstein*

By: _____
Martin G. Weinberg, Esq.

9