UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIRGINIA L. GIUFFRE,

    Plaintiff / Counterclaim Defendant,

v.

ALAN DERSHOWITZ,

    Defendant / Counterclaim Plaintiff

Case No. 19-cv-03377-LAP

**FILED UNDER SEAL**

**PROFESSOR ALAN DERSHOWITZ'S MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISQUALIFY COOPER & KIRK PLLC</u>**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ...........................................................................................................................1

RELEVANT BACKGROUND .......................................................................................................2

ARGUMENT ...................................................................................................................................6

    I.    DISQUALIFICATION IS APPROPRIATE WHERE COUNSEL
HAS THE UNFAIR BENEFIT OF RELEVANT, NON-PRIVILEGED
INFORMATION WHICH CANNOT BE OBTAINED IN
DISCOVERY BY THEIR ADVERSARY ..........................................................6

    II.    SEVERE UNFAIR PREJUDICE WILL RESULT TO PROFESSOR
DERSHOWITZ IF COOPER & KIRK ARE ALLOWED TO
CONTINUE AS PLAINTIFF'S COUNSEL ........................................................8

    III.    PLAINTIFF'S ARGUMENTS AGAINST DISQUALIFICATION
ARE UNAVAILING ...........................................................................................12

CONCLUSION ..............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**   **Page**

*Burdick v. Shearson Am. Express, Inc.*,
559 N.Y.S.2d 506 (1st Dep't 1990) ..................................................................................9

*Cresswell v. Sullivan & Cromwell*,
922 F.2d 60 (2d Cir. 1990)..............................................................................................6

*DeVittorio v. Hall*,
2007 WL 4372872 (S.D.N.Y. Dec. 12, 2007) ................................................................7

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*,
2017 WL 2418742 (S.D.N.Y. June 5, 2017) ................................................................11

*Gen. Am. Commc'ns Corps. v. Rumpf*,
1989 WL 101926 (S.D.N.Y. Aug. 29, 1989)..................................................................7

*Giuffre v. Dershowitz*,
410 F. Supp. 3d 564 (S.D.N.Y. 2019)............................................................................6

*GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*,
618 F.3d 204 (2d Cir. 2010)...........................................................................................6

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
409 F.3d 127 (2d Cir. 2005)...........................................................................................6

*Hull v. Celanese Corp.*,
513 F.2d 568 (2d Cir. 1975)...........................................................................................6

*Hu–Friedy Mfg. Co., Inc. v. Gen. Elec. Co.*,
1999 WL 528545 (N.D. Ill. July 19, 1999)....................................................................7

*Matter of Beiny*,
517 N.Y.S.2d 474 (1987) .............................................................................................11

*Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*
542 F. Supp. 2d 296 (S.D.N.Y. 2008)............................................................................7

*Schafer v. Time, Inc.*,
142 F.3d 1361 (11th Cir. 1998) .....................................................................................9

*Tradewinds Airlines, Inc. v. Soros*,
2009 WL 1321695 (S.D.N.Y. May 12, 2009) ............................................................6, 7

*Ullrich v. Hearst Corp.*,
809 F. Supp. 229 (S.D.N.Y. 1992) ..........................................................................................10, 11

*United States Football League v. Nat'l Football League*,
605 F. Supp. 1448 (S.D.N.Y. 1985)..................................................................................................6

*World Food Sys., Inc. v. Bid Holdings, Ltd.*,
2001 WL 246372 (S.D.N.Y. Mar. 12, 2001) ...................................................................................6

*Wright v. Snow*,
572 N.Y.S.2d 503 (3d Dep't 1991)..................................................................................................9

**Statutes**

Federal Wiretap Act, 18 U.S.C. § 2511 ...........................................................................................3

# INTRODUCTION

Defendant and Counterclaim Plaintiff Professor Alan Dershowitz ("Professor Dershowitz") respectfully submits this memorandum of law in support of his Motion to Disqualify Cooper & Kirk PLLC ("Cooper & Kirk") from continuing to represent Plaintiff and Counterclaim Defendant Virginia Roberts Giuffre ("Plaintiff" or "Giuffre") in this action. The bases for Professor Dershowitz's motion to disqualify are known to the Court and are the product of the Court's various orders restricting his access to the trove of discovery and related materials from the closely-related *Giuffre v. Maxwell* case, while leaving those very same materials in the hands of his litigation opponent and her counsel, the latter who improperly possess them. To date, the Court has: (i) limited Professor Dershowitz's access to those materials solely to items that mention him, even though Plaintiff makes claims against him that place directly at issue her alleged interactions with numerous other individuals (who were no doubt the subject of discovery in *Maxwell*); (ii) held that Cooper & Kirk's possession of the materials denied to Professor Dershowitz is a violation of the Protective Order in *Giuffre v. Maxwell*; and (iii) ordered Cooper & Kirk to destroy those materials in order to eliminate the unfair advantage they afford Plaintiff in this case, but then reversed itself as to the destruction order. The net result of the Court's orders is to leave Plaintiff, whose counsel created this problem, with an extraordinary and unfair advantage in this case which is inconsistent with any notion of due process.

