UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA L. GIUFFRE,<br><br>            Plaintiff,<br><br>-against-<br><br>ALAN DERSHOWITZ,<br><br>            Defendant. | No. 19 Civ 3377(LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Giuffre filed a motion to compel on December 3, 2021, arguing, among other things, that Dershowitz improperly withheld documents on the basis of (1) the common interest doctrine, (2) attorney-client privilege, and (3) work product privilege. (Dkt. nos. 373-374.)  Dershowitz opposed on December 13, 2021 (dkt. nos. 380-381), and Giuffre replied on December 15, 2021 (dkt. nos. 384-385).  By order dated February 14, 2022, the Court ordered Plaintiff to select five documents from each of the above three categories for in camera review.  (Dkt. no. 401.)  On April 4, 2022, Plaintiff indicated by letter the 15 documents she had selected for the Court's review, along with additional argument relating to those documents.  (Dkt. no. 458.)  On April 18, 2022, Defendant produced the 15 documents to the Court, along with a letter containing additional argument. (Dkt. no. 469.)

1

A.  **Common Interest Doctrine**

The Court reviewed in camera the following documents, which Plaintiff challenges on the basis that they do not fall within the common interest exception to waiver of privilege:

1. "Ranch. Confidential," Doc. ID 111602, withheld as a joint defense/common interest communication concerning Jane Doe #1, et al. v. United States, Case No. 08-80736 (S.D. Fla.) ("CVRA Action"), dated February 6, 2015.

2. "REDACTED," Doc. ID 114762, withheld as a joint defense/common interest communication concerning Edwards v. Dershowitz, dated April 19, 2015.

3. "Dershowitz Claims Alleged Sex Victim Tried to Extort $1 Billion | Daily Business Review," Doc. ID 493068, withheld as a joint defense/common-interest communication concerning Edwards v. Dershowitz, dated October 16, 2015.

4. "Please csll me." Doc. ID 90433, withheld as a joint defense/common interest communication concerning Giuffre accusations v. Dershowitz, dated May 19, 2019.

5. "Villafonte email of sept 2007," Doc. ID 509849, withheld as a joint defense/common interest communication concerning this action and Giuffre accusations v. Dershowitz, dated September 16, 2019.

"A 'common interest' doctrine, erroneously called 'common interest privilege' or 'joint defense privilege,' is an exception to the general rule that voluntary disclosure of confidential, privileged material to a third party waives any applicable privilege."  Sokol v. Wyeth, Inc., No. 07 Civ. 8442(SHS)(KNF), 2008 WL 3166662, *5 (S.D.N.Y. Aug. 4, 2008)

(citation omitted).  "It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."  United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989).  It exists "to protect the free flow of information from client to attorney . . . whenever multiple clients share a common interest about a legal matter."  Id. at 243–44.  The doctrine "is not an independent source of privilege or confidentiality" so that "[i]f a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply."  Sokol, 2008 WL 3166662, at *5; see also HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, 71 (S.D.N.Y. 2009).

Obtaining the protections of the common interest doctrine requires a two-part showing.  First, the parties exchanging otherwise privileged information must establish "a common legal, rather than commercial, interest."  Sokol, 2008 WL 3166662, at *5.  "Although some courts in this circuit have articulated a requirement that the common interest be 'identical' and not merely 'similar,'" other courts have questioned this, and "have simply focused on whether the parties had interests in common without exploring whether they were identical."  Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc., No. 07 Civ. 1675

(ERK) (VVP), 2009 WL 3786210, at *2 (E.D.N.Y. Nov. 12, 2009). For courts to find a common legal interest, the parties must have come to an agreement, "though not necessarily in writing, embodying a cooperative and common enterprise towards an identical legal strategy." Lugosch v. Congel, 219 F.R.D. 220, 237 (N.D.N.Y. 2003). Courts may look to whether "multiple persons are represented by the same attorney" or any other evidence to demonstrate the existence of "coordinated . . . legal efforts." Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446, 448 (S.D.N.Y. 1995).