The rules of discovery ended trial by ambush decades ago. Those rules require that the scales of justice be balanced and that the parties, other than with respect to privileged or work product materials, be required to disclose materials in their possession, custody or control which may lead to admissible evidence. Professor Dershowitz submits that the only practical remedy here for Cooper & Kirk's violation of the *Maxwell* Protective Order, even if inadvertent, is for

1

the firm to be disqualified and for Plaintiff's new counsel to have only the same access Professor Dershowitz has to the *Maxwell* materials. Simply put, while there are competing concerns at stake here, the paramount concern upon which this Court must focus in fashioning a remedy is affording Professor Dershowitz a fair process in which he can defend himself against Plaintiff's false accusations of sexual assault. This requires the elimination of Plaintiff's unfair advantage by the disqualification of her counsel.

## RELEVANT BACKGROUND

Plaintiff filed her original complaint in this action on April 16, 2019 and amended her complaint on April 15, 2020. *See* Amended Complaint ("Am. Compl."), ECF No. 117. In summary, Plaintiff alleges that she was a victim of sexual trafficking by Jeffrey Epstein and Ghislaine Maxwell from 2000 to 2002, and that in the course of her time with Epstein and Maxwell, she was "lent out" for sex to Professor Dershowitz and other famous associates of Epstein. Am. Compl. ¶¶ 2, 5-6, 10, 30, 52. She falsely accuses Professor Dershowitz not only of sexually abusing her, but also of being a "co-conspirator" in Epstein's and Maxwell's alleged sex trafficking operation. *Id.* ¶¶ 6, 52. She further claims that Professor Dershowitz was an eye witness to the sexual abuse of others, *see* <u>Exhibit A</u> to the Declaration of Christian G. Kiely ("Kiely Decl.") at 4, and indeed, that any guest at any of Epstein's properties, including Professor Dershowitz, was inevitably on notice of Epstein's involvement with sex trafficking. Am. Compl. ¶¶ 61-63, 71.[1] Professor Dershowitz, of course, has vigorously denied these

---

[1] *See also* Brief for Plaintiff-Appellee in *Giuffre v. Maxwell*, 16-3945-cv-(L) (2d Cir. 2017), Kiely Decl. Ex. B, at 17 ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████ July 17, 2020 tweet, available at: https://twitter.com/VRSVirginia/status/1284057747286183936 ("Everyone who ran in the elitists circle knew what Epstein & Maxwell we're [sic] doing because majority of them took part in the trafficking ring.").

2

accusations and accused Plaintiff of being a serial liar with a "documented history of lying about prominent people" who fabricated her accusations against him as part of an extortion plot; charges which Plaintiff alleges are false and defamatory. *Id.* ¶ 17. Based upon these factual allegations, Plaintiff asserts claims for defamation and sexual battery against Professor Dershowitz. Am. Compl. ¶¶ 94-117.[2]

Plaintiff previously sued Ghislaine Maxwell in 2015 for denying claims that Maxwell participated in the alleged sexual trafficking of Plaintiff by Jeffrey Epstein. *Giuffre v. Maxwell*, 15-cv-7433 (S.D.N.Y.). Maxwell issued that denial specifically in response to accusations Plaintiff made against her in a motion which she filed seeking to join a lawsuit brought by other Epstein victims against the government, alleging the government violated their rights under the Crime Victims' Rights Act by failing to inform them of the non-prosecution agreement it entered into with Epstein. Am. Compl. ¶¶ 9-10. Among other things, Plaintiff alleged in that joinder motion that Maxwell recruited her to be a masseuse for Epstein, assisted Epstein in converting her into a "sex slave," and thereafter functioned as a "madame," trafficking Plaintiff to famous associates of Epstein, including Prince Andrew, Jean Luc Brunel, Professor Dershowitz, and "many other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders." Kiely Decl. Ex. A at 3-6. Notably, this was the first time that Plaintiff had made an accusation against Professor Dershowitz; accordingly, Maxwell's denial — which Plaintiff claimed was false and defamatory — referenced the entirely new accusations against Professor Dershowitz as another example of Plaintiff's "obvious lies." Kiely Decl. Ex. C at 15.