Second, the parties must establish that any exchange of privileged information was "made in the course of formulating a common legal strategy" and that the parties understood that the communication would be in furtherance of the shared legal interest. Sokol, 2008 WL 3166662, at *5, 7. One fact courts often consider in assessing this factor is whether an attorney for either party participated in the exchange of privileged information. See, e.g., HSH Nordbank, 259 F.R.D. at 72 ("[C]ounsel for one of the parties was actively engaged in the communications at issue. Thus, this is not a situation where the various non party lenders and Nordbank discussed subject matter previously discussed with counsel and now seek to assert privilege for that reason alone."); cf. Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y.1996) ("Salomon wants

4

to protect confidences it shared with its own attorneys and then shared, not with Northrop's attorneys, but with Northrop.  To extend the common interest doctrine that far would mean that a party could shield from disclosure any discussions it had with another person about a matter of common interest simply by discussing that matter first with its attorneys.").

Dershowitz and Jeffrey Epstein entered into a Common Interest and Joint Defense Agreement in or about March 2015. (See Dkt. no. 373-4.)  By its terms, the agreement extends to

> the matters styled as Jane Doe #1, et al. v. United States, Case No. 08-80736 (S.D. Fla.) and Edwards, et al., v. Dershowitz, Case No. CACE 15000072, in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida and in connection with any other proceeding and/or investigation relating to or arising from this matter.

(Id. at 1.)

After conducting an individualized review of these documents in camera, and with the benefit of the parties' arguments, the Court concludes as follows.

As to Documents 1 and 2, the Court finds that Defendant has met his burden of establishing that the communications are protected by the attorney-client privilege and that the common interest exception applies.  These communications were made for the purpose of providing or obtaining legal advice, and they fall within the scope of a joint defense agreement.  Dershowitz

5

may withhold Documents 1 and 2 under the attorney-client privilege.

As to Document 3, the Court finds that the communication was not made for the purpose of providing or obtaining legal advice; it is simply a communication between Dershowitz and Epstein concerning a publicly available news article and certain facts with no relation to legal strategy or advice.  As a result, the common interest doctrine is irrelevant as to this document.  Dershowitz shall produce Document 3.

As to Document 4, the Court finds that the communication is largely unprotected by the attorney-client privilege; like Document 3, it is largely a communication between Dershowitz and Epstein concerning a publicly available interview with no relation to legal strategy or advice.  There are, however, nine words following the words "marty said" which constitute protected legal advice.  Document 4 shall be produced, with the caveat that those nine words shall be redacted.

As to Document 5, even assuming this communication is privileged, it was sent at a time when Mr. Epstein was deceased, and therefore he and Dershowitz could not have shared a common legal interest in the outcome of these matters.  This document shall be produced.

Defendant shall review the remaining documents on his privilege log that are purportedly protected by the common

interest doctrine and produce any that (1) lack attorney-client privilege because the communications were not made for the purpose of providing or obtaining legal advice and/or (2) post-date Mr. Epstein's death when the common interest doctrine could no longer apply.

### B. Attorney-Client Privilege

The Court reviewed in camera the following documents, which Plaintiff challenges on the basis that they are not protected by attorney-client privilege:

6. Rory Millson, Doc. ID 516400, dated June 2, 2015.

7. Jesse Diner, Doc. ID 518250, dated November 10, 2015.

8. Lawrence Marshall, Doc. ID 175727, dated May 19, 2016.

9. Stephen Trachtenberg, Doc. ID 56835, dated April 8, 2019.

10. Michael and Marc Mukasey, Doc. ID 508261, dated April 16, 2019.

Under New York law, the attorney-client privilege protects confidential communications between client and counsel where such communications are made for the purpose of providing or obtaining legal advice. See N.Y. C.P.L.R. § 4503(a)(1); Rossi v. Blue Cross & Blue Shield of Greater N.Y., 73 N.Y.2d 588, 593 (1989); see also Sokol v. Wyeth, Inc., No. 07 Civ. 8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008). Accordingly, "[a] document is not privileged merely because it was sent or

received between an attorney and client." Dep't of Econ. Dev. v. Arthur Andersen & Co., 139 F.R.D. 295, 300 (S.D.N.Y. 1991). Instead, it "must contain confidential communication relating to legal advice." Id. Hence, "[w]hen an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged." Scott v. Chipotle Mexican Grill, Inc., 94 F. Supp. 3d 585, 596 (S.D.N.Y. 2015).