---

[2] Plaintiff also asserts a claim for violation of the federal Wiretap Act, 18 U.S.C. § 2511(1), based on Professor Dershowitz's alleged wrongful recording of a meeting with her attorney, David Boies.

3

As the Court knows, given the high degree of overlap between this case and the *Maxwell* case, Professor Dershowitz originally sought production from Plaintiff of all discovery materials and sealed filings from the *Maxwell* case, and asked the Court to modify the Protective Order in *Maxwell* to permit Plaintiff to produce this material to him on a confidential basis under that Protective Order.  *See* ECF No. 133.  The Court denied that request, found that Plaintiff's counsel at Cooper & Kirk possessed those confidential materials in violation of the *Maxwell* Protective Order, and ordered Cooper & Kirk to destroy all such materials and any work product derived therefrom.  *See* ECF No. 144.  Professor Dershowitz sought reconsideration of this order and indicated his intention to move to disqualify Cooper & Kirk from continuing to represent Plaintiff in this action if the order was upheld.  *See* ECF No. 146.  Professor Dershowitz also simultaneously narrowed his request for the production of *Maxwell* case materials to specified categories of information which on their face are directly relevant to the claims and defenses in this case.  *See* ECF No. 153.  Upon reconsideration, the Court ordered production solely of *Maxwell* case materials which mention Professor Dershowitz by name (subject to an exception shared with Plaintiff's counsel only), but would not "allow a disclosure to Mr. Dershowitz of sealed materials outside of that universe."  ECF No. 174 at 4-5.

Although Professor Dershowitz has limited insight into the discovery conducted in the *Maxwell* case as a result of the blanket protective and sealing orders in that case and the Court's orders denying him access to those materials, it seems apparent that given the nature of Plaintiff's claims, the truth or falsity of her increasingly fantastical claims concerning her time spent with Epstein and her claim of being "lent out" for sex to numerous famous associates of Epstein, including Professor Dershowitz, was a focus of discovery in *Maxwell*.  For example, Professor Dershowitz knows from material which has since been partially unsealed that

4

discovery was taken from Plaintiff's boyfriends at the time she worked for Epstein, James Michael Austrich and Tony Figueroa; her father, Sky Roberts; her mother, Lynn Trude Miller; Epstein houseman Juan Alessi; Epstein pilot David Rodgers; and other individuals who were present at Epstein's properties in the relevant time period and thus have direct knowledge bearing on the truth or falsity of Plaintiff's claims that she was trafficked to Professor Dershowitz and other guests at Epstein's properties, and in particular the circumstantial facts which Plaintiff will undoubtedly attempt to rely upon at trial in support of her claims. *See infra* pp. 9-10. Professor Dershowitz also knows, from the limited materials which the Court has ordered produced to him, that many of these witnesses gave testimony which is exculpatory of him,[3] although we know virtually nothing about the remainder of their testimony, including but not limited to, the foundation for their testimony concerning Professor Dershowitz, their knowledge relevant to Plaintiff's other claims, or the basis of their knowledge generally.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

---

[3] ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████

[4] ███████████████████████████████████████████████████

5

██████████████████████████████

██████████████████████████████

### ARGUMENT

I. **DISQUALIFICATION IS APPROPRIATE WHERE COUNSEL HAS THE UNFAIR BENEFIT OF RELEVANT, NON-PRIVILEGED INFORMATION WHICH CANNOT BE OBTAINED IN DISCOVERY BY THEIR ADVERSARY.**

Federal courts have the inherent authority to disqualify attorneys in pending litigation when necessary to "preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted). Disqualification is warranted in instances where "an attorney's conduct tends to taint the underlying trial." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (citation omitted). "Precisely which facts will taint the trial is a question that is best considered in the context of the particular facts presented by each case." *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1464 (S.D.N.Y. 1985).

Although motions to disqualify are disfavored, courts have wide discretion to disqualify counsel when the interests of justice so require. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). "[A]ny doubt is to be resolved in favor of disqualification." *Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 570 (S.D.N.Y. 2019) (quoting *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)). Courts "should not hesitate to grant such a motion if there be any doubt regarding . . . counsel's ability to fulfill counsel's ethical obligations." *World Food Sys., Inc. v. Bid Holdings, Ltd.*, 2001 WL 246372, at *3 (S.D.N.Y. Mar. 12, 2001).

Courts in this district and elsewhere have recognized that disqualification may be warranted where, as here, opposing counsel has the benefit of confidential discovery from a prior litigation that will not be discoverable in the case at bar. The court in *Tradewinds Airlines, Inc.*

*v. Soros*, 2009 WL 1321695 (S.D.N.Y. May 12, 2009), declined to disqualify counsel for the plaintiff who had knowledge of confidential discovery from the defendant from a prior litigation, but only because, as the court noted, "any attorney representing plaintiff in this case would have access to the information at issue through discovery." *Id.* at *8.

Other courts faced with arguments for disqualification based on exposure to confidential discovery in related litigation have similarly recognized that disqualification is not necessary where it is inevitable that all parties and their counsel will gain access to the same discovery in the case at bar. *See Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F.Supp.2d 296, 315 (S.D.N.Y. 2008) (finding that disqualification is not warranted "[i]f a party is capable of securing confidential information by means other than through prior representation"); *DeVittorio v. Hall*, 2007 WL 4372872, at *10 (S.D.N.Y. Dec. 12, 2007) (finding that counsel's exposure to adversary's information, obtained during prior attorney-client relationship, did not create unfair advantage warranting disqualification, in part because "to the extent that information is relevant in the present action it would presumably be discoverable"); *Gen. Am. Commc'ns Corp. v. Rumpf*, 1989 WL 101926, at *4 (S.D.N.Y. Aug. 29, 1989) (declining to disqualify where information shared with attorney "was not necessarily the sort of information that would have been undiscoverable during discovery or even during depositions"); *see also Hu–Friedy Mfg. Co., Inc. v. Gen. Elec. Co.*, 1999 WL 528545, at *3 (N.D. Ill. July 19, 1999) (concluding that plaintiff's counsel "has no unfair advantage in this action due to [her] previous exposure to the confidential information" because "the information [defendant] seeks to prevent [plaintiff's counsel] from using is relevant to this case, and any reasonably competent attorney would routinely obtain it in discovery"). In those cases, disqualification was deemed unnecessary because, while one side may have a "head start," any advantage would be equalized

7

in discovery. By contrast, here, this Court has already denied Professor Dershowitz's efforts to obtain discovery of the materials in Cooper & Kirk's possession, thus guaranteeing that Plaintiff will continue to enjoy an unfair advantage unless Cooper & Kirk is disqualified from serving as Plaintiff's counsel in this action.

II. **SEVERE UNFAIR PREJUDICE WILL RESULT TO PROFESSOR DERSHOWITZ IF COOPER & KIRK ARE ALLOWED TO CONTINUE AS PLAINTIFF'S COUNSEL.**

Cooper & Kirk must be disqualified because, unless Professor Dershowitz is given equal access to the *Maxwell* case materials, Plaintiff will enjoy an extraordinary and unfair strategic advantage in this litigation which is inconsistent with any notion of due process. Cooper & Kirk have had the benefit of reviewing, by way of example only, testimony and documents from Plaintiff's former boyfriends and family members, Epstein household employees, other alleged Epstein victims, and law enforcement. All of this discovery is highly relevant to Professor Dershowitz's defense not just against Plaintiff's false claims of sex with Professor Dershowitz, but also against Plaintiff's broader allegations concerning the circumstances of her time spent with Epstein and against her claims that Professor Dershowitz was a "co-conspirator" of Jeffrey Epstein and Ghislaine Maxwell, Am. Compl., ECF No. 117 at ¶¶ 6, 52, and that guests to Epstein's properties were all on notice that minors were being sexually trafficked there. *See id.* at ¶¶ 38, 61-63, 71; Kiely Decl. Ex. B at 17. Further, based on submissions by John Doe and other anonymous non-parties in the *Maxwell* case, it is evident that Cooper & Kirk have had the benefit of critical discovery concerning individuals whom Plaintiff alleges she was sexually trafficked to by Epstein. Again, it must be emphasized in this regard that the claimed defamations Plaintiff is suing Professor Dershowitz over are not limited to his denials of her accusations of sexual abuse, but also his statements that she is a "serial liar" who has a

8

"documented history of lying about prominent people." Am. Compl., ECF No. 117 at ¶¶17(p) & (n)(i).

Professor Dershowitz is mindful that the Court has previously expressed skepticism at the relevance of the *Maxwell* case materials to this case even while noting that such materials "might technically be relevant[.]" *See* ECF No. 152. While much of the evidence compiled in the *Maxwell* case may be circumstantial in nature, it is by any definition "relevant" to this case — relevant not only to the critical issue of Plaintiff's credibility, but also to the truth or falsity of her actual accusations against him and others and thus the truth or falsity of the alleged defamations, as well as Plaintiff's reputation which she contends Professor Dershowitz has harmed.[5] In light of the Court's prior reservations, however, it is important to note that the *Maxwell* case materials are made all the more relevant by virtue of the fact that Plaintiff's case against Professor Dershowitz rests almost entirely on circumstantial evidence. ███████████

███████████

███████████

---

[5] Falsity and reputation are traditionally the subject of broad discovery in defamation actions. *See, e.g., Wright v. Snow*, 572 N.Y.S.2d 503, 504 (3d Dep't 1991) (broad discovery allowed on the issue of falsity); *Burdick v. Shearson Am. Express, Inc.*, 559 N.Y.S.2d 506, 507-08 (1st Dep't 1990) (broad discovery allowed on the issue of reputation); *see also Schafer v. Time, Inc.*, 142 F.3d 1361, 1372 (11th Cir.), *reh'g denied*, 162 F.3d 1179 (11th Cir. 1998) ("Since the plaintiff's character is substantively at issue in a libel case . . . admission of evidence regarding specific instances of the plaintiff's conduct on that issue" is permitted.)





Although the assertion that this evidence somehow corroborates Plaintiff's claims against Professor Dershowitz is farcical, it underscores how critical it is that the parties and their counsel have equal access to evidence from the *Maxwell* case, even if circumstantial in nature as it relates to Professor Dershowitz. If Professor Dershowitz is going to be denied this discovery, then the only way to level the playing field is to disqualify Cooper & Kirk.

Cooper & Kirk's possession of literally thousands of pages of *Maxwell* case materials including deposition transcripts, interview summaries, pleadings, and more, which the Court has found they should never have possessed, is a bell which cannot be un-rung. Even if they cannot

10

overtly use this material, the Cooper & Kirk lawyers will nonetheless be operating with knowledge of critical information which the Court has already recognized will allow them an unfair strategic advantage in this case. *See Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992) ("Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses."). The Court cannot meaningfully require counsel to unlearn what they have spent the past many months learning. Professor Dershowitz will have no way of knowing when to object to a question which is asked based upon information which opposing counsel should never have had in this case.

*Matter of Beiny*, 517 N.Y.S.2d 474 (1987), is instructive here. There, counsel improperly obtained privileged information belonging to the opposing party. The court held that suppression of the improperly obtained documents was not an adequate remedy, but that disqualification was required to purge the taint of counsel's improper access to the privileged materials. *Id.* at 483. The court explained that "it would at this point be virtually impossible to prevent what has been suppressed from playing some role in [counsel's] decision making or to keep the tainted information which it possesses from surreptitiously finding its way back into the proceeding" and that "a court should [not] be required to assume the onerous task of constantly tracing the provenance of the information employed by petitioner's counsel to determine if it is really obtained from an independently developed, unrelated, non-privileged, unsuppressed source." *Id.* at 484 (internal quotation marks omitted). Likewise, the court in *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, 2017 WL 2418742 (S.D.N.Y. June 5, 2017), found that plaintiff's counsel's receipt of confidential information subject to a protective order made it

11

"impractical if not impossible" for that same counsel to represent the plaintiff in a related state court action, because it was inevitable that counsel would improperly use the confidential information to prosecute the state case. *Id.* at *5. So too here, it is inevitable that Cooper & Kirk will continue to use the suppressed *Maxwell* information to their advantage if they are allowed to continue as Plaintiff's counsel, and it will be impossible for the Court to effectively police this issue.

### III. PLAINTIFF'S ARGUMENTS AGAINST DISQUALIFICATION ARE UNAVAILING.

In prior letter briefing on this matter, Plaintiff has made three principal arguments against disqualification: first, that Professor Dershowitz enjoys a similar unfair advantage owing to privileged information in his possession as a result of his legal representation of Jeffrey Epstein; second, that the relevant *Maxwell* materials presently in Cooper & Kirk's possession but denied to Professor Dershowitz are obtainable in discovery directly from the original producing party; and third, that disqualification, if ordered, should be mutual because of Professor Dershowitz's possession of a small number of *Maxwell* confidential materials. These arguments are all without merit.

Plaintiff's first argument, regarding Professor Dershowitz's possession of privileged information from his representation of Jeffrey Epstein, is quickly dispatched. The law's recognition of the attorney-client privilege and work product protections necessarily means that certain relevant evidence will not be available to the other side in litigation. Here, by contrast, the information asymmetry results from Cooper & Kirk's possession of relevant, non-privileged information which they obtained in violation of a protective order. Outside of legal privileges, the law does not countenance this type of information imbalance; indeed, the very purpose of civil discovery is to equalize such imbalances. It is therefore no answer to Cooper & Kirk's

12

possession of relevant, non-privileged information that Professor Dershowitz has in his possession relevant, privileged information. This is true of virtually every litigation and is certainly not grounds for disqualification.

Plaintiff's second argument rests on the fiction that Professor Dershowitz will be able to cure the present informational asymmetry by re-assembling through independent discovery in this case the concededly "massive record" of confidential discovery from *Maxwell* which Cooper & Kirk improperly have in their possession. Putting aside the folly of pursuing from third parties material which is already in Plaintiff's possession, this argument ignores the fact that Professor Dershowitz and his counsel do not even know the identities of many of the non-parties who provided discovery in *Maxwell*. Even if Professor Dershowitz could somehow divine a list of non-parties who provided discovery in *Maxwell*, as Plaintiff tacitly acknowledges, there is no reasonable basis to presume the Court would require any of these non-parties to comply with Professor Dershowitz's discovery requests seeking the same information they produced in *Maxwell*. Indeed, to date, over Professor Dershowitz's objection, the Court has charted a narrow scope of discovery, indicating in one instance that even "technically [] relevant" discovery into Plaintiff's "serial" lies – a defamation put at issue by Plaintiff herself – may not be discoverable in its view. *See* ECF No. 152. The combination of Plaintiff's possession of a voluminous record from *Maxwell* to which only she will have access and the Court's seemingly narrow view of discovery in this case risks creating a degree of unfairness that cannot be remedied by Professor Dershowitz's attempting to replicate the *Maxwell* discovery while blindfolded.[7]

---

[7] Even if Professor Dershowitz were allowed to take new discovery from non-party witnesses who previously provided discovery in *Maxwell*, that would not obviate the need for the parties to have equal access to the prior discovery materials from those witnesses in order to prepare for depositions, impeach their testimony as necessary, and verify the completeness of their document productions. By way of example only, it is inconceivable that Professor Dershowitz would have

13

Finally, Plaintiff's suggestion that any disqualification would need to be mutual on account of Professor Dershowitz's possession of a small amount of confidential discovery from the *Maxwell* case is without merit and cannot be advanced seriously. As Plaintiff well knows, Professor Dershowitz was provided a discrete sub-set of documents in connection with his designation as a witness in the *Maxwell* case. Virtually everything provided to him has subsequently been unsealed, or should be among the materials he is entitled to receive under the Court's most recent order, ECF No. 174, because they mention him. Cooper & Kirk on the other hand have in their possession, improperly, the complete set of *Maxwell* materials — by their own description a "massive record" of documents — which under the Court's prior rulings Professor Dershowitz will never be allowed to see. The prejudice is thus entirely one sided.

## CONCLUSION

For the foregoing reasons, Professor Dershowitz respectfully requests that the Court enter an order disqualifying Cooper & Kirk from continuing to represent Plaintiff in this action. Professor Dershowitz respectfully requests that the Court hold oral argument on his Motion.

---

to prepare for and take the depositions of Juan Alessi and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ without the benefit of their prior testimony and document productions.

14

Respectfully submitted,

ALAN DERSHOWITZ,

By his attorneys,

*/s/ Howard M. Cooper*
Howard M. Cooper (MA BBO # 543842) *(pro hac vice)*
Christian G. Kiely (MA BBO # 684308) *(pro hac vice)*
Kristine C. Oren (MA BBO # 705730) *(pro hac vice)*
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
T: 617-720-2626
hcooper@toddweld.com
ckiely@toddweld.com
koren@toddweld.com

*/s/ Imran H. Ansari*
Arthur L. Aidala (S.D.N.Y. Bar No. ALA-0059)
Imran H. Ansari (S.D.N.Y. Bar No. IHA-1978)
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, NY 10036
T: 212-486-0011
iansari@aidalalaw.com
aidalaesq@aidalalaw.com

Dated: November 18, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Court's electronic filing system, and served to all counsel of record on November 18, 2020.

/s/ Christian G. Kiely
Christian G. Kiely

15