The burden of establishing attorney-client privilege is on the party asserting it. Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 377 (1991). Such a party satisfies its burden of proof where it "establish[es] that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client." Charter One Bank, F.S.B. v. Midtown Rochester, LLC, 191 Misc.2d 154, 166, 738 N.Y.S.2d 179 (N.Y. Sup. Ct.2002); see also United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).

The Court concludes that Dershowitz has not met his burden of establishing that any of these communications are protected by the attorney-client privilege. He has produced no evidence of an attorney-client relationship, and the challenged communications are far more consistent with a friend seeking the

8

advice of a friend than of a client seeking the advice of counsel.  Mr. Dershowitz is admonished to review his privilege log and to produce to Giuffre any similar communications.  Sanctions may follow if production is not forthcoming and the Court's intervention is required to compel the production of communications such as these that are obviously not protected by any privilege.

    **C.   Work Product Privilege**

The Court reviewed in camera the following documents, which Plaintiff challenges on the basis that they are not protected by the work product privilege:

11. "Investigation Quotation," Doc. ID 114598, dated May 4, 2015.

12. "South Florida Dates," Doc. ID. 517279, dated July 8, 2015.

13. "Boies Memos for NYT Reporter," Doc. ID 511868, dated November 18, 2015.

14. "memo to U.S. Attorneys," Doc. ID 514586, dated November 4, 2016.

15. "11/9/15," Doc. ID 73894, dated February 2, 2019.

The work product privilege provides that materials prepared in anticipation of litigation are not discoverable absent a showing that the party seeking discovery has a substantial need for the materials and cannot obtain the equivalent without undue hardship.  See Hickman v. Taylor, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3).  This doctrine "is intended to preserve a zone

9

of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (citing Hickman, 329 U.S. at 510-11).  The policy underlying work product protection is "to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980).  The privilege principally extends to legal opinions and analysis but may also apply to facts obtained by the attorney.  In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 161 (2d Cir. 2002).

To secure the protections of the work product privilege, the party asserting the privilege bears the "burden of proving that the document was prepared in anticipation of litigation and that it would not have been prepared in substantially similar form but for the prospect of litigation." United States v. Stewart, 287 F. Supp. 2d 461, 467 (S.D.N.Y. 2003).

Generally speaking, "[t]he work product privilege should not be deemed waived unless disclosure is inconsistent with maintaining secrecy from possible adversaries." Stix Prods. v. United Merchants & Mfrs., 47 F.R.D. 334, 338 (S.D.N.Y. 1969).  "The work product privilege is not automatically waived by any disclosure to third persons.  Rather, the courts generally find

10

a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." In re Pfizer Inc. Sec. Litig., No. 90 Civ. 1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993) (cleaned up).  Courts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege. See, e.g., In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 221 n.6 (S.D.N.Y. 2001).  But where the third party to whom the disclosure is made is not allied in interest with the disclosing party or does not have litigation objectives in common, the protection of the doctrine will be waived.  See, e.g., Verschoth v. Time Warner, No. 00 Civ. 1339 (AGS), 2001 U.S. Dist. LEXIS 6693, at *14, 2001 WL 546630, at *4 (S.D.N.Y. May 22, 2001) (ruling that work product privilege was waived where defendant showed work product to a third party whose "interests may not have been aligned" with those of defendant).

As to Documents 11 and 12, the Court finds that Dershowitz has met his burden of establishing that these communications are protected by the work product privilege and that the privilege was not waived.

As to Document 13, the Court finds that any privilege that may have existed has been waived as the stated purpose of the

11

meeting memorandum was to provide information to a reporter from the <u>New York Times</u>.

As to Document 14, the Court finds that Dershowitz has failed to meet his burden of establishing that the communication was prepared in anticipation of litigation.  By its terms, the communication was prepared for the purpose of revealing certain information to the U.S. Attorney's Office.

As to Document 15, the Court finds that Dershowitz has failed to meet his burden of establishing that the communication falls within the protections of the work product privilege. Simply put, this communication is not attorney work product.

*   *   *

The unprivileged documents shall be produced forthwith.

**SO ORDERED.**

Dated:    May 10, 2022
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge